1               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK
2

3   ------------------------------------X
                                        :
4   NUNEZ, et al.,                      :
                                        :  11-CV-5845 (LTS)
5                   Plaintiffs,         :
                                        :
6               v.                      :
                                        :  500 Pearl Street
7   CITY OF NEW YORK, et al.,           :  New York, New York
                                        :
8                   Defendants.         :  March 18, 2013
    ------------------------------------X
9

10        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE JAMES C. FRANCIS, IV
11                UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiffs:          VASUDHA TALLA, ESQ.
                                 KATHERINE ROSENFELD, ESQ.
14                               Emery Celli Brinckerhoff &
                                 Abady LLP
15                               75 Rockefeller Plaza
                                 New York, NY 10019
16
    For the Class Reps:          AMANDA RAAD, ESQ.
17                               JOSEPH GAUGHAN CLEEMANN, ESQ.
                                 AMANDA FRIEDBERG, ESQ.
18                               Ropes & Gray LLP
                                 1211 Avenue of The Americas
19                               New York, NY 10036

20  For Legal Aid Society        MARY LYNNE WERLWAS, ESQ.
    Prisoner's Rights Project:   JONATHAN S. CHASAN, ESQ.
21                               The Legal Aid Society
                                 111 Livingston Street
22                               Brooklyn, NY 11201

23  For the City:                ARTHUR GABRIEL LARKIN, III, ESQ.
                                 KIM SAVINO, ESQ.
24                               The New York City Law Department
                                 100 Church Street
25                               New York, NY 10007

              [Appearances continue next page.]

    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service

<pre>
 1                                                              2

 2

 3
     APPEARANCES CONTINUED:
 4

 5   For Massey and Santiago:    ALEXANDER PELTZ, ESQ.
                                 Peltz & Walker
 6                               222 Broadway
                                 New York, NY 10038
 7

 8   For Shante Jones:           BRIAN HOWELL, ESQ.

 9

10   For Sloly, Soto and Roman:  JULIE SCHATZ, ESQ.
                                 Koehler & Isaacs LLP
11                               61 Broadway, 25th Floor
                                 New York, NY 10006
12

13

14

15
     Court Transcriber:          MARY GRECO
16                               TypeWrite Word Processing Service
                                 211 N. Milton Road
17                               Saratoga Springs, New York  12866

18

19

20

21

22

23

24

25
</pre>

3

1              THE CLERK: This is <u>Nunez v. State of New York</u>.

2              Counsel, please state your name for the record.

3              MS. TALLA:  Vasudha Talla and Katy Rosenfeld, Emery

4    Celli, Brinckerhoff & Abady for plaintiffs.

5              MS. RAAD:  Hi.  Amanda Raad of Ropes & Gray and I

6    also have Anna Friedberg and Joe Cleemann for the class

7    representatives.

8              MS. WERLWAS:  Hello.  Mary Lynne Werlwas and

9    Jonathan Chasan from the Legal Aid Society Prisoner's Rights

10   Project for the plaintiffs.

11             THE COURT:  Good afternoon.

12             MR. LARKIN:  Your Honor, good afternoon.  For the

13   City, Arthur Larkin, L-A-R-K-I-N, and with me is Kim Savino

14   from the City Law Department.  Good afternoon.

15             MS. SAVINO:  Good afternoon.

16             THE COURT:  Good afternoon.

17             MR. PELTZ:  Alexander Peltz, Peltz & Walker.  We

18   represent the defendants William Massey and Santiago

19   [inaudible].

20             THE COURT:  Thank you.

21             MR. HOWELL:  Good afternoon, Judge.  Brian Howell

22   with the Law Offices of Richard Signorelli.  We represent

23   defendant Shante Jones [Ph.].

24             MS. SCHATZ:  Good afternoon.  Julie Schatz from

25   Koehler & Isaacs for defendant Sloly, Soto and Roman.

4

1          THE COURT:  Good afternoon.  Thank you all for

2     putting together the conference so we could all convene.  We

3     now have a stipulation with respect to class and most, if not

4     all, of the defendants' answers in, and I think it's an

5     appropriate time to talk about a schedule and talk about how

6     I'd like to resolve any issues as they may arise.

7          Have the parties had an opportunity to discuss

8     scheduling and do we have anything to present?  Ms. Talla.

9          MS. TALLA:  Yes.  Thank you, Your Honor.  Yes, the

10    parties have had a chance to discuss their discovery

11    production and the document production to date.  We do have a

12    proposal for Your Honor about the discovery deadlines today

13    that have already been set in this case as well as a proposal

14    going forward with respect to letter briefing for a few

15    discovery related disputes that we think we've conferred about

16    very extensively to date and will continue to do so but we

17    have a feeling that there will be a small number of disputes

18    that will remain and we have a proposed briefing schedule for

19    the Court on that.  You know, there were two other things that

20    we wanted to do if the Court will permit today.  One is to

21    just review what the plaintiffs have done with respect to

22    document review and what we think will need to happen in order

23    for us to maintain the current discovery deadlines to date,

24    and then to give you just a few issues that we thought would

25    be helpful to discuss with the Court today in advance of the

5

1  letter briefing to the Court.

2          THE COURT:  Okay.

3          MS. TALLA:  Just go into that.  You know, since our

4  last status conference in September the parties have been

5  working together I think very cooperatively with respect to

6  exchanging discovery requests, responses, objections, working

7  out as many objections as we can.  We've been working

8  obviously on the class certification issue, the defense

9  answer, and we feel as though we've really gone a good ways

10  into getting the documents we need.  I am going to just turn

11  over to my colleague, Amanda Raad, to talk about the documents

12  we've received and how we've been reviewing them.  Thank you.

13          MS. RAAD:  So one of the things in order to try to

14  talk about dates and when we think we can actually move things

15  along, we have been going through all the documents that we've

16  received so far and have received a large group of documents.

17  As you know, we had class certification discovery requests, so

18  production has been ongoing for some time now.  The documents

19  that we've been receiving have been inventoried and putting

20  tons of time in trying to make sure that we have a full set so

21  that we're able to start to kind of digest it and get through

22  it.

23          Assuming that we -- and we just received responses

24  to our last set of discovery that we served, our second set of

25  discovery that we served.  So assuming that we continue to get

6

1   these documents on a rolling basis and that they're given to

2   us in a way that we can identify by Bates range what the

3   documents are produced in response to, we're hopeful that we

4   can complete the production hopefully by July, end of July,

5   and that at the same time then we could start taking some of

6   the depositions to try to meet the deadline, the current set

7   deadline of December, 2013 for fact discovery.

8         Obviously, we won't be done reviewing all the

9   documents by the end of July assuming that that's when we get

10  them in, but our hope is that as long as we receive them in an

11  organized fashion we can prioritize the ones to allow us to

12  begin depositions for the individual defendants.

13        THE COURT:  Good.

14        MS. RAAD:  And so the hope again is that we would be

15  able to meet the current set deadline and try to stay on

16  track.

17        MS. TALLA:  So one of the things --

18        MR. LARKIN:  I was just going to say -- forgive me

19  for interrupting.  I apologize.  I was just going to suggest,

20  Your Honor, the end of July is reasonable for the document

21  production from our point of view certainly.

22        THE COURT:  Okay.

23        MS. TALLA:  All right.  So one of the things, Your

24  Honor, that we were hoping to get set today is we have our

25  second set of discovery requests outstanding on the City.

7

1  They just served objections and indications that they will

2  respond to some of them.  For the documents that they will

3  agree to respond -- I'm sorry.  Documents they will agree to

4  produce, we hope to have a July 31st deadline entered by the

5  Court as the date by which they produce those documents.

6            THE COURT:  I guess I heard that that was

7  acceptable?

8            MR. LARKIN:  I think that's fair and reasonable,

9  yes, Your Honor.

10            THE COURT:  Okay.

11            MS. TALLA:  Thank you.  Now, with respect to the

12  letter briefing schedule, as I mentioned, we have a few areas

13  that we think will remain in dispute between the parties.  We

14  had hoped if the Court permits to have a schedule by which we

15  would submit, each party would submit letters to the Court by

16  this Friday, March 22nd, setting forth the parties' position on

17  the remaining disputes and then response letters would be

18  submitted to the Court by April 5th.  And then if the Court

19  thinks it's productive then we would certainly request that we

20  have the opportunity to do this, to have oral argument or a

21  hearing before the Court the week of April 8th.

22            THE COURT:  And that's a joint application?

23            MS. TALLA:  This is a joint application.

24            MR. LARKIN:  Yes it is, Your Honor.

25            THE COURT:  That's fine with the exception of the

8

1   week of the 8th which I don't know whether that's going to work

2   but I will certainly make every effort and we will get back to

3   you folks and arrange a date.

4           MS. TALLA:  Okay.  Then that obviously we will work

5   with the Court on that.  And so the March 22nd and April 5th

6   will be the deadlines for the letters and responses.

7           THE COURT:  Yes.

8           MS. TALLA:  Okay, great.  Thank you.

9           And then finally, there's just a few outstanding

10  matters that we wanted to preface for the Court.  One is the

11  issue of class notice.  The parties have agreed as to the

12  content of the class notice and an order for the form of an

13  order for the Court to use to enter the class notice into the

14  record as the one that is being distributed and posted and the

15  date by which it should be done.  So we plan to submit that to

16  the Court for consideration later this afternoon.

17          THE COURT:  That's good.

18          MS. TALLA:  Then the next issue has to do with the

19  fact that some of the documents produced by the City have what

20  we understand to be protected health information of inmates.

21  And again, I will just turn this over to Ms. Raad to discuss.

22  Thanks.

23          MS. RAAD:  This is an issue that should be fairly

24  short and easy hopefully, and we have spoken with Mr. Larkin

25  with the City about this.  So as you can imagine, in some of

9

1   the materials that we're receiving there is information for

2   the medical records and other medical information such as

3   mental health records, HIV records that are subject to various

4   protections, so there's obviously HIPAA and then there's in

5   addition New York privacy laws.

6               Generally speaking, you know, we would go about

7   getting a release from each person and deal with it in that

8   way.  We obviously have a protective order in place here.  But

9   given that the class issues here, the need to look at large

10  volumes of documents including the use of force reports that

11  contain this information within them, we would like to seek

12  additionally protection or an additional hopefully stipulation

13  once we agree to the terms of it, an order saying that this

14  information is being produced in the interest of justice and

15  will be protected as confidential, maintained as confidential

16  with additional protection just to recognize that we do

17  understand there is protected health information, sensitive

18  information contained therein.  And it's based -- our reason

19  for suggesting this, there is a case, a New York case, Brad H,

20  that is from several years ago, but it alludes to the fact

21  that it would be enough just to have a protective order

22  potentially, but also there is a finding in that case that

23  there's an additional order from the court saying that the

24  production is in the interest of justice.  And so to be safe

25  and make sure we're taking that into account, we've drafted a

10

1  stipulation, Your Honor, conferring on the terms of that now

2  and hope to submit it to the Court by Friday for your

3  consideration.

4          THE COURT:  That sounds fine.  What's the extent of

5  dissemination if you will of the potentially private health

6  information under the terms you've been discussing?

7          MS. RAAD:  So it's similar to the terms in our

8  protective order, so it would not be shared with anybody

9  except potentially experts that are to be used in the case.

10 And frankly, I mean I think we would go a step beyond that and

11 to the extent it's not necessary, we won't share it at all.

12 Right.  But there are certain things such as the mental health

13 characterizations.  You know, the law I think is written as

14 such to say that even designating a facility where they do

15 mental health treatment can be on the gray line.  So we'll

16 treat it with utmost care and not disseminate any further than

17 necessary to pursue the case.

18         THE COURT:  I guess that's the question.  I would

19 think that counsel and the experts are pretty much the extent

20 of it.

21         MS. RAAD:  Yes.

22         THE COURT:  Okay.

23         MS. TALLA:  Thank you, Your Honor.  So there are

24 really only two final things we want to discuss today.  One is

25 just to clarify one thing I had previously discussed which has

11

1  to do with the defendants' responses to the plaintiff's second

2  set of discovery requests.  We agreed to the July 31st

3  deadline.  I just want to clarify that it will be a rolling

4  production by defendants as they've done in prior cases in

5  response to our prior discovery requests and we would want

6  that to start as soon as it can happen.

7         MR. LARKIN:  Most definitely.  I mean as I get

8  documents from the Department of Correction, Your Honor, we're

9  going to endeavor to review them, redact if appropriate, and

10 produce as we get them.  I don't want to wait until the very

11 end to produce them, so rolling production is appropriate I

12 think.

13        THE COURT:  What's the form of production for these

14 documents?  They all coming out in paper or --

15        MR. LARKIN:  We're producing CDs in Concordance load

16 format, right, so that they can be used in a document

17 management system, Concordance document management system.  It

18 just makes it much easier.

19        THE COURT:  In what form are they being produced?

20 Are they TIFF or PDF or --

21        MR. LARKIN:  That's a good -- I'm told it's

22 Concordance load.  Now, I'm not the expert.  When I put them

23 in my -- when I put the disk into my computer to look at them,

24 I think they come up at TIFFs.

25        THE COURT:  Okay.

1          MR. LARKIN:  So in addition to the TIFFs there's

2    also associated data that's produced with the documents as I

3    understand it that enables them to be loaded into a

4    Concordance database.  That's kind of the way we've been doing

5    it.

6          THE COURT:  Got it.

7          MS. TALLA:  That's correct.  The only thing that

8    we're struggling with a little bit right now is just being

9    able to -- because the inventory is literally taking an

10   extraordinary amount of time, even though they're searchable,

11   right now we're unable to determine which ones are in response

12   to which requests, which Bates range is in response to which

13   requests, and so we can't really prioritize our review based

14   on whether or not it's implicated by a potential -- a

15   potential defendant is implicated or whether or not it's a

16   Class A use of force incident or a Class B use of force

17   incident.  And so to the extent that we can make sure that we

18   are given the Bates range in response to requests, we'll be

19   able I think to make a more productive kind of progress to

20   actually going through and reviewing everything.

21          On that similar point we've had a little bit of an

22   issue with double production.  You know, we've talked a little

23   bit about this and I think we conferred a little bit with

24   sometimes we're getting -- and I'll let you talk to it in a

25   minute.  There are something called facility packages and then

13

1   ID files and we're getting copies sometimes of a facility

2   package and then separately sometimes getting copies of an ID

3   file which contains the facility package within.  And so we're

4   reviewing things twice which of course slows us down and we

5   don't really have a way to separate those out.  So I think

6   it'll be really important to try to ensure that we have some

7   kind of overview governing document or the Bates ranges at a

8   minimum identified.

9          THE COURT:  Let me ask you a question about that.

10  If the individual files contain the facility files, why are we

11  producing the facility files at all?

12         MS. TALLA:  I'll let you lead on this issue.  I

13  think honestly I think, and I should let Mr. Larkin speak as

14  well, I think some of it was probably from an efficiency

15  perspective from where they were collecting the documents

16  from.  I'm not exactly -- I can't speculate as to that.

17         MR.  LARKIN:  I mean I can address some of this.  I

18  typically -- we got requests for three month snapshots of use

19  of force files for a certain say time period.  I'll just pick

20  an example, January to April 2010 let's say from all the

21  jails.  So we would go back to -- we went to our client and

22  asked them to gather all that material.  And they gathered

23  facility packages from OSIU which is a central location, and

24  also gathered ID files from ID.  Not every facility package

25  becomes an ID file.  In other words, the investigation

14

1   division doesn't investigate every single use of force

2   incident.  They only look at certain ones, the more serious

3   ones, allegations and so forth.  So there may have been some

4   duplication there.  It would have taken more time for us to go

5   through all the OSIU files and extract out those that

6   eventually became ID investigations, so we produced

7   everything.  So there may have been double productions there.

8   Due to the volume of material, I don't know how to prevent

9   that from happening in the future.  It just may happen.

10  You've got an extra set of the same -- if you've got an extra

11  set of the same documents, I suppose you can skip right

12  through them in terms of reviewing them.  I just don't know

13  how else to address that.

14          THE COURT:  I think I understand.  So there are some

15  number of facility packages that don't have an associated --

16          MS. TALLA:  Well, Your Honor, I'm sorry to

17  interrupt.  This is actually our last issue and I think that,

18  you know, it's important, it's an exceedingly important issue

19  for us and so one that I think it's important for us to

20  discuss today as well as discuss further in letter briefing if

21  we need to do so.  But you know, what ID does with respect to

22  each and every use of force incident is really the heart of

23  our case.  You know, whether or not they're doing adequate

24  reviews, whether they're reviewing all the documents they

25  should be, whether they're following their own policies in

15

1  conducting investigations and reviews.  And our understanding

2  of DOC policy has been that for each and every use of force

3  incident, the investigation division does a review, and that

4  review can consist of either opening a full fledged

5  investigation or doing some more summary level review but one

6  in which their substantive remarks and review is memorializing

7  a document.  So for each and every use of force incident there

8  is a quote/unquote ID file and that ID file could be at the

9  full investigation or it could be some summary but yet

10 substantive review of what the facility has done with respect

11 to that use of force incident.

12      So the productions that we received to date, my

13 understanding is the vast majority are just facility level

14 reviews and that corresponding to those facility level reviews

15 there should be an ID file, whether the ID file is a full

16 investigation or some summary review, and we just haven't yet

17 received an explanation for why we haven't gotten the ID file.

18 And certainly once we get the ID file, we don't need anything

19 related to the facility level documents because all of it

20 would be contained within the ID file.

21      THE COURT:  And that would be true for 100% of the

22 incidents according to your understanding.

23      MR. LARKIN:  Now, if I can just interject one thing,

24 that's not my understanding.  My understanding is that -- and

25 I've gotten, I confess, Your Honor, I've gotten two different

1   versions from my client.  One version was that there is, as

2   Ms. Talla had just explained, some ID review of every

3   incident.  And I spoke to my liaison within the last two weeks

4   or so and I was informed that in fact that ID does not look at

5   every single package, they only look at certain ones.  And

6   they certainly only do a full investigation in a narrower

7   subclass of those that they even take a look at.

8           So what I have represented to the plaintiffs that

9   I'm going to do is I'm going to sit down with the folks at ID

10  sometime this week and get my head around exactly what

11  documents are there and what their practices are.  And there's

12  no disagreement that whatever there is that ID has I think the

13  plaintiffs are entitled to, whether it's a checklist or

14  whether it's a full investigation or if it's nothing, then

15  they will be informed that it's nothing.  So I've suggested

16  that I can do that this week and I can get some answers to

17  them about that this week and we can get our heads around what

18  other documents, if any, are out there that we haven't yet

19  given them.

20          THE COURT:  Let me make a suggestion in that regard.

21  It may facilitate communications if in the process of that

22  inquiry, which sounds like it's purely a recordkeeping

23  inquiry, that you involve plaintiff's counsel.  That way the

24  questions can be asked and we're not going to be playing

25  telephone.

17

1          MR. LARKIN:  Well, I have no problem having a

2  discussion with my client.  I mean I know what the issue is

3  and I don't think it's all that complex.  And frankly, I would

4  prefer to do that, we would prefer to do that ourselves and,

5  you know, we can do it and if questions remain I'm happy to

6  follow up with the client.  I am sure that the folks at ID at

7  some point are going to be deposed in the case and they'll be

8  asked their questions about the investigations, the procedures

9  and the practices in the investigations division.  But I think

10  I have a good handle on what the questions are.  And if

11  there's a need for further discussion, I'm happy to have that

12  discussion with plaintiffs.

13          MS. TALLA:  Well, Your Honor, you know, this is an

14  issue that we've been raising with Mr. Larkin since December

15  and we've had ongoing conversations.  And Mr. Larkin has been

16  conferring with his client and providing us with as much

17  information as he's been able to.  But it is a really

18  important issue not only for the substantive allegations, but

19  just as Ms. Raad has described, in terms of DOC review and DOC

20  production for us to know what's coming, what's out there so

21  that we're not duplicating work and we can be efficient about

22  our document review.

23          We have gone ahead and noticed a deposition, a

24  30(b)(6) deposition, on this particular issue of what

25  investigative division's current recordkeeping and current

18

1    record creation policies are.  To the extent that there are

2    now some files that investigative division does absolutely no

3    review, that is a big change from what their policy has been

4    in the past and what we understand it to be.  So we definitely

5    would want some sort of sworn testimony as to the fact that

6    they now no longer do review.  You know, to the extent Mr.

7    Larkin is able to have the conversation with his client and

8    really provide us an answer by a specific date, then there

9    would be no need to have the 30(b)(6) deposition, but at this

10   point we've noticed it and we would like to take it.

11          MR. LARKIN:  I have no objection again.  I don't

12   think the deposition is necessary, Your Honor.  I'm happy to –

13   – you know again, I think as the Court recognized it's a

14   pretty simple recordkeeping matter and there isn't any dispute

15   as to what materials the plaintiffs are entitled to.  I'm

16   certainly not objecting to producing records from ID

17   concerning uses of force.  That's what the case is about.  And

18   we may want to rely on some of that stuff from a 26(a)

19   standpoint.  So I think we would want to make sure that we got

20   to them.  So it's certainly in our interest to make sure that

21   we get this, pull this stuff together and get this information

22   for the plaintiffs.  And I've suggested that I'm going to try

23   to schedule something this week because I'm going to be out

24   next week.  But I'd like to try and nail this down this week,

25   and for us.

1      THE COURT:  Well, I appreciate the desire to move

2  forward quickly and, you know, to the extent that you can do

3  it and obviate the need for a 30(b)(6) deposition of the

4  record keeper, so be it.  You're welcome to go that route but

5  if we end up having to have a deposition, we'll do that.  What

6  else?

7      MS. TALLA:  Okay.  I think if you don't mind, Your

8  Honor, I would just like to confer with co-counsel for one

9  second.

10      THE COURT:  Sure.

11      MS. TALLA:  Is there anything that you wanted to

12  raise?

13      MR. LARKIN:  I would expect that we'll have some

14  issues concerning our discovery demands unless we can work

15  them all out with plaintiffs, but we'll address those in the

16  letter to the Court.

17      THE COURT:  Fair enough.

18      MS. TALLA:  I think, Your Honor, the last issue just

19  has to do with this issue of double production, and to the

20  extent that the City continues to produce some facility files

21  separate from later producing investigative division files

22  that contain within it that same previously produced facility

23  files, we would want some identification of the Bates range of

24  the previously produced documents that are now corresponding

25  with whatever the later productions are.  So we're not going

20

1   back and forth trying to match up productions.

2           MR. LARKIN:  Well, I guess all I can say is that if

3   there is a subsequent production of ID documents that are

4   related to a facility use of force package, it'll have the

5   number clearly marked on it.  Every facility package has a

6   clear number.  They're numbered sequentially one through

7   whatever chronologically January 1 at 12 midnight to December

8   31 at 12 midnight, one through however many there are slash

9   the year.  So 250 of 2012.  The package will be clearly marked

10  with that number and the ID documents will be clearly marked

11  with that number.  So all the documents we're producing are

12  searchable.  All you'd have to do is put into the database the

13  number and the range will come up.  We could do that or they

14  could do that.  The process would be the same.  So it seems to

15  me the burden would be equal on both sides.  So I don't know

16  why we should have to bear that burden of identifying Bates

17  ranges and then supplying some sort of list to the plaintiff's

18  counsel.

19          MS. TALLA:  Well Your Honor, I think that, you know,

20  if defendants choose to produce things which are not a

21  consolidated fashion, which I think is the most efficient way

22  to produce it, then they should bear the burden of identifying

23  what the correspondences are between the previous and the

24  subsequent productions.

25          THE COURT:  Well, I'm not going to require the City

1   to do that for a couple of reasons.  One is that they're

2   producing in the way these documents are normally kept in the

3   course of business which is appropriate.  And the fact that

4   they happen to be kept in duplicate in the normal course of

5   business is a function of the system.  Secondly, I'm not

6   entirely sure that it is desirable to have the City de-

7   duplicating these documents if you will because there may be –

8   – the fact that they appear in both places may turn out to be

9   of some significance.  So I don't know that we want to do

10  that.

11          MS. TALLA:  Well, Your Honor, you know, just to be

12  clear about plaintiff's position, in our document request

13  we're really requesting one set of documents, the files as

14  they are held in the ordinary course of business by the

15  investigative division.  So we haven't made this request for

16  facility and then later investigative division files that may

17  be duplicative.  You know, the City has chosen to produce it

18  to us in that way.  It's not the way that we requested it.

19  You know, as to Your Honor's point about maybe there's some

20  reason why the City wants to produce it in duplicate fashion,

21  I'm just not sure about that.  You know, I think what we

22  really want is just one set of files from the investigative

23  division that would contain everything relating to a use of

24  force in that one place.

25          MR. LARKIN:  Well again, I don't know that all use

22

1   of force files are with ID.  I think some of them may just be

2   facility packages in which case I'd have to get them from the

3   central location where they're stored.  And to the extent that

4   there are additional documents from ID that relate to those

5   files, again, there's no dispute that they're required to be

6   produced, but I did not understand the document request to be

7   limited to the ID file.  I mean I understood the request to be

8   any documents related to use of force incidents whether

9   they're ID files, whether they're facility packages only or

10  both.

11        THE COURT:  Well, that may be, but if you're getting

12  a stipulation now that all they want are the ID files, you

13  know, ease your burden.

14        MR. LARKIN:  Well, if there's no -- if the

15  plaintiffs do not want documents concerning incidents that

16  were only investigated at the facility level, if that's what I

17  understand it to be, that would be a change in what I thought

18  the request was for.

19        MS. TALLA:  I think we probably need to wait and

20  resolve the issue that's going to be hopefully resolved

21  without a 30(b)(6).  But frankly, I mean we clearly have

22  different views on whether the ID files contain everything or

23  not.  Our view is that the ID file exists for every use of

24  force incident.  And so we are of the belief that if you go to

25  the investigation division and request all the use of force

23

1  files that we would get the full set.  If that turns out not

2  to be true, then I agree that we need to proceed in the way

3  that we've proceeded.  So I think at this point we probably

4  need to resolve that issue before we make any kind of final

5  decision on it.

6          THE COURT:  Fair enough.  Anything else?

7          ALL:  No, Your Honor.

8          THE COURT:  Let me recap.  I'll give you a written

9  order on this, but my understanding is we're talking about a

10  production in response to the plaintiff's second set of

11  requests to be completed by July the 31st but on a rolling

12  basis with respect to open issues.  Letter briefs will be

13  provided by this Friday the 22nd, responsive letters by April

14  the 5th, and oral argument the week of April the 8th or as soon

15  thereafter as we can schedule.  Anything I left out?

16          MS. TALLA:  No, Your Honor.  Thank you.

17          THE COURT:  Thank you all.

18          ALL:  Thank you.

19                    *  *  *  *  *  *

20

21

22

23

24

25

24

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5      _____

6                                    Mary Greco

7  Dated:   April 4, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25