```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MARK NUNEZ, et al.,                  :   11 Civ. 5845 (LTS) (JCF)
                                     :
           Plaintiffs,               :      MEMORANDUM
                                     :      AND  ORDER
     - against -                     :
                                     :
CITY OF NEW YORK, et al.,            :
                                     :
           Defendants.               :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

     This is a prisoners' civil rights case in which twelve present
and former inmates allege that they were subjected to a pattern and
practice of excessive force by employees of the New York Department
of Correction ("DOC") in violation of the Constitution and federal
and state law.   The plaintiffs seek declaratory and injunctive
relief on a classwide basis[1] as well as damages for their
individual injuries.  Both parties seek to compel certain discovery
from the other.

Background

     A.   Factual Background

     This is the sixth federal class action brought against the
City of New York ("City") in twenty-five years that alleges the use
of excessive force in jails operated by the DOC.  (Second Amended
Complaint ("2d Am. Compl."), ¶¶ 1-3, 5); see Ingles v. Toro, No. 01
Civ. 827 (S.D.N.Y.) (use of excessive force in all DOC jails);

---

[1] The class includes present and future inmates in all New
York City jails except the Eric M. Taylor Center ("EMTC") and the
Elmhurst and Bellevue Prison Wards.

1

Sheppard v. Phoenix, No. 91 Civ. 4148; Jackson v. Montemango, No. 85 CV 2384 (E.D.N.Y.) (use of excessive force in Brooklyn House of Detention); Reynolds v. Ward, No. 81 Civ. 101 (S.D.N.Y.) (use of excessive force in Bellevue Prison Psychiatric Ward); Fisher v. Koehler, No. 83 Civ. 2128 (S.D.N.Y.) (use of excessive force in Correction Institution for Men, now known as Eric M. Taylor Center).  The plaintiffs contend that the orders and settlement agreements entered into in those prior lawsuits no longer protect DOC inmates against the use of unnecessary and excessive force beyond the confines of EMTC and the hospital prison wards.  (2d Am. Compl., ¶ 4).  They claim that the DOC jails "remain afflicted by the same culture of violence, the same failure of accountability, and the same deliberate indifference and active acceptance" of the use of unnecessary and excessive force, and that "[c]onditions in the jails have deteriorated markedly."  (2d Am. Compl., ¶ 5).

The defendants include uniformed correction officers, supervisory staff, wardens of several DOC facilities, high-ranking officials at DOC, and the City.  (2d Am. Compl., ¶¶ 10-28).

The complaint alleges that despite training DOC staff supposedly receives and despite the placement of video cameras in some parts of the DOC jails, DOC correction officers continue to use unnecessary and excessive force, often in unmonitored areas. (2d Am. Compl., ¶¶ 5, 30-31, 62-65, 69-70, 74, 78-83, 90-98, 105-108, 114-115, 118, 123-125, 131-132, 137-140, 146-149, 154-157, 162-165).  DOC captains are alleged to have ordered, participated, or otherwise witnessed these incidents and taken no steps to

prevent injuries to the inmates.  (2d Am. Compl., ¶¶ 36, 67, 69, 76, 83, 93, 103, 112, 118, 121, 128, 139-140, 144, 157, 160, 171).

As a result of these incidents, inmates have suffered from a range of injuries, many of which required emergency medical care or hospitalization and resulted in severe and permanent injury.  (2d Am. Compl., ¶ 32).  Individual plaintiffs have suffered physical injuries, such as multiple fractured ribs, pleural effusion, and traumatic hemothorax; orbital fracture requiring surgery; perforation of the tympanic membrane causing diminished hearing and tinnitus; acute mandibular fracture requiring the jaw to be wired shut for three months; fractured bones including the wrist, jaw, and nose; nerve damage; facial laceration requiring stitches; and severe concussion causing permanent neurological damage.  (2d Am. Compl., ¶¶ 32, 71-73, 84-86, 99-100, 109-100, 110, 116, 119, 126, 133, 150, 159, 166).  They also continue to suffer emotional injuries, such as flashbacks, nightmares, cold sweats, anxiety, depression, insomnia, and post-traumatic stress disorder.  (2d Am. Compl., ¶¶ 66, 87, 101, 126, 134, 143, 151, 159, 169).

Further, DOC staff purportedly falsify documents or fabricate claims against the inmates in order to cover up these incidents (2d Am. Compl., ¶¶ 33-36, 95, 102, 111, 117, 120, 127, 140-142, 157-158, 170), and the investigations conducted by DOC are allegedly unreliable, "crediting the most outlandish staff accounts and attributing blame to, and punishing, the victims of assaults rather than the perpetrators."  (2d Am. Compl., ¶¶ 5, 35).

The plaintiffs contend that the supervisory defendants and

high ranking DOC officials know about this pattern and practice of the use of excessive force in DOC facilities and the sham investigations, yet fail to curb such practices, and instead, perpetuate such conduct. (2d Am. Compl., ¶¶ 37, 40-46, 51, 54). Moreover, the plaintiffs allege that "the worst violators" of DOC's use of force policy are not disciplined or fired but, in some cases, are promoted. (2d Am. Compl., ¶¶ 5, 39, 50).

     B.  <u>Procedural History</u>

On August 18, 2011, plaintiff Mark Nunez filed a <u>pro</u> <u>se</u> complaint, alleging the use of excessive force at a DOC facility. The First Amended Complaint was filed by counsel on May 24, 2012, asserting, among other things, class and individual claims against the City as well as staff, supervisory personnel, and high ranking officials at the DOC, alleging a pattern or practice of the use of excessive force and deliberate indifference to this pattern. On September 4, 2012, the Second Amended Complaint was filed. A class was certified by stipulation and order on January 7, 2013.

On September 6, 2012, the plaintiffs served their first set of document requests relating to class certification, and each named plaintiff served an individual discovery request. (Letter of Katie Rosenfeld and Vasudha Talla dated March 22, 2013 ("Pl. March 22 Letter") at 1). On December 21, 2012, the defendants served their first set of interrogatories and document requests. (Defendants' First Set of Interrogatories and Request for Production of Documents to Plaintiffs ("Def. 1st Interrog. and Doc. Req."), attached as Exh. A to Letter of Arthur G. Larkin dated March 22,

2013 ("Def. March 22 Letter")).  The plaintiffs served a second set of document requests related to their class allegations on February 7, 2013.  (Pl. March 22 Letter at 1).

The plaintiffs and defendants have filed letter applications seeking to compel the other party to respond to their discovery requests, and a status conference was held before me on April 18, 2013.  Currently, there remain numerous outstanding discovery disputes.  (List of Outstanding Discovery Disputes ("List of Disputes"), attached as Exh. A to Letter of Katherine R. Rosenfeld and Vasudha Talla dated May 2, 2013 ("Pl. May 2 Letter")).  I will address each in turn.

<u>Discussion</u>

A.   <u>Legal Standard</u>

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."  <u>Condit v. Dunne</u>, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); <u>see also</u> <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978) (relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").  Indeed, "the 'right of litigants to discover and present relevant evidence in civil litigation is given great weight in federal courts.'" <u>Mays v. Town of Hempstead</u>, No. 10 CV 3998, 2011 WL 4345164, at *2 (E.D.N.Y. Sept. 15, 2011) (quoting <u>Apicella v. McNeil Laboratories,</u>

Inc., 66 F.R.D. 78, 82 (E.D.N.Y. 1975)).  Moreover "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The burden of demonstrating relevance is on the party seeking discovery.  See, e.g., Mandell v. Maxon Co., No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

"Once relevance has been shown, it is up to the responding party to justify curtailing discovery."  Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York, 284 F.R.D. 132, 134 (S.D.N.Y. 2012) (internal quotation marks omitted).  "[T]he court must limit the frequency or extent of discovery" where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).  Rather, "[a] party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction

6

afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . submitting affidavits or offering evidence revealing the nature of the burden.'" <u>Vidal v. Metro-North Commuter Railroad Co.</u>, Civil No. 3:12CV248, 2003 WL 1310504, at *1 (D. Conn. March 28, 2013) (alteration in original) (quoting <u>Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.</u>, 105 F.R.D. 16, 42 (S.D.N.Y. 1982)).

    B.   <u>Plaintiffs' Discovery Demands</u>

       1.   <u>Use of Force Files Including Media Files Involving Named Defendants</u>[2]

The plaintiffs seek Use of Force ("UOF") files involving the named defendants, and in particular the media contained in the files such as the surveillance videos of the incidents and audio recordings of MEO-16 interviews.[3] (Pl. March 22 Letter at 2 & n.1). The defendants have agreed to produce (1) all UOF files, but not media, involving the named defendants from January 1, 2000, to December 31, 2009, and (2) all UOF files including media for all incidents occurring after January 1, 2010, to the present. (Letter

_____

[2] Plaintiffs' Class Certification Discovery Requests Numbers 1-2; Plaintiffs' Individual Discovery Request Number 14. (List of Disputes at n.3; Pl. March 22 Letter at 2 n.1).

[3] MEO-16 interviews are conducted by DOC's Investigation Division ("ID") pursuant to Mayoral Executive Order 16, which requires City employees to give sworn testimony relating to their performance of official duties. (Pl. March 22 Letter at 2 n.2). While ID investigators prepare written summaries of the MEO-16 interviews, the plaintiffs allege that the summaries are "often riddled with errors and omissions," and therefore they need the actual audio of the interviews to have a complete and accurate understanding of the contents of these interviews. (Pl. March 22 Letter at 2 n.2)

of Arthur G. Larkin dated May 1, 2013 ("Def. May 1 Letter") at 1).[4]
According to the defendants, this production would consist of
approximately 2,000 UOF files in which the named defendants were
involved, including approximately 900 files containing media.
(Def. May 1 Letter at 1).  It would, however, exclude media, if
they exist, for 1,100 pre-2010 UOF incidents involving the named
defendants and 198 UOF incidents that occurred prior to January 1,
2000, involving the named defendants.  (Def. May 1 Letter at 2).

The defendants argue that post-2010 UOF incidents are the most
relevant to the plaintiffs' claims and that the burden of searching
and producing old UOF files and media is substantial.  (Def. May 1
Letter at 2; Transcript of Civil Cause for Status Conference dated
April 18, 2013 ("Tr.") at 46).  The plaintiffs contend that the
media contained in all UOF files involving the named defendants are
relevant to both their class and individual claims.  (Pl. May 2
Letter at 1).  They argue that "the only way to properly analyze
the underlying UOF incident and corresponding investigation is to
review the videos, photographs and recorded MEO-16 interviews used
in the investigation" (Pl. March 22 Letter at 2), and that an
independent review of the media would enable them to assess both
the individual defendants' credibility as well as the efficacy of
the DOC's investigation process (Pl. May 2 Letter at 1).  The
plaintiffs have met their burden of establishing the relevance of

---

[4] The defendants have agreed to produce media contained in all
UOF files involving the named plaintiffs, involving Class A UOF
incidents, and from a select list of UOF files that the plaintiffs
will request after they conduct an initial review of the UOF files
produced by the defendants.  (Pl. March 22 Letter at 2).

the media contained in the UOF files involving the defendants.

Similarly, UOF files involving the named defendants regarding incidents prior to 2000 are also relevant to the plaintiffs' claims. UOF incidents involving the named defendants that predate 2000 would support the plaintiffs' assertion that "the worst violators of the [DOC]'s written use of force policy are not seriously disciplined or fired; instead, the same persons who were . . . cited administratively for excessive force violations when they were correction officers or captain are . . . deputy wardens, wardens, and in some cases stand near the top of the [DOC]'s administrative hierarchy." (2d Am. Compl., ¶ 5; Pl. May 2 Letter at 2). In addition, this material is reasonably calculated to lead to discovery of evidence to support the plaintiffs' claims against the supervisory defendants and the City. (Pl. May 2 Letter at 2; Letter of Katie Rosenfeld and Vasudha Talla dated April 12, 2013 ("Pl. April 12 Letter") at 12 n.10). When asserting a <u>Monell</u> claim, plaintiff is required to prove a pattern or practice, and therefore "[t]he date[s] of the incidents do not render the records less likely to lead to evidence admissible at trial." <u>Frails v. City of New York</u>, 236 F.R.D. 116, 118 (E.D.N.Y. 2006) (rejecting defendant's proposed ten-year limitation to production of documents relating to <u>Monell</u> claim); <u>see</u> <u>Bradley v. City of New York</u>, No. 04 Civ. 8411, 2005 WL 2508253, at *2 (S.D.N.Y. Oct. 3, 2005) (pattern of complaints over twenty-year period is "highly relevant"). Accordingly, UOF files involving the named defendants prior to 2000 are relevant.

The defendants argue that burden of searching for media contained in UOF files is substantial because they are not stored in a centralized location, requiring counsel to identify which files contain media, obtain the media from various DOC facilities, and copy them. (Def. May 1 Letter at 2). This burden, however, appears to be in part the defendants' own making. In producing UOF files predating 2010, the defendants chose to produce files that were in the Law Department's possession from prior litigation and did not contain media, rather than to search DOC's files. (Def. May 1 Letter at 2). The plaintiffs have offered to identify which of the UOF files that have already been disclosed contain media (Pl. May 2 Letter at 1-2), and the defendants have agreed that if the plaintiffs identify which files contain media, they will retrieve and produce the media. (Tr. at 31). Moreover, plaintiffs' counsel represents that based on their prior experience with DOC, during "at least some of the relevant period," media are stored centrally as digital files and are easy to obtain and copy. (Pl. May 2 Letter at 2; Tr. at 6-7). Accordingly, the defendants are directed to produce all UOF files involving the named defendants and the media contained in those files as identified by the plaintiffs.

### 2.   Confidentiality Designation

The plaintiffs object to the defendants' categorical designation of documents as confidential. (Pl. March 22 Letter at 3). The defendants have agreed to attempt to resolve any differences with the plaintiffs on this issue, and if unsuccessful

would move for a protective order pursuant to the procedures
outlined in the Amended Protective Order Concerning Confidential
Information.  (Letter of Arthur G. Larkin dated April 12, 2013
("Def. April 12 Letter") at 4; Amended Protective Order Concerning
Confidential Information, attached as Exh H to Pl. April 12 Letter,
¶ 5).  I shall reserve decision with the understanding that if the
parties are unable to resolve this issue among themselves, the
defendants may move for a protective order.

   3.   <u>Location of Stationary Cameras</u>[5]

   The defendants have agreed to produce schematic drawings of
the jails that identify the locations of stationary cameras to the
extent that they exist.  (Tr. at 46).  Accordingly, this issue is
resolved.

   4.   <u>24-Hour Reports</u>[6]

   The plaintiffs seek 24-Hour Reports[7] that "'reflect[] UOF,
Allegations of UOF and/or Unusual Incidents involving any inmates"

---

[5] Plaintiffs' Class Certification Discovery Requests Number 2;
Plaintiffs' Individual Discovery Requests Number 12.  (List of
Disputes at n.4; Pl. March 22 Letter at 3 nn.5 & 12).

[6] Plaintiffs' Second Set of Document Requests (Relating to
Class Allegations) Number 4.  (List of Disputes; Pl. March 22
Letter at 5 n.8).

[7] 24-Hour Reports are brief summaries of UOF incidents or any
"unusual incidents" in the jails made immediately after the
incident that identify the inmates and the staff involved, the type
of force used, and the injuries sustained.  (Pl. April 12 Letter at
12; Def. April 12 Letter at 5; Tr. at 9).  These Reports are
circulated throughout DOC and are provided to DOC's top supervisors
on a daily basis.  (Pl. April 12 Letter at 12).

11

from July 2008 to December 2009.[8]  (Pl. April 12 Letter at 12; Tr. at 9-10).  They assert that these Reports will provide "a snapshot back in time" about the individuals involved in these incidents and the types of incidents that occur at DOC facilities, and are necessary to prove a longstanding practice of deliberate indifference by the supervisory defendants and Monell liability (Tr. at 9, 42; Pl. April 12 Letter at 12).  As discussed, in the context of discovery for Monell claims, documents prior to the incident complained of may be relevant, and here the plaintiffs allege to have been subjected to the use of excessive force as early as 2009.  (Pl. April 12 Letter at 12).  Accordingly, documents dating back a little over a year to the first alleged incident are relevant.  See, e.g., Mays, 2011 WL 4345164, at *3 (finding "documents dating back seven (7) years . . . both relevant and reasonable regarding a pattern and practice claim"); Younger v. City of New York, No. 03 Civ. 8985, 2006 WL 1206489, at *1 (S.D.N.Y. May 2, 2006) (fact that records date back more than ten years "does not preclude relevance for purposes of discovery" when pursuing Monell theory).

The defendants argue that the 24-Hour Reports "[s]tanding alone . . . are of little value" without the corresponding UOF files, which they are not producing during that time frame except for UOF incidents involving the named defendants.  (Def. April 12 Letter at 5; Tr. at 33-34).  They also contend that since they will

_____

[8] The defendants have agreed to produce 24 Hour Reports from January 2010 and forward.  (Pl. April 12 Letter at 12; Tr. at 9).

be producing all UOF files for incidents from 2010 to the present as well as 2,000 UOF files involving the named defendants that occurred before 2010, all of which contain 24-Hour Reports to the extent that they exist, that the production of these additional Reports is cumulative. (Def. April 12 Letter at 5).

In light of the limited scope of the plaintiffs' request, its relevance to the plaintiffs' claims, and that the fact the Reports are electronically stored and readily retrievable (Tr. at 10), the plaintiffs' application is granted.

5.  Communications Between DOC and Government Entities[9] and Inmates Arrested for UOF Incidents[10]

The plaintiffs seek non-privileged communications about UOF incidents at DOC facilities between DOC and government agencies responsible for criminal justice policy and oversight, and between DOC and prosecutorial agencies responsible for investigating and prosecuting misuse of force.[11] (Pl. April 12 Letter at 13; Tr. at 10). Specifically, they request "any communication[] that go to the knowledge [or] the state of mind or [] the summary of use-of-force incidents and reporting of [those] incidents to any of these

_____

[9] Plaintiffs' Second Set of Document Requests (Relating to Class Allegations) Number 12. (Pl. April 12 Letter at 13 n.11).

[10] Plaintiffs' Second Set of Document Requests (Relating to Class Allegations) Number 21. (Pl. March 22 Letter at 5 n.15).

[11] These entities include "the Office of the Criminal Justice Coordinator, the Office of the Mayor, the Office of the Deputy Mayor for Health and Human Services, the DOI, the United States Department of Justice, any United States Attorney's Office or the offices of the Bronx County, Queens County, Kings County, Richmond County, or the New York County District Attorneys." (Pl. April 12 Letter at 13 n.11).

agencies." (Tr. at 10). This information, they contend, is reasonably calculated to lead to evidence that is relevant to the City's knowledge of and deliberate indifference to unconstitutional use of force practices as well as the supervisory defendants' knowledge, state of mind, and conduct. (Pl. April 12 Letter at 13).

The defendants have agreed to produce responsive documents if the plaintiffs limit their demands to communications between the "Commissioner's office and the Chief of Department's office, . . . or others above the rank of chief . . . [and] a specific subset of agencies, DOI, U.S. Attorney, Bronx DA's office;" otherwise, they contend that the plaintiffs' request is prohibitively burdensome. (Tr. at 34-35). The plaintiffs have agreed to limit their request to communications that can be obtained through "some kind of electronic discovery with a limited set of search terms designed to specifically address only use-of-force incidents and only to those agencies." (Tr. at 11, 42).

In addition, the plaintiffs suggest that their request for information about inmates arrested in DOC facilities during the period between January 1, 2007, and the present stemming from UOF incidents may be covered by their request for DOC's communication with prosecutorial agencies. (Tr. at 11). The defendants contend that UOF files will note whether inmates were arrested and the plaintiffs can seek documents related to the arrest from the appropriate courts. (Tr. at 35). However, the UOF files from 2007 to 2010 that the defendants are disclosing are limited to incidents

14

that involve the named defendants, and may not include other UOF incidents that resulted in inmate arrests.

Since it appears that the parties are in agreement that the scope of the plaintiffs' request should be narrowed using appropriate search terms, the parties are directed to engage in a cooperative effort to set the parameters for these searches.

      6.   <u>22R Forms</u>[12]

The plaintiffs seek 22R Forms[13] for each individual defendants. (Pl. March 22 Letter at 6).   The defendants contend that to the extent that these forms exist for an individual defendant, they are contained in the officer's personnel files which they have produced, and object to generating new 22R Forms solely for this litigation.   (Def. April 12 Letter at 9).   They claim that creating these documents for each defendant is burdensome, requiring them to call different divisions within DOC and manually generate the forms.   (Def. April 12 Letter at 9).

"'[A] request for documents does not include the obligation to create information of documents which a party does not control or posses.'"   <u>Vanbrocklen v. Gupta</u>, No. 09-CV-00897, 2011 WL 6012489, at *6 (W.D.N.Y. Nov. 7, 2011) (quoting <u>UB Foundation Activities, Inc. v. IT Healthtrack, Inc.</u>, No. 04-CV-443S, 2009 WL 4042937, at *5 (W.D.N.Y. Nov. 19, 2009)); <u>see also</u> <u>R.F.M.A.S., Inc. v. So</u>, 271

---

[12] Plaintiffs' Individual Discovery Requests Number 16.   (List of Disputes at n.5).

[13] A 22R Form is a form that lists the disciplinary history of an officer and is generated by DOC when a disciplinary proceeding is commenced against the officer.   (Def. April 12 Letter at 9; Pl. March 22 Letter at 6).

F.R.D. 13, 44 (S.D.N.Y. 2010) ("The discovery tools . . . do not provide any obvious basis for plaintiff to serve defendants with a request to create new documents to help plaintiff understand the existing evidence. . . . A responding party has only a limited obligation to organize requested documents in the manner preferred by the requesting party, and the Federal Rules evince a concern that discovery tools not be used to unduly shift the burden of analyzing evidence from the requesting party to the responding party." (internal footnotes omitted)).  Since the plaintiffs have the individual defendants' personnel files which include the defendants' disciplinary history and since the basis for requesting 22R Forms is merely that they are an "easy-to-understand [] list or index" of the defendants' disciplinary history (Tr. at 13), the plaintiffs' request is denied.  However, if the defendants create 22R Forms for individual defendants in the future, they must serve a timely supplemental discovery response that includes the newly-generated forms.  Robbin & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 77 (W.D.N.Y. 2011) (noting that when party "at a later time creates another responsive document which the party then knows, or reasonably should know, is materially within the scope of the earlier request most certainly 'learns' of the existence of the document thereby triggering the duty to timely serve a supplemental response bringing the fact of its creation and existence to the attention of the adversary party").

7.   Logbooks, Rosters, Sign-In Sheets, and Photographs[14]

In order to identify unnamed John Doe defendants, the plaintiffs seek logbooks, rosters, sign-in sheets, and photographs of DOC staff who were at the DOC facility during, before, and after the eight UOF incidents where there are still unidentified defendants. (Pl. March 22 Letter at 7; Tr. at 13-17).  As to the logbooks, rosters, and sign-in sheets, the defendants contend that this request should be limited to the time period when the incidents occurred.  (Tr. at 37).  However, since the plaintiffs allege that the unidentified defendants were not necessarily assigned to the area where the incidents took place or were working at the DOC facility either just before or after the tours during which the incidents occurred (Tr. at 14), their request is reasonably calculated to lead to the identification of the John Doe defendants and the limitations the defendants propose are inappropriate.  See Medina v. Gonzalez, No. 08 Civ. 1520, 2010 WL 3744344, at *12-13, 17 (S.D.N.Y. Sept. 23, 2010) (noting that court ordered production of roster and photograph of all DOC staff working at facility on day of incident to allow plaintiff to identify potential witnesses and John Doe defendants).

As to the photographs of DOC staff, the defendants suggest preparing photographic arrays, which they would be willing to provide to plaintiffs' counsel in advance of the individual plaintiffs' deposition, to "insure the integrity of the

_____

[14]  O. Sanders Interrogatories Numbers 12-13; O. Sanders Document Requests Numbers 4-6, 21-22. (Pl. March 22 Letter at 7; List of Disputes at n.6).

17

identification process." (Tr. at 37-38). Since the plaintiffs' objection to the use of photographic array was that the defendants' originally proposed to present them at the plaintiffs' depositions (Tr. at 15), and the defendants have now agreed to provide them in advance, this dispute is resolved.

Similarly, in order to identify potential detainee witnesses, the plaintiffs seek logbooks showing movement of inmates within the facility and photographs of inmates in the housing area and medical clinics on the dates of the UOF incidents involving the individual plaintiffs. (Pl. March 22 Letter at 7; Tr. at 16). The defendants contend that the UOF files contain any statements by inmates whom staff interviewed or requested to interview, and that the plaintiffs' request therefore seeks a "'needle in a haystack,' [] the lone inmate witness who will corroborate plaintiff's version of events, but who, somehow was not known to DOC staff or anyone else when the incident happened." (Def. April 12 Letter at 10). However, the defendants' position is belied by their own objection to the plaintiffs' response to their interrogatory that seeks the identities of witnesses to UOF incidents when the plaintiffs directed the defendants to UOF and ID investigation files. (Def. March 22 Letter at 2). According to the plaintiffs, there is at least one inmate witness whose name did not appear in the UOF file. (Tr. at 17). To the extent that the plaintiffs have a good faith basis to believe that there were inmate witnesses to a UOF incident, the defendants shall provide the requested information to facilitate identification.

8.   Verifications

The defendants have agreed to provide verifications for each individual defendant's interrogatory response at that defendant's deposition. (Tr. at 22-23).

C.   Defendants' Discovery Demands

1.   Witnesses to UOF Incidents

As discussed, the defendants object to the plaintiffs' response to their interrogatory seeking the identities of witnesses to UOF incidents. (Def. March 22 Letter at 2). The plaintiffs contend that they have provided the names or physical descriptions of additional witnesses who were not identified in the DOC investigation to the extent that they are aware of any. (Pl. April 12 Letter at 3). If the plaintiffs later identify any witness to a UOF incident that has not been previously disclosed, they must provide this information.

2.   Injuries

The defendants, through interrogatories, seek a list of injuries that the plaintiffs are claiming, any treatment they received,[15] and their medical providers for the past ten years.[16] (Def. March 22 Letter at 2; Tr. at 20-21). The plaintiffs contend that they have listed each facility that has provided them medical treatment for the injuries that they have sustained as a result of a UOF incident and have agreed to identify and provide releases for all of their medical providers within the last ten years. (Pl.

---

[15]   (Def. 1st Interrog. and Doc. Req., Interrogatories, ¶ 4).

[16]   (Def. 1st Interrog. and Doc. Req., Interrogatories, ¶ 7)

19

April 12 Letter at 4; Tr. at 24-25). They assert that the "most practical method for accurately identifying the injuries" sustained by the plaintiffs is for the defendants to obtain the medical records documenting those injuries and their treatment. (Pl. April 12 Letter at 4).

Further, the plaintiffs argue that the interrogatories seeking a list of injuries and treatment exceed the scope of questions permitted by Rule 33.3 of the Local Rules of the United States District Courts for the Southern District of New York ("Local Civil Rules"). (Pl. April 12 Letter at 4). Under Local Civil Rule 33.3(a),

> [u]nless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature.

See Kunstler v. City of New York, No. 04 Civ. 1145, 2006 WL 2516625, at *5 (S.D.N.Y. Aug. 29, 2006) (noting that "Rule 33.3 presumptively limits interrogatories to request for witness names, computation of damages, and the location, custodian and general nature of pertinent documents"). A list of the plaintiffs' alleged injuries and treatment is presumptively excluded by Local Civil Rule 33.3, and the defendants acknowledge that they will have to review the medical records and depose the plaintiffs in any event. (Tr. at 24). Accordingly, the defendants' application is denied. See Kunstler, 2006 WL 2516625, at *5 (denying defendants' request

to compel response to interrogatory because "descriptions of the nature and extent of injuries, medical diagnoses, the course of treatment, and prescriptions are ordinarily more efficiently obtained through the production of pertinent medical records and through depositions" and exceed scope of Local Civil Rule 33.3).

The defendants also seek information as to whether any plaintiff has applied for Medicare or Medicaid within the past ten years, and, if so, when and in what jurisdiction,[17] and request releases for plaintiffs' Medicare or Medicaid records.[18] (Def. March 22 Letter at 6). The plaintiffs object on relevance grounds, contending that the Medicare or Medicaid records only list monetary reimbursements, and that the relevant information that the defendants seek can be obtained through the medical record releases that they have agreed to provide. (Pl. April 12 Letter at 6). The defendants have not articulated how Medicare or Medicaid records will provide any other information that will not be provided by the medical records for which they will have releases. Accordingly, these requests are denied. See Duncan v. City of New York, No. 12 CV 1565, 2013 U.S. Dist. LEXIS 1162, at *3-4 (E.D.N.Y. Jan. 28, 2013) (declining defendants' request for access to, among other things, plaintiffs' Medicare and Medicaid records).

### 3. Employment Records

The defendants seek information about the plaintiffs'

---

[17] (Def. 1st Interrog. and Doc. Req., Interrogatories, ¶ 10).

[18] (Def. 1st Interrog. and Doc. Req., Document Requests, ¶ 16).

employers for the past ten years[19] and request releases for the
plaintiffs' employment records.[20]   They claim that plaintiffs'
employment information is relevant to the plaintiffs' claims of
emotional injuries as well as to the plaintiffs' credibility if,
for example, the plaintiffs did not file tax returns or were fired
from a job for any reason, especially for acts of dishonesty.
(Def. March 22 Letter at 3).

The plaintiffs claim only "garden-variety emotional distress
damages" (Pl. April 12 Letter at 5; Tr. at 44), and where the
plaintiffs do not assert a claim for severe emotional injury,
employment records are not relevant.  See Duncan, 2013 U.S. Dist.
LEXIS 11162, at *4-5.

To the extent that the defendants seek to compel the
plaintiffs to respond to their interrogatory about the plaintiffs'
prior employment because it may be relevant to the plaintiffs'
credibility, it is beyond the scope of Local Civil Rule 33.3.  As
to the request for releases, while "'[p]arties may utilize
discovery to obtain information for impeachments purposes, . . .
particularly for uncovering prior acts of deception' . . . , such
discovery relating to a witness' credibility 'must be reasonably be
likely to lead to admissible evidence.'"  Currie v. City of New
York, No. 10 CV 486, 2012 WL 832256, at *2 (E.D.N.Y. March 12,
2012) (alteration in original) (quoting Bolia v. Mercury Print
Productions, Inc., No. 02-CV-65107T, 2004 WL 2526407, at *2

---

[19] (Def. 1st Interrog. and Doc. Req., Interrogatories, ¶ 6).

[20] (Def. 1st Interrog. and Doc. Req., Document Requests, ¶ 12).

(W.D.N.Y. Oct. 28, 2004)). Further, "[c]ourts have required parties to establish good cause where discovery is sought solely to unearth potential impeachment material, and have not found such cause where the request is speculative." Dzanis v. JP Morgan Chase & Co., 10 Civ. 3384, 2011 WL 5979650, at *6 (S.D.N.Y. Nov. 30, 2011) (internal citation omitted) (collecting cases). Here, the defendants have not provided any specific basis that justify seeking impeachment evidence in the plaintiffs' employment records. See id. (denying request for employees' personnel files because plaintiff only identifies generic ways in which evidence in personnel file could be used to impeach witness, and noting that plaintiff's "argument theoretically requires a court to order disclosure of personnel files -- or, for that matter, any set of documents -- wherever a requesting party speculates that they may contain impeachment evidence. Such a conclusion would run afoul of the 'good cause' requirement in Rule 26(b)(1)" of the Federal Rules of Civil Procedure); Lev v. South Nassau Communities Hospital, No. 10 CV 5435, 2011 WL 3652282, at *2 (E.D.N.Y. Aug. 18, 2011) (denying request for plaintiff's prior employment record because, among other things, defendants have not alleged nor provided any evidence that plaintiff made misrepresentation during course of previous employment).

     3.   <u>Sealed Arrests</u>[21]

    The parties disagree about the disclosure of the plaintiffs'

---

[21] (Def. 1st Interrog. and Doc. Req., Interrogatories, ¶ 13; Def. 1st Interrog. and Doc. Req., Document Requests, ¶¶ 1, 18-19).

sealed arrest records.  (Def. March 22 Letter at 4-5; Pl. April 12 Letter at 7-9; Tr. at 18-19, 27-28).

New York Criminal Procedure Law ("CPL") § 160.50(1) provides that "[u]pon the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed."  "The purpose of the provision is to ensure 'that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation.'"  MacNamara v. City of New York, 04 Civ. 9612, 2006 WL 3298911, at *1 n.1 (S.D.N.Y. Nov. 13, 2006) (quoting Matter of Hynes v. Karassik, 47 N.Y.2d 659, 662, 419 N.Y.S.2d 942, 944 (1979)).  It protects "important privacy interests, and a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy."  Ligon v. City of New York, 12 Civ. 2274, 2012 WL 2125989, at *2 (S.D.N.Y. June 12, 2012) (internal quotation marks omitted).  While federal law governs discoverability, privileges, and confidentiality, and "[s]tate statutory privileges . . . must yield when outweighed by a federal interest in presenting relevant information to a trier of fact," "the policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative."  Crosby v. City of New York, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (internal quotation marks and footnotes omitted).  The court "must therefore balance the deference to be accorded state-created

privileges with the need for the information sought to be protected by the privilege." Id. at 275 (internal quotation marks omitted); accord Ligon, 2012 WL 2125989, at *2.

The defendants argue that sealed arrests are relevant to the plaintiffs' claims for emotional damages and cite to decisions in false arrest cases. (Def. March 22 Letter at 4; Tr. at 27).  In a false arrest claim, prior sealed arrests may be relevant to emotional damages because "'a person who has previously been incarcerated may suffer less damage as a result of subsequent wrongful incarceration' than a person incarcerated for the first time." Cicero v. City of New York, 11 CV 360, 2011 WL 3099898, at *3 (E.D.N.Y. July 25, 2011) (quoting Green v. Baca, 226 F.R.D. 624, 627 (C.D. Cal. 2005)); see Schiller v. City of New York, Nos. 04 Civ. 7922, 04 Civ. 7921, 05 Civ. 8453, 2006 WL 3592547, at *8 (S.D.N.Y. Dec. 7, 2006) (agreeing that "documents detailing [the plaintiff's] prior arrest experiences, previous, previous arrest processing, and criminal court proceedings are relevant to refute [his] claims regarding the cause and extent of emotional distress damages attributable to" false arrest) (second alteration in original) (internal quotation marks omitted)); see also Ligon, 2012 WL 2125989, at *2 (limiting disclosure of prior sealed arrests to "prior arrest records and paperwork only for charges of trespass or related crimes" in false arrest for trespass case (emphasis in original)); Kapiti v. Kelly, No. 07 Civ. 3782, 2008 WL 1882652, at *2 (S.D.N.Y. April 28, 2008) (sealed arrests may be relevant to whether defendants had probable cause for plaintiff's arrest).  The

defendants argue that, like in false arrest cases, prior
incarcerations "will bear directly on whether the incidents at
issue caused the 'emotional' injuries [the plaintiffs] claim to
have suffered, or whether their multiple incarcerations for varying
lengths of times contributed to these claimed injuries." (Def.
March 22 Letter at 4).  However, the defendants have not explained
how the plaintiffs' previous incarceration would have any bearing
on the plaintiffs' alleged emotional distress from being subjected
to the use of excessive force.

To the extent that the defendants argue that prior sealed
arrests may have resulted in the plaintiffs' being in the custody
of DOC, the plaintiffs have agreed to provide releases for all
records held by DOC concerning the plaintiffs except for documents
related to the underlying arrests, charges, or criminal proceedings
that are sealed.  (Pl. April 12 Letter at 9).  Further, the
defendants' contention that prior sealed arrests may have
information that bear on the plaintiffs' credibility, such as gang
membership or the making of false statements during an arrest (Def.
March 22 Letter at 4-5), the defendants have access to the
plaintiffs' misdemeanor and felony convictions which would likely
contain this information.  Accordingly, the defendants have not
made a sufficient showing to overcome the deference to be accorded
to state-created privileges.

The plaintiffs also object to the defendants' interrogatories
that request the plaintiffs to list their criminal history, arguing
that these interrogatories are impermissible under Local Civil Rule

33.3(a) and that this information can be more readily and accurately obtained through document requests. (Pl. April 12 Letter at 6). The plaintiffs surmise that this request is "driven by an inappropriate desire to create potential impeachment material gratuitously." (Pl. April 12 Letter at 6 n.5). The defendants have narrowed their request to information pertaining to convictions outside of New York City because it is difficult for them to search national database for this information. (Tr. at 25-26). To the extent that the defendants seek information about the plaintiffs' convictions outside of New York City, the plaintiffs shall provide it.

     5.   <u>Criminal Records</u>[22]

The defendants request that plaintiffs' counsel be required to contact each and everyone of the plaintiffs' lawyers in prior criminal action to obtain non-privileged responsive material. (Def. March 22 Letter at 5). The plaintiffs object on the grounds that this request is overly broad and unduly burdensome. (Pl. April 12 Letter at 9-10).

In a prior class action suit alleging a pattern or practice of the use of excessive force by the DOC, the Honorable Denny Chin, former-U.S.D.J., limited a similar request to production of documents "relating to convictions not more than ten years old (a) punishable by imprisonment in excess of one year and/or involving dishonesty or false statements, and (b) involving acts of violence." (Order dated Aug. 16, 2004, <u>Ingles v. City of New York</u>,

---

[22] (Def. 1st Interrog. and Doc. Req., Document Requests, ¶ 1).

No. 01 Civ. 8279 (S.D.N.Y.) ("Aug. 16 Order"), attached as Exh. C. to Def. March 22 Letter, ¶ 1).  If the plaintiffs were not in possession of such responsive documents, they were directed to identify their defense lawyers and request them to produce these documents.  (Aug. 16 Order, ¶ 3).  If the former defense lawyers declined to produce documents, then the burden was placed on the defendants to subpoena the former lawyers as non-party witnesses. (Aug. 16 Order, ¶ 4).  This appears to be a sensible course, balancing the defendants' need and the burden on the plaintiffs.

            6.   Parole Records[23]

        The defendants seek releases for each of the plaintiff's parole records.  (Def. March 22 Letter at 6).  The defendants represent that eleven of the twelve plaintiffs appeared before the Parole Board and two of the plaintiffs were found to have violated the conditions of parole and were re-arrested.  (Def. March 22 Letter at 6; Tr. at 26).  The defendants argue that parole board records are relevant to credibility because the plaintiffs may have admitted to criminal acts.  (Def. March 22 Letter at 6; Tr. at 26).

        The plaintiffs respond that because the defendants would not be allowed to introduce extrinsic evidence such as parole hearing transcripts to attack the plaintiffs' credibility under Rule 608(b) of the Federal Rules of Evidence, this information is undiscoverable.  (Pl. April 12 Letter at 11); Equal Employment Opportunity Commission v. First Wireless Group, Inc., 225 F.R.D. 404, 406 (E.D.N.Y. 2004) (dismissing defendant's argument that

---

        [23] (Def. 1st Interrog. and Doc. Req., Document Requests, ¶ 17).

plaintiffs' tax returns were relevant to credibility under Rule 608(b) because that rule bars introduction of extrinsic evidence to impeach witness' credibility). Likewise, they argue that Rule 609 of the Federal Rules of Evidence only allows introduction of criminal conviction, not of a parole hearing transcript. (Pl. April 12 Letter at 11).

Since the defendants have access to records of the plaintiffs' underlying conviction as well as to records of any re-arrest that might have led to a parole violation, they have the information necessary to impeach the plaintiffs without the parole records. Accordingly, this request is denied.

D.   <u>Sanctions</u>

The defendants seek sanctions under Rule 37(a)(5) of the Federal Rules of Civil Procedure. Since the defendants' application has been granted only in part and since the plaintiffs' position was generally substantially justified, the defendants' request for sanctions is denied. <u>See</u> Fed. R. Civ. P. 37(a)(5) (sanctions warranted only if motion for disclosure of discovery is granted or requested discovery is provided after motion was filed).

<u>Conclusion</u>

The plaintiffs and defendants' applications are granted in part and denied in part as indicated above.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

29

Dated:      New York, New York
            May 17, 2013

Jonathan S. Abady, Esq.
Katherine R. Rosenfeld, Esq.
Vasudha Talla, Esq.
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza
20th Floor
New York, NY 10019

Jonathan S. Chasen, Esq.
Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038

Mary Lynne Werlwas, Esq.
The Legal Aid Society
111 Livingston Street
Brooklyn, NY 11201

William I. Sussman, Esq.
Joseph G. Cleemann, Esq.
Christopher Paul Conniff, Esq.
Amanda N. Raad, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Arthur G. Larkin, Esq.
Diep Nguyen, Esq.
Kimberly M. Savino, Esq.
Corporation Counsel for the City of New York
100 Church Street
New York, NY 10007

Andreas Koutsoudakis, Esq.
Julie Schatz, Esq.
Koehler & Isaacs LLP
61 Broadway, 25th Floor
New York, NY 10006

Alezander Peltz, Esq.
Peltz & Walker
222 Broadway, 25th Floor
New York, NY 10038