

**MICHAEL A. CARDOZO**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

ARTHUR G. LARKIN
Senior Counsel
Phone: (212) 788-1599
Fax: (212) 788-9776
alarkin@law.nyc.gov

October 30, 2013

**BY ECF**
Hon. James C. Francis, IV
United States Magistrate Judge
United States District Court
500 Pearl Street
New York, New York 10007

      Re:    <u>Mark Nunez v. City of New York, et al.</u>, 11-CV-5845 (LTS) (JCF)

Your Honor:

      We write in response to plaintiffs' letter of October 25, 2013, which seeks relief in connection with the posting of class notice in this lawsuit. We oppose plaintiffs' request, and instead we submit that the court should exercise its discretion to direct DOC (1) to distribute notice individually to all newly admitted inmates, and (2) to post the class notice in the law libraries in each jail, as the best way to ensure that class members receive notice of the pendency of this lawsuit.

      As more fully explained below, the City has diligently attempted to verify plaintiffs' claims that class notice was not posted as required and to correct deficiencies when they were found to exist. Throughout the parties' discussions, we have asked plaintiffs to provide specifics on what information they have learned from inmates, or alternatively, to identify those inmates and make them available for some limited discovery on this issue so we can understand what they have seen, when and where they saw it, etc. We asked for this information because we received from DOC information that contradicted plaintiffs' counsel's assertions concerning posting of the class notice. Class counsel declined to provide the information we requested, which may have delayed resolution of this issue. Moreover, plaintiffs' representation that the City has not provided the certifications required by the court's order is inaccurate.

      *Factual Background*. In or about late June, 2013, plaintiffs' counsel called the undersigned and informed me that inmates had told Legal Aid interns, who in turn had told him, that class notice allegedly was not posted as required in some areas inside the jails. During that conversation, I requested that counsel provide specifics concerning the areas where notice was

not posted and the approximate date and/or time when the notice was missing, so that we could follow-up with the client agency.  I then confirmed our request for further information in an E-mail to counsel (copy attached as Exhibit A (E-mail, Larkin to Chasan 6/26 @ 7:46 a.m.)).  In two separate E-mails in reply, counsel then provided a list of areas where notice was, allegedly, not posted.  (*Id*.)  We followed up with DOC promptly, and were informed that the areas listed in counsel's E-mails were specifically checked and either (i) the notice was, in fact, posted, or (ii) if the notice was not posted, it was immediately posted as required.  At that time, we also reminded DOC that the next certification required by the court's orders would be on July 19, 2013, and that the agency should begin the process of checking each jail location to ensure that the required postings were up.  Shortly thereafter, we received confirmation from DOC that all notices were posted as required.

Subsequently, on July 19, 2013 - the same date that the next certification was due - plaintiffs' counsel again E-mailed the undersigned to report that he had visited the jails the day before with student interns, and found that the class notice was not posted in certain areas.  We replied that we had already been advised that as of the end of the previous week, class notice was posted as required in all areas of the jails (*see* E-mails attached as Exhibit B).[1]  The information we received from our client, therefore, appeared to contradict the information supplied by plaintiff's counsel.

The latter message was explicitly intended as the certification required by the court's order of March 19, 2013 (the "Order") (DE 78, ¶ 2).  Prior to that date, we had acknowledged in writing our obligation to provide the required certification and that we were aware of the date, which I had calculated as July 19, 2013 (*see* E-mail, Larkin to Chasan 6/26 @ 5:49 p.m., copy attached as Exhibit C).  The certification was in the same form as that previously provided, viz., E-mail transmission to counsel (*see* Exhibit D [E-mails between Larkin and Talla, 4/25]).  Plaintiffs' statement that "the City did not provide the certification required on July 18, 2013" (Pl. Ltr. to Court 10/25, at page 2), is therefore incorrect.

On or about August 1, 2013, plaintiffs' counsel again called to report that inmates had told him (or others) that notice was not posted in the jails in certain areas.  We immediately followed up with the client, again, and were advised that all of the areas were checked and that notice either was (i) posted as required, or (ii) if the notice was missing, the deficiency was corrected and the appropriate posting was made at that time.  We also received reports from our client that, especially in the larger jails, inmates were tearing down the notices and/or defacing them, and that the jail commanders had specifically ordered correction officers to re-post them.

Because we were getting conflicting information from plaintiffs' counsel on the one hand, and DOC on the other, we undertook two concrete steps to address this issue.  *First*, we decided to send two attorneys to the jails for one day to conduct a site inspection of some of the areas where plaintiffs had reported that notice was missing.  (Because of time and resource constraints, we could not arrange for a visit to all of those areas in one day, but we arranged to

---

[1]   The E-mail states:  "My understanding as of the end of last week is that the notice was posted as required.  However, I will raise with our client the issues in your message, and will get back to you next week."

visit most of them.)  We informed plaintiffs via E-mail that we were going to take this step (copy attached as Exhibit E).  *Second*, we requested specifics about the information plaintiffs' counsel claimed that inmates were supplying them, viz., whether the inmates knew what the notice looked like and/or whether they were shown a copy, and asked, "Did you see this notice inside the jails?" in words or substance, or whether the inmates volunteered that they knew about the class action but did not see the notice.  (A copy of our request, made via E-mail, is attached as Exhibit F.)  We received no response to this message.

Our site inspection was conducted on August 8, 2013, and revealed that, contrary to the reports from plaintiffs' counsel, the class notice was posted in the vast majority of locations where they had claimed it was not posted.  We reported our findings to counsel by letter dated August 9, 2013, referring to our particularized observations inside the specific areas that plaintiffs had identified in their prior communications with us (copy attached as Exhibit G).  In response, plaintiffs' counsel wrote another letter pointing out that we did not inspect all of the areas where they had asserted that notice was not posted, nor had we inspected any *other* areas of *other* jails where notice was required to be posted by the Order.  We replied by reiterating that counsel had never responded to our inquiry concerning the specifics of the information they claimed to have received from inmates, which had been largely undermined by our site inspection, and we again requested a response.  (A copy is attached as part of Exhibit H, E-mail from Larkin to V. Talla, 8/21 @ 9:39 a.m.)

Counsel replied by E-mail dated August 23, 2013, listing more areas where they claimed that notice was not posted at all (or was posted in a manner not in compliance with the Order), and stating in response to our inquiry:  "We don't believe there is any need for you to contact the inmates who reported not seeing the Class Notice."  (Exhibit H, E-mail from V. Talla to Larkin, 8/23 @ 11:03 a.m.)  We answered that the information counsel claimed to have received from their inmate clients appeared to be unreliable, and that for this reason we would not continue to correspond about the matter - but we of course agreed to forward to the agency the list of areas where counsel asserted that the notice was not posted, or was improperly posted, so the agency could inspect those areas and take corrective action if necessary.  (*Id*. [E-mail from Larkin to V. Talla, 8/23 @ 12:09 p.m.])

On September 9-11, 2013, the parties and plaintiffs' experts undertook site inspections of the areas inside the jails where the named plaintiffs' incidents took place.  After the inspections, the City attorneys who attended reported to the undersigned that class notice was not posted in a number of areas.  Upon learning this information, I immediately reached out to counsel and advised that we were "working with DOC to remedy the situation and to institute procedures that will ensure that notice remains posted as required in the future."  (Exhibit I, E-mail from Larkin to J. Chasan, 9/11 @ 9:49 a.m.)

Thereafter, we received from plaintiffs their four proposals for continuing posting of the notice.  We consulted at length with DOC, and concluded that the least burdensome - and at the same time, the most effective - way to guarantee notice to all class members was to distribute the class notice to all inmates upon their admission to DOC.  Initially, plaintiffs had sought individual distribution but the City opposed the request.  At that time, Your Honor ruled that individual notice would not be required (*see* DE 65).  Now, however, after the experience of the past six months, we recognize that the continuing burden of administering the posting

requirements and ensuring that notice remains posted where it is supposed to be, is substantial. As noted above, we have received reports from the client that inmates are tearing the notices off the walls - probably so they can review the notice in detail.  The inmates' behavior is understandable, i.e., they may want to be apprised of a pending lawsuit that may concern them, but at the same time it creates administrative problems for the agency.

We initially proposed individual distribution on October 21, 2013, the first business day after certification under the Order would have been required (on October 19, 2013).  Prior to that date, the parties had been engaged in discussions about plaintiffs' proposals and DOC's position on those proposals, including posting laminated notices inside the receiving room pens, and individual distribution to CPSU inmates.  During those telephone discussions, plaintiffs' counsel advanced the suggestion that, in order to resolve the matter efficiently, DOC should simply distribute class notice to all newly admitted inmates, and volunteered that they would supply sufficient copies of the notice for this purpose (consistent with the normal practice).  We had taken that proposal to our client, who agreed that individual posting would make sense.  Because it appeared (to us, at least) that the issue of class notice would be resolved in this manner, we did not seek or provide certification on or prior to Oct. 19, 2013.

*Summary of Argument*.  As this court previously recognized, "notice is not required" in this Rule 23(b)(2) class action, but the court has discretion to direct "appropriate notice to the class" if it deems notice necessary. (DE 65, at page 2)  The parties already have stipulated that notice may be provided and have agreed on the form of the notice, in both English and Spanish. The only disputed issue is the method of distributing notice.

We submit that individual distribution - which the City initially opposed, but which we no longer oppose - is the best way to provide notice to the inmate class.  The burden of administering and monitoring the postings, which has proven to be substantial in this case given the number of jails at issue, would be eliminated.  Any inmate who wished to contact counsel to report a use of force could do so, using the information supplied on the notice.  Inmates newly admitted more than once during the class period would receive multiple copies of the notice - more than necessary perhaps.  Finally, the postings in the law libraries would provide additional assurance that at least those inmate class members who use the library will receive notice in more than one form.

Plaintiffs' proposals for continuing posting, monitoring and certification are, we submit, more burdensome and less effective than individual distribution.  Plaintiffs request that the court order DOC to post laminated notices (1) in all locations where notice is currently required, (2) inside the receiving room pens, and (3) inside housing areas near the telephones.  DOC would still bear the burden of ensuring that these laminated notices remained posted as required throughout the pendency of the lawsuit, even if inmates defaced or removed them.  DOC is also concerned about posting laminated notices, the sharp edges of which can become weapons - but we have been advised that there are other thinly-laminated notices inside the jails that do not present a threat to the safety of jail staff or inmates.  Finally, DOC advises that, pursuant to plaintiffs' requests, they have tried posting the notices inside receiving room pens, but inmates tear them down soon after they are posted.  Inmates occupy the pens while they await housing assignments or trips to court for their pending cases, but correction officers normally do not enter the pens.  Instead, the officers supervise the pens from the outside.  Most of the time, inmates are

the only occupants of the pens. Missing notices inside the pens are mostly likely the result of the inmates' actions.

We submit that posting laminated notices in these areas, especially the receiving room pens, is more burdensome and less likely to provide notice to all potential class members than individual distribution. Because the notices posted in the pens are frequently torn down, posting in that location would appear to be of little value. Notices posted by the telephones conceivably could ensure that class members are made aware of the lawsuit, but individual distribution will accomplish that goal as effectively if not more so, without the attendant burden on DOC of ensuring that the notice remains posted.

Plaintiffs also propose individual distribution to all new admits to punitive segregation and restricted housing units, because those inmates remain inside cells most of the day and generally do not congregate in areas where the notice is posted. We submit that individual distribution to all inmates upon admission is easier to administer than individual distribution to inmates upon their admission to specialized units. At the time inmates are brought into the DOC system, they are given an inmate handbook and other paperwork. A copy of the class notice in English and Spanish can be supplied then. There is no regular distribution of paperwork to inmates who are assigned to punitive segregation or other restrictive housing units, however, and distribution of the class notice at that time would represent a greater departure from institutional practices, requiring more instruction and oversight.

As noted above, in Rule 23(b)(2) class action lawsuits, the courts often do not require any notice to the class at all. *See, e.g., Skinner v. Uphoff*, No. 05-8098, 175 Fed. Appx. 255, 257-8 (10th Cir. Apr. 11, 2006) (upholding district court's order that no notice to (b)(2) class was required); *Shariff v. Goord*, 04-CV-6621 CJS(F), 2006 U.S. Dist. LEXIS 49957, *34 (W.D.N.Y. Jul. 20, 2006) (declining to order notice to (b)(2) class of inmates). *See also Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 562 (C.D. Cal. 2012) (noting that "unlike members of a class certified under Rule 23(b)(3), members of a Rule 23(b)(2) class do not have the right to receive notice or opt out") (citation omitted). In the circumstances here, the City's proposal to distribute class notice individually to all class members goes far beyond what is ordinarily required in cases of this type, and at the same time addresses the concerns that plaintiffs have raised concerning class notice. We further submit that, as plaintiffs have stated they would do, and as the courts generally recognize, the costs associated with notice to class members "must be paid by the plaintiffs no matter how disproportionate this would be to their prospective individual recoveries." *Abrams v. Interco, Inc.*, 719 F.2d 23, 30 (2d Cir. 1983) (citation omitted). In the circumstances here, plaintiffs should bear the burden of providing enough copies to ensure individual distribution, going forward.

            Respectfully submitted,

            /s/
            Arthur G. Larkin (AL 9059)
            Assistant Corporation Counsel

AGL/m

Attachments
cc: All Counsel (by ECF)