RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
O. ANDREW F. WILSON
KATHERINE ROSENFELD
ELIZABETH S. SAYLOR
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO
JULIA EINBOND
VASUDHA TALLA
JENNIFER M. KEIGHLEY
JILL MAXWELL
ALISON FRICK
DAVID LEBOWITZ
HAYLEY HOROWITZ

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
75 ROCKEFELLER PLAZA, 20TH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE
(212) 763-5000
FACSIMILE
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
DIANE L. HOUK

December 12, 2013

**By ECF and First Class Mail**

The Honorable James C. Francis
United States Magistrate Judge
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: *Nunez, et al., v. City of New York, et al.,* 11 Civ. 5845 (LTS) (JCF)

Dear Judge Francis:

  This office, together with The Legal Aid Society Prisoners' Rights Project and Ropes & Gray LLP, is counsel for the Plaintiff class in this matter, and this office, together with The Legal Aid Society Prisoners' Rights Project, is counsel for the Plaintiffs in their individual damages claims. After three months of extensive negotiations with the City concerning fact depositions in this matter, we have been unable to reach agreement on the number of depositions, and we thus now seek the Court's intervention to ensure that this action proceeds expeditiously.

  As discussed in detail below, Plaintiffs seek the Court's permission to take up to 97 fact witness depositions pursuant to FED. R. CIV. P. 30(a)(2)(A)(i). In the context of this case, that number – which reflects careful consideration by experienced Plaintiffs' counsel – is necessary.

  In arriving at that number, Plaintiffs considered how many fact witness depositions they would need with respect to Plaintiffs' individual claims for monetary damages and the class claims for injunctive relief. Plaintiffs respectfully submit that taking up to 97 fact witness depositions, while admittedly a large number, is dictated by the requirements of this case.

  There are 12 named Plaintiffs in this case, each pursuing a significant individual damages claim. Those claims arise out of 14 different alleged assaults upon Plaintiffs and directly involve

1

67 named Defendants as alleged participants, eyewitnesses who failed to intervene to stop the alleged assaults, and supervisors. Plaintiffs would seek depositions of the 67 named Defendants even if this were not a broad-ranging class action alleging a City-wide pattern and practice of unconstitutional use of force and requesting systemic relief across 13 City Jails. But, of course, this is a certified class action making claims of a City-wide pattern and practice and seeking such systemic relief. The class includes all present and future inmates confined in those 13 City Jails. *See* Dkt. No. 61 (Jan. 7, 2013).[1] That fact underscores the need to depose those 67 named Defendants, as those depositions also will be important in developing the factual record with respect to key issues that bear directly upon the class claims and each Plaintiff's individual claim. Plaintiffs discuss their need for those 67 depositions in Section I, below.

Beyond those named Defendant depositions, Plaintiffs seek leave to depose up to 30 non-party fact witnesses with direct responsibility for different aspects of the Department of Correction's ("DOC") policies and practices regarding use of force incidents and investigations. Those depositions will be important in developing the factual record relevant to the class claims and each Plaintiff's individual claim. Plaintiffs have sorted the non-party witnesses whom they intend to depose into 8 categories, as discussed in Section II, below.

Although Plaintiffs intend to be efficient in discovery and take no more depositions than necessary, at this time Plaintiffs seek the Court's permission to take up to the 97 fact witness depositions discussed in this letter. *See* FED. R. CIV. P. 30(a)(2)(A)(i). The City does not consent to this number of depositions, for the reasons outlined in Section III, below.[2]

## I. Deposition Plan for Named Defendants (67)

Plaintiffs seek to depose the 66 Defendants sued in both their individual and official capacities in the Second Amended Complaint, plus the individual who now serves as DOC's Deputy Chief of Security,[3] a total of 67 depositions. 52 of those Defendants allegedly personally participated in, or witnessed and failed to intervene in, one or more of the 14 separate alleged assaults on the named Plaintiffs that are the subject of the 12 named Plaintiffs' individual damages claims. Each of those Defendants is alleged to have played a unique role in the alleged assaults. Assessment of each such Defendant's credibility and of the truthfulness of his or her account of the alleged assault(s) at issue will be important in determining his or her liability. Those depositions therefore are an essential part of proof of the individual claims. The remaining 15 deponents in this category are selected DOC supervisors sued in their individual and official capacities, who are responsible for promulgating and enforcing DOC's policies governing use of force, system-wide and/or in the facilities in which Plaintiffs were beaten. The deliberate indifference of those supervisors (and of the individual who now serves as DOC's

---

[1] The DOC reports that in fiscal year 2013 there were 81,758 inmate admissions and an average daily population of 11,287 inmates. DEP'T OF CORRECTION, MAYOR'S MGMT. REPORT 20, http://www.nyc.gov/html/ops/downloads/pdf/mmr2013/doc.pdf.

[2] Plaintiffs have attempted to reach agreement with the City on this issue for the last few months through a series of telephone calls and emails. On December 6, 2013, the City gave its final position discussed in Section III of this letter. The positions of Defendants represented by counsel other than the NYC Law Department do not differ from that of the City.

[3] Carmine LaBruzzo, DOC's former Deputy Chief of Security, was sued in his individual and official capacity and has since retired.

Deputy Chief of Security, a position previously held by Mr. LaBruzzo) is directly relevant to the named Plaintiffs' individual damages claims, and the class claims, which are based on theories of supervisory liability and *Monell* liability. Thus, those depositions are necessary.

Disaggregating the Plaintiffs' damages claims makes clear that taking those 52 depositions sought is not only reasonable, but that doing so would not even trigger the need to seek relief under Rule 30(a)(2)(A)(i). Had each of the 12 named Plaintiffs brought an individual action, under Rule 30(a)(2)(A)(i) he would have been entitled to depose those of the 52 named Defendants who allegedly personally participated in, or witnessed and failed to intervene. to stop that Plaintiff's assault(s), because there are no more than 10 of those Defendants for each named Plaintiff. Exhibit A hereto confirms that point. It lists each named Plaintiff and the named Defendants who allegedly personally participated in, or witnessed and failed to intervene to stop, each such assault(s). Plaintiffs should not be penalized in their ability to depose all directly involved Defendants simply because there are a large number of Plaintiffs suing in this single action to recover their own individual damages arising out of a number of alleged assaults that, taken together, involve a large number of individual Defendants.[4]

With respect to the 15 named supervisory Defendants to be deposed, Exhibit B hereto lists their names and titles. As is evident, each has his or her own particular valuable testimony to add.[5] Had each named Plaintiff sued individually, he would have been entitled to depose some of them on his individual claims.[6]

Beyond the above reasons, as noted this case is a large class action. The testimony of both the 52 directly involved Defendants, and of the 15 supervisory Defendants, will be directly probative of the class claims – which allege a City-wide pattern and practice of unconstitutional use of force on inmates – in a number of key respects. That fact underscores the reasonableness of, and the need for, taking the 67 depositions in this category. *See Weatherford Int'l Sec. Lit.*, 11 Civ. 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 153011, at *9-10 (S.D.N.Y. Oct. 24, 2013) (explaining that "the nature and needs of the case" must be considered when determining the number of depositions to allow).

## II. Deposition Plan for Non-Party Witnesses (Up to 30)

Plaintiffs seek to depose up to 30 non-party witnesses with knowledge regarding use of force incidents, DOC investigations, and DOC patterns, practices, and policies governing use of

---

[4] Moreover, though Rule 30(a)(2)(A)(i) is not even triggered with respect to deposing those 52 Defendants, were the Rule applicable to them they still would be appropriate, because they do not implicate concerns discussed in *Weatherford* about unreasonably cumulative or duplicative testimony. *See Weatherford Int'l Sec. Lit.*, 11 Civ. 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 153011, at *6 (S.D.N.Y. Oct. 24, 2013) (explaining that a court must consider whether a party's proposed depositions would be unreasonably cumulative or duplicative in determining whether to allow more than 10 depositions).

[5] Those depositions also should not be unreasonably cumulative or duplicative either, as each of those individuals has different and distinct supervisory responsibilities that are relevant to both the individual damages claims and the class claims. *See Weatherford*, 2013 U.S. Dist. LEXIS 153011, at *6.

[6] For example, an individual supervisor can be held liable if the "defendant's personal involvement in the alleged constitutional deprivation" is established. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Examples of such personal involvement include directly participating in the infraction, and creating a policy or custom under which unconstitutional practices occurred, or allowing such a policy or custom to continue. *Id.* at 139.

force. Plaintiffs' class claims, to the extent based on the City's *Monell* liability, can be proven if, for example, Plaintiffs demonstrate a pattern and practice that violates the constitutional rights of the Plaintiffs and the class. As noted above, this class action is broad in scope. It covers 13 DOC facilities, each of which has its own separate chain of command, as well as being subject to a DOC central office, a DOC unified use of force written policy, and a centralized DOC Investigation Division. Each of those topics must be explored through depositions. Beyond that, DOC also interacts with several other City agencies whose employees have a role in addressing excessive force in the City Jails, such as the Board of Corrections, and Plaintiffs reasonably believe that those witnesses can provide deposition testimony that bears directly on the class claims.

Thus, Plaintiffs plan to take up to 30 depositions of non-party witnesses from the following categories of individuals: (1) inmate witnesses to the assaults of the named Plaintiffs, (2) medical personnel witnesses, such as treating staff, (3) class members, such as non-party inmates who were subjected to excessive force in incidents not included in Plaintiffs' Complaint; (4) non-party DOC staff witnesses who observed or wrote reports about use of force incidents; (5) DOC personnel knowledgeable about DOC's policies and practices concerning the use of force in City Jails; (6) Board of Corrections personnel; (7) policymakers responsible for use of force in the City Jails; and (8) Rule 30(b)(6) witnesses.

Plaintiffs did not arrive at their requested 30 depositions in this category without considerable thought. Indeed, Plaintiffs can say, even at this time, that based upon the facts now available, the 11 individuals listed in Exhibit C are among those whom Plaintiffs anticipate noticing for deposition. As their titles and descriptions of their roles make clear, each of the individuals listed on Exhibit C has his or her own responsibilities with respect to, and knowledge regarding, issues surrounding the use of force in the City Jails. Thus, once again, taking those depositions would not be expected to result in duplicative or cumulative testimony. *See Weatherford*, 2013 U.S. Dist. LEXIS 153011, at *6.

Taking into account "the nature and needs of the case," *id.* at *9-10, and that Plaintiffs already have identified 11 potential non-party fact witness deponents, Plaintiffs respectfully submit that a maximum of 30 non-party depositions, of individuals in the eight categories listed above, is reasonable, and completely consistent with Rule 30(a)(2)(A)(i). Again, if each of the 12 named Plaintiffs were pursuing only his own individual damages claim, seeking damages for *Monell*-based liability, he likely would be entitled to depose some subset, at least, of the 30 deponents. Here, those deponents would be deposed only once. When one adds in the obvious need for deposition testimony from individuals in the eight categories, to support the class claims in this action, the request for up to 30 non-party fact witness depositions is reasonable indeed.

Plaintiffs appreciate that taking and defending such a large number of depositions requires significant resources. In recognition of this, Plaintiffs have agreed to Defendants' request to limit the duration of any full day of deposition to six hours.

For all of the foregoing reasons, Plaintiffs request that the Court order that Plaintiffs may take up to 97 fact depositions (67 named Defendants and up to 30 non-party witnesses).

4

### III. The City's Objections to Plaintiffs' Proposed Depositions Are Meritless

Plaintiffs need the Court's permission to take these depositions because the City has raised three objections, each meritless.

First, the City has objected partly because Plaintiffs could not agree in advance to an exact number of half-day depositions of named Defendants or non-party witnesses. As we repeatedly have emphasized to the City, Plaintiffs will conduct all depositions efficiently, and will conduct half-day depositions whenever practicable. However, testimony from the named Defendants and non-party witnesses is necessary to support Plaintiffs' individual and/or class claims with respect to numerous issues, such as (this list is illustrative only): proof of an individual Defendant's liability in a named Plaintiff's alleged assault; proof of another Defendant's liability in the same alleged assault; proof of systematic DOC failure to train officers; proof of ineffective DOC investigation policies and practices; proof of a lack of DOC supervision; and proof of DOC condonation or encouragement of illegal use of force in the City Jails. It simply may not be possible to limit any or all of those depositions to half-days – and it certainly is not something that Plaintiffs fairly can be asked to commit to in advance. For example, a deponent may have been implicated in many prior (and subsequent) use of force incidents. Or, he or she may be a recalcitrant or uncommunicative witness. In any event, the various issues discussed above, as well as others, all are fair ground for questioning of individual deponents, and depositions covering them will take time. For all these reasons, Plaintiffs cannot specify at this time how many of the depositions of the named Defendants or non-party witnesses can be taken in a half-day. Plaintiffs respectfully urge the Court to reject any request by the City to impose any such precondition.[7]

Second, the City also stated that it would agree to allow Plaintiffs to take more than 50 depositions only if the Defendants have an equal number of depositions and if Plaintiffs identify which depositions will be taken in a half-day. As described above, Plaintiffs cannot agree in advance as to what depositions can be taken in a half-day. Further, Plaintiffs fail to see how a precondition that Plaintiffs and Defendants have an equal number of depositions is necessary or reasonable. Plaintiffs bear the burden of proving their individual and class claims. The number of depositions taken by Plaintiffs should not be tied to the number of depositions taken by the City. Courts in this District have recognized that simple truth. For example, in two securities fraud class actions, significantly more than 10 depositions have been allowed – and the plaintiffs have been granted significantly more deposition time than the defendants. *See In re Pfizer Sec. Litig.*, No. 04-cv-09866 (LTS) (HBP), Dkt. No. 223 (S.D.N.Y. Aug. 20, 2010) (granting plaintiffs 600 hours of fact deposition discovery and defendants 200 hours of fact deposition discovery); *In re Parmalat Sec. Litig.*, No. 04-cv-0030 (LAK) (HBP), Dkt. No. 414 (S.D.N.Y. Mar. 6, 2006) (granting plaintiffs 900 hours of fact deposition discovery and defendants 600 hours of fact deposition discovery). Plaintiffs have articulated the types of depositions we intend

---

[7] Plaintiffs note that four of the named Plaintiffs' alleged assaults at issue in this action reportedly are still being investigated by the DOC's Investigation Division, and no Investigation Division records involving those incidents have been produced to Plaintiffs, thus depriving Plaintiffs of any ability to see how those records will affect depositions. Further, the City is continuing to produce electronic documents. Plaintiffs are unable to determine how electronic documents they have not yet received (much less analyzed) will affect depositions. Moreover, Plaintiffs are still in the process of analyzing voluminous hard copy and electronic discovery produced by the City to date. Even without these facts, the City's precondition would not be appropriate, for at least the reasons discussed in text.

5

to take and fail to see how the City's defense could give rise to a similar number. Plaintiffs think that the reasonableness of the City's deposition plan should be evaluated on its own merits and that Plaintiffs' evidentiary needs are irrelevant to that determination (and vice versa). Thus, Plaintiffs respectfully request that the Court reject any attempt by the City to impose its equal-numbers precondition.

Third, with regard to the non-party depositions, the City has demanded that Plaintiffs identify, right now, the names of each of the deponents, or to provide, right now, the exact number of individuals who will be deposed within each of the eight illustrative categories listed in Section II of this letter. Plaintiffs have told the City that they cannot do so at this time, as our review of the voluminous documentary record is ongoing, and because taking some depositions may obviate the need for other depositions (or suggest the need for a new deponent, including as a replacement for one previously thought necessary). Thus, Plaintiffs respectfully request that the Court reject any City request to impose that requested condition either.

*     *     *

Plaintiffs are committed to proceeding efficiently with fact discovery. As the Court can understand, finalizing the total number of fact witness depositions at this time is critical to that effort, and to trying to maintain the pre-trial schedule that already has been pushed back once. Plaintiffs are available at the Court's convenience to discuss this matter.[8] We appreciate the Court's attention.

Respectfully,

ROPES & GRAY LLP
William I. Sussman
Christopher P. Conniff
Amanda Raad
Joseph G. Cleemann
*Counsel for Plaintiffs Rodney Brye,*
*Shameik Smallwood, Travis Woods, and*
*Oscar Sanders in their capacities as class*
*representatives*

EMERY CELLI BRINCKERHOFF
& ABADY

Katherine R. Rosenfeld
Vasudha Talla

THE LEGAL AID SOCIETY
Jonathan S. Chasan
Mary Lynne Werlwas
*Counsel for Plaintiffs Mark Nunez, Rodney*
*Brye, Shameik Smallwood, Oscar Sanders,*
*Travis Woods, Ralph Nunez, Keith Bacote,*
*Jose DeGros, Christopher Graham, Sonny*
*Ortiz, Clifford Sewell, and Leslie Pickering*

cc: All counsel (by ECF and First-Class Mail)

---

[8] Plaintiffs have agreed to the City's request to grant the City until January 7, 2014 to respond to this letter, and the City has agreed to have Plaintiffs submit a reply on or before January 14, 2014 (a date that takes into account the year-end holidays). If that schedule is agreeable to the Court, Plaintiffs respectfully request that the Court so order. The parties are available for a conference prior to January 27, 2014 or any time after January 31, 2014.

# Exhibit A

# EXHIBIT A

## Chart of Named Defendants Organized by Plaintiffs' Individual Damages Claims

| Plaintiff | Number of Defendants | Names of Defendants Alleged to Participate or Witness Use of Force Incident[1] |
|---|---|---|
| Rodney Brye (2 incidents) | 4: 2011 Incident<br>5: 2012 Incident | 2011 Incident: Dawn Kirkland, Reginald Rothwell, Norman Williams, Todd Brishinsky*,<br>2012 Incident: Adrian Davis, Carlos Diaz, Terri Majors, Theodore Salley, Louis Leonard* |
| Jose DeGros | 3 | Todd Brishinsky*, Robert Lamar, Khalmar Tutein |
| Shameik Smallwood | 4 | Omar Alston, Sidney Davies, Malcolm Davis, Jamar McMorris |
| Keith Bacote (2 incidents) | 4: 04/2010 Incident<br>7: 10/2010 Incident | 04/2010 Incident: Jaime Roman, Selvin Stultz, Christopher Santiago*, Sandy Arkhurst*<br>10/2010 Incident: Antonio Bravo, Paul Bunton, Sherma Dunbar, Patrick Remy, Christopher Santiago*, Jason Soto, Budnarine Behari* |
| Leslie Pickering | 2 | Herman Medina, Edwin Sloly |
| Travis Woods | 10 | Sandy Arkhurst*, Budnarine Behari*, Louis Leonard*, Walter Dean, Cory Hughes, Darlene Massey, Robert Orlandi, Eric Ramos, Lamel Sistrunck, Attea Williams |
| Ralph Nunez | 2 | James Quinn, Thurman Thompson |
| Oscar Sanders | 5 | Keston Bertrand, Winston Declet, Kelvin Lorenzo, Robert Sanchez, Damon Weldon |
| Clifford Sewell | 2 | Aadam Glenn, Ashaki Jones |
| Mark Nunez | 6 | Mark Jean-Simon, Sherrell Johnson, Alfredo Negron, Richard O'Connor, Theo Primm, Lisa Thomas |
| Sonny Ortiz | 2 | Adeboye Fadina, Rafael Gutierrez |
| Christopher Graham | 1 | Haddon Baillie |

---

[1] A total of 52 individual Defendants are alleged to have participated in or witnessed the assaults upon Plaintiffs alleged in this case. Five of those Defendants are alleged to have been involved in two separate assaults. Those five Defendants are: Sandy Arkhurst, Budnarine Behari, Todd Brishinsky, Louis Leonard, Christopher Santiago. Each of these defendants are noted with an asterisk.

# Exhibit B

## EXHBIT B

## Named Defendants that hold Supervisory Positions

1. Rose Agro-Doyle: Warden George R. Vierno Center (*See* ¶ 14 of the Second Amended Complaint ("SAC"))

2. Emmanuel Bailey: Former Warden Robert N. Davoren Complex (*See* ¶ 16 of the SAC)

3. Robert Cripps: Former Warden Anna M. Kross Center (*See* ¶ 15 of the SAC)

4. Larry Davis, Sr.: Former Chief of Department (*See* ¶ 26 of the SAC)

5. Edmond Duffy: Warden Robert N. Davoren Complex (*See* ¶ 17 of the SAC)

6. Ronald Jorgensen: Former Deputy Warden Anna M. Cross Center (*See* ¶ 18 of the SAC)

7. Evelyn Mirabal: Chief of Department and former Warden of Otis Bantum Correctional Center (*See* ¶ 19 of the SAC)

8. Kathleen Mulvey: Former Warden George R. Vierno Center (*See* ¶ 20 of the SAC)

9. Carlton Newton: Warden Otis Bantum Correctional Center (*See* ¶ 21 of the SAC)

10. Florence Finkle: Deputy Commissioner Office of Excellence Investigation Division (*See* ¶ 22 of the SAC)

11. Dora Schriro: Commissioner of the New York City Department of Corrections (*See* ¶ 27 of the SAC)

12. Mark Scott: Assistant Chief of Security of the New York City Department of Corrections (*See* ¶ 23 of the SAC)

13. Michael Hourihane: Former Chief of Department (*See* ¶ 25 of the SAC)

14. Carmine LaBruzzo: Former Deputy Chief of Security (*See* ¶ 24 of the SAC)

# Exhibit C

# EXHIBIT C

## Proposed Non-Party Deponents

- Two individuals with clinical and/or administrative oversight of the practitioners treating injuries that inmates suffer in use of force incidents:
    - Deputy Commissioner of Health Affairs Erik Berliner (Category 2)
    - New York City Department of Health and Mental Hygiene Medical Director Homer Venters (Category 2)
- Four individuals in the Investigation Division that are charged with different parts of the investigation process, as described in Florence Finkle's July 2, 2013 deposition:
    - Assistant Commissioner of the Investigation Division Sabina Blaskovic (Category 5 and 7)
    - Investigation Division Supervisor Janet Gooding (Category 5)
    - Investigation Division Deputy Director Sean Cussen (Category 5)
    - Investigation Division Deputy Director Ruben Benitez (Category 5)
- Three individuals that are or were high ranking officials in the DOC responsible for DOC's policies and practices related to use of force:
    - First Deputy Commissioner Mark Cranston (Category 5 and 7)
    - Special Operations Division Warden Brian Suprenant (Category 5 and 7)
    - former First Deputy Commissioner Lewis Finkleman (Category 5 and 7)
- Deputy Mayor Linda Gibbs has oversight of the Department of Correction (Category 5 and 7).
- Deputy Executive Director of the Board of Corrections ("BOC") Amanda Masters directs the BOC, which has responsibility for the jails, and investigates and drafts reports regarding use of force incidents in the City jails (Category 6).