

**MICHAEL A. CARDOZO**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

**ARTHUR G. LARKIN**
Senior Counsel
Phone: (212) 788-1599
Fax: (212) 788-9776
alarkin@law.nyc.gov

February 13, 2014

**BY ECF**

Hon. James C. Francis, IV
United States Magistrate Judge
United States District Court
500 Pearl Street
New York, New York 10007

    Re:    <u>Mark Nunez v. City of New York, et al</u>., 11-CV-5845 (LTS) (JCF)

Your Honor:

    We write in opposition to plaintiffs' proposed discovery plan, submitted on Feb. 5, 2014. Plaintiffs' submission repeats their prior request for leave to take ninety-seven (97) depositions, but once again fails to set forth justification for these depositions as the Federal Rules require. Plaintiffs have not addressed the concerns raised by the City in its January 28, 2014, letter, where we explained that in a prior, similar DOC excessive force case, District Judge (now Circuit Judge) Denny Chin rejected the same approach to discovery that plaintiffs – represented by the same class counsel – advance here. Although this lawsuit involves substantially <u>fewer</u> parties than the prior lawsuit did, plaintiffs here seek substantially <u>more</u> deposition time than that allowed by Judge Chin. We submit that the court should adopt the City's discovery plan, which is described below and in our prior submissions (DE 110, 112), and reject plaintiffs' plan.

    In brief, defendants propose the following discovery plan: (1) Plaintiffs may take sixty (60) depositions, comprising twenty-five (25) full-day and twenty-five (25) half-day depositions of party defendants, and ten (10) non-party full-day depositions; (2) Defendants may take fifty (50) depositions, comprising twelve (12) full-day depositions (one of each named plaintiff), and thirty-eight (38) half-day depositions; and (3) no later than April 30, 2014, plaintiffs shall identify all use of force incidents on which they will rely on their case-in-chief at trial.

    *Plaintiffs' Depositions*. Plaintiffs' proposed plan fails completely to explain why ninety-seven (97) six-hour depositions - five hundred eighty-two (582) hours in all - are necessary in this case. Their letter is long on generalities (*e.g*., "Plaintiffs are extremely mindful of the need

to be efficient and creative," and "Plaintiffs have made painstaking efforts to plan and limit discovery," and "Nothing Plaintiffs propose herein is suggested without extensive thought as to its necessity and justification"), but is short on the kinds of specifics that the Rules require in order to justify the number of depositions they are seeking.  We submit that plaintiffs have not met their burden of demonstrating that they should be granted leave, pursuant to Rule 30(a)(2)(A), to take ninety-seven (97) depositions in this case.

First, as we have explained previously, every single officer alleged to have used force against an inmate-plaintiff has either (i) submitted a written report summarizing his/her version of what happened during the incident, and/or (ii) appeared for a recorded interview pursuant to Mayor's Executive Order #16 ("MEO #16"), during which that officer answered questions under oath concerning the incident.[1]  Plaintiffs, therefore, do not need to depose every single non-supervisory officer-defendant (fifty-two (52) in all) in order to find out what those officers will say at trial.  We have suggested that plaintiffs judiciously select those defendants whose depositions they really need, and those defendants whose depositions they should forego, or at least shorten.  For the most part, however, plaintiffs have failed to take our suggestions into account.  The result has been inefficient, unnecessarily lengthy depositions thus far.

For example, we suggested in our Dec. 31, 2013, letter, that plaintiffs did not need to take the deposition of CO Malcolm Davis, because he was not present when the incident involving Shameik Smallwood occurred (DE 110, at pages 2-3).  The DOC internal investigation revealed that CO Davis was not there, and plaintiffs had the underlying documents establishing that CO Davis' tour ended before the incident occurred and that he was assigned to a different area of the jail.  They insisted on taking the deposition, however.  Not surprisingly, CO Davis testified under oath to the facts that plaintiffs already knew:  He neither used nor witnessed any force against plaintiff Shameik Smallwood.  In addition, as of Oct. 31, 2013, plaintiffs had in their possession photographs of all CO's on duty in the jail where the Smallwood incident took place, but they failed to propose a protocol for sharing those photos with their clients as we requested (*see* Pl. Ltr. 1/8/2013, Exh. J (E-mail from Larkin to Nunez counsel 10/30/2013)).  A photo viewing might have resulted in plaintiff Smallwood's realizing that CO Davis was not present when the incident occurred.  Rather than show the photos, plaintiffs did nothing for three and one-half months; demanded CO Davis' deposition despite knowing in advance what he would say about the incident at issue; and then managed to waste an entire day on that deposition.

Even if Smallwood continues to insist that CO Davis was present when the incident occurred, plaintiffs' counsel knew or should have known what CO Davis' version of events was going to be.  They did not need the deposition to find out that information, and in any event they failed to impeach his account with any proof that he was there.  Apparently they have none, except for their client's say-so, set forth in vague, summary fashion in the Second Amended Complaint.  CO Davis' deposition should not have been taken because (1) it was "unreasonably cumulative [and] duplicative" of the information already available through DOC documents, (2) plaintiffs "had ample opportunity to obtain the information" through other means, and (3) the

---

[1] Any defendant who did not submit a report, such as C.O. Malcolm Davis, effectively has gone on record as denying any involvement in the incident, and denying that he witnessed the incident.

"burden or expense of the [deposition] outweigh[ed] its likely benefit." *See* Fed. R. Civ. P. 26(b)(2)(C); *In re Weatherford Securities Litigation*, 11-CV-1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 153011, *7-11 (S.D.N.Y. Oct. 24, 2013). Had plaintiffs considered the criteria of Rule 26(b) as they should have, we submit that they would not have insisted on CO Davis' deposition.

In light of the availability of other discovery, in the form of written staff reports, MEO #16 recorded interviews and complete investigation files for every incident involving the named plaintiffs, we submit that full-day depositions of every defendant cannot be justified under Rule 26(b)(2)(C). Plaintiffs have asserted that if each of them brought individual lawsuits for money damages, each would be entitled to take ten (10) depositions, and therefore that their demand to depose all fifty-two (52) non-supervisory officer defendants actually seeks fewer depositions than they are entitled to take under the Rules. (Pl. Ltr. 1/8, at page 2 ("each Plaintiff – had he filed a separate lawsuit for each one of the 14 different assaults alleged in [the complaint] – would be entitled to take 10 depositions without leave of Court …. That, of course, would result in Plaintiffs' being entitled to take a total of 140 depositions").

However, plaintiffs appear to misread the Rule – the ten-deposition limit is the presumptive maximum, not the presumptive minimum. The Advisory Committee Note states that "in some cases the ten-per-side limit should be *reduced* in accordance with" the principles of Rule 26(b)(2), and adds that "[c]onsideration should ordinarily be given at the planning meeting of the parties under Rule 26(f) … as to enlargements *or reductions* in the number of depositions." Fed. R. Civ. P. 30, Advisory Committee Note, 1993 Amendments, subdivision (a)(2) (West 2014) (emphasis added). In all cases, the criteria of Rule 26(b)(2)(C) govern the number of depositions. *Weatherford*, *supra*, at *7 (even where depositions are reasonably calculated to lead to admissible evidence, any request to exceed the ten-deposition limit "must also be reasonable under the factors set forth in Rule 26(b) of the Federal Rules of Civil Procedure") (citations omitted). Plaintiffs' proposed plan includes seventeen (17) "placeholders" for witnesses to be named later, but Rule 26(b) requires more than one side's say-so as to how many depositions they need.

Second, plaintiffs have not adequately addressed the emerging consensus, reflected in the proposed amendments to the Federal Rules, that discovery has become too costly and inefficient. As we have pointed out, the proposed amendments arose out of a conference held at Duke University in 2010, which "bristl[ed] with ideas for reducing cost and delay in civil litigation" (Report on the Advisory Committee on Civil Rules, page 267 of 354).[2] Among other things, the amendments would reduce the presumptive limit on depositions from ten (10) to five (5), and would shorten the time limit for depositions from seven (7) hours to six (6). The consensus of the judges who attended the Duke conference is that "civil litigators overuse depositions, apparently holding the view that every witness who testifies at trial must be deposed beforehand." (*Id.*) Moreover, judges "rarely, if ever, see witnesses effectively impeached with deposition transcripts." (*Id.*) Finally, the judges at the Duke conference "noted that they regularly see lawyers effectively cross-examine witnesses in criminal trials without the benefit of depositions, a practice widely viewed as sufficient to satisfy the needs of due process." (*Id.*)

---

[2]   *See* http://www.uscourts.gov/uscourts/rules/preliminary-draft-proposed-amendments.pdf.

Plaintiffs address the proposed amendments in one footnote, citing commentary by two critics of the amendments (Pl. Ltr. 1/8, at page 3 n.2). But they fail completely to address the specific reasons why limits on *depositions* are believed to be appropriate by the Rules Committee – overuse of depositions, their limited value at most trials, and the stark illustration of criminal trials where no depositions are allowed, yet defense lawyers are able to cross-examine witnesses effectively. Even if plaintiffs are not permitted to take nearly 100 depositions in this case, they will have ample evidence for cross-examination at trial, consisting of more than 1.8 million pages of documents, approximately four thousand (4,000) DVD's comprising video and audio proof the authenticity of which will not be challenged by the City, and prior written statements from *every* single correction officer involved in any use of force incident.

Third, as noted above, plaintiffs have failed to explain why Judge Chin's approach to depositions in a prior, substantially similar DOC class action, Ingles v. Toro, 01-CV-8279 (DC), should not be adopted here (*see* DE 112, Exh. A [order signed by Hon. Denny Chin, 4/22/04]). Instead, they assert that, with regard to the individual damages claims alone, they would be entitled to take one hundred forty (140) depositions under Rule 30 (Pl. Ltr. 1/8, at page 2) – the same number sought by the plaintiff class in Ingles and found "unacceptable" by Judge Chin. As we explained in our Jan. 28, 2014, letter (DE 112), Ingles involved twice as many plaintiffs as this case (twenty-two versus twelve) and fifty percent (50%) more defendants (approximately one hundred (100) versus sixty-seven (67)). Yet, in Ingles, Judge Chin allowed approximately five hundred thirty (530) hours of deposition testimony, *less* than the five hundred eighty-two (582) hours plaintiffs seek here.[3] Plaintiffs' silence with regard to Judge Chin's ruling is inexplicable and speaks volumes. We respectfully refer Your Honor to our Jan. 28, 2014, letter (DE 112) with regard to the reasons why Judge Chin's approach of specifying a limit on depositions split between full-day and half-day depositions is reasonable.

Fourth, plaintiffs assert that the ongoing E-discovery process somehow justifies their discovery plan, but we submit that plaintiffs are only partially correct. To the extent that electronic discovery reflecting communications between certain prospective witnesses remains outstanding, the City agrees that depositions of those witnesses should be scheduled later in discovery. The City does not agree, however, that ongoing E-discovery somehow justifies a greater number of depositions. The two issues have nothing to do with one another. Plaintiffs also vaguely suggest, in footnotes (*see, e.g.*, Pl. Ltr. 1/8, at page 2, n.1) that the City has delayed its document production, and that because of these purported delays plaintiffs cannot decide which witnesses they can depose in one half-day as opposed to one full day. Contrary to plaintiffs' suggestion, the City's document production was virtually complete as of Oct. 31, 2013, and that since that date, plaintiffs have identified a few scattered use of force files in which

---

[3]   Plaintiffs endorse the concept of total hourly limits on depositions. Their initial letter to the court cited two decisions, *In re Pfizer Securities Litigation*, 04-CV-9866 (LTS) (HBP) (DE 223) (S.D.N.Y. Aug. 20, 2010) (granting 600 and 200 hours of deposition discovery to plaintiffs and defendants, respectively); and *In re Parmalat Securities Litigation*, 04-CV-0030 (LAK) (HBP) (DE 414) (S.D.N.Y. Mar. 6, 2006) (granting 900 and 600 hours of deposition discovery to plaintiffs and defendants, respectively), as support for their position that defendants are not necessarily entitled to the same number of depositions as they are. (Pl. Ltr. 12/12, at page 5)

some of the named defendants were involved, but which were not included within the 1.8 million page production. Every time plaintiffs have purportedly identified such files, however, they have been wrong about some of them, at least, and we have had to search our own database and identify for plaintiffs the Bates numbers of these files. These issues only illustrate that in a document production this large, there are bound to be a few errors or oversights. Plaintiffs have DOC's complete list of UOF incidents in which the named defendants were involved, and they should be able to assess whether a full-day or half-day deposition is necessary for these defendants.

In sum, the City proposes that plaintiffs be permitted up to two hundred eighty five (285) hours of deposition discovery, which is roughly proportional to the number of hours allowed by Judge Chin in <u>Ingles</u>, given the smaller number of parties in this case.[4] We have no objections to the order in which plaintiffs wish to take the depositions, and we agree that to the extent practicable, witnesses involved in the same incident should be deposed by both sides within the same general time frame. We also agree to build in time for settlement discussions, and have no objection to the two "hiatus" periods in plaintiffs' proposed plan. We also note that both sides bear responsibility for assessing the merits of the case on an ongoing basis, and as discovery proceeds both sides will learn more about the strengths and weaknesses of their respective positions. Settlement discussions, if appropriate, can and should be initiated by either side, at any time.

*Defendants' Depositions*. We propose, and plaintiffs agree, that defendants be permitted to take full-day depositions of each named plaintiff, with the six hours to be split between counsel for the City and counsel for the individual defendants who are not represented by the City. We also propose that defendants be permitted to take thirty-eight (38) non-party depositions of inmate witnesses and class members which we believe are justified under Rule 26(b)(2)(C). The thirty-eight (38) non-parties fall into two categories: (1) approximately fourteen (14) inmates who witnessed or were present when an incident involving a named plaintiff occurred, and (2) approximately twenty (20) to twenty-five (25) class members who, we anticipate, plaintiffs will identify as having been involved in uses of force on which plaintiffs will rely to prove their case-in-chief at trial.

As to the first category of non-party witnesses, we have already identified for plaintiffs, by name or description, the fourteen (14) inmate witnesses to the named plaintiffs' incidents. Some of the names appear in the UOF files and others appear in the individual plaintiff's initial disclosures or discovery responses. As to the second category, we choose the number 20-25 for inmate class members based on our past experience in <u>Ingles</u>. During <u>Ingles</u>, plaintiffs relied on the expert report of Steve Martin, to support their argument that the pattern of injuries to inmates, standing alone, is proof that officers use excessive force. Mr. Martin then cited approximately seven hundred forty (740) use of force incidents that occurred during the class period in which,

---

[4] This figure equals twenty-five (25) full day depositions of six (6) hours each (150 hours), plus twenty-five (25) half-day depositions of three (3) hours each (75 hours), plus ten more depositions up to six (6) hours each (60 hours).

he claimed, inmates sustained what he believed were serious injuries.[5]  We understand that plaintiffs have, again, retained Steve Martin as an expert in this case.  The City's experts sharply disagreed with Martin's analysis during Ingles, and we expect that our experts and City policymakers, likewise, will disagree with his analysis here (if he advances the same position).

Plaintiffs do not dispute that they will rely on some subset of use of force incidents to prove their case-in-chief at trial.  We of course do not expect to depose every inmate who was involved in or witnessed every incident on which plaintiffs will rely.  However, we respectfully submit that the City should be permitted to depose at least some members of this sub-group of inmates.  We are willing to limit all such non-party depositions to one half-day of three hours each.  We submit that the City's request is reasonable and meets the criteria of Rule 26(b)(2)(C).  *See Weatherford, supra*, at *7-11 (analyzing application to take more than ten depositions under the criteria of Rule 26(b)(2)(C)).  These class member depositions would not be cumulative of other discovery, nor would the burden outweigh the benefits in the circumstances here.

*Identification of UOF Incidents*.  In light of the City's request above, we also respectfully submit that, ninety (90) days prior to the close of fact discovery, plaintiffs should be required to identify all UOF incidents (other than those for which the named plaintiffs have sued) on which they will rely in their case-in-chief at trial.  We submit that ninety (90) days is sufficient time to enable the City to select some subset of inmates involved in those incidents, locate the inmates and take their depositions.  The court has ample discretion to order such disclosures, and to set interim deadlines otherwise. *E.g., In re Buspirone Patent & Antitrust Litigation*, 210 F.R.D. 43, 55 (S.D.N.Y. 2002) ("The timing and sequence of discovery is a matter over which courts have broad discretion") (citations omitted).

Plaintiffs oppose this request on the grounds that it is "premature and impractical" (Pl. Ltr. 1/8, at page 6).  Plaintiffs assert that they are not required to disclose this information until thirty days before trial or otherwise directed by the trial judge, citing Rule 26(a)(3)(B) which concerns pre-trial disclosures.  We submit that plaintiffs' proposal to wait that long – not our request for earlier disclosure – is impractical.  Plaintiffs concede that they will rely on UOF incidents other than those involving the named plaintiffs.  Rule 26(a)(1), moreover, requires disclosure of witnesses who may have discoverable information and documents that plaintiffs may use to support their claims.  Accordingly, we submit that plaintiffs should be required to identify the UOF incident files they may use in order to prove their case in sufficient time to enable the City to depose the inmates involved in those incidents.  Otherwise, the City will have essentially no opportunity to depose any of those inmates, an unfair result.

\* \* \* \* \*

As we have previously noted, plaintiffs' request to take ninety-seven (97) full-day depositions would require the City to prepare or produce at least one witness for deposition *every single business day* between now and the close of fact discovery on July 31, 2014 – while, at the

---

[5] We have not attached a copy of Mr. Martin's report from Ingles but will submit a copy if Your Honor believes it would be useful.

same time, preparing for and taking our own depositions, lining up experts and planning our defense of this massive lawsuit.  We submit that plaintiffs' proposal is not reasonable and should be rejected, and that for the reasons set forth in this letter, as well as our prior submissions of Dec. 31, 2013, and Jan. 28, 2014, the City's discovery plan should be adopted.

                                                        Respectfully submitted,

                                                        /s/
                                          Arthur G. Larkin (AL 9059)
                                          Assistant Corporation Counsel

AGL/m
cc:     All Counsel (by ECF)