

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

April 14, 2014

William I. Sussman
T 212-841-0612
F 646-728-1505
william.sussman@ropesgray.com

<u>**BY ECF and First Class Mail**</u>

The Honorable James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street
New York, New York 10007

Re:   *Nunez, et al., v. City of New York, et al.*, 11-CV-5845 (LTS) (JCF)

Dear Judge Francis:

      This office, together with The Legal Aid Society Prisoners' Rights Project and Emery Celli Brinckerhoff & Abady, is counsel for the Plaintiff Class in this matter. Emery Celli Brinckerhoff & Abady, together with The Legal Aid Society Prisoners' Rights Project, also are counsel for the Plaintiffs in their individual damages claims.

      Per Plaintiffs' April 9, 2014 letter to the Court (Dkt. #125), Plaintiffs write to request a status conference with the Court as soon as possible to resolve two pressing issues: first, the unacceptably slow and intermittent production of Electronically Stored Information ("ESI") by Defendant The City of New York ("City"); and second, the City's refusal to produce witnesses for depositions in a timely manner and prior to the proposed settlement week break that will (if approved by the Court) begin May 12, 2014 (the "Settlement Break"). The City's conduct is interfering with Plaintiffs' ability to schedule and conduct depositions pursuant to the discovery plan entered by the Court on February 18, 2014 (Dkt. #118) ("the Discovery Plan"), and will inhibit settlement discussions.[1]

      As for the first issue, the City's slow and erratic ESI production has impeded Plaintiffs' ability to depose, prior to the Settlement Break, three supervising DOC Wardens (Wardens Rose Agro-Doyle, Edmond Duffy and Kathleen Mulvey) ("Warden Deponents") and the Deputy Executive Director of the New York City Board of Correction ("BOC"), Amanda Masters. Further, if the City continues to produce ESI at its current rate, its ESI production will not be complete until long after the Court-ordered close of fact discovery on July 31, 2014 (Order dated

---

[1] This letter also addresses the City's reflexive and misguided letter of April 9, 2014 (Dkt. #126) (the "City Letter").

ROPES & GRAY LLP

September 3, 2013 (Dkt. #98)). The City's rate of production thus poses an ongoing and increasing obstacle to Plaintiffs' ability to take depositions and otherwise complete discovery pursuant to the Discovery Plan, and interferes with Plaintiffs' ability to gather data needed for productive settlement discussions.

As for the second issue, Plaintiffs need the Court's prompt assistance to compel the City to produce certain key witnesses for depositions prior to the Settlement Break. Those witnesses are the Medical Director of the City's Department of Health and Mental Hygiene, Dr. Homer Venters, as well as a Rule 30(b)(6) witness or witnesses on the topic of surveillance cameras in the City Jails. The City's conduct interferes with Plaintiffs' ability to gather data useful for productive settlement discussions.[2]

Plaintiffs respectfully request an order from the Court to remedy the City's failure timely to produce complete ESI for the Warden Deponents and the BOC and, more generally, to order a clear and workable ESI protocol so that all relevant ESI is produced sufficiently in advance of each deposition to be taken by Plaintiffs going forward, without disrupting the Discovery Plan. Plaintiffs also request that the Court direct the City to make the deponents discussed herein available promptly.

Plaintiffs discuss each of these points in more detail below.

A.  **Plaintiffs and the City Have Conferred Fully Regarding the City's ESI Production and the Outstanding Depositions.**

The parties have conferred multiple times about the issues Plaintiffs bring before the Court today (contrary to the strange and unfounded assertion in the City Letter that we have not), and exchanged information and concerns that inform the disputes Plaintiffs bring before the Court today.

With respect to ESI production, Plaintiffs have initiated dozens of telephone conferences with the City on the topic and have engaged in lengthy email exchanges on that issue. *See* Exhibit A hereto, an illustrative, but by no means the only, email string reflecting Plaintiffs' efforts over a number of weeks to obtain a review rate from the City or firm dates by which production would be completed for particular custodians. That exchange culminates with a March 24, 2014 email from Plaintiffs requesting a telephone conference with the City, which the next day the City declined, and said that the City instead would make "every effort to get you the information you've requested" – a promise the City has yet to fulfill.[3]

---

[2] Plaintiffs provided the City with a settlement proposal, after tremendous time and effort, consisting of a substantive 13-page transmittal letter, and a detailed 27-page package of proposed settlement terms. Plaintiffs put so much effort into that proposal in order to maximize the prospect of meaningful and fruitful settlement discussions during the Settlement Break.

[3] As discussed in Section B, *infra*, on March 28, 2014, the City told Plaintiffs that its review rate was 8,000 ESI documents per week, but that its review rate likely would *decrease*. Further, as also discussed in Section B, even if the *review* rate is 8,000 ESI documents per week, the City is not *producing* ESI documents at anywhere near that rate; the City's actual production rate is about 930 ESI documents per week.

ROPES & GRAY LLP

The City also repeatedly has said that it cannot increase the pace of ESI production. Moreover, and directly relevant to the current situation, the City's position is that Plaintiffs are not entitled to the production of complete ESI relevant to any deposition witness prior to that witness' scheduled deposition – an obviously unacceptable stance, anathema to efficient and effective questioning. *See* Exhibit B hereto, a March 10, 2014 City email stating: "We cannot agree to produce E-mails for every witness – or, for that matter, any witness – two weeks in advance of his/her scheduled deposition date. In our status letter to the court of Feb. 13th we made clear that we did not expect all of the E-mails for every custodian to be produced prior to that custodian's deposition." The letter the City refers to, filed February 13, 2014 (Dkt #117) ("City ESI Update") in fact said: "Defendants have also agreed to make every effort to provide emails of custodians prior to their depositions. However, defendants have made clear that due to the volume of emails to review, that may not always be possible." City ESI Update at 3. But telling the Court that it "may not always be possible" to complete ESI production for a particular custodian implies that it is possible in most cases. It does not explain the City's current position that it need not produce complete ESI for *any* deponent prior to his or her deposition. It also is entirely different from what actually has transpired. The City is *not* "mak[ing] every effort to provide emails of custodians prior to their depositions." The City has been producing ESI at such an anemic rate that Plaintiffs likely will have no ESI, or a pitifully small percentage of ESI, for many of the most important supervisory Defendant and non-Defendant City witness depositions, if the Court does not intervene.[4]

With respect to depositions, the record similarly reveals that the parties have reached an impasse. As for Dr. Venters, the City has taken the firm position that it will not produce him prior to the Settlement Break. *See* Exhibit C hereto, an April 7, 2014 City email confirming its position.[5] As for the Rule 30(b)(6) deposition regarding surveillance cameras in the City Jails (a deposition which, like that of Dr. Venters, is important with respect to having productive settlement discussions, as well as the merits of the case), Plaintiffs have sent the City no fewer than five separate email requests asking to confirm a date, but the City has yet to do so. Plaintiffs should not be required to make a sixth request before seeking the Court's assistance.

In short, Plaintiffs have fully conferred with the City regarding the issues discussed herein. It is unfortunate that the Court needs to become involved in what should be a cooperative

---

[4] As just one stark example that is directly at issue here, the City said that the deposition of Warden Rose Agro-Doyle should go forward even though were over 16,000 unproduced relevant ESI documents for her alone. As discussed next in Section B, the problem with the City's ESI production generally has been manageable with respect to deposing correction officer Defendants because they have had little ESI, but now that Plaintiffs have moved on to depositions of supervisory Defendants and non-party City witnesses, for whom there typically is much more relevant ESI, the problem has become more severe and is likely to continue.

[5] Lead counsel for the City, Arthur Larkin, has told Plaintiffs that Dr. Venters' deposition cannot be taken prior to the Settlement Break because Mr. Larkin will be on trial at the end of April. His position does not account for the other three (or more) City attorneys who also have been taking and defending depositions in this case. While Plaintiffs understand that Mr. Larkin is the lead City attorney in this case, and Plaintiffs have made efforts to accommodate reasonable scheduling requests, it is unreasonable, in a case of this size and magnitude, to put the Discovery Plan on hold because of the trial schedule of one attorney. The City Letter complained that Plaintiffs have several attorneys available to take depositions. That is true of the City as well.

ROPES & GRAY LLP

discovery process, but the City simply will not cooperate, or honor its discovery obligations. Plaintiffs therefore request an early conference with the Court, in light of the upcoming Settlement Break (assuming the Court approves moving it to the week of May 12), to address and resolve the issues discussed herein.

**B.     The City's Unacceptably Slow ESI Production is Interfering with the Discovery Plan and with Settlement Discussions.**

In August 2013, after the Court ordered the City to produce ESI in response to Plaintiffs' document requests (Dkt. #88), Plaintiffs began negotiations with the City about its ESI production. Plaintiffs provided the City with a prioritized production list of custodians based on planned deposition dates, so that relevant ESI could be produced in advance of each deposition. *See* Exhibit D hereto, correspondence ending with an email dated August 26, 2013 confirming prioritization of ESI production based on planned deposition dates.[6] Early depositions of correction officer Defendants with a low volume of ESI largely proceeded according to that prioritization plan. However, as Plaintiffs have moved on to the depositions of supervisory Defendants and non-Defendant City witnesses, who have a higher volume of ESI (and where issues of notice, knowledge, and policy and practice, that may be proven with ESI, are more directly relevant to supervisory Defendant and City liability), the slow and erratic pace of the City's ESI production has become an increasingly large obstacle to Plaintiffs' ability to depose those Defendants and witnesses, especially in an efficient and informed manner.

In the City ESI Update, the City stated that it had produced a total of 79,466 pages of ESI (about 30,000 documents) and that 350,000 ESI documents remained to be reviewed for potential production. *Id.* at 2. The City also stated that it was hiring ten additional staff who would do full-time document review.[7] The City further stated that, using the very conservative metric of 250 documents per reviewer per day, it would be able to review approximately 10,000 documents per week. *Id.* at 2-3.[8]

---

[6] Plaintiffs also worked cooperatively with the City to refine search terms, agreeing to remove terms when the City's sampling showed they were too broad and/or returned non-relevant documents. Plaintiffs also suggested the use of a categorical privilege log to ease the burden of the City's privilege review.

[7] The City also stated that the parties were negotiating a Rule 502(d) Order and that the City was "finalizing the terms and categories for the privilege log." *Id.* at 3. However, the City still has not responded to Plaintiffs' March 12, 2014 comments on the draft Rule 502(d) Order. The City also has not yet produced a privilege log or even proposed categories for one.

[8] It is generally accepted that linear document reviews proceed at a rate of 50-60 documents per reviewer per hour. Although the City apparently is simultaneously conducting a responsiveness, privilege and redaction review, 30 documents per reviewer per hour (250 documents per reviewer per day divided by 8 hour day) is still quite slow. Assuming an 8 hour work day, use of the 50-60 document per reviewer per hour standard would result in the review of 400-480 documents per reviewer per day, or 2,000-2,400 documents per reviewer per week, and 20,000-24,000 documents per week with ten reviewers. But as noted in text, the City said it could review only 10,000 documents per week, even with ten additional full-time reviewers in addition to the unspecified number of reviewers it already had working on its ESI review.

4

ROPES & GRAY LLP

Even if the City did consistently achieve the 10,000 documents per week review pace it anticipated in the City ESI Update, the City itself admitted it would take 8.5 months to complete production at that rate – that is, until about the end of October 2014, a date long after the July 31, 2014 scheduled close of fact discovery. *Id.* at 3. But the City's review, and especially its production, has been much slower even than what it anticipated in February. On March 28, 2014, the City told Plaintiffs that its current rate of review actually was only 8,000 documents per week, and that it expected that rate to *decrease* rather than *increase*. *See* Exhibit E hereto, a March 28, 2014 City email titled "Nunez E-Discovery Update." Moreover, the City's actual *production* of ESI has been even more anemic. The City has produced only 7,467 ESI documents in the two months since the City ESI Update – a rate of about 930 documents per week.

Plaintiffs of course need to receive, review and analyze relevant ESI before taking each deposition. The City's ESI production failures already have seriously hampered Plaintiffs' ability to schedule depositions. That is especially true with respect to the three Warden Deponents and Ms. Masters, discussed next in Sections B.1 and B.2. Moreover, it appears that, without a clear Court order, the City will continue to produce ESI at a rate it sets for itself – far below even the low rate it anticipated in the City ESI Update – which will pose an increasingly large obstacle to the Discovery Plan, and to timely and productive settlement discussions. In Section B.3 Plaintiffs discuss a proposed ESI protocol for the Court's consideration that, if ordered by the Court, hopefully will help remedy that aspect of the situation.

1. **Plaintiffs Request the Court Order the Prompt Production of Complete ESI Related to the Warden Deponents.**

The problems posed by the City's ESI production have been highlighted during Plaintiffs' recent unsuccessful attempts to schedule the depositions of the Warden Deponents, which the Court ordered moved from after the original proposed settlement week break (as proposed in Plaintiffs' Proposed Discovery Plan (Dkt. #113, Exhibit A)), to before the Settlement Break.

On February 21, 2014, in response to the Court's entry of the Discovery Plan and its move of the four Warden Deponents' depositions, Plaintiffs noticed the depositions of the four Wardens for the following dates: Rose Agro Doyle (3/28), Edmond Duffy (3/31), Kathleen Mulvey (4/2), and Emmanuel Bailey (4/4).[9] Because the Court's Discovery Plan moved the Warden Deponents' depositions to earlier in the Discovery Plan than Plaintiffs originally had contemplated, in a February 28, 2014 telephone call Plaintiffs asked the City to prioritize the production of the Warden Deponents' ESI, as well as continuing to prioritize ESI for Dr. Venters.[10] The City agreed to Plaintiffs' requests.

However, the City's production of ESI, in general and for the Warden Deponents in particular, has been minimal and slow. On February 28, 2014, the City produced 435 documents

---

[9] Those dates remained unconfirmed by the City until the point at which the City and Plaintiffs agreed to postpone the depositions at Plaintiffs' request because the City still had not produced requested Warden Deponents' ESI.
[10] The Warden Deponents' ESI is both responsive to Plaintiffs' document requests served on September 6, 2012 and February 7, 2013 and resulted in "hits" using search terms agreed to by Plaintiffs and the City.

5

ROPES & GRAY LLP

related only to Dr. Venters (whose deposition was noticed for March 31, 2014), but no Warden Deponents' ESI. The February 28 production was the City's first ESI production since January 16, 2014. Since then, the City has made more regular productions, but they continue to be small – as noted earlier, the City has produced only about 7,500 documents (17,000 pages) since the City ESI Update two months ago.[11] On April 8, 2014, the City told Plaintiffs that it had completed its ESI production for one Warden Deponent (Emmanuel Bailey, as to whom there were only 130 relevant ESI documents), but that the majority of the ESI for the other three Warden Deponents remained outstanding.[12]

As of today, the City still has not produced more than 27,000 unique emails and attachments that are relevant to the Warden Deponents' depositions. *See* Exhibit F hereto, a March 5, 2014 email from the City confirming non-production of the Warden Deponents' ESI and that at that time there were over 33,000 outstanding ESI documents relevant to the Warden Deponents.[13]

Perhaps even worse in terms of frustrating Plaintiffs' ability to take depositions once, efficiently and effectively, the City has informed Plaintiffs that it will not commit to a date on which any Warden Deponents' ESI – or for that matter, any deponent's ESI – will be produced. *See* Exhibit B hereto. That refusal, coupled with the slow and erratic pace of the City's ESI production, has made it impossible for Plaintiffs to schedule depositions with any confidence that necessary ESI will be produced prior to the scheduled deposition, let alone with time to review it before the deposition.

Plaintiffs have carefully considered whether the depositions of the remaining three Wardens could proceed even without the approximately 27,000 still-outstanding ESI documents. But, given the obvious importance of the Warden Deponents' depositions to Plaintiffs' case (a point that the Court evidently recognized in moving them prior to the Settlement Break so as to hopefully better facilitate those discussions) – and the self-evident need for Plaintiffs to have the Warden Deponents' complete ESI in advance of each of their depositions in order to take those important depositions effectively – Plaintiffs have concluded that their case would be needlessly prejudiced if forced to take the depositions of the remaining three Wardens without having all the relevant ESI in advance of each of those depositions.

---

[11] From the beginning of this case, the City has produced a combined total of 34,763 ESI documents (96,867 pages). The City ESI Update stated that approximately "163,000 emails, or about 350,000 documents, when including attachments," remained to be reviewed and produced. Simple math tells us that the City thus has produced less than 10% of the total ESI that it says is at issue.
[12] Shortly after the City's advice that it had completed ESI production for Warden Bailey, Plaintiffs proposed several deposition dates prior to the Settlement Break. The City has not yet responded.
[13] The City stated in its March 5, 2014 email (Exhibit F hereto) that the number of outstanding ESI documents was as follows for each of the four Warden Deponents: Rose Agro-Doyle (16,445); Emmanuel Bailey (130); Edmond Duffy (6,940); Kathleen Mulvey (9,633). As of April 8, 2014, only Warden Bailey's ESI has been produced. The vast majority of the ESI for the other three Warden Deponents remains outstanding. Since that March 5 email the City has produced only about 7,000 ESI documents, about 6,000 of which relate to the Warden Deponents, thus leaving the shortfall of about 27,000 ESI documents for the three Warden Deponents.

6

ROPES & GRAY LLP

Plaintiffs thus request that, if the Court wants the Warden Deponents to be deposed before the Settlement Break, the City be ordered to produce all of the Warden Deponents' ESI by April 21, 2014. Recognizing that production by that date unfortunately may not be feasible, Plaintiffs alternatively ask that the City be ordered to produce the Warden Deponents' ESI on a rolling basis so that Plaintiffs have all relevant ESI for a Warden Deponent at least 14 days before his or her deposition, which is to be scheduled as soon as possible so as to limit further disruption to the Discovery Plan.[14]

### 2. Plaintiffs Request the Court Order the Prompt Production of Complete ESI Relevant to the BOC.

Plaintiffs' efforts to depose the BOC's witness, Amanda Masters, before the Settlement Break, as required by the Discovery Plan, also have been hampered by the City's slow ESI production. On February 21, 2014, Plaintiffs noticed Ms. Masters' deposition for April 1, 2014, believing that the City was capable of producing all relevant ESI prior to that date. Not only did the City not complete production of Ms. Masters' own emails until April 8, 2014, but on March 12, 2014, the City advised Plaintiffs for the first time that three additional BOC custodians – Cathy Potler, Richard Wolfe and Felix Martinez – have documents requested by Plaintiffs on September 19, 2013. Disappointingly, but by this time not surprisingly, the City also stated that it would not agree to postpone Ms. Masters' deposition until after those additional BOC custodians' emails were reviewed and produced. *See* Exhibit G hereto, an email string culminating in a March 14 City email objecting to Plaintiffs' request to adjourn Ms. Masters' deposition until relevant documents were produced, and including a March 12 City email stating: "We are not going to hold up the BOC deposition [of Ms. Masters] until the E-mails are reviewed and produced, however, for reasons that we have stated previously" – an evident reference to the City's position that it had the Court's implicit approval for its position that it need not produce ESI before a scheduled deposition.[15]

As with the Warden Deponents, Plaintiffs had hoped to take Ms. Masters' deposition prior to the Settlement Break, given the BOC's important oversight role with respect to the City Jails. But to depose Ms. Masters (who is a non-party) before receiving and having time to review the BOC ESI Plaintiffs requested, would result in an inefficient and ineffective deposition. Plaintiffs also sought to take only one deposition of the BOC, which might not be possible if Ms. Masters were to be deposed without Plaintiffs having the BOC ESI. If Plaintiffs are not able to depose Ms. Masters before the Settlement Break, getting access at least to the BOC ESI likely will provide valuable insight into the BOC's oversight of DOC, which may well aid settlement discussions.

---

[14] Plaintiffs request 14 days advance production for each of the three remaining Warden Deponents, in light of the large volume of ESI relevant to each of them that will need to be organized and reviewed. For deponents with fewer than 1,000 relevant ESI documents to be produced, Plaintiffs request 7 days advance production. *See* Section B.3 *infra*.

[15] In a subsequent March 28 email, the City informed Plaintiffs that it had identified a universe of nearly 15,000 responsive documents for those three custodians, that "hit" on agreed-upon search terms and that it had not yet reviewed or produced, and that there may also be additional responsive emails for Ms. Masters herself. *See* Exhibit E hereto. Plaintiffs will need timely production of responsive documents from those materials as well, before deposing Ms. Masters.

7

...

ROPES & GRAY LLP

Plaintiffs therefore request that the Court order the City to produce all relevant BOC ESI by April 21, 2014, so Ms. Masters can be deposed prior to the Settlement Break. Recognizing that production by that date unfortunately may not be feasible, Plaintiffs alternatively ask that the City be ordered to produce all of the BOC ESI on a rolling basis so that Plaintiffs have all BOC ESI at least 14 days before that deposition, which is to be scheduled as soon as possible so as to limit further disruption to the Discovery Plan.

### 3. Plaintiffs Request that the Court Order an ESI Protocol.

The pace of ESI production will not allow Plaintiffs to complete discovery on time. Moreover, it is vital to have all relevant ESI before each scheduled deposition, not only to identify those documents that will be the subject of direct questioning, but also to give the attorney taking the deposition the same information the City possesses about the deponent's background, knowledge, and other information relevant to liability issues. And receiving relevant documents only after a deposition has been taken necessarily might result in a need to re-depose Defendants and non-party City witnesses. Accordingly, Plaintiffs further request that the Court order the City to follow an ESI protocol that will require the City to produce on a rolling basis all ESI relevant to that deposition, sufficiently in advance of that deposition so as to permit meaningful review by Plaintiffs, and without jeopardizing the Discovery Plan. As the City has demonstrated, if it is allowed to set its own pace for production of ESI, the production will take many months (if not years), and will go long past the scheduled close of fact discovery.

Plaintiffs request that the Court order the City to produce all relevant ESI for any deponent at least 7 days before the scheduled deposition date if such ESI is 1,000 pages or less, and 14 days before the scheduled deposition date if such ESI is more than 1,000 pages. Plaintiffs have attempted to cooperate with the City and to coordinate the City's ESI production in a less rigid way, but the City has taken advantage of Plaintiffs' flexibility and understanding. Without such an order, it will become increasingly difficult to schedule depositions with any assurance that they can be taken once, and efficiently and effectively, and the Discovery Plan, including the current deadline for fact discovery, increasingly will risk becoming a dead letter. Settlement discussions also will be inhibited.

### C. The City Should be Ordered to Produce Certain Requested Deponents Promptly.

Despite numerous email requests and many proposed dates, the City has refused to produce Dr. Venters, or to produce a witness or witnesses in response to Plaintiffs' February 25, 2014 Rule 30(b)(6) notice for a deposition on DOC's use of surveillance cameras in the City Jails. Both of those depositions should be taken before the Settlement Break, because they both will be useful in facilitating discussions for settlement of the claims of the Plaintiff Class.

### 1. Plaintiffs Request the Court to Compel the Deposition of Dr. Venters.

On February 21, 2014, Plaintiffs noticed the deposition of Dr. Venters for March 31, 2014. The City never confirmed that deposition date. However, based on the City's rolling

8

**ROPES & GRAY LLP**

production of ESI related to Dr. Venters in late March and early April, and with the City's assurances that the remainder of Dr. Venters' ESI would be produced in early April, Plaintiffs proposed any of the following dates for his deposition: April 21, 22, 23, 24, 25, 28, 29 or 30.

In an April 1, 2014 email, the City curtly rejected *all* of those dates. Counsel for the City bluntly insisted that Dr. Venters "will be produced in May, so I'd appreciate some dates from you," further stating "[i]f you do not believe that the foregoing proposal complies with the City's discovery obligations, you are free to take whatever steps you believe necessary." *See* Exhibit H hereto. Objecting to the City's refusal to produce Dr. Venters in April, but wanting to take the deposition before the Settlement Break, on April 7, 2014 Plaintiffs proposed the following dates: May 1, 2, 5, 6 or 7. The City replied in an April 7 email: "None of those dates work, unfortunately, so pick some dates after May 9th [*i.e.*, not before the Settlement Break]." *See* Exhibit C hereto.

So far, Plaintiffs have sent six emails asking the City to confirm any of the thirteen dates prior to the Settlement Break for Dr. Venters' deposition – but the City has refused to agree to any of them.

Dr. Venters is a physician, who has clinical and administrative oversight of the practitioners who treat injuries that City Jail inmates suffer in Use of Force incidents. He has authored important reports about injuries inmates suffer in Use of Force incidents, and has information directly relevant to the Plaintiffs' system-wide claims. Plaintiffs expect that Dr. Venters' deposition will yield evidence that will facilitate productive discussions with the City during the Settlement Break. As Plaintiffs have explained to the City, that is a key reason why Plaintiffs deliberately proposed a discovery plan in which Dr. Venters would be deposed prior to the Settlement Break, and why in February Plaintiffs asked the City to prioritize production of ESI relevant to him. *See* Exhibit I hereto, Plaintiffs' April 7 email explaining the need to take Dr. Venters' deposition prior to the Settlement Break. Although Plaintiffs have since obtained the ESI relevant to Dr. Venters, the City now has refused to produce him on any of a number of proposed dates before the Settlement Break.

Plaintiffs request that the Court order the City to produce Dr. Venters for deposition on April 21, 22, 23, 29, 30, May 1, or any day the week of May 5, so that his deposition can be taken before the Settlement Break.

2. **Plaintiffs Request the Court to Compel the Deposition of a Rule 30(b)(6) Witness or Witnesses About Surveillance Cameras in the City Jails.**

On February 25, 2014, Plaintiffs noticed a Rule 30(b)(6) deposition on the topic of DOC policies and practices regarding surveillance cameras in the City Jails. That is a key issue in this case, and was a key part of the detailed settlement proposal Plaintiffs submitted to the City. Plaintiffs' proposed discovery plan, and the Discovery Plan as entered by the Court, contemplated that deposition occurring prior to the Settlement Break. That scheduling would permit Plaintiffs to gather valuable baseline information about surveillance cameras in the City Jails, before discussing settlement with the City.

ROPES & GRAY LLP

Plaintiffs repeatedly have asked the City for a date for that important deposition, but the City has refused to confirm one. *See* Exhibit J hereto, an April 9, 2014 email, Plaintiffs' fifth request for a date – like its predecessors, as yet unanswered.

Plaintiffs request that the Court order the City to produce one or more witnesses to testify in response to the February 25 Rule 30(b)(6) notice, on one or more of the following days: April 21, 22, 23, 29, 30, May 1, and any day the week of May 5.[16]

\* \* \*

We regret having to trouble the Court with such matters, but it unfortunately is necessary – as is the Court's firm intervention at this point – to compel the City to timely produce complete relevant ESI in advance of each scheduled deposition, both with respect to the persons specifically discussed herein, and more generally going forward, as well as to promptly compel the deposition of Dr. Venters and the Rule 30(b)(6) deposition regarding surveillance cameras. We appreciate the Court's understanding, and we look forward to a prompt conference with the Court to address and resolve these important matters.[17]

Respectfully,

| EMERY CELLI BRINCKERHOFF & ABADY | ROPES & GRAY LLP |
|---|---|
| Katherine R. Rosenfeld | *William Sussman* /SB |
| Vasudha Talla | William I. Sussman |
|  | Christopher P. Conniff |
| THE LEGAL AID SOCIETY | Amanda N. Raad |
| Jonathan S. Chasan | Lisa Coyle |
| Mary Lynne Werlwas | Joseph G. Cleemann |
| *Counsel for Plaintiffs Mark Nunez, Rodney Brye, Shameik Smallwood, Oscar Sanders, Travis Woods, Ralph Nunez, Keith Bacote, Jose DeGros, Christopher Graham, Sonny Ortiz, Clifford Sewell, and Leslie Pickering* | Anna Friedberg |
|  | *Counsel for Plaintiffs Rodney Brye, Shameik Smallwood, Travis Woods, and Oscar Sanders in their capacities as Class representatives* |

cc: All counsel (by ECF and First-Class Mail)

---

[16] Though the deposition of Dr. Venters and the Rule 30(b)(6) deposition are those most urgently needed before the Settlement Break, Plaintiffs also request that the Court compel the deposition of Defendant Louis Leonard, a now-retired Correction Officer. Plaintiffs' experience in trying to schedule his deposition has been frustrating. On January 22, 2014, Plaintiffs noticed his deposition. Since that time, Plaintiffs have proposed 20 different deposition dates, in February, March and April. The City has refused to confirm a date. Plaintiffs request that the Court compel the City to produce Defendant Leonard for deposition on a date to be proposed by Plaintiffs (which would not be before the Settlement Break).

[17] The City has asked Plaintiffs to advise the Court that the City wants until Friday, April 18, to submit a reply to this letter. Plaintiffs regularly have accommodated City requests for time, but they cannot agree to that one in light of the urgent need for relief from the Court.