

THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

**ZACHARY W. CARTER**
*Corporation Counsel*

**ARTHUR G. LARKIN**
Senior Counsel
Phone: (212) 356-2641
Fax: (212) 788-9776
alarkin@law.nyc.gov

April 18, 2014

**BY ECF**

Hon. James C. Francis, IV
United States Magistrate Judge
United States District Court
500 Pearl Street
New York, New York 10007

Re:     Mark Nunez v. City of New York, et al., 11-CV-5845 (LTS) (JCF)

Your Honor:

We write in response to plaintiffs' letter of April 14, 2014 (DE 127). We set forth below four (4) proposed modifications to the discovery plan that, we believe, will serve the interests of all parties as this lawsuit moves forward. We have explained this proposal to plaintiff's counsel, but they insist that we address all of the "various concerns" that they expressed in their April 14, 2014, letter before they will tell us their position on this proposal. We have asked counsel to identify what specific "concerns" they believe our proposal does not address but they have not responded, nor have they returned my phone calls to discuss the issues in greater detail. Accordingly, this request is made without plaintiff's consent. Regardless of plaintiffs' position, we submit that the discovery plan should be modified as we suggest, because "good cause" is shown in the circumstances here. *See* Fed. R. Civ. P. 16(b).

In addition, because of unavoidable scheduling conflicts (discussed on pages 2-3, below), we respectfully request that Your Honor schedule a conference to resolve these issues after May 7, 2014. We submit that plaintiffs will not be prejudiced by this request.

As more fully set forth below, we propose that: (1) the settlement "break" week be moved back by five (5) business days, from May 12-16, to May 19-23, 2014, a request that plaintiffs specifically oppose, (2) the six depositions that plaintiffs contemplated taking prior to the settlement "break" week (Dr. Venters, Amanda Masters at BOC, and four wardens) be moved to later dates in the discovery process, (3) the depositions of individual correction officer defendants, at least twenty-five (25) of which remain to be taken, be moved up in the process, to mutually agreeable dates within the next six to eight weeks, and (4) the E-discovery cutoff be

extended to July 31, 2014, and the overall fact discovery cutoff be extended to Sept. 30, 2014. We advance this proposal because electronic discovery has proven more time-consuming than we anticipated; the witnesses whose depositions we are proposing to move up do not depend, in large part, on electronic discovery; and the six depositions plaintiffs seek to take now will not likely affect the City's settlement position, nor, it appears, will they likely affect plaintiffs' position which they have already communicated to us.

The timing of plaintiffs' ten-page letter request, as well as their refusal to allow the City four (4) business days to respond to it (DE 127, at page 10, fn. 17), strongly suggests gamesmanship. We have repeatedly reminded plaintiffs' counsel that the undersigned, who is lead attorney for the City, is scheduled to be on trial starting on April 28, 2014, in the matter McCaffrey v. City of New York, 11-CV-1636 (RJS). McCaffrey is a complex wrongful conviction case that has received substantial media attention.[1] Plaintiffs are aware that the undersigned will be occupied with trial preparation and trial over the next 2-3 weeks, yet they have chosen to write to the Court - now - demanding relief "as soon as possible" on their "urgent" requests. In late January, however, plaintiffs had proposed a *four-month* extension of the discovery deadlines, from July to November, 2014, only to drop the matter when the City voiced opposition. This past week, when we proposed extending the discovery deadlines for *two months*, plaintiffs' response was non-committal; they suggested that they needed more information before they could decide on what their position would be.

In light of these circumstances, we set forth below the elements of our proposed modifications to the discovery plan and respond to plaintiffs' characterizations of the discovery progress made to date.

*Settlement "Break" Week*. We propose moving the settlement "break" week from May 12, 2014, to May 19, 2014. We request this scheduling adjustment for two main reasons. First, in order for settlement discussions to be meaningful, the participation of high-level decision-makers in City agencies is required, and those decision-makers have other responsibilities in the immediate short term. The new DOC commissioner, for example, just started on April 7, 2014, and is still getting acclimated to his new job. Second, we have scheduled internal meetings for the week of May 12-16, 2014, that are essential to the City's ability to formulate its settlement position. One key participant in those meetings will be the City's consulting expert in the corrections field, whose earliest availability in May is that week (May 12-16), and as I have explained repeatedly to plaintiffs' counsel, the undersigned will be on trial during the week of April 28, 2014, in the McCaffrey matter.

We set forth the foregoing matters in E-mail transmissions to plaintiffs, and were surprised to learn that they refused to consent to our request to move the settlement break week from May 12, to May 19, 2014. Their reply was: "[W]e do not consent to move it back another week to May 19, simply because you have chosen to schedule internal meetings, despite having known since March 14th that the parties had agreed to set that week aside for settlement talks"

---

[1]   *See, e.g.*, http://www.nytimes.com/2009/12/08/nyregion/08freed.html?_r=0 ("Woman Who Made False Rape Charge is Guilty of Perjury").

(copy of E-mail attached as <u>Exhibit A</u>).  Plaintiffs' position is impractical and fails to acknowledge that the reason we "chose" to schedule meetings that week was that key participants were not available until then.  We submit that the one-week adjustment to the settlement "break" is reasonable and will not prejudice plaintiffs.

<u>*E-discovery - Summary*</u>.  In their submission, plaintiffs blame the City for an "unacceptably slow and intermittent" production of electronic discovery, but we submit that plaintiffs must share some responsibility for the delays.  From the outset, they insisted on a long, complex set of search terms, whereas the City proposed two very simple search terms that would have extracted more than seventy-five percent (75%) of the E-mails and attachments eventually recovered using the parties' agreed-upon terms, and would have extracted more than ninety percent (90%) of the E-mails eventually captured for the four wardens whose depositions plaintiffs now seek.  Had plaintiffs accepted the City's suggested search terms, electronic discovery could have begun much sooner than it eventually did.  The City, however, worked with plaintiffs to create a search term list - as well as an extensive custodian list - and has since hired five attorneys and four paralegals exclusively for the E-discovery project, with plans to hire one additional attorney and one additional paralegal.  According to our Litigation Support group, this commitment of resources is highly unusual in our office.

Notwithstanding the resources devoted to the tasks and the parties' good faith efforts to arrive at workable search terms and a custodian list, the process has been time-consuming.  Below is a summary of the progress made to date on E-discovery.

On June 27, 2013, plaintiffs proposed a lengthy set of search terms that filled one page of a printed E-mail (copy attached as <u>Exhibit B</u>).  We then conferred with DOC, who informed us that two simple terms - "UOF" and "use /5 force" - would likely capture a substantial majority of potentially responsive E-mails.  During a conference call on or about July 17, 2013, the City proposed using these two basic search terms as a first step, with the understanding that if additional terms appeared in a substantial number of captured E-mails, we would consider including those terms in future searches, as well.  Plaintiffs rejected the City's proposal and insisted that negotiations over their lengthy list of terms continue.  The discussions continued for months; by late October, the parties had agreed on a list of search terms after multiple calls and sampling, with a few terms outstanding that plaintiffs insisted upon (*see* E-mails attached as <u>Exhibit C</u>).

The City continued to sample those additional terms, and our sampling revealed that certain terms were irrelevant and were capturing large quantities of unresponsive E-mails.  For example, the term "investigat!" was found in E-mails referring to any type of investigation, including "investigations" into missing toiletries or other supplies, for example.  Plaintiffs also insisted on the domain name "legal-aid.org," but again, that domain name appeared in many communications from the Legal Aid Society regarding matters unrelated to the use of force.  As late as December, 2013, we were still negotiating about a few scattered terms, and it was not until December 11, 2013, that plaintiffs finally agreed to drop the terms "investigat!" and cityhall.nyc.gov, in exchange for the addition of another custodian, Sara Taylor, the Chief of Staff to the Commissioner of the Department of Correction (*see* <u>Exhibit D</u>).  We have kept the domain name "legal-aid.org."

Negotiations regarding the list of custodians were likewise time-consuming. The City initially proposed twenty (20) custodians, and plaintiffs proposed a substantially larger group. (We summarized some of these discussions in our Feb. 13, 2014, letter to the court.) Plaintiffs requested that the City identify persons who held certain posts, such as Warden of the jails at issue, and also persons who fit certain job description criteria that plaintiffs provided. The City diligently worked to exchange information with plaintiffs throughout. The final custodian list was agreed upon by December 11, 2013 (*see* Exhibit D), when we agreed to add one final custodian, Sara Taylor. All told, the process of negotiating the custodian list and search terms took approximately six (6) months.

The six-month delay from June to December, 2013, during which time plaintiffs insisted on negotiating their long list of search terms and their proposed custodian list, produced some benefit, but not very much, in terms of additional responsive E-mails beyond those that would have been captured using just the City's two proposed terms. As shown on the attached Schedule A, the City's two proposed terms captured 99.7% of the E-mails eventually extracted for Warden Agro, ninety-three and 6/10 (93.6%) for Warden Duffy, eighty-one and 3/10 (81.3%) for Warden Mulvey, and sixty-eight and 4/10 (68.4%) for Warden Bailey. The figure for Warden Bailey is based on just 130 E-mails. Cumulatively, the City's proposed search terms captured 92.9% of the E-mails extracted for these four custodians using the plaintiffs' lengthy search term list.

Plaintiffs, of course, are entitled to discovery that is "reasonably calculated to lead to … admissible evidence." Fed. R. Civ. P. 26(b)(1). Both the City's proposed terms and plaintiffs' search term list meet the test for relevance set forth in Rule 26(b)(1), and plaintiffs' search terms yielded a greater number of potentially responsive E-mails (*see* Schedule A). At the outset, the City proposed two simple terms and twenty (20) custodians that would have captured a large number of potentially relevant E-mails quickly. Plaintiffs proposed a longer list of terms that required extensive negotiations and sampling, and a longer list of custodians that, likewise, required further negotiations and information-gathering. Plaintiffs, in short, chose to pursue E-discovery according to their own plan and priorities - which they were entitled to do under the Rules - but we submit that those plans and priorities have imposed time-consuming obligations on the City which we have endeavored to meet, contrary to plaintiffs' one-sided presentation of the issues.

Once an agreement was reached with Plaintiffs in December, the City started the process of hiring contract review staff. The City's procurement regulations only allow the hiring of contract staff for a known, reasonably estimated period of time, and only for a project the general parameters of which are also known. As of March 6, 2014, the City had hired a team of five attorneys and four paralegals to work full-time on just the E-discovery project, and we held multiple internal training sessions for the entire group. Team members review E-mails extracted from DOC's E-mail servers that bear the parties' agreed-upon search terms, and mark those E-mails and attachments as either responsive, non-responsive or privileged. After the first level of review, senior team members then spot-check, or "second-level" review, the production before it is sent out. Not every E-mail or attachment extracted from the servers is responsive, so not all of them are produced.

As of April 16, 2014, there remained to be reviewed 121,202 parent E-mails, along with 129,716 attachments, for a total of 250,918 non-duplicative reviewable items.  Based on the review rate over the past four weeks, after the team was trained and has become acclimated to the review process, we estimate that the team can review approximately 10,000 parent E-mails, and 10,000 attachments, per week.  The City will not be able to produce 10,000 E-mails and 10,000 attachments every week, however, because all productions must be second-level reviewed and then processed from the Clearwell database.  In this connection, the parties have exchanged drafts of a proposed Rule 502(d) order that would enable the City to "claw back" privileged E-mails inadvertently produced.  We received plaintiffs' comments on March 14, and we communicated further comments this past week.  When the Rule 502(d) order is finalized, we anticipate that we will be able to truncate the second-level review of E-discovery to enable quicker productions.

Based on the foregoing figures, we estimate that the E-discovery production can be completed by July 31, 2014.  Accordingly, we proposed to plaintiffs during a conference call on April 16th that (1) the E-discovery deadline be extended to July 31, 2014, and (2) the deposition deadline be extended to September 30, 2014.  We further proposed that the parties continue to prioritize custodians as they have been doing.  That is, the City has agreed to produce E-mails for custodians identified by plaintiffs, with the goal of producing E-discovery related to those custodians before they are deposed.

As noted above, plaintiffs do not consent to the City's request.  Instead, they request that the Court order all E-discovery for the four wardens' depositions to be completed by this Monday, April 21, 2014, or alternatively - since this proposal "may not be feasible" - they demand an order requiring the City to produce all E-discovery for the wardens at least fourteen (14) days before those depositions are scheduled.  We have no objection to using best efforts to produce E-discovery fourteen (14) days in advance of depositions, but we suggest that if plaintiffs wish to proceed according to that schedule, then they should notice custodians' depositions well in advance bearing in mind the volume of E-discovery that remains to be completed.

We further submit that the extension we propose would allow two months to complete depositions of the E-discovery custodians, assuming all E-discovery is completed by July 31st.  At the same time, nothing would prevent the parties from scheduling other custodian depositions before July 31, 2014.  For these reasons, we respectfully request that the deadlines be extended, and that the parties work together to agree on deposition dates for the E-discovery custodians.  This proposal recognizes that the deposition schedule cannot dictate E-discovery, but rather, the production of E-discovery should determine when depositions take place.

_Adjustments to Deposition Schedule_.  Plaintiffs repeatedly complain that the City has "interfered" with the discovery plan by refusing to provide dates for witnesses' depositions and by refusing to commit to dates by which E-discovery for those witnesses can be completed.  Plaintiffs' representations create a materially misleading picture of discovery in this case to date.

Plaintiffs served deposition notices for the six (6) witnesses mentioned above (Dr. Venters, Amanda Masters and the four (4) wardens) long before the E-discovery relating to those witnesses was complete.  Plaintiffs then demanded that all E-discovery regarding those witnesses

be completed according to their pre-set timetable, i.e., fourteen (14) days in advance of each deposition.  Presented with these demands, we informed plaintiffs that we could not guarantee that all relevant E-discovery would be produced before the depositions took place.  Furthermore, because plaintiffs chose to notice the depositions before E-discovery was complete, we took the position that the depositions should go forward on or close to the noticed dates regardless of whether the E-discovery had been produced.

We took that position for a specific reason:  Plaintiffs had wasted valuable time in discovery by noticing and taking very few depositions, and despite our suggestions, they refused to notice or take correction officer depositions that did not depend on ESI and that could have been completed much earlier.  By E-mail on March 14, we asked to move the settlement "break" week from April 7-11, 2014, because the new commissioner was scheduled to start that week and settlement discussions would not have been productive.  In response, plaintiffs consented, and at the same time they requested our consent to move the four wardens' depositions and Amanda Masters' depositions to later dates because ESI for those witnesses remained outstanding.  We, in turn, agreed to that request and suggested moving Dr. Venters' deposition as well.  We also emphasized that plaintiffs should "strongly consider" moving up the dates of correction officer witnesses whose depositions did not depend on ESI (copy of E-mails attached as Exhibit E).  Shortly thereafter, we began to offer up witnesses for depositions before plaintiffs served any notices, to ensure that the parties completed as much discovery as possible.

As we have stated in prior letters to the Court, in the last DOC class action, depositions began during the first week in January, 2004, and by mid-March, the plaintiffs had taken about fifty (50) depositions.  Here, depositions likewise began during the first week of January, 2014, but the plaintiffs have taken few than half that number of depositions - and we are now well into April.  When the parties began their discussions regarding deposition scheduling, in December, 2013, we suggested that plaintiffs identify the attorney taking the depositions of our witnesses, so that the taking and defending attorneys could work out dates directly, and to enable multiple sets of depositions to go forward.  Plaintiffs refused to proceed in that manner (even though they had decided who would be taking depositions before those depositions were noticed), preferring instead to designate one member of their team to manage centrally the scheduling of depositions, and to advise us who was taking the deposition seven (7) days in advance.  The result has been poor use of the last three months in discovery.

With regard to Dr. Venters' deposition, a response to plaintiffs' characterization of the parties' communications is warranted.  They state that the undersigned was "curt" in replying to their request for dates, and also state that "the City has refused to agree" to any of the dates they have proposed.  Plaintiffs may have perceived our responses as "curt," but there was a reason for the tone:  They simply refused to accept our position that, because of my trial, I was not able to prepare and defend Dr. Venters' deposition until May.[2]  On April 7, 2014, we specifically offered up five dates for Dr. Venters' deposition (*see* Exhibit F).  The latest date plaintiffs

---

[2]   The same attorney with whom the undersigned was "curt" has sent personally offensive, rude E-mails on multiple occasions in the past.  I will not embarrass that individual by submitting copies but if the Court wishes, I will be more than happy to provide them.

proposed was the week of May 5th (DE 127, at page 9), and the earliest date we proposed was May 14th (we also proposed May 15, and May 19-20-21[st]).  Plaintiffs cannot possibly articulate any prejudice by reason of our suggesting that Dr. Venters' deposition take place after May 14, 2014, in order to accommodate my trial schedule.  In any event, plaintiffs failed to confirm any of the dates we proposed, and I cannot represent that they are still necessarily available.  We remain willing, of course, to work with plaintiffs to select a mutually agreeable date for Dr. Venters' deposition.

Plaintiffs also complain that the City has not supplied dates for their Rule 30(b)(6) deposition notice for a witness who can testify about cameras inside the jails, but as we explained multiple times, the number of topics in the notice (which is five pages long, copy attached as <u>Exhibit G</u>), requires more than one witness.  We therefore had to set up multiple meetings with our client to find out who would be the most suitable witnesses, and coordinate their schedules.  At first we thought that three witnesses might be needed, but we have decided to produce two witnesses with appropriate knowledge.  We provided multiple dates for both witnesses yesterday (*see* <u>Exhibit H</u>).

<u>*The Foregoing Demonstrates Good Cause*</u>.  In order to modify the discovery plan, the moving party must demonstrate "good cause" as required by Rule 16(b)(4).  As Your Honor has recognized, "the 'good cause'  inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment."  *Soroof Trading Development Co. v. GE Fuel Cell Systems, LLC*, 10-CV-1391 (LTS) (JCF), 2012 U.S. Dist. LEXIS 178205, *5-6 (S.D.N.Y. Dec. 13, 2012) (citing *Ritchie Risk-Linked Strategies Trading (Ireland) Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79-80 (S.D.N.Y. 2012)).  "This, in turn, depends on whether 'the proposed amendment rests on information that the party knew or should have known in advance of the deadline.'"  *Id.* at *6 (quoting *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 735 (S.D.N.Y. 2012)).

Here, the City requests a modification to the discovery plan to allow for unforeseen delays in the E-discovery process.  We have proceeded with diligence at all times, working with plaintiffs' counsel to refine the search terms and custodian list, and when those matters were finalized, we hired additional staff for the project.  We are continuing to spend substantial time and resources on this aspect of discovery.  In addition, the City has produced close to two million pages of documents in TIFF format for loading into databases and use in this lawsuit.  We also submit that there is no prejudice to plaintiffs by reason of the requested modification to the discovery plan, especially since (in January), plaintiffs proposed extending the schedule by four months (*see* <u>Exhibit I</u>).  *See Soroof*, at *6 (when deciding application pursuant to Rule 16(b), "courts may also look to additional facts, including whether … non-moving party would be prejudiced").

Respectfully submitted,


/s/
Arthur G. Larkin (AL 9059)
Assistant Corporation Counsel

cc:     All Counsel (by ECF)

**SCHEDULE "A"**

| Witness | Hits on "UOF" or "use /5 force" | Hits on all agreed search terms | Percentage |
|---|---|---|---|
| Rose Agro-Doyle | 16,403 | 16,445 | 99.7% |
| Emmanuel Bailey | 89 | 130 | 68.4% |
| Edmond Duffy | 6,495 | 6,940 | 93.6% |
| Kathleen Mulvey | 7,834 | 9,633 | 81.3% |
| Four (4) witnesses listed above | 30,801 | 33,148 | 92.9% |
| All custodians | 142,663 | 188,888 | 75.5% |

# EXHIBIT A

**Larkin, Arthur (Law)**

| | |
|---|---|
| **From:** | Busalacchi, Stephanie [Stephanie.Busalacchi@ropesgray.com] |
| **Sent:** | Thursday, April 17, 2014 6:27 PM |
| **To:** | Larkin, Arthur (Law); Friedberg, Anna |
| **Cc:** | Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW) |

**Subject:** RE: Nunez - 502(d) order

Given the email string below, we tend to agree that further emails do not seem like they will be productive.  Our letter to the Court speaks for itself regarding our concerns.  You've advised that your deadline to respond is tomorrow and we look forward to seeing that response.

**Stephanie N. Busalacchi**
**ROPES & GRAY LLP**
T +1 212 596 9163 | F +1 646 728 2975
1211 Avenue of the Americas
New York, NY 10036-8704
Stephanie.Busalacchi@ropesgray.com
www.ropesgray.com

**From:** Larkin, Arthur (Law) [mailto:alarkin@law.nyc.gov]
**Sent:** Thursday, April 17, 2014 3:30 PM
**To:** Busalacchi, Stephanie; Friedberg, Anna
**Cc:** Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
**Subject:** RE: Nunez - 502(d) order

We will ask the court to move the settlement break week, in that case.

Further E-mails at this point aren't likely to be productive.  I just left you a voice mail so I can understand exactly what further "concerns" your side has - I thought that an overall extension would be sufficient to address most if not all of them, but perhaps I am missing something.

Arthur G. Larkin, Esq.
Senior Counsel
NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)

**From:** Busalacchi, Stephanie [mailto:Stephanie.Busalacchi@ropesgray.com]
**Sent:** Thursday, April 17, 2014 3:09 PM
**To:** Larkin, Arthur (Law); Friedberg, Anna
**Cc:** Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
**Subject:** RE: Nunez - 502(d) order

Arthur,

Thank you for that explanation of your position.  We cannot simply agree to extending the discovery deadline with nothing more to address the various concerns raised in our letter to the Court.  We would be happy to consider a more comprehensive plan that addresses those concerns if you would like to propose one.

As for the settlement week, which the Court just today ordered to occur on May 12th as per your first modification request, we do not consent to move it back another week to May 19, simply because you have chosen to schedule internal meetings, despite having known since March 14th that the parties had agreed to set that week aside for settlement talks.  If there are specific days on which necessary individuals are not available, we would be happy to work around that.

Thanks,
Stephanie

**Stephanie N. Busalacchi**
**ROPES & GRAY LLP**
T +1 212 596 9163 | F +1 646 728 2975
1211 Avenue of the Americas
New York, NY 10036-8704
Stephanie.Busalacchi@ropesgray.com
www.ropesgray.com

---

**From:** Larkin, Arthur (Law) [mailto:alarkin@law.nyc.gov]
**Sent:** Thursday, April 17, 2014 2:11 PM
**To:** Busalacchi, Stephanie; Friedberg, Anna
**Cc:** Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
**Subject:** RE: Nunez - 502(d) order

I thought I made clear what the proposal was:  We would adjust the discovery deadlines to allow for completion of ESI by July 31st, and depositions by Sept. 30th.  Because some ESI remains outstanding, we can't agree to firm dates for witnesses just yet, but I would not anticipate scheduling problems because we will have some extra time.

I will add, however, one additional matter that I didn't raise in yesterday's call.  We should move the settlement "break" week to May 19-23rd because of other internal meetings, for this case, that I'm trying to schedule for the week of May 12th.  Due to the number of participants in those meetings, they can't happen sooner.  In light of that proposed scheduling change, we may be able to produce Dr. Venters during the week of May 12th, which would be prior to the settlement "break," but I would have to confirm his schedule once again before we agree to produce him.  That one deposition, however, should not dictate the rest of the schedule.

What more do you need to know?

I'm here today if you want to discuss over the phone.

Arthur G. Larkin, Esq.
Senior Counsel

4/18/2014

NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)

---

**From:** Busalacchi, Stephanie [mailto:Stephanie.Busalacchi@ropesgray.com]
**Sent:** Thursday, April 17, 2014 11:12 AM
**To:** Larkin, Arthur (Law); Friedberg, Anna
**Cc:** Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
**Subject:** RE: Nunez - 502(d) order

Arthur,

Thank you for your speaking with us yesterday afternoon.  We appreciate your efforts to address some of the issues that we raised in our letter to the Court.  As you know, our letter covered several areas of concern.  In order for us to assess whether your proposed modifications to the discovery plan would adequately address the issues that we raised in our letter, we need to see what exactly you intend to propose to the Court, in writing, so that we can advise you whether we would agree to any such modifications.

We will make every effort to consider your proposal before your letter to the Court is due tomorrow.  Due to the holiday, however, many of us will be traveling or unavailable tomorrow, so please provide this as soon as possible.

We also remain available to discuss the structure of the settlement break week as Katie outlined in her email yesterday.

Thanks,
Stephanie


**Stephanie N. Busalacchi**
**ROPES & GRAY LLP**
T +1 212 596 9163 | F +1 646 728 2975
1211 Avenue of the Americas
New York, NY 10036-8704
Stephanie.Busalacchi@ropesgray.com
www.ropesgray.com

-----Original Message-----
From: Larkin, Arthur (Law) [mailto:alarkin@law.nyc.gov]
Sent: Wednesday, April 16, 2014 12:04 PM
To: Friedberg, Anna; Busalacchi, Stephanie
Cc: Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
Subject: Re: Nunez - 502(d) order

I received a new E-vite for 3:00 again - did you intend to do the call at 1:00?

----- Original Message -----
From: Larkin, Arthur (Law)

Sent: Wednesday, April 16, 2014 11:37 AM
To: 'Anna.Friedberg@ropesgray.com' <Anna.Friedberg@ropesgray.com>;
'Stephanie.Busalacchi@ropesgray.com' <Stephanie.Busalacchi@ropesgray.com>
Cc: Joyce, Kimberly (Law); 'NunezPlaintiffsCounsel@ropesgray.com' <NunezPlaintiffsCounsel@ropesgray.com>;
Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
Subject: Re: Nunez - 502(d) order

Can we do the call at 1:00?


----- Original Message -----
From: Friedberg, Anna [mailto:Anna.Friedberg@ropesgray.com]
Sent: Wednesday, April 16, 2014 09:05 AM
To: Larkin, Arthur (Law); Busalacchi, Stephanie <Stephanie.Busalacchi@ropesgray.com>
Cc: Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel <NunezPlaintiffsCounsel@ropesgray.com>; Lim, Daniel
(Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
Subject: RE: Nunez - 502(d) order

Arthur and Kim,

We were wondering if we might be able to move the call today to any time between 11 and 3 or any time after
4?  We have a possible conflict at 3 but will make 3 work if there is no flexibility on your end.

Thanks,
Anna


Anna E. Friedberg
ROPES & GRAY LLP
T +1 212 596 9332 | F +1 646 728 6247
1211 Avenue of the Americas
New York, NY 10036-8704
Anna.Friedberg@ropesgray.com
www.ropesgray.com

-----Original Message-----
From: Friedberg, Anna
Sent: Tuesday, April 15, 2014 1:41 PM
To: Larkin, Arthur (Law); Busalacchi, Stephanie
Cc: Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan,
Sandra (LAW)
Subject: RE: Nunez - 502(d) order

We can use the R&G dial-in below.  I will also circulate a calendar invite.

Dial-in: (888) 352-5988
Conference code: 971-012-9834

Thanks,
Anna

Anna E. Friedberg
ROPES & GRAY LLP
T +1 212 596 9332 | F +1 646 728 6247
1211 Avenue of the Americas
New York, NY 10036-8704
Anna.Friedberg@ropesgray.com
www.ropesgray.com

-----Original Message-----
From: Larkin, Arthur (Law) [mailto:alarkin@law.nyc.gov]
Sent: Tuesday, April 15, 2014 1:40 PM
To: Busalacchi, Stephanie
Cc: Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel; Lim, Daniel (Law); Snyder, Lynda (Law); Metallo-Barragan, Sandra (LAW)
Subject: RE: Nunez - 502(d) order

Our side is available at 3:00 tomorrow.  We have a dial-in conference call line with AT&T which I can reserve, or we can use the R&G conference call system as in the past.  Which do you prefer?

Arthur G. Larkin, Esq.
Senior Counsel
NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)


-----Original Message-----
From: Busalacchi, Stephanie [mailto:Stephanie.Busalacchi@ropesgray.com]
Sent: Tuesday, April 15, 2014 11:28 AM
To: Larkin, Arthur (Law)
Cc: Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel
Subject: RE: Nunez - 502(d) order

Arthur,

We would be happy to discuss the 502(d) order and to do so tomorrow so that Kim can also join.  Please let us know what time works best for you.

Thanks,
Stephanie


Stephanie N. Busalacchi
ROPES & GRAY LLP

4/18/2014

T +1 212 596 9163 | F +1 646 728 2975
1211 Avenue of the Americas
New York, NY 10036-8704
Stephanie.Busalacchi@ropesgray.com
www.ropesgray.com

Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

-----Original Message-----
From: Larkin, Arthur (Law) [mailto:alarkin@law.nyc.gov]
Sent: Tuesday, April 15, 2014 8:47 AM
To: Busalacchi, Stephanie
Cc: Joyce, Kimberly (Law); Nunez Plaintiffs' Counsel
Subject: Nunez - 502(d) order

Are you available today or tomorrow to discuss your proposed changes to the 502(d) order?  I prefer tomorrow because Kim is at an officer deposition today, but if tomorrow doesn't work we can talk today.  Let me know.

Arthur Larkin
212-356-2641

# EXHIBIT B

**Joyce, Kimberly (Law)**

| | |
|---|---|
| **From:** | Raad, Amanda [Amanda.Raad@ropesgray.com] |
| **Sent:** | Thursday, June 27, 2013 3:18 PM |
| **To:** | Larkin, Arthur (Law); Savino, Kimberly (Law); Nguyen, Diep (Law) |
| **Cc:** | Jonathan Chasan; Mary Werlwas; Katherine Rosenfeld; Vasudah Talla; Friedberg, Anna; Busalacchi, Stephanie; Cleemann, Joseph G.; Cobb, Emily A.; Jorgensen-Chichizola, Clarise |

**Subject:** Nunez Electronic Discovery Proposal

Arthur,

Thanks for your time.  Below is the information we discussed during our call.  We will talk to you Monday July 8 at 2 pm, dial in below.  It would be helpful if you provide responses in advance of that call.

Dial in:
888 352 5988
Code 312 845 1215

**Date Range:** January 1, 2007 – Present

**Custodians:** In addition to the below, please identify any other custodians that may hold responsive documents pursuant to Plaintiffs' requests.

- All Supervisory Defendants
- Representatives from each of the following
    - Investigation Division
    - Policies and Procedures Group
    - Strategic Planning/Data Reporting & Analysis, including Policy Compliance Groups
    - Personnel Training & Development Group
    - AMKC
    - GMDC
    - RNDC
    - GRVC
    - RMSC
    - OBCC/NIC
    - JATC
    - WF
    - BDC
    - MDC
    - VCBC
    - QDC
- Names of DOC employees on each of the below distribution lists
    - COD – Central Operations Desk
    - DL – Executive Blackberry Group
    - DL – Wardens Blackberry Group
    - DL – Facility Operations

**Search Terms (Note: ! means "extender")**

- legal-aid.org
- usdoj.gov
- bronxda.nyc.gov
- queensda.org
- brooklynda.org
- rcda.nyc.gov
- dany.nyc.gov
- doi.nyc.gov
- Domain names for the following offices:
  - Office of the Criminal Justice Coordinator
  - Office of the Mayor
  - Office of the Deputy Mayor for Health and Human Services
- Use /5 Force
- UOF
- Arrest
- Probe
- Extract!
- Control /5 hold
- Personal
- Private
- OC
- O/C
- Chemical
- Spray
- Injury
- Punch!
- Blow!
- Strike
- Kick
- Head
- Face
- Blood
- Bleed!
- Ear
- Eye
- Nose
- Mouth
- Fist!
- Urgi!
- Assault
- Investigat!
- Bing
- Box
- SHU
- Special /5 Unit
- Infract!
- Punitive
- Segregat!
- Turtle!
- B /5 form

- 24 /5 report
- Coverup
- Cover /5 up
- Bad /5 publicity
- Slam!
- hurt

**Follow-Up Requests:**
- For each facility, designate which positions have email addresses
- List of shared drives
- Date of Recycle for emails/shared drives/etc.


Best,

Amanda


**Amanda N. Raad**
**ROPES & GRAY LLP**
T +1 212 596 9027 | F +1 646 728 1658
1211 Avenue of the Americas
New York, NY 10036-8704
Amanda.Raad@ropesgray.com
www.ropesgray.com

Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

# EXHIBIT C

## Larkin, Arthur (Law)

| | |
|---|---|
| **From:** | Friedberg, Anna [Anna.Friedberg@ropesgray.com] |
| **Sent:** | Monday, October 21, 2013 12:43 PM |
| **To:** | Savino, Kimberly (Law) |
| **Cc:** | Raad, Amanda; Busalacchi, Stephanie; Cobb, Emily A.; Larkin, Arthur (Law); Ortiz, Julie (Law); Nguyen, Diep (Law); Lim, Daniel (Law); Grygiel, Heidi (Law); Snyder, Lynda (Law) |
| **Subject:** | RE: Nunez Clearwell Searches |
| **Attachments:** | Active_38476116_5_Search term filter.XLSX |

Kim,

Thank you for the update on the call today.  As we discussed, we have agreed to add the terms, usdoj.gov; dany.nyc.gov; brooklynda.org; bronxda.nyc.gov; queensda.org; rcda.nyc.gov to be produced "as is".  I have attached the revised search term chart to reflect our agreement from today's call.

This leaves us with four outstanding terms: legal-aid.org, cityhall.nyc.gov, doi.nyc.gov, and investigat*.  As we discussed, your team will identify the reporting structure between the DOC and City Hall and conduct sampling on legal-aid.org, cityhall.nyc.gov, doi.nyc.gov, and investigat*.

We understand that a production will be made by next Monday of relevant documents from the initial two agreed upon search terms ("UOF" and use w/5 force) for the Group B custodians.  We also understand that you will continue to review and produce responsive documents made for the Group A custodians on the additional agreed upon search terms.

We look forward to speaking later next week to discuss the results of the sampling.

Thanks,
Anna


**Anna E. Friedberg**
**ROPES & GRAY LLP**
T +1 212 596 9332 | F +1 646 728 6247
1211 Avenue of the Americas
New York, NY 10036-8704
Anna.Friedberg@ropesgray.com
www.ropesgray.com

Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Friedberg, Anna
**Sent:** Tuesday, October 15, 2013 4:08 PM
**To:** Savino, Kimberly (Law)
**Cc:** Raad, Amanda; Busalacchi, Stephanie; Cobb, Emily A.; Larkin, Arthur (Law); Ortiz, Julie (Law); Nguyen, Diep (Law); Lim, Daniel (Law); Grygiel, Heidi (Law); Snyder, Lynda (Law)
**Subject:** RE: Nunez Clearwell Searches

Kim,

I hope you enjoyed the long weekend.  We have reviewed the hit report you provided on October 9th  and would like to schedule a call to reach an agreement on the outstanding search terms.  I have attached an updated version of the search term list that includes the agreed upon terms and the 10 outstanding terms addressed below.

We contend the following 7 terms should be produced "as is" (without any additional modifiers or sampling).  The terms, usdoj.gov; dany.nyc.gov; brooklynda.org; bronxda.nyc.gov; queensda.org; rcda.nyc.gov should be produced "as is" because they are directly responsive to our document requests and they fall within the 10 lowest hitting terms on the hit term list provided.  The term, legal-aid.org should be produced "as is" because we believe the term will pull mostly relevant materials based on our information from co-counsel in this case.

This leaves 3 outstanding terms to agree upon.  We believe the terms cityhall.nyc.gov, doi.nyc.gov, and investigat* may yield additional responsive materials as these terms are directly relevant to the core allegations made in this case.  However, we are amenable to modifying these terms to ensure they only identify relevant documents or agreeing to eliminate these terms if you certify that these terms do not yield relevant documents based on statistically significant sampling that you have conducted.  If you have not yet conducted any sampling on these three terms, perhaps you could do so (excluding all hits of these terms with the already agreed upon terms) to determine whether the terms yield relevant documents and/or propose additional modifications based on your findings.  We are particularly interested in whether investigat* may turn up additional relevant documents because, as you know, allegations relating to deficient investigations are a key part of this lawsuit.

In terms of production, on October 2nd you agreed to produce on a rolling basis about every two weeks.  We have only received one production on September 17, 2013.  Please begin the next rolling production by Friday, October 18th.

Are you available to speak tomorrow at 4 pm or Thursday, October 17th at 11 or 12?  We would appreciate it if you could provide your position on the items above prior to the call.

Thank you,
Anna

**Anna E. Friedberg**
**ROPES & GRAY LLP**
T +1 212 596 9332 | F +1 646 728 6247
1211 Avenue of the Americas
New York, NY 10036-8704
Anna.Friedberg@ropesgray.com
www.ropesgray.com

**From:** Savino, Kimberly (Law) [mailto:ksavino@law.nyc.gov]
**Sent:** Wednesday, October 09, 2013 2:13 PM
**To:** Friedberg, Anna
**Cc:** Raad, Amanda; Busalacchi, Stephanie; Cobb, Emily A.; Larkin, Arthur (Law); Ortiz, Julie (Law); Nguyen, Diep (Law); Lim, Daniel (Law); Grygiel, Heidi (Law); Snyder, Lynda (Law)
**Subject:** FW: Nunez Clearwell Searches

Anna,

Attached is the most recent hit report after all custodian emails were loaded into the database. There appear to be 323911 parent emails and 611472 reviewable items for all search terms - including the domain names & investigat* still in dispute.

-Kim

**Kimberly (Savino) Joyce**
Senior Counsel
New York City Law Department
Special Federal Litigation
100 Church Street, 3-227
(212) 356-2650

| Term | Proposed by | Both sides agree to include in final filter? | Willing to exclude | Include but modify with (proposed modification | Willing to modify but want some | Please include as is |
|------|-------------|----------------------------------------------|--------------------|--------------------------------------------------|---------------------------------|----------------------|
| arrest (w/5 staff or inmate) | Ropes | Y | | | Y | |
| Upper w/3 body | City | Y | | | | |
| Lower w/3 body | City | Y | | | | |
| "Control Hold" | City | Y | | | | |
| apply w/3 "mechanical restraints" | City | Y | | | | |
| apply w/3 "flex* cuff*" | City | Y | | | | |
| "chemical agent" w/5 burst | City | Y | | | | |
| "OC" w/5 burst | City | Y | | | | |
| "verbal command" | City | Y | | | | |
| AOS w/10 inmate | City | Y | | | | |
| extract* w/5 inmate | City | Y | | | | |
| "rapid response" | City | Y | | | | |
| OC w/5 spray | City | Y | | | | |
| OC w/5 deploy | City | Y | | | | |
| bleed* w/5 extract* | City | Y | | | | |
| blood* w/5 extract | City | Y | | | | |
| "uof" | Ropes | Y | | | | |
| use w/5 force | Ropes | Y | | | | |
| b w/5 form | Ropes | Y | | | | |
| turtle* | Ropes | Y | | | | |
| bad w/5 publicity | Ropes | Y | | | | |
| assault (w/10 inmate or staff) | Ropes | Y | | | | |
| usdoj.gov | Ropes | Y | | | | |
| dany.nyc.gov | Ropes | Y | | | | |
| brooklynda.org | Ropes | Y | | | | |
| bronxda.nyc.gov | Ropes | Y | | | | |
| queensda.org | Ropes | Y | | | | |
| rcda.nyc.gov | Ropes | Y | | | | |
| cityhall.nyc.gov | Ropes | | | | Y | |
| investigat* | Ropes | | | | Y | |
| doi.nyc.gov | Ropes | | | | Y | |
| legal-aid.org | Ropes | | | | Y | |

| Injury T | Upper w/3 body |
|----------|----------------|
| | Lower w/3 body |
| | bleed* w/5 extract* |
| | blood* w/5 extract |

| Extract: | AOS w/10 inmate |
|----------|------------------|
| | extract* w/5 inmate |
| | "rapid response" |

# EXHIBIT D

**Larkin, Arthur (Law)**

| | |
|---|---|
| **From:** | Busalacchi, Stephanie [Stephanie.Busalacchi@ropesgray.com] |
| **Sent:** | Wednesday, December 11, 2013 2:08 PM |
| **To:** | Joyce, Kimberly (Law); Ortiz, Julie (Law); Larkin, Arthur (Law); Darigan, Stephanie (Law); Oliver, Vincent (Law); lsnyder@law.nyc.gov; Lim, Daniel (Law); Grygiel, Heidi (Law) |
| **Cc:** | Friedberg, Anna; Cobb, Emily A.; Raad, Amanda |
| **Subject:** | Nunez: E-discovery |
| **Attachments:** | Active_38476116_7_Search term filter.XLSX |

Hi Kim,

We wanted to follow-up on our call last week.

I have attached a revised search term list that omits the two terms that we agreed to drop.  We agreed to omit the search term "investigat*" based on the results of your sampling.  We also agreed to omit the search term "cityhall.nyc.gov" in exchange for the production of documents from the additional custodian, Sarah Taylor.  Ms. Taylor will be added to the Group C custodians.  As you requested, the Legal Aid communications previously produced can be found at P0000001 – P0000859.

Also, as we discussed, Plaintiffs have requested an update on when we can expect your privilege and redaction logs.  You stated that you will provide a privilege log for fully withheld documents but will not include a description of the privilege claim.  Instead you would only label the document with the privilege that applies, i.e. work product, attorney client, etc.  These labels will not provide information sufficient to allow Plaintiffs to assess your claim(s) as required under FRCP 26.  Pursuant to the original model log we sent you, Plaintiffs request that Defendants provide a description that allows Plaintiffs to assess the claims of privilege for the documents and communications withheld, without revealing information itself privileged or protected.  Plaintiffs are willing to discuss ways in which these descriptions might be streamlined in order for you to comply with your obligation in a cost effective manner.  For example, identifying several categories into which privileged documents might fall, and providing these preset categories in the description column.  You also stated that the City will not produce a redaction log at all, on the basis that it is too burdensome.  Please inform us immediately if our understanding is incorrect.

Thanks,
Stephanie

**Stephanie N. Busalacchi**
**ROPES & GRAY LLP**
T +1 212 596 9163 | F +1 646 728 2975
1211 Avenue of the Americas
New York, NY 10036-8704
Stephanie.Busalacchi@ropesgray.com
www.ropesgray.com

Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

# EXHIBIT E

**Larkin, Arthur (Law)**

| | |
|---|---|
| **From:** | Larkin, Arthur (Law) |
| **Sent:** | Tuesday, March 18, 2014 11:02 PM |
| **To:** | 'Friedberg, Anna'; Nunez Plaintiffs' Counsel |
| **Cc:** | Joyce, Kimberly (Law); Gertzer, Michael (Law); Robinson, Amy (LAW) |
| **Subject:** | RE: Nunez depositions |

At your request, we will consent to move the four wardens' depositions and Amanda Masters' deposition, and we will also agree to move Dr. Venters' deposition, to April/May.  I have a trial starting on April 28th and I will not be available to defend depositions the weeks of 4/21 or 4/28, which means that some of them may have to take place during the weeks of May 5th and/or May 12th.  The majority of Ms. Masters' e-mails will be produced shortly and the few documents referenced in the BOC minutes that may relate to the use of force (if any still exist) should be located and produced shortly, as well.  If you decide that you wish to take Ms. Masters' deposition earlier than late April/May, let us know and we will make an effort to accommodate your schedule.

I do not believe that Kim is available on April 11th for plaintiff Smallwood's deposition, but I will let her work out a date with whoever is handling that deposition on your side.  We will get back to you on the proposed April 10th date for plaintiff Bacote.

I strongly suggest that your side consider moving to earlier dates the individual officer-defendant depositions scheduled for "Phase II" of your plan.  Few, if any, of those depositions depend on E-discovery.  The sooner we start thinking about dates, the sooner we will able to select workable dates and produce the witnesses.  Moving the policy-level witnesses to later dates opens up time that we should use, so that discovery can be completed by the deadline.

Arthur Larkin
212-356-2641

-----Original Message-----
From: Friedberg, Anna [mailto:Anna.Friedberg@ropesgray.com]
Sent: Friday, March 14, 2014 9:11 PM
To: Larkin, Arthur (Law); Nunez Plaintiffs' Counsel
Cc: Joyce, Kimberly (Law); Nguyen, Diep (Law)
Subject: Re: Nunez depositions

Arthur,

Plaintiffs do not object to your request to push the settlement "break week" back from April 7th to the week of May 12th, so that the new Commissioner and his team have sufficient time to consider plaintiffs' settlement proposal after he begins his term.  We can also advise that Plaintiffs' settlement proposal will be served by Friday March 21st, which we have endeavored to make extremely detailed and substantial and therefore has required until now to complete.

Plaintiffs also do not oppose your request to continue with discovery the

1

week of April 7th.   We are available on April 10th for Mr. Bacote's
deposition and ask the order include a request to have Mr. Bacote moved
down by April 7th.   We are available on April 11th for Mr. Smallwood's
deposition.   We will advise you as soon as possible about our availability
for the deposition of Mr. Woods but it may not be the week of April 7th.

In light of this change and in consideration of the outstanding documents
still to be produced for Ms. Masters and the 4 wardens whose depositions
have been noticed, would the City be willing to agree to produce those
witnesses at the end of April to allow for production of the all, or the
majority, of the outstanding relevant discovery?   Please advise.

Thank you,
Anna


   Anna E. Friedberg
   ROPES & GRAY LLP
   T +1 212 596 9332 | F +1 646 728 6247
   1211 Avenue of the Americas
   New York, NY 10036-8704
   Anna.Friedberg@ropesgray.com
   www.ropesgray.com


Circular 230 Disclosure (R&G): To ensure compliance with Treasury
Department regulations, we inform you that any U.S. tax advice contained in
this communication (including any attachments) was not intended or written
to be used, and cannot be used, for the purpose of avoiding U.S. tax-
related penalties or promoting, marketing or recommending to another party
any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you
are not the intended recipient, please delete it without further
distribution and reply to the sender that you have received the message in
error.

----- Original Message -----
From: Larkin, Arthur (Law) [mailto:alarkin@law.nyc.gov]
Sent: Friday, March 14, 2014 08:38 AM
To: Nunez Plaintiffs' Counsel
Cc: Joyce, Kimberly (Law) <kjoyce@law.nyc.gov>; Nguyen, Diep (Law)
<dinguyen@law.nyc.gov>
Subject: Nunez depositions

The new commissioner is starting on April 7th, according to the news
reports I've read.  I have not learned of an earlier date from anyone here
or at DOC.

In addition, we have not received any settlement proposals from your side
with regard to any aspect of the case (e.g., the equitable or the damages
claims).

For these reasons, I do not expect that the City will be in a position to hold settlement discussions during the week of April 7-11th.

Does your side have any objection to conducting depositions of named plaintiffs (Bacote, Woods and/or Smallwood) during that week?  If not we'll propose specific dates for one or more of those plaintiffs.

We will likely seek an order modifying the discovery plan to allow depositions to proceed that week and would appreciate your letting us know your position.

Arthur Larkin
(212) 356-2641

# EXHIBIT F

**Larkin, Arthur (Law)**

---

| | |
|---|---|
| **From:** | Larkin, Arthur (Law) |
| **Sent:** | Monday, April 07, 2014 6:26 PM |
| **To:** | Nunez Plaintiffs' Counsel |
| **Cc:** | Joyce, Kimberly (Law) |
| **Subject:** | Homer Venters' deposition |

Dr. Venters and defense counsel are available on the following dates for the deposition:

May 14-15
May 19-21-22

Please let us know when your side is available.

Arthur G. Larkin, Esq.
Senior Counsel
NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

MARK NUNEZ, et al.,

                                     Plaintiffs

                                                11-CV-5845 (LTS) (JCF)

              - against -

THE CITY OF NEW YORK, et al.,

                                    Defendants.

------------------------------------------------------------------------ X

### NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)

       PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition upon oral examination of the New York City

Department of Correction ("DOC").  Said deposition will commence on April 2, 2014 at 9:30

AM at the offices of Emery Celli, Brinckerhoff & Abady, LLP, 20th Floor, New York, New

York, 10019.  The deposition(s) will be conducted before a notary public or other officer

authorized to administer oaths and will be recorded by stenographic and/or sound-and-visual

means.  The deposition(s) will be taken pursuant to the Federal Rules of Civil Procedure and will

continue from day to day until completion.

       Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, DOC must designate

one or more officers, directors, or managing agents, or other persons who consent to testify on its

behalf; who must testify about information known or reasonably available to DOC concerning

the Matters for Deposition set forth below.  At least seven (7) days in advance of any session of

this deposition, DOC shall identify to Plaintiffs in writing the witness(es) who will testify at such

session and the Matters for Deposition about which each such witness shall testify at such

session.  DOC must produce all documents pertaining to those of the Matters for Deposition

about which each witness will testify, and which have not previously been produced, no later than seven (7) business days prior to the session at which such witness will testify.

Plaintiffs fully incorporate herein the Definitions set forth in Plaintiffs' First Set of Document Requests Relating to Class Certification, served on September 6, 2012, and the Definitions set forth in Plaintiffs' Second Set of Document Requests, served on February 7, 2013.

## MATTERS FOR DEPOSITION

1.  Any and all policies, procedures, Institutional Orders, Departmental Orders, directives, and practices in effect at any time between January 1, 2010 through the present date concerning the use of stationary (wall-mounted or otherwise fixed) surveillance cameras at DOC Jails and/or by DOC staff, including:

    a.  The methods and practices by which video captured by stationary surveillance cameras are transmitted and reviewed by DOC staff;

    b.  Which stationary surveillance cameras in the DOC Jails record the video captured on the cameras and which do not;

    c.  Which DOC staff can view video captured by stationary surveillance cameras (e.g., correctional staff in the "bubble" in housing areas, central offices in each facility at DOC jails, and/or any other centralized office, facility, or command); and

    d.  The methods and practices by which recorded video captured by stationary surveillance cameras are re-written or recycled, such that the recorded video images captured by the cameras are no longer available.

2. Any and all policies, procedures, Institutional Orders, Departmental Orders, directives, and practices in effect at any time between January 1, 2010 through the present date concerning:

   a. How stationary surveillance cameras are installed in particular locations in DOC Jails;

   b. The identities and/or positions of DOC staff responsible for locating the installation of new stationary surveillance cameras; and

   c. The extent to which Use of Force incidents in the DOC Jails is a factor in the locations of new stationary surveillance cameras installed in the DOC Jails.

3. Any and all policies, procedures, Institutional Orders, Departmental Orders, directives and practices in effect at any time between January 1, 2010 through the present date concerning:

   a. Monitoring of whether stationary surveillance cameras are and remain in good working order;

   b. The steps taken to repair non-working stationary surveillance cameras, including the procedures for documenting which cameras are in need of repairs, requesting such repairs, implementing such repairs, and confirming that such repairs have been implemented and that the cameras are in good working order after the repairs; and

   c. The identities and/or positions of DOC staff responsible for fixing non-working stationary surveillance cameras.

4. The Inmate Video Surveillance Status spreadsheets produced at NYC1211480-NYC1211574, including:

    a.   How such spreadsheets were and are created;

    b.   The individual(s) responsible for creating, maintaining, and updating the information contained on these spreadsheets;

    c.   The individual(s) who receive such spreadsheets;

    d.   The individual(s) who contribute the information reflected on such spreadsheets;

    e.   The requests for the installation and/or upgrades of cameras, the sources of the requests, and the reasons for such requests; and

    f.   Meetings held regarding the information reflected on such spreadsheets or stationary surveillance cameras in the DOC Jails generally.

5.   Any and all policies, procedures, orders, rules, regulations, directives, or practices in effect at any time between January 1, 2010 through the present date concerning:

    a.   The collection, review, retention, preservation, destruction, and editing of videotape recordings of Use of Force incidents captured by stationary surveillance cameras;

    b.   The identities and/or positions of DOC staff responsible for reporting or notifying other DOC staff if a videotape recording of a Use of Force incident did not occur because of a non-working stationary surveillance camera;

    c.   The identities and/or positions of DOC staff responsible for preserving videotape recordings of Use of Force incidents captured by stationary surveillance cameras;

6.   Any recommendations made by DOC staff regarding the installation or repair of cameras in certain areas of DOC Jails due to incidents of Use of Force in those areas, as well as follow-up communications and documents regarding the implementation of such recommendations, such as:

    a.  Recommendations made for the installation of cameras in the visit search area of AMKC, including but not limited to the recommendation made by the investigating captain for UOF# 0308/2010; and

    b.  Recommendations made for the installation or repair of cameras in the visit area of CPSU, including communications notifying DOC staff that the cameras in this area were non-working.

7. Any and all policies, procedures, Institutional Orders, Departmental Orders, directives, and practices in effect at any time between January 1, 2010 through the present date concerning the use of hand-held surveillance cameras at DOC Jails and/or by DOC staff, including those assigned to a non-facility command (such as the ESU and Adjudication Bureau), concerning:

    a.  The methods and practices by which video captured by hand-held surveillance cameras are transmitted and reviewed by DOC staff;

    b.  Which DOC staff can view and are tasked with viewing video captured by hand-held surveillance cameras;

    c.  Monitoring of whether the hand-held cameras are and remain in good working order;

    d.  Repairs to non-working hand-held cameras,  including the procedures for documenting which cameras are in need of repairs, requesting such repairs, implementing such repairs, and confirming that such repairs have been implemented and that the cameras are in good working order after the repairs;

    e.  The identities and/or positions of DOC staff responsible for fixing non-working hand-held surveillance cameras;

f.   The collection, review, retention, preservation, destruction, and editing of videotape recordings of Use of Force incidents captured by hand-held cameras;

g.   The identities and/or positions of DOC staff responsible for reporting or notifying other DOC staff if a videotape recording of a Use of Force incident did not occur because of a non-working hand-held camera;

h.   The identities and/or positions of DOC staff responsible for preserving videotape recordings of Use of Force incidents captured by hand-held cameras; and

i.   Recommendations made by DOC staff regarding changes in the hand-held video camera recording policy due to incidents of Use of Force, as well as follow-up communications and documents regarding the implementation of such recommendations.

Dated: New York, New York
       February 25, 2014

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____
Katherine Rosenfeld
Vasudha Talla
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan
Mary Lynne Werlwas
199 Water Street, 6th Floor
New York, NY 10038
(212) 577-3530

ROPES & GRAY LLP
William I. Sussman
Christopher P. Conniff

Amanda Raad
Joseph G. Cleemann
1211 Avenue of the Americas
New York, NY  10036
(212) 596-9000


TO:
Arthur G. Larkin, Esq.
Senior Counsel
City of New York Law Department
100 Church Street, Room 3-177
New York, NY 10007
*Counsel for Defendants City of New York, et al.*

Walter A. Kretz, Jr.
Scopetta Seiff Kretz & Abercrombie
444 Madison Avenue, 30th Floor
New York, NY  10022
*Counsel for Defendants Santiago, Arkhurst, Bertrand, Declet, Liranzo, Sanchez, Weldon, and Massey*

Howard Wien, Esq.
Koehler & Isaacs, LLP
61 Broadway, 25th Floor
New York, NY 10006
*Counsel for Defendants Roman, Soto, and Sloly*

# EXHIBIT H

**Larkin, Arthur (Law)**

| | |
|---|---|
| **From:** | Joyce, Kimberly (Law) |
| **Sent:** | Thursday, April 17, 2014 4:03 PM |
| **To:** | 'Katie Rosenfeld' |
| **Cc:** | Nguyen, Diep (Law); Nunez Plaintiffs' Counsel (NunezPlaintiffsCounsel@ropesgray.com); Larkin, Arthur (Law); Vasudha Talla |
| **Subject:** | RE: 30(b)(6) on cameras |

Katie,

I am able to confirm dates for the 30(b)(6) witnesses on cameras at this time. The two witnesses will be Deputy Commissioner for Internet & Technology & CIO, Jean Yaremchuk, and Deputy Chief of Department Gregory McLaughlin.

DC Yaremchuk is available: 4/29 (at 3 pm); 4/30; 5/1; 5/7; 5/14; 5/15;

DC McLaughlin is available: 5/6; 5/7; 5/8;

If 5/7 is a good date for you we could do one witness in the morning and one witness in the afternoon. Let me know if you need additional dates.

Also, it makes more sense to depose DC Yaremchuk before McLaughlin, but set them up as you wish.

Finally, all of the documents that these witnesses intend to rely on were produced in the 4/15/14 production to Joe Cleemann.

Thanks.

-Kim

# EXHIBIT I

## Larkin, Arthur (Law)

| | |
|---|---|
| **From:** | Friedberg, Anna [Anna.Friedberg@ropesgray.com] |
| **Sent:** | Monday, January 27, 2014 3:00 PM |
| **To:** | Larkin, Arthur (Law); Nguyen, Diep (Law); Joyce, Kimberly (Law); Wilson, Angharad (Law) |
| **Cc:** | Nunez Plaintiffs' Counsel |
| **Subject:** | Nunez: Plaintiffs Proposed Discovery Plan |
| **Attachments:** | Active_40813275_1_Plaintiffs Proposed Discovery Plan.DOCX |

Arthur,

As we discussed on Friday, attached is Plaintiffs' proposed discovery plan.  We believe this proposal will allow both sides to take discovery in an efficient and timely manner and provide the parties with an opportunity to have productive settlement discussions throughout the course of discovery.  The proposal currently allows for Plaintiffs and Defendants to conduct all of the depositions they have currently requested.  As the Court suggested, we believe that by designating certain times to discuss settlement we may be able to resolve this case sooner and potentially obviate the need to conduct all of the depositions sought in this case.

We look forward to discussing your thoughts and any counter proposals on our call tomorrow.

Thanks,
Anna

**Anna E. Friedberg**
**ROPES & GRAY LLP**
T +1 212 596 9332 | F +1 646 728 6247
1211 Avenue of the Americas
New York, NY 10036-8704
Anna.Friedberg@ropesgray.com
www.ropesgray.com

Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**PLAINTIFFS' PROPOSED DISCOVERY PLAN**

| | | | Status Conference for Case Evaluation/ Settlement | | | Status Conference for Case Evaluation/ Settlement | | | Status Conference for Case Evaluation/ Settlement |
|---|---|---|---|---|---|---|---|---|---|
| | **January - March 2014 ~ Approx. 23 Depositions taken by Plaintiffs [x] Depositions taken by Defendants** | | | **April - July 2014 Approx. 31 Depositions taken by Plaintiffs [x] Depositions taken by Defendants** | | | **August - November 2014 Approx. 28 Depositions taken by Plaintiffs [x] Depositions taken by Defendants** | | |
| **Plaintiffs' Discovery** | **C. Graham Defendants** | 1 depo already taken | April 1 - 15, 2014 | **K. Bacote Defendants for 4/2010 incident:** | 4 Defendants | August 1 – 15, 2014 | **Oscar Sanders Defendants (open investigation)** | 4 Defendants | December 2014 |
| | **R. Nunez Defendants** | 2 depos already taken | | **K. Bacote Defendants for 10/2010 incident:** | 7 Defendants | | **Sonny Ortiz Defendants (open investigation)** | 5 Defendants | |
| | **S. Smallwood Defendants** | 4 depositions confirmed | | **R. Brye Defendant for 2012 incident:** | 5 Defendants | | **Rodney Brye Defendants for 2011 incident (open investigation)** | 2 Defendants | |
| | **J. DeGros Defendants** | 1 depo already taken and 1 confirmed | | **L. Pickering Defendants** | 2 Defendants | | **Clifford Sewell Defendants (open investigation)** | 2 Defendants | |
| | **Travis Woods Defendants** | 6 depos noticed | | **Travis Woods Defendants** | 3 Defendants | | | | |
| | **M. Nunez Defendants** | 3 depos confirmed, 1 to be scheduled, 1 to be noticed | | | | | | | |
| | **Non-Party** | - DOC staff member responsible for video surveillance cameras - DOC staff member responsible for post-Academy training regarding use of force Homer Venters Amanda Masters | | **Supervisory Defendants** | Rose Agro-Doyle Kathleen Mulvey Emmanuel Bailey Edmond Duffy | | **Supervisory Defendants** | Dora Schriro Evelyn Mirabal Larry Davis, Sr. Mark Scott Michael Hourihane Carmine LaBruzzo Current Deputy Chief of Security Florence Finkle Carlton Newton Robert Cripps Ronald Jorgensen | |
| | | | | **Non-Party** | Ruben Benitez Sean Cussen Janet Gooding Erik Berliner Brian Suprenant Additional TBD | | **Non-Party** | Sabina Blaskovic Mark Cranston Lewis Finkleman Linda Gibbs Inmate witnesses - TBD Class members involved in UOF - TBD Staff witnesses - TBD | |
| **Defendants' Discovery** | **Deposition of Plaintiffs** | Christopher Graham, Ralph Nunez, Shameik Smallwood, Jose DeGros, Mark Nunez | | **Deposition of Plaintiffs** | Keith Bacote, Leslie Pickering, Travis Woods | | **Deposition of Plaintiffs** | Rodney Brye, Oscar Sanders, Clifford Sewell, Sonny Ortiz | |
| | **Other Depositions** | | | **Other Depositions** | | | **Other Depositions** | | |