UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                            :

MARK NUNEZ, et al.,                      :
                            :
                Plaintiffs,      :
                            :  **11 Civ. 5845 (LTS)(JCF)**
      - against -              :
                            :

CITY OF NEW YORK, et al.,        :
                            :
                Defendants.    :
                            :

----------------------------------------------------------- X
                            :

## MEMORANDUM OF LAW IN SUPPORT OF THE
## UNITED STATES OF AMERICA'S MOTION TO INTERVENE

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2777

JEFFREY K. POWELL
EMILY E. DAUGHTRY
Assistant United States Attorneys
  — Of Counsel —

**TABLE OF CONTENTS**

Page:

PRELIMINARY STATEMENT ...................................................................................1

I.    APPLICABLE LEGAL STANDARDS ...........................................................4

    A. Civil Rights of Institutionalized Persons Act ("CRIPA")...............................4

    B. Intervention Pursuant to Federal Rule of Civil Procedure 24.........................5

II.    DISCUSSION ................................................................................................5

    A. The United States' Motion Is Timely ...........................................................6

    B. CRIPA Gives the United States an Unconditional Right to Intervene Pursuant to Rule 24(a)(1) .................................................................................8

    C. The United States Is Also Entitled to Intervention of Right Pursuant to Rule 24(a)(2)...........................................................................11

        1. The United States Has a Protectable Interest.......................................11

        2. This Case May Impair the United States' Ability to Protect Its Interest .............12

        3. The Existing Parties May Not Adequately Represent the United States' Interest..............................................................................14

    D. The United States is Entitled to Permissive Intervention ...............................16

    CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                      Page:

*Bridgeport Guardians, Inc. v. Delmonte*,

    602 F.3d 469 (2d Cir. 2010)........................................................................11

*Bhd. of RR Trainmen v. Baltimore & O.R. Co. et al.*,

    331 U.S. 519 (1947)........................................................................8, 9, 10

*Brennan v. N.Y.C. Bd. Of Educ.*,

    260 F.3d 123 (2d Cir. 2001) .....................................................................11

*Butler, Fitzgerald & Potter v. Sequa Corp.*,

    250 F.3d 171 (2d Cir. 2001)........................................................................14

*Catanzano v. Wing*,

    103 F.3d 223 (2d Cir. 1996)........................................................................11

*Feller v. Brock*,

    802 F.2d 722 (4th Cir. 1986) .....................................................................15

*Floyd v. City of New York*,

    770 F.3d 1051 (2d Cir. 2014)............................................................. passim

*Forest Conservation Council v. U.S. Forest Service*,

    66 F.3d 1489 (9th Cir. 1995) .....................................................................15

*H.L. Hayden Co. of NY v. Siemens Medical System Inc.*,

    797 F.2d 85 (2d Cir. 1986)........................................................................16

*JLS, Inc. v. Pub. Serv. Comms'n of West Virginia*,

    321 Fed. Appx. 286, 291 (4th Cir. 2009) ...................................................15

*Kleissler v. U.S. Forest Serv.*,

  157 F.3d 964 (3d Cir. 1998)......................................................................................14

*MasterCard International Inc. v. Visa International Serv. Association, Inc.*,

  471 F.3d 377 (2d Cir. 2006)........................................................................................7

*Natural Resources Defense Council v. Costle*,

  561 F.2d 904 (D.C. Cir. 1977)..................................................................................15

*Ruiz v. Estelle*,

  161 F.3d 814 (5th Cir. 1998) .................................................................................8, 10

*Sierra Club v. Espy*,

  18 F.3d 1202 (5th Cir. 1994) ....................................................................................15

*Smith v. Pangilinan*,

  651 F.2d 1320 (9th Cir. 1981) ..................................................................................13

*Trbovich v. United Mine Workers of America*,

  404 U.S. 528 (1972)..................................................................................................14

*United States v. City of New York*,

  198 F.3d 360 (2d Cir. 1999).........................................................................6, 11, 12

*United States v. Hooker Chemicals & Plastics Corp.*,

  749 F.2d 968 (2d Cir. 1984)................................................................................11, 16

*United States v. Pitney Bowes, Inc.*,

  25 F.3d 66 (2d Cir. 1994) ...........................................................................................6

*United States v. Yonkers Bd. of Educ.*,

  801 F.3d 583 (2d Cir. 1986)........................................................................................6

**STATUTES**

42 U.S.C. § 1997 ............................................................................................................. 1

42 U.S.C. § 1997a ................................................................................................... 11, 12

42 U.S.C. § 1997c ................................................................................................. passim

42 U.S.C. § 14141 ..................................................................................................... 1, 16

Fed. R. Civ. P. 24 ................................................................................................... passim

The United States of America, by and through its attorney Preet Bharara, respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned case. Plaintiffs and the City of New York both consent to the United States' intervention.

## PRELIMINARY STATEMENT

Following a two-and-a-half year investigation by the U.S. Attorney's Office for the Southern District of New York (the "United States"), which found a pervasive and deep-seated culture of violence at the New York City Department of Correction ("DOC") jails on Rikers Island ("Rikers"), the United States is moving to intervene in this action pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997. CRIPA allows the United States to intervene in any action seeking relief from conditions of confinement that deprive prisoners "of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing them to suffer grievous harm," where the Attorney General has "reasonable cause to believe" that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights. 42 U.S.C. § 1997c(a)(1). The United States has such reasonable cause to believe that the youngest inmates at Rikers – 16-, 17-, and 18-year old inmates – are not adequately protected from harm due to the rampant use of unnecessary and excessive force against them by DOC staff and the violence inflicted on them by other inmates. Furthermore, the United States has reasonable cause to believe that this violence is the result of widespread and longstanding systemic deficiencies within DOC and its jail complex on Rikers.

On January 12, 2012, the United States formally notified the City of New York that the United States was opening an investigation into the treatment of male inmates between the ages of sixteen and eighteen (the "Subject Inmates") at DOC jails on Rikers pursuant to CRIPA and Section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. §

1

14141 ("Section 14141"). Both CRIPA and Section 14141 give the Department of Justice authority to seek a remedy for a pattern or practice of conduct that violates the constitutional rights of inmates in detention and correctional facilities.

On August 4, 2014, the United States issued a public findings letter concluding that there is a pattern and practice of conduct at Rikers that violates the constitutional rights of the Subject Inmates. In particular, the letter noted that DOC has systematically failed to adequately protect the Subject Inmates from harm, including harm from excessive use of force by staff and inmate-on-inmate violence. The United States determined that force is used by staff at an alarming rate, and that violent inmate assaults are commonplace, leading to a high number of serious injuries. The United States found that correction officers frequently resort to "headshots" or blows to an inmate's head or facial area, and that force is used against 16-, 17-, and 18-year old inmates as punishment or retribution or in response to verbal altercations with officers. The United States observed that the force employed by specialized response teams is particularly brutal, and that force is common in areas without video surveillance cameras.

Furthermore, the United States pointed out the many systemic deficiencies that have ultimately resulted in these problems, including but not limited to inadequate reporting of use of force by staff, inadequate investigations into use of force, inadequate staff discipline for inappropriate use of force, inadequate supervision of inmates by staff, inadequate training on use of force, and a historical failure by management stretching back years, if not decades, to adequately address the extraordinary levels of violence perpetrated against the inmate population. The United States also noted that DOC's use of prolonged punitive segregation for the Subject Inmates is excessive and inappropriate. Finally, the United States proposed over 70 specific remedial measures that it found DOC should implement to address the deficiencies

identified.  *See* United States' Letter to Mayor Bill de Blasio, Commissioner Joseph Ponte, and

Corporation Counsel Zachary Carter, dated August 4, 2014 ("Findings Letter"), attached as

Exhibit A to the United States' Proposed Complaint-in-Intervention.  The findings set forth in

the United States' letter of August 2014 are substantially similar to the allegations set forth in the

Amended Complaint, filed by plaintiffs on May 24, 2012, on behalf of all inmates at DOC jails

(other than the Eric M. Taylor Center and the Elmhurst and Bellevue Prison Wards), that DOC

staff regularly use unnecessary and excessive force against inmates in violation of their

constitutional rights.  *See* Amended Complaint [Dkt. No. 15].

The United States' proposed complaint-in-intervention ("Proposed Complaint") largely

mirrors the conclusions in its Findings Letter.  Given the overlap between the United States'

CRIPA investigation and the subject matter of this litigation, including allegations of

fundamental and systemic deficiencies related to use of force policies and practices, it would be

most efficient to resolve plaintiffs' claims and the United States' CRIPA investigation with a

single, comprehensive remedy.  Indeed, the parties and the United States have already begun to

engage in joint negotiations, and both plaintiffs and the City of New York consent to the United

States' intervention.  Intervention by the United States in this matter will serve the interests of

judicial economy and will facilitate much needed reforms at Rikers in the fastest and most

efficient manner.

Accordingly, the United States moves this Court for intervention of right, pursuant to

Rule 24(a)(1) and 24(a)(2) of the Federal Rules of Civil Procedure, and alternatively for

permissive intervention, pursuant to Rule 24(b).

# I.     APPLICABLE LEGAL STANDARDS

## A.     Civil Rights of Institutionalized Persons Act ("CRIPA")

CRIPA gives the Attorney General, on behalf of the United States, the discretion to

intervene in any action that:

> has been commenced in any court of the United States seeking relief
> from egregious or flagrant conditions which deprive persons residing
> in institutions of any rights, privileges, or immunities secured or
> protected by the Constitution or laws of the United States causing
> them to suffer grievous harm [where] . . . the Attorney General has
> reasonable cause to believe that such deprivation is pursuant to a
> pattern or practice of resistance to the full enjoyment of such rights,
> privileges, or immunities.

42 U.S.C. § 1997c(a).  In such actions, the United States "may intervene . . . upon motion by the

Attorney General."  *Id.*

CRIPA further provides that, unless the interests of justice require it, the Attorney

General must wait to intervene until 90 days have passed from the commencement of the action

in which he is intervening, and that his motion must include a certification, personally signed by

the Attorney General, (1) that he has provided the head of the relevant political subdivision with

at least 15 days written notice of: (a) "the alleged conditions which deprive [institutionalized

persons] of rights, privileges, or immunities secured or protected by the Constitution or laws of

the United States and the alleged pattern or practice of resistance to the full enjoyment of such

rights, privileges, or immunities;" (b) "the supporting facts giving rise to the alleged conditions,

including the dates and time period during which the alleged conditions and pattern or practice of

resistance occurred;" and (c) "the minimum measures which the Attorney General believes may

remedy the alleged conditions," 42 U.S.C. § 1997c(b)(1)(A); and (2) "that the Attorney General

believes that intervention by the United States is of general public importance and will materially

further the vindication of rights, privileges, or immunities secured or protected by the

Constitution or laws of the United States," 42 U.S.C. § 1997c(b)(1)(B). Finally, the Attorney General must personally sign any motion to intervene pursuant to this section of CRIPA. 42 U.S.C. § 1997c(c).

**B.    Intervention Pursuant to Federal Rule of Civil Procedure 24**

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention – intervention of right and permissive intervention. Rule 24(a) states that:

> On timely motion, the court must permit anyone to intervene who
> (1) is given an unconditional right to intervene by federal statute; or
> (2) claims an interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the action may
> as a practical matter impair or impede the movant's ability to protect
> its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(1)-(2).

Rule 24(b)(1) provides for permissive intervention. Under that provision:

> On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common
> question of law or fact.

Fed. R. Civ. P. 24(b)(1). The rule further instructs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## II.    DISCUSSION

The Court should grant the United States' motion to intervene. The United States satisfies the requirements both to intervene as of right and for permissive intervention. First, this Court must permit the United States to intervene as of right because its motion is timely, and CRIPA is a federal statute that gives the United States an unconditional right to intervene pursuant to Rule 24(a)(1). 42 U.S.C. § 1997c(a). The United States also may intervene as of right pursuant to Rule 24(a)(2), as it has a significant, legally protectable interest in the

proceedings; that interest may be impaired by the disposition of the case; and the existing parties may not adequately protect the United States' interest in ensuring that DOC does not violate the constitutional rights of the Subject Inmates and complies with federal law. Fed. R. Civ. P. 24(a)(2); *see also United States v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999) (describing "well-established" standards under this sub-section of Rule 24).

In the alternative, this Court should grant the United States' permissive intervention under Federal Rule of Civil Procedure 24(b). The United States' CRIPA and Section 14141 claims share common questions of law and fact with the current action, and its intervention will not unduly delay or prejudice the adjudication of the case.

The Second Circuit has explained that "intervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994))(internal quotation marks omitted). The United States' intervention in this matter successfully accommodates both policies.

A.      **The United States' Motion Is Timely**

Rule 24 requires that any motion for intervention—whether of right or permissive—be timely. This requirement "is flexible" and any decision as to timeliness "is one entrusted to the district judge's sound discretion." *Floyd*, 770 F.3d at 1058 (quoting *U.S. v. Yonkers Bd. of Educ.*, 801 F.2d 583, 594-95 (2d Cir. 1986)). Nonetheless, the Second Circuit has provided guidance with respect to the factors to be considered, including: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) the prejudice

to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd*, 770 3d. at 1058 (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006)).

The United States' application for intervention is timely.  Although the United States had knowledge of plaintiffs' case from the time it was filed, the extent of the overlap between this case and the United States' CRIPA investigation only became clear upon the completion of the United States' investigation.  Intervention only became possible fifteen days after the issuance of the United States' findings letter in August 2014, just four months ago.  *See* 42 U.S.C. § 1997c(b)(1)(A).

Since that time, the United States and the City of New York have been engaged in discussions regarding resolution of the CRIPA investigation.  While the United States had hoped to reach a speedy resolution with the City on these critical issues, thus far insufficient progress has been made.  At this point, the United States, the City, and the plaintiffs to this action are at approximately the same stage of negotiations regarding settlement of this action, and indeed have engaged in joint settlement negotiations for the past several weeks.  Because the parties have not yet reached a settlement agreement, there is no prejudice to the parties that would result from the United States' intervention at this time.  *Cf. Floyd*, 770 F.3d at 1059-60 (affirming district court's determination that police union's motion to intervene was untimely after parties had already reached settlement agreement).  Furthermore, there is no prejudice to the parties because the allegations in the Amended Complaint and the United States' Proposed Complaint largely overlap.  Should the parties return to a more active litigation posture, the discovery sought by the United States would be substantially similar to the discovery that already has been sought and

likely would be sought by the plaintiffs.  Additionally, as noted, plaintiffs and the City of New York consent to the United States' intervention.

The categories of reforms currently being negotiated by the parties also overlap substantially with remedies that the United States is seeking to resolve its CRIPA investigation. In the absence of intervention by the United States giving it official status in this litigation, the parties could reach agreement on these overlapping issues without the formal consent of the United States.  This would substantially prejudice the United States' interest in protecting the constitutional rights of the Subject Inmates.

Finally, the United States has made it clear to the City that any resolution of its CRIPA investigation must be in the form of a court-enforceable consent decree, and this can only be accomplished by the United States either filing its own action or intervening in this action.  If the United States were to file a separate suit, the City then would have to defend against two separate cases with significantly overlapping allegations, as well as overlapping discovery if the parties are unable to reach settlement.  In the interests of "resolving all related issues in one lawsuit," it would be most efficient for the United States to intervene in this action.  *Id.* at 1057.  Given that the stay of discovery in this case is scheduled to expire on December 22, 2014, the parties are on the cusp of a critical moment in this case: they will have to make a determination as to whether to request an additional stay of discovery to continue their settlement discussions or return to litigation.  Accordingly, this is a particularly opportune time for the United States to intervene.

**B.**  **CRIPA Gives the United States An Unconditional Right To Intervene Pursuant to Rule 24(a)(1)**

Assuming a timely motion, intervention under Rule 24(a)(1) is "absolute" and "unconditional."  *Bhd. of RR Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 531 (1947). "Indeed, once it is clear that the statute applies, there is no room for the operation of a court's

discretion." *Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir. 1998) (quoting *Bhd. of RR Trainmen*, 331 U.S. at 531) (internal quotation marks and brackets omitted). Here, it is clear that CRIPA applies and that, "once the requirements of [CRIPA] have been met," as they have been here, the Attorney General "acquires an absolute right of intervention." *Bhd. of RR Trainmen*, 331 U.S. at 531.

There can be no question that the intervention provision of CRIPA applies here. Plaintiffs in this action seek relief "from egregious or flagrant conditions" whereby inmates at Rikers jails are subject to unnecessary and brutally excessive use of force, which they allege deprive them of "rights, privileges, or immunities secured or protected by the Constitution" and thereby "caus[e] them to suffer grievous harm." 42 U.S.C. § 1997c(a)(1). Furthermore, based on the two-and-a-half year investigation by the United States into the treatment of a subset of those inmates—the Subject Inmates—at the very same Rikers jails, the Attorney General has "reasonable cause to believe" that the systematic failure to protect this population from excessive and unnecessary force and from violence inflicted by other inmates is "pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities." *Id.*

Additionally, all the procedural requirements of the statute have been met. This action was initiated more than ninety days ago. 42 U.S.C. § 1997c(a)(2). The Attorney General has personally certified to this Court that at least fifteen days prior to the filing of this motion to intervene, notice was provided to the Honorable Bill de Blasio, Commissioner of Correction Joseph Ponte, and Corporation Counsel Zachary Carter, in the form of 79-page findings letter, of "(i) the alleged conditions which deprive [inmates of their] rights, privileges, or immunities secured or protected by the Constitution or laws of the United States and the alleged pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities; (ii) the

supporting facts giving rise to the alleged conditions, including the dates and time period during

which the alleged conditions and pattern or practice of resistance occurred; and (iii) the

minimum measures which the Attorney General believes may remedy the alleged conditions and

the alleged pattern or practice of resistance."  42 U.S.C. § 1997c(b)(1)(A).  The Attorney General

has further personally certified that he believes that intervention by the United States is of

general public importance and will materially further the vindication of rights, privileges, and

immunities secured or protected by the Constitution or laws of the United States.  42 U.S.C.

§ 1997c(b)(1)(B).  The Attorney General's certification is set forth in the United States' Notice

of Motion, which has been personally signed by Attorney General Eric Holder.  42 U.S.C.

§ 1997c(b)(2), (c).

　　　　Given that these requirements have been met, the Attorney General "may intervene" in

this action.  42 U.S.C. § 1997c(a)(1).  As the Supreme Court has made clear, in statutes of this

nature, the "statutory term 'may intervene' . . . means 'may intervene if the [individual

empowered to intervene, here the Attorney General] so chooses' rather than 'may intervene in

the discretion of the court.'"  *Bhd. of RR Trainmen*, 331 U.S. at 531.  Accordingly, CRIPA gives

the Attorney General an absolute right to intervene in this action.  *See id*.; *see also Ruiz*, 161 F.3d

at 828 ("Rule 24(a)(1) 'statutory intervenors' need not show inadequacy of representation or that

their interests may be impaired if not allowed to intervene . . . [or] even prove a 'sufficient'

interest relating to the subject matter of the controversy, since Congress has already declared that

interest sufficient by granting the statutory right to intervene.")

**C.** **The United States Is Also Entitled to Intervention of Right Pursuant to Rule 24(a)(2)**

In addition to having an unconditional right to intervene pursuant to CRIPA and Rule 24(a)(1), the United States easily meets the standard for intervention of right pursuant to Rule 24(a)(2). A Court should grant a timely motion for intervention as of right under Rule 24(a)(2) where the movant has a "direct, substantial, and legally protectable" interest in the subject matter of the litigation. *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)) (internal quotation marks omitted). "[A]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Floyd*, 770 F.3d at 1060 (quoting *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 124 (2d Cir 2001)) (internal quotation marks omitted). Additionally, the movant must "demonstrate that the interest may be impaired by the disposition of the action, and [] show that the interest is not protected adequately by the parties to the action." *City of New York*, 198 F.3d at 364 (quoting *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996)). "The various components of the Rule are not bright lines, but ranges . . . . Application of the Rule requires that its components be read not discretely, but together. A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984). Furthermore, the "requirements for intervention embodied in Rule 24(a)(2) must be read also in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided." *Id.*

**1. The United States Has a Protectable Interest**

The United States clearly has a "direct, substantial, legally protectable" interest in these

proceedings. *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians*, 602 F.3d at 473) (internal quotation marks omitted). First, the United States bases its claims here on many of the very same facts and conditions asserted by plaintiffs, namely the systematic and widespread use of excessive and unnecessary force by correction officers against inmates at Rikers. *Compare* United States' Proposed Complaint *with* Plaintiffs' Amended Complaint [Dkt. No. 15]. Its interest is thus neither remote nor contingent but relates directly to the subject matter of the existing litigation. *See Floyd*, 770 F.3d at 1060.

Moreover, the United States has a sovereign interest in the protection and enforcement of the Subject Inmates' constitutional rights and protections under federal law. CRIPA gives the United States standing to institute civil litigation to obtain equitable relief "to insure the minimum corrective measures necessary to insure the full enjoyment of such rights, privileges, or immunities" secured or protected by the Constitution or laws of the United States for individuals confined to a correctional facility. 42 U.S.C. § 1997a. As the United States is responsible for ensuring the "full enjoyment" of the Subject Inmates' rights to constitutional conditions of confinement, it has a substantial and legally protectable interest in the current litigation, in which plaintiffs seek to enforce those same rights for a larger set of inmates. *Id.*

### 2. This Case May Impair the United States' Ability To Protect Its Interest

Absent intervention, the United States' interest "may be impaired by the disposition of the action." *City of New York*, 198 F.3d at 364. The United States satisfies this requirement because any resolution of this case may impair its ability to protect its sovereign interest described above.

Allowing the current litigation to proceed without the United States will impede the United States' ability to ensure that an adequate set of comprehensive reforms are put in place to

fully address the constitutional deficiencies that it has identified, and will require the United States to file a separate, duplicative lawsuit to protect its interests. As a practical matter, as noted above, the parties are currently engaged in settlement discussions, and could agree to settle this action on terms that will directly affect the United States' interests. For example, the United States has identified significant, systemic problems with DOC's policies and practices regarding use of force reporting, investigations, and measures to hold DOC staff accountable for excessive and unnecessary force. All of these issues require substantial remedial measures. *See* United States' Findings Letter, Ex. A to United States' Proposed Complaint. Plaintiffs, however, have also identified these very same issues as important to any settlement of this action. Notwithstanding the joint settlement discussions that have taken place over the last several weeks, unless the United States formally intervenes in this action, the parties could agree to reforms in these areas without agreement by the United States. While the United States theoretically could require additional changes in these areas were it subsequently to bring its own lawsuit, such an outcome would not be efficient or desirable. The United States' intervention will ensure that the remedial measures it has identified as necessary are included in any mutually agreed upon settlement or other court order.

Lastly, the United States is responsible for ensuring the constitutional rights of institutionalized persons nationwide, and an adverse ruling on the United States' motion to intervene here could negatively impact the United States' ability to bring CRIPA enforcement actions nationally. *Cf. Smith v. Pangilinan*, 651 F.2d 1320, 1324-25 (9th Cir. 1981) (finding Attorney General, charged with administering immigration, had protected interest in construction and application of immigration law, and that Attorney General had right to intervene because of a possible *stare decisis* impairment).

### 3. The Existing Parties May Not Adequately Represent the United States' Interest

The existing parties to this class action lawsuit may not represent the United States' interests adequately, satisfying the final requirement for intervention as of right. The burden of establishing inadequacy of representation is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). An applicant need not demonstrate a certainty that the existing parties will inadequately represent its interests, only that such representation "may be" inadequate. *Id.* The Second Circuit has, however, "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective. Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001) (internal citation omitted).

As an initial matter, while the allegations stated in the United States' CRIPA findings letter of August 2014 and its Proposed Complaint substantially overlap with the claims stated in plaintiffs' class complaint, they are also broader than plaintiffs' claims in some ways. For example, the United States has alleged that DOC's use of punitive segregation for the Subject Inmates is excessive and inappropriate, and that inadequate supervision of the Subject Inmates results in high levels of inmate-on-inmate violence. Plaintiffs therefore cannot – and should not – be expected to make all of the United States' arguments. This lack of identity of arguments and certain ultimate objectives is sufficient to satisfy the minimal burden of demonstrating inadequacy of representation. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973-74 (3d Cir. 1998) (concluding that federal government agency and private businesses seeking to intervene had "interests inextricably intertwined with, but distinct from" each other and thus government's representation of private interests would be inadequate).

14

More generally, while it is true that plaintiffs and the United States share the same goal of ensuring constitutional conditions at Rikers, the United States' interest is far broader as it is charged by statute with representing the public interest on a national scale. Specifically, the United States is tasked with remedying conditions of confinement that deprive institutionalized persons, here the Subject Inmates, "of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing them to suffer grievous harm." 42 U.S.C. § 1997c (a)(1). While this responsibility may overlap with plaintiffs' interests, the United States' interests extend beyond class members' claims to include ensuring that DOC provides comprehensive constitutional conditions and complies with federal laws regarding its obligations to protect the Subject Inmates from any harm. *See JLS, Inc. v. Pub. Serv. Comms'n of West Virginia*, 321 Fed. Appx. 286, 290 (4th Cir. 2009) (explaining that "even when a governmental agency's interests appear aligned with those of a particular private group at a particular moment in time, the 'government's position is defined by the public interest, not simply the interests of a particular group of citizens.'") (quoting *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986)) (internal brackets omitted). Thus, it cannot be claimed that the parties' similar objectives equate to adequate representation of the United States' interest. *Cf. Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (holding that intervention by private industry group in suit against government is appropriate because "[t]he government must represent the broad public interest, not just the [concerns of the industry group]."); *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (holding that intervention applicants have "more narrow, parochial interests" than the government); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (holding that government and individual interests may not coincide where government is "broadly concerned

with implementation and enforcement of the settlement agreement" and individuals are "more narrowly focused").

Finally, private individuals – even a class of private individuals – are not tasked with the responsibility of representing the public interest on behalf of the government. While there is a presumption that a government entity's representation of a private applicant's interests is adequate where the government is charged by law with representing those interests, the presumption clearly does not hold in the reverse. Understandably, individuals need only advocate for their own narrower or parochial views. *Cf. Hooker Chemicals*, 749 F.2d at 987 (strong showing of inadequate representation required in enforcement action *by government* before allowing intervenors "to disrupt the government's exclusive control over the course of its litigation"). Accordingly, plaintiffs here cannot and should not be expected to represent the public interest on behalf of the United States.

**B.      The United States Is Entitled to Permissive Intervention**

Should the Court decline to grant the United States intervention of right, it should, in its discretion, nevertheless grant the United States permissive intervention. Permissive intervention is appropriate where a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). A court, in exercising its discretion, "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "The district court's discretion under Rule 24(b)(2) is very broad." *H.L. Hayden Co. of NY v. Siemens Med. Sys. Inc.*, 797 F.2d 85, 89 (2d Cir. 1986).

The United States' CRIPA and Section 14141 claims clearly share common questions of fact and law with the plaintiffs' claims in this action. Both the United States and plaintiffs allege

that DOC staff subject inmates at Rikers to unnecessary and excessive use of force, thereby causing them harm in violation of their rights under the Constitution.

In addition, intervention by the United States will not delay the proceedings or prejudice the original parties because the parties and the United States are all at the stage of settlement discussions.  As noted, the parties have been engaged in settlement negotiations for several months, as have the United States and the City of New York.  Indeed, in recent weeks, these negotiations have proceeded jointly, and the parties and the United States agree that they will need additional time to reach a resolution.  The United States' intervention will allow for the most efficient and effective method of resolving both this litigation and the United States' CRIPA investigation, conserving judicial resources and saving the parties and the United States from expending additional time and money on unnecessary litigation. This, in turn is likely to provide the fastest means of implementing reforms and bringing about real and lasting change to Rikers Island.

Accordingly, permissive intervention is appropriate.

### **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court grant its motion to intervene.

Dated:  December 18, 2014
         New York, New York

PREET BHARARA
United States Attorney

 /s/ Emily E. Daughtry
JEFFREY K. POWELL
EMILY E. DAUGHTRY
Assistant United States Attorneys
86 Chambers Street
New York, NY 10007
Tel.: (212) 637-2706/2777
jeffrey.powell@usdoj.gov
emily.daughtry@usdoj.gov