UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                        :

MARK NUNEZ, et al.,                                 :

                 Plaintiffs,                        :

   - against -                                            :

                                                       : 11 Civ. 5845 (LTS)(JCF)
CITY OF NEW YORK, et al.,                           :

                 Defendants.                      : **DECLARATION**

---------------------------------------------------------- X

UNITED STATES OF AMERICA,                           :

                 Plaintiff-Intervenor,        :

   - against -                                            :

CITY OF NEW YORK and NEW YORK CITY                  :
DEPARTMENT OF CORRECTION,

                 Defendants.                      :
---------------------------------------------------------- X

      **ANNA E. FRIEDBERG** hereby declares as follows:

1.   I am an associate with the law firm Ropes & Gray LLP ("R&G"), which is one of the Court-appointed class counsel in this action. The other Court-appointed class counsel are Emery Celli Brinckerhoff & Abady LLP ("ECBA") and The Legal Aid Society Prisoners' Rights Project ("LAS") (collectively, "Plaintiffs' Class Counsel").

2.   I submit this declaration in support of the Motion for Preliminary Approval of Consent Judgment, Approval of Class Notice, and Revision to Definition of Certified Class.

3.   This class action (certified as such via stipulated Order of the Court on January 7, 2013, which Order also certified the class representatives and Plaintiffs' Class Counsel) seeks comprehensive changes in the jails operated by Defendant The City of New York

("City"), through its Department of Correction ("Department").  As the Court is aware, this action alleges a long-standing pattern and practice of Department staff violence against inmates, tolerated, if not actually encouraged, by Department supervisors, amounting to a City policy – all in violation of the inmates' rights under the United States Constitution and the Constitution of the State of New York.

4.  Plaintiffs' Class Counsel put enormous effort into litigating the class issues in this action, and into now successfully settling them (subject to the Court's approval) pursuant to a Consent Judgment, a copy of which is attached as Exhibit A hereto.

5.  As the Court is aware from its active involvement in and supervision of this action, the litigated aspects of this class action were intensively contested.  After a protracted negotiation process related to the breadth and scope of electronic discovery, including the testing and re-testing of negotiated search terms, counsel for the City produced more than two million pages of documents (in electronic and hard copy form).  Most of that consisted of various types of Department records, including Department policies and procedures governing the use of force, use of force reports for thousands of incidents, training materials, and records relating to use of force investigations.

6.  Plaintiffs' Class Counsel created a database so that they could index and review the City's enormous production.  They used it in preparation for taking 57 depositions, including depositions of current and former correction officers, captains, deputy wardens, wardens and a deputy commissioner – as well as a Deputy Executive Director of the New York City Board of Correction and an Assistant Commissioner for the Bureau of Correctional Health, among others.  As the Court is aware from the submission of the parties' discovery plan, which phased discovery to allow breaks for settlement discussions, Plaintiffs' Class Counsel anticipated a third phase of discovery in which we would have taken depositions of very senior supervisory Department personnel and City officials.  Plaintiffs' Class Counsel were fully prepared to conduct such discovery and otherwise prepare the case for trial if necessary.

7. As the Court also is well aware, Plaintiffs' Class Counsel and counsel for the City had a number of discovery disputes. Counsel engaged in extensive negotiations to resolve many of them, while others required resolution by the Court.

8. Plaintiffs' Class Counsel retained two expert consultants to assist them in prosecuting the class claims. One of those expert consultants is Steve J. Martin, who will be appointed Monitor under the Consent Judgment if approved by the Court. Mr. Martin served as joint monitor in the remedial phase of *Sheppard v. Phoenix*, 91 Civ. 4141 (RPP), an earlier class action brought against the City with respect to use of force in the Central Punitive Segregation Unit. Mr. Martin also was an expert for the plaintiffs in *Ingles v. Toro*, 01 Civ. 8279 (DC) (an earlier class action in this Court brought against the City that challenged conditions in the City jails). He is a nationally-recognized expert on correctional facilities. Mr. Martin has reviewed significant portions of the City's production and the deposition transcripts. He also has visited the jails at issue on several occasions in connection with this case (as have Plaintiffs' Class Counsel).

9. In the spring of 2014, Plaintiffs' Class Counsel and counsel for the City agreed to explore the possibility of a settlement of the class claims. Negotiations began in June 2014, and the parties jointly asked the Court to stay class-related deadlines, which the Court did, first by its Order of June 23, 2014.

10. Over the next several months, settlement negotiations continued. Plaintiffs' Class Counsel participated of course, as did counsel for the City and the Department. Importantly, Department management, including Commissioner Joseph Ponte, also personally participated in discussions. Mr. Martin also was heavily involved in the settlement discussions, and his direct dealings with Commissioner Ponte were key to making progress.

11. On September 22, 2014, Plaintiffs' Class Counsel and counsel for the City executed a Memorandum of Understanding ("MOU"). The MOU outlined in general terms some provisions of a potential settlement and noted others for further discussion. Thereafter, settlement discussions (in-person meetings and telephone calls) continued.

12. I am advised that in 2012, the USAO commenced an investigation into the treatment of young male inmates of the City jails between the ages of 16 and 18 ("Young Inmates"), pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, and Section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. §14141.  On August 4, 2014, the USAO and the Department of Justice issued a 79-page findings letter under CRIPA, which concluded that Young Inmates were being subjected to unconstitutional conditions of confinement.  On December 18, 2014, the United States filed an unopposed motion to intervene as a plaintiff in this action, which was granted by the Court on December 23, 2014 (a copy of the findings letter was annexed to the United States' Complaint-in-Intervention).

13. After the United States intervened, the parties continued to engage in extensive settlement negotiations.  Literally scores of in-person and telephonic settlement sessions were held over the course of several months.  The settlement discussions involved direct participation not only by counsel, but also by key Department officials (including Commissioner Ponte), Mr. Martin and Jeffrey Schwartz, the expert consultant retained by the USAO.  The parties provided the Court with periodic updates on the status of the settlement discussions by letter and at Court conferences.  Detailed drafts of the operative provisions of a proposed agreement were exchanged, vigorously debated and negotiated, and ultimately finalized.

14. As the parties advised the Court on June 22, 2015, the extensive settlement negotiations have resulted in the proposed Consent Judgment, a copy of which is attached hereto as Exhibit A.

15. Having consulted with fellow Plaintiffs' Class Counsel, and with the USAO, I can advise the Court that our unanimous view is that the Consent Judgment is an extremely favorable resolution of the class claims in this action.  I refer the Court to the USAO's June 22, 2015 letter to the Court advising of the Consent Judgment, for just some of the reasons why that is so (and the Consent Judgment in its entirety speaks for itself).

16. I also respectfully refer the Court to the accompanying Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Consent Judgment, Approval of Class

Notice, and Revision to Definition of Certified Class ("Brief"), for a discussion of why the Consent Judgment is procedurally and substantively fair, and should be approved by the Court. As discussed in more detail therein, and as the discussion herein also confirms, the Consent Judgment was the result of a hard-fought, well-counseled negotiation process in which senior Department personnel, including Commissioner Ponte, as well as Plaintiffs' Counsels' expert consultants, were directly and extensively involved in the negotiations, which further ensures that the requirements of the Consent Judgment are practical and designed to effectively address the goals of reducing violence in the jails and ensuring the safety and well-being of inmates.

17. As discussed in the Brief, the Consent Judgment avoids the extensive additional proceedings that would otherwise have been needed. Were this class action to have continued, it would have involved more fact witness depositions (party and non-party), several discovery-related motions (involving such contentious issues as confidentiality designations by the City, the scope of discovery produced by the City, the number of witnesses to be deposed, and the resolution of complex privilege issues), expert analyses, reports, and depositions, possible summary judgment motions, and extensive preparation for trial. The Consent Judgment avoids any risk that the class would have faced at trial or on appeal, avoids any risk that the comprehensive changes that the City now has agreed to might not have been imposed by the Court over the City's objections, and embodies a remedy that the City and the Department (after direct involvement of the Commissioner himself) agree is appropriate and manageable.

18. I respectfully submit that the Consent Judgment is procedurally and substantively fair, and merits preliminary (and ultimately final) approval by the Court.

19. Plaintiffs' Class Counsel and counsel for the City have agreed on the content of the proposed notice to be given to the class, which is derived from the notice provided to the class when the Court certified this action as a class action. A copy of the proposed notice (in English and Spanish) is attached as Exhibit B hereto.

20. Plaintiffs' Class Counsel and counsel for the City also have agreed upon the method for the class notice to be distributed to the class, which also is derived from the method of

distribution used for the notice provided to the class when the Court certified this action as a class action.

21. For the Court's convenience, a proposed Order is attached as Exhibit C hereto. It contains provisions granting preliminary approval to the Consent Judgment, approving the content and method of distribution of the notice to the class, setting proposed dates for the process leading up to and including the final Fairness Hearing, and revising the definition of the class (for the reasons discussed in Argument Section III of the Brief).

I declare that the foregoing is true to the best of my knowledge, information and belief. Executed on July 1, 2015.

/s/ Anna E. Friedberg
Anna E. Friedberg