UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                                          :

MARK NUNEZ, et al.,                                     :

                  Plaintiffs,                         :

   - against -                                         :   11 Civ. 5845 (LTS)(JCF)

CITY OF NEW YORK, et al.,                    :

                  Defendants.                     :

------------------------------------------------------------ X

UNITED STATES OF AMERICA,              :

                  Plaintiff-Intervenor,     :

   - against -                                           :

CITY OF NEW YORK and NEW YORK CITY   :
DEPARTMENT OF CORRECTION,

                  Defendants.                     :
------------------------------------------------------------ X

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**TO:   INMATES IN THE CUSTODY OF THE NEW YORK CITY DEPARTMENT OF CORRECTION**

      Please be advised that the plaintiffs on behalf of themselves and the Class (as defined below) have reached a proposed settlement with the Defendants in the above-captioned lawsuit (the "Action"). The proposed settlement aims to confer substantial benefits upon the members of the Class. If approved, the settlement will resolve all claims for declaratory and injunctive relief in the Action.

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS A <u>SUMMARY</u> OF THE PROPOSED SETTLEMENT AGREEMENT. IT ALSO CONTAINS INFORMATION ON HOW TO RAISE OBJECTIONS OR QUESTIONS THAT YOU MAY HAVE ABOUT THE PROPOSED SETTLEMENT.**

      1.     Description of the Class and Action:

      The class is defined as all present and future inmates confined in jails operated by the New York City Department of Correction ("DOC" or "Department"). Inmates confined in Elmhurst and Bellevue Prison Wards are not part of the Class. The jails that confine the members of the Class are hereafter referred to as the "City Jails."

      The Class alleges, among other things, that DOC staff members use unnecessary and excessive force against inmates, that DOC supervisory personnel and The City of New York have a policy of knowingly permitting, tolerating, and encouraging this alleged misconduct, and that this alleged misconduct violates the Constitution and laws of the United States and the laws of the State of New York.

      The Defendants in the Action include the City of New York, DOC, and certain DOC officials.

      On December 23, 2014, the United States of America was permitted to intervene as a plaintiff in the Action. The United States Attorney's Office for the Southern District of New York and the Department of Justice previously had conducted an investigation into the treatment of male inmates under the age of 19 ("Young Inmates") and issued a report concluding that such inmates were being subjected to unconstitutional conditions of confinement. In the Action, the United States alleges that the Defendants engaged in a pattern and practice of: (a) subjecting Young

Inmates to excessive and unnecessary use of force; (b) failing to adequately protect Young Inmates from violence inflicted by other inmates; and (c) placing Young Inmates in punitive segregation at an alarming rate and for excessive periods of time.

Counsel for the Plaintiff Class, the United States of America, and the Defendants have agreed to a written Consent Judgment (the "Settlement Agreement") to settle the injunctive and declaratory claims in the Action, subject to the Court's determination that the settlement is fair, reasonable, and adequate.

**THE ACTION DOES NOT SEEK MONEY DAMAGES FOR THE CLASS. THE ACTION AND THE PROPOSED SETTLEMENT AGREEMENT WILL HAVE NO EFFECT ON ANY INMATE'S ABILITY TO BRING AN INDIVIDUAL CLAIM FOR MONEY DAMAGES BASED ON AN ALLEGATION THAT HE OR SHE WAS SUBJECT TO EXCESSIVE FORCE.**

2.   Proposed Settlement:

This Notice summarizes a selection of the more significant areas and terms of the proposed Settlement Agreement. For the full details, you may request from Class Counsel, listed below, a copy of the complete Settlement Agreement.

The Settlement Agreement requires DOC to develop and implement many new practices, systems, policies, and procedures designed to reduce violence in the City Jails and ensure the safety and well-being of inmates. Some of the more significant requirements of the Settlement Agreement are as follows:

- Court Oversight and Appointed Monitor: The Settlement Agreement will be subject to the Court's oversight and provides for the appointment of an independent monitor (the "Monitor"), who will be responsible for assessing whether the Defendants comply with the terms of the Settlement Agreement.

- Development of a New Use of Force Policy: DOC will develop, adopt, and implement a comprehensive new use of force policy that will be subject to the Monitor's review and approval. The new policy will set forth explicit prohibitions regarding the use of certain categories of force, and provide correction officers with clear direction on when and how force may be used.

- Robust Requirements for Reporting Use of Force: Correction officers will be required to provide timely and detailed reports on every use of force incident, and will be required to independently prepare these reports. Any collusion in the preparation of use of force reports will result in disciplinary action.

- Complete and Timely Investigations of Use of Force Incidents: DOC will conduct thorough, timely, and objective investigations into use of force incidents to determine whether staff engaged in the excessive or unnecessary use of force or otherwise violated the use of force policy.

- Increased Accountability: DOC will take all necessary steps to impose appropriate and meaningful discipline, up to and including termination, when correction officers engage in the excessive or unnecessary use of force or otherwise violate the use of force policy. DOC will develop and implement disciplinary guidelines that will include the range of penalties to be sought for different categories of violations, which in some serious cases will require seeking termination. DOC will prosecute disciplinary actions as quickly as possible.

- Development of an Early Warning System: DOC will develop a system to identify as soon as possible correction officers whose conduct may warrant corrective actions so such actions can be taken quickly.

- New Use of Force Auditor Position: DOC will designate a Use of Force Auditor who will report directly to the Commissioner or a designated Deputy Commissioner and who will analyze all data relating to use of force incidents and identify trends and patterns. The Use of Force Auditor will make recommendations to the Commissioner on how to reduce the number of use of force incidents and the severity of injuries resulting from these incidents.

- Comprehensive Video Surveillance of Jails: DOC will install sufficient additional wall-mounted video surveillance cameras throughout the City Jails to ensure complete camera coverage of the City Jails, with certain narrow exceptions such as the interior of shower areas and toilet areas. This must be done on a rolling basis and be completed by February 28, 2018.

- Implementation of a Pilot Program for Body-Worn Cameras:  DOC will institute a pilot program involving the use of body-worn cameras by certain correction officers and will assess whether to continue or expand their use after one year.

- Requirements for Use of Handheld Video Cameras:  DOC will develop, adopt, and implement policies and procedures mandating that staff use handheld video cameras to record, among other things, responses to use of force incidents, cell extractions, and most living quarter searches, except when safety or security require a response too fast to allow waiting for a camera.

- Enhanced Computerized Tracking Systems:  DOC will track use of force-related information in a computerized manner and use the data to see if it can improve inmate supervision or oversight of correction officers, and to identify patterns in the use of force by staff that need to be addressed.

- Improved Staff Recruitment and Selection:  DOC will develop a comprehensive staff recruitment program to attract well-qualified applicants, and will employ an objective process to select and hire staff, including appropriate background investigations.

- Enhanced Screening of Supervisors and Special Unit Staff:  Before promoting any correction officer to the position of Captain or higher or assigning an officer to certain special units (*e.g.*, punitive segregation and mental health housing areas), DOC will review the officer's prior use of force history.  The Settlement Agreement prohibits DOC from promoting any officer who has been found guilty, or pleaded guilty, more than once within the preceding five-year period to various delineated disciplinary charges relating to the use of force.

- Review of Assignment of Disciplined Staff:  DOC will review the assignments of correction staff who have been found guilty, or pleaded guilty, more than once during the preceding five-year period to various delineated disciplinary charges relating to the use of force.  DOC will determine whether such staff need to be reassigned.

- Additional Staff Training:  DOC will develop a number of new pre-service and in-service training programs, as well as strengthen and improve existing training programs, addressing a variety of subject matters, including the new use of force policy, crisis intervention and conflict resolution, defensive tactics, cell extractions, and procedures, skills, and techniques for investigating staff use of force incidents.

- Arrests of Inmates:  DOC will recommend the arrest of an inmate in connection with an incident involving staff use of force only if an investigator with the Correction Intelligence Bureau of the Department's Investigation Division has reviewed the circumstances and determined that the recommendation is based on probable cause.

- Inmates Under 19:  The Settlement Agreement also includes numerous provisions specifically addressing Young Inmates, including specific requirements relating to the safety and supervision of Young Inmates and restrictions on the use of punitive segregation.  In addition, DOC and the Mayor's Office of Criminal Justice will make best efforts to identify an alternative site not located on Rikers Island to house inmates under the age of 18.

   3.  Release and Effect of Settlement Agreement:

  The Settlement Agreement, if approved by the Court, will be in effect until the Court finds that the Defendants have achieved substantial compliance with all of its provisions and have maintained such substantial compliance for a period of twenty-four months.  During that time, inmates cannot bring class actions or seek injunctions, declaratory, or equitable relief addressing a pattern and practice of use of force.  The Settlement Agreement does not prevent an inmate from bringing a lawsuit seeking money damages relating to use of force, or from filing or prosecuting a claim on his or her own behalf seeking an injunction tailored to his or her specific circumstances.

   4.  Reasons for Settlement:

  Class Counsel's principal reason for agreeing to the proposed settlement is that they believe that the settlement will bring significant relief to the Class and help address the problem of the use of unnecessary and excessive force by staff in the City Jails.  Class Counsel have taken into account the risk of an unfavorable outcome in litigation (such as losing at trial) and the considerable time – many months or even years – that a trial and possible appeals could take.  Even if the Class Representatives were to win at trial and on appeal, it might result in less relief for the Class than is provided for in the Settlement Agreement.

5.    Opportunity for Objections:

The Settlement Agreement is not final yet.  The Settlement Agreement will only become final if the Court approves it after conducting a Fairness Hearing.  Before the Fairness Hearing there is a time period during which the members of the Class can tell the Court about any objections that they may have to the proposed settlement.  If you are a member of the Class, you have the right to object to the Settlement Agreement or specific parts of it and to submit documents that support your objection.  If you have no objections to the proposed settlement, you do not have to do anything.  Whether or not you object, you will be notified, as a potential Class member, if and when the Settlement Agreement is finally approved by the Court.

Any objections you want to bring to the Court's attention must be submitted in writing to the Court, typewritten or clearly printed.  All objections have to be postmarked by the United States Postal Service by September 4, 2015.  Any objections postmarked after that date will not be considered.

To make sure your objection will be considered, you must include the following information as part of it:

- The name and number of the Action: *Nunez, et al. v. City of New York*, et al., No. 11 Civ. 5845 (LTS) (JCF);
- Your full name and book-and-case number;
- Your objection(s) and the reasons for each objection(s); and
- Your signature.

You should mail your written objections, postmarked no later than September 4, 2015, to the following address:

Christina G. Bucci
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036

6.    Fairness Hearing:

After the deadline for Class members to submit their objections, and after receiving any additional submissions from the parties' counsel in support of the Settlement Agreement (including responses to any Class member objections), the Court will decide whether to approve the Settlement Agreement as being fair, reasonable, and adequate.  As part of making this decision, the Court will hold a Fairness Hearing.  The Fairness Hearing will be held on October 21, 2015, before the Honorable Laura Taylor Swain at the United States District Court for the Southern District of New York.  The Court may adjourn the Fairness Hearing from time to time.

If the Court approves the Settlement Agreement, the Settlement Agreement will go into effect.  This means that after the Court approves the Settlement Agreement, the Defendants will be bound by the Settlement Agreement and must do the things required by the Settlement Agreement.  In addition, the release described in Section 3 above would go into effect.

7.    Questions:

If you are a member of the Class and want a full copy of the Settlement Agreement, or if you have questions about any aspect of the Settlement Agreement or the process related to it, please contact one of the Class Counsel:

| | | |
|---|---|---|
| Legal Aid Society | Emery Celli Brinckerhoff & | Ropes & Gray LLP |
| Prisoners' Rights Project | Abady LLP | William I. Sussman |
| Jonathan S. Chasan | Jonathan S. Abady | Christopher P. Conniff |
| Mary Lynne Werlwas | Zoe Salzman | Christina G. Bucci |
| 199 Water Street, 3rd Floor | 600 Fifth Avenue, 10th Floor | 1211 Avenue of the Americas |
| New York, New York 10038 | New York, NY 10020 | New York, NY  10036 |
| (212) 577-3530 | (212) 763-5000 | (212) 596-9000 |

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO SUR DE NUEVA YORK
------------------------------------------------------------- X
                                                              :
MARK NUNEZ, y otros,                                          :
                                                              :
        Demandantes,                                    :
                                                              :
  - contra -                                                  :
                                                              :  **11 Civ. 5845 (LTS)(JCF)**
CIUDAD DE NUEVA YORK, y otros,                                :
                                                              :
        Demandados.                                     :
                                                              :
------------------------------------------------------------- X
                                                              :
ESTADOS UNIDOS DE AMÉRICA                                     :
                                                              :
        Demandante-Interventor,                         :
                                                              :
  - contra -                                                  :
                                                              :
CIUDAD DE NUEVA YORK y                                        :
DEPARTAMENTO DE CORRECCIÓN DE LA                              :
CIUDAD DE NUEVA YORK                                          :
                                                              :
        Demandados.                                     X
-------------------------------------------------------------

**AVISO DE ACUERDO DE DEMANDA COLECTIVA PROPUESTO**

**PARA:     RECLUSOS BAJO LA CUSTODIA DE LA CIUDAD DE NUEVA YORK DEPARTAMENTO DE CORRECCIÓN**

      Sírvase notificarse que los demandantes en representación propia y del Grupo de la demanda colectiva (según se define más adelante) han alcanzado un acuerdo propuesto con los Demandados en el juicio arriba titulado (la "Demanda colectiva"). El acuerdo propuesto tiene el propósito de otorgar beneficios sustanciales a los miembros del Grupo de la demanda colectiva. Si se aprueba, el acuerdo resolverá todas las reclamaciones por medidas cautelares y declaratorias en la Demanda colectiva.

**SÍRVASE LEER ESTE AVISO ATENTAMENTE. CONTIENE UN <u>RESUMEN</u> DEL ACUERDO DE CONCILIACIÓN PROPUESTO. TAMBIÉN CONTIENE INFORMACIÓN SOBRE CÓMO PLANTEAR OBJECIONES O PREGUNTAS QUE USTED PUDIERA TENER ACERCA DEL ACUERDO PROPUESTO.**

    1.    <u>Descripción del Grupo y de la Demanda colectiva</u>:

      Se define al Grupo como todos los reclusos actuales y futuros confinados en cárceles operadas por el Departamento de corrección (Department of Correction, DOC) de la ciudad de Nueva York ("DOC" o "Departamento"). Los reclusos confinados en los pabellones de las prisiones de Elmhurst y Bellevue no forman parte del Grupo. Las cárceles que confinan a los miembros del Grupo en adelante se denominan "Cárceles de la ciudad".

      El Grupo alega, entre otras cosas, que el personal del DOC emplea una fuerza innecesaria y excesiva contra los reclusos, que el personal de supervisión del DOC y la ciudad de Nueva York tienen una política de permitir, tolerar y alentar a sabiendas esta supuesta mala conducta, y que esta supuesta mala conducta viola la Constitución, las leyes de los Estados Unidos y las leyes del estado de Nueva York.

      Los Demandados en la Demanda colectiva están integrados por la ciudad de Nueva York, el DOC y ciertos oficiales del DOC.

      El 23 de diciembre de 2014, se le permitió a Estados Unidos de América intervenir como demandante en la Demanda colectiva. La Procuraduría de los Estados Unidos para el Distrito Sur de Nueva York y el Departamento de Justicia ya habían conducido una investigación acerca del

trato de reclusos masculinos menores de 19 años ("Reclusos jóvenes") y emitido un informe, habiendo llegado a la conclusión de que dichos reclusos estaban siendo sometidos a condiciones de confinamiento inconstitucionales. En la Demanda colectiva, Estados Unidos alega que los Demandados participaron en un patrón y práctica de: (a) someter a los Reclusos jóvenes al uso excesivo e innecesario de la fuerza; (b) no proteger adecuadamente a los Reclusos jóvenes de la violencia infligida a ellos por otros reclusos; y (c) colocar a los Reclusos jóvenes en una segregación punitiva en una proporción alarmante y por excesivos períodos de tiempo.

Los abogados para el Grupo de la demanda colectiva Demandante, Estados Unidos de América y los Demandados han acordado una Sentencia de consentimiento escrita (el "Acuerdo de conciliación") para resolver las reclamaciones por medidas cautelares y declaratorias en la Demanda colectiva, sujeto a que el Tribunal determine que el acuerdo es justo, razonable y adecuado.

**LA DEMANDA COLECTIVA NO PRETENDE OBTENER RESARCIMIENTO MONETARIO POR DAÑOS Y PERJUICIOS PARA EL GRUPO. LA DEMANDA COLECTIVA Y EL ACUERDO DE CONCILIACIÓN PROPUESTO NO TENDRÁN EFECTO SOBRE LA CAPACIDAD DE LOS RECLUSOS PARA PRESENTAR UNA DEMANDA INDIVIDUAL QUE PROCURE RESARCIMIENTO MONETARIO POR DAÑOS Y PERJUICIOS SOBRE LA ACUSACIÓN DE QUE HAN SIDO OBJETO DE FUERZA EXCESIVA.**

2. <u>Acuerdo propuesto:</u>

Este Aviso resume una selección de las partes y términos más significativos del Acuerdo de conciliación propuesto. Si desea obtener los detalles completos, puede solicitar a los abogados del Grupo que se indican más abajo, una copia del Acuerdo de conciliación completo.

El Acuerdo de conciliación solicita al DOC que desarrolle e implemente muchas prácticas, sistemas, políticas y procedimientos nuevos, diseñados para reducir la violencia en las Cárceles de la ciudad y garantizar la seguridad y bienestar de los reclusos. A continuación se indican algunos de los requerimientos más significativos del Acuerdo de conciliación:

- <u>Supervisión del tribunal y designación de un monitor</u>: El Acuerdo de conciliación estará sujeto a la supervisión del tribunal y dispone la designación de un monitor independiente (el "Monitor"), quien será responsable de evaluar si los Demandados cumplen con los términos del Acuerdo de conciliación.

- <u>Desarrollo de una nueva política para el empleo de la fuerza</u>: El DOC desarrollará, adoptará e implementará una amplia política nueva sobre el empleo de la fuerza, que estará sujeta a la revisión y aprobación del Monitor. La nueva política establecerá prohibiciones explícitas con respecto al empleo de ciertas categorías de la fuerza, y les proporcionará a los oficiales de corrección directivas claras acerca de cuándo y cómo emplear la fuerza.

- <u>Sólidos requisitos para informar acerca del empleo de la fuerza</u>: Los oficiales de corrección deberán entregar informes detallados puntualmente sobre cada incidente relacionado con el empleo de la fuerza, y deberán prepararlos de forma independiente. Toda colusión al preparar los informes sobre el empleo de la fuerza dará lugar a una acción disciplinaria.

- <u>Investigaciones completas y puntuales de los incidentes sobre el empleo de la fuerza</u>: El DOC deberá llevar a cabo investigaciones profundas, puntuales y objetivas sobre los incidentes relacionados con el empleo de la fuerza, para determinar si el personal que intervino en el empleo excesivo o innecesario de la fuerza o de otra manera violó la política sobre el empleo de la fuerza.

- <u>Aumento de la responsabilidad</u>: El DOC tomará todas las medidas que sean necesarias para imponer una disciplina adecuada y significativa, hasta e incluida la desvinculación, cuando los oficiales de corrección participen del empleo excesivo o innecesario de la fuerza o, en su defecto, violen la política sobre el empleo de la fuerza. El DOC desarrollará e implementará pautas disciplinarias que incluyan una gama de sanciones para diferentes categorías de violaciones, las cuales en algunos casos graves exigirán la desvinculación. El DOC procesará las acciones disciplinarias lo antes posible.

- <u>Desarrollo de un sistema de advertencia anticipado</u>: El DOC desarrollará un sistema para identificar lo antes posible a los oficiales de corrección cuya conducta podría justificar medidas correctivas, de modo tal que dichas medidas puedan tomarse rápidamente.

- <u>Nuevo cargo de auditor para el empleo de la fuerza</u>: El DOC designará a un auditor para el empleo de la fuerza, quien dependerá directamente del Comisionado o del Comisionado

adjunto designado, y quien analizará todos los datos relacionados con incidentes sobre el empleo de la fuerza e identificará tendencias y patrones. El auditor para el empleo de la fuerza hará recomendaciones al Comisionado sobre cómo reducir la cantidad de incidentes relacionados con el empleo de la fuerza y la gravedad de las lesiones provocadas por estos incidentes.

- Amplia vigilancia por video en las cárceles: El DOC instalará la cantidad adicional suficiente de videocámaras de vigilancia montadas en las paredes, en todas las Cárceles de la ciudad, a fin de garantizar la completa cobertura por cámaras de las Cárceles de la ciudad, con ciertas estrechas excepciones, como el interior de las zonas de duchas y baños. Esto deberá realizarse de manera escalonada y completarse para el 28 de febrero de 2018.

- Implementación de un programa piloto para llevar cámaras en el cuerpo: El DOC instituirá un programa piloto que incluya el uso de cámaras en el cuerpo por parte de ciertos oficiales de corrección y evaluará la posibilidad de continuar o expandir su uso al cabo de un año.

- Requisitos para el uso de videocámaras de mano: El DOC desarrollará, adoptará e implementará políticas y procedimientos que le exijan al personal el uso de videocámaras de mano, a fin de grabar, entre otras cosas, las respuestas a los incidentes por el empleo de la fuerza, extracciones de las celdas y la mayoría de las requisas de celdas, salvo cuando la seguridad requiera una respuesta demasiado rápida que no permita esperar una cámara.

- Sistemas mejorados de rastreo computarizado: El DOC rastreará la información relacionada con el empleo de la fuerza de manera computarizada y utilizará los datos para ver si se puede mejorar la vigilancia de los reclusos o la supervisión de los oficiales de corrección, y para identificar aquellos patrones en el empleo de la fuerza por parte del personal, que deban ser tratados.

- Mejora en el reclutamiento y selección del personal: El DOC desarrollará un amplio programa de reclutamiento de personal para atraer a postulantes bien calificados, y empleará un proceso objetivo para seleccionar y contratar al personal, incluyendo la apropiada investigación de antecedentes.

- Mejora en la evaluación de supervisores y personal de las unidades especiales: Antes de ascender a un oficial de corrección al cargo de capitán o superior, o de asignar a un oficial a ciertas unidades especiales (*por ejemplo*, áreas de segregación punitiva y alojamiento de salud mental), el DOC evaluará el historial previo sobre el empleo de la fuerza del oficial. El Acuerdo de conciliación prohíbe que el DOC ascienda a un oficial que haya sido hallado culpable o se haya declarado culpable, más de una vez dentro del período precedente de cinco años, de diversos cargos disciplinarios relacionados con el empleo de la fuerza.

- Evaluación de asignación de personal con sanciones disciplinarias: El DOC evaluará las asignaciones del personal de corrección que haya sido hallado culpable, o declarado culpable, más de una vez en el período precedente de cinco años, de diversos cargos disciplinarios relacionados con el empleo de la fuerza. El DOC determinará si dicho personal debe ser reasignado.

- Capacitación adicional del personal: El DOC desarrollará una cantidad de programas de capacitación previos al servicio y durante el servicio; asimismo, fortalecerá y mejorará los programas de capacitación existentes, abordando una variedad de temas, incluida la nueva política sobre el empleo de la fuerza, intervención en las crisis y resolución de conflictos, tácticas defensivas, extracciones de las celdas, y procedimientos, habilidades y técnicas para investigar los incidentes relacionados con el empleo de la fuerza por parte del personal.

- Detenciones de los reclusos: El DOC recomendará la detención de un recluso en relación con un incidente que involucre el empleo de la fuerza por parte del personal, únicamente si un investigador de la Oficina de inteligencia de corrección (Correction Intelligence Bureau) de la División de investigación del Departamento ha analizado las circunstancias y determinado que la recomendación se basa en una causa probable.

- Reclusos menores de 19 años: El Acuerdo de conciliación también incluye numerosas disposiciones que se ocupan específicamente de los Reclusos jóvenes, incluyendo determinados requisitos relacionados con la seguridad y supervisión de los Reclusos jóvenes, y las restricciones sobre el empleo de segregación punitiva. Asimismo, el DOC y la Oficina de Justicia Penal del Alcalde tomarán todas las medidas que estén a su alcance para identificar un lugar alternativo que no esté ubicado en la isla de Rikers, a fin de albergar a los reclusos menores de 18 años de edad.

3. <u>Liberación y efecto del Acuerdo de conciliación</u>:

El Acuerdo de conciliación, si es aprobado por el tribunal, tendrá vigencia hasta que el tribunal decida que los Demandados han alcanzado un cumplimiento sustancial de todas sus disposiciones y han mantenido dicho cumplimiento sustancial durante un período de veinticuatro meses. Durante ese período, los reclusos no podrán anteponer demandas colectivas ni procurar medidas cautelares, declaratorias o equitativas que se refieran a un patrón o práctica de empleo de la fuerza. El Acuerdo de conciliación no impide que un recluso entable una demanda para procurar un resarcimiento monetario por daños y perjuicios con respecto al uso de la fuerza, o para presentar o entablar una demanda en su propio nombre que procure una medida cautelar elaborada especialmente para sus circunstancias específicas.

4. <u>Razones para aceptar el Acuerdo:</u>

La razón principal de los abogados del Grupo para aceptar el acuerdo propuesto es que creen que este traerá un alivio significativo al Grupo y ayudará a tratar el problema del empleo de la fuerza innecesaria o excesiva por parte del personal en las Cárceles de la ciudad. Los abogados del Grupo han tomado en cuenta el riesgo de un resultado desfavorable en el litigio (como perder un juicio) y el tiempo considerable –muchos meses o incluso años– que tardaría un juicio y las posibles apelaciones. Aun cuando los Representantes del Grupo ganaran en el juicio y la apelación, podría dar lugar a una reparación judicial inferior para el Grupo de la que se dispone en el Acuerdo de conciliación.

5. <u>Oportunidad para objetar:</u>

El Acuerdo de conciliación no es definitivo todavía. Solo se convertirá en definitivo si el tribunal lo aprueba después de celebrar la Audiencia de imparcialidad. Antes de la Audiencia de imparcialidad hay un período de tiempo durante el cual los miembros del Grupo pueden expresarles al tribunal las objeciones que pudieran tener con respecto al acuerdo propuesto. Si usted es miembro del Grupo, tiene derecho a objetar el Acuerdo de conciliación o algunas de sus partes específicas y presentar la documentación que respalde su objeción. Si no tiene objeciones al acuerdo propuesto, no tiene que hacer nada. Aunque objete o no, usted será notificado como posible miembro del Grupo, solo y cuando el tribunal apruebe definitivamente el Acuerdo de conciliación.

Las objeciones que usted desea señalar ante el tribunal deberá presentárselas por escrito, ya sea a máquina o impresas con claridad. Todas las objeciones deben estar fechadas con el sello postal del Correo de los Estados Unidos a más tardar el Septiembre 4 de 2015. Las objeciones con el sello postal posterior a esa fecha <u>no</u> serán consideradas.

Para garantizar que su objeción sea considerada, deberá incluir la siguiente información como parte de ella:

- Nombre y número de la Demanda colectiva: *Nunez, et al. v. City of New York*, et al., No. 11 Civ. 5845 (LTS) (JCF);
- su nombre completo y número de tomo y caso;
- sus objeciones y las razones de cada una de ellas; y
- su firma.

Deberá enviar por correo sus objeciones escritas, con el sello postal no posterior al Septiembre 4 de 2015, al siguiente domicilio:

Christina G. Bucci
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

6. <u>Audiencia de imparcialidad:</u>

Después de la fecha límite para que los miembros del Grupo presenten sus objeciones y después de recibir las presentaciones adicionales de los abogados de las partes en respaldo al Acuerdo de conciliación (incluidas las respuestas a las objeciones de los miembros del Grupo), el tribunal decidirá si aprueba el Acuerdo de conciliación por ser justo, razonable y adecuado. Como parte de la toma de su decisión, el tribunal celebrará una Audiencia de imparcialidad. Esta se llevará a cabo el 21 de Octubre de 2015 a las 2 pm, ante Su Señoría Laura Taylor Swain en el Tribunal de Distrito de los Estados Unidos para el Distrito Sur de Nueva York. El tribunal podrá levantar la Audiencia de imparcialidad periódicamente.

Si el tribunal aprueba el Acuerdo de conciliación, este entrará en vigencia. Esto significa que después de que el tribunal apruebe el Acuerdo de conciliación, los Demandados estarán obligados por él y deberán hacer lo que el Acuerdo de conciliación les indique. Asimismo, la liberación descripta en la sección 3 más arriba también entraría en vigencia.

7. Preguntas:

Si usted es miembro del Grupo y quiere conseguir una copia completa del Acuerdo de conciliación o si tiene preguntas sobre algún aspecto del Acuerdo de conciliación o del proceso relacionado con él, sírvase contactarse con alguno de los abogados del grupo:

| | | |
|---|---|---|
| Legal Aid Society (Sociedad de asistencia legal) Prisoners' Rights Project (Proyecto sobre derechos de los prisioneros) Jonathan S. Chasan Mary Lynne Werlwas 199 Water Street, 3rd Floor New York, New York 10038 (212) 577-3530 | Emery Celli Brinckerhoff & Abady LLP Jonathan S. Abady Zoe Salzman 600 Fifth Avenue, 10th Floor New York, NY 10020 (212) 763-5000 | Ropes & Gray LLP William I. Sussman Christopher P. Conniff Christina G. Bucci 1211 Avenue of the Americas New York, NY 10036 (212) 596-9000 |