F794NunC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARK NUNEZ, et al.,

4                  Plaintiffs,

5            v.                          11 CV 5845 (LTS)

6

    CITY OF NEW YORK, et al.,
7
                   Defendants.
8
    ------------------------------x
9                                        New York, N.Y.
                                         July 9, 2015
10                                       11:00 a.m.

11  Before:

12                    HON. LAURA TAYLOR SWAIN,

13                                       District Judge

14                          APPEARANCES

15  LEGAL AID SOCIETY
         Attorneys for Plaintiffs
16  BY:  JONATHAN S. CHASAN
    -and-
17  ROSE & GRAY
         Attorneys for Plaintiffs
18  BY:  CHRISTINA G. BUCCI
         ANNA E. FRIEDBERG
19       PAUL KELLOGG
    -and-
20  U.S. DEPARTMENT OF JUSTICE
         Attorneys for Plaintiffs
21  BY:  JEFFREY POWELL
         LARA K. ESHKENAZI
22  -and-
    EMERY CELLI BRINCKERHOFF & ABADY LLP
23       Attorneys for Plaintiffs
    BY:  JONATHAN S. ABADY
24

25  (Appearances continued on next page)

F794NunC

1    APPEARANCES (continued)

2    NEW YORK CITY LAW DEPARTMENT
          Attorneys for Defendants
3    BY:  ARTHUR G, LARKIN, III
          CELESTE KOELEVELD
4         KIMBERLY JOYCE
          KATHLEEN RUBENSTINE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

F794NunC

```
1              (In open court)

2              THE COURT:  Kindly introduce yourselves.

3              MR. POWELL:  Jeffrey Powell, at the U.S. Attorney's

4    Office, for the government, your Honor.

5              THE COURT:  Good morning, Mr. Powell.

6              MR. POWELL:  Good morning, your Honor.

7              MS. FRIEDBERG:  Anna Frieberg, from Ropes & Gray, on

8    behalf of the plaintiff class.

9              THE COURT:  Good morning, Ms. Frieberg.

10             MS. FRIEDBERG:  Good morning.

11             MS. KOELEVELD:  Celeste Koeleveld, on behalf of the

12   defendants, from the Law Department.

13             THE COURT:  Good morning, Ms. Koeleveld.

14             MR. LARKIN:  Arthur Larkin, for the City of New York,

15   the defendants.  Good morning, your Honor.

16             THE COURT:  Good morning, Mr. Larkin.

17             Thank you.  I thank you for responding to my notice of

18   this conference, and good morning to your colleagues and

19   everyone else who is here.

20             I want to thank and congratulate all of you for the

21   work that it has taken to bring us to this place and set the

22   groundwork for a future of constructive change.

23             Having said that, I did have some specific concerns

24   about a couple of features of the settlement agreement and of

25   the mechanics for the settlement approval process that I
```

F794NunC

1    thought it would be useful to talk about together rather than

2    try to correspond about them.

3            I will start with a small housekeeping issue and then

4    go on to a couple of other issues that are a little bit bigger.

5    The housekeeping issue is this:  With respect to the receipt

6    and processing of any objections to the settlement, the notice

7    as currently drafted contemplates that any objections by

8    inmates or others would be addressed to me.  I, frankly, don't

9    have the capacity to make sure that something coming into the

10   Court's mail room gets scanned carefully enough to figure out

11   whether the case numbers are referred to somewhere in the body

12   of the letter and it goes off to somebody else's chambers.

13   Typically, what I do in any sort of class objection or opt-out

14   situation is ask that one of the plaintiff's attorney's law

15   firm take responsibility for receiving any objections and then

16   filing all the objections received timely in one lump with an

17   index listing, the names of the objectors, and that is usually

18   done contemporaneously with the advocacy filing that responds

19   to the objections, and then if any were received on an untimely

20   basis, those should be filed separately with a list indicating

21   that they were untimely.

22           Are plaintiff's counsel willing to take on that

23   responsibility?

24           MS. FRIEDBERG:  Yes, your Honor.  We will revise the

25   notice to have Ropes & Gray do that.

F794NunC

1          I should just note, though, that with respect to the

2     objections, there is also an obligation under CAFA to notify

3     all of the attorneys for the defendants, to notify all of the

4     attorney generals.  They have offered that should the attorney

5     generals have any responses that they would collect those and

6     maintain those, and I assume it will be fine.

7          MR. LARKIN:  Yes, your Honor.  The defendants will

8     assume responsibility for providing notice to the 50 state

9     attorneys general under the Class Action Fairness Act.  And our

10     communications with them, the notice that we provide, will

11     indicate that they should send their objections to us, to the

12     Corporation Counsel's Office.  We will take responsibility for

13     that.  We will provide copies of any objections that we get

14     both to the Court and to plaintiffs.

15          THE COURT:  Very good.

16          Similarly, if you are going to respond to objections

17     by way of advocacy, then that will be included and

18     cross-referenced in your filing in aid of final approval?

19          MR. LARKIN:  Yes, your Honor.  Absolutely.

20          THE COURT:  Thank you.

21          Now, a little more substantively as to the obligations

22     of the parties and the Court under the PLRA; specifically,

23     Title 18, Section 3626.  The Court does have to make specific

24     findings with respect to a consent decree of this nature.  I

25     see and appreciate the stipulation within the settlement

F794NunC

1     agreement that all of the requirements of that provision are

2     met, but that's not sufficient to enable the Court to carry out

3     the Court's duties in terms of findings, and so it seemed to me

4     that an appropriate way to address this would be for an

5     official of the Department of Corrections to file, in support

6     of the request for final approval, a declaration or affidavit

7     that would assist the Court in making its determinations.  So,

8     for instance, to lay out in, not painful detail, but more

9     detail, the current state of affairs, the relationship between

10     the proposed new measures and measures already in place and

11     measures that are consistent with law enforcement and

12     penological priorities and assuring the Court that the proposed

13     changes and the ways in which those changes are proposed to be

14     made are the least intrusive means of achieving the goals of

15     upholding public safety and the safety and constitutional

16     rights of the inmates.

17           It would also, I think, be helpful and responsive to

18     the statutory concerns for such an affidavit to identify any

19     potential adverse impact on public safety or affirmatively to

20     state that these measures will not have an adverse impact on

21     public safety or the operation of the criminal justice system

22     or perhaps even say these will have a positive impact on public

23     safety and the operation of the criminal justice system.

24           I am sensitive to the defendants' concern about

25     potential use of the settlement agreement or an affidavit in

F794NunC

1    future litigation, and so I wouldn't be surprised if you were

2    to include some sort of stipulation about limited purpose of

3    the affidavit, but I do need a declaration by someone with

4    knowledge of the system who can assure me that it is

5    appropriate for me to make the findings that I'm required to

6    make by law.

7            Is there any objection to that conceptually, and will

8    you undertake to do that?

9            MS. KOELEVELD:  Your Honor, on that issue, looking at

10   your Honor's order, we anticipated this might be one of your

11   concerns.  There are other examples that we're aware of of

12   consent decrees that the Department of Justice has entered

13   into, for example, in other cases where the stipulation that we

14   have in the consent decree, that the PLRA findings can be made

15   based on the stipulation.  But there are other decrees where

16   that has been sufficient and the Court has made the necessary

17   findings based on the stipulation.  So we had anticipated that

18   that would be the basis for the finding, that the stipulation

19   alone would be sufficient, and what I'm hearing you say is that

20   you don't believe that it would be and that you will require

21   more?

22           THE COURT:  Yes.

23           MS. KOELEVELD:  I hear one way of doing it would be

24   your Honor's proposal of having a Department of Corrections

25   official submit the necessary paperwork.  I would like to

F794NunC

1    discuss it with the plaintiffs and talk it over with them,

2    about what we all would recommend with response to your Honor's

3    suggestion, either we will proceed that way or perhaps an

4    alternative way that would also get the job done.  If that

5    would be okay with your Honor, we would like to discuss it with

6    them first.

7         THE COURT:  That would be fine.  I will look forward

8    to your feedback and either agreement or counter proposal.  But

9    on the current record and my understanding of my obligations

10   and my understanding of the law, I do want more to support a

11   finding by the Court.

12        MS. KOELEVELD:  Okay.

13        MR. POWELL:  Your Honor, just to clarify one point,

14   you're talking about the ultimate final approval; not with

15   respect to the preliminary approval, but with respect to after

16   the fairness hearing and your final approval, you will want

17   some evidentiary submission?

18        THE COURT:  Yes.  Actually, let's go back to

19   housekeeping for a minute.  What I would like to have is, in

20   advance of the fairness hearing, at least a week, preferably

21   two weeks in advance of the fairness hearing, a motion for

22   final approval that would include the supplemental declaration,

23   responses to any objections that have been filed, and any

24   further advocacy that is considered necessary or appropriate to

25   the issue of final approval.

F794NunC

1          I do note that the factual representations concerning

2     the negotiation process and the involvement of the monitor are

3     covered in the declaration that was submitted, the attorney's

4     declaration that was submitted in support of the preliminary

5     approval motion.  I would like to have, with the final approval

6     motion papers, a CV of the monitor, his experiences generally

7     described in the attorney's affidavit, but since I will be

8     approving the appointment as part of approving the settlement,

9     I think a CV or at least an abstract of the high points of his

10    CV would be an appropriate matter to put on the record in that

11    fashion.  So when we talk about the projected fairness hearing

12    date, let's build in time for that briefing in advance of the

13    fairness hearing.

14          MR. POWELL:  Your Honor, in our proposed order,

15    subject to your Honor's schedule, we had set forth a proposed

16    schedule for a deadline of written objections by September 4th,

17    and then our responses, which certainly will include the items

18    by October 2nd, we were hopeful that we could have a fairness

19    hearing shortly afterwards.  As you know and the Court is

20    aware, the government feels that the reforms set forth in the

21    agreement will have a tremendous impact on the safety of

22    inmates, and we want to do everything we can to move the

23    approval process forward and get those reforms implemented as

24    soon as possible.

25          THE COURT:  Yes.  The 9th could be a little tight

F794NunC

1   depending on the additional papers filed and the volume of

2   objections, if any.  The 16th I'm not available, but we could

3   do it early in the week that follows the 16th.  We can do it

4   anytime in that week, I suspect, and we can look at my

5   calendar.

6         Ms. Ng, let me know if there is anything in the week

7   after the 16th that would preclude use of a particular day, and

8   then we can pick a day in that week if that would be acceptable

9   to everyone.

10        MR. LARKIN:  That would be the week following

11  October 16th but not that Monday?

12        THE COURT:  The week that ends with the 23rd.  We

13  could probably do it on the 23rd, or we could do it earlier in

14  that week.

15        MS. FRIEDBERG:  I think October 19th is the Monday.

16        THE COURT:  I suspect October 19th is the Monday.

17  That would make sense that that week would then end with the

18  23rd.  I know that the 16th is the Friday.

19        Shall we aim, say, for Wednesday of that week?

20        MR. POWELL:  That's fine, your Honor, October 21st.

21        THE COURT:  Can we do October 21st, at 2 in the

22  afternoon?

23        MS. FRIEDBERG:  Yes.

24        THE COURT:  So the additional filings, including the

25  responses to objections and the filing of the collated

F794NunC

1    objections, would be on October 2nd.

2              MR. POWELL:  Yes, your Honor.

3              THE COURT:  I wanted to check with you on two

4    analytical matters that I don't think are specifically

5    addressed in the preliminary approval brief.  One is whether

6    the termination of relief restrictions in subsection (b) of

7    3626(b), which deal with prospective relief, would apply to a

8    consent decree, or whether a consent decree only needs to

9    comply with the findings provisions of subsection (a) of the

10   statute.

11             MR. POWELL:  I think our view, the government's view,

12   is that the applicable standard for approving the consent

13   decree that is being entered is set forth in 3626(a)(1) that

14   needs narrowness and intrusiveness kind of three-prong test.

15   Our understanding is Section (b) deals with instances where a

16   party might want to terminate existing relief and the types of

17   findings that need to be made to justify continuing a consent

18   decree, so after one is already in place, I believe.

19             THE COURT:  And so you don't believe that an order, be

20   it a consent decree or otherwise, incorporating prospective

21   relief needs specifically to address the timing and mechanisms

22   that are set out in (b); that those could simply be invoked not

23   withstanding, for instance, the provisions of this proposed

24   consent decree that provide that it would not be terminable

25   unless there have been two years of full compliance as attested

F794NunC

1    to by the monitor?

2           MR. POWELL:  There is a termination provision that

3    your Honor is referring to in the agreement, our view is that

4    would be the applicable termination provision; that I think as

5    far as findings for the Court in approving the settlement, I

6    think it is 3626(a)(1).  3626(b) deals with the other instances

7    where parties coming in to terminate an existing consent decree

8    that might be silent to a termination provision.

9           THE COURT:  I am sure that I didn't ask my question

10   clearly enough.

11          So is it your belief that the provision in the consent

12   decree with regard to timing and mechanisms for termination

13   would supersede the statutory provisions in 3626(b), or that

14   the 3626(b) mechanisms don't apply to a consent decree as

15   opposed to some other sort of imposed order for prospective

16   relief, or (c) that 3626(b) could still be invoked by a party

17   or intervenor notwithstanding the termination provision in the

18   consent decree?

19          MR. POWELL:  The government's view is I think we first

20   indicated option (a) is that the agreed-upon termination

21   provision in the consent judgment would govern and supersedes

22   any other potential form of terminating the relief in the

23   statute, that that is a negotiated provision, and the agreement

24   would terminate if the conditions set forth in the agreement

25   are met.

F794NunC

1          MS. KOELEVELD:  Your Honor.

2          THE COURT:  Ms. Koeleveld.

3          MS. KOELEVELD:  Yes.  The City's position is that it

4    is possibly option (c) that applies of the three that your

5    Honor just listed.

6          THE COURT:  I forget how I set them out.

7          MS. KOELEVELD:  Option C was -- and I believe this was

8    potentially an open question -- but that the termination

9    provisions of 1326(b) of a party or a non-party to terminate

10   the decree at some point, that those are not erased or

11   superseded or completely eliminated by the termination

12   provision in the, agreement.

13         THE COURT:  I do note that (b) doesn't include any

14   qualifier such as unless otherwise ordered by the court.  I

15   thought that the parties' positions might have to do with some

16   construction of the words in which prospective relief is

17   ordered and some distinction of prospective relief from the

18   provisions of the consent decree.  In order for me to make my

19   fairness determination, I think it will be appropriate for the

20   precis of final approval to address the parties' positions with

21   respect to the relationship between the consent decree's

22   termination provision and subsection (b), whether if it is not

23   applicable or that it still could be invoked or that it will be

24   overridden, and I will take those positions into account in

25   making my ultimate fairness determination.  The uncertainty

F794NunC

1    doesn't give me pause about preliminary approval, but I do need

2    to be able to understand more thoroughly the positions of the

3    parties, particularly if they differ, and this will also be an

4    appropriate occasion for you to talk about your respective

5    positions since they do appear to differ at this point.

6              Is it your understanding that the monitoring

7    provisions of the agreement are not covered by the special

8    master provisions of 3626(f)?

9              MR. POWELL:  I think our view is that that is an

10   option for a Court in this type of agreement to appoint a

11   special master, but as the provision says, the Court may

12   appoint a special master, but it is not required here.  We have

13   agreed to an independent outside monitor, and we wouldn't see a

14   need, at least from our perspective, to appoint a special

15   master at least at this point.

16             THE COURT:  To put it another way, it is your view

17   that because the responsibilities and the authority assigned to

18   the monitor under the consent decree are not within the scope

19   of the sorts of responsibilities and authority of a special

20   master as described in 3626(f), the monitor position should not

21   be construed as a special master provision that's subject to

22   that subsection of the statute?

23             MR. POWELL:  I think our view is that the roles and

24   responsibility of the independent court monitor are as they are

25   set forth in the agreement, and that defines his role, the

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

F794NunC

1    scope of his authority, and his responsibilities, and it is a

2    different beast than a special master, and we don't see the

3    need for a special master given we have an appointed monitor.

4    I will defer to the City, but that is our view.

5         MR. LARKIN:  Your Honor, I believe what Mr. Powell

6    just said is correct under the case law that interprets and

7    applies to the PLRA, but we will take a fresh look at it before

8    we submit papers, and if your Honor permits, we will address

9    that issue in the papers, as well.

10        THE COURT:  I would be grateful.  To be clear, I'm not

11   suggesting that there is a need for an appointment of a special

12   master as described in 3626(f) in addition to or instead of the

13   monitor, but in complying with the Court's responsibility to

14   ensure that all mandatory provisions of 3626 are complied with,

15   it is necessary for the Court to have thought through whether

16   the monitor is somehow a special master and for the parties to

17   address that issue, that the applicability or not of 3626(f) in

18   the final submissions would be helpful in closing that loop.

19        MR. POWELL:  We're happy to do that.  It is our

20   understanding when the Department of Justice has entered many

21   of these types of agreements, consent judgments with different

22   entities and locations and municipalities, that typically if

23   there is a monitor, my understanding is there is not an

24   additional person who is a special master, but we will confer

25   with them again and address that point in any submission.

F794NunC

1            THE COURT:  Thank you.

2            The statute doesn't seem to me to require a special

3    master under any circumstances.  It is just whether those

4    requirements would somehow superimpose themselves on the

5    appointment and tenure of the monitor.  A logical answer to

6    that at this point without having fully done the research would

7    seem to me to be that no, it doesn't superimpose, but that's a

8    portion of the analytical loop that still needs to be closed,

9    and I would be grateful for your help with that.

10            Now, the final set of questions that I have, have to

11    do with the expansion of the certified class.  It is sort of

12    two or three sets of concerns.  One is I would like to confirm

13    my understanding of which facilities are currently covered by

14    consent decrees and how you propose mechanically to get the

15    other consent decrees withdrawn or modified since at least a

16    couple of them are in close cases that are currently on the

17    books of the court assigned to judges that have passed on.  Do

18    we need to get those reopened and reassigned?  Were you

19    planning to make applications to the judges for a conditional

20    modification so that if this agreement gets final approval,

21    then those would automatically drop back or whether that is

22    something that you intended to do after the final approval

23    here.  And I did my best to match up the agreements that were

24    identified to the facilities named, and I wasn't entirely

25    successful on that one.  I saw a consent decree in Reynolds v.

F794NunC

```
1    Ward that specifically deals with the Bellevue prison ward.  I

2    didn't see anything dealing specifically with Elmhurst.

3            MR. CHASAN:  Reynolds deals with both Bellevue and

4    Elmhurst, but it is not part of this case.

5            MS. FRIEDBERG:  Your Honor, I'm happy to give you

6    background to help explain this, and I am going to rely on the

7    City, who has actually been working with us, to sort of fold in

8    another matter that is not directly related to Nunez but

9    tangentially involved, and that is that the way the class was

10   defined in this case was, for all intents and purposes, all

11   facilities that are managed by the New York City Department of

12   Corrections with the exception of three:  Eric M. Taylor, which

13   is governed by consent decree under the lawsuit Fisher v.

14   Koehler.  We have two additional facilities, both Bellevue and

15   Elmhurst.  Those were excluded from this lawsuit as a result of

16   other cases such as Reynolds v. Ward.  The expansion of the

17   class definition does not contemplate including Bellevue or

18   Elmhurst into the class.  It only contemplates adding in Eric

19   M. Taylor.  The process upon which we are going to work through

20   this -- as you noted, the case Fisher v. Koehler is quite old

21   and in fact we think probably has now been assigned to Judge

22   Preska -- but while we're still negotiating with the City -- I

23   shouldn't say "we" -- my colleagues at Legal Aid who are

24   counsel in Fisher are negotiating how they will reach out to

25   Judge Preska, but my understanding is they will reach out to
```

F794NunC

1    her by letter once we receive preliminary approval on this

2    agreement, and that portions of the consent decree in Fisher

3    that sort of overlap with what is in Nunez would ultimately be

4    sidelined or I guess omitted from that consent decree to allow

5    Nunez to govern.  However, the issues in Fisher v. Koehler that

6    are not specifically addressed in this case would remain active

7    in the Fisher v. Koehler lawsuit.

8          THE COURT:  In our ECF system, that is still shown as

9    assigned to Judge Lasker and Magistrate Judge Bernikow.

10         MS. FRIEDBERG:  We noticed the same thing last week.

11   Our anticipation is probably that it would go to Judge Preska

12   on an initial basis.

13         THE COURT:  Yes.  I think Judge Preska is the safety

14   net for all orphaned cases, and then sometimes they're rolled

15   out to another judge.

16         Is Sheppard v. Phoenix the case dealing with the

17   central -- actually, the central punitive segregation unit

18   stipulation seems to have been terminated in 2002.

19         MS. FRIEDBERG:  It was, correct.  Sheppard was the

20   precursor to the lawsuit here today.

21         THE COURT:  Thank you for reassuring me that you

22   already have that in hand as part of the game plan here.

23         All right.  So, then, we go to the scope of the

24   release.  The expanded class includes not only present but all

25   future inmates in these facilities, and the release provision

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

F794NunC

1    precludes, it seems to me, any applications for systemic relief

2    by future inmates as well as current inmates.  It is written in

3    terms of such relief based on the facts and circumstances

4    alleged in the second amended class action complaint, which

5    does seem to be confined to excessive force type conditions of

6    confinement claims.

7         Am I correct that that is the parties' intention with

8    respect to limitations of future impact litigation concerning

9    the city jails, that it would be in relation to excessive force

10   claims?

11        MS. FRIEDBERG:  Correct.  That is a very shorthanded

12   way, but that is plaintiffs' counsel's intention.

13        MR. LARKIN:  That is our view, as well.  I think the

14   second amended complaint includes many categories of

15   allegations, but they all relate to the use of force.  There

16   are allegations on training investigations, etc., but

17   ultimately the constitutional violation alleged is the use of

18   excessive force by staff against inmates.

19        THE COURT:  Thank you.

20        And although there is a provision for termination of

21   the agreement and of the monitoring, I don't see any specific

22   provision addressing termination of the debarment of future

23   inmates from impact litigation even concerning excessive force

24   issues, and so I would be grateful if you could explain to me

25   how the agreement is expected to work in terms of the release

F794NunC

 1     and prohibitions as to future inmates.

 2             MR. LARKIN:  Your Honor, I think briefly, if I

 3     understand your Honor's question, the agreement will include

 4     prospective relief, and inmates who are admitted to the jails

 5     will be part of the class and will benefit from the prospect of

 6     release.  Those inmates during the term in which prospective

 7     release is in force will not be able to bring lawsuits against

 8     the Department of Corrections seeking equitable relief for

 9     excessive force.  Once prospective relief terminates, though,

10     future inmates won't be bound by this release because the

11     release is based on claims that were asserted in the second

12     amended complaint, and those claims are for alleged

13     constitutional violations that occurred during a certain period

14     of time.  So once prospective relief expires or is terminated

15     under this agreement, if a future inmate believes that he or

16     she has been subjected to excessive force and believes that

17     another class action is necessary, then that future inmate

18     would not be barred from bringing a new class action based on

19     new factual allegations arising after prospective relief

20     terminates.

21             THE COURT:  So is prospective relief understood to

22     terminate at the time that two years of compliance with the new

23     measures is certified and the monitoring is terminated, or in

24     some other way?

25             MR. LARKIN:  It could be the former, or as

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

F794NunC

1   Ms. Koeleveld mentioned, it could be the latter, and we're

2   going to look closely at the case law once again regarding

3   3626(b).  But however prospective relief terminates, once it is

4   terminated and once the monitoring terminates, at that point, a

5   future inmate would not be bound by this release and could

6   bring an action on behalf of a new class.

7        MS. FRIEDBERG:  Your Honor, plaintiffs' counsel has

8   the same view, that once the agreement is terminated, while

9   sort of bracketing the issue of how the agreement gets

10  terminated, either under the provisions of the agreement or

11  perhaps under the statute, ultimately once the agreement is

12  terminated, our position is then the release, too, would end.

13  It would be part and parcel with the termination of the

14  agreement.

15       THE COURT:  So I ask you to think about clarifying

16  that, the provision in Section XXIII certainly doesn't say that

17  in explicit terms and seems to read more broadly.  It says, as

18  of the effective date, all members of the plaintiff class,

19  which would of course include future inmates, hereby release

20  and waive any and all claims for and all rights to pursue,

21  initiate, prosecute, or commence any and all causes of action

22  for class-wide injunctive and declaratory relief based on the

23  claims that were asserted in the second amended complaint.  The

24  second amended complaint deals with the past history of issues

25  and noncompliance and past efforts and allegations of

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

F794NunC

1    noncompliance with past court orders.  It doesn't seem

2    inherently limited in time to incidents or practices occurring

3    within a particular time frame.  So it may be as simple as an

4    agreement that when the future claims are released for any

5    period during which the agreement, the consent decree remains

6    in effect or something like that, but I don't see that sort of

7    limitation in the document at this point, and that does give me

8    concern in terms of approval of the document as written, final

9    approval of the document as written, is fair.

10        MS. FRIEDBERG:  Sure.  Your Honor, just to maybe help

11    assuage your mind here, I wanted to direct you to the class

12    notice where we do give a short summary of the release and the

13    effect of it on page 3 of the notice, paragraph 3.  It

14    essentially articulates what Mr. Larkin and I just described in

15    terms of the length of time upon which the release lasts.  And

16    so while I agree that for final approval we may want to review

17    the release and make sure the agreement itself is clear, I

18    think at least for the purposes of providing notice to the

19    class, the description here is consistent with what we've

20    described and hopefully what you would feel comfortable with in

21    terms of an agreement on the longevity of the release.

22        THE COURT:  Thank you.  I do see that explanation, and

23    the notice is consistent with what I have been told here, and

24    that does help.

25        I see a typo in the bullet just above that on page 3.

F794NunC

1   It talks about provisions addressing "yong," Y-O-N-G, inmates.

2              MS. FRIEDBERG:  Thank you, your Honor.  We will make

3   that change.

4              THE COURT:  All right, then.  So those were the issues

5   that I wanted you to look back on and address or supplement.

6              Is there anything else that you wanted to bring up

7   with the Court today?

8              MR. POWELL:  On that last issue, just before we move

9   on, I think there would probably be an extra sentence in the

10  release provision of the settlement agreement.  Are you fine

11  with us at the time of final approval with our submission on

12  October 2nd including that revised language, or do you want a

13  new revised settlement submitted before that with that

14  sentence?

15             THE COURT:  In the event of the final approval or

16  together with the final approval application will be fine, and

17  I will need, of course, a revised version of the proposed order

18  preliminarily approving the consent judgment.

19             MS. FRIEDBERG:  I was going to propose giving you a

20  new one.

21             THE COURT:  Yes, that would be helpful.  I think the

22  dates here remain the same except that we would put in the

23  October 21st date for the hearing.

24             MS. FRIEDBERG:  Your Honor, I did identify one typo on

25  page 2 of the proposed preliminary order in the first full

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

F794NunC

1  paragraph.  We had a reference to my declaration, and it just

2  said dated June, underscore, and it should say July 1, 2015.

3        THE COURT:  All right.  Actually, if you would just

4  file an updated proposed order with the tweak to the notices,

5  as well, that would be great.

6        MS. FRIEDBERG:  Great.

7        THE COURT:  And we've agreed that the hearing date is

8  the 21st, and the submissions are for the 2nd of October, and

9  you'll get back to me in the interim about the form of

10  submission dealing with the 3626(a) certification of

11  consistency with law enforcement or penological consideration.

12        All right, then.  I thank you all very much, and I

13  look forward to the submissions, to the fairness hearing in the

14  fall, and to your communications in the interim.

15        I wish you all well.

16        ALL:  Thank you.

17        (Adjourned)

18

19

20

21

22

23

24

25