UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                       :

MARK NUNEZ, et al.,              :
                       :

         Plaintiffs,       :
                       :

   - against -          :
                       :  11 Civ. 5845 (LTS)(JCF)

CITY OF NEW YORK, et al.,     :
                       :

        Defendants.     :
                       :

-------------------------------------------------------- X
                       :

UNITED STATES OF AMERICA,   :
                       :

      Plaintiff-Intervenor, :
                       :

   - against -          :
                       :

CITY OF NEW YORK and NEW YORK CITY :
DEPARTMENT OF CORRECTION,    :
                       :

        Defendants.     :

-------------------------------------------------------- X

## JOINT MEMORANDUM OF ALL PARTIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CONSENT JUDGMENT

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

    I.      The Consent Judgment Should Be Granted Final Approval Because It Is Fair (Procedurally And Substantively), Adequate, and Reasonable...................... 3

    II.     The Consent Judgment Complies with the PLRA. .......................................... 7

          A.    The Proposed Relief Meets the PLRA Standard........................................7

          B.    The Monitor Is Not a Special Master, and Thus the Special Master Provisions of the PLRA Are Not Applicable..............................................10

          C.    The Consent Judgment's Termination Provision Governs and Defendants Have Agreed to Forego Their Right to File a Motion to Terminate Under PLRA Section 3626(b). .................................................14

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Benjamin v. Fraser*,
    343 F.3d 35 (2d Cir. 2003)................................................................................11, 12, 13, 14

*Caiozzo v. Koreman*,
    581 F.3d 63 (2d Cir. 2009)........................................................................................11

*Cason v. Seckinger*,
    231 F.3d 777 (11th Cir. 2000) ...................................................................................7

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)........................................................................6

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................3, 4, 5

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)........................................................................................3

*Evans v. Jeff D.*,
    475 U.S. 717 (1986)................................................................................................18

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000).......................................................................................3

*Handberry v. Thompson*,
    446 F.3d 335 (2d Cir. 2006)...................................................................................13

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...........................................................................6

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ..............................................................................5

*In re NASDAQ Market–Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................6

*Ingles v. Toro*,
    438 F. Supp. 2d 203 (S.D.N.Y. 2006)....................................................................5, 8

*Jones v. Gusman*,
    296 F.R.D. 416 (E.D. La. 2013)..............................................................................17

*Laube v. Campbell*,
    333 F. Supp. 2d 1234 (M.D. Ala. 2004) .................................................................14

*United States v. Alabama*,
  No. 2:15cv368-MHT, 2015 WL 3796526 (M.D. Ala. June 18, 2015) ....................................7

*United States v. Mezzanatto*,
  513 U.S. 196 (1995) .................................................................................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................................................3

## STATUTES AND RULES

18 U.S.C. § 3626(a) .........................................................................................................7, 10

18 U.S.C. § 3626(b) ..................................................................................................2, 15, 18

18 U.S.C. § 3626(b)(1)(A) ....................................................................................15, 16, 17

18 U.S.C. § 3626(b)(3) ...................................................................................................15

18 U.S.C. § 3626(f) ................................................................................................. passim

18 U.S.C. § 3626(f)(1) .....................................................................................................10

18 U.S.C. § 3626(f)(2) .....................................................................................................10

18 U.S.C. § 3626(f)(4) .....................................................................................................10

18 U.S.C. § 3626(f)(6)(B) ...............................................................................................10

18 U.S.C. § 3626(f)(6)(C) ...............................................................................................10

18 U.S.C. § 3626(g)(8) .....................................................................................................12

Fed. R. Civ. P. 23(e)(2) .....................................................................................................3

Fed. R. Civ. P. 53(a)(1)(B) ..............................................................................................12

Fed. R. Civ. P. 53(a)(1)(C) ..............................................................................................12

Fed. R. Civ. P. 53(c)(1)(C) ..............................................................................................12

Fed. R. Civ. P. 53(c)(2) ....................................................................................................12

Fed. R. Civ. P. 53(f)(1) .....................................................................................................13

## OTHER AUTHORITIES

Agreed Order, *United States v. Cook Cty*,
    No. 1:10-cv-02946 (N.D. Ill. May 13, 2010),
    http://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/CookCountyJail_Agr
    eedOrder_05-13-2010.pdf (last visited October 1, 2015)........................................................18

Consent Agreement, *United States v. Miami-Dade Cty*,
    No. 1:13-cv-21570 (S.D. Fla. May 1, 2013),
    http://www.justice.gov/crt/spl/documents/miami-dade_agreement_5-1-13.pdf
    (last visited October 1, 2015).......................................................................................................18

Consent Decree, *United States v. Alabama*,
    No. 2:15-cv-368-MHT (WO) (M.D. Ala. June 18, 2015),
    http://www.justice.gov/crt/about/spl/documents/tutwiler_agreement_6-18-15.pdf (last
    visited October 1, 2015).................................................................................................................14

Consent Judgment, *Jones v. Gusman*,
    No. 2:12-cv-859 (E.D. La. June 6, 2013),
    http://www.justice.gov/crt/about/spl/documents/opp_consentjudg_6-6-13.pdf (last
    visited October 1, 2015)............................................................................................................14, 18

Settlement Agreement, *United States v. Piedmont Reg'l Jail Auth.*,
    No. 3:13-cv-646 (E.D. Va. Sept. 20, 2013),
    http://www.justice.gov/crt/about/spl/documents/piedmont_agreement_9-20-13.pdf
    (last visited October 1, 2015)..................................................................................................14, 18

Settlement Agreement, *United States v. Robertson Cty*,
    No. 3:13-cv-392 (M.D. Tenn. April 30, 2013),
    http://www.justice.gov/crt/about/spl/documents/robertson_agreement_4-30-13.pdf
    (last visited October 1, 2015)..................................................................................................14, 18

Settlement Agreement, *United States v. Virgin Islands*,
    No. 1:86-cv-265-WAL-GWC (D.V.I. August 31, 2012),
    http://www.justice.gov/crt/about/spl/documents/goldengrove_settlement_8-31-12.pdf
    (last visited October 1, 2015).......................................................................................................14

Rodney Brye, Shameik Smallwood, Travis Woods, and Oscar Sanders, as the class representatives of the certified class[1] in this action, through class counsel, Ropes & Gray LLP ("R&G"), Emery Celli Brinckerhoff & Abady LLP, and The Legal Aid Society Prisoners' Rights Project  (collectively, "Plaintiffs' Class Counsel"), together with the United States of America, through its counsel, the United States Attorney's Office for the Southern District of New York ("USAO") (Plaintiffs' Class Counsel and the USAO, collectively, "Plaintiffs' Counsel"), and defendants The City of New York (the "City") and New York City Department of Correction (the "Department") (collectively, "Defendants"), through their counsel, the  Corporation Counsel for the City of New York,  respectfully submit this Memorandum in support of their joint motion for final approval of the Consent Judgment ("Consent Judgment") resolving this class action.

## **BACKGROUND**

The relevant procedural background was described in detail in the Memorandum in Support of Motion for Preliminary Approval of Consent Judgment (ECF No. 208, July 1, 2015) and the accompanying Declaration of Anna E. Friedberg, dated  July 1, 2015 (ECF No. 209, July 1, 2015)  (collectively, the "Preliminary Approval Motion Submission"), and rather than restate them here, the parties respectfully refer the Court to those documents for the facts and circumstances leading to the agreement embodied in the Consent Judgment.  *See* Mem. 2-5, ECF No. 208; Friedberg Decl. ¶¶ 3-14, ECF No. 209.

---

[1] On January 7, 2013, the Court entered a stipulated Order, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(A) and 23(b)(2), certifying a class ("Plaintiff Class") of: "all present and future inmates confined in jails operated by the New York City Department of Correction . . ., except for the Eric M. Taylor Center and the Elmhurst and Bellevue Prison Wards." Stipulation and Order ¶ 2 (ECF No. 61, Jan. 7 2013).  On July 10, 2015, the Court entered an Order approving the revision of the definition of the Plaintiff Class to include present and futures inmates confined in Eric M. Taylor Center. Order Preliminarily Approving Consent Judgment ¶ 8, ECF No. 214.

On July 9, 2015, the Court held a conference regarding the Motion for Preliminary Approval and asked that in the motion for final approval the parties address the following three issues related to the Prison Litigation Reform Act ("PLRA"):  (1) the Court's request for a declaration setting forth factual information in support of the findings that the Court is required to make when approving a consent judgment under the PLRA;  (2) the applicability of the special master provision of the PLRA, 18 U.S.C. § 3626(f), to the monitoring provisions of the Consent Judgment; and (3) the applicability to the Consent Judgment of Section 3626(b) of the PLRA, 18 U.S.C. § 3626(b), which addresses the termination of prospective relief, and whether the Defendants have agreed to waive their right to file a motion to terminate the Consent Judgment under Section 3626(b).[2]  *See* Hr'g Tr., July 9, 2015 ("Tr.").  The parties agreed to brief those issues when seeking final approval (and they do so herein).  The Court preliminarily approved the Consent Judgment on July 10, 2015.  *See* Order, ECF No. 214, July 10, 2015.

For the reasons stated below, as well as in the Preliminary Approval Motion Submission, the Declaration of Steve J. Martin, dated October 2, 2015 (the "Martin Decl."), the Declaration of [Brenda Cooke], dated October 2, 2015, (the "Cooke Decl."), and the Declaration of Christina G. Bucci, dated October 2, 2015 (the "Bucci Decl."), the parties jointly request that the Court grant final approval of, and enter, the Consent Judgment.

---

[2]  At the July 9 conference, the Court also inquired about the release in the Consent Judgment not being limited to a particular time frame.  *See* Tr. 21:15-22:9.  The parties have accordingly amended the language of the release to clarify that the release ends upon termination of the Consent Judgment.  The amended language is found in the text of Paragraph 1 of Section XXIII of the current version of the Consent Judgment, "Release by the Plaintiff Class."  That is the only change from the version of the Consent Judgment that was granted preliminary approval by the Court.  A copy of the original Consent Judgment approved by the Court, now reflecting the amendment described above which has been initialed by the parties, is annexed as Exhibit B to the accompanying Declaration of Steve J. Martin, dated October 2, 2015.

**ARGUMENT**

I.    **THE CONSENT JUDGMENT SHOULD BE GRANTED FINAL APPROVAL BECAUSE IT IS FAIR (PROCEDURALLY AND SUBSTANTIVELY), ADEQUATE, AND REASONABLE.**

Federal Rule of Civil Procedure 23(e)(2) provides that where, as here, the proposed settlement of a class action will bind the class members, the Court "may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). A settlement should be approved "if it is fair, adequate, reasonable, and not a product of collusion." *Id.* (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). That entails an assessment of "both the settlement's terms and the negotiating process leading to settlement." *Id.*

Procedural fairness exists where the settlement "resulted from arm's-length negotiations and . . . plaintiffs' counsel . . . possessed the experience and ability, and . . . engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (internal quotation marks omitted) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)). Substantive fairness exists where the settlement's terms are fair, adequate, and reasonable according to the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Preliminary Approval Motion Submission describes the Consent Judgment in detail and the parties incorporate that description herein. *See* Mem. 5-13, ECF No. 208; *see also supra* note 2 (describing a small modification to the language clarifying the timeframe of the release in the Consent Judgment). In sum, the parties have agreed to a Court-enforceable Consent

3

Judgment that will (1) provide substantial relief to the Plaintiff Class by requiring the Department to implement a wide range of systemic reforms, (2) be subject to the Court's continuing jurisdiction and oversight, and (3) require a Court-appointed, independent monitor (the "Monitor") who will have broad access to Department records, facilities, and staff, and who will submit periodic reports to the Court.  Additionally, the Consent Judgment reflects that the City has agreed to pay $6,500,000 to Plaintiffs' Class Counsel for approximately 35,000 hours of attorney time and expenses, a fee award lower than the actual aggregate attorney time charges of Plaintiffs' Class Counsel in this action.  Bucci Decl. ¶ 6.  The parties have jointly selected Steve J. Martin, a nationally-recognized expert on correctional facilities, as the Monitor (subject to the Court's approval of the Consent Judgment).

The negotiation process relating to the Consent Judgment, and the reasons why the Consent Judgment easily meets the test for procedural fairness, were comprehensively set forth in the Preliminary Approval Motion Submission, and the parties respectfully submit that the Court should find that the settlement process was procedurally fair.  *See* Mem. 15-17, ECF No. 208; Friedberg Decl. ¶¶ 9-16, ECF No. 209.

The parties similarly submit that the Court should find that the Consent Judgment is substantively fair.  In making that determination in a case seeking injunctive relief, courts look to the first six *Grinnell* factors:

> (1) the complexity, expense, and likely duration of litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;

(5) the risks of establishing damages;[3] and

(6) the risks of maintaining the class action through trial.

*See* 495 F.2d at 463; *see also Ingles*, 438 F. Supp. 2d at 211.[4]   A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Ingles*, 438 F. Supp. 2d at 211 (quoting *Wal-Mart*, 396 F.3d at 116).  "A court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotation marks omitted) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

The Preliminary Approval Motion Submission showed how the Consent Judgment easily satisfied all of the listed *Grinnell* factors, other than factor (2), since factor (2) could only be assessed after notice and opportunity to object were given to the Plaintiff Class.  *See* Mem. 17-22, ECF No. 208.

Notice has been given to the Plaintiff Class pursuant to the applicable provisions of the Court's Order granting preliminary approval to the Consent Judgment.  Order ¶ 4, ECF No. 214; *see* [Cooke] Decl. ¶¶ 3-4.   The reaction of the class to the Consent Judgment has been positive, almost literally unanimously so.[5]  One—only one—objection has been filed by a class member.

---

[3] When examining injunctive rather than monetary relief, this factor is examined "in light of establishing remedies instead of damages." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999)).

[4] Because the Consent Judgment involves only injunctive relief, the Court need not assess the last three *Grinnell* factors.  *See Ingles*, 438 F. Supp. 2d at 211.

[5] Since the posting of the Court-approved class notice, R&G has received letters from six inmates in the City jails. Of those, five were sent directly to Christina Bucci at R&G.  Those five writers did not raise objections to any aspect of the Consent Judgment.  To the contrary, they have asked to be part of the Plaintiff Class, made allegations regarding their own alleged mistreatment, or requested legal representation. The sixth letter was the objection that is discussed above, which R&G received because it was e-filed with the Court.  *See* Bucci Decl. ¶¶ 3-5.

*See* Notice of Obj. to Proposed Class Action Settlement, ECF No. 231, September 1, 2015 (for the Court's convenience, a copy is annexed as Exhibit A to the Bucci Decl.).   That objection spends much of its length setting forth the objector's personal views about the general state of the penal system.  *See generally id.*  Moreover, the objector actually agrees with many provisions of the Consent Judgment.  *See id.* at 12 (generally agreeing with the development of a new use of force policy, the creation of a use of force auditor position, and the implementation of the pilot program involving body-worn cameras).[6]

No other class members have objected at all, and that silence strongly supports final approval.  "That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the reaction of the class, as a whole," and supports a finding that "the Settlement is fair, reasonable, and adequate."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (internal quotation marks omitted); *see also Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012) ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it."); *In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 478-79 (S.D.N.Y. 1998) (observing that "[i]n litigation involving a large class it would be 'extremely unusual' not to encounter objections," and generally acknowledging that a low percentage of objections from the class generally favors approval of a settlement).

---

[6] Much of the objecting inmate's submission is not directly related to the Consent Judgment and simply recounts his understanding of various legal principles and judicial decisions.  *See* Notice of Obj. 3-11, ECF No. 231.  To the extent the inmate actually objects to any aspect of the Consent Judgment, those objections are quite limited and do not attack the overall fairness, adequacy, or reasonableness of the settlement.  *See, e.g., id.* at 12-13 (asserting that the Plaintiff Class should also include inmates confined in the Elmhurst and Bellevue Prison Wards, the use of "billy clubs" should not be permitted under the new use of force policy, and the body-worn camera pilot program should last for nine years instead of one year).  In addition, the inmate objects to the appointment of the Monitor because he "believe[s] that this is too much to fall on ones [sic] shoulder," *see id.* at 12, but (leaving aside the validity of that concern regarding Mr. Martin) the Consent Judgment permits the Monitor to hire additional staff.  *See* Consent Judgment § XX, "Monitoring" ¶ 5.

For all of the reasons stated above and in the Preliminary Approval Motion Submission, the parties respectfully submit that the Court should find that the Consent Judgment is fair, adequate, and reasonable.

## II.   THE CONSENT JUDGMENT COMPLIES WITH THE PLRA.

The PLRA requires the Court to find that the Consent Judgment is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a). In making that assessment, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* § 3626(a). The Court is not required to "conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute." *Cason v. Seckinger*, 231 F.3d 777, 785 n.8 (11th Cir. 2000); *see also United States v. Alabama*, No. 2:15cv368-MHT, 2015 WL 3796526, *3 (M.D. Ala. June 18, 2015). "The parties are free to make any concessions or enter into stipulations they deem appropriate," in PLRA cases, just as in non-PLRA cases. *Cason*, 231 F.3d at 785 n.8.

### A.   The Proposed Relief Meets the PLRA Standard.

Here, as discussed in the Preliminary Approval Motion Submission, Defendants have expressly agreed that the proposed relief is narrowly drawn, extends no further than is necessary to correct the alleged violations of federal rights, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system. *See* Consent Judgment § XXII, "Stipulation Pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626" ¶ 1. In addition, in order to address the request made by the Court at the July 9 conference, the parties now submit Mr. Martin's Declaration. In it,

Mr. Martin details his views about the Consent Judgment and how the relief it embodies meets the PLRA standard.

Mr. Martin is singularly well-situated to address these points. After being retained as a consulting expert by Plaintiffs' Class Counsel, Mr. Martin reviewed voluminous documents produced by the City in discovery, including over 400 use of force investigative files and a multitude of the Department's operational policies and procedures. *See* Martin Decl. ¶ 4. Mr. Martin also conducted tours of several of the City jails and reviewed the transcripts of depositions of Department personnel, as well as other City-related witnesses, taken in this case. *See id.* ¶¶ 4-5. Based upon his thorough review of those materials, and based on his decades of experience in correctional matters (including prior experience in both the *Sheppard* and *Ingles* cases, prior class actions challenging conditions in the City jails), he "concluded that substantial system-wide reforms were necessary to reduce the level of staff-on-inmate violence in the City jails, ensure the safety and well-being of inmates, and protect inmates' constitutional rights." *Id.* ¶ 6. Specifically, Mr. Martin identified the following areas of concern:

- An unusually high frequency of use of force incidents.

- An unusually high frequency of use of force incidents resulting in injuries to staff and inmates.

- Instances where staff engaged in excessive and/or unnecessary use of force in violation of the Constitution.

- A number of incidents where correction officers delivered blows to an inmate's head or facial area, or improperly employed force to punish or retaliate against inmates.

- Systemic deficiencies with respect to adequately reporting and investigating use of force incidents.

- Systemic deficiencies with respect to consistently and adequately holding staff accountable for misconduct.

8

- Department policies and training related to the use of force in need of significant improvement.

*See id.* ¶ 6.  Mr. Martin also describes his familiarity with the August 2014 report issued by the USAO and the Department of Justice, which concluded that Defendants had violated the constitutional rights of young male inmates between the ages of 16 and 18 ("Young Inmates"), and had engaged in a pattern and practice of:

- Subjecting Young Inmates to excessive and unnecessary use of force.

- Failing to adequately protect Young Inmates from violence inflicted by other inmates.

- Placing young inmates in punitive segregation at an alarming rate and for excessive periods of time.

*See id.* ¶ 7.  Many of the conclusions in that report with respect to staff use of force were similar to the areas of concern that Mr. Martin had identified during his own review of the materials provided to him in this case.  *See id.*

In working towards a settlement of the issues in this action, all of the parties recognized the PLRA's requirement that any agreed-upon remedies should represent the least intrusive means necessary to address the alleged violations.  *See id.* ¶ 10.  As Mr. Martin describes, the Consent Judgment frequently calls for the Department to develop the required systems, policies and trainings in consultation with the Monitor, allowing the Department to fashion those remedies (in consultation with the Monitor) in an appropriately targeted manner that takes into account legitimate operational and logistical concerns.  *See id.*

Mr. Martin also expresses his firm belief "that compliance with the settlement's requirements will result in a substantial reduction in the improper use of force against inmates and a safer and more secure environment in the City jails."  *Id.* ¶ 11.  In support, Mr. Martin details the 14 categories of reforms included in the Consent Judgment and how those remedies

are necessary to adequately address the alleged violations.  *See id.* ¶¶ 15-28.  With respect to the impact of the Consent Judgment on public safety and the operation of the criminal justice system, Mr. Martin states that the Consent Judgment's terms are "consistent with sound security practice" and "likely to promote public safety and protect both inmates and . . . [Department] staff from unnecessary harm and injuries."  *Id.* ¶ 13.  The parties respectfully submit that Mr. Martin's detailed explanation of his findings and the specific provisions of the Consent Judgment, combined with Defendants' explicit stipulation in the Consent Judgment that the relief meets the PLRA's needs-narrowness-intrusiveness standard, provides more than sufficient support for the Court to make the requisite findings under Section 3626(a) and (c) and approve the Consent Judgment.

**B.     The Monitor Is Not a Special Master, and Thus the Special Master Provisions of the PLRA Are Not Applicable.**

During the July 9 conference, the Court asked the parties to brief the applicability of Section 3626(f) of the PLRA to the monitoring provisions of the Consent Judgment.  *See* Tr. 14:6-16:9.  Section 3626(f) authorizes the appointment of a special master during the remedial phase of actions involving prison conditions and addresses the appointment process, the special master's compensation, and the special master's powers and duties.[7]  The Court specifically asked the parties to address whether the monitoring provisions of the Consent Judgment are "covered by the special master provisions of [Section] 3626(f)" and "whether those requirements

---

[7] Under the PLRA, special masters may be appointed "to conduct hearings on the record and prepare proposed findings of fact," 18 U.S.C. § 3626(f)(1), and may be authorized "to assist in the development of remedial plans," 18 U.S.C. § 3626(f)(6)(C).  The special master is to be selected from lists of up to five persons submitted by the parties, with each party able to remove three from the adversary's list.  *See* 18 U.S.C. § 3626(f)(2).  Compensation is limited to the rates paid counsel under the Criminal Justice Act, to be paid with funds appropriated to the judiciary.  *See* 18 U.S.C. § 3626(f)(4).  Special masters appointed under the PLRA may "not make any findings or communications *ex parte*."  18 U.S.C. § 3626(f)(6)(B).

would somehow superimpose themselves on the appointment and tenure of the monitor." *See* Tr. 14, 16.

The parties all are of the view that the Monitor under the Consent Judgment is not a special master to whom Section 3626(f) would be applicable. That view is consistent with the Second Circuit's conclusion when this same question was raised in a prior class action related to jail conditions. *See Benjamin v. Fraser*, 343 F.3d 35, 43-49 (2d Cir. 2003), *abrogated on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70-71 (2d Cir. 2009).

The Consent Judgment provides that the Monitor is "responsible for assessing the Department's compliance with this Agreement" and is "subject to the supervision and Orders of the Court." Consent Judgment § XX, "Monitoring" ¶¶ 1, 3. The Monitor's role and authority is specified in the Consent Judgment. He will have broad access to the Department's records, facilities and staff, as well as the right to conduct confidential interviews of inmates. *See id.* ¶ 8. The Monitor will file with the Court periodic reports "describing the efforts the Department has taken to implement the requirements of this Agreement and evaluating the extent to which the Department has complied with each substantive provision of this Agreement." *See id*. ¶ 16. The Monitor is permitted to engage in *ex parte* communications with the parties, *see id.* ¶ 22, and may "provide technical assistance or perform consultative tasks in connection with the implementation of the terms of this Agreement as requested by the Department," *id.* ¶ 24.

In *Benjamin*, the Second Circuit held that the provisions of Section 3626(f) apply only to special masters, and do not cover other agents whom a court may employ to perform a monitoring function in a jail conditions case. *See Benjamin*, 343 F.3d at 45. Mr. Martin, acting as Monitor pursuant to the terms of the Consent Judgment that govern his tenure, falls squarely within the non-special master category recognized by the Second Circuit.

The PLRA defines a special master to be anyone "appointed by a Federal court pursuant to Rule 53 of the Federal Rules of Civil Procedure or pursuant to any inherent power of the court to exercise the powers of a master, regardless of the title or description given by the court."  18 U.S.C. § 3626(g)(8).  In *Benjamin*, the district court had appointed the Office of Compliance Consultants (the "OCC") as a neutral third party to monitor the consent decree and assist with implementation of the decree's requirements.  *See Benjamin*, 343 F.3d at 43.  Like the Monitor in this action, the OCC's director was granted "a variety of information-gathering powers" and was required "to make reports to the court concerning compliance status."  *Id.* at 43 n.7.

The Second Circuit contrasted the function of the OCC with the powers of special masters, who "are quasi-judicial officers."  *Id.* at 45.  The powers of special masters include the ability to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge" and to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury" under certain circumstances.  Fed. R. Civ. P. 53(a)(1)(B), (C).  A special master also is authorized to exercise "the appointing court's power to compel, take, and record evidence" when conducting evidentiary hearings, "impose on a party any noncontempt sanction provided by Rule 37 or 45," and "recommend a contempt sanction against a party and sanctions against a nonparty."   Fed. R. Civ. P. 53(c)(1)(C), 53(c)(2).[8]

Applying a functional test, the Second Circuit concluded in *Benjamin* that the OCC was not a special master:

---

[8] Relying on an earlier version of Rule 53, the Second Circuit in *Benjamin* noted that the special master's powers included "the ability to convene and to regulate hearings, to rule on the admissibility of evidence, to subpoena and swear witnesses, and to hold non-cooperating witnesses in contempt."  343 F.3d at 45.  Although the language of Rule 53 was modified in December 2003 to reflect changing practices with respect to the use of special masters, the special master's powers (unlike those of the Monitor here) remain similarly quasi-judicial in nature.

> The OCC was not appointed to hold hearings, subpoena witnesses, take testimony, or rule upon evidence.  It does not prepare reports to assist in the court's determination of discrete issues of law or fact, and its factual findings are not legally entitled to deference. The OCC's reports, which are neither formally filed in the court's docket nor adopted, modified, or rejected by the court, serve a different function from the typical report of a special master. Besides informing the court of ongoing compliance efforts, these reports facilitate the City's awareness of its compliance with remedial directives.  In other words, the OCC serves a monitoring function; it does not exercise quasi-judicial power.

343 F.3d at 45.[9]

Similarly, the Monitor under this Consent Judgment is not directed or empowered to hold hearings, subpoena witnesses, take testimony, rule upon evidence, or perform the other quasi-judicial functions specified in Rule 53.  Like the OCC, Mr. Martin will be performing a monitoring function under the Consent Judgment, in addition to advising on implementation issues upon the Department's request.  Furthermore, unlike the reports of a special master, s*ee* Fed. R. Civ. P. 53(f)(1), under the Consent Judgment there is no provision for the adoption, modification or rejection of the reports the Monitor submits to the Court.  While the Monitor's reports will be filed with the Court and part of the public docket of this case, as in *Benjamin*, the Monitor's findings in these reports are intended to serve the purpose of informing the Court of ongoing compliance efforts.  Thus, the Monitor "does not perform the duties of a special master and, accordingly, is not subject to the requirements of § 3626(f)."  *Benjamin*,  343 F.3d at 47; *see also Handberry v. Thompson*, 446 F.3d 335, 351-52 (2d Cir. 2006) (following *Benjamin*, holding that court-appointed monitor in case alleging failure to provide inmates with legally required educational services had "not been given a mandate to exercise quasi-judicial powers"

---

[9] The PLRA does not call into question a court's powers to appoint agents who are not special masters.  Rather, "by limiting its reference to court-appointed agents to those performing the duties of a master, the Act . . . implicitly incorporates the long-recognized principle that Article III courts may appoint agents to engage in a variety of activities essential to the performance of judicial responsibilities."  *Benjamin*, 343 F.3d at 46.

and was not a "special master" within the meaning of Section 3626(f)); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1239-40 (M.D. Ala. 2004) (following *Benjamin*, holding that healthcare monitor in prison reform suit was "not a special master" under the PLRA).[10]

Moreover, although the PLRA contemplates that a court <u>may</u> appoint a special master in the remedial phase of an action challenging prison conditions, that in no way precludes the appointment of a monitor <u>instead</u>.  Indeed, prison reform settlements involving the Department of Justice regularly call for the appointment of an individual or entity to monitor compliance with the terms of the agreement and provide periodic reports to the court.[11]

Thus, the parties respectfully submit that the Monitor is not a special master to whom Section 3626(f) would be applicable.

### C.  The Consent Judgment's Termination Provision Governs and Defendants Have Agreed to Forego Their Right to File a Motion to Terminate Under PLRA Section 3626(b).

The Consent Judgment provides that it will remain in effect until the Court finds that Defendants have demonstrated by a preponderance of evidence that they have achieved and

---

[10] In *Benjamin*, the Second Circuit noted that a predecessor proposed version of the PLRA—which was not enacted—had expressly placed limits on "any special master *or monitor*," and the relevant legislative history of that provision specified that it would apply "to anyone relied on by the court to make factual findings *or to monitor or review compliance* with, enforcement of, or implementation of a consent decree or of court-ordered relief in a prisons conditions suit." *Benjamin*, 343 F.3d at 46 (emphases added by Second Circuit) (quoting H.R. 667, 104th Cong. § 301 (1995); H.R. Rep. No. 104-21, at 28 (1995)).  Since the PLRA as actually enacted omitted the earlier reference to monitors, the Second Circuit concluded that standard statutory construction rules bar interpreting the PLRA to limit the use of monitors.  *See id.* at 46-47.

[11] *See, e.g.,* Consent Decree § VIII, *United States v. Alabama*, No. 2:15-cv-368-MHT (WO) (M.D. Ala. June 18, 2015), http://www.justice.gov/crt/about/spl/documents/tutwiler_agreement_6-18-15.pdf (last visited October 1, 2015); Settlement Agreement § V, *United States v. Piedmont Reg'l Jail Auth.*, No. 3:13-cv-646 (E.D. Va. Sept. 20, 2013), http://www.justice.gov/crt/about/spl/documents/piedmont_agreement_9-20-13.pdf (last visited October 1, 2015); Consent Judgment § IX, *Jones v. Gusman*, No. 2:12-cv-859 (E.D. La. June 6, 2013), http://www.justice.gov/crt/about/spl/documents/opp_consentjudg_6-6-13.pdf (last visited October 1, 2015; Consent Agreement § VI, *United States v. Miami-Dade Cty*, No. 1:13-cv-21570 (S.D. Fla. May 1, 2013), http://www.justice.gov/crt/about/spl/documents/miami-dade_agreement_5-1-13.pdf (last visited October 1, 2015); Settlement Agreement § VI, *United States v. Robertson Cty*, No. 3:13-cv-392 (M.D. Tenn. April 30, 2013), http://www.justice.gov/crt/about/spl/documents/robertson_agreement_4-30-13.pdf  (last visited October 1, 2015; Settlement Agreement § X, *United States v. Virgin Islands*, No. 1:86-cv-265-WAL-GWC (D.V.I. August 31, 2012), http://www.justice.gov/crt/about/spl/documents/goldengrove_settlement_8-31-12.pdf (last visited October 1, 2015).

maintained substantial compliance with the provisions of the Consent Judgment for 24 months.

*See* Consent Judgment § XXI, "Compliance, Termination, and Constructions" ¶ 5 (hereinafter

"Agreed-Upon Termination Provision").  At the July 9 conference, the Court asked that the

parties address whether Section 3626(b) of the PLRA applied.  *See* Tr. 11:3-14:5.  The parties all

agree that the Agreed-Upon Termination Provision sets forth the only way the Consent Judgment

may come to an end and that Defendants have agreed to forego their right to bring a motion

under PLRA Section 3626(b) seeking to terminate the Consent Judgment.[12]

Section 3626(b)(1)(A) provides in pertinent part:

> In any civil action with respect to prison conditions in which prospective
> relief is ordered, such relief shall be terminable upon the motion of any
> party or intervener--
>
> (i)   2 years after the date the court granted or approved the
>       prospective relief;
>
> (ii)  1 year after the date the court has entered an order denying
>       termination of prospective relief under this paragraph[.]

That provision is subject to the limitation that "[p]rospective relief shall not terminate if the court

makes written findings based on the record that prospective relief remains necessary to correct a

current and ongoing violation of the Federal right, extends no further than necessary to correct

the violation of the Federal right, and that the prospective relief is narrowly drawn and the least

intrusive means to correct the violation."  18 U.S.C. § 3626(b)(3).

As a general matter, Section 3626(b)(1)(A) provides a defendant with the right to seek, at

a specified time, termination of the court-ordered relief in civil actions challenging prison

conditions.  Here, however, the parties have negotiated a separate and distinct termination

mechanism that is premised on Defendants' sustained compliance with the carefully crafted and

---

[12] The Agreed-Upon Termination Provision does not preclude the parties from agreeing to modify the terms of the prospective relief of the Consent Judgment, or agreeing to terminate certain aspects of the relief, during the duration of the Consent Judgment (subject to the Court's approval).

agreed to requirements of the Consent Judgment.  Specifically, the Agreed-Upon Termination

Provision states:

> This Agreement shall terminate *only* upon a finding by the Court that
> Defendants have achieved Substantial Compliance with the provisions of
> this Agreement and have maintained such Substantial Compliance for a
> period of twenty-four months.  The burden shall be on Defendants to
> demonstrate such compliance by a preponderance of the evidence.[13]

(emphasis added).  Thus, in plain language, the parties have agreed that the Consent Judgment

may "only" terminate if the Court makes the required 24-month Substantial Compliance finding.

In assessing whether Defendants have achieved such Substantial Compliance, warranting

termination of the Consent Judgment, the parties contemplate that the Court will consider

whether Defendants have, for a period of at least 24 months, corrected the violations of inmates'

federal rights that were alleged by the United States and the Plaintiff Class and that this Consent

Judgment is tailored to remedy under the PLRA.

    As part of the negotiations that resulted in the Consent Judgment, Defendants agreed to

relinquish their right to bring a motion under Section 3626(b)(1)(A) to terminate the Consent

Judgment before they have achieved Substantial Compliance.  Defendants recognize that the

Consent Judgment calls for systemic reforms that will take significant time to implement, and

that many of its provisions are inter-related and complementary means designed to address

widespread conditions in the City jails that need change.  Defendants also understand that

changing patterns of conduct that have resulted from the long-standing culture of the institution

will very likely take more than the presumptive two years provided for in Section 3626(b)(1)(A).

Indeed, the deadlines for implementing certain remedies will extend beyond two years after

approval of the Consent Judgment.  *See*, *e.g.*, Consent Judgment § XIII, "Training" ¶ 1(b)(ii)

---

[13] Substantial Compliance is defined to "mean that the Department has achieved a level of compliance that does not deviate significantly from the terms of the relevant provision."  Consent Judgment § XX, "Monitoring" ¶ 18 n.2.

(requiring DOC staff to receive In-Service Crisis Intervention Training within 26 months of the approval and entry of the Consent Judgment); *id.* § VII, "Use of Force Investigations" ¶ 9(a)(ii) (reducing timeframe for completion of use of force investigations beginning on October 1, 2018).  For all these reasons, the parties agreed that the duration of the Consent Judgment should be performance-related and not fixed in time and that the Consent Judgment should terminate only after Substantial Compliance has actually been achieved for a sustained period (*i.e.*, at least 24 months).  The Agreed-Upon Termination Provision is necessary to correct the alleged violations of inmates' rights resulting from the conditions at issue.  *See Jones v. Gusman*, 296 F.R.D. 416, 462 (E.D. La. 2013) (finding that termination provision requiring substantial compliance for two years was "narrowly drawn and otherwise compliant with the PLRA" given "longstanding deficiencies at OPP facilities arising from deep-rooted and systemic weaknesses").

This is consistent with the general rule that, as with any settlement, a party is free to agree to forego exercising  an otherwise-available statutory right—in this case, the statutory right to file a motion to terminate the Consent Judgment under Section 3626(b)(1)(A) as soon as the PLRA otherwise would permit.  Although that provision allows for termination of prospective relief "upon the motion" of a party two years after court approval of the relief, Defendants certainly may give up their statutory right to make such a motion at that time.  Waivers of statutory rights are commonplace in settlement agreements and are presumed valid "absent some affirmative indication of Congress' intent to preclude waiver."  *United States v. Mezzanatto*, 513 U.S. 196, 200-01 (1995) ("Rather than deeming waiver presumptively unavailable absent some sort of express enabling clause, we instead have adhered to the opposite presumption. . . . [A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties."); *see also*

17

*Evans v. Jeff D.*, 475 U.S. 717, 730–32 (1986) (prevailing party in civil rights action may waive statutory eligibility to attorney's fees as part of settlement).  There is nothing to suggest that Congress intended to preclude defendants from knowingly waiving their PLRA right to file a motion to terminate court-ordered relief.

Moreover, parties frequently have negotiated consent decrees in prison reform cases that include alternative standards or timetables for termination.  Indeed, the Agreed-Upon Termination Provision here is similar to language included in several other settlements governed by the PLRA, where the parties have made termination contingent on a specified period of substantial compliance with the settlement's terms.[14]  The parties are aware of no instance in which a district court has declined to approve a proposed settlement on the ground that the duration or termination term of the agreement did not conform to 18 U.S.C. § 3626(b) and are similarly aware of no instance in which such a negotiated termination provision was found invalid or unenforceable.

---

[14] *See, e.g.*, Settlement Agreement § VII.C, *United States v. Piedmont Reg'l Jail Auth.*, No. 3:13-cv-646 (E.D. Va. Sept. 20, 2013), http://www.justice.gov/crt/about/spl/documents/piedmont_agreement_9-20-13.pdf (last visited October 1, 2015) (substantial compliance with each provision for 18 months); Consent Judgment § XI.C, *Jones v. Gusman*, No. 2:12-cv-859 (E.D. La.  June 6, 2013),
http://www.justice.gov/crt/about/spl/documents/opp_consentjudg_6-6-13.pdf (last visited October 1, 2015) (substantial compliance with each provision for two years); Consent Agreement § VII.C, *United States v. Miami-Dade Cty*, No. 1:13-cv-21570 (S.D. Fla. May 1, 2013), http://www.justice.gov/crt/about/spl/documents/miami-dade_agreement_5-1-13.pdf (last visited October 1, 2015) (individual provisions may terminate upon substantial compliance for 18 months); Settlement Agreement § VIII.C, *United States v. Robertson Cty*, No. 3:13-cv-392 (M.D. Tenn. April 30, 2013), http://www.justice.gov/crt/about/spl/documents/robertson_agreement_4-30-13.pdf  (last visited October 1, 2015) (substantial compliance with each provision for one year); Agreed Order § VII.C, *United States v. Cook Cty*, No. 1:10-cv-02946 (N.D. Ill. May 13, 2010),
http://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/CookCountyJail_AgreedOrder_05-13-2010.pdf (last visited October 1, 2015) (substantial compliance with each provision for 18 months).

## CONCLUSION

For the reasons set forth above, as well as those in other documents referred to herein, the parties respectfully request that the Court grant final approval of the Consent Judgment annexed as Exhibit B to Mr. Martin's Declaration, and enter said Consent Judgment.

Dated:   New York, New York
         October 2, 2015

                                    Respectfully submitted,

                                    FOR THE PLAINTIFF CLASS:

                                    ROPES & GRAY LLP

By: /s/ William I. Sussman
      WILLIAM I. SUSSMAN
      CHRISTOPHER P. CONNIFF
      CHRISTINA G. BUCCI
      1211 Avenue of the Americas
      New York, New York 10036
      Telephone: (212) 569-9000
      Email: William.Sussman@ropesgray.com
              Christopher.Conniff@ropesgray.com
              Christina.Bucci@ropesgray.com

      All other signatories listed, and on whose behalf
      the filing is submitted, consent to its filing.

                                    THE LEGAL AID SOCIETY

By: /s/ Mary Lynne Werlwas
      JONATHAN S. CHASAN
      MARY LYNNE WERLWAS
      199 Water Street, 3rd Floor
      New York, New York 10038
      Telephone: (212) 577-3530
      Email: jchasan@legal-aid.org
              mlwerlwas@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By:  /s/ Jonathan S. Abady
      JONATHAN S. ABADY
      DEBRA L. GREENBERGER
      600 Fifth Avenue, 10th Floor
      New York, New York 10020
      Telephone: (212) 763-5000
      Email: jabady@ecbalaw.com
            dgreenberger@ecbalaw.com


FOR THE UNITED STATES:

PREET BHARARA
United States Attorney for the
Southern District of New York

By:   /s/ Jeffrey K. Powell
      JEFFREY K. POWELL
      LARA K. ESHKENAZI
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Telephone: (212) 637-2706/2758
      Email: Jeffrey.Powell@usdoj.gov
            Lara.Eshkenazi@usdoj.gov


FOR DEFENDANTS:

ZACHARY W. CARTER
Corporation Counsel for the City of New York

By:   /s/ Celeste Koeleveld
      CELESTE KOELEVELD
      ARTHUR G. LARKIN
      KIMBERLY JOYCE
      100 Church Street
      New York, New York 10007
      Telephone: (212) 356-2300
      Email: ckoeleve@law.nyc.gov
            alarkin@law.nyc.gov
            kjoyce@law.nyc.gov

20