# Correction Officers' Benevolent Association, Inc.
*"Patrolling the Toughest Precincts in New York"*



**NORMAN SEABROOK**
President

**ELIAS HUSAMUDEEN**
1st Vice President

**JOSEPH BRACCO**
2nd Vice President

**ELIZABETH CASTRO**
3rd Vice President

**MICHAEL MAIELLO**
Treasurer

**AMELIA WARNER**
Financial Secretary

**THOMAS FARRELL**
Legislative Chairman

**KAREN BELFIELD**
Recording Secretary

**BENNY BOSCIO**
Sergeant-At-Arms

**KENYATTA JOHNSON**
First City-Wide Trustee

**ALBERT CRAIG**
Manhattan Borough Trustee

**DANIEL PALMIERI**
Bronx Borough Trustee

**FREDERIC FUSCO**
Queens Borough Trustee

**PAULETTE JOHNSON**
Brooklyn Borough Trustee

**BISHOP WILLIAM RAYMOND WHITAKER II**
Chaplain

**DR. JOHN MCCANN**
Stress Management

**VINCENT COPPOLA**
Retiree Consultant

**KOEHLER & ISAACS, LLP**
COBA Attorney

75 Broad Street, Suite 0810
New York, NY 10004
t. 212.274.8000
f. 212.274.8255

COBA Satellite Office
77-10 21st Avenue
East Elmhurst, N.Y. 11370
t. 718.545.COBA (2622)
f. 718.545.2668

COBANYC.ORG

November 4, 2015

The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

RE: Implementation of the Nunez Consent Judgment

Your Honor,

  I am the president of the Correction Officers Benevolent Association (COBA) which is the Union representing all Correction Officers working in the New York City jails. I have expressed many times my desire to improve conditions on Rikers Island. It is clear that the more conditions improve for inmates the better the work day is for Correction Officers. Families of Correction Officers do not send their husbands, wives, sons and daughters off to work to have them fight with inmates. With that obvious premise as a foundation, I want to bring a troubling issue to your Honor's attention.

  The "consent judgment" arrived at by the parties in Nunez v. The City of New York with your guidance has the potential to have an exceptionally positive impact on the safety of both inmates and officers. For this to occur it must be implemented in a rational fashion. I believe that this is not now the case. I will not trouble you with every individual detail in this letter. These are reserved for my discussion with the Department. However, the Department did recently issue a new use of force directive at the Anna M. Kross Center without discussions with the Union or adequate training of staff. They also plan to distribute the entire revised use of force policy by this Friday, November 6th, 2015, also without training. Our individual disagreements on implementation and safety can be worked out if necessary with the help of the NYC Office of Collective Bargaining. Please understand that these efforts by the Union are designed to make the agreement workable, not interfere with its long overdue positive objectives.

  Your time is valuable so I limit myself to a broad and fundamental problem important enough to bring directly to your attention. The primary problem is the error of not training officers before important changes are put into place. For example central to the agreement is your desire and that of the parties to better



manage the use of force in the jails. This is my desire as well. The employment of a progressive approach to gaining compliance from inmates is logical and important. Under the consent judgment verbal interpersonal communication skills and conflict resolution methods are first used to de-escalate situations. Unfortunately, officers have not been trained adequately in these methods.

Closer cooperation between Correction Officers and mental health staff is a positive objective especially when the use of force is anticipated. In these instances, Correction     Officers are directed under the consent judgment to ask mental health staff to intervene if appropriate. The working relationship between the two groups needs to be improved. I think that team training involving the two groups would be helpful in building mutual trust and facilitating this approach.

When should mental health staff be asked to intervene? Who should do the asking? Who coordinates the effort to gain control? The agreement indicates that officers should ask mental health staff to intervene.

Use of control holds and takedown techniques including soft hand techniques are the next tools to be used in gaining compliance. These techniques need training and retraining.

How best to strike an inmate so as not to hit the head, face, neck, kidneys and spine requires training in a gymnasium under simulated conflict. When to kick, or use a baton in the proper manner needs to be demonstrated in training. Officers need to learn how to fight back if verbal, takedown and soft hand techniques fail or if the officer is attacked without warning.

Critical also is the amount of inmate violence that gives rise to an imminent danger of serious physical injury or death. Such a situation allows staff to use any necessary means to stop the threat. The answer is the reasonableness of the force in the situation as perceived by the officer at the time. Training is clearly necessary to explore the concept of reasonableness particularly because not every staff member will perceive the danger of death or serious physical injury at the same time under similar circumstances. "Clear and adequate direction on when different levels of force and use of force techniques are permitted", is included in the consent judgment. Officers will not receive that direction when unanticipated incidents arise. Training will provide guidance for such circumstances.

The training outlined above is critical for the safety of staff and inmates. It is also critical for Correction Officers given the changes to be implemented in Use of Force Investigations. For example the consent judgment directs that if a preliminary review determines that an officer had more likely than not engaged in specified serious misconduct, he or she shall be suspended. The preliminary review is to take place within two days. If officers are to be suspended after just two days of investigation they certainly need to fully understand the use of force guidelines.

Your Honor approved the settlement agreement on October 21, 2015 at which time it went into effect and "the defendants must do the things required by the agreement." The union understands the importance of bringing Rikers Island under reasonable control as soon as possible. We support this objective. However, the union respectfully requests that your Honor inform the parties that the "things required by the agreement" should be done in a logical sequence. People should be trained before the new policies and procedures are implemented. We have no information that such training will take place, and when. The union and the vast majority of officers want this new consent judgment to work. We respectfully request your Honor note our concern, forward this letter to the appointed monitor, and assign the issues outlined to his attention.

Respectfully Submitted,

*Norman Seabrook*

Norman Seabrook

cc:    Jonathan S. Abady (Plaintiffs' Counsel)
       Christina G Bucci (Plaintiffs' Counsel)
       Lara K. Eshkenazi, U.S. Attorney's Office, SDNY
       Arthur Gabriel Larkin, III, New York City Law Department