FALPNUNH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK NUNEZ, et al.,

                    Plaintiffs,

           v.                            11 CV 5845 (LTS)


CITY OF NEW YORK, et al.,

                    Defendants.

------------------------------x
                                         New York, N.Y.
                                         October 21, 2015
                                         2:05 p.m.

Before:

                    HON. LAURA TAYLOR SWAIN,

                                         District Judge

                         APPEARANCES

LEGAL AID SOCIETY
      Attorneys for Plaintiffs
BY:  MARY LYNNE WERLWAS
     JONATHAN S. CHASAN
          -and-
ROPES & GRAY
BY:  WILLIAM I. SUSSMAN
          -and-
U.S. DEPARTMENT OF JUSTICE
BY:  JEFFREY POWELL
     LARA K. ESHKENAZI
          -and-
EMERY CELLI BRINCKERHOFF & ABADY LLP
BY:  JONATHAN S. ABADY
     DEBBIE GREENBERGER

NEW YORK CITY LAW DEPARTMENT
      Attorneys for Defendants
BY:  ARTHUR G. LARKIN, III
     CELESTE KOELEVELD
     KIMBERLY JOYCE

FALPNUNH

1     (Open court)

2     (Case called)

3         THE COURT:  Good afternoon.  Would everyone other than

4     the attorneys please be seated.  This is the fairness hearing

5     in respect of the consent judgment proposed in the matter of

6     Nunez against Correction Officer Thomas, et al.

7         Counselor, would you kindly introduce yourselves.  The

8     person who will speaking on behalf of the interest should

9     introduce the team, please.

10        MR. POWELL:  Jeffrey Powell with the U.S. Attorney's

11    Office for the government.

12        THE COURT:  Good afternoon, Mr. Powell.  And with you

13    is Ms. Eshkenazi?

14        MS. ESHKENAZI:  Yes, your Honor.

15        THE COURT:  Good afternoon.

16        MS. WERLWAS:  Good afternoon.  Mary Lynne Werlwas from

17    the Legal Aid Society's Prisoners' Rights Project, together

18    with Jonathan Chasan for the Prisoners' Rights Project.

19        THE COURT:  Good afternoon, Ms. Werlwas and

20    Mr. Chasan.

21        MR. SUSSMAN:  Good afternoon, your Honor.  William

22    Sussman of Ropes and Gray on behalf of plaintiffs class.

23        THE COURT:  Good afternoon, Mr. Sussman.

24        MR. ABADY:  Jonathan Abady from Emery, Celli,

25    Brinckerhoff and Abady, here with Debbie Greenberger, also for

FALPNUNH

1    the plaintiff, your Honor.

2              THE COURT:  Good afternoon, Mr. Abady and

3    Ms. Greenberger.  You can a be seated.

4              MS. KOELEVELD:  Your Honor, Celeste Koeleveld for the

5    City.  I'm joined by Arthur Larkin and Kimberly Joyce.

6              THE COURT:  Good afternoon, Ms. Koeleveld, Mr. Larkin

7    and Ms. Joyce.  And greetings to the members of the press and

8    other spectators and interested parties who are here this

9    afternoon.  Thank you all for coming to court.

10             First, I would like the thank the parties for their

11   submissions and for the very thorough supplemental issues that

12   we discussed at the preliminary hearing regarding the

13   settlement, and I would like to congratulate and commend

14   everyone here for their efforts in reaching the important

15   result that we're taking up here today, particularly given the

16   very serious, complex and, no doubt, at times, intractable set

17   of issues that needed to be addressed.

18             At this point, I would invite the parties to state

19   their positions as to the settlement, to make your statements

20   in support of the settlement.  Ms. Werlwas.

21             MS. WERLWAS:  Yes.  Speaking on behalf of the Nunez

22   plaintiff class, we are asking you to give final approval to

23   the settlement agreement that you preliminarily approved in

24   July.  We aren't going to restate what we put in those papers

25   detailing the extensive and very arm's length negotiations that

FALPNUNH

1  culminated in this settlement agreement and that describe the

2  fairness of its substantive terms.  Those are also further

3  detailed much more closely in the declaration of Mr. Martin,

4  which shows the nexus between the terms of relief and the

5  problems they were seeking to resolve.

6      Since your Honor's preliminary approval, this notice

7  of the settlement agreement was distributed to the class,

8  pursuant to the procedures your Honor had ordered, and it also

9  received significant media attention and could have been seen

10  by any interested stakeholders.

11      We're delighted but not surprised that the response

12  from the class has been overwhelmingly positive.  The fact that

13  there was only one objection lodged, which we addressed in our

14  papers, demonstrates the near unanimous approval of the class

15  of this settlement on their behalf.

16      In our view, this settlement is an excellent result

17  for the plaintiff class.  From the outset of the litigation,

18  we, as counsel for the class, have made clear that any

19  resolution of this litigation would require, at a minimum, two

20  features; that it would need to be a court-enforceable order,

21  and that there would need to be a neutral entity to monitor

22  compliance with the agreement.

23      The consent judgment before your Honor has both of

24  those features, and in addition, it requires a range of

25  operational and policy changes that were carefully crafted with

FALPNUNH

```
1    the guidelines of relevant correctional professionals.  They

2    brought their expertise to the settlement table over and over

3    again to ensure that the measures agreed upon are consistent

4    with public safety and are sound correctional practice.

5          We believe that this agreement, if implemented, will

6    end the pernicious pattern of institutionalized staff violence

7    against inmates, who are held partially out of public view in

8    the city's jails.  This brutality has no place in modern

9    corrections, and we are pleased to presents a consent judgment

10   to end it.

11         We are happy to answer any questions you have about

12   any of the specific terms or about the negotiations of the

13   agreement, but since much of that is laid out in our papers, I

14   think we will turn to others.

15         THE COURT:  Before you sit, thank you, and I agree

16   that your papers are very comprehensive and clear.  I do have

17   one technical question that I'm not sure was addressed directly

18   in the papers, and that is whether the CAFA notice to state

19   officials has been given, and whether the statutory time period

20   from the giving of that notice has elapsed?

21         MS. WERLWAS:  Right.  My understanding is that it has,

22   and I think, though, that the City lawyers would be the best to

23   answer the specifics on that.

24         THE COURT:  Thank you.

25         MR. LARKIN:  Yes, your Honor.  We sent the notice out
```

FALPNUNH

1   promptly, and more than 90 days has elapsed.  We have not

2   received any objections from any of the State Attorneys General

3   to whom the notice was sent.

4          THE COURT:  Thank you.  Mr. Powell?

5          MR. POWELL:  Thank you, your Honor.  As your Honor is

6   aware, back in December 2014, the United States intervened in

7   the Nunez class action after issuing a report under the statute

8   CRIPA, finding that inmates between the ages of 16 and 18 were

9   being subjected to unconstitutional conditions of confinement.

10         Shortly thereafter, the settlement negotiations became

11  more intense and more regular, and it took several months for

12  us to get to where we were and to submit what we view as a very

13  comprehensive consent judgment that has a wide variety of --

14  requires the department to implement a myriad of new practices,

15  systems, policies and programs that are designed to reduce

16  violence in the jails and ensure the well-being of not only

17  inmates but also the staff that worked there.

18         The widespread reforms reflect the parties', the

19  City's and the plaintiffs' collective best judgment as to what

20  measures need to be taken to address what have been

21  long-standing deficiencies that we feel have existed in the

22  jail system.

23         I won't repeat what the Nunez counsel indicated, but

24  the agreement does call for the appointment of a jointly

25  selected monitor.  Mr. Martin has been jointly agreed to by the

1     parties.  He is a nationally recognized correction expert.  We

2     have submitted his CV to your Honor, as you requested, and we

3     feel that he is perfectly positioned and very well-experienced,

4     given his history of serving as a monitor in other

5     institutional reform cases, to perform the duties required

6     under the consent judgment here.

7          With respect to the issues that your Honor raised when

8     we were last before you on July 9th, we have addressed those in

9     our papers.  Happy to answer any other questions regarding

10    those issues.  As the joint motion, we're proud to be here with

11    the City now jointly requesting that the Court issue final

12    approval of the consent judgment and find that it is fair,

13    reasonable and adequate and fully complies with the PLRA.

14          THE COURT:  Thank you.  Would anyone else like to be

15    heard?  Ms. Koeleveld?

16          MS. KOELEVELD:  Yes, your Honor.  As we have

17    stipulated in the agreement, your Honor, we believe that the

18    agreement that we've entered into is narrowly tailored and the

19    least-intrusive means to address the alleged constitutional

20    violations and that the remedies went further than necessary to

21    correct those violations.

22          From the beginning of our decision to enter into

23    settlement negotiations, the Department of Corrections was

24    determined to enter into an agreement that made operational

25    sense.  Every single decision, every single term of the

FALPNUNH

1   agreement was viewed from the perspective of is this something

2   that will work for the agency, is this something that will make

3   sense for us, is this something that will help move us forward.

4   And with those goals in mind, the negotiations were quite

5   extensive and comprehensive.

6        The agreement builds on reforms that are already

7   underway, in many respects, at the agency.  The department has

8   announced a 14-point plan to make the jails safer, more

9   efficient, better run in many respects.  So we believe that

10  this agreement dovetails that 14-point plan, and overall, is a

11  way to make the department move forward in a very, very

12  positive way.

13       As I noted, the department is already working not just

14  on the 14-point plan, but also on some of the terms in this

15  agreement.  The reforms are already underway.  The department

16  is prepared to hit the ground running and thinks that this is

17  the best way to keep everybody in the jails safe, both inmates

18  and correction officers alike.  We urge your Honor to approve

19  the agreement.

20       THE COURT:  Thank you.  I'm very glad to hear that

21  steps are already underway to implement the measures that are

22  reflected here.

23       Would anyone else like to be heard?

24       Very well, then.  I will now render my oral decision

25  on the motion for approval of the proposed consent judgment.

FALPNUNH

1    These remarks constitute the Court's findings of facts and

2    conclusions of law for the purposes of Rule 52 of the Federal

3    Rules of Civil Procedure.  The Court reserves the right to make

4    non-substantive changes and corrections in any transcript of

5    this oral opinion.

6          The Court has considered very carefully all of the

7    written submissions and all of the remarks here today.

8          I first summarize the relevant procedural background.

9    Plaintiff Mark Nunez filed the original complaint in this

10   action on August 18th, 2011, against the New York City

11   Department of Corrections and subsequently filed amended

12   complaints in May and September 2012, adding seven other

13   individual plaintiffs and four class representatives.

14         The second, and operative amended complaint, which is

15   docket entry No. 34, sought injunctive and declaratory relief

16   on behalf of a proposed class of current and future inmates at

17   the jails not already subject to court orders governing the use

18   of force, and damages for the individual plaintiffs.

19         On January 7, 2013, the Court entered a stipulated

20   order pursuant to Federal Rules of Civil Procedure 23(a), 23

21   (b)(1)(A) and 23(b)(2), certifying a class of all present and

22   future inmates confined in jails operated by the Department of

23   Corrections, except for the Eric M. Taylor Center and the

24   Elmhurst and Bellevue Prison Wards.  That's docket entry 61.

25         That same order also appointed four individuals as

FALPNUNH

1    representatives of the plaintiff class and appointed Ropes and

2    Gray; Emery, Celli, Brinckerhoff and Abady, LLP; and the Legal

3    Aid Society as class counsel.

4            The order further required the submission of a

5    proposed notice to the plaintiff class and a plan for

6    distributing that notice, which was approved, along with the

7    method of dissemination, on February 28th, 2013.

8            Discovery, settlement negotiations, the issuance of a

9    report by the Department of Justice concerning conditions in

10   the youth facilities at Rikers and intervention in this lawsuit

11   by the United States ensued.

12           On July 1st, 2015, the parties moved this Court for

13   preliminary approval of the proposed consent judgment, approval

14   of the content and method of distribution of the notice to the

15   class, establishment of a schedule for the process leading up

16   to and including this fairness hearing, and revision of the

17   definition of the certified class as agreed to by the parties

18   in the proposed consent judgment.

19           On July 20th, the Court entered its order

20   preliminarily approving the consent judgment, approval of the

21   class notice, and revision to the definition of the certified

22   class, which is docket entry 214.  That order preliminarily

23   approved the consent judgment, preliminarily finding that its

24   terms were fair, reasonable and adequate and served the best

25   interests of the members of the plaintiff class, subject to a

FALPNUNH

1    final determination.

2            The order set forth the method for giving class notice

3    and objections.  The approved class notice was to be posted in

4    English and Spanish in areas of the law libraries, housing

5    areas and receiving rooms of each jail where it was reasonably

6    calculated to be seen by inmates in the area, and copies were

7    to remain posted until the expiration of the objection

8    deadline.

9            In addition, the City was required to deliver, on two

10   consecutive Saturdays, a copy of the class notice in English

11   and Spanish to every member of the plaintiff class who, at the

12   time of the distribution, was confined in a unit or housing

13   area in which the inmate was held in a cell 23 hours per day.

14   A postmark deadline of September 4th, 2015 was set for

15   objections, and the parties' counsel were required to file

16   responses to any timely objections by October 2nd.

17           That same order required the defendants to provide

18   notice of the proposed consent judgment to the appropriate

19   federal and state officials, as required by the Class Action

20   Fairness Act, and the corporation counsel's office has

21   confirmed today that that notice was provided and that the

22   statutory time period has elapsed with no objections being

23   lodged.

24           The July order also approved the revision of the class

25   definition, as agreed on by plaintiffs' class counsel and the

FALPNUNH

1   defendants, and for good cause shown.  This revision expanded

2   the class to include all present and future inmates confined in

3   the Eric M. Taylor Center, which is the youth facility.

4        As set forth in the declaration of Brenda Cooke,

5   submitted in support of the request for final approval, class

6   notice was properly disseminated in accordance with the

7   approved procedures.  The declaration of Christina Bucci,

8   submitted in support of the request for final approval,

9   represents that six letters were received in response.  None of

10  the writers objected to the consent judgment.  Rather, each

11  asked to be added to the class action.  Ropes and Gray

12  responded to each writer, explaining that if they met the

13  criteria for membership in the class, they need take no action

14  to remain part of the class.  Only one class member submitted

15  an objection to the consent judgment.  The Court e-filed that

16  objection, which was sent directly to the Court.

17       The Court has reviewed carefully all of the

18  submissions, and the Court has jurisdiction of this action

19  pursuant to Section 1331 of Title 28.  The individual damages

20  claims for all of the plaintiffs have been settled with

21  separate stipulations and orders entered with respect to each

22  individual's damages claim.

23       I now turn to the parties' joint request for approval

24  of the settlement embodied in the consent judgment.

25       When evaluating the proposed settlement of a class

FALPNUNH

1   action under Federal Rule of Civil Procedure 23(e), a court

2   must determine whether the settlement, taken as a whole, is

3   fair, reasonable and adequate and was not the product of

4   collusion.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d

5   96 at 116, the 2005 decision of the Second Circuit.  A fairness

6   determination requires the court to consider both the

7   settlement's terms and the negotiating process leading to the

8   settlement.

9           In this circuit, courts examine the fairness, adequacy

10  and reasonableness of the class settlement at the final

11  approval stage by considering the so-called Grinnell factors.

12  Namely, first, the complexity, expense and likely duration of

13  the litigation; second, the reaction of the class to the

14  settlement; third, the stage of the proceedings and the amount

15  of discovery completed; fourth, the risks of establishing

16  liability; fifth, the risks of establishing damages; sixth, the

17  risks of maintaining the class action through the trial;

18  seventh, the ability of the defendants to withstand a greater

19  judgment; eighth, the range of reasonableness of the settlement

20  fund in light of the best possible recovery; and, ninth, the

21  range of reasonableness of the settlement fund in relation to a

22  possible recovery, in light of all of the attendant risks of

23  litigation.

24          I cite again the Wal-Mart stores decision at Page 117.

25  I also refer the record to the decision *Ingels v. Toro*, 438 F.

FALPNUNH

 1    Supp. 2d, 203 at 211, a 2006 Southern District of New York

 2    decision, which notes that an inaction for injunctive relief,

 3    the risks associated with establishing entitlement to the

 4    remedies sought, rather than the risk of establishing damages

 5    is the relevant inquiry for the fifth factor.

 6            A presumption of fairness, adequacy and reasonableness

 7    may attach to a class settlement reached in arm's length

 8    negotiations between experienced, capable counsel after

 9    meaningful discovery.  I cite the Wal-Mart Stores decision at

10    Page 116.  Furthermore, there is a strong judicial policy in

11    favor of settlements, particularly in the class action context.

12            The proposed consent judgment was reached after

13    extensive discovery with sophisticated counsel involved on both

14    sides, as documented in the supporting declarations.  The

15    affidavits, or declarations, proffered by the parties

16    demonstrate that the negotiations were lengthy, vigorous and

17    conducted at arm's length over the course of several months by

18    experienced and competent attorneys and included the

19    involvement of the Commissioner of the Department of

20    Corrections and other officials of the Department, expert

21    consultants, the City's Corporation Counsel and the United

22    States Attorney.  Magistrate Judge James Francis of this court

23    oversaw the general pretrial management of this case and

24    monitored the settlement negotiation process.

25            Because the proposed settlement is the product of

FALPNUNH

1    arm's length negotiations between experienced and capable

2    counsel, after meaningful discovery, it is presumptively fair.

3    See In re: *EVCI Career Colleges Holding Corporation Securities*

4    *Litigation*, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).

5          Having determined that the consent judgment is

6    entitled to a presumption of fairness, the Court Will now

7    examine the so-called Grinnell factors to determine the

8    fairness, adequacy and reasonableness of the consent judgment.

9    The Court's evaluation is based on the parties' extensive joint

10   submissions, including the declarations of Anna Friedberg,

11   Steve J. Martin, the joint memorandum of law in support of the

12   motion for final approval, and the memorandum of law in support

13   of the preliminary approval of the consent judgment, as well as

14   the Court's own oversight of the litigation and settlement

15   process.

16         The detailed and comprehensive proposed consent

17   judgment itself speaks volumes of the thought and careful

18   consideration of the rights of the class members and the safety

19   and correctional administration issues that characterize the

20   negotiations and the final agreement.

21         This evidence, in light of the full record and the

22   Court's familiarity with this litigation, establishes the

23   following material facts that confirm that the proposed

24   settlement is fair, reasonable and adequate.  The Court finds

25   as follows:

FALPNUNH

1          As to the complexity, expense and likely duration of

2    the litigation, if the class action had continued, it would

3    have required extensive further fact discovery and, ultimately,

4    the presentation of evidence concerning each of the 12 named

5    plaintiffs' individual excessive force claims, as well as

6    proofs substantiating the pattern and practice claims asserted

7    on behalf of the class.

8          The further pretrial discovery would have included

9    depositions of very senior supervisory Corrections Department

10   and City officials.  A trial would have taken several weeks and

11   involved complex issues of fact and law.  The policies and

12   practices that underlie plaintiff's claims may well have

13   remained unaddressed on a systemic basis prior to final

14   resolution of the litigation.  This factor weighs strongly in

15   favor of approval of the settlement.

16         As to the reaction of the settlement class to the

17   settlement, there were a handful of responses to the notice of

18   the proposed settlement.  As reported in the Bucci declaration,

19   five individuals requested inclusion in the class and asserted

20   that they had suffered wrongdoing at the hands of the

21   correctional officers.  Ms. Bucci's declaration explains how

22   plaintiffs' counsel responded to those letters, none of which

23   objected to the settlement.

24         The one communication that characterized itself as an

25   objection was a letter addressed to the Court, which the Court

FALPNUNH

1    then filed on the ECF system as docket entry 231.  That letter

2    commends many features of the settlement and expresses the

3    writer's views on issues relating to corrections and his

4    suggestions on how the settlement might, in his view, be made

5    more robust.  None of the content of the letter, which the

6    Court has considered carefully, indicates that the proposed

7    consent judgment is inadequate, unfair or unreasonable.

8          The lack of objections to the consent judgment is an

9    extremely significant indication that the class finds that it

10   is fair, reasonable and adequate.  See *Charron v. Pinnacle*

11   *Group N.Y. LLC*, 874 F. Supp. 2d 179 at 198 (S.D.N.Y. 2012).

12   The fact that one class member would have preferred that it go

13   further, in some respects, does not diminish the strongly

14   positive significance of the reaction of the class as a whole.

15         I turn to the stage of the proceedings and the amount

16   of discovery completed.  The consent judgment was negotiated

17   and proposed to the Court only after extensive discovery had

18   been conducted, including the production of more than two

19   million documents by the City and the taking of 57 depositions

20   of current and former Department of Corrections personnel.  The

21   United States also conducted an extensive investigation before

22   issuing its report concerning conditions in solitary

23   confinement treatment in the facilities for young inmates and

24   joining this action as an intervenor.  The body of information

25   developed by the parties was amply sufficient to inform the

FALPNUNH

1  negotiation of a fair and reasonable settlement.

2          As to the risks of establishing liability and remedies

3  and of maintaining the class action through trial, given the

4  complexity and the breadth of the claims and the constitutional

5  issues involved, the litigation process clearly presented

6  substantial risks of adverse results or the achievement of

7  relief narrower than that provided for in the consent judgment.

8  The consent judgment greatly benefits the plaintiff class by

9  ensuring that the needed reforms will begin to be implemented

10  in the short term, rather than years from now, if at all,

11  following a trial and any appellate process.  This factor

12  weighs strongly in favor of approval of the settlement.

13          Turning to the range of reasonableness, the Court

14  recognizes that the consent judgment was the product of

15  extensive negotiations and that it would have taken significant

16  judicial resources, in a contested setting, to devise equitable

17  remedies that are as detailed and comprehensive as thoroughly

18  included in the 63-page consent judgment.  Detailed equitable

19  relief that is agreed to and fashioned with collaborative input

20  from the parties, and with the full support and cooperation of

21  the leadership of the affected institutions, is also far more

22  likely to be implemented smoothly and effectively than a

23  Court-fashioned outcome after a contested and protracted trial.

24          The detailed and extensive relief is significant, and

25  the Court finds that it is well within the range of reasonable

FALPNUNH

1    outcomes.  The Court also recognizes that the parties, at the

2    Court's request, have amended the release provision of the

3    consent judgment to clarify that it applies only to systemic

4    issues and only until the agreement is terminated, in

5    accordance with its terms; thus, preserving more clearly the

6    absent class members' rights to assert individual claims,

7    should any arise, and eliminating any ambiguity as to whether

8    further impact litigation following the development and

9    implementation of the measures called for by the settlement was

10   intended to be foreclosed.

11          Finally, the retention of the independent monitor to

12   oversee the implementation of the consent judgment gives the

13   Court additional comfort as to the likelihood of proactive and

14   prompt implementation of the consent judgment, and the Court's

15   own ability to assess regularly and efficiently the continued

16   fairness, adequacy and reasonableness of the measures called

17   for by the consent judgment as its provisions are carried out

18   over the next few years.  The settlement falls well within the

19   range of reasonable outcomes under the circumstances.

20          I turn to the issue of compliance with the PLRA.

21   Because this litigation concerns prison conditions, the

22   settlement cannot be approved unless it complies with the

23   requirements of the Prison Litigation Reform Act, or PLRA.  The

24   PLRA places constraints on the prospective relief that may be

25   granted in civil actions regarding prison conditions.  18,

FALPNUNH

U.S.C., Section 3626(a) provides that such relief shall extend no further than necessary to correct the violation of the federal right of a particular plaintiff or plaintiffs.  The PLRA requires the Court to find that the consent judgment is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right.

The remedies, however, may require more than the bare minimum that federal law would permit and, yet, still be necessary and narrowly drawn to correct the violation, and may be deemed properly drawn if it provides a practicable means of effectuation, even if such relief is overinclusive.  See *Handberry v. Thompson*, 446 F.3d 335 at 346 to 47, a Second Circuit decision.

Here, defendants have expressly agreed that the relief called for by the consent judgment is narrowly drawn, extends no further than is necessary to correct the alleged violations of federal rights, is the least-intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system.  This agreement is documented in Section 22 of the consent judgment.  The City's acknowledgment of the propriety of the prospective relief provides strong support for a conclusion by this Court that the concept judgment satisfies the requirements of the PLRA.

FALPNUNH

1          Moreover, in response to the Court's request for

2    confirmation by a person with corrections expertise that the

3    measures are narrowly drawn and necessary, the parties have

4    submitted the declaration of Mr. Steve Martin, who was retained

5    as a consulting expert by plaintiffs' class counsel, and has

6    been extensively involved in the case and has decades of

7    experience with correctional facilities.

8          The parties have jointly proposed Mr. Martin to serve

9    as the monitor under consent judgment and have jointly

10   proffered his declaration as evidence that the relief is

11   narrowly tailored and will not have an adverse effect on public

12   safety or the operation of the criminal justice system.

13         In his declaration, Mr. Martin recounts that he had

14   identified several areas of concern with respect to staff on

15   inmate violence in the City jails, including unusually high

16   frequency of use-of-force incidents, systemic deficiencies with

17   respect to adequate accountability, reporting and investigation

18   of use-of-force incidents and the need for improved training in

19   the use-of-force policies.

20         Mr. Martin concluded that substantial system-wide

21   reforms were necessary to reduce the level of staff-on-inmate

22   violence in the City jails, ensure the safety and well-being of

23   inmates, and protect inmates' constitutional rights.  In his

24   declaration, he describes the 14 categories of reform included

25   in the consent judgment, and explains how those remedies are

FALPNUNH

1    necessary to address the alleged violations.

2          He also confirms that the consent judgment's terms are

3    consistent with sound security practice and likely to promote

4    public safety and protect both inmates and department staff

5    from unnecessary harm and injuries.  The Martin declaration

6    provides uncontroverted evidence that the remedies provided for

7    in the consent judgment are consistent with the requirements of

8    the PLRA.

9          The Court notes that the City has voluntarily waived

10   the PLRA Section 3626(b)(1)(A) provision permitting any party

11   to apply for termination of prospective relief as to prison

12   conditions after two years, agreeing, instead, to the

13   termination mechanism set forth in the consent judgment, which

14   provides that the agreement shall terminate only upon a finding

15   by the Court that defendants have achieved substantial

16   compliance with the provisions of the agreement and have

17   maintained such compliance for a period of two years.

18         The prospective relief is, nonetheless, narrowly

19   tailored.  The consent judgment's termination provisions

20   appropriately recognize the fact that many of the undertakings

21   by the City in the consent judgment are long-term action items

22   and will likely take longer than two years to implement.

23         Based on Mr. Martin's declaration, the other

24   submissions that have been made in this case, the remarks of

25   counsel here in court today, and the Court's own careful review

FALPNUNH

1     and assessment of the consent judgment, the Court finds that

2     the prospective relief provisions of the consent judgment

3     satisfy the requirements of the PLRA, in that they are narrowly

4     drawn, extend no further than is necessary to correct the

5     alleged violations of federal rights, are the least-intrusive

6     means necessary to correct these violations, and will not have

7     an adverse impact on public safety or the operation of the

8     criminal justice system.  In fact, the Court finds that they

9     are very likely to have a positive impact on public safety and

10    the operation of the criminal justice system.

11         I now turn to the parties' agreement concerning the

12    payment of the fees and expenses of class counsel.  The consent

13    judgment contains a provision for an award of attorneys' fees

14    to class counsel in the amount of $6.5 million.  According to

15    the declaration of Christina Bucci, class counsel have devoted

16    approximately 35,000 hours of attorney time to the prosecution

17    of this litigation.

18         The determination of how much to award in attorneys'

19    fees is a matter entrusted to the sound discretion of the

20    Court.  *Reed v. A.W. Lawrence and Company, Inc.*, 95 F.3d 1170

21    at 1183, a 1996 Second Circuit decision.

22         Plaintiffs' class counsel represents that, if billed

23    at reasonable market rates, the actual aggregate value of

24    compensable attorney time charges, calculated as a lodestar

25    amount, would have far exceeded the award provided for under

FALPNUNH

```
 1     the consent judgment.  The City, which will pay the award from

 2     public funds, moreover, has agreed to the amount of attorneys'

 3     fees requested, which indicates that the award is fair and

 4     reasonable.  The Court approves the fee provision as fair and

 5     reasonable.

 6               In summary, the Court finds that the settlement, taken

 7     as a whole, is fair, reasonable and adequate and was not the

 8     product of collusion.  An order granting the motion and the

 9     consent judgment will be entered.

10               I, again, want to congratulate and commend everyone

11     for this tremendous effort on the groundbreaking work that has

12     brought us here today.  I commend the individual plaintiffs and

13     class representatives who had the courage to speak up about the

14     conditions under which they were confined, as well as the

15     attorneys and public officials who have brought this settlement

16     to fruition.

17               These reforms are very important steps, addressing

18     profoundly serious issues of inmate safety and dignity, which

19     have significant implications for the integrity and public

20     credibility of our criminal justice and correctional systems.

21               The settlement approval today is the product of

22     unprecedented analysis, investigation, collaboration,

23     commitment to the protection of rights, and vision for systemic

24     reform.  It is a detailed and far-reaching agreement that gives

25     real weight to the principle that force against detainees and
```

FALPNUNH

inmates should only be used as a last resort and that all
inmate interactions should be considered and controlled.  This
agreement will be an important foundational step for a future
of constructive change in correctional institution
administration.

     The provisions of the consent judgment that eliminate
punitive segregation for youth inmates under 18, and serve to
ensure the safety of and productive programs for youth inmates,
are equally significant and precedential.

     The undertakings and monitoring provisions set forth
in the consent judgment represent investments in the integrity
of the administration of our jails, which, in turn, constitute
investments in our communities.  The way we treat inmates not
only effects the lives of those individuals, but conveys
important messages about how we, as a society, value these
individuals and the communities to which they will return.

     Such serious attention to the safety, supervision and
monitoring of inmates and corrections personnel, alike,
requires and confirms the recognition of the worth and dignity
of every human being.  The settlement provides an important
example for other correctional systems throughout the country.

     There is a long road ahead, and successfully
implementing many of the provisions of the consent judgment
will, no doubt, require much patience and continued hard work.
The ultimate success of what you all have achieved here today

FALPNUNH

```
 1    will be measured in the years to come, and I look forward to

 2    seeing rapid and meaningful progress reflected in the monitor's

 3    reports.

 4              Again, my congratulations and thanks to each of you.

 5              Now, I will sign an order granting the motion, and I

 6    will also sign the consent judgment, which will be entered by

 7    the clerk of the court.

 8              (Pause)

 9              I have signed both, and they will be entered by the

10    clerk of court.

11              Is there anything else that we should take up together

12    today?

13              MR. ABADY:  I think we would probably be remiss if

14    somebody didn't stand up and say that we very much appreciate

15    the participation and attention that the Court has given to

16    this process in this case, both your Honor and Magistrate Judge

17    Francis.

18              This was a pretty unique experience for the parties,

19    at a certain point, abandoned litigation and really jointly

20    entered a process of problem solving, and we did it with the

21    assistance and oversight of the Court, and we're all

22    appreciative and mindful of what role your Honor played.  Thank

23    you.

24              THE COURT:  Thank you.  It is the Court's privilege.

25     honor and obligation.  So be well, everyone.
                 (Adjourned)
```