

**ZACHARY W. CARTER**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

ARTHUR G. LARKIN
Senior Counsel
Phone: (212) 356-2641
Fax: (212) 356-3509
alarkin@law.nyc.gov

August 17, 2016

**BY ECF AND HAND DELIVERY**
Hon. Laura Taylor Swain
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

      Re:     Mark Nunez v. City of New York, et al., 11-CV-5845 (LTS) (JCF)

Your Honor:

      We write in order to seek the Court's assistance resolving a confidentiality dispute that has arisen among the parties. The City believes that information concerning preliminary reviews of Use of Force ("UOF") incidents by the Department of Correction ("DOC") Investigations Division ("ID") – information that DOC provides plaintiffs and the Monitor on a monthly basis pursuant to Section XIX, paragraph 5, of the Consent Judgment (*see* Dkt. 249, at page 50 [bottom number]) – should remain confidential unless and until such information is included in the public Monitor's Report. Plaintiffs' counsel, on the other hand, believe that selected portions of the Preliminary Reviews – mainly the preliminary description of the type of force used – can be disclosed publicly at any time. As more fully set forth below, we respectfully submit that the City's position should be adopted and that plaintiffs' position should be rejected.

      *Factual Background*. Prior to the Consent Judgment, DOC utilized a two-tiered system for investigating UOF incidents, depending on the level of injury sustained by those involved. Incidents that involved serious injuries to staff or inmates, known as "Class A" incidents, were investigated by ID, a division that was supervised by a Deputy Commissioner who reported to the Commissioner. ID employs investigators who are authorized to interview staff members under oath pursuant to Mayor's Executive Order #16 ("MEO #16"). ID staff are also authorized to interview inmates and to obtain medical records with a signed release from an injured staff member or inmate. Incidents that involved less serious injuries, known as "Class B" incidents, or those that involved no injuries, known as "Class C" incidents, were typically investigated by the uniformed jail staff. Captains ordinarily gathered written reports from staff and other materials and prepared an investigating supervisor's report, which was then reviewed at multiple

levels including by the Warden.  Prior to the Consent Judgment, certain types of "Class B" incidents were also investigated by ID.

As part of the Consent Judgment, however, consistent with Commissioner Ponte's goal of expanding the role of ID in UOF investigations, the City agreed that ID staff would conduct Preliminary Reviews of all UOF incidents in order to determine if the incident met certain new criteria for a full ID investigation (beyond the former "Class A" criteria based solely on the level of injury, or the former criteria for the subset of "Class B" incidents that ID would typically investigate).  As part of the Preliminary Review, the investigator conducting the review, the "Preliminary Reviewer," is also required to determine whether, in light of the incident, any staff should be reassigned or placed on modified duty temporarily, or whether a criminal referral to the Department of Investigation ("DOI") is appropriate.  (Dkt. 249 [Consent Judgment], Section VII, paragraph 7)  The Preliminary Reviewer is also required to determine whether the incident has been properly classified as Class A, B or C, and whether DOC's initial department-wide summary report of the incident, known as the "24-hour report," is accurate.  In conducting the review, the Preliminary Reviewer must review any video footage, written staff reports, interviews of inmates, injury reports and photos.  (*Id*., ¶¶ 7(a)-(c))

In "limited circumstances" (*see id*., ¶ 7(e)), the Preliminary Reviewer may determine that his/her review is sufficient for all purposes and that no further investigation of the incident is necessary.  However, in the vast majority of cases, the Preliminary Review is exactly that – a preliminary, non-final assessment of the UOF incident, intended to enable DOC to take initial steps such as the reassignment of staff or criminal referrals.  In general, the Preliminary Reviews are not intended as a substitute for full ID or facility investigations of UOF incidents.

Preliminary Reviews are required to be documented (*id*., 7(d)), and the results of each review must be produced to class counsel and the Monitor on a monthly basis (*id*., Section XIX, paragraph 5).  Submitted separately with the hard copy of this letter are sample Preliminary Review report entries reflecting the information gathered by the Preliminary Reviewer in those cases.[1]

*Summary of Argument*.  We submit that the Preliminary Review documentation should be treated as confidential between (i) the time the City produces that documentation to plaintiffs and the Monitor, and (ii) publication of the Monitor's Report on the ECF docket.  Thereafter, we submit, the Preliminary Reviews may be discussed publicly to the extent – and only to the extent – that information concerning those reviews is disclosed in the Monitor's Report.[2]  We further

---

[1] The monthly Preliminary Review Report is provided to the Plaintiffs and Monitor in an Excel sheet containing 38 columns of data for each UOF incident. The most recent report provided on August 1, 2016 contained data on 474 UOF incidents.  The report does not lend itself to printing as it would constitute over 2,000 pages.  For this reason, we have extracted the most relevant data from a sampling of UOF incidents contained in the August 1st report into a usable Word document.

[2] This proposed restriction is not intended to interfere with (i) DOJ's use of the preliminary review information for law enforcement purposes or the obligation DOC has pursuant to Section XIX, paragraph 6, to notify DOJ regarding UOF incidents where the conduct appears to be criminal in nature, or (ii) the

Continued…

submit that in no event should any document that names or otherwise identifies any member of correction staff be disclosed or discussed publicly. The parties' prior practices in UOF litigation, including this lawsuit, the protective order and the Consent Judgment itself mandate this result.

First, during the litigation of this matter and in a prior UOF class action, Ingles v. Toro, 01-CV-8279 (DC), the parties expressly agreed that documents concerning any ID investigation into a UOF incident were not to be disclosed until the investigation was finally closed. In both Ingles and this matter, the plaintiff class was represented by the Legal Aid Society, Prisoner's Rights Project and the firm Emery Celli Brinckerhoff & Abady. Plaintiffs have never taken the position that documents concerning an open ID investigation are discoverable, with good reason: All such documents are pre-decisional, deliberative and are protected from disclosure by the law enforcement privilege as well. *See, e.g., Tigue v. United States Department of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated"); *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (law enforcement privilege protects "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation") (citation and internal quotation marks omitted).[3]

Plaintiffs have indicated to us that, because the protective order entered during the litigation (Dkt. 89) does not cover Preliminary Reviews, those reviews should not be considered confidential. But DOC did not utilize Preliminary Reviews until after the litigation was settled, and in any event DOC would not have produced any documents concerning open ID investigations even with a protective order. For these reasons, the absence of any provision in the protective order covering Preliminary Reviews is immaterial to the parties' dispute.

Second, the protective order expressly bars disclosure of "all reports, … including all use of force reports, Investigation Division records, … and all similar records, to the extent such documents name or otherwise identify individual DOC staff members, who are not named defendants in this action, in connection with allegations of improper uses of force/chemical agents or any other type of misconduct." (Dkt. 89, ¶ 2(i), at page 3) Preliminary Reviews include the names of correction officers (the vast majority of whom were not defendants in this action), and also include information that could enable anyone within DOC or the correction community to identify the officers involved, viz., the date of various incidents, the jails where those incidents occurred, incident numbers and the name(s) of any inmates involved. Public discussion of all such information is expressly barred by the protective order which remains in

---

parties' ability to enforce the Consent Judgment, set forth in Sections Section XXI, Paragraph 2 or Section XX, Paragraph 11(d).

[3] In contrast, the City normally discloses completed facility investigations of less serious incidents – even if those same investigations were later reviewed or fully investigated by ID.

3

force during the term of the Consent Judgment (*see* Dkt. 249, Section XX, paragraph 11(d), at page 53 [bottom number]).

<u>Third</u>, we submit that only the information disclosed in the Monitor's Reports should be the subject of public discussion regarding Preliminary Reviews.  In an effort to reach a compromise on this issue, the Monitor worked with the Parties to develop categories of aggregate data that could be extracted from the Preliminary Reviews, and qualitative analysis of those Reviews, that will be included in each Monitor's Report.  For example, the Monitor plans to develop data that identifies: (1) the number of Preliminary Reviews at each facility, (2) the proportion of Preliminary Reviews that is timely, and (3) the number of Preliminary Review that are referred for investigation to ID and the Facilities.[4]

Yesterday evening, at approximately 6:45 p.m., the Monitor informed us that plaintiffs "would like to be able to use the information in the Preliminary Reviews to inform their public discussions regarding the trends about *the type of use of force* employed by the Department.  Any information gleaned from the Preliminary Reviews would include the express caveat that the information is based on <u>preliminary</u> <u>assessments</u>" (italics added).

However, we submit that plaintiffs' most recent proposal should not be adopted.  We submit that public disclosure of the Preliminary Reviews should be limited to the information that the Monitor intends to disclose in his public Reports.[5]  Disclosure of the type of force used based solely on "preliminary" reviews – which is what plaintiffs seek to do – would be both inaccurate and misleading.  (These concerns animate the deliberative process privilege and support non-disclosure of preliminary, pre-decisional materials altogether, *see Tigue*, 312 F.3d at 76.)  Such disclosure would be harmful to both the Preliminary Review process and the advancement of reforms given that such preliminary data could be potentially inflammatory and could distract the Department (and the Monitoring Team) from focusing on developing a robust, reliable, and timely investigation process.  The Monitor's analysis of DOC's use of force is informed in part by the Preliminary Reviews, but also by a variety of additional sources.  The Monitoring Team has been provided over 1,600 Preliminary Reviews as well as hundreds of COD reports, Preliminary Review packets and closed investigation files.  The Monitoring Team also interviews staff and inmates, reviews log books, observes videotaped footage, and observes operations during tours of the facilities.  Access to all of this information uniquely positions the Monitor to opine on trends and patterns regarding force, which is why the Consent Judgement required the Monitor to be given such broad access.  (Dkt. 249, Section XX, Paragraph 8)

---

[4]  The development of this data requires a qualitative assessment in order to develop it and therefore the Monitor is in the best position to develop such information.

[5]  Further, regardless of what information from the Preliminary Reviews the Monitor chooses to include in his Reports, Section XX, paragraph 17 of the Consent Judgment allows DOC the opportunity to request redactions to the Monitor's Report and any attached documents prior to the public filing of the Report in order to protect privileged and/or confidential information.  We contemplate that public discussion of Preliminary Reviews would be limited to the information disclosed in the final, public version of the Monitor's Report.

We submit that the routine disclosure of this information in the Monitor's Report is sufficient to enable plaintiffs' counsel to fulfill any potential obligation they may have to advise their clients about the status of the case. Plaintiffs negotiated a detailed agreement, set forth in the Consent Judgment, which provides for the Court-appointed Monitor to assess the City's compliance with its provisions. The Consent Judgment provides that the Monitor is "responsible for assessing the Department's compliance with this Agreement" and is "subject to the supervision and Orders of the Court." (Dkt. 249, Section XX, ¶¶ 1, 3) The Monitor will file with the Court periodic reports "describing the efforts the Department has taken to implement the requirements of this Agreement and evaluating the extent to which the Department has complied with each substantive provision of this Agreement." (*Id*. ¶ 16) Public statements by Plaintiffs about Preliminary Reviews of UOF incidents, or the types of force used in "preliminary" reviews, would be inaccurate and misleading and will likely result in competing and unexplained data, which will inherently distract DOC from developing a robust, reliable investigation process.

For the foregoing reasons, we submit that this application should be granted.

                                                Respectfully submitted,

                                                /s/
                                        Arthur G. Larkin, Esq.
                                        Senior Counsel

AGL/m
Enclosure (with hard copy only)
cc:    All Counsel (by ECF)