

Prisoners' Rights Project
199 Water Street
New York, NY 10038
T (212) 577-3530
F (212) 509-8433
www.legal-aid.org


Blaine (Fin) V. Fogg
*President*

Seymour W. James, Jr.
*Attorney-in-Chief*

Justine M. Luongo
*Attorney–in–Charge*
Criminal Defense Practice

Mary Lynne Werlwas
*Project Director*
Prisoners' Rights Project

August 25, 2016

**BY ECF AND HAND DELIVERY**

Hon. Laura Taylor Swain
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

>              Re:      *Mark Nunez v. City of New York, et al.*, 11 Civ. 5845 (LTS) (JCF)

Your Honor:

          On behalf of the Legal Aid Society's Prisoners' Rights Project and Emery Celli Brinckerhoff & Abady LLP, counsel for the Plaintiff class in this action, we write to oppose the City's August 17, 2016 letter motion, Dkt. No. 283, which seeks to impose improper confidentiality designations in violation of the Protective Order, Dkt. No. 89, and Consent Judgment, Dkt. No. 249, entered in this case.

          The scope of this dispute is narrow.  The sole issue before the Court is whether Plaintiffs' counsel may discuss reported trends in staff Use of Force ("UOF") against inmates where that information is gleaned from monthly reports denominated "Preliminary Reviews."  Plaintiffs' counsel seeks only to discuss UOF trends —such as the types of force staff report using against inmates, or what alleged inmate conduct is prompting force—and has agreed to *not* disclose any identifying information about specific incidents or staff members.  An example of such a trend might be a prevalence of incidents reportedly involving chemical agents, or a cluster of staff reporting that they have struck inmates in the head.

          The information that Plaintiffs seek to disclose is public and non-confidential under the unambiguous language of Consent Judgment and Protective Order,

which controls this dispute.  The information will be addressed in the Monitor's reports.
The City's position, in substance, is that, in the five- to six-month interims between
Monitor's reports, the public and the class should remain in the dark about the facts that are
at issue in this lawsuit—unless, that is, if the City chooses to issue press releases about
trends it wishes to highlight, as in fact it has done.  *See* Exhibit A.[1]  The City's letter motion
should be denied.

### 1.  Factual Background

The parties entered into a detailed Consent Judgment to resolve this class
action which the Court approved and entered on October 21, 2015.  Dkt. No. 249.

As part of the Consent Judgment, the Plaintiffs negotiated to receive
relatively contemporaneous information about staff UOF at Rikers to keep the counsel and
the class apprised of the circumstances in the jails in the periods between monitoring
reports.  The City agreed to provide that information through monthly reports of "the
documented results of all Preliminary Reviews conducted in the preceding month."  Dkt.
No. 249, § XIX, ¶ 5.  A Preliminary Review entails reviewing and documenting video
footage, written staff reports, inmate interviews, injury reports, and photos.  *Id.*, § VII, ¶ 7.
Preliminary Reviews were created during the settlement negotiations as a refinement of the
previous DOC practice of "Rapid Response Reviews," in which wardens conducted a
similar early review of the reported facts of each incident.  The "documented results" of the
Preliminary Review provide a summary of the staff version of events, the inmate's version
of events, and objective facts such as inmate injuries and video footage.  As the parties
negotiated which documents Plaintiffs' counsel would receive in the period between
compliance reports to provide information about UOF in the jails, the parties agreed that the
newly created Preliminary Review reports would serve that function.

In reaching the Consent Judgment, the parties also negotiated about the
confidentiality of the information that would be provided to class counsel.  Class counsel
was unequivocal in rejecting any notion that all information received pursuant to the
Consent Judgment would be confidential.  The resulting agreement in the Consent
Judgment provides that the "protective order entered on May 23, 2013 (Dkt. 89) remains in
full force and effect."  Dkt. No. 249, § XX, ¶ 11(d).  That protective order defines
"Confidential Materials" as including only nine specific categories of documents and
information.  Dkt. No. 89, ¶ 2(a)-(i).

The parties agree that eight of the nine categories of Confidential Materials
are irrelevant to this dispute.  The parties likewise agree that, to the extent the Preliminary
Reviews may "name or otherwise identify individual DOC staff members," such names or
identifying information are Confidential Materials and may not be publicly disclosed.  Dkt.

---

[1] "Mayor DeBlasio Announces 45 Percent Reduction in Serious Violence Indicators at Department
of Correction" (August 2, 2016), at http://www1.nyc.gov/office-of-the-mayor/news/641-16/mayor-
de-blasio-45-percent-reduction-serious-violence-indicators-department-of.

No. 89, ¶ 2(i).[2]  The protective order contains no provision allowing for information beyond those nine categories to be marked as Confidential Materials.  *See id.*

Nonetheless, the City has designated the entirety of the monthly Preliminary Reviews—which means all information about use of force that it provides to Plaintiffs other than semiannual compliance reports—as confidential under the Protective Order. Plaintiffs' counsel challenged the designation.  As a measure of good faith, Plaintiffs' counsel also agreed not to publicly disclose any details that would identify particular UOF incidents or investigations.  Plaintiffs' counsel seeks only to be able to inform the public and our clients—the class of "all present and future inmates confined in [specified DOC] jails," Dkt. No. 61—about the nature of continuing reports of staff use of force at Rikers.

Despite Plaintiffs' counsel's representations and the clear language of the Protective Order and Consent Judgment, the City moved this Court by its letter motion for an Order that the entirety of the Preliminary Reviews are confidential.

2.   <u>The City Cannot Re-Write the Consent Judgment</u>

Contrary to the City's assertion, it is far from "immaterial" that the Protective Order does not have provision covering Preliminary Reviews—in fact, it is dispositive.

The City does not—and cannot—claim that the Protective Order, which continues "in full force and effect," covers the Preliminary Reviews (other than staff identities).  Instead it claims that the Protective Order is immaterial because it was first entered into in May 2013, before Preliminary Reviews existed.  This argument fails.  The relevant point in time is not when the Protective Order was entered in 2013, but when the parties entered into the Consent Judgment in 2015.  At the time the Consent Judgment was negotiated and finalized, the City had committed to producing the monthly Preliminary Reviews as the class's principal source of relatively contemporaneous information about the practices at issue in this lawsuit, and agreed to a confidentiality provision that did not treat such information as confidential (other than staff identities).  If the City wanted Preliminary Reviews to be confidential, it could have (1) negotiated for inclusion of such a provision in the Consent Judgment, or (2) sought to modify the Protective Order at that time.  Or, if the City wanted to provide Plaintiffs with an alternate stream of information concerning UOF practices derived from a different point in the UOF review process, it could have.  In agreeing to the Consent Judgment, Plaintiffs relied on the fact that the Protective Order already in place constituted the full scope of the parties' agreement as to

---

[2]  That ninth category of confidential material states: "all reports, summaries, tabulations or compilations of data, including all use of force reports, Investigation Division records, Directive # 5003 records and logs, Gang Intelligence Unit records and all similar records, *to the extent such documents name or otherwise identify individual DOC staff members, who are not named defendants in this action*, in connection with allegations of improper uses of force/chemical agents or any other type of misconduct." Dkt. No. 89, ¶ 2(i) (emphasis added).

confidentiality.  The City cannot now avoid the mandate of the Protective Order that *it agreed* would continue to govern.

Because the language of the Consent Judgment and the protective order incorporated therein is clear and unambiguous, the Court "is not entitled to expand or contract the agreement of the parties as set forth in the consent decree, and the explicit language of the decree is given great weight."  *See Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (citations omitted).  That cardinal contract interpretation principle has added weight in interpreting consent decrees because, as the Supreme Court recognized, the "decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve."  *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

If, as it appears, the City's aim is to gain from the Court what it did not or could not obtain at the bargaining table, its back-door approach must be rejected.  Because the Consent Judgment incorporates the Protective Order, if the City wants to mark as confidential documents that are not contemplated by the Protective Order, it must seek to modify the Consent Judgment under Federal Rule of Civil Procedure 60.  *See Barcia v. Sitkin*, 367 F.3d 87, 98-99 (2d Cir. 2004) (holding consent decrees are subject to Rule 60).  Modification of consent decree is only proper in a few limited circumstances, none of which the City has even argued apply here.[3]  Moreover, where, as here, "the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits . . .  the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal."  *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986).  The City cannot meet the high burden of modifying the Consent Judgment and, absent modification, the Consent Judgment does not permit the designation of Preliminary Reviews as confidential.

---

[3] The Second Circuit has held a motion under Rule 60(b) is "generally not favored and is properly granted only upon a showing of exceptional circumstances."  *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quoting *United States v. Internat'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)).  The six bases for relief under Rule 60(b) are: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).  Plainly, (b)(1)-(b)(4) do not apply.  In addition, (b)(5) does not apply because it remains equitable to enforce the consent decree as written.  The consent judgment was entered just months ago, last autumn, and, since then, there has been no change in the facts or the law—let alone the "significant change either in factual conditions or in law" required under (b)(5).  *See Horne v. Flores*, 557 U.S. 433, 435 (2009).  Finally, (b)(6) does not apply because there is no "extraordinary circumstances, or extreme hardship."  *DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)).

3. <u>Information Regarding Ongoing Investigations Will Not Be Disclosed</u>

Furthermore, contrary to the City's argument, Plaintiffs' proposal would not interfere with ongoing investigations. Accordingly, even if the Court were inclined to consider the underlying question of *whether* all information in the Preliminary Reviews should be treated confidentially—a question that, respectfully, is beyond this Court's power given the stringent requirements of Rule 60—the City's request should be denied.

Plaintiffs do not seek to disclose any information about the *investigation* of any particular uses of force. We affirmatively agreed not to reveal any information about further steps that might be recommended in the Preliminary Reviews. Instead, we seek to address the facts reported in the Preliminary Reviews to shine light on trends about the types and circumstances of uses of force at Rikers. Analysis of such aggregate reported information from staff and inmates is a standard type of analysis of use of force in the jails, regardless of whether the Department has issued formal findings (findings whose integrity was also challenged in the instant action and is addressed by the Consent Judgment). Revealing such trends would not compromise any pending investigation because it would be wholly unrelated to a particular incident and we will not reveal investigative steps.[4]

At bottom, the City's stated concern about interference with pending investigation is bluster. The City's real concern appears to be a desire to control the public flow of information about use of force on Rikers Island. The City wants to issue press statements detailing intricate data about use of force trends at any point it choses, while limiting the public's ability to learn information about Plaintiffs' (sometimes countervailing) perspective on use of force trends. *See* Exhibit A. The City's public statements do not compromise pending investigations and neither would Plaintiffs' statements which draw from the Preliminary Reviews.

4. <u>The Public Interest and the Class's Interest Favor Disclosure</u>

Finally, though the language of the Consent Judgment controls this dispute, it is worth noting that the public interest and the class members' interest favor keeping aggregate information about use of force practices gleaned from Preliminary Reviews non-confidential.

---

[4] Moreover, as a practical matter, most investigations are closed by the time that Plaintiffs' counsel receives the Preliminary Reviews. Some incidents are closed immediately upon completion of the Preliminary Reviews. Most other incidents are investigated by the inmate's facility within 25 business days of the incident. Dkt. No. 249, § VII, ¶ 13(b). Plaintiffs' counsel does not receive copies of Preliminary Reviews until the end of the month *following* the completion of any given Preliminary Review. For example, if an incident occurs on January 1, the Preliminary Review deadline is January 6 and the facility Investigation Deadline is January 30. Plaintiffs will not receive a copy of the Preliminary Review until February 28—a full month after the investigation is complete.

There is a presumption of access afforded judicial documents and other analogous compliance documents created in connection with a Consent Judgment, a presumption that applies whether or not the documents are physically filed in court.  In fact, even when documents are not "judicial documents," they may still be subject to public access based on the "balance between privacy rights and the interest of the general public." *See S.E.C. v. TheStreet.Com*, 273 F.3d 222, 234 (2d Cir. 2001).  This law would arguably support disclosure of the actual Preliminary Reviews, but Plaintiffs' position does not go that far: we wish only to be able to discuss the conclusions that can be drawn from those records collectively.

Here, the balance weighs heavily in favor of the interests of the general public.  The Preliminary Reviews summarize staff reports and facts about incidents, some of which may be subject to additional investigation within DOC, and some of which will not.  But all such reports concern UOF incidents that occur in public jails involving actions by public employees that are reviewed and investigated by public officials.  The rates and types of uses of force by Rikers' staff have been so excessive as to prompt this class action and the DOJ's intervention.  There is therefore a strong public interest in monitoring these incidents.  Indeed, the Second Circuit recognized this interest in *United States v. Erie County, N.Y.*, 763 F.3d 235, 241 (2d Cir. 2014), a prison reform litigation with parallels to this one.  As the Second Circuit held:

> Erie County wishes to keep the reports which measure its progress, or regress, under seal and, therefore, out of public view. Yet every aspect of this litigation is public. The United States Department of Justice is a *public* agency, which brought a claim before a *public* court, the District Court for the Western District of New York, arguing that a *public* government, Erie County, failed to meet constitutional requirements in operating two public institutions, the Erie County correctional facilities. And, critically, although a settlement is now in place, the public court retains jurisdiction over the dispute, and indeed may be moved, or move itself, to reinstitute civil proceedings. In a case where every aspect and angle is public, Erie County seeks, nonetheless, to keep the compliance reports under the darkness of a seal. But the First Amendment does not countenance Erie County's position. Neither experience nor logic supports sealing the documents.
> . . .

*Id.* (emphasis in original).  Other courts have reached similar results with respect to settlement compliance reports. *United States v. Amodeo*, 44 F.3d 141, 146-48 (2d Cir. 1995) (compliance reports filed by Court Officer—even though she was not required to do

so—were subject to public right of access); *United States v. HSBC Bank USA, N.A.*, No. 12-CR-763, 2016 WL 347670, at *7 (E.D.N.Y. Jan. 28, 2016) (unsealing Monitor's Report).[5]

These presumptions of public access are all the more important here, because communications with the public are the best way to communicate with our class of "all present and future inmates confined in [specified DOC] jails," Dkt. No. 61. Courts have repeatedly recognized the importance of permitting communication between Plaintiffs' counsel and the members of the class. *See, e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) ("order limiting communications between parties and potential class members should be based on a clear record of specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties").

Moreover, class counsel, who have been involved in litigation concerning use of force in the City jails for many years, are the persons outside City government who are in the best position to comment on the state of use of force practices in the City jails and on the validity of the City's public pronouncements. We are frequently called upon to address these issues before the Board of Correction and the City Council. We are also often consulted by the press reporting on the reforms at Rikers. If we are unable to provide even such general information as is provided to us by the Preliminary Reviews—our sole source of contemporaneous information under the Consent Judgment—that will harm the public's ability to be informed about the state of use of force at Rikers.

Nor is there any merit to the City's contention that Plaintiffs' counsel must effectively be precluded from speaking publicly about the often harmful use of force practices inflicted on class members until after the Monitor has published a report—and that, even then, Plaintiffs are confined merely to discussing that report. The Consent Judgment has no such limitation. The City itself has not adhered to any such practice, choosing to issue press releases and speak publicly on matters that will be the subject of the Monitor's report. Plaintiffs' counsel should be similarly able to inform the public and the class about trends in UOF in the interim between Monitor reports.

***

For the reasons above, we respectfully request that the Court deny the City's request to designate the Preliminary Reviews (other than staff identities) as Confidential Materials. We do not object to the Court memorializing Plaintiffs' agreement as follows: "Plaintiffs' counsel shall treat as Confidential Materials, pursuant to the protective order, all information in the Preliminary Reviews that identifies with particularity the use of force incident, including the date of the incident, names or identification numbers of involved staff or inmates, or similar incident-specific information. Nothing herein should limit

---

[5] While twice a year, Plaintiffs will receive compliance and Monitor's reports including data beyond the Preliminary Review Reports, the discussion of progress or lack thereof in controlling the use of force is going on *now*, with the City putting forth its view and the plaintiff class unable to respond meaningfully if the City's position is adopted.

Plaintiffs' use of information gleaned from Preliminary Reviews so long as Plaintiffs' counsel do not reveal such Confidential Materials."

Respectfully Submitted,

*/s Mary Lynne Werlas*

Mary Lynne Werlwas

c. All Counsel by ECF