

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

**ZACHARY W. CARTER**
*Corporation Counsel*

**ARTHUR G. LARKIN**
Senior Counsel
Phone: (212) 356-2641
Fax: (212) 356-3509
alarkin@law.nyc.gov

September 2, 2016

**BY ECF**
Hon. Laura Taylor Swain
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

Re: Mark Nunez v. City of New York, et al., 11-CV-5845 (LTS) (JCF)

Your Honor:

We write in reply to plaintiffs' letter of August 25, 2016, and in further support of the City's request that the confidentiality of Preliminary Reviews be maintained unless and until such information is included in the public Monitor's Report. We submit that plaintiffs' opposition elevates form over substance and should be rejected.[1]

First, plaintiffs assert that because the protective order (Dkt. 89) does not define Preliminary Reviews as "confidential materials," the City's motion should be denied. In plaintiffs' view, the absence of any reference to Preliminary Reviews is "dispositive." But as explained below, the Preliminary Review process is a creation of the Consent Judgment and did not exist when the protective order was drafted. Further, the omission of Preliminary Reviews in the confidentiality provisions of the Consent Judgment (and the protective order) is the predictable result of the long history of dealings between the City and the Legal Aid Society ("LAS"), during which the City never even produced – let alone produced on a confidential basis – documents concerning open ID investigations.

[1] We submit this reply today instead of yesterday, which was the original due date, with plaintiffs' consent. We respectfully request that Your Honor grant this brief one-day extension *nunc pro tunc*. We did not wish to burden the Court with a separate application on the matter.

In the prior DOC-wide use of force class action litigated by the LAS, *Ingles v. Toro*, 01-CV-8279 (DC), and in this matter as well, LAS – acting on behalf of the class in both cases – took the position that open ID investigations were not required to be produced, and that only closed ID files should be produced. (Annexed as Exhibit A is a letter from LAS to Judge Chin in the *Ingles* matter, stating among other things that plaintiffs agreed that the City "could withhold ID files until an investigation was complete …." (see highlighted text)) In this matter, similarly, the City produced ID files as they were closed in the normal course; we did not at any time produce open ID investigation files.[2] Because production of open ID files was not contemplated either in *Ingles* or this matter, the protective order does not list such documents as "confidential materials."

Plaintiffs acknowledge that "cardinal contract interpretation principle[s]" apply to the Consent Judgment (Dkt. 287, at page 4). "Because consent decrees embody a compromise between parties who have waived their rights to litigation, they should be construed basically as contracts." *United States v. Broadcast Music, Inc*., 275 F.3d 168, 175 (2d Cir. 2001) (citation and internal quotes omitted). Consistent with these principles, when interpreting consent decrees, the courts may consider the "evidence of prior negotiations … [and] prior course of dealing" between the parties. *Id*. (citing *Reynolds v. Roberts*, 202 F.3d 1303 (11th Cir. 2000)).

The parties' prior course of dealing reflects a clear understanding that the City was not required to produce open ID files. The parties' prior negotiations regarding the protective order demonstrate that, because open ID files were never contemplated as part of any document production, that category of material was not included within those designated "confidential." For this reason, neither the protective order in *Ingles* nor the protective order in this matter addressed open ID files. Plaintiffs seek to exploit this omission to allow public disclosure of information that they would not even have obtained during the lawsuit, but we submit that their effort is not equitable and should be rejected.

To the extent plaintiffs would argue that the City should have re-negotiated the protective order in the midst of negotiations regarding the Consent Judgment, we submit that this argument likewise should be rejected. The Consent Judgment is sixty (60) pages long, divided into over twenty (20) separate sections dealing with many different areas of jail management. Given the breadth of the parties' negotiations and their prior course of dealing, in which LAS had never even sought production of open ID files, the City could not reasonably anticipate that any dispute would arise over whether documents concerning open ID files – which is what the Preliminary Reviews are – should be disclosed publicly. It appears that plaintiffs seek to exploit an understandable oversight, and we respectfully submit that the Court should not permit plaintiffs to do so.[3]

[2] We produced facility investigation files that were the subject of ID investigations, because those files were complete and were not pre-decisional or covered by the law enforcement privilege.

[3] Contrary to plaintiffs' position, the City does not seek relief from the Consent Judgment pursuant to Rule 60(b).

Second, plaintiffs complain that the City wishes "to control the public flow of information about use of force on Rikers Island" (Dkt. 287, at page 5).  But the protective order allows the producing party, in this case the City, to do exactly that.  Paragraph 9 provides in relevant part:  "Nothing in this Protective Order shall preclude a party from using, for any purpose outside this litigation, documents that party produced … as Confidential Materials." (Dkt. 89, at page 5).  Because of the parties' prior course of dealing, the protective order should be read to include Preliminary Reviews as "confidential materials."[4]

Third, contrary to plaintiffs' arguments, balancing the public interest against the need for confidentiality, the Court should conclude that Preliminary Reviews – one data stream among many that the City maintains – must remain confidential unless and until such information is included in the public Monitor's Report.  The City routinely discloses other data concerning the use of force inside the jails, including the number of incidents and the extent of injuries to staff and inmates, once the data is appropriately vetted and becomes final.  Preliminary Reviews do not include final conclusions about the type of force used or the extent of injuries to inmates or staff.  Such information is only preliminary, and public disclosure would not inform the public accurately.

Finally, LAS maintains that because it has been "involved in litigation concerning use of force in the City jails for many years," it is the entity "outside City government who [is] in the best position to comment on the state of use of force practices in the City jails and on the validity of the City's public pronouncements."  (Dkt. 287, at page 7).  It is the job of the Monitor, however, not class counsel, to assess publicly the City's compliance with the Consent Judgment, and therefore it would appear that the Monitor, not class counsel, is the "best position to comment on the state of use of force practices in the City jails."  Plaintiffs vigorously insisted that a Court-appointed Monitor oversee compliance with whatever agreement the parties reached, and the City agreed to the appointment of Mr. Martin, plaintiffs' expert, as the Monitor. If plaintiffs believe that the City is not in compliance with the agreement, the Consent Judgment provides a dispute resolution mechanism (*see* Dkt. 249, at page 57).  For this additional reason, we submit that the information concerning Preliminary Reviews that is ultimately disclosed in the public Monitor's Report is sufficient for class counsel's purposes.

 For the foregoing reasons, we submit that this application should be granted.

                                                Respectfully submitted,

                                                /s/
                                              Arthur G. Larkin, Esq.
                                              Senior Counsel

---

[4] Plaintiffs assert that "most investigations are closed by the time that plaintiffs' counsel receives the Preliminary Reviews" (Dkt. 287, at page 5 n.4).  To the extent plaintiffs are correct, the confidentiality concerns raised by the City would not be presented by public discussion of trends in uses of force as described in closed investigations.

AGL/m
cc:     All Counsel (by ECF)

# EXHIBIT A



ONE BATTERY PARK PLAZA, NEW YORK, N.Y. 10004 TEL: (212) 577-3530 FAX: (212) 425-2465 www.legal-aid.org
PRISONERS' RIGHTS PROJECT

December 2, 2003

*By Facsimile*

Daniel L. Greenberg
*President and Attorney-in-Chief*

Steven Banks
*Associate Attorney-in-Chief*

*Prisoners' Rights Project*
John Boston
*Project Director*

Hon. Denny Chin
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10004

Re: *Ingles v. Toro,* 01 Civ. 8279 (DC)

Your Honor:

We write in response to defendants' letter dated November 25, 2003. Because their request for a 45 day adjournment will unnecessarily delay progress in this case, and their request for a protective order is not well-founded, plaintiffs oppose both requests.

<u>Opposition to 45 Day Extension</u>

Plaintiffs oppose defendants' request for a 45 day extension because it will unnecessarily slow discovery. In reliance upon the existing document discovery deadline, plaintiffs noticed 32 depositions in December and January. We believe that prompt commencement of depositions is necessary given the size of this case and the need to complete discovery on a short time schedule. Defendants ask that no depositions be permitted before February 15, 2004. This is unnecessary, as plaintiffs are prepared to take some depositions, even without the documents described in defendants' letter. We should be permitted to proceed with those depositions without delay.

We further do not believe defendants have shown good cause for seeking a substantial adjournment. The documents were requested December 9, 2002, and have been available to defendants since then. For example, we see no reason why the files of officers arrested for using force will not be sent by the Inspector General to defendants' counsel until two weeks *after* the production deadline, nor why defendants waited until now to review documents concerning arrests of inmates "to consider whether any privileges apply."[1] Moreover, an adjournment will only slow this case, since, for technological reasons, there is a "lag time" after defendants produce documents and before plaintiffs can review and use them at depositions.

Even if additional time to produce documents is permitted, the City has not shown why

---

[1]Contrary to defendants' statement, plaintiffs did not seek "additional" directives. We notified them that their responses were incomplete. We asked for an attachment missing from a produced directive, and a directive on use of force that should have been produced, but was not.



they need 45 days.[2] In conversations with us, they sought consent to only a 30 day extension. The 45 day request seems more tailored to avoiding the depositions plaintiffs have noticed for December and January than providing time to produce remaining documents. Thus, if the Court grants defendants more time to produce documents, we ask that, in fairness to plaintiffs, we be permitted to take the depositions we have noticed and can take without the outstanding documents (or that, if the depositions are re-scheduled, the deposition priority remain the same). In addition, if an extension is granted, we ask that an equal number of days be added to the deposition period to provide at least as much time as provided in the existing schedule.

Production of Facility Investigations of 2003 Incidents

The City's request for a protective order is meritless. They seek to withhold two use of force files solely on grounds of burdensomeness. While we believe this dispute could have been resolved with minimal cooperation from defendants, since they have raised it, we must respond.

At issue are use of force files for two incidents in 2003 involving five named defendants. These reports were sought in the First Document Request nearly a year ago. Defendants did not object on the present grounds until late October, when they stated they would not produce documents for incidents under review by the Investigation Division (ID). We agreed that they could withhold ID files until an investigation is complete, provided it is completed in a reasonable time. We further agreed they could withhold the facility use of force reports (which are separate documents completed within 7-10 days of an incident pursuant to DOC Directive, and which do not change regardless of the ID's findings or report) for the same time period, except for the two incidents that involve named defendants. Defendants refused to agree. Thus plaintiffs seek an order requiring defendants to produce the facility use of force package (but not the ID file) for these two incidents.[3]

Plaintiffs need these documents before we take the depositions of the five named defendants and their superiors. Otherwise, we do not have the defendants' use of force history that we requested. It would be inefficient to take depositions only to re-open them once the documents are produced. The depositions of some of these defendants were already noticed, and preparation has been underway. Because we have prioritized our document review based upon

---

[2]In addition to the categories listed in the City's letter, it appears that other documents are outstanding, such as some logbooks and rosters, personnel files, statistical reports, and occasional use of force reports. We understand that in a case this large, there may be some "clean up" to fill gaps in production, and thus we do not object to production of these documents after the deadline if necessary. In addition, in response to defendants' requests, we already provided defendants with a list of inmates for whom we have medical records. We are copying relevant portions to produce to defendants now, and will provide others if we find they are relevant.

[3]Defendants' letter addresses all 40 responsive files under ID review. Since plaintiffs' concessions have narrowed the dispute to only 2 files, the other 38 are not at issue here.

the deposition schedule, we cannot readily substitute one deponent for another and remain on the tight discovery schedule.

There is no legitimate reason to withhold these files. The facility reports are already complete, and maintained in each facility. While the Investigation Division reviews these reports and may conduct their own investigation, it does not revise or alter the facility file. Moreover, in our experience, ID investigations may take months or years. There is no reason for plaintiffs to wait until those reviews are complete before we receive the completed facility file.

The City's sole objection is that producing these two files is an "undue burden." Plainly, that is frivolous. The facility use of force files are typically 25-50 pages each. They are kept as business records in each facility and the Investigation Division. There is simply no plausible contention that production of two files totaling probably no more than 100 pages is burdensome.

This is precisely the issue the Court addressed previously when it denied the City's attempt to withhold the facility file for plaintiff Shawn Davis because the ID review was ongoing (and apparently still is, 16 months after the incident). *Order*, June 11, 2003, ¶1. Notably, the City did not ever state it would withhold any other file on this basis until the end of October.

Finally, the City's contention that this contravenes an "agreement" that they would not produce facility files is disingenuous. To clarify, every facility file is kept as a business record in the facility, and also replicated as part of the Investigation Division file. Because there was no reason for defendants to produce all 2,400 reports twice (as facility files and again in the ID file), plaintiffs agreed that defendants need produce only the Investigation Division files. But it is an utter distortion of that agreement to contend that it permits defendants to withhold *both* files. Rather, that agreement addressed only the ordinary case, in which the ID files were, in fact, being produced. Since defendants did not ever state that they would refuse to produce Investigation Division files on the grounds they now assert, the matter was simply never discussed.

Conclusion

For these reasons, we ask that the City's request for an extension of time be denied. If it is granted, we ask that depositions be permitted to go forward under the current schedule, or under the current priority. We further ask that the City be ordered to produce the facility use of force packages for the two incidents in 2003 involving named defendants, and produce the remaining packages upon completion of the Investigation Division review.

Very truly yours,

Mary Lynne Werlwas
Madeline DeLone
Jonathan Chasan
Attorneys for plaintiffs

Page 4

cc:   Arthur Larkin
      Mathew Paulose, Jr.
      Alexander Peltz



ONE BATTERY PARK PLAZA, NEW YORK, N.Y. 10004 TEL: (212) 577-3530 FAX: (212) 425-2465 www.legal-aid.org
PRISONERS' RIGHTS PROJECT

Daniel L. Greenberg
*President and Attorney-in-Chief*

Steven Banks
*Associate Attorney-in-Chief*

*Prisoners' Rights Project*
John Boston
*Project Director*

# FAX COVER SHEET

| | | |
|---|---|---|
| **TO:** | Hon. Denny Chin | 212-805-7906 |
| | Arthur Larkin, Esq. | 212-788-9776 |
| | Mathew Paulose, Jr., Esq. | 917-551-0030 |
| | Alexander Peltz, Esq. | 212-227-4002 |
| **FROM:** | Mary Lynne Werlwas<br>Jonathan Chasan<br>Madeline DeLone<br>Attorneys for plaintiff | |
| **DATE:** | December 2, 2003 | |
| **RE:** | Ingles v. Toro, 01 Civ. 8279 (DC) | |

**PAGES** (including this one): 5

**COMMENTS:**

Confidentiality Note: This facsimile is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. Retention, distribution or copying of this facsimile, or the information herein, to anyone other than the intended recipient is prohibited. If you have received this facsimile in error, please notify us immediately by telephone and destroy this copy. Thank you.