# KOEHLER & ISAACS LLP
ATTORNEYS AT LAW
61 BROADWAY, 25TH FLOOR
NEW YORK, NY 10006
Tel: (917) 551-1300   Fax: (917) 551-0030
www.koehler-isaacs.com

RICHARD J. KOEHLER
STEVEN ISAACS
_____

MICHAEL R. BERTSCHI
LIAM L. CASTRO
RENA C. DAWSON
CYNTHIA DEVASIA
GABRIEL GREENBERG
JOEY JACKSON
DAWN K. KELLY
DAVID KIRSCH
MERCEDES M. MALDONADO
JULIE ORTIZ
FELICIA PINTO
ANDREW ROWE
JULIE PEARLMAN SCHATZ
ANN SCHNEIDER
ELYSE SILVERMAN
PETER C. TROXLER
GREG WATFORD
HOWARD G. WIEN

OF COUNSEL
RAYMOND J. AAB
JESSICA SALLES
BARRY WASHOR

WRITER'S DIRECT DIAL
(917) 551-1352



May 17, 2017

**VIA ECF**

Honorable Gregory H. Woods           Honorable Laura Taylor Swain
United States District Judge          United States District Judge
Southern District of New York         Southern District of New York
500 Pearl Street                      500 Pearl Street
New York, New York 10007-1312         New York, New York 10007-1312

**Re: Correction Officers' Benevolent Association et. al. v.
City of New York, et al.  17 v. 2899 (GHW) (GWG)**

Dear Judges Woods and Swain:

We write on behalf of all Plaintiffs in response to Defendant City's May 10, 2017 request to transfer this case because it is related to a closed case under Judge Swain's purview, Nunez et. al v. City of New York et. al., 11 cv 5845. Upon review of the applicable standards, it is our view that these two cases are not "related" as defined under Rule 13 of this Court's Rules for the Division of Business Among Judges ("Rule 13"). Contrary to the City's contentions, the cases fail to meet Rule 13's four relatedness factors and a transfer will not serve justice or judicial efficiency.

### A. The Instant State Created Danger Lawsuit

The instant state created danger lawsuit ("SCD Lawsuit"), brought pursuant to Section 1983, alleges that Defendants have violated the Fourteenth Amendment of the Constitution by creating or increasing the dangers faced by Correction Officers in the workplace as a result of implementing nine (9) policies. Defendants' actions and inactions violate Correction Officers' constitutional right to be free from state created dangers, a substantive due process protection that is well recognized in this and other Federal Circuits. See Dwares v. City of New York, 985 F.2d 94 (2d Cir.1993); Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir.2006). The Complaint (Docket #1) alleges the following policies have, in totality, created unconstitutional conditions: 1) eliminating punitive segregation for Young Adult inmates and replacing it with non-punitive alternative programs for them and Adolescents, Compl. at ¶¶24-46; 2) limiting and eliminating punitive segregation policies for Adult Inmates, Id. at ¶¶ 47-64; 3) failure to utilize pre-hearing detention against assaultive inmates, Id. at ¶¶ 65-74; 4) haphazard implementation of a restrictive Use of Force Policy, Id. at ¶¶ 75-84; 5) failure to provide overall training and re-training for officers and adequate training facilities, Id. at ¶¶ 85-104; 6) housing highly assaultive inmates in West Facility which is designed for housing communicable disease inmates, Id. at ¶¶ 105-118; 7) housing

inmates of like gang affiliation together, Id. at ¶¶ 119-130; 8) failing to properly equip officers against attacks from highly assaultive inmates, Id. at ¶¶ 131-141; and 9) misreporting or underreporting violence in the jails against officers, Id. at ¶¶ 142-159. In support, Plaintiffs cite violence incidents and statistics showing violence against officers is rising. See e.g. Id. at Exhibits B, C and H. The Plaintiffs in the SCD Lawsuit are the Correction Officers Benevolent Association ("COBA"), which is the union representing Correction Officers, four individual Correction Officers and unnamed John and Jane Doe Correction Officers who have been injured. Defendants are the City, Mayor de Blasio, the Department of Correction ("DOC") and DOC Commissioner Joseph Ponte.

### B. The Nunez Lawsuit

In 2011, twelve former and, at that time, current inmates filed the Nunez Lawsuit against the City and approximately 63 named individual DOC employees holding various titles from DOC Commissioner Dora Schriro and Department Chiefs to Wardens, Deputy Wardens, Assistant Wardens and Correction Officers. The suit was brought under the Eighth and Fourteenth Amendments and New York state laws challenging certain conditions of inmate confinement in the City Jails. Specifically, the Second Amended Complaint (Docket #34) alleged the existence of "a pattern and practice of unnecessary and excessive force inflicted upon inmates" within the City Jails. See Sec. Amnd. Compl., at ¶ 6[1]. It also alleged that DOC supervisors encouraged excessive uses of force (¶¶ 37-39), failed to adequately investigate uses of force, and were held unaccountable for violence against inmates (¶¶ 42-55).

The Nunez parties entered into a Consent Judgment ("Judgment") in October 2015 (Docket #249). Neither COBA nor any individual Correction Officers were party to this agreement. In sum and substance, the sole and primary focus of the Judgment is the safety of inmates. Indeed, the preliminary recitals specify "the purpose of this agreement is to protect the constitutional rights of inmates". Judgement at Whereas cl. 1.  It further states the Judgment is "to be interpreted consistent with the measures necessary to protect the constitutional rights of inmates." Id. Consistent with this goal, the Judgment addresses fifteen different compliance areas, most of which focus on  the monitoring, reporting, investigating, training, surveilling and disciplining of staff *in connection with uses of force* so as to ensure prisoner safety is preserved. Judgment at pgs. 10-28, 35-40. The Judgment also required the elimination of punitive segregation for Adolescent Inmates (age 16 and 17), and briefly touches upon the safety, supervision and discipline of inmates under age 19, mostly leaving the creation and implementation of certain related policies to the City's/DOC's discretion. Judgment  at pgs 40-47.

### C. Applying Rule 13's Standards for Relatedness Reveals the Cases are Unrelated

Local Rule 13 endorses a balancing approach to determining relatedness.  While the general rule is that civil cases will be deemed related when the "interest of justice and efficiency will be served," Rule 13(a)(1),  it also cautions that civil cases "shall not be deemed related merely because they involve common legal issues or the same parties." Id. at (a)(2)(A).  In fact, Rule 13 recognizes an express presumption that civil cases "shall **not** be deemed related unless both cases are pending before the Court (or the earlier case is on appeal)." Id. at (a)(2)(B) (emphasis supplied).  Rule 13 sets forth four factors to determine relatedness, most of which embrace a substantial similarity standard. These factors evaluate whether there exists: A) "same or substantially similar parties, property, transactions or events"; B)"substantial factual overlap"; C) possibility of conflicting orders; and D) "substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses." Id. at (a)(1).  Applying

---

[1] Judges Woods and Swain have different rules for letters. Absent certainty of which rules apply, copies of the relevant exhibits are omitted to avoid violating Judge Swain's 10 page letter limit (including exhibits). Instead, Docket #s are provided. Plaintiffs have endeavored to balance necessary information disclosure and Judge Woods' three (3) page limit.

Rule 13's dictates show the cases do not meet the substantial similarity standard. Further, similarities in the form of remedy sought do not mean conflicting orders will result; the relatedness test ultimately fails.

As a threshold matter, it is important to note that the Nunez case is **closed**; it was settled and there is no merit determination currently pending before the Court. The only "activity" on the Docket is the periodic filing of compliance reports by the Federal Monitor who was appointed to monitor judgment implementation. Thus, Rule 13's presumption that cases are unrelated cannot be overcome because the prior case is **not** "pending" before the Court, nor is it on appeal. 13(a)(2)(B). This was a motivating factor in a matter before Judge Sweet who found two cases to be unrelated because they both were not, as is also the case here, pending before the court. Deutsche Zentralgenossenschaftsbank AG, N.Y. Branch v. Bank of Am. Corp., No. 13 CIV. 393, 2015 WL 935576 (S.D.N.Y. Mar. 3, 2015).

Even if this Court finds that Nunez' closed status is not determinative, the cases do not meet Rule 13's substantial similarity standards because, as detailed above, they involve different claims, parties, and facts. The City attempts to myopically paint the SCD Lawsuit as a collateral attack on Nunez, claiming "a vast majority of issues" raised by the latter suit are addressed in the Judgment.[2] This is untrue. Most of the policies discussed in the SCD Lawsuit were not addressed in Nunez.[3] To the extent some of the same topics are mentioned in both lawsuits, that alone is insufficient to meet Rule 13's high standard. The City primarily argues for transfer based on one section of the SCD Lawsuit discussing the Judgment's use of force policy requirements and the new policy itself. Even if this Court deems this is a common issue, that alone does establish relatedness. Rule 13(a)(2)(A). When comparing the actions as a whole, Rule 13's substantial similarity test is unmet. These two cases are patently distinct from each other. Nunez was a prisoner rights litigation, advocating for the constitutional rights of inmates ---not Correction Officers. Not only was the safety and security of Correction Officers never at issue in Nunez, in that case Correction Officers were the defendants. Here, Correction Officers are the Plaintiffs alleging constitutional violations committed by their employer through state created dangers. Moreover, COBA was never a party to Nunez. Because of these differences and the Nunez Lawsuit's status, there would be no "substantial" duplication of efforts and expenses, or burden on the Court, parties, or witnesses since the prior litigation has ended. Id. at 13(a)(1)(D). Neither justice nor judicial efficiency mandate transfer.

Lastly, with respect to the fourth Rule 13 factor, the City claims that because both suits sought/seek declaratory and injunctive relief, as well as money damages, that inconsistent outcomes will result. Plaintiffs do not seek to overturn Nunez, rather they seek "all appropriate injunctive relief as warranted," Compl. at Wherefore cl., to remedy the dangerous outcomes resulting from Defendants' implementation of certain polices (most of which are unrelated to Nunez). Thus, the Court may, at its discretion, fashion a remedy that is distinct from and consistent with Nunez should it be deemed proper.

Respectfully submitted,
By:   /s/   *Cynthia Devasia, Esq.*
        Cynthia Devasia, Esq.
cc: Alan Schlesinger, *Counsel for City (via E-mail)*

---

[2] Plaintiffs question whether a post adjudication *settlement agreement* can form the basis for transfer.

[3] For example, the Nunez Complaint and Judgment do not address pre-hearing detention, gang housing, West Facility housing, overall training/re-training/inadequate facilities, failing to properly equip, or the misreporting of violence against officers. Also, the Nunez Lawsuit or Judgment require elimination of punitive segregation for Young Adult Inmates (age 18 to 21), or the elimination/limitation of punitive segregation against Adult Inmates (age 21 and over). These and other policy changes go beyond the Judgment's requirements.

Case 1:11-cv-05845-LTS-JCF   Document 300   Filed 05/17/17   Page 4 of 4