Steve J. Martin
Monitor

## OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

Anna E. Friedberg
Deputy Monitor

135 West 41st Street, 5th Floor
New York, NY 10036
+1 646 895 6567 | afriedberg@tillidgroup.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-10-2018
```

August 9, 2018

**VIA ECF**
The Honorable Laura T. Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

Re: *Nunez, et al. v. City of New York, et al.*, 11-cv-5845 (LTS) (JCF)

Dear Judge Swain,

      We write to respectfully recommend modifications to the *Nunez* Consent Judgment (dkt. 249) for the following three provisions: (1) § V. Use of Force Reporting and Tracking, ¶ 23; (2) § IX. Video Surveillance, ¶ 3 (c); and (3) § XV. Safety and Supervision of Inmates Under the Age of 19, ¶ 3. We have outlined the proposed recommendations in track changes and the basis for those recommendations in the chart on pages two to four of this letter. We respectfully request your Honor approve and order these modifications.

      This is the eighth request to modify certain provisions of the Consent Judgment.[1] We have discussed the proposed modification with the Parties and they consent to the Monitor's recommendation.

      Please do not hesitate to reach out if you have any questions or require any further information.

*The proposed modifications are approved.*

Sincerely,

s/ Steve J. Martin
Steve J. Martin, Monitor
Anna E. Friedberg, Deputy Monitor

SO ORDERED:

/s/ 8/10/18
HON. LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

---

[1] *See* Appendix A, which provides a summary of the Court ordered modifications to the Consent Judgment.

Proposed Recommendations to Modify the *Nunez* Consent Judgment

| § V. Use of Force Reporting and Tracking, ¶ 23 | |
|---|---|
| Current Provision | DOC shall record in the Department's Inmate Information System the time when Inmates arrive at the medical clinic following a Use of Force Incident, the time they were produced to a clinician, and the time treatment was completed. DOC shall record which Staff Members were in the area to receive post-incident evaluation or treatment. |
| Proposed Revision: | DOC shall electronically record in the Department's Inmate Information System the time when Inmates arrive at the medical clinic following a Use of Force Incident, the time they were produced to a clinician, and the time treatment was completed in a manner that can be reliably compared to the time the Use of Force Incident occurred. DOC shall record which Staff Members were in the area to receive post-incident evaluation or treatment. |
| Basis for Recommendation | The Monitoring Team proposes this change because maintaining this information in the Inmate Information System (IIS) is not the most operationally feasible option to support the Department's and Monitoring Team's work to determine if the Department is meeting the requirements of ¶ 22 of this Section. The information required in the current provision is maintained in IIS, but IIS does not maintain information related to Use of Force (e.g. a Use of Force number, time of the incident, etc.). Without the ability to merge these two pieces of information, assessing the promptness of medical attention following a Use of Force Incident as required by ¶ 22 is extremely inefficient.<br><br>The Monitoring Team recommends modifications to this provision in order to (1) provide greater flexibility in where this information is maintained and (2) permit information about medical information to be merged more easily with Use of Force data so that compliance with ¶ 22 can be assessed efficiently. |

| § IX. Video Surveillance, ¶ 3 (a) & (c) | | |
|---|---|---|
| Current Provision | 3 a. | The Department shall designate a Supervisor at each Facility who shall be responsible for confirming that all cameras and monitors within the Facility function properly. |
| | 3 b. | Each Facility shall conduct a daily assessment (*e.g.*, every 24 hours), of all stationary, wall-mounted surveillance cameras to confirm that the video monitors show a visible camera image. |
| | 3 c. | At least twice a month, the assigned Supervisor shall (i) review a substantial portion of the wall-mounted surveillance cameras in order to determine which cameras are not recording properly, and (ii) review the accuracy of the daily assessments. The assigned Supervisor shall document the results of these reviews, including which daily assessments, if any, were inaccurate. |
| Proposed Revision | 3 a. | The Department shall designate a Supervisor at each Facility who shall be responsible for confirming that all cameras and monitors within the Facility function properly. |

2

|  | 3 b. Each Facility shall conduct a daily assessment (*e.g.*, every 24 hours), of all stationary, wall-mounted surveillance cameras to confirm that the video monitors show a visible camera image.<br><br>3 c. <u>The Department shall implement a quality assurance program, in consultation with the Monitor, to ensure each Facility is accurately identifying and reporting stationary, wall-mounted surveillance cameras that are not recording properly, which at a minimum shall include periodic reviews of video captured by the wall-mounted surveillance cameras and a process to ensure each Facility's compliance with ¶ 3(b) of this section.</u> ~~At least twice a month, the assigned Supervisor shall (i) review a substantial portion of the wall-mounted surveillance cameras in order to determine which cameras are not recording properly, and (ii) review the accuracy of the daily assessments. The assigned Supervisor shall document the results of these reviews, including which daily assessments, if any, were inaccurate.~~ |
|---|---|
| Basis for Recommendation | The Monitoring Team proposes this change to improve the efficiency of ensuring operable cameras. The current requirement that the Facility Supervisor, on a bi-monthly basis, ensure the cameras are online and that the daily assessment forms are accurate is an inefficient and unproductive approach to ensure that each Facility is adequately identifying and reporting any cameras that are not recording properly. The MSS-1 (daily form) and BMR-1 (bi-monthly form) are completed by different individuals at different times (by the time the bi-monthly form is completed a camera identified on the MMS-1 may have been already fixed OR the camera could have gone down after the MSS-1 form was completed)—thus, the two forms will not necessarily match and as such, the bi-monthly form does not serve as an accurate check/verification of whether all cameras were identified on the daily form and only creates further confusion/inconsistencies within the paperwork.<br><br>The Monitoring Team proposes that a quality assurance program is the more appropriate and efficient manner to ensure that down cameras are accurately and timely identified and can also be leveraged to ensure that the cameras that are reported as down are then fixed as required by the Consent Judgment. |

| § XV. Safety and Supervision of Inmates Under the Age of 19, ¶ 3 ||
|---|---|
| Current Provision | A Warden or Deputy Warden shall tour all Young Inmate Housing Areas at least once each shift, unless the Warden or Deputy Warden is not in the Facility during that shift, making himself or herself available to respond to questions and concerns from Inmates. The tours shall be documented and any general deficiencies shall be noted. |
| Proposed Revision | A Warden or Deputy Warden shall tour ~~all Young Inmate Housing Areas with~~:<br><br>a. <u>all Housing Areas with 18-year-old inmates</u> at least once ~~each shift, unless the~~ <u>per week, making himself or herself available to respond to questions and concerns from Inmates. The</u> Warden or Deputy Warden ~~is not~~<u>shall conduct more frequent tours of Young Inmate Housing Areas with operational challenges. The Department,</u> in <u>consultation with the Monitor, shall develop criteria for determining when more frequent tours</u> |

3

|  | by the ~~Facility during that shift~~<u>Warden or Deputy Warden are merited. The tours shall be documented and any general deficiencies shall be noted.</u> |
|---|---|
|  | ~~a.~~<u>b.</u> all Housing Areas with 16- and 17- year-old inmates <u>at least twice per week</u>, making himself or herself available to respond to questions and concerns from Inmates. The tours shall be documented and any general deficiencies shall be noted. |
| Basis for Recommendation | The Monitoring Team's collective experience suggests that this provision, as drafted, is operationally infeasible and out of sync with generally accepted practice.<br><br>Given the number of Young Inmate Housing Units, touring once per shift could consume almost the entire shift, severely limiting the Warden or Deputy Warden's ability to address other important matters. For example, at RNDC, approximately 30 units house Young Inmates (in addition to adult housing units that also must be toured). Conservatively, the Warden or Deputy Warden would spend approximately 15 minutes on each unit. To visit each unit as this provision mandates would require 450 minutes, or roughly 7.5 hours *per shift*. Given the Warden's and Deputy Warden's many responsibilities, dedicating this amount of time every day to touring the housing units is not plausible. As a result, the current requirement could inadvertently encourage short, superficial tours that are insufficient to properly respond to inmates' concerns.<br><br>The Monitoring Team believes these tours are very valuable to the management of the facility. Accordingly, the requirement must be practical so that it does not encroach on other management functions and must also create an opportunity for substantive interactions during the tour. Therefore, consistent with the Monitoring Team's expertise, we recommend the revised touring schedule. Our expertise also suggests that, at any given time, a subset of units will struggle to maintain safety and thus, additional tours will be warranted to ensure staff are properly supported and inmate concerns are surfaced. The Monitoring Team will work with the Department to operationalize the types of struggles that would merit additional tours in 18-year-old housing areas. |

## *Appendix A*
## Chart of Modifications to
## *Nunez* Consent Judgment (Dkt. No. 249)

| Docket Entry | Date | Description of Modification Order | | | |
|---|---|---|---|---|---|
| 261 | 11/23/15 | Effective Date set as November 1, 2015. | | | |
| 266 | 01/05/16 | Modification of certain deadlines. | | | |
| | | Consent Judgment Provision | Description of Provision | Original Deadline | Revised Deadline |
| | | Section V ¶ 21 | **Use of Force Reporting and Tracking**-- Department to develop definitions for categories of institutional violence data | 60 Days from Effective Date | Additional 30 Days |
| | | Section XIII ¶ 1 | **Training**--Department to develop new staff training programs (Use of Force policy, Crisis Intervention, Probe Team) | 60 Days from Effective Date | Additional 60 days |
| | | Section XIII ¶ 2 | **Training**--Department to improve staff training (Defensive Tactics, Cell Extraction Team, and Investigator) | 60 Days from Effective Date | Additional 60 days |
| | | Section XIII ¶ 4 | **Training**--Department to develop new Direct Supervision staff training | 60 Days from Effective Date | Additional 60 days |
| | | Section XVI ¶ 3 | **Inmate Discipline**--Department to develop and implement an incentive system for inmates under 18 | 60 Days from Effective Date | Additional 30 Days |
| | | Section XVI ¶ 4 | **Inmate Discipline**--Department to develop and implement a disciplinary system for inmates under 18 | 60 Days from Effective Date | Additional 30 Days |
| 268 | 03/04/16 | Additional month for the Second and Third Monitoring Period. | | | |
| 297 | 4/4/17 | Modification of certain deadlines. | | | |
| | | Consent Judgment Provision | Description of Provision | Original Deadline | Revised Deadline |
| | | Section XIII (Training), ¶ 1(c) | **Probe Team Training** – Deployment of Probe Team Training to all Staff Members assigned to work regularly at any Intake Post. | Within 12 months of the Effective Date | December 31, 2017 |
| | | Section XIII (Training), ¶ 2(b) | **Cell Extraction Team Training** – Deployment of the Cell Extraction Team Training to all Staff Members regularly assigned to Special Units with cell housing. | Within 12 months of the Effective Date | December 31, 2017 |
| | | Section XIII (Training), ¶ 4(b) | **Direct Supervision Training** – Deployment of the Direct Supervision Training to all Staff Members assigned to work regularly in Young Inmate Housing Areas. | Within 9 months of the Effective Date | April 30, 2018 |

5

| Docket Entry | Date | Description of Modification Order | | | |
|---|---|---|---|---|---|
| | | Section V (Use of Force Reporting & Tracking), ¶ 18 Section X (Risk Management), ¶ 16 | **Case Management System** – to be developed and implemented. | December 1, 2016 | *Develop*: August 31, 2017 *Implement*: December 31, 2017 |
| 303 | 8/11/17 | Modification to the calculation of timing of Compliance and Monitor's Report - §XIX. (Reporting Requirements and Parties' Right of Access), ¶¶ 1, 17 **AND** | | | |
| | | **Consent Judgment Provision** | **Description of Provision** | **Current Deadline** | **Revised Deadline** |
| | | Section IX (Video Surveillance), ¶ 2(a) | **Body Worn Camera Pilot** – Pilot of 100 body-worn cameras. | Within one (1) year of the Effective Date | October 10, 2017 |
| 312 | 04/24/18 | **Consent Judgment Provision** | **Description of Provision** | **Original Deadline** | **Revised Deadline** |
| | | Section XIII (Training), ¶ 1(b)(ii) | Crisis Intervention and Conflict Resolution Training | Within 26 months of the Effective Date. | May 31, 2019 |
| 314 | 5/14/18 | Modifications to Section V (Use of Force Reporting & Tracking), ¶ 10 regarding the requirements for Non-DOC Staff Member reporting of Use of Force incidents. | | | |

6