

OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

Steve J. Martin
Monitor

Anna E. Friedberg
Deputy Monitor

West 41st Street, 5th Floor
New York, NY 10036
+1 646 895 6567 | afriedberg@tillidgroup.com

**MEMO ENDORSED**

October 31, 2018

**VIA ECF**
The Honorable Laura T. Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

Re: *Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Judge Swain,

The Monitoring Team writes to provide an update on the operation of Horizon Juvenile Detention Center ("Horizon") since the filing of the Sixth Monitor's Report (dkt. 317). The Monitoring Team continues to believe that the current situation at Horizon is serious. While the last two weeks have not seen the level and severity of violence observed in the first two weeks of operation, the risk of harm for youth and staff remains high.

Since the Sixth Monitor's Report was filed, the Monitoring Team has continued to actively monitor the operation at Horizon and has visited the facility numerous times to observe operations and speak with youth and staff from the Department of Correction ("DOC" or "Department") and the Administration of Child Services ("ACS"). During its first 28 days of operation, DOC staff used physical force 85 times (2 Class As, 48 Class Bs, and 35 Class Cs).[1] The rate of force at Horizon is significantly higher than it was

---

[1] Use of force incidents are assigned a severity classification based solely on the injuries sustained by either staff or inmates. "Class A" incidents are those resulting in the most severe injuries, that require medical attention beyond the prescription of over-the-counter analgesics or the administration of minor First Aid.

when the youth were housed at the Robert N. Davoren Complex on Rikers Island. Further, the Department reports that at least 40 youth and 50 staff sustained injuries during this time.

The Monitoring Team has issued a series of recommendations to improve safety at Horizon (*see* Sixth Monitor's Report at pgs. 158 to 162, or "Report"), including a recommendation for the State to expand its 7-day waiver for the use of OC Spray that required person-specific applications. The Monitoring Team continues to believe both the time frame and circumstances of the State's waiver requirements with respect to the use of OC Spray, in particular the person-specific authorization requirement, are insufficient to ensure the safety of inmates, staff, and other individuals and therefore conflict with the Department's obligations under § IV. (Use of Force Policy), ¶¶ 3 (m),[2] 3(p),[3] and § XV. (Safety and Supervision of Inmates Under the Age of 19), ¶ (1)[4] of the Consent Judgment (dkt. 249). Though the City notified the State of the Monitoring Team's recommendation

---

Examples include incidents resulting in multiple abrasions, contusions, cracked, chipped or lost teeth, lacerations, punctures, fractures, loss of consciousness, or internal injuries. "Class B" incidents are those that result in minor injuries that require only the administration of First Aid or over-the-counter analgesics. Examples include superficial bruising, scrapes, scratches, or minor swelling. Class B incidents can also include minor injuries sustained from the forcible use of mechanical restraints. "Class C" incidents are those in which no injuries were sustained by Staff or inmates. Incidents in which chemical agents were used, but resulted in no injury other than irritation of the eyes, nose, or throat, are also categorized as Class C.

[2] The Department must ensure Staff meet their "duty to protect Inmates from harm" and "responsibility to intervene to de-escalate confrontations as soon as it is practicable and reasonably safe to do so"

[3] The Department shall have a Use of Force policy that includes "[c]lear and adequate policy guidance on the proper use of [. . .] chemical agents [. . .], including the limited circumstances when such forms of force may be used and the precautions that must be taken to ensure the safety of Inmates, Staff, and other individuals"

[4] "Young Inmates shall be supervised at all times in a manner that protects them from an unreasonable risk of harm. Staff shall intervene in a timely manner to prevent inmate-on-inmate fights and assaults, and to de-escalate inmate-on-inmate confrontations, as soon as it is practicable and reasonably safe to do so."

for the State's waiver to be more broadly defined and the Monitoring Team's assessment of the conditions imposed, the State has not responded.[5]

The Monitoring Team's collective assessment of the current instability at Horizon suggests that an immediate response to these recommendations is necesesary and that further delay will only increase the risk of harm. While staff have responded to violent incidents to the best of their abilities, they have had limited training and limited opportunities for drill, practice, and de-briefing after live applications of new techniques. In several cases, they were unable to quickly dispel large group disturbances and situations in which youth armed themselves with makeshift weapons. As recently as a few days ago, staff sustained injuries during their efforts to intervene in two disturbances involving multiple youth, some of whom were also injured during the altercations.

Furthermore, while the City has implemented a number of strategies to address the level of violence (e.g., modifing movement, securing furniture to the floor, increasing programming and visits, and utilizing body-worn cameras), it has not yet fully designed or implemented other strategies that would also directly impact a youth's likelihood of engaging in violence.

In particular, ACS must develop, and ACS and DOC must jointly implement, a robust behavior management program that includes both incentives for positive behavior and proportional, effective consequences for misconduct.[6] On October 30, 2018, the

---

[5] The Monitoring Team strongly recommended the State grant the City the authorization to utilize OC spray for a 90-day period as outlined in the Report as soon as practicable, and no later than October 24, 2018. As of the filing of this letter, the State has not addressed these recommendations.

[6] Policies, procedures and practices related to the behavior management program are subject to the Monitor's approval. *See* Consent Judgment § XVI. (Inmate Discipline), ¶ 3.

3

Monitoring Team provided ACS with recommendations for shoring up its group-level incentive program, developing a meaningful array of sanctions for misconduct, and transitioning to a more powerful individual-level incentive program. The Monitoring Team also proposed aggressive but achievable timelines for program development and implementation, including necessary staff training, to ensure that a solid foundation for facility safety is achieved.

The Monitoring Team also recommended to the Department that it develop and implement initiatives that afford Staff the opportunity to drill and practice Safe Crisis Management ("SCM") techniques in order to acquire the appropriate reflexes and confidence to intervene safely.[7] This process needs to include an opportunity for staff to obtain feedback and coaching following live applications of SCM techniques. Without this core competency in physical intervention, staff will be unable to prevent harm from occurring to themselves or youth. The Monitoring Team strongly encourages the City to commit, and provide adequate resources, to support this effort.

In addition to these strategies, discussed further in the Monitor's Fifth (at pgs. 145 to 150) and Sixth (at pgs. 150 to 162) Reports, the Monitoring Team continues to view the accessibility to and availability of the use of OC Spray as a viable tactical option to address and manage serious eruptions of collective violence. The Monitoring Team's recommendations for the limited use of OC Spray is described in more detail in the attached Appendix (Monitoring Team Recommendations for the Limited Use of OC

---

[7] Staff have received the initial SCM training, but that is only the first step in skill acquisition and mastery.

Spray at Horizon).[8] More specifically, the Monitoring Team believes a short period of time in which the use of OC Spray is permissible[9] would mitigate the imminent risk of harm to youth and staff.[10] The intended purpose is to (1) supplement the use of physical interventions to ensure DOC is able to disperse and thereafter contain large and/or dangerous disturbances, and (2) provide necessary respite to permit ACS to develop the tools necessary to improve and sustain facility security and safety.

In summary, the Monitoring Team believes concrete and immediate steps are needed to ensure the City meets its obligations to supervise young inmates in a manner that protects them from an unreasonable risk of harm. (*see* Consent Judgment § I. (Background) at pg. 1[11] and § XV. (Safety & Supervision of Inmates Under the Age of

---

[8] These recommendations are substantially similar to those outlined in the Monitor's Sixth Report with a few changes, most notably the limitation of the use of OC Spray to select Captains, members of the Rapid Response Teams, Assistant Deputy Wardens, Deputy Wardens and Wardens.

[9] Chemical agents, or "OC Spray," is an inflammatory agent that creates a sensation of burning to the skin, it can temporarily incapacitate aggressors which enables the user to intervene, disperse, distract, and regain control of dangerous situations. As described in more detail in the Monitor's Sixth Report, the use of OC Spray in this context is a tactical intervention response and expressly not contemplated for use as aversive conditioning or punishment.

[10] The use of OC Spray is prohibited by OCFS regulations at "Specialized Secure Detention Facility." *See* 9 CRR-NY §180-3.14 (Behavioral intervention policies) (a)(4)(ii). A Specialized Secure Detention Facility is defined as "detention facilities that house youth who are alleged or convicted adolescent offenders." *See* 9 CRR-NY §180-3.2(a) (Definitions). Horizon Juvenile Center has been certified by OCFS and SCOC as a Specialized Juvenile Detention Facility pursuant to Corrections Law § 500-p. Horizon houses 16- and 17-year-old youth who are alleged or convicted *adult offenders*. The Monitoring Team has been advised by the City that State regulators have taken the position that the OCFS regulations regarding Specialized Secure Detention Facilities also apply to Specialized Juvenile Detention Facilities.

[11] The purpose of the Consent Judgment "is to protect the constitutional rights of the inmates confined in jails operated by the Department." *See* Consent Judgment § I. (Background), at pg. 1. In particular, the Consent Judgment addresses the findings of the SDNY and the Department of Justice "that concluded that young male inmates, between the ages of 16 and 18, were being subjected to unconstitutional conditions of confinement". In particular, the findings letter asserted that the City had engaged in a pattern and practice of: (a) subjecting these inmates to excessive and unnecessary use of force; (b) **failing to adequately**

5

19), ¶ 1). The Monitoring Team will continue to monitor the level of violence at Horizon closely, confer with the Parties as necessary, and will advise the Court as appropriate. The Monitoring Team is committed to applying its considerable expertise in operational transitions and best practices for juvenile offenders to guide the Department and ACS in this monumental task.

Sincerely,

s/ Steve J. Martin
Steve J. Martin, Monitor

s/ Anna E. Friedberg
Anna E. Friedberg, Deputy Monitor

The Court thanks the Monitoring Team for this report and directs that a further status report, including information as to the State's response to the OC waiver recommendation, be filed no later than December 4, 2018.

SO ORDERED:

_____ 11/1/2018
HON. LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

---

**protect them from violence inflicted by other inmates**; and (c) placing them in punitive segregation at an alarming rate and for excessive periods of time." *Id.* at pgs. 1 and 2. (emphasis supplied)