# **Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                           :

MARK NUNEZ, et al.,                       :
                                           :
                      Plaintiffs,        :
                                           :
   - against -                             :
                                           :
CITY OF NEW YORK, et al.,           :
                                           :
                      Defendants.      :   **11 Civ. 5845 (LTS)(JCF)**

------------------------------------------------------------ X
                                           :

UNITED STATES OF AMERICA,      :
                                           :
                 Plaintiff-Intervenor,  :
                                           :
   - against -                             :
                                           :
CITY OF NEW YORK and NEW YORK CITY   :
DEPARTMENT OF CORRECTION,        :
                                           :
                      Defendants.      :

------------------------------------------------------------ X

## <u>REMEDIAL CONSENT ORDER ADDRESSING NON-COMPLIANCE</u>

        This Remedial Consent Order ("Order") is entered by and among the Plaintiff Class, Plaintiff the United States of America (the "United States"), and Defendants the City of New York (the "City") and the New York City Department of Correction (the "Department" or "DOC") (the City and the Department are collectively referred to herein as the "Defendants").

        WHEREAS, on October 22, 2015, this Court entered a Consent Judgment in this matter requiring the Defendants to take specific actions to remedy a pattern and practice of violence by Staff against incarcerated individuals, and to develop and implement new practices, policies, and procedures designed to reduce violence in the jails and ensure the safety and well-being of incarcerated individuals;

        WHEREAS, pursuant to Section XX, ¶ 1 of the Consent Judgment, Steve J. Martin (the "Monitor") was appointed as the Monitor and is responsible for providing the parties and Court with assessments of the Department's compliance with the Consent Judgment;

WHEREAS, pursuant to Section XX, ¶ 16 of the Consent Judgment, the Monitor is required to file reports with the Court each Reporting Period describing the efforts the Department has taken to implement the requirements of the Consent Judgment and evaluating the extent to which the Department has complied with each substantive provision of the Consent Judgment;

WHEREAS, the Monitor has filed nine reports with the Court (docket entries 269, 291, 295, 305, 311, 317, 327, 332, 341) that have covered the period of October 22, 2015 to December 31, 2019;

WHEREAS, the Monitor has repeatedly found Defendants to be in non-compliance with Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision) (collectively "Non-Compliance Provisions");

WHEREAS, by letter dated June 25, 2019 and as required by Section XXI, ¶ 2 of the Consent Judgment, counsel for the United States and Plaintiff Class provided Defendants with written notice that they believed Defendants were not in compliance with the following provisions of the Consent Judgment: Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (Timeliness of Full ID Investigations); Section VII, ¶ 11 (ID Staffing); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision); and Section XV, ¶ 17 (Inmates Under the Age of 19, Consistent Assignment of Staff);

WHEREAS, the Monitor has submitted a Declaration setting forth the rationale and basis for his belief that the remedial measures included in this Order are necessary, and explaining the approach taken in tailoring the proposal to properly address the implicated rights and interests;

NOW, THEREFORE, the Plaintiff Class, the United States, and the Defendants stipulate and agree, and IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

### A.   Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force

1. *Use of Force Reviews.* Each Facility Warden (or designated Deputy Warden) shall promptly review all Use of Force Incidents occurring in the Facility to conduct an initial assessment of the incident and to determine whether any corrective action may be merited ("Use of Force Review"). The Department shall implement appropriate corrective action when the Facility Warden (or designated Deputy Warden) determines that corrective action is merited.

    i.     The Department, in consultation with the Monitor, shall implement a process whereby the Use of Force Reviews are timely assessed by the Department's

leadership in order to determine whether they are unbiased, reasonable, and adequate.

    ii.    If a Facility Warden (or Deputy Warden) is found to have conducted a biased, unreasonable, or inadequate Use of Force Review, they shall be subject to either appropriate instruction or counseling, or the Department shall seek to impose appropriate discipline.

2.    *Facility Leadership Responsibilities*. Each Facility Warden (or designated Deputy Warden) shall routinely analyze the Use of Force Reviews, the Department leadership's assessments of the Use of Force Reviews referenced in Paragraph A.1(i) above, and other available data and information relating to Use of Force Incidents occurring in the Facility in order to determine whether there are any operational changes or corrective action plans that should be implemented at the Facility to reduce the use of excessive or unnecessary force, the frequency of Use of Force Incidents, or the severity of injuries or other harm to Incarcerated Individuals[1] or Staff resulting from Use of Force Incidents. Each Facility Warden shall confer on a routine basis with the Department's leadership to discuss any planned operational changes or corrective action plans, as well as the impact of any operational changes or corrective action plans previously implemented. The results of these meetings, as well as the operational changes or corrective action plans discussed or implemented by the Facility Warden (or designated Deputy Warden), shall be documented.

3.    *Revised De-escalation Protocol*. Within 90 days of the date this Order is approved and entered by the Court ("Order Date"), the Department shall, in consultation with the Monitor, develop, adopt, and implement a revised de-escalation protocol to be followed after Use of Force Incidents. The revised de-escalation protocol shall be designed to minimize the use of intake areas to hold Incarcerated Individuals following a Use of Force Incident given the high frequency of Use of Force Incidents in these areas during prior Reporting Periods. The revised de-escalation protocol shall address: (i) when and where Incarcerated Individuals are to be transported after a Use of Force Incident; (ii) the need to regularly observe Incarcerated Individuals who are awaiting medical treatment or confined in cells after a Use of Force Incident, and (iii) limitations on how long Incarcerated Individuals may be held in cells after a Use of Force Incident. The revised de-escalation protocol shall be subject to the approval of the Monitor.

4.    *Supervision of Captains*. The Department, in consultation with the Monitor, shall improve the level of supervision of Captains by substantially increasing the number of Assistant Deputy Wardens ("ADWs") currently assigned to the Facilities. The increased number of ADWs assigned to each Facility shall be sufficient to adequately supervise the Housing Area Captains in each Facility and the housing units to which those Captains are assigned, and shall be subject to the approval of the Monitor.

---

[1] The term "Incarcerated Individual" means "Inmate," and is defined as the term "Inmate" is defined in the Section III, ¶ 1 of the Consent Judgment.

i. Within 60 days of the Order Date, RNDC, and at least two other Facilities to be determined by the Commissioner in consultation with the Monitor, shall satisfy the requirements of this provision.

ii. Within 120 days of the Order Date, at least three additional Facilities to be determined by the Commissioner in consultation with the Monitor, shall satisfy the requirements of this provision.

iii. By December 31, 2020, all Facilities shall satisfy the requirements of this provision.

5. *Incarcerated Individuals Involved in Numerous Use of Force Incidents*. Within 60 days of the Order Date, the Department shall, in consultation with the Monitor and Correctional Health Services, develop, adopt, and implement a plan so that: (i) health care professionals individually evaluate any Incarcerated Individual who has been involved in a significant number of Use of Force Incidents during a Reporting Period to determine whether any mental health needs of the Incarcerated Individual are not being adequately addressed; and (ii) the Department assesses whether existing security and management protocols are appropriate for these Incarcerated Individuals. This plan shall be subject to the approval of the Monitor.

6. *Facility Emergency Response Teams*. Within 90 days of the Order Date, the Department shall, in consultation with the Monitor, develop, adopt, and implement a protocol governing the appropriate composition and deployment of the Facility Emergency Response Teams (*i.e.*, probe teams) in order to minimize unnecessary or avoidable Uses of Force. The new protocol shall address: (i) the selection of Staff assigned to Facility Emergency Response Teams; (ii) the number of Staff assigned to each Facility Emergency Response Team; (iii) the circumstances under which a Facility Emergency Response Team may be deployed and the Tour Commander's role in making the deployment decision; and (iv) de-escalation tactics designed to reduce violence during a Facility Emergency Response Team response. The Department leadership shall regularly review a sample of instances in which Facility Emergency Response Teams are deployed at each Facility to assess compliance with this protocol. If any Staff are found to have violated the protocol, they shall be subject to either appropriate instruction or counseling, or the Department shall seek to impose appropriate discipline. The results of such reviews shall be documented.

## B. <u>Improved and Prompt Use of Force Investigations</u>

1. *Backlog of Use of Force Investigations*. The Department shall complete its investigation of any Use of Force Incidents that occurred more than 120 days prior to the Order Date ("Backlog UOF Investigations") by December 31, 2020. Use of Force Incidents that have been referred to DOI or another law enforcement agency and are currently being investigated by that agency are not covered by this provision.

i. The Monitor will continue to review a sample of the completed Backlog UOF Investigations that result in a finding of no UOF Violation to assess the quality of

the investigation and ensure that the finding is reasonable. The Monitor will continue to include the results of this review, as well as aggregate data reflecting the Department's findings with respect to the Backlog UOF Investigations, in Monitor Reports until all the Backlog UOF Investigations have been completed.

2. *Intake Investigations*. The Department shall continue to operate the recently created "Intake Investigation Unit," which shall be responsible for conducting investigations of Use of Force Incidents and determining whether Full ID Investigations are required ("Intake Investigation"). The Intake Investigation Unit shall collaborate with Trials Division attorneys on Intake Investigations. Because the Intake Investigations will replace Preliminary Reviews and Facility Investigations, and will involve certain Use of Force Incidents that previously required Full ID Investigations, certain provisions of the Consent Judgment shall be modified as outlined in Paragraph E.1 below.

   i.    The Department, in consultation with the Monitor, shall develop, adopt, and implement a policy that sets forth the process for conducting Intake Investigations ("Intake Investigation Policy") for members of the Intake Investigation Unit. The Intake Investigation Policy shall be subject to the approval of the Monitor.

3. *ID Staffing Levels:* Within 60 days of the end of the Eleventh Monitoring Period, the Monitor shall complete a review of the ID case assignment process and caseloads for: (i) ID Investigators who are responsible for conducting Full ID Investigations of Use of Force Incidents; and (ii) Intake Investigators who are responsible for conducting Intake Investigations. Based on the results of this review, the Department, in consultation with the Monitor, shall develop improvements to the case assignment process, as well as reasonable caseload targets ("Caseload Targets") for investigators. These improvements and Caseload Targets shall be subject to the approval of the Monitor. Within 120 days of the end of the Eleventh Monitoring Period, the Department shall implement these improvements and consistently meet the Caseload Targets going forward. The Monitor shall also develop a methodology to be used in assessing compliance with the Caseload Targets.

4. *Prioritizing Certain Use of Force Investigations*. ID shall continue to prioritize the investigations of certain incidents involving potentially serious and egregious Uses of Force and/or misconduct by Staff with a history of misconduct.

5. *Tracking and Reporting UOF Violations*. Within 60 days of the Order Date, the Department, in consultation with the Monitor, shall develop a process to track and report the findings of every Intake Investigation or Full ID Investigation (if the incident is referred for a Full ID Investigation) of a Use of Force Incident. This tracking and reporting shall include whether the investigation resulted in a finding that the incident involved excessive or unnecessary Use or Force or any other UOF Violation. This data shall be maintained in a manner that can be aggregated by Facility, type of investigation (*i.e.*, Intake Investigation or Full ID Investigation), and type of violation.

## C.  Timely, Appropriate, and Meaningful Staff Accountability

1.  *Immediate Corrective Action*. Following a Use of Force Incident, the Department shall determine whether any involved Staff Member(s) should be subject to immediate corrective action pending the completion of the Use of Force investigation, which may include counseling or re-training, reassignment to a different position with limited or no contact with Incarcerated Individuals, placement on administrative leave with pay, or immediate suspension (collectively, "immediate corrective action"). The Department shall impose immediate corrective action on Staff Members when appropriate and as close in time to the incident as practicable. The Department shall document and track any immediate corrective action taken, the nature of the initial corrective action recommended, the nature of the corrective action imposed, the basis for the corrective action, the date the corrective action is imposed, and the date of the Use of Force Incident resulting in the immediate corrective action. The requirements in this provision are not intended to alter the rights of Staff or the burden of proof in employee disciplinary proceedings under applicable laws and regulations.

2.  *Responding to Monitor Recommendations*. Upon identification of objective evidence that a Staff Member violated the New Use of Force Directive, the Monitor may recommend that the Department take immediate corrective action, expeditiously complete the investigation, and/or otherwise address the violation by expeditiously pursuing disciplinary proceedings or other appropriate action. Within ten business days of receiving the Monitor's recommendation, absent extraordinary circumstances that must be documented, the Department shall: (i) impose immediate corrective action (if recommended), and/or (ii) provide the Monitoring Team with an expedited timeline for completing the investigation or otherwise addressing the violation (if recommended), unless the Commissioner (or a designated Assistant Commissioner) reviews the basis for the Monitor's recommendation and determines that adopting the recommendation is not appropriate, and provides a reasonable basis for any such determination in writing to the Monitor.

3.  *New Trials Division Protocols*. Within 90 days of the Order Date, the Trials Division, in consultation with the Monitor, shall develop, adopt, and implement protocols to expedite the prosecution of disciplinary cases involving UOF Violations, which shall address, among other things, the following: (i) a timeframe for serving discovery after the service of charges; (ii) the selection and use of expert witnesses; (iii) criteria to prioritize and expedite the resolution of certain disciplinary cases; and (iv) ways to achieve a prompt agreed-upon resolution of disciplinary cases when appropriate.

4.  *Expeditious OATH Proceedings*. All disciplinary cases before OATH involving charges related to UOF Violations shall proceed in an expeditious manner. During each month, Defendants shall hold pre-trial conferences before OATH for at least 50 disciplinary cases involving charges related to UOF Violations, absent extraordinary circumstances that must be documented. If there continue to be delays in conferencing cases despite this calendaring practice, OATH will assign additional resources to hear these cases. The minimum number of case conferences required to be held each month under this Paragraph may be reduced if the Monitor makes a written determination, no earlier than

one year after the Order Date, that disciplinary cases involving UOF Violations can continue to proceed expeditiously with a lower number of conferences being held each month.

5.     *Applicability of Disciplinary Guidelines to OATH Proceedings*. The Disciplinary Guidelines developed pursuant to Section VIII, ¶ 2 of the Consent Judgment shall apply to any OATH proceeding relating to the Department's efforts to impose discipline for UOF Violations.

    i.     Within 30 days of the Order, and every quarter thereafter, the City shall in writing advise all OATH Administrative Law Judges who handle proceedings relating to UOF Violations of: (i) the applicability of the Disciplinary Guidelines to these proceedings; (ii) the City's obligations under Section VIII (Staff Discipline and Accountability) of the Consent Judgment and under Paragraphs C. 3 and C. 4 above; and (iii) any findings from Monitor Reports relating to compliance with Section VIII of the Consent Judgment or Paragraphs C.3 and C.4 above.

    ii.     The Monitor shall regularly assess the final resolution of proceedings relating to UOF Violations brought before OATH either for a pre-trial conference and/or a trial in order to assess whether the discipline imposed is appropriate, meaningful, and consistent with the Disciplinary Guidelines. These findings shall be included in future Monitor Reports.

## D.    18-Year-Old Incarcerated Individuals at RNDC

1.     *Consistent Staff Assignments and Leadership*. For all housing units at RNDC[2] that may house 18-year-old Incarcerated Individuals, the Department shall enhance the implementation of a staff assignment system under which the same correction officers, Captains, and ADWs are consistently assigned to work at the same housing unit and on the same tour, to the extent feasible given leave schedules and personnel changes.

    i.     The Department, in consultation with the Monitor, shall enhance the implementation of a quality assurance process to assess on a monthly basis the extent to which the Department complies with the consistent staffing requirements of this Paragraph. These monthly assessments shall include a review of the staffing of a substantial number of RNDC housing units and shall specify the percentage of the total tours for those units that were staffed by the same line correction officers, Captain, and ADWs. The Department shall report the results of its monthly assessments to the Monitor.

2.     *System of Incentives & Consequences*. For all housing units at RNDC that may house 18-year-old Incarcerated Individuals, within 30 days of the Order Date, the Department

---

[2] The majority of 18-year-old Incarcerated Individuals are currently housed at RNDC. To the extent that the majority of 18-year-old Incarcerated Individuals are housed at another Facility in the future, the provisions in Section D shall apply to all housing units in that Facility that may house 18-year-old Incarcerated Individuals.

shall, in consultation with the Monitor, develop, adopt, and implement a system under which Staff will respond to an Incarcerated Individual's behavior through an established, structured system of rewards and consequences (the "Incentives & Consequences System"). Consistent with the terms of Section XX, ¶¶ 10 and 22 of the Consent Judgment, the Monitor shall consult with Plaintiffs' Counsel on the Incentives & Consequences System in order to provide Plaintiffs' Counsel with an opportunity to provide input on the development and implementation of the system. The Incentives & Consequences System shall be subject to the approval of the Monitor.

   i.     The Incentives & Consequences System will include a variety of short-term and long-term rewards and consequences that Staff may provide to Incarcerated Individuals to incentivize positive behavior and sanction negative conduct, close in time to when the conduct occurs. The Incentives & Consequences System shall be consistent with all applicable laws or regulations.

   ii.    Staff shall appropriately document and track instances in which Incarcerated Individuals are provided rewards or consequences.

   iii.   The Department, in consultation with the Monitor, shall develop, adopt, and implement a policy that sets forth the procedures and processes associated with the Incentive & Consequence System and a training program. The policy and training program shall be subject to the approval of the Monitor. The Department shall provide the training to all Staff that may work on any RNDC housing units that may house 18-year-old Incarcerated Individuals.

   iv.   The Department, in consultation with the Monitor, shall develop, adopt, and implement a protocol, which shall include the use of relevant data, to assess how well the Incentives & Consequences System is implemented in the relevant RNDC housing units.

3.   *Direct Supervision*. For all housing units at RNDC that may house 18-year-old Incarcerated Individuals, the Department, including RNDC Supervisors, shall take necessary steps to improve the implementation of the Direct Supervision Model with an emphasis on the development of proactive and interactive supervision; appropriate relationship building; early intervention to avoid potential confrontations; de-escalating conflicts; rewarding positive behavior; and the consistent operation of the unit.

   i.     The Department, including RNDC Supervisors, shall reinforce the implementation of the Direct Supervision Model with Staff through, among other things, appropriate staff supervision, coaching, counseling, messaging strategies, or roll call training.

   ii.    The Department, including RNDC Supervisors, shall periodically assess the extent to which the various aspects of the Direct Supervision Model are being implemented at the relevant RNDC housing units. The assessment shall include qualitative and quantitative measures that shall be developed in consultation with the Monitor. The assessment shall also include an appropriate examination of the extent to which Staff consistently follow the daily schedule in each housing unit. To the extent that deficiencies are identified through these assessments, Staff

Members shall be provided with appropriate instruction, counseling, or re-training. The results of these assessments shall be documented.

### E.      Modifications to Certain Consent Judgment Provisions

The following provisions of the Consent Judgment shall be modified as specified in Exhibit A for the reasons set forth below:

1.      Section V (Use of Force Reporting), ¶ 15, Section VII (Use of Force Investigations), ¶¶ 7, 8, and 13, Section XIII (Training), ¶ 2(c), and Section XIX (Reporting Requirements and Parties' Right of Access), ¶ 5 of the Consent Judgment shall be revised as set forth in Exhibit A to this Order. These revisions are necessary because Intake Investigations will replace Preliminary Reviews and Facility Investigations, and will involve certain Use of Force Incidents that previously required Full ID Investigations. In addition, all references elsewhere in the Consent Judgment to the term "Preliminary Review" or "Preliminary Reviewer" shall be deemed to be replaced by the term "Intake Investigation" or "Intake Investigator."

2.      Section X (Risk Management), ¶ 2 of the Consent Judgment, which addresses Counseling Meetings with Staff, shall be revised as set forth in Exhibit A to this Order to modify the circumstances that warrant a Counseling Meeting.

3.      Section X (Risk Management), ¶ 3 of the Consent Judgment, which addresses the responsibilities of the Use of Force Auditor, shall be revised as set forth in Exhibit A to this Order given the elimination of the Use of Force Auditor position. In lieu of the Use of Force Auditor position, the Department will engage in a broader effort to routinely collect and analyze data relevant to assessing compliance with the Consent Judgment.

4.      Section XII (Screening), ¶¶ 6 – 7 of the Consent Judgment, which address the assignment of certain Staff, shall be revised as set forth in Exhibit A to address logistical difficulties associated with these provisions, as well as to require the Department to review the assignment of all Staff Members who have been found guilty or pleaded guilty to a violation arising from misconduct relating to a Use of Force Incident and to determine whether such Staff should be placed in the Early Intervention, Support, and Supervision Unit ("E.I.S.S.") monitoring program.

### F.      Other Terms

1.      The definitions of terms set forth in Section III of the Consent Judgment shall apply to this Order. All provisions in Sections XIX, XX, XXI of the Consent Judgment are incorporated into this Order to the extent applicable unless otherwise specified in this Order.

2.      All terms of the Consent Judgment shall continue to be in force except those terms previously modified by the Court and those provisions modified pursuant to Exhibit A of this Order.

3.  Paragraphs B.2, E.1 – E.4, and the revisions to the Consent Judgment required by this Order and set forth in Exhibit A to this Order, shall be subject to the termination provision set forth in Paragraph XXI. 5 of the Consent Judgment. All other provisions of this Order shall terminate only upon a finding by the Court that Defendants have achieved Substantial Compliance with those provisions and the Non-Compliance Provisions and have maintained such Substantial Compliance for a period of twenty-four months. The burden shall be on Defendants to demonstrate such compliance by a preponderance of the evidence.

4.  The Parties stipulate and agree, and the Court finds, that this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a). The Parties further stipulate and agree, and the Court finds, that the prospective relief in this Order is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that the Order complies with the provisions of 18 U.S.C. § 3626(a). Except to enforce the Order, this section shall not be admissible against Defendants in any court for any purpose.

5.  The Department shall include the following information in each Compliance Report that is required to be provided to the Monitor and Plaintiffs' Counsel pursuant to Section XIX, ¶ 1 of the Consent Judgment (in addition to the information set forth in Section XIX, ¶ 1):

    i.   The results of the Department's reviews of a sample of instances in which Facility Emergency Response Teams were deployed during the Reporting Period, as referenced in Paragraph A.6 above.

    ii.  The number of instances during the Reporting Period in which an Intake Investigation or a Full ID Investigation (if the incident was referred for a Full ID Investigation) resulted in a finding that that the incident involved excessive or unnecessary Use of Force or any other UOF Violation, broken down by Facility and type of violation, as referenced in Paragraph B.5 above.

    iii. The results of the monthly assessments conducted during the Reporting Period of RNDC's compliance with the consistent staffing requirements, as referenced in Paragraph D.1(i) above.

    iv.  The results of the assessments conducted during the Reporting Period of how well the Incentives & Consequences System is being implemented in the different RNDC housing units during the Reporting Period, including any relevant data that formed the basis for this assessment, as referenced in Paragraph D.2(iv) above.

    v.   The results of the assessments conducted during the Reporting Period of the extent to which various aspects of the Direct Supervision Model are being implemented, as referenced in Paragraph D.3(ii) above.

6.    Future Monitor Reports shall describe the efforts the Department has taken to implement the requirements of this Order and should evaluate the extent to which the Department has complied with each substantive provision of this Order and the revisions to the Consent Judgment set forth in Exhibit A to this Order. Future Monitor Reports shall also include the data referenced in Paragraph F.7(ii) below for the prior Reporting Period.

7.    In addition to the Monitor Reports, the Monitor shall file with the Court and provide the Parties four brief interim written reports describing the efforts the Department has taken to implement the requirements of this Order ("Remedial Consent Order Interim Status Report").

    i.    The Monitor shall issue the Remedial Consent Order Interim Status Reports within 45 business days of the end of each Remedial Consent Order Interim Reporting Period. The first Remedial Consent Order Interim Reporting Period shall begin on the Order Date and end on September 30, 2020. The second Remedial Consent Order Interim Reporting Period shall begin on January 1, 2021 and end on March 31, 2021. The third Remedial Consent Order Interim Reporting Period shall begin on the July 1, 2021 and on September 30, 2021. The fourth Remedial Consent Order Interim Reporting Period shall begin on January 1, 2022 and end on March 31, 2022.

    ii.    Each Remedial Consent Order Status Report shall include the following data for the prior Remedial Consent Order Interim Reporting Period:

        a.  For each Facility, data relating to the number of ADWs in each Facility and how they are deployed to oversee Housing Area Captains and housing units.

        b.  The total number of instances in which Facility Emergency Response Teams were deployed at each Facility, broken down by month.

        c.  The frequency with which Intake Investigations were completed within the period specified in the revised version of Section VII, ¶ 7(b) set forth in Exhibit A to this Order.

        d.  The frequency with which the Intake Unit referred Use of Force Incidents for a Full ID Investigation.

        e.  Starting in the Twelfth Reporting Period, caseload data for each ID Investigator who is responsible for conducting Full ID Investigations and each Intake Investigator.

        f.  The number of vacant ID positions as of the end of the prior Remedial Consent Order Interim Reporting Period, and the status of efforts to fill these positions.

        g.  The number of instances Staff were subject to immediate corrective action pending the completion of a Use of Force investigation, broken down by the nature of the corrective action imposed.

11

h.  The number of instances the Monitor recommended that the Department take immediate corrective action, expeditiously complete a Use of Force investigation, and/or expeditiously pursue disciplinary proceedings, and the Department's responses to these recommendations.

i.  The status of all matters where a Use of Force investigation was completed, a UOF Violation was found, and disciplinary action was recommended against a Staff Member.

j.  The number of pre-trial conferences held before OATH for disciplinary cases involving charges related to UOF Violations, broken down by month.

k.  Data reflecting the extent to which the same correction officers, Captains, and ADWs were consistently assigned to work at the same housing units and on the same tours at RNDC housing units that may house 18-year-old Incarcerated Individuals.

l.  The extent to which progress has been made to reduce the level of violence and unnecessary and excessive Use of Force involving Incarcerated Individuals at RNDC, as well as relevant data used to make this assessment.

FOR THE UNITED STATES:

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:    _____

       JEFFREY K. POWELL
       LARA K. ESHKENAZI
       Assistant United States Attorneys
       86 Chambers Street, 3rd Floor
       New York, NY 10007
       Telephone: (212) 637-2706/2758
       Email: Jeffrey.Powell@usdoj.gov
              Lara.Eshkenazi@usdoj.gov

FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By:    _____

       MARY LYNNE WERLWAS
       KAYLA SIMPSON
       199 Water Street, 6th Floor
       New York, New York 10038
       Telephone: (212) 577-3530
       Email:   mlwerlwas@legal-aid.org
                ksimpson@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By:    _____/s/_____

       JONATHAN S. ABADY
       DEBBIE GREENBERGER
       600 Fifth Avenue, 10th Floor
       New York, NY 10020
       Telephone:  (212) 763-5000
       Email:   jabady@ecbalaw.com
                dgreenbergerg@ecbalaw.com

FOR DEFENDANTS CITY OF NEW YORK AND DEPARTMENT OF CORRECTION:

JAMES E. JOHNSON
Corporation Counsel for the City of New York

By:    _s/ Kimberly Joyce_____
       KIMBERLY JOYCE
       100 Church Street
       New York, New York  10007
       Telephone: (212) 356-2300
       Email:  kjoyce@law.nyc.gov

SO ORDERED this _____ day of _____, 2020

_____
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

## **Exhibit A**

The following Paragraphs of the Consent Judgment shall be revised to read as follows:

<u>Section V (Use of Force Reporting)</u>, ¶ 15: Eliminated

<u>Section VII (Use of Force Investigations)</u>, ¶ 7: Intake Investigations.

a. *Investigation of Use of Force.* The Intake Investigation Unit shall conduct an investigation into the circumstances surrounding every Use of Force Incident, including the circumstances that led up to and followed the Use of Force, to determine:

   i. whether Staff engaged in excessive or unnecessary Use of Force or otherwise failed to comply with the New Use of Force Directive, or whether additional investigation is necessary to make this determination because the incident falls within the categories set forth in the revised version of Section VII, ¶ 8 below and thus requires a Full ID Investigation (as defined in that Paragraph);

   ii. whether the Use of Force Incident is properly classified as a Class A, Class B, or Class C Use of Force;

   iii. whether the matter should be immediately referred to DOI due to the potential criminal nature of the Staff's conduct;

   iv. whether the matter should be immediately referred to DOI due to the potential criminal nature of the Inmate's conduct;

   v. whether to recommend that any involved Staff Member(s) should be subject to immediate corrective action pending the completion of the Use of Force investigation based on the nature of the Staff Member's conduct, including but not limited to counseling or re-training, reassignment to a different position (including limited or no inmate contact), placement on administrative leave with pay, or immediate suspension (collectively, "immediate corrective action"); and

   vi. whether there were material operational deficiencies that contributed to, resulted in, or impacted the Use of Force Incident that need to be addressed by the Facility where the incident occurred.

b. *Timeliness.* The Intake Investigation, including all supervisory review and approval, shall be completed no later than 25 Business Days from the date the Use of Force Incident occurred, absent unusual circumstances outside the Department's control that warrant an extension of the deadline. Any extension of the 25-Business Day deadline shall be documented and approved by a Deputy Director of the Intake Investigation Unit.

c. *Investigation.* The Intake Investigator shall review at least the following information:

    i.     the relevant video footage of the Use of Force Incident, including footage from fixed surveillance cameras and handheld or body-worn cameras;

    ii.    Use of Force Reports from Staff;

    iii.   interviews and/or written statements from the Inmate(s) subject to the Use of Force or alleged Use of Force;

    iv.   interviews and/or written statements from Inmates or civilian staff who witnessed the incident;

    v.    Injury-to-Inmate Reports;

    vi.   photographs of Inmates and Staff Members that were taken after the Use of Force Incident; and

    vii.   reports reflecting any injuries to Staff Members.

d. If necessary to determine whether Staff engaged in excessive or unnecessary Use or Force or otherwise failed to comply with the New Use of Force Directive, the Intake Investigator shall either (i) conduct interviews of the Inmate(s) subject to the Use of Force or alleged Use of Force and any Inmate or civilian who witnessed the Use of Force Incident or (ii) recommend that such interviews be conducted during the Full ID Investigation.

e. The Intake Investigator shall document any non-functioning cameras, any unavailable video footage, or any other barrier to reviewing all relevant video footage. In the event that no or only materially incomplete video surveillance can be located even though the Use of Force Incident took place at a location under video surveillance, the Intake Investigator shall either (i) investigate why no or only materially incomplete video surveillance can be located, and document his or her findings, or (ii) recommend that such investigation occur during the Full ID Investigation.

f. *Report.* At the conclusion of his or her investigation, the Intake Investigator shall prepare a report summarizing the findings of the Intake Investigation and the basis for these findings.

    i.     If the Intake Investigator completes the investigation as required by the provisions in this paragraph and recommends closure of the investigation, the report shall include:

        1.   A summary of the Use of Force Incident and relevant evidence gathered during the Intake Investigation. Where there are inconsistencies between different pieces of evidence such as witness statements, the report shall adequately explain the basis for crediting one source of evidence over another.

2. A determination of whether Staff engaged in excessive or unnecessary Use of Force or otherwise failed to comply with the New Use of Force Directive.

3. An explanation of how any conclusions and recommendations are supported by the evidence.

4. If an Inmate's prior infraction or criminal history, or a Staff Member's Use of Force or disciplinary history, is included in the report, its effect, if any, on the conclusion in the report.

5. Any recommended response to address the investigation findings, such as counseling, re-training, disciplinary action, or the need to address material operational deficiencies at the Facility that contributed to, resulted in, or impacted the Use of Force Incident.

ii. If the Intake Investigator recommends referral for a Full ID Investigation, the report shall include:

1. A summary of the Use of Force Incident and relevant evidence gathered during the Intake Investigation.

2. The basis for the referral for a Full ID Investigation.

g. *Supervisory Review.* All Intake Investigation reports shall be reviewed and approved by the Intake Investigator's supervisor to ensure that they comply with the terms of this Agreement and other applicable Department procedures and requirements. The name of the supervisor who conducts this review, the date of the review, and the findings of the review shall be documented.

h. The Intake Investigation Unit shall determine whether to recommend that a Staff Member should be subject to immediate corrective action (as required pursuant to subparagraph 7(a)(v)) as soon as possible after the Use of Force Incident, and shall convey this recommendation directly to Department supervisors authorized to impose the recommended immediate corrective action.

Section VII (Use of Force Investigations), ¶ 8:

The Intake Investigation Unit shall promptly refer any Use of Force Incident to ID to conduct a full investigation ("Full ID Investigation") upon a determination that:

a. The Use of Force Incident involves conduct that is classified as a Class A Use of Force, or any complaint or allegation that, if substantiated, would be classified as a Class A Use of Force.

b. The Use of Force Incident involves a strike or blow to the head of an Inmate, or an allegation of a strike or blow to the head of an Inmate.

3

c.  It is necessary to conduct interviews of Staff Members to complete a thorough investigation and determine whether Staff engaged in excessive or unnecessary Use or Force or otherwise failed to comply with the New Use of Force Directive.

d.  Due to the complexity of the incident or investigation, the nature of the conduct at issue, or the evidence collected, it is necessary to conduct further investigative steps to complete a thorough investigation and determine whether Staff engaged in excessive or unnecessary Use or Force or otherwise failed to comply with the New Use of Force Directive.

Section VII (Use of Force Investigations), ¶ 13:

The Department shall develop, adopt, and implement a streamlined and centralized process to collect the information enumerated in Section VII, ¶ 7(c)(i) - (vii) and ¶ 13 (a) and (b) below from each Facility in order to provide the Intake Investigation Unit with this information in an efficient and timely manner.

a.  *Witness Statements.* The Facility shall obtain written statements from relevant witnesses, including staff Use of Force Reports, statements from Inmates subject to the Use of Force or alleged Use of Force, and statements from Inmates or civilian staff who witnessed the incident. In the event that Inmates are unwilling to provide written statements but are willing to provide information verbally, the Facility shall document whatever information is provided verbally.

b.  *Collection of Medical Evidence.* At least four color digital photographs of each Inmate involved in the Use of Force Incident, capturing any visible injuries, shall be taken shortly after the Use of Force Incident, unless the Inmate refuses to be photographed, in which case such refusal shall be documented. Color photographs also shall be taken of Staff Members who sustained injuries during the Use of Force Incident. Injury-to-Inmate Reports shall be completed by medical staff and included in the file provided to the Intake Investigation Unit.

§ X (Risk Management), ¶ 2:

a.  The review of all Use of Force Incidents occurring in the Facility conducted by the Facility Warden, or a designated Assistant Deputy Warden (or other official of higher rank), shall include a determination of whether it would be appropriate to meet with the Staff Member to provide guidance concerning Use of Force ("Counseling Meeting").

   i.  The Facility Warden, Deputy Warden, or Assistant Deputy Warden shall conduct a Counseling Meeting if a determination is made that the Staff Member is in need of additional guidance regarding compliance with the New Use of Force Directive or any other Use of Force-related policies, procedures, rules, or directives.

   ii.  Counseling Meetings shall include guidance on how to utilize non-forceful methods to resolve conflicts and confrontations when circumstances do not require immediate physical intervention. A summary of the Counseling Meeting and any recommended corrective actions shall be documented and included in the

Staff Member's personnel file. Counseling Meetings shall be separate from any disciplinary actions taken.

iii.  The Department shall track whether Staff Members participated in Counseling Meetings, and, if so: (a) the name of the individual who provided such counseling, and (b) the date on which such counseling occurred.

Section X (Risk Management), ¶ 3:

The Department shall continue to routinely collect and analyze data relevant and necessary to assessing compliance with this Agreement, including data relating to Use of Force Incidents, the investigation of these incidents, and any discipline imposed. The Department shall identify trends and patterns in Use of Force Incidents, such as their prevalence, locations, severity, and concentration in certain Facilities and/or among certain Staff Members, including Supervisors. On a routine basis, the results of these analyses shall be documented and provided to the Monitor.

§ XII (Screening), ¶¶ 6 – 7 shall be combined into one new ¶ 6:

*Assessment After Discipline*: If a Staff Member has been found guilty or pleaded guilty to a violation arising from misconduct relating to a Use of Force Incident, the following shall occur:

a.  The Trials Division shall determine whether to recommend that the Staff Member be: (i) considered for reassignment to a different position (including but not limited to a position with limited or no inmate contact or a position outside a Special Unit) and/or (ii) placed in the Early Intervention, Support, and Supervision Unit ("E.I.S.S.") monitoring program.

b.  When the Trials Division recommends that a Staff Member be considered for reassignment, the Department, including the Facility Warden or a designated Assistant Deputy Warden (or other official of higher rank), shall timely evaluate that recommendation. The Staff Member shall be reassigned when the Department determines that the Staff Member cannot effectively and safely perform the duties associated with the assignment and/or the Staff Member should have limited or no inmate contact. If such a determination is made, reassignment must occur promptly. The results of the evaluation shall be documented and become part of the Staff Member's personnel file and shall be sent to the Monitor.

c.  When the Trials Division recommends that a Staff Member be placed in the E.I.S.S. monitoring program, the Department, including E.I.S.S., shall timely evaluate that recommendation, and promptly place the Staff Member in the E.I.S.S. monitoring program if warranted. The results of the evaluation shall be documented and become part of the Staff Member's personnel file and shall be sent to the Monitor.

Section XIII (Training), ¶ 2(c), (c)(i), and (c)(ii) shall reads as follows:

c.  Investigator Training: ID Investigator Training shall cover investigative procedures, skills, and techniques consistent with best practices and the terms of this Agreement. ID Investigator Training, including any revisions, shall be a minimum of 40 hours, and shall be provided to any new ID investigators assigned to ID after the Effective Date before they begin conducting investigations.

<u>Section XIX (Reporting Requirements and Parties' Right of Access), ¶ 5</u>*:*

At the end of each month, the Department shall provide the Monitor and Plaintiffs' Counsel with the reports prepared for all Intake Investigations completed during the preceding month pursuant to Section VII, ¶ 7(f) above. (For example, the reports of Intake Investigations completed in January would be provided at the end of February.)