UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                          :

MARK NUNEZ, et al.,                     :

                   Plaintiffs,         :

   - against -                         :

CITY OF NEW YORK, et al.,         :

                 Defendants.       :

                                            :   **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------- X
                                          :

UNITED STATES OF AMERICA,      :

                  Plaintiff-Intervenor,    :

   - against -                         :

CITY OF NEW YORK and NEW YORK CITY    :
DEPARTMENT OF CORRECTION,         :

                 Defendants.       :
------------------------------------------------------------- X

## STIPULATION AND ORDER
## REGARDING 16- AND 17-YEAR-OLD ADOLESCENT
## OFFENDERS AT HORIZON JUVENILE CENTER

      This Stipulation and Order ("Stipulation") is entered by and among the Plaintiff Class, Plaintiff the United States of America (the "United States"), and Defendants the City of New York (the "City") and the New York City Department of Correction (the "Department" or "DOC") (the City and the Department are collectively referred to herein as the "Defendants").

      WHEREAS, on October 21, 2015, this Court entered a Consent Judgment (Dkt. No. 249) in this matter requiring the Defendants to take specific actions to remedy a pattern and practice of violence against incarcerated individuals, and to develop and implement new practices, policies, and procedures designed to reduce violence in the jails and ensure the safety and well-being of incarcerated individuals;

      WHEREAS, on April 10, 2017, the State of New York passed legislation (known as the "Raise the Age Law") that raised the age of criminal responsibility to 18 years of age and created a new category of offenders called "Adolescent Offenders," which are defined as 16- or 17-year-olds who are charged with a felony-level offense, *see* Criminal Procedure Law 1.20 (44);

1

WHEREAS, the Raise the Age Law was implemented in stages.  The new category of offenders applied to any 16-year-old youth charged on or after October 1, 2018, and any 17-year-old youth charged on or after October 1, 2019.  All 16- and 17-year-old youth charged before October 1, 2018, and any 17-year-old youth charged between October 1, 2018 and September 30, 2019, were to still be processed as adults (collectively, "Pre-Raise the Age Youth");

WHEREAS, pursuant to the Raise the Age Law, all 16- and 17-year-old incarcerated youth were required to be housed in a facility not located on Rikers Island as of October 1, 2018;

WHEREAS, starting in October 2018, all Pre-Raise the Age Youth were housed at the Horizon Juvenile Center ("Horizon"), a specialized secure juvenile detention facility located in the Bronx, New York, which was jointly operated by DOC and the New York City Administration for Children's Services ("ACS");

WHEREAS, the Monitor appointed under the Consent Judgment has been monitoring and reporting on the extent to which Defendants have complied with applicable provisions of the Consent Judgment with respect to Pre-Raise the Age Youth housed at Horizon;

WHEREAS, Horizon also has been used to house Adolescent Offenders during the last several months;

WHEREAS, as of July 26, 2020, there were no longer any Pre-Raise the Age Youth housed at Horizon, but the facility continues to house Adolescent Offenders;

WHEREAS, ACS has assumed day-to-day operations of Horizon, and DOC  does not have any role in the day-to-day management of the facility;

WHEREAS, the City asserts that ACS' approach to managing Adolescent Offenders at Horizon is premised upon a therapeutic model, whose main focus is engagement of youth in positive pro-social, therapeutic, educational and/or vocational activities; de-escalation of volatile engagements, and trusted communications with youth to support a positive forward-facing behavioral approach;

WHEREAS, the United States, the Plaintiff Class, and the City have a dispute concerning the extent to which certain provisions of the Consent Judgment should apply to Adolescent Offenders housed at Horizon going forward given that DOC is no longer involved in the day-to-day operations of the facility and the facility no longer houses Pre-Raise the Age Youth;

NOW, IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel, and this Court THEREFORE ORDERS, as follows:

1. The City has voluntarily entered into the attached Agreement concerning the operation of Horizon and the management and supervision of Adolescent Offenders housed at that facility.  During the term of the Agreement, the Monitor will file with the Court three public reports describing the efforts ACS has undertaken to implement the requirements of the Agreement and assessing the extent to which ACS has complied with these requirements, applying the standard for Compliance set forth in the Agreement.  In addition, pursuant to the Agreement, ACS shall continue to consult with the Monitor and his team of experts who will, as necessary, provide technical assistance with respect to the implementation of the Agreement's requirements and the adoption of best practices in the field of juvenile justice.

2. During the duration of the Agreement, which shall end when the Monitor files his third and final report under the Agreement, the Monitor shall not assess compliance with the Consent Judgment with respect to Adolescent Offenders and the Plaintiff Class and the United States shall not seek judicial action to enforce the Consent Judgment with respect to Adolescent Offenders.

3. In the event that the Monitor finds that the City and ACS are in Compliance with the requirements of the Agreement set forth in Paragraphs 2(a)-(k) during the final reporting period referenced in the Agreement, the Plaintiff Class, the United States, and the City shall file with the Court a stipulation and proposed Order stating that the Consent Judgment shall not apply to Adolescent Offenders going forward.  The stipulation and proposed Order shall be filed with the Court within 30 days of the issuance of the final report filed by the Monitor.

4. If the event that Monitor finds that the City and ACS are not in Compliance with any of the requirements of the Agreement set forth in Paragraphs 2(a)-(k) during the final reporting period, the parties and the Monitor shall meet and confer within 30 days of the issuance of the final report to discuss whether the Agreement, or portions of the Agreement, should be extended or modified, or whether other steps should be taken to address areas that are not in Compliance.  The parties shall make a good faith effort to reach an agreement.  Nothing said by any party or counsel for any party during any and all meetings held pursuant to this Paragraph may be used by any party in subsequent litigation in this or any other lawsuit.  If the parties do not reach an agreement within 45 days of the issuance of the final report, the parties may petition the Court for a conference and reserve their right to seek any relief from the Court.  Nothing in this Stipulation shall be construed as a waiver of any party's right to take any position with respect to what extent, if any,  the Consent Judgment may apply to Adolescent Offenders at the Court conference or thereafter.

5. Nothing in this Stipulation shall be construed to impact the applicability of the Consent Judgment to any Plaintiff Class member who is not an Adolescent Offender.

FOR THE UNITED STATES:

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:     _Jeffrey Powell_____

      JEFFREY K. POWELL
      LARA K. ESHKENAZI
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, NY  10007
      Telephone: (212) 637-2706/2758
      Email: Jeffrey.Powell@usdoj.gov
            Lara.Eshkenazi@usdoj.gov

FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By: _____

      MARY LYNNE WERLWAS
      KAYLA SIMPSON
      DAVID BILLINGSLEY
      199 Water Street, 6th Floor
      New York, New York  10038
      Telephone: (212) 577-3530
      Email:   mlwerlwas@legal-aid.org
            ksimpson@legal-aid.org
            dbillingsley@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____

      JONATHAN S. ABADY
      DEBBIE GREENBERGER
      600 Fifth Avenue, 10th Floor
      New York, NY  10020
      Telephone: (212) 763-5000
      Email:   jabady@ecbalaw.com
            dgreenberger@ecbalaw.com

FOR THE UNITED STATES:

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: _____

  JEFFREY K. POWELL
  LARA K. ESHKENAZI
  Assistant United States Attorneys
  86 Chambers Street, 3rd Floor
  New York, NY 10007
  Telephone: (212) 637-2706/2758
  Email: Jeffrey.Powell@usdoj.gov
    Lara.Eshkenazi@usdoj.gov

FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By:  *Mary Lynne Werlwas*

  MARY LYNNE WERLWAS
  KAYLA SIMPSON
  DAVID BILLINGSLEY
  199 Water Street, 6th Floor
  New York, New York 10038
  Telephone: (212) 577-3530
  Email:  mlwerlwas@legal-aid.org
    ksimpson@legal-aid.org
    dbillingsley@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____/s/_____

  JONATHAN S. ABADY
  DEBBIE GREENBERGER
  600 Fifth Avenue, 10th Floor
  New York, NY 10020
  Telephone: (212) 763-5000
  Email:  jabady@ecbalaw.com
    dgreenberger@ecbalaw.com

FOR DEFENDANTS CITY OF NEW YORK AND DEPARTMENT OF CORRECTION:

JAMES E. JOHNSON
Corporation Counsel for the City of New York

By:        /s/
        KIMBERLY JOYCE
        100 Church Street
        New York, New York  10007
        Telephone: (212) 356-2300
        Email:  kjoyce@law.nyc.gov

SO ORDERED this   6th  day of    November    , 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

5

## Agreement With Monitoring Team Panel
## to Monitor 16- and 17-Year-Old Adolescent Offenders at Horizon Juvenile Center

This Agreement ("Agreement") is entered into by the Monitor appointed in the *Nunez* Consent Decree (11-cv-5845, docket entry 249) as defined in § XX, ¶ 1 & 6 (the "Monitoring Team Panel" or "Monitor"), the City of New York (the "City"), and the Administration of Children Services ("ACS"), for the period from the date this Agreement is executed until the filing of the final Monitor Report referenced below ("period of the Agreement"). This Agreement concerns the management and supervision of Adolescent Offenders, as defined under Criminal Procedure Law § 1.20(44), who are or will be housed at the Horizon Juvenile Center ("AO Youth"), and the operation of that facility.

1. ACS will make deliberate and good faith efforts to improve its practices regarding the enumerated provisions in ¶ 2 below.

2. ACS agrees to the following:

   a. AO Youth shall be supervised at all times in a manner that protects them from an unreasonable risk of harm. Staff shall intervene in a timely manner to prevent youth-on-youth fights and assaults, and to de-escalate youth-on-youth confrontations, as soon as it is practicable and reasonably safe to do so.

   b. ACS shall comply with applicable ACS policies governing staff's use of physical interventions and restraints (collectively "Physical Restraints") and any required reporting of such incidents, including Policy # 2014/10 ("Safe Intervention Policy for Secure and Non-Secure Detention") and Administrative Order # 01/2012 ("Reporting of Incidents and Data Management for Group Oriented Analysis of Leadership Strategies (Goals)"). The aforementioned policies shall be referred to herein as "the ACS Physical Restraint Policies." The City and ACS shall also agree to comply with 9 NY-CRR §§180-3.15 and 180-3.16.

      i. The Monitoring Team Panel shall assess and provide feedback, in collaboration with ACS's Division of Youth and Family Justice ("DYFJ") senior managers, on ACS' staff reporting and use of Physical Restraints, and shall provide any necessary recommendations for enhancements to reporting, limiting physical interventions where possible, and improvements with respect to the use of Physical Restraints. This assessment shall include a review by the Monitoring Team Panel of a reasonable number of incidents involving the use of Physical Restraints (including the review of staff reports and/or video footage), to provide feedback on de-escalation and restraint approaches in response to youth-on-youth violence, youth-on-staff violence, staff-on-youth violence, and other situations with an imminent threat of harm. The Monitoring Team Panel shall make recommendations about staff training, and articulate general improvements to practice as necessary.

   c. ACS shall conduct timely and thorough reviews of incidents involving Physical Restraints to determine whether the intervention was appropriate and whether ACS staff complied with the ACS Physical Restraint Policies. ACS shall also refer any

1

cases to the New York State Justice Center regarding staff use of Physical Restraints and/or Prison Rape Elimination Act ("PREA") allegations when required by applicable laws, regulations, or policies.

d. ACS shall develop and implement an age appropriate classification system for AO Youth that is sufficient to protect AO Youth from an unreasonable risk of harm and informs and guides the appropriate housing of AO Youth, and permits the use of overrides to address youth's mental health, education, or other individual needs.

e. ACS shall develop, track, and maintain a sufficient level of programming for AO Youth, consistent with best practices for adolescents and young adults.

f. ACS shall adopt and implement a staff assignment system under which a team of housing unit staff and supervisor(s) are consistently assigned to the same AO Youth housing unit and the same tour, to the extent feasible given leave schedules and personnel changes.

g. ACS shall develop and implement systems, policies, and procedures for AO Youth that: (i) reward and incentivize positive conduct and (ii) sanction negative conduct. The application of these systems, policies, and procedures shall be individualized and consistent with any treatment needs for AO Youth, and shall not compromise the safety of other AO Youth or ACS staff.

h. ACS shall comply with applicable ACS policies and practices: (1) prohibiting the use of punitive segregation and (2) governing the use of room confinement.

i. ACS shall preserve all video at Horizon Juvenile Center for 90 days.  When ACS is notified of a Physical Restraint within 90 days of the date of the incident, ACS shall preserve the video for a period of four years.

j. ACS shall take all necessary steps to impose appropriate and meaningful discipline, up to and including termination, when staff members violate the ACS Physical Restraint Policies.

k. Improve other practice areas related to Physical Restraints and dynamics to which the parties mutually agree to discuss.

3. ACS agrees, in the spirit of collaboration and in recognition of the deep mutual commitment to improving program and practice goals, to continue to consult with the Monitoring Team Panel regarding the areas set forth above in Paragraphs 2(a)-(k).  The Monitoring Team Panel will meet on a quarterly basis with the ACS Commissioner and relevant associated senior staff, to discuss the Monitoring Team Panel's observations and assessment of ACS program and practice issues at Horizon Juvenile Center, improvements made or not made, and to relate any other information that the Monitoring Team Panel deems relevant and appropriate for ACS practice at the Horizon Juvenile Center.

4. During the period of this Agreement, the Monitoring Team Panel may, as necessary, provide technical assistance to ACS regarding the terms of this Agreement.

5. The Monitor will assess compliance with the requirements set forth above in Paragraphs 2(a)-(k).  For purposes of this Agreement, the Monitor shall find ACS to be in "Compliance" with a provision if the Monitor finds that ACS has consistently complied with the relevant requirement and any violations of the relevant requirement are only minor

or occasional and not systemic, material, or recurring.  The Monitor will file three public reports ("Monitor Reports") on the docket 11-cv-5845 (LTS) (S.D.N.Y.) assessing ACS' compliance with these requirements during each of the three reporting periods.

    a.  The first reporting period shall begin on the date this Agreement is executed and end on June 30, 2021.  The second and third reporting periods shall be a six-month period of time beginning on the day following the end of the previous reporting period.

    b.  The Monitor shall issue a report within 75 business days following each reporting period.  The Monitor Reports shall be provided to the City and ACS in draft form for comment at least 25 business days prior to their issuance. The City and ACS shall provide the Monitor with their comments, if any, within 15 business days after receipt of the draft Monitor Report. The Monitor shall consider the comments, and make any changes deemed appropriate, before issuing the final report.  The Monitor Reports shall be written with due regard for the privacy interests of individual AO Youth and ACS staff members; federal, state and local laws regarding the privacy of such information; and the interest of ACS in protecting against the disclosure of non-public or privileged information.  Consistent with such interests and laws, the Monitor shall redact individual-identifying information from Monitor Reports and any documents submitted with those reports, and shall give due consideration to ACS requests to edit or redact any other information.  To the extent the Monitor declines to make the edits or redactions requested by ACS, ACS can append any comments to the Monitor Report that is submitted.

    c.  Each of the Monitor Reports shall provide relevant and appropriate context for its findings and give due consideration to the totality of the circumstances.  Further, as appropriate and relevant, the Monitor Reports shall describe: (1) ACS' diligent and good faith efforts to implement ¶ 2 (a-k) of this Agreement, (2) generally accepted practice for 16- and 17-year old youth as it relates to this Agreement, and (3) any challenges or obstacles related to implementing ¶ 2 (a-k) of this Agreement.

    d.  ACS will be afforded the opportunity to append a response to the final Monitor Report filed with the Court.

6. In furtherance of this Agreement, the City shall bear all reasonable fees, costs, and expenses of the Monitor, including payments to the Monitor's staff as required under the *Nunez* Consent Judgment § XX, ¶ 5 and consistent with the Monitoring Team Panel's payment structure with the City that is in place for the *Nunez* Consent Judgment.

7. ACS will provide the Monitoring Team Panel reasonable and timely access to relevant information and documents in order to perform the responsibilities of this Agreement. The Monitoring Team Panel will enter into a confidentiality agreement with ACS within 30 days of signing this Agreement, which will delineate the acquisition and appropriate use by the Monitoring Team Panel of confidential information, prohibitions on secondary dissemination, record retention during the period of this Agreement, and destruction of records provided to the Monitoring Team Panel at the end of the period of this Agreement.

**FOR THE CITY OF NEW YORK AND**
**THE ADMINISTRATION OF CHILDREN SERVICES:**


JAMES E. JOHNSON
Corporation Counsel for the City of New York


_____/s/_____
Kimberly Joyce



**FOR THE MONITOR:**


s/ Steve J. Martin_____

Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*
Christina B. Vanderveer, *Associate Deputy Monitor*