UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
MARK NUNEZ, et al.,                                          :
                                                             :
                Plaintiffs,                           :
                                                             :
  - against -                                               :
                                                             :
CITY OF NEW YORK, et al.,                                    :
                                                             :
                Defendants.                           :
                                                             :  **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------ X
:
UNITED STATES OF AMERICA,                                    :
                                                             :
                Plaintiff-Intervenor,                 :
                                                             :
  - against -                                               :
                                                             :
CITY OF NEW YORK and NEW YORK CITY                           :
DEPARTMENT OF CORRECTION,                                    :
                                                             :
                Defendants.                           :
------------------------------------------------------------ X

## DECLARATION OF STEVE J. MARTIN

**STEVE J. MARTIN** hereby declares as follows:

1. I submit this declaration in support of the Parties' proposed Second Remedial Order ("Second Remedial Order"), attached as **Exhibit A**.

2. I am currently the Court-appointed Monitor of the *Nunez* Consent Judgment (dkt. 249) ("Consent Judgment") and I am responsible for assessing the Department's compliance with the Consent Judgment, and Remedial Consent Order Addressing Non-Compliance (the "First Remedial Order," Dkt. No. 350) that included several remedial measures designed to address ongoing non-compliance with the Consent Judgment. The Monitoring Team includes professionals with substantial experience and commitment to advancing correctional reform (collectively, "the Monitoring Team"). Team members include the Monitor, Deputy Monitor, Associate Deputy Monitor, Associate Director,

          Senior Analyst, and three Subject Matter Experts all of whom reflect diverse professional backgrounds, experiences, and perspectives that help to ensure that the Monitoring Team's work is neutral, independent, balanced, objective, fair, reasonable, and responsible. The Monitoring Team has developed significant expertise in the operations of the New York City Department of Correction as it relates to the use of force and security protocols. Further, the Monitor and three Subject Matter Experts collectively have over one hundred years of experience in the management, operation, and monitoring of confinement facilities across the country.

3. I have worked as a corrections professional for almost 50 years, including as a correctional officer, General Counsel of the Texas State Prison System, and expert consultant for the United States Department of Justice, Civil Rights Division, and the United States Department of Homeland Security, Office of Civil Rights and Civil Liberties. I have visited or inspected over 700 confinement facilities in the United States and abroad and have been continuously involved in institutional reform litigation. Since 1987, I have been retained as an expert witness and consultant in more than 200 cases involving correctional facilities, many of which involved allegations of excessive and unnecessary use of force. Notably, I served as one of two Joint Expert Consultants in the remedial phase of *Sheppard v. Phoenix*, 91 Civ. 4141 (RPP) (S.D.N.Y.), an earlier class action brought against Defendant the City of New York (the "City") with respect to use of force in the Central Punitive Segregation Unit. I also was retained as an expert by the plaintiffs in *Ingles v. Toro*, 01 Civ. 8279 (DC) (S.D.N.Y.), another action alleging a pattern and practice of excessive and unnecessary use of force in the City jails. I also have served as a federal court monitor in numerous prisons and state systems, large metropolitan jail systems, and juvenile justice facilities. I keep myself apprised of developments with respect to legal standards, as well as best practices, with respect to use of force by corrections staff and security protocols in general. A copy of my curriculum vitae is attached to this declaration as **Exhibit B**.

4. The Monitoring Team has filed eleven monitor's reports with the Court (docket entries 269, 291, 295, 305, 311, 317, 327, 332, 341, 360, and 368) that have covered the period of October 22, 2015, to December 31, 2020, as well as two Remedial Order reports (docket entries 365 and 373), and recently three status letters addressing

the current dire conditions at Rikers Island (docket entries 378, 380, and 387). The reports describe the efforts the Department has taken to implement the requirements of the Consent Judgment and First Remedial Order and evaluate the extent to which the Department has complied with each substantive provision of the Consent Judgment and First Remedial Order.

5. The Department has repeatedly been found in Non-Compliance[1] with Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision) (collectively "Non-Compliance Provisions"), and more recently with regard to the First Remedial Order Provisions Section A. ¶ 2 (Facility Leadership Responsibilities), Section A. ¶ 3 (Revised De-escalation Protocol), Section A. ¶ 6 (Facility Emergency Response Teams), Section D. ¶ 1 (Consistent Staffing), Section D. ¶ 2 (ii) (Tracking of Incentives and Consequences), and Section D. ¶ 3 (Direct Supervision). *See* Chart of Non-Compliance Provisions, attached as **Exhibit C** for ease of reference.

6. Three status letters dated August 24, 2021 (Dkt. No. 378), September 2, 2021 (Dkt. No. 380), and September 23, 2021 (Dkt. No. 387), detail the deteriorating circumstances at Rikers Island and the ongoing dangerous and unsafe conditions in the jails. As noted in the September 23, 2021, status report, the current state of affairs is nothing short of an emergency posing an immediate threat to the safety and well-being of Inmates and Staff, and the current harmful conditions in the jails are directly linked to the Department's failure to comply with the foundational requirements of the Consent Judgment and the First Remedial Order.

7. The remedial measures included in the proposed Second Remedial Order were based on recommendations outlined in the September 23, 2021, status report that I developed, based on my professional judgment in consultation with the Deputy

---

[1] As defined by Consent Judgment Section XX (Monitoring), ¶ 18.

      Monitor and Associate Deputy Monitor, that were intended to address the unsafe and dangerous conditions in the jails. The development of these recommendations also included consultation with the three Subject Matter Experts on our team who have extensive experience in the management and operation of confinement settings across the country. I also directly participated in the negotiations with the Parties on the development of this Second Remedial Order.

8. The provisions in the proposed Second Remedial Order were extensively negotiated, at arm's-length, and closely analyzed, with the parties mindful of the operational challenges and burdens associated with implementing the relief, and the relief was appropriately tailored to address such concerns while still serving the goal of reducing excessive and unnecessary use of force and violence in the City jails.

9. Recognizing the requirement that remedies should represent the least intrusive means necessary and be tailored to properly address the implicated rights and interests, certain provisions in the proposed Second Remedial Order require the Department to develop and implement certain systems or policies in consultation with the Court-appointed Monitor, thereby preserving the Department's ability to fashion these remedies (in consultation with the Monitor) in an appropriately targeted manner that takes into account any legitimate operational and logistical concerns. Further, certain provisions specifically require further consultation and discussion between the City, the Department, and the Monitoring Team to determine the most appropriate path forward.

10. As explained in more detail below, I believe that the relief included in the proposed Second Remedial Order is necessary to adequately address the continued violations occurring as a result of sustained Non-Compliance with provisions of the Consent Judgment and First Remedial Order and is narrowly tailored to properly address the implicated rights and interests, and no more intrusive than is necessary to protect incarcerated individuals' constitutional rights. The provisions are targeted to remedy the deficiencies identified.

11. Moreover, the remedial measures included in the proposed Second Remedial Order should not have an adverse impact on public safety or the operation of the criminal justice system and are consistent with sound security practice. Moreover, because the

remedies are designed to reduce violence in the City jails, the required changes are likely to promote public safety and protect both incarcerated individuals and DOC staff from unnecessary harm and injuries.

12. The proposed Second Remedial Order includes six provisions designed to *immediately* address the current lapses in security management, expanding criteria for Department leadership beyond the uniform ranks, and consideration of appointment of an external Security Operations Manager. *See* Second Remedial Order § 1, ¶ (i-iii). As described below, each provision is necessary and narrowly tailored.

13. **§ 1, ¶ i: Immediate Security Initiatives**: The Department has, thus far, failed to effectively address the unsafe conditions that are posing an imminent risk of harm to those in custody and Department Staff. This includes violence among incarcerated people, violence at the hands of Staff and violence toward Staff, in addition to a disturbing rise in self-harming behavior. The harm flowing to incarcerated individuals and Staff are directly linked to and caused by a wide range of security failures, including failures to properly secure doors on cells, vestibules and control stations; poor situational awareness and lack of vigilance while on post; overreliance on Probe Teams; failures in adequately securing incarcerated individuals following violent assaults; and failures to respond to self-harming behavior. Supervisors' repeated failures to identify and address these problems mean that Staff continue their dangerous practices unchecked. This provision requires the Department to develop and implement an interim Security Plan, improve Staff response to self-harm, process inmates through Intake in 24 hours or less, maintain the video monitoring units with adequate staffing and supervisors, implement a post-incident management protocol to secure incarcerated individuals following involvement in a violent incident, and retain a consultant to advise the Department on a strategy to safely house incarcerated individuals in consideration of gang affiliation. These provisions are all necessary to remedy the dangerous conditions and security management failures in the City jails, as outlined in the Monitor's three status letters to the Court dated August 24, 2021 (Dkt. No. 378), September 2, 2021 (Dkt. No. 380), and September 23, 2021 (Dkt. No. 387).

14. **§ 1, ¶ ii: Expanded Criteria for Department Leadership**: The Department has long struggled with adequate supervision of its Staff throughout the life of the Consent Judgment (October 2015 to the present) and Facility leadership have not been successful in dismantling the culture that gave rise to the Consent Judgment. The Monitoring Team's observation of Facility practices and various leadership meetings suggest that Facility Leadership has not embraced, and in some cases has not quite grasped, what is needed for the task at hand. The current group of Facility leaders alone are not capable of dismantling the dysfunctional/abusive culture at the Facilities and replacing it with one built on dignity, respect, and problem-solving (*see* **Exhibit D: Monitoring Team Findings of Supervisory Deficiencies**). Therefore, I have recommended that the criteria for who may serve on Facility leadership teams (*e.g.*, Warden) must be expanded so that the Department is no longer limited to only selecting individuals from the current uniform ranks (*see* status letter to the Court dated September 23, 2021 (Dkt. No. 387), and Eleventh Monitor's Report at pgs. 12-14 (Dkt. 368)). The Department must have the ability to also seek, from the broader corrections community, managers with the required skills and willingness to improve the state of facility operations and the ability to inspire, encourage, and motivate Staff to embrace the new practices that are at the heart of the reform effort. This provision requires the City to confer with relevant State leadership to determine how this recommendation may be adopted, and for my office to submit to the Court on October 14, 2021, a report that describes the City's proposed approach for implementing this recommendation.

15. **§ 1, ¶ iii: Appointment of Security Operations Manager**: The significant deterioration in safety, the ubiquitous poor management, the systemic dysfunction, and the corresponding harm to incarcerated individuals and Staff have led the Monitoring Team to conclude that the Department does not have the requisite internal capacity to manage the security functions necessary to implement the reforms under the Consent Judgment and Remedial Order. I therefore recommended the appointment of an external Security Operations Manager with significant expertise in correctional security who would have the authority to develop and implement the Department's security protocols (*see* status letter to the Court dated September 23,

2021 (Dkt. No. 387)). Security failures have been an ongoing and pervasive problem in this Department throughout the pendency of the Consent Judgment, *see* **Exhibit E: Monitoring Team Findings of Security Failures**. This provision requires the Parties to discuss the recommendation to appoint the Security Operations Manager and for my office to submit to the Court on October 14, 2021, the status of these discussions, the proposed duties and responsibilities of that individual, and whether the Defendants intend to appoint such an individual as recommended.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 28, 2021.

s/Steve J. Martin  
Steve J. Martin  
*Monitor*