OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

178 Columbus Avenue, #230842
New York, NY 10023-9998
+1 646 895 6567 | afriedberg@tillidgroup.com

December 1, 2021

**VIA ECF**
The Honorable Laura T. Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Chief Judge Swain,

      In anticipation of the Status Conference tomorrow, the Monitoring Team writes to provide the Court with a Status Report[1] regarding the current conditions in the New York City jails so the Court has the most up-to-date information and understands the necessary steps that must occur in order for the goals of the Consent Judgment to be realized. The Monitoring Team also provides the Court with a proposed agenda for the Status Conference (attached as Appendix A) as requested by the Court's November 30 order (dkt. entry 427).

*Background*

      The Monitoring Team first advised the Court of our grave concerns about the conditions

---

[1] The Monitoring Team has submitted Status Reports on the current conditions in the NYC jails on August 24, 2021 (dkt. entry 378), September 2, 2021 (dkt. entry 380), and September 23, 2021 (dkt. entry 387), October 14, 2021 (dkt. entry 403), and November 17, 2021 (dkt. entry 420). The Monitoring Team also submitted a status report regarding use of force related discipline on September 30, 2021 (dkt. entry 399).

and pervasive high level of disorder and chaos in the New York City jails on August 24, 2021 (dkt. entry 378).  In the 100 days since then, the Monitoring Team has filed six additional status reports (including the current report) and the Monitoring Team has facilitated negotiations on two Remedial Orders that the Court approved this fall (see dkt. entries 398 and 424). The Second Remedial Order was devised to address the immediate security issues presented by the crisis this summer. The Third Remedial Order included various requirements to address the dysfunctional practices that have undermined accountability within the Department. In support of these Remedial Orders, the Department has been working on implementing a number of initiatives to address the current state of affairs in collaboration with the Monitoring Team.  In short, the Department and the Monitoring Team have been working at a breakneck pace to address the current conditions.

_Current State of Affairs_

The dire conditions that emerged in the late summer and early fall 2021 are the culmination of decades of mismanagement—in particular, the Department's flawed security procedures, dysfunctional and convoluted staffing practices, and the Department's limited ability to timely hold Staff accountable. Since the Second Remedial Order went into effect approximately 60 days ago, the City and the Department have expended significant effort to address the dire conditions in the jails. In addition to the strategies discussed in detail below, the Department reduced the number of people in custody and distributed tablets throughout the facilities to reduce idle time. Further, gains have been made in the following areas:

- **Intake**: The Department opened a new admission intake unit at EMTC that significantly ameliorated the dire conditions in intake. New admissions are being processed more quickly, with most being processed into a housing unit within the required 24-hour

period.  That said, further work is needed to improve the overall use of intake, specifically, to better manage and process inter-facility transfers among the jails.

- **Security Protocols**: The Department has devised several interim security protocols and procedures which the Chief of Department and Assistant Commissioner of the Nunez Compliance Unit have diligently rolled out across the facilities, along with various communications and guidance to line staff and supervisors.  Proper procedures have been reinforced regarding door security, escort procedures, remaining on post, and supervisors' tours. A review of a recent set of use of force incidents reveals that some of the more extreme security breaches that had been observed have decreased slightly.

- **Staffing**: The Department's current staffing challenges brought into sharp focus the Herculean work needed to untangle the complicated and convoluted web of practices related to management and deployment of staff.  The City and Department have expended significant time and resources to address the mass absenteeism that began this spring, with a particular focus on staff out on sick leave and absent without leave ("AWOL").  In the last few months, the City and Department significantly increased their vigilance regarding potential abuses of the system, and the Department has dedicated staff and leadership who are focused on this issue.  The City filed suit against the Correction Officers' Benevolent Association ("COBA"), and the Mayor issued numerous Executive Orders to improve procedures to better identify and address potential abuses of the system and staff are far more likely to be held accountable (including being suspended). The number of staff out on sick leave and AWOL status has not yet been significantly reduced, but some of the sorely needed system improvements have been made and the City and Department have identified additional practices that require

3

further refinement. The full impact of the new procedures will not be immediately realized, as experience in other jurisdictions suggests that staff decision making is impacted only when a new approach is consistently implemented over time. The complicated nature of the protocols in place, and the fact that staff continue to be absent in large numbers, demonstrates the need for ongoing vigilance and focus on these issues. Finally, while posts continue to go unmanned and staff continue to work both double and triple shifts, there has been a reduction in the frequency of both practices over the past few months.

While the City's and Department's efforts must be acknowledged, and the current situation is not as dire as it was in late summer and early fall, but the Monitoring Team must emphasize its ongoing concerns about the conditions of confinement in the jails which remain at a level below the minimal progress that was emerging in spring 2021, before the crisis began.

The Department's decades of poor practices have produced a maladaptive culture in which deficiencies are normalized and embedded in every facet of the Department's work. This traps the Department in a state of disrepair, where even the first step to improve practice is undercut by the absence of elementary skills—be it staff deployment, safety and security, or managing/supervising staff. It is therefore impossible to fix these problems quickly; it is also somewhat unrealistic to expect that the desired outcomes would be achieved during the recent period of crisis.

_Guiding Principles for Next Steps_

The Monitoring Team's decades of experience in institutional reform and intimate knowledge of the Department's practices reinforce three guiding principles for the path forward.

**First, change must come from within**. The Department must be empowered with the ability to fix these problems from within. Sustainable reform in the agency has the greatest chance of success if those leading the agency and facility are the ones who own, guide, and deliver practice improvements, particularly among line staff.  In this case, the efforts of agency and facility leaders will necessarily require support from key external actors, such as the Security Operations Manager, an expanded pool of individuals who may serve in Facility leadership roles, and the Monitoring Team.

**Second, key foundational issues must be prioritized**. The success in reforming the Department hinges on addressing a select and small group of key foundational issues. The work over the last six years has confirmed that attempting to simultaneously address a multitude of requirements with the same level of vigor is not only impossible, but counterproductive. The Monitoring Team has identified four foundational issues that have stymied progress and thus must be addressed first, before the Department can make further progress in reforming the agency. This approach inherently means that certain other requirements will not be prioritized, but the Monitoring Team believes it is the only path forward. Continuing the attempt to implement hundreds of provisions without some prioritization will simply immobilize the Department and progress will likely not be achieved no matter how many remedial orders or other potential sanctions may be imposed. Accordingly, the Monitoring Team intends to work closely with the Department and the City to address long-standing failures in the four areas discussed in the "Next Steps" section of this Status Report below.

**Third, reasonable expectations must be set.** System reform does not require perfection in order to be meaningful.  A realistic approach as to what can be achieved and sustained must be the foundation. Thus, expecting perfection or demanding additional guarantees or remediation

when compliance with a given requirement is not achieved perfectly (*e.g.*, there are deviations for a small number of cases) runs counter to both the definition of "substantial compliance" and to the overall goal of creating a functioning system.

*Foundational Issues Stymying Reform Efforts*

The facilities are dangerous, leadership and supervisors do not inspire or motivate staff to cultivate their skills, staff are not deployed to the housing units in a manner that enhances safety, and accountability for misconduct is rarely imposed. The Monitoring Team's work with the Department has consistently identified four foundational issues that stymie the efforts to reform the agency. These issues are interrelated and when combined, lead directly to the use of unnecessary and excessive force, violence among people in custody, and mismanagement of the Young Adult population. Together, the four foundational issues listed below underpin the crisis that has been the subject of the recent Status Reports to the Court:

(1) Security practices and procedures that are deeply flawed, inconsistent with best practice and, in some cases, illogical,

(2) Inadequate supervision of line staff and facility leadership who do not possess the requisite expertise and ability to lead,

(3) Staffing practices and procedures that have resulted in ineffective deployment across the agency, and

(4) Limited and extremely delayed accountability for staff misconduct.

The Department cannot make demonstrable progress on the requirements of the Consent Judgment unless and until these foundational issues are properly addressed and maintained. Therefore, the City and Department must focus its resources to vigilantly address these four foundational issues.

<u>Next Steps</u>

> To address these issues, the Department must focus on the following:

**Improve Security Practices and Appoint Facility Leaders with Deep Correctional Experience**: The Department must improve its security practices. While implementation of an interim security plan has started (pursuant to the Second Remedial Order), an overhaul of security practices[2] can only occur with an expansion of in-house expertise, particularly (a) those individuals who serve as facility leaders who are responsible for reinforcing sound practice and (b) the appointment of a Security Operations Manager[3] with deep expertise in correctional management who can mentor and set new expectations for the facilities' leaders. An infusion of expertise should elevate basic security practices so that some semblance of safety may then be leveraged to reduce the use of unnecessary and excessive force. The Monitoring Team is well-positioned to support the Department in addressing its deficient security practices given the Monitoring Team's significant expertise in corrections and knowledge of the Department's inner workings. The Monitoring Team will continue to focus its work on those security initiatives required by the First and Second Remedial Orders to support this effort.

**Improve Management and Deployment of Staff**: A detailed understanding of the Department's current staffing practices is the first step in untangling the multitude of bureaucratic and complicated practices and procedures. The Department has attempted to unpack these issues in the last few months, but more work remains. The Monitoring Team has also initiated a staffing analysis to better understand the Department's practices and identify the

---

[2] This includes reducing the overreliance on Emergency Response Teams and the use of Intake spaces.

[3] *See* the Monitor's September 23 Status Report (dkt. entry 387) and the Second Remedial Order, ¶ 1 (iii).

initial areas that must be improved to create greater functionality. This work will likely identify additional core practices that must be addressed to create the necessary foundation upon which sustainable reform can then be undertaken.

**Improve Processes for Holding Staff Accountable and Eliminating the Backlog of Cases**: Faithful implementation of the requirements of the Third Remedial Order by the City, Department, and OATH is critical to make the disciplinary process more efficient, eliminate the backlog of pending disciplinary cases for use of force violations, and ensure timely accountability for staff misconduct going forward.

These initiatives are consistent with the requirements of the first three Remedial Orders which had been developed, in close collaboration with the Monitoring Team, to target the core problems facing the Department. The work that must now be done will require significant time, resources, and fortitude to dismantle the convoluted, complicated, and bureaucratic practices that have evolved over decades. The immediate desire to improve conditions must be balanced with the reality that dismantling the decades of mismanagement will require time if it is to be done right. While neither glamorous nor fast, the Monitoring Team believes this approach of addressing the core foundational issues first is the quickest way for the larger reforms to be realized and, certainly, to ensure that they can be sustained over time.  This is painstaking work that requires diligence, fortitude, and persistence. Rushing the repair of these foundational issues and/or considering additional remedial relief before taking sufficient time to properly address these issues and  implement solutions will only set the Department further back.

The Department and the Monitoring Team now need the time and space to determine how best to implement these initiatives, identify and remove obstacles and barriers that have inhibited progress, and devise mechanisms that can untangle current practice and reinforce the

8

new practices that must take their place. The Monitoring Team therefore recommends that the current cycle of ongoing negotiations and ad-hoc reporting that was mandated by the conditions this summer is no longer necessary at this juncture. While the reporting and negotiations among the Parties were necessary to address those dire conditions, the focus must now shift towards actually doing the work of implementation.  The Department has simply not had the time necessary to fully implement all the remedial measures nor can the Monitoring Team assess their effectiveness without additional time to guide and observe implementation.  Accordingly, the Department and the Monitoring Team must now focus on these initiatives (and the corresponding requirements in the Remedial Orders) to dismantle the Department's dysfunctional practices and provide the agency with the necessary competencies upon which to build the reforms.

The Monitoring Team will continue to update the Court and the Parties through the reporting structures in place via the Consent Judgment and the First Remedial Order. To that end, the Twelfth Monitor's Report will be filed by December 3, 2021, and the Third Remedial Order Report will be filed by December 22, 2021.

The Monitoring Team looks forward to the status conference with the Court and welcomes any questions the Court may have.

Sincerely,

s/ Steve J. Martin
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*
Christina Bucci Vanderveer, *Associate Deputy Monitor*

# Appendix A

**Proposed Agenda for December 2, 2021 *Nunez* Status Conference (11-cv-5845)**

1. Update on Current Conditions & Areas of Focus

   i.    Monitor, Steve J. Martin

   ii.   Deputy Monitor, Anna E. Friedberg

2. Opening Statements on Current Conditions – (Parties - Counsel for the City of New York, Counsel for the United States, Counsel for the Plaintiff Class)

3. Update on Monitoring Team's Recommendation to Hire Outside Non-Uniformed Staff to Serve in Facility Leadership Positions

4. Update on Monitoring Team's Recommendation to Appoint External Security Operations Manager

5. Update on Staffing

6. Update on Intake Processing Requirement Pursuant to Second Remedial Order ¶ 1(i)(c)

7. Closing – final questions or comments from the Court