# Third Remedial Order Report of the *Nunez* Independent Monitor

# THE NUNEZ MONITORING TEAM

Steve J. Martin
*Monitor*

Kelly Dedel, Ph.D.
*Subject Matter Expert*

Anna E. Friedberg
*Deputy Monitor*

Dennis O. Gonzalez
*Senior Analyst*

Patrick Hurley
*Subject Matter Expert*

Simone R. Lee
*Associate Director*

Emmitt Sparkman
*Subject Matter Expert*

Christina Bucci Vanderveer
*Associate Deputy Monitor*

**Introduction** .................................................................................................................. 1

**Key Priorities** ............................................................................................................... 2

**Status of Use of Force Investigations** ........................................................................ 3

**Status of Disciplinary Matters and Delayed Accountability** ....................................... 4

- *Significant Backlog of Pending Cases* ................................................................... 6
- *Discipline Imposed* ................................................................................................ 7
- *Disciplinary Manager* ............................................................................................ 8
- *Priority Backlog of Disciplinary Cases Involving Use of Force Violations* ...................... 8
- *Staffing of the Trials Division* ................................................................................ 9
- *OATH* .................................................................................................................. 10
- *OATH Pre-Trial Conferences* .............................................................................. 11
- *Imposition of Disciplinary Probation by OATH* ................................................. 12

**Status Of Expansion Of Eligibility For Candidates To Serve As Wardens And Above** ...... 12

**Status Of Security Operations Manager** ................................................................... 13

**Conclusion** ................................................................................................................ 13

**Introduction**

This is the Third Remedial Order Report by the *Nunez* Monitoring Team, as required by the Court's August 14, 2020 Remedial Consent Order Addressing Non-Compliance (dkt. 350), Section F, ¶ 7, in *Nunez v. City of New York et al.,* 11-cv-5845 (LTS) (Southern District of New York). There are currently three Remedial Orders in place. The First Remedial Order (dkt. 350) was entered by the Court to address persistent areas of Non-Compliance. The Second Remedial Order (dkt. 398) was devised to address the immediate security issues presented by the crisis in the summer of 2021. The Third Remedial Order (dkt. 424) is intended to address the dysfunctional practices that have undermined accountability within the Department.

The Monitoring Team has provided the court *seven* status reports[1] in the last five months (July to November 2021) that described the concerning conditions and the imminent risk of harm that characterizes the Department's current functioning during the time period *after* the Twelfth Monitoring Period ended on June 30, 2021. Those status reports along with the Twelfth Monitor's Report provide an overview of the current state of affairs and outline the issues underlying the Department's systemic problems that must be addressed in order for overall progress to be realized and so they will not be addressed in this report. This report will provide a brief update on the following items that occurred following the close of the Twelfth Monitoring Period on June 30, 2021: (1) Key Priorities, (2) Status of Use of Force Investigations, (3) Status of Disciplinary Matters and Delayed Accountability, (4) Status of Expansion of Eligibility for Candidates to Serve as Wardens and Above, and (5) Status of Security Operations Manager.

---

[1] *See* August 24 Status Report (dkt. entry 378), September 2 Status Report (dkt. entry 380), September 23 Status Report (dkt. entry 387), September 30 Status Report (dkt. entry 399), October 14 Status Report (dkt. entry 403), November 17 Status Report (dkt. entry 420), and December 1 Status Report (dkt. entry 429).

Mayor-elect Eric Adams announced last week that he has appointed Louis Molina as the new Commissioner of the Department of Correction. Mr. Molina worked with the Monitoring Team in 2017 as the Use of Force Auditor and subsequently as the Acting Assistant Commissioner of the Nunez Compliance Unit. Mr. Molina's familiarity with the Department and the *Nunez* Consent Judgment will certainly support the transition, but there is no question that this transition will impact the current operations of the jails as well as the ongoing work with the Monitoring Team (as all transitions have). This transition comes at a critical time for the Department as the current state of affairs has brought into stark focus the need for reform. While the new administration must be given the necessary time to transition, addressing the key priorities for reform must occur as soon as possible as the current state of affairs means there is little latitude to go backwards.

## Key Priorities

The new City and Department administration must immediately focus on three key priorities as outlined in the Twelfth Monitor's Report:

1. Improve Security Practices and Appoint Facility Leaders with Deep Correctional Experience.
2. Improve Management and Deployment of Staff.
3. Improve Processes for Holding Staff Accountable and Eliminating the Backlog of Cases.

The work that must now be done will require significant time, resources, and fortitude to dismantle the convoluted, complicated, and bureaucratic practices that have evolved over decades. **The Monitoring Team believes that elimination of these dysfunctional foundational patterns and practices is an absolute prerequisite to achieving sustained**

**compliance with the full terms of the *Nunez* Orders**. This complex and demanding work necessitates requisite skill sets that must be applied in an incremental, methodical, and persistent manner. Failure to address these foundational issues will simply perpetuate the cycle of failed, albeit well-intentioned, compliance efforts that have existed during the life of the remedial phase.

The Department, as currently structured, has been unable to fully implement and institutionalize the remedial measures. Accordingly, the Department and the Monitoring Team must now, with very concentrated attention, focus on determining how best to implement these initiatives, identify and remove obstacles and barriers that have inhibited progress, and devise mechanisms that can disentangle current practices and reinforce the new practices that must take their place.

## Status of Use of Force Investigations

An update on the status of all use of force investigations is provided before delving into details regarding pending disciplinary matters given that almost all cases that are referred for disciplinary action are first investigated by the Investigation Division ("ID"). Investigations of use of force incidents are now completed more quickly—case in point, 96% of all investigations of incidents that occurred between January 1, 2018 and October 31, 2021 were closed as of December 15, 2021. A more detailed illustration of the status of incidents that occurred between January 2018 and October 2021 is presented in the table below.

| Investigation Status of UOF Incidents Occurring Between January 2018 to October 2021 as of December 15, 2021 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Incident Date** | **2018** | | **2019** | | **2020** | | **Jan. to June 2021** | | **July to Oct. 2021** |
| **Total UOF Incidents**[2] | **6,302** | | **7,494** | | **6,399** | | 4,481 | | 2,834 |
| **Pending Intake Investigations** | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | <1% |
| **Pending Full ID Investigations** | 0 | 0% | 0 | 0% | 25 | <1% | 687 | 15% | 442 | 16% |
| **Closed Investigations** | 6,302 | 100% | 7,494 | 100% | 6,374 | ~100% | 3,794 | 85% | 2,384 | 84% |

Intake Investigations continue to be a critical close-in-time review of incidents, almost all close within 30 business days or less, and Intake Investigations have consistently referred approximately 17% of incidents for further investigation following the Intake Investigation. There were 1,194 pending Full ID Investigations at the end of the Twelfth Monitoring Period, and there are 1,129 pending Full ID Investigations for incidents through October 31, 2021 as of December 15, 2021. There is not a growing number of Full ID Investigations as ID continues to close cases *at pace* with the newly referred Full ID cases. That said, completion of Full ID investigations must remain a priority to ensure that a new backlog does not form.

### Status of Disciplinary Matters and Delayed Accountability

The Third Remedial Order was entered on November 22, 2021 and intended to address the lack of accountability for use of force misconduct and work to eliminate the backlog of disciplinary cases.

Currently, **_1,853 cases_** of use of force ("UOF") related misconduct **_are pending_** the imposition of discipline. In other words, objective evidence of use of force misconduct has been

---

[2] Incidents are categorized by the date they occurred, or date they were alleged to have occurred, therefore these numbers fluctuate very slightly across Monitoring Periods as allegations may be made many months after they were alleged to have occurred and totals are updated later.

substantiated by ID, but the Staff Member has not yet been held accountable because their case is pending in the Trials Division. The chart below is a snapshot of the cases that are pending discipline as of October 31, 2021.

| | **Disciplinary Cases Pending** *as of October 2021* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Jun 2018 6th MP | Dec. 2018 7th MP | Jun 2019 8th MP | Dec. 2019 9th MP | June 2020 10th MP | Dec. 2020 11th MP | June 2021 12th MP | Oct. 2021 13th MP |
| **Pending Cases** | 146 | 172 | 407 | 633 | 1,050 | 1,445 | 1,917 | 1,853 |

The large number of pending cases raise many concerns, most importantly that accountability is so protracted as many of the still pending cases relate to misconduct that occurred years ago and that many of these cases relate to significant misconduct that has thus far been unaddressed. Each one of these 1,853 pending disciplinary cases has a *substantiated* policy violation identified and charged by the Investigations Division. The pending cases include, for example, unnecessary and excessive head strikes, intentional failure to report unnecessary and excessive force, and cases that were previously considered for *criminal* prosecution of the misconduct due to the serious nature of the Staff conduct involved. For over 800 of these 1,853 pending disciplinary cases, the Monitoring Team has reviewed the available evidence and investigations including video, Staff reports, incarcerated individual statements, medical records, and other records, and has not identified one instance of disagreement regarding the necessity of the charges brought by ID for these cases. In fact, overall since 2017, only 7% of cases in which charges were brought were later dismissed--demonstrating that with only rare exception, cases with pending charges have substantiated misconduct that must be addressed. Therefore, these pending cases cannot be addressed in a summary fashion and almost all cases are expected to result in the imposition of discipline. In other words, the backlog of pending disciplinary cases must be managed efficiently and with vigor to ensure misconduct that has gone unchecked for

far too long is appropriately addressed as required by the Consent Judgment and First and Third Remedial Orders. Given the volume of cases pending and the due process rights that must be afforded to Staff it will take some time to appropriately manage these cases, but, the Monitoring Team believes it can be done if the requirements of the Consent Judgment and the First and Third Remedial Orders are faithfully applied. The next section of this report provides a summary of the current disciplinary data through October of this year.

- *Significant Backlog of Pending Cases*

Since the Ninth Monitoring Period, approximately 400 to 500 new cases are referred to Trials every six months. The influx of pending cases is a combination of the fact that ID's closure of the backlog resulted in referral of more cases for discipline, ID refers more cases for discipline now that it conducts all use of force incidents versus the facilities who almost never referred cases for formal discipline, and the Trials Division simply does not have enough staff to manage the incoming caseload.

The chart below presents the status of all cases referred for formal discipline, by incident date, to illuminate the depth of the issue and how protracted discipline is in the cases that are still pending. While the number of pending cases that stem from incidents that occurred in 2017 or earlier (117) is relatively small, over 1,000 cases are two years or older and still have not reached resolution. Further, only 7 cases of misconduct that occurred in 2021 have been closed.

| Status of Cases of Disciplinary Cases & Pending Investigations by Date of Incident As of October 2021 | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pre-2016 | | 2016 | | 2017 | | 2018 | | 2019 | | 2020 | | 2021 (Jan-October 2021) | | Total | |
| Total cases | 682 | | 472 | | 620 | | 783 | | 986 | | 565 | | 219 | | 4327 | |
| Closed cases | 682 | 100% | 465 | 99% | 510 | 82% | 435 | 56% | 283 | 29% | 92 | 16% | 7 | 3% | 2474 | 57% |
| Total number of cases pending | 0 | 0% | 7 | 1% | 110 | 18% | 348 | 44% | 703 | 71% | 473 | 84% | 212 | 97% | 1853 | 43% |
| | | | | | | | | | | | | | | | | |
| Pending Investigations | 0 | | 0 | | 0 | | 0 | | 0 | | 25 | | 1,137 | | 1,162 | |

6

- *Discipline Imposed*

The Department is on track to close more cases in 2021 than in 2020. However, even with this additional effort, the Department cannot currently keep pace with the influx of cases that are pending which is why the additional support for the Trials Division along with more resources from OATH are necessary to close more cases and eliminate the backlog.

| Discipline Imposed by Date of Ultimate Case Closure | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date of Formal Closure | 2017 | | 2018 | | 2019 | | 2020 | | Jan. to October 2021 | |
| Total | 489 | | 514 | | 267 | | 383 | | 364 | |
| NPA | 397 | 81% | 484 | 94% | 219 | 82% | 326 | 85% | 297 | 82% |
| Termination | 0 | 0% | 0 | 0% | 1 | 0% | 2 | 1% | 4 | 1% |
| Adjudicated/Guilty | 4 | 1% | 3 | 1% | 0 | 0% | 4 | 1% | 4 | 1% |
| | | | | | | | | | | |
| Administratively Filed | 68 | 14% | 18 | 4% | 33 | 12% | 31 | 8% | 15 | 4% |
| Deferred Prosecution | 20 | 4% | 7 | 1% | 12 | 4% | 16 | 4% | 36 | 10% |
| Not Guilty | 0 | 0% | 2 | 0% | 2 | 1% | 4 | 1% | 1 | 0% |
| Returned to command | 0 | 0% | | 0% | | 0% | | 0% | 7 | 2% |

The cases pending resolution have been pending for a very long time as result of the backlog of ID investigations combined with the time needed to resolve a case in the Trials Division. Notably, almost 20% of cases have been closed or pending 3 years after the incident occurred, with 88% of cases closed or pending beyond a year. This means only 12% of cases are either pending or resolved within a year of when the violation occurred as outlined in the chart below.

| Time Between Incident Date and Case Closure or Pending as of October 31, 2021 | | | | | | |
|---|---|---|---|---|---|---|
| | Closed discipline | | Pending discipline | | Total discipline | |
| 0 to 1 year from incident date | 287 | 12% | 250 | 13% | 537 | 12% |
| 1 to 2 years from incident date | 962 | 39% | 578 | 31% | 1540 | 36% |
| 2 to 3 years from incident date | 784 | 32% | 630 | 34% | 1414 | 33% |
| More than 3 years from incident date | 441 | 18% | 395 | 21% | 836 | 19% |
| | 2474 | | 1853 | | 4327 | |

7

- *Disciplinary Manager*

In order to oversee this effort, the Department has designated a Disciplinary Manager, as required by the Third Remedial Order, to manage the overall disciplinary process, the Department's efforts to comply with the staff accountability requirements of the Consent Judgment, First and Third Remedial Order, and ultimately ensure the backlog of cases is managed appropriately and consistent with the Disciplinary Guidelines. The Department has appointed Deputy Commissioner Sarena Townsend for this role. Deputy Commissioner Townsend is highly competent and possesses the qualities and expertise needed to fill this role. In particular, Deputy Commissioner Townsend has expertise in *all* of the following subject matters: the Department's use of force guidelines, investigation protocols, settlement options, the Department's Trials procedures, and OATH procedures. She has a demonstrated ability to work constructively with all stakeholders, including DOC, OATH, and the City, along with a demonstrated commitment to reforming the Department's disciplinary process to ensure cohesive management of these issues. The Monitoring Team has recognized and reported Deputy Commissioner Townsend's commitment, strong leadership, and creative thinking in multiple Monitor's Reports.[3] Deputy Commissioner Townsend's continued leadership and expertise is critical to the success of this reform effort moving forward.

- *Priority Backlog of Disciplinary Cases Involving Use of Force Violations*

The Trials Division has developed a list of over 400 cases involving Staff Members with pending charges related to use of force violations to prioritize for closure by April 30, 2022 as

---

[3] *See* Fifth Monitor's Report at pg. 92 (Dkt. 311), Sixth Monitor's Report at pgs. 92-93 (Dkt. 317), Seventh Monitor's Report at pgs. 104-105 (Dkt. 327), Eighth Monitor's Report at pgs. 128-129 (Dkt. 332), Ninth Monitor's Report at pg. 150 (Dkt. 341), Tenth Monitor's Report at pg. 133 (Dkt. 360), and Eleventh Monitor's Report at pg. 180 (Dkt. 368).

8

required by ¶ 1(i) of the Third Remedial Order ("Priority Backlog Disciplinary Cases"). The Trials Division developed this list in consultation with the Monitor. In developing this list, the Trials Division considered the egregiousness of the underlying use of force violation, the Staff Member's disciplinary history, and the volume of pending cases for a single Staff Member (*e.g.,* selecting cases for prioritization that related all to the same Staff Member that had a high volume of pending cases). The Department is required to impose appropriate and meaningful discipline, in a manner consistent with the Disciplinary Guidelines, against all Staff Members charged in the Priority Backlog Disciplinary Cases by April 30, 2022.

- *Staffing of the Trials Division*

The Trials Division needs more staff to address the disciplinary backlog, as discussed in the Twelfth Monitor's Report. To that end, the Third Remedial Order required the Department to assign at least eight additional attorneys and two support staff by December 31, 2021. Over the last few months, the Department and City have expended significant effort recruiting, reviewing, and interviewing candidates (virtually and in-person) for attorney positions in the Trials Division. Recruitment efforts included advertising attorney position openings on third-party job platforms (Indeed.com, Lawjobs.com, etc), developing and posting materials to social media, and direct contact with local law schools and bar associations. As of December 21, 2021, two new attorneys started in the Trials Division. Additionally, four new attorneys accepted offers of employment (but have not started yet), and five candidates declined offers. Separately, three contract attorney candidates were interviewed, two were extended offers, one of which declined and one of which is still pending. The Trials Division received feedback that certain qualified candidates were declining offers of employment because the salary was too low. In response, the Department subsequently requested and received approval to increase the salary ranges to be

9

more competitive. The Department reports this increased salary range is proving fruitful for enticing candidates to accept employment within the Trials Division. The Department has taken significant steps to hire more attorneys for the Trial Division, but more attorneys are needed to meet its staffing goals. Therefore, obtaining additional staffing for the Trials Division must remain a top priority for the new administration in order to achieve the overall goal that the backlog of cases is eliminated and discipline can be imposed more timely going forward.

- *OATH*

The Monitoring Team has worked extensively with the leadership team at OATH and representatives from the City to further enhance the OATH process so it is more efficient. First, the OATH Division has significantly increased its staffing, onboarding five new Administrative Law Judges ("ALJs"), two administrative assistants, one calendar unit clerk, and three law clerks since October 2021. One additional calendar unit clerk is expected to be onboarded shortly. Beginning on December 15, 2021, OATH now conducts proceedings four days a week, which is a substantial increase from the 6 days a month that were dedicated to DOC matters in the past. If a conference must be adjourned or continued to another date, OATH will schedule any additional conference dates within one month of the initial conference. ALJs will also ensure that requests for adjournment follow the procedures outlined in OATH Rule 1-32(b) and requests to expedite trials will be addressed via procedures under OATH Rule 1-26(c). Further, OATH has promulgated new rules to encourage the Parties to meet and confer and attempt to settle matters before an OATH pre-trial conference and before a trial. For use of force related matters, OATH will schedule trials to begin within three months of the initial settlement conference, and to be completed within three weeks of the first trial day, absent extraordinary circumstances. ALJs will issue Reports and Recommendations ("R&R") within 45 days of when the record is closed. If the

R&R is not completed within 45 days, ALJs will provide a written explanation to Commissioner and Chief of Staff stating why the R&R is pending and when it will be completed.

These various procedures are expected to result in improved efficiency of processing cases through OATH. The Monitoring Team will closely scrutinize implementation to assess progress and determine whether any modifications to the procedures outlined above may be needed.

- *OATH Pre-Trial Conferences*

As part of the increased capacity for OATH to hear more cases, the Third Remedial Order requires at least **150** pre-trial conferences for charges related to use of force violations every month beginning on December 15, 2021. The chart below provides the number of pre-trial conferences for use of force related cases that have been convened between July 2020 and November 2021 (in which the requirement was *50 conferences per month*) and their outcomes.

| Pre-Trial Conferences related to UOF Violations ||||||||| UOF Matters & Staff ||
| Total Pre-Trial Conferences || Results of Pre-Trial Conferences for UOF Cases ||||||| ||
| Required | Took Place | Settled Pre-OATH | Settled at OATH | On-Going Negotiation | Another Conference | Trial | Other | Admin Filed | Unique UOF incidents | Staff Members |
|---|---|---|---|---|---|---|---|---|---|---|
| July to December 2020 (Eleventh Monitoring Period) |||||||||||
| **225**[4] | 303 | 0 | 111 | 10 | 44 | 124 | 12 | 2 | 274 | 198 |
|  | 100% | 0% | 37% | 3% | 15% | 41% | 4% | 1% |  |  |
| January to June 2021 (Twelfth Monitoring Period) |||||||||||
| **300** | 541 | 0 | 282 | 4 | 85 | 136 | 33 | 1 | 367 | 331 |
|  | 100% | 0% | 52% | 1% | 16% | 25% | 6% | 0% |  |  |
| July to November 2021 (Partial Thirteenth Monitoring Period) |||||||||||
| **250** | 283 | 117 | 76 | 4 | 10 | 49 | 26 | 1 | 217 | 188 |
|  | 100% | 41% | 27% | 1% | 4% | 17% | 9% | 0% |  |  |

There have been some signs of progress in the efficacy and efficiency of OATH proceedings, as demonstrated in the chart above, especially since July 2021 with a higher

---

[4] The Remedial Order requirement came into effect on August 14, 2020 so was applicable for four and a half months in the Monitoring Period.

11

percentage of cases settling (68% of cases settled after the conference) and a fewer proportion of cases referred for trial (17% in July to November 2021 compared with 41% in July to December 2020). The increased number of pre-trial conferences in combination with overall greater efficiency of OATH proceedings are expected to support the resolution of more disciplinary matters.

- *Imposition of Disciplinary Probation by OATH*

ALJs are limited with what discipline they may recommend be imposed if they determine that the Staff Member has engaged in misconduct. The ALJ issues a written report and recommendation ("R&R") to the DOC Commissioner following the conclusion of a trial. If the ALJ determines that a violation occurred, the decision also includes a proposed penalty, with penalty ranges set by law to include a reprimand, a fine of up to $100, a suspension without pay of up to (but no more than) 60 days, demotion in title, or termination.[5] Notably, an ALJ may not recommend a term of probation. The ability for an ALJ to recommend a potential penalty of disciplinary probation is a critical tool to ensure adequate accountability that also encourages improved practice by the Staff Member going forward—probation offers encouragement for continued good behavior, not just punishment for past bad behavior. The Monitoring Team strongly recommends that New York State Civil Service Laws § 75 (removal and other disciplinary action), ¶ 3 is modified to include a term of disciplinary probation.

**Status of Expansion of Eligibility for Candidates to Serve as Wardens and Above**

Following the December 2, 2021 status conference, the Parties have conferred about the Monitoring Team's recommendation that the Department have the ability to select facility leadership teams (*e.g.*, Wardens and above) to serve in this position from *either* the current

---

[5] New York State Civil Service Laws § 75 (removal and other disciplinary action), ¶ 3.

uniform ranks or expanded to allow the selection of correctional professionals from the broader corrections community, with the required skills and willingness to improve the state of facility operations.[6] The City has reported that is has been working diligently on this issue and discussing it with the relevant City stakeholders. However, in light of the appointment of a new Commissioner in the last week, the City has requested that the new Commissioner be provided the opportunity to weigh in on this issue in order to exercise prudence and good city governance. The City intends to provide its position to the Parties in January, 2022 after it has conferred with the new Commissioner.

## Status of Security Operations Manager

The Monitoring Team has developed an outline of the responsibilities of the Security Operations Manager and had a number of discussions with Commissioner Schiraldi and his team regarding this position. However, in light of the appointment of a new Commissioner, these discussions must now occur with the new Department leadership. Accordingly, it is premature to determine an appropriate timeline on when a proposal will be completed and available for discussion with the Parties and ultimately prepare a proposal for the Court. The development of this position is of the utmost priority for the Monitoring Team and will be a topic of discussion with the new administration upon their appointment in the new year.

## Conclusion

This report is being filed in the final days of Mayor Bill DeBlasio's term. The Monitoring Team has worked closely with his leadership team for the duration of the Consent Judgment and would like to take this opportunity to acknowledge the commitment and collaboration of the administration over the last 6 years. The Mayor's Office has been

---

[6] *See* Eleventh Monitor's Report at pgs. 8 to 16.

supportive, transparent, communicative, and collaborative with the Monitoring Team to advance the reforms. The Monitoring Team looks forward to working with the new administration and new Commissioner under the administration of Mayor-elect Eric Adams.

   The Department and the Monitoring Team must now focus on the priority initiatives (and the corresponding requirements in the Remedial Orders) to dismantle the Department's long-standing and deeply entrenched dysfunctional practices and provide the agency with the necessary competencies upon which to build the reforms. Once these foundational issues are addressed, compliance with the *Nunez* requirements can be accelerated and fully implemented. The Monitoring Team can then shift its focus from providing substantial technical assistance and reporting to simply reporting on compliance.