

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 19, 2022

**BY ECF**
The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *Nunez v. City of New York*, 11 Civ. 5845 (LTS)(JCF)

Dear Judge Swain:

  We write respectfully on behalf of the United States in connection with the status conference to be held on April 26 to discuss the content of the Special Report filed by the Monitor on March 16 (ECF No. 438), as well as the recommendations included in the report (the "Monitor Recommendations").  While we agree with the Monitor Recommendations and appreciate that the Department of Correction (the "Department") and City appear to embrace almost all of them, we remain frustrated by the lack of specific information provided thus far on how the Department and City intend to actually implement the recommendations and address the ongoing unsafe and dangerous conditions at the jails.  In order to facilitate a productive conference, we respectfully request that the Court direct the Department and the City to submit a report to the Court in advance of the conference setting forth:  (a) the specific operational steps and actions the Department and City will take (or have already taken) to implement each of the Monitor Recommendations; (b) who specifically will be responsible for overseeing the operational steps and actions necessary to implement the recommendations (including agencies and management personnel outside the Department); (c) the proposed timeline for implementing each recommendation; and (d) and any plans to retain experts from outside the Department to assist in addressing the systemic deficiencies outlined in the Special Report.  In addition, we respectfully request that the Court direct the Commissioner of the Department and a representative from the Mayor's Office to attend the conference so that they are available to directly respond to any questions the Court may have relating to the submission.

  We remain alarmed by the extraordinary level of violence and disorder at the jails and the ongoing imminent risk of harm that inmates and correction officers face every day.  The continuing failure to follow basic security protocols, dysfunctional staff deployment practices, inexplicably high staff absenteeism levels, deficient management and supervision of frontline officers, and the failure to hold staff timely accountable for the use of excessive and unnecessary force against inmates have resulted in an unsafe environment and non-compliance with the core provisions of the Consent Judgment and the three Remedial Orders entered by this Court.  These

systemic failures have been outlined in great detail not only in the Special Report filed last month, but also in numerous prior reports filed by the Monitor.

Based on our recent meetings with the Department, the City, and the Monitor, it is our understanding that the Department and the City generally agree with the vast majority of the Monitor Recommendations. However, the Monitor Recommendations are quite general, calling for the development of policies, procedures, processes, plans, and systems to address long-standing dysfunctional practices. In addition, some of the Monitor Recommendations are similar to prior recommendations that the Department has previously failed to adopt and implement, and others overlap with the existing requirements of Remedial Orders with which the Department has failed to comply. At this point—more than six years after the Consent Judgment and after the issuance of three Remedial Orders designed to remedy the Department's ongoing non-compliance with court-ordered relief—the Department and City must commit to taking specific and concrete operational steps and instituting dramatic systemic changes to actually implement the Monitor Recommendations on an expeditious timeline. Further, the Department and City ought to be required to explain how these efforts will differ from, and are likely to be more fruitful than, the many iterations of prior failed reform initiatives. As noted by the Monitor, "[i]t is the responsibility of the City and the Department to develop and implement the reforms required by the Consent Judgment, which, to date, the City and Department have failed to do." (Special Report at 1).

Since the Special Report was filed, we have repeatedly asked the Department and the City to provide us with a description of the specific steps they intend to take, or have already taken, to address each of the Monitor Recommendations. To date, we have not been provided with this level of detail. At our meetings on April 5 and April 14, the City and Department advised that they generally agree with nearly all of the Monitor Recommendations, but were not prepared or willing to discuss specific implementation plans. Neither the Commissioner nor any Department operational staff attended either meeting. We are scheduled to meet again this Thursday.

Thus far, the Department and City have failed to explicitly articulate the concrete operational measures and changes that will be put in place to remedy the pervasive systemic failures described in the Special Report, and to achieve the objectives set forth in the Monitor Recommendations. Moreover, the City's position with respect to some of the core, and possibly most contentious reforms supported by the Monitor, remains unclear. We have specifically asked the Department and City to address each of the below areas and questions, but to date they have not provided our Office with satisfactory responses.

- The Monitor concluded that "the level of dysfunction within the Department's staffing framework is unmatched by any jurisdiction with which the Monitoring Team has had experience." (Special Report at 32). He also reported that "approximately 30% of the workforce is not coming to work and/or is not available to work with incarcerated individuals, with little change evident between August 2021 . . . and the end of January 2022." (*Id.* at 8). The Monitor recommends that the Department develop a "remedial scheme" to address the dysfunctional staffing practices described in the Special Report, including the troubling findings of the

staffing analysis conducted by the Monitor's expert consultant. (*Id.* at 32-38, 67). The Department, though, has shared little information as to what this remedial scheme will entail. Some questions include:

- o   What are the Department's short-term plans to allow management to accurately identify the facility, post, and tour to which each staff member is assigned, and to address the Monitor's finding that "the Department cannot accurately identify where staff are assigned or their status at any given time?" (*Id.* at 20).

- o   How is the Department going to address what the Monitor described as "a culture that allows staff to circumvent assignments" to particular housing units? (*Id.* at 33). For example, is the Department willing to eliminate the current system under which staff can bid for post assignments, which has resulted in the most experienced staff being assigned regularly to posts outside of the jails? As the Monitor notes, this system "significantly inhibits the flexibility to assign staff where they are needed, and because posts are awarded based on seniority, results in many of the most experienced staff being assigned to posts where they do not supervise housing units." (*Id.* at 36). To the extent that the City views the current collective bargaining agreement as an obstacle to effectively combatting this problem, how does the City intend to address this?

- o   How is the Department going "to minimize the reliance on uniform staff for tasks that can and should be reasonably completed by civilians," as recommended by the Monitor? (*Id.* at 69).

- o   To the extent the Department is willing to adopt the Monitor's recommendation to evaluate the status of the hundreds of uniformed staff currently out on extended sick leave or on "Medical Restriction 3" status (*id.* at 68), how specifically is the Department going to assess whether staff members must return to work or no longer have a medical impairment that prohibits them from being assigned to posts involving inmate contact? What is the timeline for conducting this review? What steps is the Department going to take to impose appropriate disciplinary action against staff members who are found to have abused the system?

- The Monitor has repeatedly attributed the ongoing non-compliance with core provisions of the Consent Judgment to the inadequate supervision of line-level uniformed staff by facility leaders, including Wardens, and has concluded that the current individuals in these facility leadership positions lack the requisite expertise, competence, and commitment to implement the needed reforms. As early as May 2021, the Monitor recommended that the City expand the criteria for who may serve in these positions so that the Department would no longer be limited to selecting individuals from the uniformed ranks and could instead hire qualified and experienced individuals from outside the agency. (11th Monitor's

Report, ECF No. 368 at 15).  In January of this year, the City advised us that it would not agree to a consent order permitting such external hiring.  The Monitor has now once again made the same recommendation.  (Special Report at 69-70).  Although the City recently notified us for the first time that it is now willing to hire individuals from outside the agencies to directly oversee the jails, the plan for accomplishing this remains hazy.  How will the Department recruit qualified corrections professionals to fill these positions?  What is the timeframe for hiring them?  To whom will these individuals report within the agency?

- The Monitor found that "a large proportion of Captains are assigned to positions that do not involve supervising the housing unit," and recommends that the Department "evaluate the assignment of Captains to develop a plan to prioritize assignment to the housing units, subject to the approval of the Monitor."  (*Id.* at 5, 70).  The Department has not provided any details regarding how it will implement such a plan, including what criteria will be used to evaluate current Captain post assignments.  Is the Department willing to commit to reassigning a certain number of Captains to housing area posts?  Is the Department willing to agree to limit the percentage of Captains assigned to non-housing area posts?

- The Monitor noted that the implementation of the "interim Security Plan" required by the Second Remedial Order "has been sporadic and of such poor quality that unsafe staff practices remain rampant."  (*Id.* at 44).  According to the Monitor, "the Department has failed to meaningfully implement solutions to any of the immediate problems such as unsecured doors, post abandonment, poor key control, outdated post orders, escorted movement with restraints when required, incarcerated individuals congregating around secure ingress/egress doors, poorly managed vestibules, and poorly secured OC spray."  (*Id.* at 22).  In addition to hiring a Security Operations Manager, what other specific actions is the Department committed to taking to address the routine breaches of security protocols that are resulting in violence and serious injuries to inmates and staff?  How are these efforts going to differ in a meaningful way from prior failed efforts to address the same security deficiencies?[1]

- The Special Report sets forth seven specific recommendations made by Dr. James Austin, an expert engaged by the Department to assess inmate classification processes.  (*Id*. at 54-56).  While the Department appears to be in the process of adopting some of these recommendations, it is unclear whether the Department has agreed to implement all of them. Is the Department willing to commit to adopting all of these recommendations, including the requirement to reclassify inmates every 60 days?  If so, when will these changes occur?

---

[1] The Monitor has advised us that on April 14 the Commissioner provided a written plan to address the deteriorating conditions and escalating level of violence at the Robert N. Davoren Complex ("RNDC").  This plan has not been shared with our Office so we are not familiar its contents.

- Although the Third Remedial Order required the Department to substantially increase the staffing level of the Trials Division (ECF No. 424 at ¶ 4), the Monitor found that the Trial Division now has fewer total staff than it did in June 2021 and continues to need more resources to prosecute the extraordinary backlog of pending disciplinary cases involving staff who have violated the Use of Force Policy.  (*Id*. at 60).  The Monitor recommends that the Department develop a plan to increase the number of attorneys and staff assigned to the Division (*id*. at 73), but the Department has not shared any details on what it intends to do to enhance its recruitment efforts to attract and hire qualified candidates.  What new recruitment strategies is the Department planning to adopt and what are its plans to reduce the attrition rate within the Trials Division?

We respectfully request that the Court direct the Department and City to submit the above-referenced report in advance of the conference so that the parties, as well as the Court, have more clarity regarding defendants' positions and what they envision as the path forward.  In addition, we respectfully submit that the conference will be more productive if the Commissioner and a representative from the Mayor's Office are available to directly address any questions the Court may have, as opposed to waiting for counsel to respond at a later date.

The jails are in a state of crisis, inmates and staff are being seriously injured, and action is desperately needed now.  Based on our experience over the last six years and the sustained non-compliance with key Consent Judgment provisions and the three subsequent Remedial Orders entered by this Court, our Office is very concerned about whether the Department and City have the ability, expertise, and will to swiftly make the changes necessary to bring true reform to this deeply troubled agency.  Absent a commitment to expeditiously make the dramatic systemic reforms identified by the Monitor and to bring in corrections experts from outside the Department to revamp the agency's operations and staffing practices, we will be left with no other option but to seek more aggressive relief, which could involve seeking the appointment of a receiver with independent authority to implement sweeping reforms and to take all necessary actions to comply with the Consent Judgment and Remedial Orders and implement the Monitor Recommendations.

      We appreciate the Court's consideration of this matter and look forward to a productive conference.

                                         Respectfully,

                                         DAMIAN WILLIAMS
                                         United States Attorney

                               By: /s/ Jeffrey K. Powell
                                       JEFFREY K. POWELL
                                       LARA K. ESHKENAZI
                                       Assistant United States Attorneys
                                       Tel:    (212) 637-2706/2758
                                       Email: Jeffrey.Powell@usdoj.gov
                                                      Lara.Eshkenazi@usdoj.gov

cc:     all counsel of record (*via* ECF)