UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                 :

MARK NUNEZ, et al.,                  :

                     Plaintiffs,       :

   - against -                    :

CITY OF NEW YORK, et al.,        :

                     Defendants.    :  **11 Civ. 5845 (LTS)**

------------------------------------------------------------ X
                                 :

UNITED STATES OF AMERICA,     :

                 Plaintiff-Intervenor,   :

   - against -                    :

CITY OF NEW YORK and NEW YORK CITY  :
DEPARTMENT OF CORRECTION,

                     Defendants.    :

------------------------------------------------------------ X

 

**ORDER: ACTION PLAN**

## TABLE OF CONTENTS

Section A: Immediate Initiatives to Address Harm ...................................................................... 1

   1.   Security ............................................................................................................................ 1

   2.   Staffing ........................................................................................................................... 2

   3.   Supervision .................................................................................................................... 4

Section B: Citywide Initiatives to Support Reform .................................................................... 7

   1.   Citywide Task Force ...................................................................................................... 7

   2.   Recruitment Efforts for DOC ....................................................................................... 7

   3.   Hiring & Onboarding New Staff ................................................................................... 7

   4.   Routine Coordination with Law Enforcement Agencies to Expedite Case Processing of Individuals Incarcerated 365 Days or More ................................................................. 8

Section C: Uniform Staffing Practices ......................................................................................... 9

   1.   Appointment of Staffing Manager ............................................................................... 9

   3.   Improved and Maximized Deployment of Staff .......................................................... 9

   4.   Consultation with the Monitor ................................................................................... 11

   5.   Single Source Tracking System of Staff .................................................................... 12

Section D: Security Practices ..................................................................................................... 13

   1.   Security Operations Manager ..................................................................................... 13

   a.   Evaluating Assessments of Compliance .................................................................... 13

   2.   Improved Security Initiatives ..................................................................................... 13

   3.   Consultation & Direction of the Monitor ................................................................... 14

   4.   Expanded Capacity for the Department's Internal Assessment of Security Initiatives ..... 14

   5.   Cell Doors ................................................................................................................... 15

Section E: Management of People in Custody ........................................................................... 16

   1.   Classification Manager ............................................................................................... 16

   2.   Responsibilities of the Classification Manager .......................................................... 16

   3.   Intake ........................................................................................................................... 17

   a.   Processing Incarcerated Individuals Through Intake Within 24 Hours: ..................... 17

   4.   Management of Incarcerated Individuals Following Serious Incidents of Violence ......... 17

Section F: Staff Accountability .................................................................................................. 18

    1.   Staffing for Trials Division ............................................................................. 18

    2.   Expeditious Resolution of Egregious Conduct and/or Multiple Serious Violations ......... 18

    3.   Revised Procedures for Command Discipline ................................................... 19

    4.   Addressing the Disciplinary Backlog ............................................................. 19

    5.   Addressing Future Incidents of Misconduct: ................................................... 20

    6.   Evaluation of Disciplinary Procedures: .......................................................... 20

    7.   Addressing Discipline for Abuse of Staff Leave or Restricted Duty Policies ................. 20

    8.   Immediate Corrective Action ....................................................................... 21

    9.   Responding to Monitor Recommendations ...................................................... 21

    10.  Streamlined OATH Process ......................................................................... 21

Section G: Assessment of Compliance & Reporting in 2022 ......................................... 22

    1.   Manager Reporting to the Monitor ............................................................... 22

    2.   Monitor Reports ...................................................................................... 22

    3.   Court Status Conference ............................................................................ 22

    4.   Content of Reports ................................................................................... 22

    5.   Compliance Assessment ............................................................................ 25

    6.   Monitor's Assessment of Compliance in March 16, 2023 Report ............................. 27

Section H: Compliance with Prison Litigation Reform Act, 18 U.S.C. § 3626 .......................... 28

## Section A: Immediate Initiatives to Address Harm

1. *Security*

   a. *RNDC*: The Department, in consultation with the Monitor, shall continue to implement the Commissioner's violence reduction plan at the Robert N. Davoren Complex in order to reduce the violence and risk of harm in the facility.  The violence reduction plan including changes to housing practices so that incarcerated individuals are not housed predominately by gang affiliation, improvements to staff supervision to ensure routine touring of housing units, enhanced programming and services, and increased searches and tactical search operations.

   b. *Expanded Security Initiatives to Other Facilities*: Within 60 days of this Order, the Department, in consultation with the Monitor, shall expand the implementation of the Commissioner's violence reduction plan, with any necessary revisions and modifications, to GRVC in order to reduce the violence and risk of harm in that facility.  Following the roll-out of the violence reduction initiative at GRVC, the Department, in consultation with the Monitor, shall focus on initiatives to reduce violence at AMKC.

   c. *Cell Doors*: By July 29, 2022, the Department shall install 75 new cell doors to complete the installation of new cell doors in all housing units that house young adults at RNDC.  The Department shall ensure that incarcerated individuals assigned to celled housing units are assigned to cells with doors where the locking mechanisms are functioning properly.

1

    d. *Improved Routine Tours*: The Department shall conduct routine tours, including, but not limited to, tours of the housing units every 30 minutes. The Department shall immediately institute improved practices to ensure that routine touring is occurring, including the use of the "tour" wand by Correction Officers during each tour conducted.  The Office of the Commissioner shall audit the electronic records of tours conducted by uniform staff to ensure compliance with touring requirements.

2. *Staffing*

    a. *Interim Post-Priority List*: Within 30 days of the Order, the Department must develop an interim post-priority list to ensure that the posts most directly related to the safety of the incarcerated population are prioritized and duly designated as mandatory posts.  The list of mandatory posts shall include, but not be limited to, housing areas. The Department shall ensure that all mandatory posts on the post-priority list are staffed.

    b. *Interim List of Uniform Staff Available to Work*: By August 1, 2022, the Department must develop an interim list of uniform staff that are available to work a shift.

    c. *Scanning of Post Assignment*: By September 1, 2022, the Department shall pilot at RNDC an electronic scanning system to ensure uniform staff assigned to priority posts in the facility are on post.  The Department shall evaluate the effectiveness and feasibility of the pilot during the first 90 days the scanning system is in use in order to determine whether the use of the electronic scanning system shall be discontinued or expanded to other Facilities.  If it is determined that the electronic

2

scanning system shall be expanded, then the Department must provide the

Monitor with a list and timeline for expansion 30 days after the evaluation of the

pilot project.

d.  *Revised Policies to Address Staff Absenteeism, Restricted Duty, and Abuse:*

    i.  *Revised Home Confinement Visits*: The Department shall implement

       revised practices and procedures for home confinement visits to make the

       home confinement visits more reasonable and efficient by reducing the

       burden on investigators, including reducing the number of knocks needed

       to ascertain if an individual is home and reducing the number of rings for a

       phone call to ascertain if an individual is home.

    ii.  *Medically Modified/Restricted Duty Status*: Within 60 days of the Order,

       the Department shall implement a process to significantly reduce the use

       of Medically Modified/Restricted Duty Status and eliminate the abuse of

       this designation by revising policies and procedures, implementing a

       strategic plan to significantly limit the use of this status going forward,

       and seeking medical separation of at least 170 staff on this status.

    iii.  *Revised Sick Leave & Absence Control*: Within 90 days of the Order, the

       Department, in consultation with the Monitor, shall revise its policies and

       procedures regarding sick leave and absence control.  The revised policies

       and procedures shall be implemented thereafter.

e.  *Improved Management of the Health Management Division*: Within 90 days of

    this Order, the Department shall complete an assessment of the Health

    Management Division ("HMD") in order to identify any deficiencies or

inefficiencies in practices.  The Department shall then implement any changes in practices that are needed based on the assessment to ensure the work of HMD is efficient, accurate, and reliable.  Further, the Department shall utilize civilian staff to conduct the work of HMD.

f. *Evaluation of Current Uniform Staff on Sick Leave & Medically Restricted Status*: Within 120 days of this Order, the Department must evaluate all uniform staff currently out on sick leave more than 30 days, in the status of chronic sick, and medically restricted duty level 3, as of the date of this order, in order to identify those staff who must return to work, and/or to initiate proceedings to separate staff, and/or initiate disciplinary proceedings for any potential abuse, and/or make any referrals to DOI because the abuse is potentially criminal in nature.

   i. *Expedited Discipline*: The Department shall seek expeditious processing of at least 20 medical incompetence cases before OATH, which were identified on May 23, 2022.  OATH shall expeditiously process these cases so that they are resolved as quickly as possible with an agreed upon settlement or a report and recommendation is issued following a trial.

g. *Referral of Staff Abuse of Sick Time or Restricted Status:* The Department shall immediately refer any cases of staff abuse of sick time or restricted status to the Department of Investigation for further investigation when the conduct of staff appears to be criminal in nature.

3. <u>*Supervision*</u>

a. *Re-assignment of Captains to Supervision of Correction Officers*: Within 30 days of this Order, the Department will evaluate the approximately 45 Captains on

Temporary Duty Assignment and re-assign most, if not all, of these Captains to posts that supervise officers assigned to housing unit posts.

b. *Department Leadership*: The Department shall revise the executive leadership structure as follows:

    i. The Commanding Officer of each facility and command will report directly to the Commissioner.

    ii. The Commissioner shall appoint a Senior Deputy Commissioner who shall report to the Commissioner.  The following positions will report to the Senior Deputy Commissioner:

        1. Deputy Commissioner of Security – this position will include, at a minimum, the responsibilities of the Security Operations Manager outlined in Section D (Security Practices) of this Order.

        2. Deputy Commissioner of Classification, Custody Management, and Facility Operations – this position will include, at a minimum, the responsibilities of the Deputy Commissioner of Classification outlined in Section E (Prioritize the Management of People in Custody) of this Order.

            a. At least two Associate Commissioners of Operations will report to the Deputy Commissioner of Classification, Custody Management, and Facility Operations

            b. An individual Assistant Commissioner of Operations will be appointed to each facility to partner with and assist departmental Correctional Wardens in monitoring all

aspects of facility operations. The Assistant Commissioners of Operations will report to the Associate Commissioner of Operations.

3. Deputy Commissioner of Administration – this position will include, at a minimum, the responsibilities of the Staffing Manager outlined in Section C (Uniform Staffing Practices) of this Order.

iii. The individual responsible for the Health Management Division shall report to the First Deputy Commissioner.

c. *Expanded Use of Early Intervention, Support and Supervision Unit*: The Early Intervention, Support and Supervision Unit ("E.I.S.S.") shall be expanded to also support any staff on disciplinary probation (for any reason) and Supervisors during their probationary period.  The Department shall also develop an initiative in which each facility has at least one supervisor responsible for working with the E.I.S.S. Unit to support the uniform staff that are in the E.I.S.S. program and address any deficiencies in supervision of those staff that are identified.

## Section B: Citywide Initiatives to Support Reform

1. *Citywide Task Force:* The City shall continue to routinely convene representatives from all City agencies[1] that support the Department's budget and funding, the Department's physical plant and any corresponding repairs, the Department's accountability process for staff and incarcerated individuals, and the Department's labor issues to ensure that the Department timely and meaningfully addresses the requirements of this Order, the Consent Judgment, and three Remedial Orders.

2. *Recruitment Efforts for DOC*: Within 30 days of this Order, the City and Department shall launch a new, full scale recruitment campaign focused on attracting and identifying qualified candidates for the following positions: (1) individuals with correctional expertise to serve in leadership positions, (2) attorneys and support staff for the Trials and Legal Division, (3) staff to backfill civilian roles previously held by uniform staff, with priority on staff for the Health Management Division, and (4) physicians to evaluate whether uniform staff who are out on leave are able to return to active duty. The recruiting campaign must include unique, creative measures to attract qualified candidates.  In order to recruit qualified candidates, the City and Department shall offer incentives and other measures not previously utilized by the City and Department.

3. *Hiring & Onboarding New Staff*: The City and Department shall ensure that the process for interviewing, extending offers, and vetting candidates (as necessary) is refined and improved to ensure an efficient hiring process. On a case-by-case basis the City must also

---

[1] This shall include, at a minimum, the City's Department of Citywide Administrative Services, the Office of Labor Relations, the Office of Management and Budget, and the Office of Administrative Trials & Hearings.

evaluate whether a waiver of certain requirements (*e.g.* residency requirements) may be afforded to a candidate in order to ensure that the City and Department may hire the most qualified individuals for the position.

4. *Routine Coordination with Law Enforcement Agencies to Expedite Case Processing of Individuals Incarcerated 365 Days or More*: The Department shall develop a list every month of all incarcerated individuals that have been incarcerated for at least one year or more.  This list shall be produced to the Mayor's Office of Criminal Justice and, in turn, provided to representatives of each District Attorney's Office and the Office of Court Administration in order to facilitate efforts for these cases to be processed as quickly as possible. The City shall advise the Monitor on a monthly basis of which cases identified on this list have been expedited for prosecution and their status.

**Section C: Uniform Staffing Practices**

1. *Appointment of Staffing Manager*: Within 90 days of this Order, the Department must select a Staffing Manager to develop a sound correctional staffing management scheme, including oversight of the Roster Management Unit and authority to implement initiatives to maximize the deployment of uniform staff as outlined in § C., ¶ 3 of this order below. The Staffing Manager must have significant expertise in correctional operations *and* correctional staffing administration in other systems outside of the New York City Department of Correction.  The Department must consult with the Monitor on the selection of the Staffing Manager.  The Staffing Manager shall ensure that the strategies and initiatives related to staffing are appropriately sequenced and prioritized with corresponding timelines for implementation.

2. *Roster Management Unit*: The Department shall create a dedicated and centralized Roster Management Unit to manage the schedules for uniform staff across the agency.  The Roster Management Unit must be equipped with appropriately trained personnel to manage the number of staff authorized to work and the assignment of uniform staff.

3. *Improved and Maximized Deployment of Staff*: The Department shall maximize deployment of uniform staff within the facilities by implementing modified staffing practices, including, but not limited to the items outlined below:

   i. *Improved Management of Staff Rosters*: Devise a central Roster Management system that tracks uniform staff by assignment to a command, including streamlining the master and daily rosters, and creation of a post assignment classification system for every command, to

ensure that uniform staff are appropriately deployed throughout the facilities and that critical posts are filled before non-essential posts.

ii.  *Increased Assignment of Captains in the Facility*: Complete a full evaluation of the assignment of all Captains and develop and implement a plan to prioritize assignment of Captains to supervise housing units to increase Captain presence on housing units.

iii.  *Improved Supervision of Captains*: Substantially increase the number of Assistant Deputy Wardens currently assigned to the facilities or a reasonable alternative to ensure that there is adequate supervision of Captains.

iv.  *Deployment of Experienced Staff in Housing Units*: Create and implement an assignment process in which sufficiently experienced uniform staff are deployed to housing units.

v.  *Awarded Posts:* Reduce the use of awarded posts so they are primarily utilized for those positions in which a particular skill set is required. A staff member with an awarded non-mandatory post must be re-deployed to a mandatory post if there are staffing shortages.

vi.  *Maximize Work Schedules*: Create and implement alternatives to the work schedule for uniform staff assigned to work in the facilities in order to minimize the use of a 4 by 2 schedule and optimize staff scheduling.

vii.  *Reduction of Uniformed Staff in Civilian Posts*:  Reduce the assignment of uniform staff to civilian posts, including Temporary Duty Assignment, in

order to minimize the reliance on uniform staff for tasks that can and should be reasonably completed by civilians.

viii.  *Post Analysis*: Conduct a post analysis, in consultation with the Monitor, that is rooted in correctional best practices and addresses the lapses in the Department's current staffing practices. The analysis will consider and coordinate staffing determinations the Department has made to revise and improve security practices, in order to staff posts based on reasonable operational need and avoid inefficient staffing practices currently in place (*e.g.*, the "all available" response to all alarms). The Department's post assignments shall be revised based on the results of the post analysis.

ix.  *Relief Factor*: Calculate a reliable and reasonable relief factor after the implementation of the relevant staffing initiatives are in place.

4.  *Consultation with the Monitor*: The Department shall consult with the Monitor on the system, plans, and initiatives to improve and maximize deployment of staff set forth in § C., ¶ 3 of this order above.  If the Department's proposed system, plan, or initiative fails to adequately and reasonably address the requirements of a particular provision, the Monitor, within 15 business days, must advise the Department in writing that the system, plan or initiative is insufficient to achieve compliance with the provision.  The Department, in consultation with the Monitor, will refine the system, plan or initiative as necessary to ensure compliance with the provision.  The Department must then implement the revised system, plan, or initiative, including any additional requirements from the Monitor.

5.  _Single Source Tracking System of Staff_: By September 1, 2022, the Department shall procure appropriate software and technology to automate uniform staff scheduling and create a central repository of information related to uniform staff assignments, status (e.g. active, restricted, in-active, long-term inactive and restricted), and scheduling across all facilities.  This system must also have the capability for tracking, collecting, and securing data designed to identify a reasonable and reliable relief factor. The automated system should be based on the collection of internal data and take into consideration operating days, work schedules, post frequency, off-post time, and leave-time.  The system shall be configured for Department-wide use by June 1, 2023 so it may be implemented by that date.

## **Section D: Security Practices**

1. *Security Operations Manager*: The Department must maintain the appointment of an individual with significant expertise in correctional operations and security as the Security Operations Manager.  The Department must consult with the Monitor before *any* individual is appointed to serve in this position. The Security Operations Manager must have appropriate authority to manage and implement the requirements enumerated in § D., ¶ 2 and adequate resources to conduct their work.

   a. *Evaluating Assessments of Compliance*: The Security Operations Manager must routinely evaluate the security assessments conducted by the Nunez Compliance Unit (or any comparable unit) and address the security deficiencies identified therein.

2. *Improved Security Initiatives*: The Department shall implement improved security practices and procedures, including, but not limited to, the following items outlined below:

   a. the interim Security Plan required by ¶ 1(i)(a) of the Second Remedial Order;

   b. reduced reliance on the use of the intake following a use of force incident as required by to § A, ¶ 3 of the First Remedial Order.  The Security Operations Manager shall also work in collaboration with the Deputy Commissioner of Classification so incarcerated individuals are processed within 24 hours in Intake, as required in § E, ¶ 4 of this Order (below);

   c. reduced reliance and appropriate composition of Emergency Response Teams required by § A, ¶ 6 of the First Remedial Order and to address the Monitor's feedback that was provided in 2021;

13

     d.   improved procedures on how searches are conducted, including addressing the Monitor's feedback that was provided in 2021;

     e.   enhanced efforts to identify and recover weapons and other contraband;

     f.   improved escort techniques to eliminate the unnecessary use of painful escort holds;

     g.   self-harm procedures and policies as required by ¶ 1(i)(b) of the Second Remedial Order; and

     h.   Post Incident Management protocol as required by to ¶ 1(i)(e) of the Second Remedial Order.

3. *Consultation & Direction of the Monitor*: The Department shall consult with the Monitor on the system, plans, and initiatives to improve security practices as set forth in § D., ¶ 2 of this order above.  If the Department's proposed systems, plans or initiative(s) fail to adequately and reasonably address the requirements of § D., ¶ 2 above, the Monitor, within 15 business days, must advise the Department in writing that the plan is insufficient to achieve compliance with the provision.  The Monitor may direct the Department to refine the initiative(s) as necessary to ensure compliance with the provision.  The Department must then implement the revised initiative(s), including any additional requirements from the Monitor.

4. *Expanded Capacity for the Department's Internal Assessment of Security Initiatives*: By August 1, 2022, the Department shall have sufficient staff dedicated to conducting reasonable assessments of the Department's efforts to implement the initiatives described in § D., ¶ 2 above.  The Department shall ensure that the findings of said assessments are

utilized by staff leadership to improve practice and shall address any obstacles to implementing these initiatives.

5. _Cell Doors_: The Department shall install at least 950 new and upgraded cell doors at RNDC and AMKC by July 31, 2024.

    a. At Least 20% Complete (190 doors) shall be installed by December 31, 2022.

    b. At Least 50% Complete (475 doors) shall be installed by October 31, 2023.

    c. At Least 75% Complete (713 doors) shall be installed by April 30, 2024.

### Section E: Management of People in Custody

1. *Classification Manager*: By August 1, 2022, the Department shall appoint a Classification Manager to oversee the Custody Management Unit.  The Classification Manager must have appropriate authority to manage and implement the requirements enumerated in § E., ¶ 2 and adequate resources to conduct their work.

2. *Responsibilities of the Classification Manager*: The Department shall implement improved practices and procedures regarding housing of incarcerated individuals, including, but not limited to, the following items outlined below:

   a. *Centralized Unit*: a centralized Custody Management Unit ("CMU") for all classification functions.  The CMU shall centrally manage inter-facility and intra-facility transfers to ensure people are housed in units that are commensurate with their custody level and to ensure adherence to the Department's strategy for widely dispersing people who are affiliated with a Security Risk Group ("SRG").  CMU may include staff who are located at individual facilities, but they must report directly to CMU leadership.

   b. *Reclassification*: a reclassification process in which people in custody are reclassified at 60-day intervals following their initial classification.

   c. *Modifying Tracking System*: improve reclassification form in the Inmate Information System ("IIS") to address and resolve the concerns identified by the Classification Consultant, James Austin.

   d. *Re-balancing Housing Units*: a reasonable and adequate housing strategy to reduce the practice of concentrating SRG-affiliated incarcerated individuals in certain housing units.  The Department, in consultation with the Monitor, shall

develop a phased-in implementation plan to reduce the concentration of SRG-affiliated incarcerated individuals in certain housing units.

3. *Intake*:

    a. *Processing Incarcerated Individuals Through Intake Within 24 Hours*: The Department shall implement the requirements of ¶ 1(i)(c) of the Second Remedial Order.

    b. *Initiatives to Reduce Reliance on Intake*: The Classification Manager and the Security Operations Manager shall collaborate on initiatives under each of their respective scopes of work to reduce the reliance on intake and ensure incarcerated individuals are processed through intake in a timely manner.

4. *Management of Incarcerated Individuals Following Serious Incidents of Violence*: Within 60 days of this Order, the Department, in consultation with the Monitor, must develop a housing and management strategy that will safely and adequately manage those incarcerated individuals that have engaged in serious acts of violence and pose a heightened security risk to the safety of other incarcerated individuals and staff.  This housing and management strategy must comply with the HALT Act, reflect sound correctional practice, and is subject to the approval of the Monitor. This housing and management strategy must be implemented within 30 days of receipt of approval.

## **Section F: Staff Accountability**

1. _Staffing for Trials Division_: By July 29, 2022, the Defendants must assign at least thirteen _additional_ agency attorneys, two _additional_ legal coordinators, four _additional_ support staff and two _additional_ directors to the Trials Division.

     a. _Staffing Levels of Trials Division_: The City shall thereafter ensure that the Department's Trials Division maintains at least 25 agency attorneys and 4 directors, unless and until the Department can demonstrate to the Monitor with an internal staffing analysis that fewer agency attorneys and directors are necessary to timely address the disciplinary matters pending with the Trials Division.

     b. _Disciplinary Manager_: The Department shall maintain a Disciplinary Manager required by ¶ 5 of the Third Remedial Order.

2. _Expeditious Resolution of Egregious Conduct and/or Multiple Serious Violations_: The City, Department and OATH shall develop, in consultation with the Monitor, a process by which appropriate and meaningful discipline, up to and including termination, for any staff member can be expeditiously imposed in any case involving: (1) conduct that would merit the Department seeking termination pursuant to the Disciplinary Guidelines, or (2) egregious conduct that resulted in the risk of serious harm to an incarcerated individual. The Monitor may refer cases to the Department for resolution in this expedited manner.

     a. A case identified to be resolved in an expedited manner must be resolved as follows:

          i. _Investigations_: The investigation(s) of the matter must be completed within 30 business days of identification.

    ii.   *Referral for Discipline*: The case must be processed for discipline —
including completion of the MOC, referred to the Trials Division, charges
served on the Respondent, discovery produced to the Respondent, an offer
for resolution must be provided to the Respondent, the case filing with
OATH, and a pre-trial conference must be scheduled within 20 business
days of the closure of the investigation.

    iii.   *Adjudication of Discipline*: Any and all disciplinary proceedings,
including, but not limited to, convening a pre-trial conference, conducting
a trial before OATH, and submission of a Report and Recommendation
from the OATH ALJ must be completed within 35 business days of the
case being filed with OATH.

    iv.   *Imposition of Discipline*: The Commissioner must impose the final
disciplinary action within 15 business days of receiving the Report and
Recommendation from OATH.

3.  *Revised Procedures for Command Discipline*: By July 1, 2022, the Department, in
consultation with the Monitor, shall revise the policy regarding Command Discipline
to maximize the use of a Command Discipline for lower-level misconduct and ensure
efficiency in the processing of Command Disciplines. The revised Command Discipline
policy shall be implemented with corresponding changes to the Case Management
System.

4.  *Addressing the Disciplinary Backlog*: As required under ¶ 1(iii) of the Third Remedial
Order, by June 30, 2022, the Monitor shall provide the Court with the status of the
Department's efforts to resolve the Priority Backlog Disciplinary Cases and the Other

Backlog Disciplinary Cases in the fourth Remedial Consent Order Interim Report. This report will also include the Monitor's assessment of the Department's efforts to resolve the Priority Backlog Disciplinary Cases and the steps that the Monitor recommends be taken, including relevant timeframes, to resolve the Other Backlog Disciplinary Cases.

5. *Addressing Future Incidents of Misconduct*: By August 15, 2022, the Trials Division shall assign a dedicated group of attorneys to exclusively prosecute disciplinary referrals made as of that date, and going forward, to ensure expeditious prosecution of these future cases.

6. *Evaluation of Disciplinary Procedures*: The Department, in consultation with the Monitor, shall conduct a comprehensive evaluation of the Department's disciplinary practices and procedures, including, but not limited to, the processes for identifying violations, providing notice to Staff and an opportunity to be heard, and the ultimate imposition of discipline to identify concrete and specific practices that can be refined in order to expedite the prosecution of disciplinary cases. The Monitor's Report, to be filed on October 28, 2022, shall provide the Court with a report of the steps that must be taken to remove the barriers that delay the imposition of appropriate and meaningful discipline and a timeline to implement such steps.

7. *Addressing Discipline for Abuse of Staff Leave or Restricted Duty Policies*: The Department shall take all necessary steps to impose appropriate and meaningful discipline, up to and including termination, for any staff member who violates Department policies, procedures, rules, and directives relating to sick leave, restricted or modified duty, or absence without official leave.

8. *Immediate Corrective Action*. The Department shall continue to implement § C, ¶ 1 of the First Remedial Order.

9. *Responding to Monitor Recommendations*. The Department shall continue to implement § C, ¶ 2 of the First Remedial Order.

10. *Streamlined OATH Process:* The OATH Division shall continue to implement the following provisions:

    a. *Expeditious OATH Proceedings* required by § C ¶ 4 of the First Remedial Order.

    b. *Applicability of Disciplinary Guidelines to OATH Proceedings* required by § C ¶ 5 of the First Remedial Order.

    c. *Increased Number of OATH Pre-Trial Conferences* required by ¶ 2 of the Third Remedial Order.

    d. *New OATH Procedures and Protocols* required by ¶ 3 of the Third Remedial Order.

## Section G: Assessment of Compliance & Reporting in 2022

1. *Manager Reporting to the Monitor*: The Disciplinary Manager, the Security Operations Manager, the Staffing Manager, the Classification Manager, and the leader of the Nunez Compliance Unit (or comparable unit) (collectively the "Managers") must regularly provide updates to the Monitor regarding their work.  The Managers will collaborate with the Monitor on the format and frequency of the updates, allowing for changes in such format and frequency as the work progresses.

2. *Monitor Reports*: The structure, focus, and frequency of the Monitor's Reports covering the period of January 1, 2022 through December 31, 2022 will be altered.  During this period of time, four Monitor's Reports will be filed per the schedule below:

    i. June 30, 2022.

    ii. October 28, 2022.

    iii. January 31, 2023.

    iv. March 16, 2023.

3. *Court Status Conference*: The Court shall convene a status conference with the Parties and the Monitor approximately 3 weeks after the filing of the Monitor's Report filed on October 28, 2022, January 31, 2023 and March 16, 2023.

4. *Content of Reports*: Each report will include the following:

    a. *City and Department's Efforts to Reform the Agency*: The Monitor's evaluation and assessment of the City and Department's efforts to improve the foundational issues that corresponds with the six distinct sections of this plan:

        i. Immediate Initiatives to Address Harm

        ii. Citywide Initiatives to Support Reforms

      iii.  Uniform Staffing Practices

      iv.  Security Practices

      v.  Management of People in Custody

      vi.  Staff Accountability

b.  The specific information and data, including trends and patterns, for the following items:

    i.  <u>Violence</u>:

      1.  Number of UOF incidents and UOF rate, and injury classification of UOF incidents.

      2.  Number of instances in which an Intake Investigation or a Full ID Investigation resulted in a finding that that the incident involved excessive or unnecessary Use of Force.

      3.  Number of incarcerated individual-on-incarcerated individual fights/assaults, and number of serious injuries to incarcerated individuals as a result of incarcerated individual-on-incarcerated individual fights/assaults.

      4.  Number of assaults on Uniform Staff, and number of serious injuries to uniform staff as a result of assaults on Uniform Staff.

      5.  Number of Stabbing/Slashing incidents.

      6.  Number of alarms, broken down by level A and level B.

      7.  Number of weapons recovered, and number of other contraband items recovered.

    ii.  <u>Staffing/Staff Deployment</u>:

      1.  Total number of uniform staff.

      2.  Total number of Captains.

      3.  Data regarding uniform staff out on sick leave.

23

4. Number of uniform staff on medically monitored/restricted duty status.

5. Data regarding unstaffed posts and availability of staff to work on housing units.

6. Data regarding use of force incidents involving unmanned posts.

7. Data regarding compliance with housing area tours.

8. Number of Captains assigned to commands outside of facilities, hospitals, and court commands.

9. Number of ADWs assigned to Facilities, broken down by Facility.

10. Number of uniform staff on Awarded Posts.

11. Number of uniform staff on 4x2 schedules compared with staff on other schedules.

12. Number of individuals hired for new leadership positions.

13. Data reflecting frequency with which staff are working triple shifts.

14. Data regarding civilianization of certain posts that previously were held by uniformed staff.

iii. <u>Accountability</u>:

1. Number of UOF-related disciplinary cases resolved.

2. Number of pending UOF-related disciplinary cases, broken down by year of underlying incident.

3. Number of OATH pre-trial conferences, broken down by month.

4. Number of instances Staff were subject to immediate corrective action, broken down by the nature of the corrective action imposed.

5. Number of instances the Monitor recommended that the Department take immediate corrective action, expeditiously

24

complete a Use of Force investigation, and/or expeditiously pursue disciplinary proceedings, and the Department's responses to these recommendations.

6.  Number of cases referred for expeditious resolution under § F ¶ 2, and status of those cases.

7.  Data on disciplinary actions taken against staff for abuse of sick leave or restricted status (or other absenteeism issues).

8.  Trials Division staffing levels and caseloads.

iv.  Other:

1.  Number of in-custody deaths.

2.  Number of incarcerated individuals in custody for more than 365 Days and median length of stay.

3.  Data on incarcerated individuals who remained in Intake for longer than 24 hours, and the length of time each individual was in Intake.

4.  Number of new cell doors installed, broken down by facility.

5.  *Compliance Assessment:*

a.  An assessment of compliance, pursuant to § XX, ¶ 18 of the Consent Judgment, with the specific requirements of this Order.

b.  Given the Monitor's findings in the Monitor's March 16, 2022 Special Report, (pages 63 to 65), the Monitor's assignment of compliance ratings for each provision of the Consent Judgment (required by § XX, ¶ 18 of the Consent Judgment) and the First Remedial Order are suspended for the time period covering January 1, 2022 to December 31, 2022, except for those provisions incorporated into this Order and the provisions listed below (collectively "select group of provisions").

25

i.  The Monitor shall assign compliance ratings, required by § XX, ¶ 18 of the Consent Judgment, for the following provisions from the Consent Judgment and the First Remedial Order:

1.  Consent Judgment § IV. (Use of Force Policy), ¶ 1;

2.  Consent Judgment § V. (Use of Force Reporting & Tracking), ¶¶ 2 & 22;

3.  Consent Judgment § VII. (Use of Force Investigations), ¶¶ 1 & 9(a);

4.  Consent Judgment § VIII. (Staff Discipline and Accountability), ¶¶ 1, 3(c) & 4;

5.  Consent Judgment § X. (Risk Management) ¶ 1;

6.  Consent Judgment § XII. (Screening and Assignment of Staff), ¶¶ 1 to 3;

7.  Consent Judgment § XV. (Safety and Supervision of Inmates Under the Age of 19), ¶ 1, 12 and 17;

8.  First Remedial Order § A. (Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force), ¶¶ 1 to 4, & 6; and

9.  First Remedial Order § C. (Timely, Appropriate, and Meaningful Staff Accountability), ¶¶ 1, 2, 4 & 5.

ii.  The following reports will include the compliance assessments for this select group of provisions as outlined below:

26

1. The October 28, 2022 report will include the compliance assessment for the select group of provisions for the period covering January 1, 2022 to June 30, 2022.

2. The March 16, 2023 report will include the compliance assessment for the select group of provisions for the period covering July 1, 2022 to December 31, 2022.

6. _Monitor's Assessment of Compliance in March 16, 2023 Report_: The Monitor's March 16, 2023 Report shall include the Monitor's assessment as to: (a) whether the City and Department have made substantial and demonstrable progress in implementing the reforms, initiatives, plans, systems, and practices outlined in this Order; and (b) whether such efforts have resulted in a substantial reduction in the risk of harm currently facing incarcerated individuals and DOC staff.

**Section H: Compliance with Prison Litigation Reform Act, 18 U.S.C. § 3626**

The Court finds that this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a)(1)(A). The Court further finds that the prospective relief in this Order is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is narrowly drawn and extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.  Accordingly, the Court finds that the Order complies with the provisions of 18 U.S.C. § 3626(a)(1)(A).

SO ORDERED this 14th day of June, 2022

  /s/Laura Taylor Swain_____

LAURA TAYLOR SWAIN

Chief United States District Judge