**OFFICE OF THE MONITOR**
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

Steve J. Martin
Monitor

Anna E. Friedberg
Deputy Monitor

178 Columbus Avenue, #230842
New York, NY 10023-9998
+1 646 895 6567 | afriedberg@tillidgroup.com

November 14, 2022

**VIA ECF**

The Honorable Chief Judge Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Chief Judge Swain,

The Monitoring Team writes to provide the Court with a status update on the Parties' proposed next steps and a proposed agenda for the upcoming conference pursuant to the Court's November 3, 2022 Order (Dkt. 473). As directed by the Court, the Monitoring Team and the Parties have met and conferred during numerous meetings and phone calls and have exchanged a significant number of emails since the Monitoring Team filed its October 28, 2022 Report (Dkt. 472).

*Proposed Next Steps*

Status updates on four key items are outlined below:

1. **Recommendations from the Monitoring Team's October 28 Report**

Since the filing of the October 28 Report, the City and Department have begun to work with the Monitoring Team to address the recommendations outlined throughout the various sections of the report.

1

2. **Expanded Criteria for Selecting Wardens**

The City has advised that it intends to adopt the Monitoring Team's recommendation to expand eligibility criteria for Warden positions to allow the City to hire from outside the current uniform ranks. To that end, the City is drafting a stipulation for the Parties' review to determine whether a joint application to the Court can be made to provide the Department with the authority to implement the Monitoring Team's recommendation. Based on discussions with all Parties, the Monitoring Team is hopeful that all Parties can agree upon a joint stipulation to be presented to the Court.

The SDNY has advised that "it will consent to Defendants' request to seek a Court Order permitting the Department to hire warden supervisory staff from outside of the current uniformed ranks. The Government has strongly encouraged the City to take this step since the Monitor first made this recommendation in May 2021. Indeed, the issue was a focus of the Court conference last December. In numerous submissions to the Court, the Monitor has repeatedly attributed the ongoing non-compliance with the Consent Judgment to the inadequate supervision of line-level uniformed staff provided by those who hold facility leadership positions. It is unfortunate that the City has waited this long to seek this relief, which will make it possible to look beyond the limited pool of candidates within the Department to find the most qualified and experienced corrections professionals to oversee the day-to-day operations of the jails. [The Government] hope[s] that the Department recruits and hires wardens who are committed to dismantling the culture of dysfunction and violence that has permeated this system for decades, and are willing to embrace and operationalize the reforms required by the Consent Judgement and other Court Orders in this case so that real change can occur."

With respect to a proposed joint stipulation, if agreement can be reached among the

Parties, the Monitoring Team recommends that proposed stipulation should be filed with the Court no later than *Wednesday, November 16 at 2:00 pm*. The Monitor is also prepared to provide the Court with an affidavit from the Monitor that this approach represents the least intrusive means necessary and is tailored to properly address the implicated rights and interests, as the Monitor has done with prior submissions to the Court. If agreement cannot be reached by Wednesday, November 16, the Monitoring Team shall advise the Court about the issues in dispute and/or the basis for why additional time may be needed to complete the submission.

The SDNY has advised that, beyond the issue related to the appointment of facility wardens, it "continues to have concerns about whether the Department has a sufficient pool of qualified uniformed staff to fill other facility leadership positions, including the positions of Captain, Deputy Warden, and Assistant Deputy Warden, which are not included in Defendants' proposed relief. In his report, the Monitor notes that the number of Captains and Assistant Deputy Wardens assigned to housing areas has declined significantly since January 2021 (October 28 Report at page 112). Indeed, the Monitor found the Department to be in non-compliance with the provision in the August 14, 2020 Order requiring it to improve staff supervision by increasing the number of Assistant Deputy Wardens assigned to facilities. (October 28 Report at page 115) The Government urges the City to consider seeking additional court relief that would allow it, where necessary, to fill second-tier facility leadership positions with qualified individuals outside the current Department ranks. Given the dire conditions in the jails, the City must take whatever actions are needed to be able to recruit the best and most competent individuals to supervise and support correction officers in the jails."

3. **Motion for Contempt and Appointment of a Receiver**

Counsel for the Plaintiff Class has advised of their position that the harm to the Plaintiff Class is dire and caused by continuing violations of their constitutional rights, for which Defendants cannot or will not abate this harm. Accordingly, Plaintiffs believe appointment of a receiver is necessary to bring Defendants into compliance, and intend to file a motion for contempt and appointment of a receiver.

The SDNY has advised that it "does not intend to join the Plaintiff Class' motion seeking the appointment of a receiver at this time but reserves its right join the motion at a later date, or to submit a separate motion seeking other relief based on Defendants' ongoing non-compliance with core requirements of the Consent Judgment and other Court Orders in this case."

The City has advised that it believes a motion for contempt is not legally supported at this time, and the City will oppose such a motion. The City further advises that it does not believe that the Plaintiff Class has met the burden under the Prison Litigation Reform Act to bring such a motion, and therefore, the City contends that the Plaintiff Class should not be permitted to make such a motion at this time.

If the Court grants a briefing schedule for the motion of contempt, the Parties have separate proposed briefing schedules outlined below as a briefing schedule could not be agreed upon.

|  | **Plaintiffs Class' Proposed Briefing Schedule** | **City's Proposed Briefing Schedule** |
| --- | --- | --- |
| Plaintiffs' Class Moving Papers Due | December 15, 2022 | December 15, 2022 |
| City Opposition Due | January 13, 2023 | February 15, 2023 |
| Plaintiffs' Class Response Due | January 27, 2023 | March 1, 2023 |

4. **<u>Future Monitor Reports</u>**

The schedule for the next two Monitor's Reports, by necessity, must be altered, as described in the Monitor's October 28 Report at pages 100 to 101. The Monitoring Team requests that the next two reports would be filed on March 31, 2023 and June 9, 2023[1] as outlined in Appendix A of this Status Letter.

The proposed revision to the reporting schedule is necessary in order to allow the Monitoring Team to provide relevant and substantive updates in each report because the proposed schedule affords the time needed for substantive action to be taken by the Department and also allows the Monitoring Team to collect, analyze, and interpret the necessary data about those efforts. The current reporting schedule does not provide sufficient time to do so and as such would hinder the quality of the reporting to the Court and limit the reports' usefulness to inform decision-making about the adequacy of the Department's progress. The proposed schedule preserves the Court's and the Parties' opportunity to receive more contemporaneous information than the Consent Judgment's original reporting requirements and maximizes the usefulness of the information. If circumstances require, the Monitoring Team will issue *Special Reports* as needed and has done on multiple occasions during the past seven years.[2] Further, the Parties will still receive a significant amount of information and data directly from the City and Department before the Monitor's next report (assuming the revised schedule is granted) as part of the Department's Compliance Report that must be produced in early February 2023, pursuant

---

[1] Based on discussions with the Parties, the Monitoring Team has slightly altered its request from the reporting dates proposed in the Monitor's October 28 Report.

[2] For example, beginning in August 2021, the Monitoring Team issued 10 such reports to highlight imminent risks of harm and in order to ensure that the Court was equipped with the most contemporaneous information needed for decision-making.

to § XIX, ¶¶ 1 to 4 of the Consent Judgment. If the proposed change to the Monitoring Team's report schedule is granted by the Court, the City and Department have also agreed to produce a confidential[3] one-time supplement to the Compliance Report with the data required by the Action Plan § G., ¶ 4(b) along with specific information about its efforts under the Action Plan to address specific requests for information from the SDNY,[4] and certain information requests from Plaintiffs.

---

[3] This one-time report will be produced pursuant to the terms of the confidentiality agreements outlined in docket entries 290 and 340. This approach ensures the Monitor can responsibly fulfill his obligations under the Consent Judgment, as it allows the Monitoring Team the opportunity to analyze data produced by the Department to provide appropriate context in order to avoid the misinterpretation or the dissemination of incomplete or confusing information. While the Parties will benefit from obtaining certain specific information in this one-time confidential report, the public filing of just a subset of information, and without relevant context and other information, will result in the dissemination of incomplete or confusing information to the public and Court.  Additionally, it bears repeating, for the reasons described in the October 28 Report on pages 9 to 11, multiple measures are required to assess progress in each key area of the Action Plan (*e.g*., staffing, safety and security, staff discipline) because no one metric adequately represents the multi-faceted nature of these requirements, which the Monitoring Team has done and will continue to do in its reports.

[4] Among other things the one-time supplemental report will address, the ongoing deficiencies in the supervision of uniformed staff, the high level of violence at GRVC, the immediate steps the Monitor recommends the City should take to address the increase in in-custody deaths, unreliable access to basic services for incarcerated individuals, the evaluation of existing awarded posts and the determination as to whether these assignments should be modified to increase the number of staff assigned to housing areas, closure of Full ID UOF investigations within 120 days and the ID investigator caseloads, the number of pending medical incompetency disciplinary cases, the presence of drugs and other contraband in the jails/reducing the risk of over-doses, addressing security lapses described by the Monitor, the increasing length of time detainees are staying at Rikers while they await trial, and efforts to address adequate staffing in the facilities.

The City and SDNY[5] do not object to the Monitoring Team's proposal. Counsel for the Plaintiff Class opposes the Monitoring Team's proposal and requests that the reporting schedule remain the same because the dire circumstances in the jails mandate the current reporting schedule remain in place and the confidential one-time report supplement from the City/Department is an insufficient substitute for the Monitor's Report.

The Monitoring Team respectfully requests that the Court grant the Monitoring Team's request for a revised reporting schedule, outlined in Appendix A of this letter, because it is necessary for the reasons explained in this letter and the October 28 Report at pages 100 to 101.

---

[5] The SDNY advised that "[t]he Government does not object to the Monitor's proposed modifications to the deadlines for the next two reports given the Monitor's concern that the current schedule would not afford the Monitoring Team sufficient time to prepare its next report and 'would hinder the quality of the reporting to the Court and limit the reports' usefulness to inform decision-making about the adequacy of the Department's progress.' (October 28 Report at pages 100-101) The Government appreciates the Monitor's willingness to adjust his initial scheduling proposal, as [. . .] requested [by the Government], so that the final report required by the Action Plan will be filed on June 9, 2023, as opposed to July 28, 2023. However, given that the next Monitor's report will not be filed until the end of March 2023, [the Government has] asked the Department to include in its February 2023 Compliance Report: (a) updated data for each of the many items set forth in Para. G.4.b of the Action Plan; and (b) a description of the specific steps the City and the Department take to address [the SDNY's specific concerns identified in footnote 3] raised in the Monitor's October 28, 2022 report. Given the ongoing level of non-compliance documented in the Monitor's report and the fact that the "facilities remain patently unsafe," (October 28 Report at page 80), the Government needs the requested information before March 31, 2023, to assess whether progress is truly being made in these core areas that directly relate to the Department's capacity to prevent incarcerated individuals (and Department staff) from continuing to be at imminent risk of serious harm. [The Government] appreciate the Defendants' agreement to provide this information to the Government."

*November 17 Court Conference*

As shown above, the Monitoring Team has worked extensively with the Parties since the filing of the Monitor's October 28 Report to identify, refine, and present a clear and concise list of proposed next steps in anticipation of the conference on November 17, 2022.  To that end, the Monitoring Team has provided a proposed agenda for the conference as Appendix B to this letter.

The Monitoring Team is available to respond to any questions the Court may have either before or during the status conference on November 17, 2022.

    Sincerely,

    s/ Steve J. Martin
    Steve J. Martin, *Monitor*
    Anna E. Friedberg, *Deputy Monitor*
    Christina B. Vanderveer, *Associate Deputy Monitor*

**Amendments to the Action Plan Reporting Schedule**

The following provisions of the Action Plan shall be revised as follows:

- *Monitor Reports*

    o The report required by Section G (Assessment of Compliance & Reporting), ¶ 2 (iii) shall be filed on March 31, 2023.

    o The report required by Section G (Assessment of Compliance & Reporting), ¶ 2 (iv) shall be filed on June 9, 2023.

- *Compliance Assessment*

    o The report required by Section G (Assessment of Compliance & Reporting), ¶ 5 (ii)(2) shall be filed on March 31, 2023.

- *Monitor's Assessment of Compliance*

    o The report required by Section G (Assessment of Compliance & Reporting), ¶ 6 shall be filed on June 9, 2023.

**Agenda for the November 17, 2022 Conference at 2:30 pm**

1. Brief Statement from the Monitor

2. DOC Commissioner & City Update on Current State of Affairs and Stipulation Regarding Facility Leadership

3. Plaintiffs Class Counsel and Motion for Contempt & Appointment of Receiver

4. Counsel for the Southern District of New York