UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
MARK NUNEZ, et al., :
:
                Plaintiffs, :
:
 - against - :
:
CITY OF NEW YORK, et al., :
:
                Defendants. :
: **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------ X
:
UNITED STATES OF AMERICA, :
:
                Plaintiff-Intervenor, :
:
 - against - :
:
CITY OF NEW YORK and NEW YORK CITY :
DEPARTMENT OF CORRECTION, :
:
                Defendants. :
------------------------------------------------------------ X

## DECLARATION OF KIMBERLY M. JOYCE
## FOR THE CITY OF NEW YORK

**KIMBERLY M. JOYCE** for her declaration pursuant to 28 U.S.C. §1746,

declare under penalty of perjury that the following is true and correct.

1. I submit this declaration in support of the Parties' proposed Order on Facility Supervisors ("proposed Order") a copy of which is attached as Exhibit A.

2. I am currently a senior counsel in the Office of the Corporation Counsel, Hon. Sylvia O. Hinds-Radix, and one of the attorneys assigned to the defense of the *Nunez* matter on behalf of defendants the City of New York ("the City" or "City") and the New York City Department of Correction ("the Department" or "DOC").

3. I have conferred with my clients in preparation of this declaration, and we have

1

reviewed the declaration submitted in support of the proposed Order by the Monitor Steven J. Martin and agree that the relief included in the proposed Order is necessary to correct the violation of Federal rights at issue in this matter. Defendants are likewise not aware of any other mechanism for addressing the issues caused by the current inability to expand the eligible applicant pool for the position of Warden. (Martin Declaration, ¶ 13).

4. The City's jails consist of 8 facilities, each with its own Warden. A Warden is the facility leader responsible for the day-to-day operations and oversight of the facility. As set forth in New York City Administrative Code ("Administrative Code") §§ 9-117 (a)(5) and (b)(2), "the duty of maintaining the custody and supervision of persons detained or confined by the department of correction shall be performed solely by members of the uniformed force", of which Wardens are a part, and, as set forth in New York Correction Law ("Correction Law") § 120, the duty of maintaining the custody and supervision of persons in a correctional facility shall be performed by peace officers. Additionally, existing State Civil Service Laws that require promotion from civil service exams administered to persons holding positions in the lower ranks, restrict the ability to offer open competitive exams for promotional positions, and restrict the ability to hire provisionally (that is, without the applicant taking the relevant civil service exam). See New York Civil Service Law ("Civil Service Law") §§ 51, 52, 65. Therefore, with these laws in place, Wardens may be appointed only from within the Department's current uniform ranks.

5. As described in his declaration, ¶ 6, the Monitor has continued to find the Department in non-compliance with certain provisions of the Consent Judgment and subsequent remedial orders and has tied that non-compliance to a lack of adequate supervision of uniform staff at the facility level. As a result, the Monitor has long recommended that the criteria for who may serve on facility leadership teams (*e.g.*, Warden) be expanded so that the Department is no longer limited to selecting individuals from the current uniform ranks, and, where necessary, may appoint qualified individuals from the broader corrections community with the required skills and willingness to improve facility operations. (*See* Status letter to the Court dated September 23, 2021 (Dkt. 387), Eleventh Monitor's Report at pg. 15 (Dkt. 368), and Twelfth Monitor's Report at pgs.

13 (Dkt. 431)).

6. However, as noted above, Civil Service Law Sections 51, 52, and 65, Administrative Code Sections 9-117 (a)(5) and (b)(1), and Correction Law Section 120 prevent the Department from implementing this recommendation on its own. As a result, the Second Remedial Order, entered on September 29, 2021 (Dkt. 398), required the City to confer with relevant State leadership to determine how the Department could address the Monitoring Team's recommendation regarding expanded criteria for who may serve as facility Wardens.

7. In response to the Court's order, in late 2021, counsel for the City and State engaged in a discussion about the Monitor's recommendation that the City be permitted to hire facility leadership from outside the existing uniformed ranks. At the conclusion of those discussions, the City understood that the State was not prepared to issue a blanket waiver of state law requirements to hire wardens from among the ranks of the Department's uniformed staff.

8. In addition, in the Spring/Summer of 2022, the Department took a number of steps to streamline and enhance facility leadership while continuing to work within the current statutory framework.

9. In this regard, on May 23, 2022, the Department announced the elimination of the rank of Bureau Chief, including, the Chief of Department, thereby streamlining the supervisory structure so that facility Wardens would report directly to the Commissioner. These changes became effective on June 30, 2022.

10. To further enrich facility leadership, in May of 2022, the Department began advertising for an alternative civilian position titled Assistant Commissioner of Operations. The Department's intent was to hire an Assistant Commissioner of Operations for each facility to work alongside the uniform Wardens and enhance their supervisory and leadership skills. In an effort to fill these positions, the Department took the following steps:

    a. On May 16, 2022, the Department publicly posted a job posting on the NYC.Gov website advertising for the Assistant Commissioner of Operations positions.

  b. On October 11, 2022, the Department retained a recruiting firm to assist with a nationwide search to fill the Assistant Commissioner of Operations positions.

  c. The Assistant Commissioner of Operations job was also posted nationally on monster.com, NYT.com, American Jails Association, Simplicity, National Latino Peace Officers Association, National Criminal Justice Association, NYS Minorities in Criminal Justice, and Handshake.

  d. The Department received 108 applications; of those applicants, the Department determined that 3 candidates merited an interview.

11. After reviewing the applications and conducting interviews, the Department determined that the applicants either did not have the necessary correctional experience to achieve the goal of improving facility leadership and/or did not want to work in a dual leadership position.

12. Although the Monitor noted his reservations about the Department's alternative approach of a dual supervisory structure in his June 10, 2022 letter to the Court (Dkt. 462) and June 30, 2022 Status Report (Dkt. 467) at pgs. 8 to 9, defendants concluded that is was necessary to try all alternatives to broaden the pool of facility leadership within the current statutory scheme before seeking relief from this Court.

13. Now, having attempted to create a dual supervisory facility leadership structure and not achieving success, and having conferred with the Monitoring Team and not being able to identify any other solutions within the existing statutory scheme, the defendants have exhausted all avenues for broadening the potential pool of facility leaders within the existing statutory scheme.

14. As a result, defendants, with the consent and agreement of all parties, now propose that the Court enter an Order that would permit the Department to hire facility leadership from outside the current uniformed ranks as necessary by suspending laws that prevent such hiring.

15. Defendants respectfully submit that the proposed Order meets the Statutory requirements of 18 U.S.C. § 3626(a)(1)(A) and (B), also known as the PLRA and agree (i) that the relief is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, (ii) is narrowly drawn and

extends no further than is necessary to correct those violations, (iii) is the least intrusive means necessary to correct those violations, (iv) will not have an adverse impact on public safety or the operation of the criminal justice system, (v) and is required by federal law and no other relief will correct the violations.

Executed on November 30, 2022.

                                                                                              [s/Kimberly M. Joyce]
                                                                                                  Kimberly M. Joyce
                                                                                                   *Senior Counsel*