

| HON. SYLVIA O. HINDS-RADIX<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Sheryl R. Neufeld<br>**Chief Assistant for Regulatory**<br>**Law and Policy**<br>Desk: 212-356-2207<br>sneufeld@law.nyc.gov |
|---|---|---|

January 10, 2023

**BY ECF**
Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *Nunez, et al. v. City of New York et al,* 11-cv-5845 (LTS)

Dear Chief Judge Swain:

  In accordance with this Court's Order of December 13, 2022 (Dkt. 494), defendants the City of New York ("City") and Department of Correction ("DOC" or "the Department) (collectively "defendants") write to provide a status update regarding the steps being taken by the Department to comply with the intake-related provisions of the Court's Second Remedial Order (Dkt. 398) and Action Plan (Dkt. 465) to develop and implement a reliable system to track and record the amount of time any incarcerated individual is held in Intake and any instance when an individual remains in Intake for more than 24 hours. Defendants also note that the December 16, 2022 EMTC Intake tour referenced in the parties' December 9, 2022 status letter took place as scheduled; and that the parties have scheduled another meet and confer for tomorrow, January 11, 2023 in the afternoon (though we would be amenable to moving the meet and confer until Thursday or Friday of this week should any of the parties need additional time to consider the information set forth in this letter).

  To date the following steps have been taken to improve the intake process for new admissions at the Eric M. Taylor Center ("EMTC"), which is now and will for the foreseeable future continue to be, the only Intake facility for new admissions:

•  The Department has reviewed its "clock-stop" policy and an updated and clear set of rules has been developed for when it is, and is not, appropriate to "stop

the clock" during the intake process.[1] An official Department Operations Order addressing updates to the New Admissions Dashboard (discussed below), including these rules, will be issued by the end of January 2023, provided no technological concerns are discovered during the initial roll out of the updated dashboard (if changes to the Dashboard are required, the new Operations Order will be issued as soon as practicable).

- The updated clock-stop rules authorize the clock to be stopped only in situations where it is impossible for the Department to continue processing the individual for reasons outside of its control; specifically: if an individual (i) is returned to court before completing the intake process; (ii) is sent to the hospital or urgent care before completing the intake process; (iii) refuses to participate in intake processing; or (iv) makes bail and is released before the process is completed. If an individual refuses to participate in intake processing, they will be transferred to the Communicable Disease Unit ("CDU") in West Facility and housed there. When the individual is compliant, further processing will take place there. As a general rule, the transfer will be made if a refusal lasts more than two hours.

- The New Admission Dashboard, which is used to track the movement of individuals through the process has been updated and in full operation since January 4, 2023. Changes to the Dashboard include, but are not limited to: (i) a new prompt for the data entry person to confirm the accuracy of the custody time, so as to avoid entry errors; (ii) a new method for recording the time individuals are "Ready for Clinic" - - i.e., when they have completed fingerprinting, been searched, and received clothing; and (iii) changes to the names of certain entry prompts have been made in order to increase clarity for those entering and reviewing the data. The system now

---

[1] The requirement to house newly incarcerated individuals within 24 hours stems from Judge Lasker's May 3, 1989 order under Benjamin v. Sielaff. See, 752 F.Supp. 140, 142 (SDNY 1990). While this order has since terminated, this 24-hour requirement has been memorialized in Department Operations Order #22-07. The Benjamin order required the Department to house all detainees within 24 hours of being confined to Department custody. An individual is confined to Department custody once a judge signs a securing order. At the time the Benjamin order was signed, individuals confined to Department custody were processed within borough-based facilities attached to the respective courthouse that signed the securing order. In 2007 the City developed a more centralized intake process on Rikers Island. Nonetheless, the Department continued its policy, as memorialized in Operations Order #22-07, of appropriately housing new admission inmates within 24 hours of confinement to Department custody at the courthouse, even though it is standard correctional practice in other jurisdictions to begin the intake process at the intake facility/receiving center rather than at the courthouse. At the same time, Operations Order #22-07 also memorialized a policy that provided for reasonable clock stoppages to account for times in which a new admissions inmate must exit the new admissions process. When the Department agreed to the Second Remedial Order, it did so with the understanding of clock stoppages under Operations Order #22-07 which provides stoppages for the following reasons: (i) court appearance; (ii) hospital transfer; (iii) Urgi-Care; and (iv) infirmary or mental health referral would remain in place.

also clearly indicates if a person has been transferred to another facility, e.g., North Infirmary Command (NIC), during the intake process. The dashboard also now turns yellow when 18 hours have elapsed (netting out stoppages), so that the Department can prioritize those individuals for processing; previously the dashboard indicated when 20 hours had elapsed.

- The Dashboard can now identify basic input errors including who entered the information into the system. This allows the Department to identify errors and retrain staff. This will also assist in the auditing process.

- Daily reports are now generated from the Dashboard providing both general information as well as information to identify the above-referenced input errors including: (i) the number of clock stops as well as the reason for the stop; and (ii) any mismatches in the timestamp entry for the securing order and new admission application (which should be the same). Automated emails are also generated and sent to stakeholders providing a spreadsheet of all new admissions and information including the number of new daily admissions and minimum and maximum admission processing times.

- Intake staffing has been improved in several ways: (i) an Assistant Deputy Warden and a Captain have been assigned to each shift to supervise the EMTC intake process, including ensuring proper utilization of the updated Dashboard; (ii) staffing has been provided so that six intake posts are filled 24 hours a day, seven days a week; and (iii) 28 medically monitored/restricted duty ("MMR") officers have received training on using the dashboard, and 11 other officers have received retraining.

- Correctional Health Services ("CHS") remains committed to ensuring that one or more mental health evaluators, as needed, will be in the EMTC Intake clinic during each shift. CHS also continues to try to hire and retain mental health staff.

- An additional mental health housing unit was opened in EMTC to expedite the housing of the new admissions who require such housing. The new unit will reduce the need to move inmates to the Anna M. Kross Center ("AMKC") or the West Facility and thereby expedite intake time.

- An additional vehicle has been assigned to EMTC to facilitate movement of individuals between facilities if required during the intake process.

- Construction has been completed to help expedite the intake process and enable better monitoring of the intake pens.

- Searches for individuals being transported to court have been moved from the intake area to the gym to reduce interruptions in the intake process.

- As of yesterday, the Nunez Compliance Unit ("NCU") began auditing the

intake process and will continue to do so on a weekly basis using one random day each week to ensure that data is being entered accurately and that the 24-hour requirement is being met.

With respect to intra-facility transfers, Christopher Miller, Deputy Commissioner for Classification, Custody Management and Facility Operations, has completed a review of current procedures and concluded that the following changes will be implemented on or before March 15, 2023 to ensure that the Inmate Tracking System ("ITS") -- a separate database from the Inmate New Admission Dashboard -- can be used to reliably track persons in custody ("PIC") who are in intake areas and who are not new admissions:

- All persons in custody entering or exiting an intake area will be manually scanned and tracked by ITS. In this regard, when an individual leaves facility A for facility B, the individual will be (i) scanned into Intake in facility A; (ii) scanned out of facility A Intake for transfer to facility B; and (iii) scanned into Intake upon arrival at facility B. The time that the individual enters the new housing unit will also be captured.

- To accomplish the scanning, the Department will use the incarcerated individual's "accompanying card," which are maintained in each facility's General Office and will be brought to Intake when the individual arrives. (The General Office is in close proximity to the intake area.)

- Intake staff and supervisors – Captains, Assistant Deputy Wardens, Deputy Wardens and Wardens – will receiving training on operating the ITS dashboard. The Department intends to begin training before the end of this month – January 2023.

- Direct supervision of the intra-facility intake process will be the responsibility of the Intake Captain, who is in the best position to oversee the process.

- The Department is developing a new daily report of intra-facility transfers that will allow senior facility leadership staff and others to better monitor the process.

While defendants recognize that the Court has permitted plaintiffs to file their contemplated motion for contempt by January 17, 2023 (Dkt. 494), defendants respectfully submit that the information provided above shows that defendants are well on the way to having a reliable intake system for both new admissions and intra-facility transfers and that a contempt finding is not warranted. Although defendants recognize that provision 1(i)(c) the Second Remedial Order required a reliable tracking system to be in place by November 15, 2021, when the Action Plan was signed on June 14, 2022, all parties were well aware that there was still work for the Department to do to meet this intake requirement. No party suggested that an intake contempt motion was warranted. Rather, as defendants previously noted, the Action Plan specifically took into account the need for new Department leadership to work on improving Intake. In this regard the Action Plan states as follows:

- Section D, Paragraph 2(b): **Improved Security Initiatives**: The Department shall implement improved security practices and procedures, including, but not limited to, the

following items outlined below: [. . . ] reduced reliance on the use of the intake following a use of force incident as required by to § A, ¶ 3 of the First Remedial Order. The Security Operations Manager shall also work in collaboration with the Deputy Commissioner of Classification so incarcerated individuals are processed within 24 hours in Intake, as required in § E, ¶ 4 of this Order (below);

- Section E, Paragraph 3 - Intake:
    a. **Processing Incarcerated Individuals Through Intake Within 24 Hours:** The Department shall implement the requirements of ¶ 1(i)(c) of the Second Remedial Order.
    b. *Initiatives to Reduce Reliance on Intake*: The Classification Manager and the Security Operations Manager shall collaborate on initiatives under each of their respective scopes of work to reduce the reliance on intake and ensure incarcerated individuals are processed through intake in a timely manner.

As defendants also previously pointed out, there is no time frame set forth in the Action Plan for accomplishing the requirements of Section E, Paragraph 3. Nonetheless, significant progress has been made by the Department in this regard. Moreover, as the Monitor noted in his October 28, 2022 Report, there have been improvements in Intake conditions since the time the Second Remedial Order was entered with respect to both new admission intake and intra-facility transfers. See Dkt. 472 at 89 (new admissions) and 109-10 (intra-facility). For all these reasons, defendants again respectfully submit that there is no basis for plaintiffs' contemplated contempt motion at this time. Defendants thank the Court for its consideration of the updates provided herein.

Respectfully submitted,

*Sheryl R. Neufeld*
Sheryl R. Neufeld

cc:   BY ECF
      *All counsel of record*