UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mark Nunez, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> The City of New York, et al., <br><br> Defendants. | Case No. 11-cv-5845 (LTS)(JCF) |

## DECLARATION OF MARY LYNNE WERLWAS

1. I am the Director of the Prisoners' Rights Project at the Legal Aid Society in New York, New York. I am counsel for the Plaintiff Class in the above-captioned matter. I submit this declaration in support of Plaintiffs' motion for contempt, filed on January 25, 2023.

2. On November 22, 2021, counsel for the Plaintiff Class sent a letter to counsel for Defendants to express our "grave concerns about the Department of Correction's violation of the Court's September 30 order requiring the Department[1] to move individuals from intake into assigned housing units within 24 hours, and the veracity of the Departments' reports to the Court that there have been no such overstays." A true and correct copy of that letter is attached here as Exhibit A.

3. In that letter dated November 22, 2021, counsel for the Plaintiff Class specifically pointed out that "the Department does not have a reliable tracking system as mandated by the Intake Order[.]" The letter further stated that "these facts demonstrate non-compliance with the Intake Order[.]" *See* Exhibit A, at 2.

---

[1] Here and throughout this declaration, the phrase "the Department" refers to the New York City Department of Correction.

1

4.	On December 10, 2021, counsel for the Plaintiff Class sent a follow-up letter to counsel for Defendants reiterating our concerns regarding reliable tracking and noting that Defendants had provided no substantive response to our letter dated November 22, 2021. A true and correct copy of that letter is attached here as Exhibit B.

5.	In our letters of November 22 and December 10, 2021, counsel for the Plaintiff Class also described numerous reports from our clients of stays in intake areas that lasted longer than 24 hours. *See* Exhibit A, at 2; Exhibit B, at 1-2.

6.	Defendants responded to these letters on December 15, 2021. A true and correct copy of Defendants' response letter is attached here as Exhibit C.

7.	At a July 12, 2022 public meeting, the chair of the Board of Correction, an oversight agency, expressed concerns about overly long stays in intake areas and about a "troubling pattern of document alteration regarding lengths of stay at intake." A recording of this meeting is available at https://www.nyc.gov/site/boc/meetings/july-12-2022.page.

8.	In response to counsel for the Plaintiff Class's request under the Freedom of Information Law, the Board of Correction provided a June 16, 2022 email from a Board of Correction staff member to Acting Warden Sonya Harvey of the Department of Correction. This email explained that while monitoring the conditions at main intake over the previous few days, the Board of Correction had documented 17 incidents where a person in custody had their "in custody at court" start time changed on the DOC's intake dashboard. A true and correct copy of this email is attached here as Exhibit D.

9.	The Board of Correction also provided a spreadsheet that the Board had created analyzing the 17 incidents of time changes described above, which had been attached to the

email to Acting Warden Harvey. A true and correct copy of this document is attached here as Exhibit E.

10. In addition, the Board of Correction provided an internal memorandum dated July 5, 2022, which further discussed the changing of data on the Department of Correction intake dashboard, as well as other concerns regarding conditions in intake areas. A true and correct copy of this document is attached here as Exhibit F.

11. On August 26, 2022, counsel for the Plaintiff Class sent another letter to counsel for Defendants, again indicating that Defendants were in violation of the Second Remedial Order's provisions regarding intake, including the requirement to implement a reliable tracking system, and specifically raising the document tampering uncovered by the Board of Correction. A true and correct copy of this letter is attached here as Exhibit G.

12. On September 23, 2022, counsel for Defendants replied, stating their availability to meet and confer, but not substantively addressing Plaintiffs' concerns. A true and correct copy is attached here as Exhibit H.

13. The parties met and conferred on October 20, 2022. In an email dated that same day, counsel for the Plaintiff Class noted that, "the City did not provide information on changed circumstances regarding intake overstays or the falsification or unreliability of the tracking systems, nor dispute the serious concerns raised in that notice. If you have any such information, please provide it to us as well by Monday, October 24." A true and correct copy of that email is attached as Exhibit I.

14. Counsel for Defendants did not respond substantively to this request. As they had indicated they would in a letter on September 13, 2022, they instead chose to "defer answering questions related to the City or Department's compliance with the Consent Judgment, Remedial

Orders, or Action Plan until after submission of the next Monitor's Report on October 28, 2022." A true and correct copy of that September 13, 2022 letter is attached as Exhibit J.

15. These issues were further discussed at the status conference held before the Court on November 17, 2022. An excerpt of a true and correct copy of the transcript of that conference is attached as Exhibit K.

16. Following the November 17, 2022 conference, counsel for the Plaintiff Class met and conferred with the Defendants regarding these and related issues on December 1, 2022, January 11, 2023, and January 19, 2023. The Monitor and the Department of Justice also participated in these meetings. I hereby certify that through these meetings and through additional written communications, the parties made their best efforts to resolve the issues that are the subject of Plaintiffs' motion for contempt, but were unable to do so.

17. During the meet and confer that took place on December 1, 2022, Defendants explained that they aimed to establish a new, reliable tracking system for new admissions by January 2, 2023, and that they had trained 13 staff members to operate that system at EMTC. Defendants also explained that rather than opening areas for new-admission intake in various facilities as the Monitor had previously reported (assumedly based on what the Department had reported to the Monitor), they would instead retain all new admission processing at EMTC. When asked at the December 1, 2022 meeting, Defendants were unable to provide any information about when or how they would begin tracking of the time intra-facility transfers spent in intake areas.

18. As part of the meet and confer process, counsel for the Plaintiff Class sent written questions to Defendants, including questions about any investigation or discipline related to the data tampering by Department employees that was uncovered by the Board of Correction in June

2022. In emails dated December 8, 2022 and January 5, 2023, Defendants indicated that their investigation had determined that the information entered into the dashboard was incorrect, but that no disciplinary action was taken, and that the Department of Investigation had opened an investigation. True and correct copies of those emails are attached here as Exhibits L and M.

19. At the January 11, 2023 meeting between the parties, the Department gave further details about the new admissions tracking system, explaining that the newly implemented dashboard would indicate the total amount of time an individual spent in intake, as well as any amount of time the Department had excluded from its 24-hour calculation (except for those excluded due to bail processing, who the Department tracks in a different system), and the reason why that time had been excluded.

20. Following the above-described meet and confer process, the best understanding of counsel for the Plaintiff Class is that Defendants intend to audit the tracking system for new admissions, known as the dashboard, by choosing a specific point in time and following the individuals who are in the new admissions intake area at that moment via video and other objective data until they are housed. This information will then be compared with the data recorded by Department staff on the dashboard to determine the dashboard's accuracy. Counsel for the Plaintiff Class also understands that Defendants intend to provide the results of these audits to the Monitor, but not directly to counsel for the Plaintiff Class.

21. The best understanding of counsel for the Plaintiff Class is that Defendants cannot guarantee that any specific number of people will be tracked as part of each of these audits, as it will depend on how many people happen to be in the new admissions intake area at the time the auditor chooses to begin the audit. Counsel for the Plaintiff Class is not aware of what criteria, if any, are used to determine when the audit will occur.

22. The best understanding of counsel for the Plaintiff Class is that although Defendants had begun the first such audit as of our meeting on January 19, 2023, that audit had not yet been completed. As of today, January 25, 2023, counsel for the Plaintiff Class still has not received any information indicating that the first audit has been completed.

23. The best understanding of counsel for the Plaintiff Class after the above-described meetings is that Defendants have not determined any plan for when, how, or how often there will be audits to determine the accuracy of tracking for intra-facility transfers spending time in intake areas.

24. Counsel for the Plaintiff Class continue to receive regular reports from our clients of stays in intake areas that last significantly longer than 24 hours. For example, in December 2022, I learned from defense counsel at the Legal Aid Society that a client who was on trial had spent multiple nights in an intake area. Upon meeting this client and personally interviewing him in the Brooklyn courthouse, he informed me he had spent the previous two nights on the AMKC intake floor after being transferred from GRVC and had not showered or bathed in two days, and had only had one hot meal. As a result, he was forced to face his jury exhausted and without having showered. He was moved from intake after I personally wrote to the General Counsel for the Department of Correction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

January 25, 2023  /s/ Mary Lynne Werlwas

New York, NY  Mary Lynne Werlwas

Prisoners' Rights Project
The Legal Aid Society

Counsel for the Plaintiff Class

6