# Exhibit C



**GEORGIA M. PESTANA**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

December 15, 2021

Kayla Simpson
David Billingsley
Mary Lynne Werlwas
The Legal Aid Society
Prisoner's Rights Project
199 Water Street
New York, NY 10038

*Via email*

    Re: Nunez, et al. v. City of New York, et al., No. 11-CV-5845 (S.D.N.Y.)

Dear All:

    On behalf of the Department, we write in response to your letters dated November 22, 2021 and December 10, 2021, questioning the veracity of representations the City has made to the Court in this matter.

**Intake Process for New Admissions**

    The Department has recently provided updates on the steps it has taken to make the Intake process more efficient. The first recent update, made to the Court on October 14, 2021, discussed the discontinuation of OBCC for new admission processing. As a result, EMTC was re-opened on September 20, 2021, to streamline the new admission intake process. Additionally, new admissions are tracked through a dashboard that is used for all individuals coming into our custody. Specifically, for new admissions, each person is timed from the moment they enter DOC's custody until they are assigned to a housing area (a.k.a. the "24-Hour Clock").

1

Department policy requires that the clock be temporarily stopped when certain events take place, including but not limited to hospital runs, mental health referrals, and refusals for treatment. Once the intervening event has concluded, the clock then resumes from where it was stopped originally. Thus, when it appears on the surface that an individual has been in the new admissions intake process for longer than 24 hours, this is largely due to clock stoppage. Once the timing for all clock stops are deducted, the processing time falls within the Department's policy of assigning housing within 24 hours.

Collectively, both the Department's October 14, 2021 report to the Court and the Monitor's November 17, 2021 report (which reflected DOC's data) represented that, between September 23, 2021 and November 3, 2021, the "# new admissions in intake for longer than 24 hours" was zero, and that this

> "24 hour period is from the time the individual was placed in DOC custody (e.g., at the courthouse) until the time the individual was placed into assigned housing. Note that DOC's 24-hour clock is put on pause for certain events, such as when the individual leaves the intake process for a scheduled court appearance, for mental health evaluations, or for hospital transfers."[1]

These reports clearly and properly explained that the Department's representations regarding 24-hour compliance for new admissions were subject to clock stoppage per policy. The Department maintains that the information provided to the Monitor and the Court is accurate.

**Cases from November 22, 2021 Letter**

In support of your assertion that DOC's representation to the court was not credible, you provided information based on your own investigations regarding seven incarcerated individuals. The Department reviewed these cases.

First, only three of these individuals were placed in the Intake on the dates mentioned for new admission processing. As listed below, the first two were housed within 24 hours of coming into DOC custody (with clock stoppage per policy). The remaining individual, ▇▇▇▇▇▇▇, had clock stoppages for various reasons, including his own refusal for care, while being processed as a new admission. The Department is reviewing his case.

B&C: ▇▇▇▇▇
NYSID: ▇▇▇▇▇
Facility: EMTC
Date of Entry: 11/4/2021
Housed within 23:01 hours (no clock stoppage)

---

[1] In noting that you were "very surprised" that the November 17 status report stated that there were zero cases, your letter quoted language from that report but curiously omitted the report's language regarding clock stoppage.

[redacted]
B&C: [redacted]
NYSID: [redacted]
Facility: EMTC
Date of Entry: 10/8/2021
Housed within 16:51 hours (with clock stoppage pursuant to policy)

The remaining four individuals from your letter were not new admissions. They were in intake because they were being re-housed via inter-facility transfers. Thus, these cases do not support the accusation that the Department's statements to the Court – which were entirely about intake for new admissions – were not credible or otherwise lacked veracity.

Incarcerated individuals who are awaiting inter-facility transfers are tracked in the Inmate Tracking System (ITS). As noted in the Monitor's November 17, 2021 report, while this system has the potential to track movement, concerns have been raised regarding the reliability of the data in ITS. The Department is actively working with the Monitor to address issues regarding ITS and its use to ensure that DOC has solid data regarding the time spent in intake by individuals undergoing inter-facility transfers (i.e., non-new-admissions). That said, the Department has been transparent about this challenge with the Monitor and does not dispute the Monitor's characterization in the November 17, 2021 report. DOC has made no misrepresentations regarding intake periods for individuals awaiting inter-facility transfers.

**December 10 Follow-Up Letter**

To the degree that your December 10, 2021 follow-up letter further posits that the Department has not submitted credible information to the Court, we refer you to the points raised above and we stand by our submissions to the Court and Monitor. We will continue to work with the Monitor on issues regarding compliance with the Second Remedial Order, including on new admissions intake and inter-facility transfers.

**Staffing**

Your November 22, 2021 letter also raised concerns with staffing at the Department. We believe that the concerns were addressed by the Monitor's December 1, 2021 report and during the December 2, 2021 Court Conference. The Department continues to make significant progress on staffing within our facilities. Since September 1, 2021, the number of triple tours, AWOLs, and unstaffed posts have all declined by 93%, 81%, and 80%, respectively. The Department's commitment to safety is evident by this progress and it continues to be a priority as the Department works hard to increase its workforce and provide efficient coverage within its jails.

In sum, we appreciate your concern and reiterate the Department's commitment to protecting the safety and security of the individuals in its custody.

Sincerely,

/s/

Kimberly M. Joyce
Senior Counsel
New York City Law Department
Legal Counsel Division

4