# Exhibit K

MBHHNunC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK NUNEZ, et al.,

               Plaintiffs,

          v.                              11 Civ. 5845 (LTS)

CITY OF NEW YORK, et al.,

               Defendants.                Conference
------------------------------x
                                          November 17, 2022
                                          2:30 p.m.

Before:

                    HON. LAURA TAYLOR SWAIN,

                                          Chief District Judge

                         APPEARANCES

THE LEGAL AID SOCIETY
     Attorneys for Plaintiff Class
BY:  MARY LYNNE WERLWAS
     KAYLA SIMPSON
     -and-
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL, LLP
BY:  DEBRA L. GREENBERGER


DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
JEFFREY K. POWELL
LARA K. ESHKENAZI
     Assistant United States Attorneys
```

1   conference is April 27, 2023, at 2:00.  I am denying the
2   request to set now a February conference, but if, after the
3   disclosure of the additional data, any party believes that a
4   conference earlier than the April conference would be necessary
5   or productive, the parties are instructed to meet and confer
6   and can request that the Court set a conference.
7              I am anticipating and looking forward to the receipt
8   of a more fleshed out version of the proposed stipulation that
9   would authorize the commissioner to hire outside the uniformed
10  ranks for facilities supervisors, currently known as wardens of
11  the facilities, together with supporting affidavits from the
12  monitor and -- or declarations from the monitor and from the
13  city.  And given the rationale that Ms. Joyce offered for the
14  need for further time for preparation of the declaration that
15  will detail the steps that have been attempted to either waive
16  or otherwise eliminate the impediments posed by the laws
17  specified in the draft of the stipulation, the due date for the
18  declarations and, in other words, a complete submission of the
19  proposal is November 30 of 2023.
20             I believe that that addresses all of the issues that
21  were put before me today.
22             Ms. Greenberger.
23             MS. GREENBERGER:  Thank you so much, your Honor.  I
24  just had one question about the Court's order on our requested
25  motion.

1          I understand or hear the Court on the receivership
2     request, but separate from the receivership request we had
3     asked to move for contempt because there's a lot of evidence
4     that at the moment the city is not in compliance with the
5     consent judgment and remedial orders.  Just as one example, we
6     put in our letter that there's no -- there's intake overstays
7     and data collection issues about the rule that people are
8     supposed to leave intake in 24 hours.  And so we're -- we would
9     like to have the opportunity to seek contempt, to seek a remedy
10    for the -- we can talk about what is the appropriate remedy for
11    their contempt, but at least to make a motion and a record that
12    they are in contempt with the consent judgment and remedial
13    orders.
14          THE COURT:  Well, I had heard your references to
15    contempt and receivership as being related and also as being
16    more holistic in terms of the proposition that since 2015
17    compliance hasn't been achieved with the consent decree writ
18    large.  I don't believe I missed this in the submissions, but I
19    might have.  I certainly did not hear today a particularized
20    application with respect to the overstays in intake, and I'm
21    not aware of specific consultation regarding a potential
22    contempt application on that issue.  And in general, although
23    it's not necessarily required in every case -- I suppose that
24    inattention can sometimes support a contempt application -- but
25    generally bad faith is necessary there, and I have not heard a

MBHHNunC

1    description of a record that would lead me to believe that as a
2    contempt application that would be likely, on the record that
3    has been described to me now, to be one that would be
4    successful.
5              Having said that, it is a very, very important issue,
6    and so I would urge you, if you haven't done already, to have
7    very specific discussions with the city and the commissioner.
8              MS. GREENBERGER:  No, we have, and their -- our
9    meeting and conferring has been basically them telling us if
10   you have an issue with it, go to the Court.  We're not giving
11   you any information.  We've been trying to get information
12   since this summer about this.  We fully met and conferred.
13             We saw that as subsumed within the broader contempt
14   motion, and that's why it wasn't a separate motion that we were
15   envisioning raising before your Honor, but it is certainly
16   something that we fully met and conferred with the city on, and
17   we are very concerned about.
18             And to your Honor's question about bad faith, there's
19   evidence that records were intentionally changed to make it
20   look like people were leaving within 24 hours and they weren't,
21   and nobody was ever disciplined for that, and it's not clear
22   that that ever changed.  So I do believe that meets the bad
23   faith test.
24             THE COURT:  Ms. Joyce, would you like to be heard?
25             MS. JOYCE:  Very briefly, your Honor.  We have not

1    refused to provide information to the plaintiffs since the
2    summer.  They have raised this issue with us, which was a
3    self-identified issue that the department is working to
4    rectify, that the commissioner has taken steps in intake with
5    his team.  So there's not -- and I could go into some of that
6    now that has been shared with the parties.  We had multiple
7    meet and confers over the past few weeks, I think for probably
8    three to five hours.
9              So there are steps being taken by the department to
10   address the intake overstays, and we have not refused to give
11   information to the parties.  There's no evidence of bad faith
12   here.
13             So I don't know if, commissioner, if you want to talk
14   about anything related to intake, but it's an issue that has
15   been identified by both the department and the parties, and
16   it's being diligently worked on by the executive leadership
17   team to ensure that the information obtained in intake is
18   accurate and that people are not overstaying longer than 24
19   hours.
20             MR. MOLINA:  Your Honor, just to add to that, as it
21   relates to intake, we are seeking and we have been working with
22   our informational technology department in order to make
23   revisions to the dashboard application so that we make sure not
24   only we can assure proper access to that dashboard by staff,
25   but understanding what are the different additional key pieces

1    of information that are needed in that dashboard to document a
2    person's progression through the intake process and moments
3    where maybe that clock may need to stop because there are
4    things out of our control, for example, the person being
5    brought back to court, and it may appear that person is there
6    over 24 hours when, actually, they are not.
7              In addition to that, we did hire a deputy
8    commissioner, as you know, of administration who is our
9    staffing manager.  He is working along with our industrial
10   engineers for workforce optimization to assure that we have the
11   right level of staffing and that the staff is trained
12   appropriately in how to use this dashboard that was placed
13   during the prior administration, to make sure that individuals
14   are processing through as quickly as possible through their
15   intake process and placed in their housing units.
16             So we're aligning staff with the task expected of
17   managing the intake and ensuring that that staff that's
18   assigned there is consistent so that we don't have individuals
19   that have never worked intake before working in intake.
20             THE COURT:  So what is your time frame for having good
21   data and proper staffing in intake?
22             MR. MOLINA:  So our information technology unit is
23   working with that dashboard now.  That is work that is ongoing.
24   I don't have a time frame right now.
25             THE COURT:  Are you telling me you're hopeful that

1    you'll know where people are by August?

2            MR. MOLINA:  Oh, no, no, no, sooner than that.  I
3    would say another 30, 45 days, unless there's some technology
4    issue that needs to be addressed.  But we are identifying and
5    working with Correctional Health Services to identify what are
6    the appropriate times.  For example, if someone has to go to a
7    hospital, what type of medical care should stop that clock and
8    what should not.  So that's what we're working through.

9            We've also have moved the system out of intake and put
10   it in a general office so that there's only specific staff
11   that's available that can input into the dashboard to make
12   these identifications of where the person is in the process.

13           THE COURT:  Has this level of detail of information
14   been provided to plaintiffs before?

15           MS. GREENBERGER:  No.

16           MS. WERLWAS:  No, your Honor.  In response and -- when
17   we raised this issue with the city on August 26 with our
18   noncompliance notice under the consent judgment, we provided
19   much more information, much more detail than was before the
20   Court today, because that was given the breadth of today's
21   discussion.

22           The only response that we have gotten in our meet and
23   confers, which were delayed, in asking the city's position or
24   their response to the much more voluminous evidence of intake
25   overstays and tampering with the data was that they were moving

1    towards -- or planning to move towards substantial compliance.
2    We have not gotten answers nor reliable information on what
3    happened to this data and why it was altered.
4             And secondly, there appears -- we have not gotten
5    answers to their views on what the Court's order means when the
6    Court said people would be processed through intake in 24
7    hours, and we are hearing about stopping clocks, which is not
8    part of the orders, and the city's view on what it can "stop
9    the clock for" that are not part of the Court orders.  We have
10   not gotten those responses from the city.  We have been trying
11   to meet and confer with them since we sent the notice on
12   August 26 to get this information.
13            We did choose -- quite frankly, if we were not here
14   today on much broader issues, what one might say anticipating
15   and seeking the briefing schedule on contempt and receivership
16   that would be on many issues under the consent judgment, this
17   being one of them, we have a meritorious contempt motion that
18   we could make on this issue alone.  And we raised this question
19   about contempt so that we can have clarity under your Honor's
20   orders about what remedies we can pursue seeking contempt.  I'm
21   sorry, when I say "remedies," I mean how we can pursue motions
22   for contempt on an issue such as this which has already been
23   teed up and for which we have not gotten answers.
24            THE COURT:  Ms. Joyce.
25            MS. JOYCE:  Your Honor, we are happy and the city are

1  happy to have another meet and confer with plaintiffs on this
2  particular topic.  The meet and confers that we've been having
3  recently, there have been many topics to discuss, so perhaps we
4  didn't get into the details of this particular topic.  But we'd
5  be happy to have another meeting with Legal Aid to demonstrate
6  to them why a motion for contempt would not be successful
7  before your Honor because there is no basis and no record of
8  bad faith.
9              THE COURT:  That meet and confer must take place by
10 December 2, and you must come armed to that meet and confer
11 with information even more specific than the information that
12 was proffered today as to steps that are being taken as to the
13 city and the department's knowledge of and ability to determine
14 right now whether people have been in intake for more than 24
15 hours and the expected timetable for getting a handle on that
16 information.
17             Should plaintiffs still believe that contempt motion
18 practice is necessary following that meet and confer, the meet
19 and confer should include the discussion of a timetable for
20 briefing if there is still an assessment that there is a need
21 to go forward with contempt motion.  And so in the week of
22 December 5, I think it would be, at that point provide me with
23 a joint status letter.
24             Thank you, and thank you for being more specific about
25 that particular concern.

MBHHNunC

1              All right.  Is there anything else that we need to
2     address together this afternoon?
3              Thank you all very much.  Stay safe.  Work hard to
4     keep the people safe who are in Rikers.  Stay well, everyone.
5              Mr. Tavira's family, I am so sorry for your loss, and
6     we are working to make things better, and it is my intention
7     that things will be better for other families.
8              All right.  We are adjourned.  Thank you.
9              (Adjourned)