# Exhibit M

## Katherine Haas

| | |
|---|---|
| **From:** | Neufeld, Sheryl (Law) |
| **Sent:** | Thursday, January 5, 2023 5:10 PM |
| **To:** | Anna Friedberg; Joyce, Kimberly (Law); Debbie Greenberger; Mary Lynne Werlwas; 'Powell, Jeffrey K. (USANYS) 4'; Katherine Haas |
| **Cc:** | Jonathan S. Abady; Kayla Simpson; David Billingsley; Nairuby Beckles; Nunez-NYC; Steve Martin; Guillaume, Melissa; Sana Mayat; Hendy, Cherae; Wolecki, Hilary; Baranchuk, Victoriya; Shechtman, Paul (DOC); Iodice, Ashley (Law); Mooklal, Stefan (LAW); 'Eshkenazi, Lara (USANYS)'; Maginley-Liddie, Lynelle |
| **Subject:** | RE: [EXTERNAL] Meet and Confer re Motion for contempt re intake tracking |
| **Attachments:** | FW_ EMTC-SERIOUS INJURY TO INMATE -COD # 2303_22.pdf; July EMTC Memo_7.6.22_final.pdf; EMTC Concerns Memo_Final_6.10.22.pdf; Alex Eremin - EMTC Intake.pdf |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

You don't often get email from sneufeld@law.nyc.gov. Learn why this is important

Hi all –

I hope you all had an enjoyable holiday and a good start to the new year. I am sending today's email instead of Kim because she is currently on leave from the Law Department with an anticipated return in early March. During this time, please address all inquiries to myself, Ashley Iodice and Stefan Mooklal. We will do our best to respond timely (please bear with us) and will loop in others as necessary.

First, so that everyone has them, I'm attaching unredacted copies of the documents that were attached as exhibits to plaintiffs' August 26, 2022 letter.

Second, there was a miscommunication and, thus, an error in one of the City's prior statements about investigations into EMTC intake. To correct the record, I am confirming that DOI is conducting an investigation and that the investigation is currently ongoing.

Finally, as requested below in Anna's December 14, 2022 email, the City's position on "the 24-hour clock" is as follows:

- The requirement to house newly incarcerated individuals within 24 hours stems from Judge Lasker's May 3, 1989 order under Benjamin v. Sielaff. While this order has since terminated, this 24-hour requirement has been memorialized in Department Operations Order #22-07.
- The Benjamin order required the Department to house all detainees within 24 hours of being confined to Department custody. It is important to note that an individual is confined to Department custody once a judge signs a securing order. At the time the Benjamin order was signed, individuals confined to Department custody were processed within borough-based facilities attached to the respective courthouse that signed the securing order.
- In 2007 the City developed a more centralized intake process on Rikers Island. Nonetheless, the Department continued its policy, as memorialized in Operations Order #22-07, of appropriately housing new admission inmates within 24 hours of confinement to Department custody at the courthouse, even though it is standard correctional practice in other jurisdictions to begin the intake process at the intake facility/receiving center rather than at the courthouse. At the same time, Operations Order #22-07 also memorialized a policy that provided for reasonable clock stoppages to account for times in which a new admissions inmate must exit the new admissions process.

- When the Department agreed to the Second Remedial Order, it did so with the understanding of clock stoppages under Operations Order #22-07 which provides stoppages for the following reasons: (i) court appearance; (ii) hospital transfer; (iii) Urgi-Care; and (iv) infirmary or mental health referral would remain in place.
- Upon recent review of the intake process, the Department has determined that it is appropriate to revise Operations Order #22-07 to provide for more limited clock stoppages; specifically: (i) court appearance; (ii) transfer to hospital/Urgi-Care; (iii) an individual refuses to participate in intake processing; or (iv) an individual posts bail before the process is completed. These changes reflect the Department's decision to remove from the clock-stop list instances in which new-admission inmates remain on Riker's Island for infirmary care or mental health referral.  The four instances in which the new admissions clock is currently stopped are reasonable as they are outside of the City's control; specifically, where the Department, and its partner Correctional Health Services, cannot continue processing the new admission. It should also be noted that if an individual refuses to participate in intake processing, they will be transferred to the Communicable Disease Unit ("CDU") in West Facility and housed there. When the individual is compliant, further processing will take place there. As a general rule, the transfer will be made if a refusal lasts more than two hours.
- Finally, the intra-facility transfer process is currently under review. We will provide the Department's position on whether the same or different clock stop reasons may apply during the intra-facility transfer process early next week.

Thanks,

Sheryl

Sheryl R. Neufeld
Chief Assistant for
    Regulatory Law and Policy
New York City Law Department
100 Church Street
New York, New York 10007



2