# Exhibit A

MBHHNunC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARK NUNEZ, et al.,

4                  Plaintiffs,

5            v.                          11 Civ. 5845 (LTS)

6   CITY OF NEW YORK, et al.,

7                  Defendants.           Conference

8   ------------------------------x

9

10                                       November 17, 2022
                                         2:30 p.m.
11

12  Before:

13
                        HON. LAURA TAYLOR SWAIN,
14
                                         Chief District Judge
15
                             APPEARANCES
16
    THE LEGAL AID SOCIETY
17       Attorneys for Plaintiff Class
    BY:  MARY LYNNE WERLWAS
18       KAYLA SIMPSON
         -and-
19  EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL, LLP
    BY:  DEBRA L. GREENBERGER
20

21  DAMIAN WILLIAMS
         United States Attorney for the
22       Southern District of New York
    JEFFREY K. POWELL
23  LARA K. ESHKENAZI
         Assistant United States Attorneys
24

25

MBHHNunC

1                          APPEARANCES (Continued)

2    New York City Law Department
     BY:   KIMBERLY JOYCE
3          SHERYL NEUFELD
           Assistants Corporation Counsel
4
     STEVE J. MARTIN
5          Court Monitor

6    ANNA E. FRIEDBERG
           Deputy Court Monitor
7

8    Also Present:

9    Louis Molina, Commissioner DOC
     Christina Vanderveer, Deputy Associate Monitor
10   Alycia Karlovich, Analyst
     Dennis Gonzalez, Associate Director
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MBHHNunC

1    conference is April 27, 2023, at 2:00.  I am denying the

2    request to set now a February conference, but if, after the

3    disclosure of the additional data, any party believes that a

4    conference earlier than the April conference would be necessary

5    or productive, the parties are instructed to meet and confer

6    and can request that the Court set a conference.

7         I am anticipating and looking forward to the receipt

8    of a more fleshed out version of the proposed stipulation that

9    would authorize the commissioner to hire outside the uniformed

10   ranks for facilities supervisors, currently known as wardens of

11   the facilities, together with supporting affidavits from the

12   monitor and -- or declarations from the monitor and from the

13   city.  And given the rationale that Ms. Joyce offered for the

14   need for further time for preparation of the declaration that

15   will detail the steps that have been attempted to either waive

16   or otherwise eliminate the impediments posed by the laws

17   specified in the draft of the stipulation, the due date for the

18   declarations and, in other words, a complete submission of the

19   proposal is November 30 of 2023.

20        I believe that that addresses all of the issues that

21   were put before me today.

22        Ms. Greenberger.

23        MS. GREENBERGER:  Thank you so much, your Honor.  I

24   just had one question about the Court's order on our requested

25   motion.

1          I understand or hear the Court on the receivership

2     request, but separate from the receivership request we had

3     asked to move for contempt because there's a lot of evidence

4     that at the moment the city is not in compliance with the

5     consent judgment and remedial orders.  Just as one example, we

6     put in our letter that there's no -- there's intake overstays

7     and data collection issues about the rule that people are

8     supposed to leave intake in 24 hours.  And so we're -- we would

9     like to have the opportunity to seek contempt, to seek a remedy

10    for the -- we can talk about what is the appropriate remedy for

11    their contempt, but at least to make a motion and a record that

12    they are in contempt with the consent judgment and remedial

13    orders.

14          THE COURT:  Well, I had heard your references to

15    contempt and receivership as being related and also as being

16    more holistic in terms of the proposition that since 2015

17    compliance hasn't been achieved with the consent decree writ

18    large.  I don't believe I missed this in the submissions, but I

19    might have.  I certainly did not hear today a particularized

20    application with respect to the overstays in intake, and I'm

21    not aware of specific consultation regarding a potential

22    contempt application on that issue.  And in general, although

23    it's not necessarily required in every case -- I suppose that

24    inattention can sometimes support a contempt application -- but

25    generally bad faith is necessary there, and I have not heard a

1    description of a record that would lead me to believe that as a

2    contempt application that would be likely, on the record that

3    has been described to me now, to be one that would be

4    successful.

5            Having said that, it is a very, very important issue,

6    and so I would urge you, if you haven't done already, to have

7    very specific discussions with the city and the commissioner.

8            MS. GREENBERGER:  No, we have, and their -- our

9    meeting and conferring has been basically them telling us if

10   you have an issue with it, go to the Court.  We're not giving

11   you any information.  We've been trying to get information

12   since this summer about this.  We fully met and conferred.

13           We saw that as subsumed within the broader contempt

14   motion, and that's why it wasn't a separate motion that we were

15   envisioning raising before your Honor, but it is certainly

16   something that we fully met and conferred with the city on, and

17   we are very concerned about.

18           And to your Honor's question about bad faith, there's

19   evidence that records were intentionally changed to make it

20   look like people were leaving within 24 hours and they weren't,

21   and nobody was ever disciplined for that, and it's not clear

22   that that ever changed.  So I do believe that meets the bad

23   faith test.

24           THE COURT:  Ms. Joyce, would you like to be heard?

25           MS. JOYCE:  Very briefly, your Honor.  We have not

1    refused to provide information to the plaintiffs since the

2    summer.  They have raised this issue with us, which was a

3    self-identified issue that the department is working to

4    rectify, that the commissioner has taken steps in intake with

5    his team.  So there's not -- and I could go into some of that

6    now that has been shared with the parties.  We had multiple

7    meet and confers over the past few weeks, I think for probably

8    three to five hours.

9            So there are steps being taken by the department to

10   address the intake overstays, and we have not refused to give

11   information to the parties.  There's no evidence of bad faith

12   here.

13           So I don't know if, commissioner, if you want to talk

14   about anything related to intake, but it's an issue that has

15   been identified by both the department and the parties, and

16   it's being diligently worked on by the executive leadership

17   team to ensure that the information obtained in intake is

18   accurate and that people are not overstaying longer than 24

19   hours.

20           MR. MOLINA:  Your Honor, just to add to that, as it

21   relates to intake, we are seeking and we have been working with

22   our informational technology department in order to make

23   revisions to the dashboard application so that we make sure not

24   only we can assure proper access to that dashboard by staff,

25   but understanding what are the different additional key pieces

1    of information that are needed in that dashboard to document a

2    person's progression through the intake process and moments

3    where maybe that clock may need to stop because there are

4    things out of our control, for example, the person being

5    brought back to court, and it may appear that person is there

6    over 24 hours when, actually, they are not.

7         In addition to that, we did hire a deputy

8    commissioner, as you know, of administration who is our

9    staffing manager.  He is working along with our industrial

10   engineers for workforce optimization to assure that we have the

11   right level of staffing and that the staff is trained

12   appropriately in how to use this dashboard that was placed

13   during the prior administration, to make sure that individuals

14   are processing through as quickly as possible through their

15   intake process and placed in their housing units.

16        So we're aligning staff with the task expected of

17   managing the intake and ensuring that that staff that's

18   assigned there is consistent so that we don't have individuals

19   that have never worked intake before working in intake.

20        THE COURT:  So what is your time frame for having good

21   data and proper staffing in intake?

22        MR. MOLINA:  So our information technology unit is

23   working with that dashboard now.  That is work that is ongoing.

24   I don't have a time frame right now.

25        THE COURT:  Are you telling me you're hopeful that

MBHHNunC

1        you'll know where people are by August?

2              MR. MOLINA:  Oh, no, no, no, sooner than that.  I

3        would say another 30, 45 days, unless there's some technology

4        issue that needs to be addressed.  But we are identifying and

5        working with Correctional Health Services to identify what are

6        the appropriate times.  For example, if someone has to go to a

7        hospital, what type of medical care should stop that clock and

8        what should not.  So that's what we're working through.

9              We've also have moved the system out of intake and put

10       it in a general office so that there's only specific staff

11       that's available that can input into the dashboard to make

12       these identifications of where the person is in the process.

13             THE COURT:  Has this level of detail of information

14       been provided to plaintiffs before?

15             MS. GREENBERGER:  No.

16             MS. WERLWAS:  No, your Honor.  In response and -- when

17       we raised this issue with the city on August 26 with our

18       noncompliance notice under the consent judgment, we provided

19       much more information, much more detail than was before the

20       Court today, because that was given the breadth of today's

21       discussion.

22             The only response that we have gotten in our meet and

23       confers, which were delayed, in asking the city's position or

24       their response to the much more voluminous evidence of intake

25       overstays and tampering with the data was that they were moving

75

MBHHNunC

1      towards -- or planning to move towards substantial compliance.

2      We have not gotten answers nor reliable information on what

3      happened to this data and why it was altered.

4              And secondly, there appears -- we have not gotten

5      answers to their views on what the Court's order means when the

6      Court said people would be processed through intake in 24

7      hours, and we are hearing about stopping clocks, which is not

8      part of the orders, and the city's view on what it can "stop

9      the clock for" that are not part of the Court orders.  We have

10     not gotten those responses from the city.  We have been trying

11     to meet and confer with them since we sent the notice on

12     August 26 to get this information.

13             We did choose -- quite frankly, if we were not here

14     today on much broader issues, what one might say anticipating

15     and seeking the briefing schedule on contempt and receivership

16     that would be on many issues under the consent judgment, this

17     being one of them, we have a meritorious contempt motion that

18     we could make on this issue alone.  And we raised this question

19     about contempt so that we can have clarity under your Honor's

20     orders about what remedies we can pursue seeking contempt.  I'm

21     sorry, when I say "remedies," I mean how we can pursue motions

22     for contempt on an issue such as this which has already been

23     teed up and for which we have not gotten answers.

24             THE COURT:  Ms. Joyce.

25             MS. JOYCE:  Your Honor, we are happy and the city are

1    happy to have another meet and confer with plaintiffs on this

2    particular topic.  The meet and confers that we've been having

3    recently, there have been many topics to discuss, so perhaps we

4    didn't get into the details of this particular topic.  But we'd

5    be happy to have another meeting with Legal Aid to demonstrate

6    to them why a motion for contempt would not be successful

7    before your Honor because there is no basis and no record of

8    bad faith.

9              THE COURT:  That meet and confer must take place by

10   December 2, and you must come armed to that meet and confer

11   with information even more specific than the information that

12   was proffered today as to steps that are being taken as to the

13   city and the department's knowledge of and ability to determine

14   right now whether people have been in intake for more than 24

15   hours and the expected timetable for getting a handle on that

16   information.

17             Should plaintiffs still believe that contempt motion

18   practice is necessary following that meet and confer, the meet

19   and confer should include the discussion of a timetable for

20   briefing if there is still an assessment that there is a need

21   to go forward with contempt motion.  And so in the week of

22   December 5, I think it would be, at that point provide me with

23   a joint status letter.

24             Thank you, and thank you for being more specific about

25   that particular concern.

MBHHNunC

1        All right.  Is there anything else that we need to

2   address together this afternoon?

3        Thank you all very much.  Stay safe.  Work hard to

4   keep the people safe who are in Rikers.  Stay well, everyone.

5        Mr. Tavira's family, I am so sorry for your loss, and

6   we are working to make things better, and it is my intention

7   that things will be better for other families.

8        All right.  We are adjourned.  Thank you.

9        (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25