# Exhibit D



199 Water Street
New York, NY 10038
(212) 577-3300
www.legal-aid.org

John K. Carroll
*President*

Janet E. Sabel
*Attorney-in-Chief*
*Chief Executive Officer*

Justine M. Luongo
*Attorney-in-Charge*
Criminal Practice

Mary Lynne Werlwas
*Director*
Prisoners' Rights Project

*Via email*

Hon. Sylvia O. Hinds-Radix
*Attn*: Kimberly Joyce
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

Steve J. Martin
*Nunez* Independent Monitor
135 West 41st Street, 5th Floor
New York, NY 10036

Re:     *Intake, EMTC, and Non-Compliance*
          *Nunez v. City of New York*, 11-CV-5845-LTS

Dear Counsel and Monitor Martin:

      On behalf of the Plaintiff class, we write to address the disturbing reports regarding the intake facility in the New York City Department of Correction (DOC), the Eric M. Taylor Center (EMTC). These demonstrate apparent non-compliance with the Consent Judgment (Dkt. No. 249) and Second Remedial Order (Dkt. No. 398).

      The Second Remedial Order requires the Department to "[p]rocess all incarcerated individuals, including but not limited to new admissions and intra-facility transfers, through Intake and place them in an assigned housing unit within 24 hours. The Department shall provide the necessary Intake staff and space to satisfy this requirement. By November 15, 2021, the Department shall develop and implement a reliable system to track and record the amount of time any incarcerated individual is held in Intake and any instance when an individual remains in Intake for more than 24 hours." *Second Remedial Order* ¶ 1(i)(c).

      In the months following this order, Plaintiffs' counsel provided Defendants and the Monitor with numerous reports of intake overstays. The Monitor's reports in March and June 2022 both detailed continued dire conditions in intake pens and numerous overstays. *Special Report*, March 16, 2022 (Dkt. No. 438), 22-23, 46-49; *Status Report*, June 30, 2022 (Dkt. No. 467), xii.

      Following the March Special Report, the Court so-ordered the City's proposed Action Plan that required the City to "implement the requirements of ¶ 1(i)(c) of the Second Remedial Order." *Order: Action Plan*, June 14, 2022 (Dkt. 465), ¶ E(3)(a).

**Justice in Every Borough.**

Now, again, there are alarming reports of regular intake overstays, improper overstay tracking and document tampering, amidst increased violence and inhumane conditions at EMTC generally. Moreover, these reports indicate that the Department has not effectively implemented an interim Security Plan pursuant to the Second Remedial Order, as required by the Action Plan ¶ D(2)(a) and is not compliant with Second Remedial Order ¶ 1(i)(c). We write to request that the Defendants meet and confer with Plaintiffs' counsel to address these issues.

**Intake Overstays and Deficient Tracking Systems**

In November 2021, the Department reported zero intake overstays. *Status Report*, Nov. 17, 2021 (Dkt. No. 420) iii-iv. Plaintiffs' Counsel were troubled by this assertion because we had been receiving consistent reports from our clients who had been held in intake for far longer than 24 hours. We reported these cases to the City and the Monitor. The Monitor later reported that the Department-wide tracking system was deeply flawed and many people had been subjected to extended stays in intake, finding that the Inmate Tracking System was "not being used to manage the units effectively" and that the information was "not updated regularly." *Special Report*, March 16, 2022 at 47.

Further, the Monitor found several examples of intake overstays in violation of the Second Remedial Order. In one facility, of 20 individuals listed on the Intake Monitoring Form, which may not have been diligently updated, "18 had been in intake beyond the 24-hour threshold. One individual had been in intake *almost two weeks* and multiple others had languished for over a week." *Id*. (emphasis in original).

The Nunez Compliance Unit (NCU) examined intake processing at three jails and found that "14 of the 32 incarcerated individuals surveyed were held more than 24 hours (2 were held for 5 days, 1 for 4 days, 3 for 2 days)." *Id* at 48. In June 2022, the Monitor again reported that even though the Department has an Inmate Tracking System, "facility compliance has been inconsistent." *Status Report*, June 30, 2022 (Dkt. No. 467), xii. It further updated the findings of the NCU compliance audits completed in January and February 2022, noting the aggregate findings that 33% of individuals (15 of 45) had stays in intake longer than 24 hours. Almost half of these (7 of 15) extended beyond 72 hours." *Id*. These findings represent persistent violations of the Second Remedial Order requirement to process people through intake in 24 hours. *Second Remedial Order* ¶ 1(i)(c).

The most recent public reporting on intake from the Board of Correction reveals that these violations persist. Board Member Dr. Robert Cohen visited EMTC in June and described the conditions as "frightening." BOC Meeting, June 14, 2022, 1:55:25.[1] He detailed overcrowded intake pens with people who had been held there for many days. He described people who were not receiving medicine, not being transported to court, not provided adequate clothing, and urinating on

---

[1] *Available at* https://www.youtube.com/watch?v=J0FJNRoy8ps&t=6925s.

**Justice in Every Borough.**

Page 3

the floor because there was no functioning toilet. Dr. Cohen reiterated that EMTC has inadequate staff to support processing intake and providing sufficient supervision. *Id*.

The next month, during the July 12, 2022 meeting of the Board of Correction, Chair Julio Medina also reported "overly long" intake stays without medical care and with alarming levels of violence. BOC Meeting, July 12, 2022, 1:32:27; 1:33:00.[2]

We continue to receive reports about intake overstays, as recently as last week: Mr. Javon Segrede[3] reports he was held in intake at EMTC for approximately 4-5 days after his arrest on Saturday August 13, 2022, before being transferred to a mental observation unit around Thursday of the following week. He reports he was held first in pen 9, and then in pen 5, which we understand to be a very small area unfit for living. He says that he was unable to shower for this entire time in intake, despite the heat wave, and did not receive his daily medication or proper food. This is precisely the kind of egregious overstay the Second Remedial Order proscribes.

We are further deeply disturbed by Mr. Segrede's reports about his confinement in pen 5 given the reports of confinement in small shower cages in intake. As you know, intake has small shower cages that are intended to allow people to decontaminate after they are sprayed with chemical agents. An example of such a cage is depicted below—as is clear from the image, it is an extraordinarily small space, often with a wet or dirty floor, that should only be used for the very brief period required for decontamination. Instead, people have reportedly been held there for significant periods of time, some over 24 hours in violation of the Second Remedial Order.



Photo Credit: NBC New York[4]

---

[2] Available at https://www.youtube.com/watch?v=aIkxto4XQWM.
[3] B&C 349-22-02575.
[4] Glorioso, Chris and Courtney Cogenhagen, *I-Team: Locking Prisoners in Narrow Shower Stalls Called Inhumane at Rikers Island*, NBC New York (July 15, 2022) *available at* https://www.nbcnewyork.com/investigations/i-team-locking-prisoners-in-narrow-shower-stalls-called-inhumane-at-rikers-island/3777087/.

**Justice in Every Borough.**

One June 25, 2022 incident is particularly jarring—DOC staff reportedly used force on a person in a Mental Observation housing unit, put him in a main intake holding cell where he was involved in another incident, sprayed him with a chemical agent, and then locked him in a decontamination shower where:

> "[I]t appears that [he] might have been confined to the decontamination shower cage for more than 24 hours, without access to food or medical or mental health assistance...[p]eople in custody informed Board staff that [he] persistently engaged in self-harm during the many hours he was in the shower cage—banging his head and punching and kicking the metal cage."

Memorandum from Board Staff to Amanda Masters (July 5, 2022), at 2. BOC staff visited him at the hospital and documented "extensive injuries," and also noted that "despite his involvement in multiple uses of force...he was not seen by CHS staff until [over 24 hours later]"—a delay in medical attention that in itself appears to be in violation of Consent Judgment Section § V.22. *Id*. When Board staff visited the same shower cage where the person had been confined three days later, on June 28, 2022, they "found [another] person in custody locked in the shower stall and screaming hysterically [who reported] that he had been placed in the stall by ESU officers more than two hours earlier and that there was human feces and blood...in the stall/cage," which the Board staff member documented. Email from Bart Baily to Amanda Masters (June 28, 2022) (attached).

These reports are persistent, horrifying, and inhumane. Indeed, they have already been connected to one death: in August 2021, Brandon Rodriguez died when he reportedly hung himself in an Otis Bantum Correctional Center intake shower cage after being confined there for hours following an incident.[5]

**Apparent Document Tampering Regarding Intake Overstays**

The above evidence of the Department's violation of the 24-hours requirement understates the grave extent of the problem because the Department's reporting is unreliable and possibly falsified. The failure to maintain reliable tracking systems, described above, is *in itself* a violation of the Second Remedial Order, which requires the Department to have developed and implemented, by November 15, 2021, "a reliable system to track and record the amount of time any incarcerated individual is held in Intake and any instance when an individual remains in Intake for more than 24 hours." *Second Remedial Order* ¶ 1(i)(c).

---

[5] Graham Rayman, *NYC negligent in death of man, 25, at Rikers, says mom's lawsuit; case alleges jailers ignored his mental illness*, Daily News (Aug. 10, 2022), *Available at* https://www.nydailynews.com/new-york/nyc-crime/ny-rikers-jail-deaht-lawsuit-brandon-rodriguez-20220810-eyquysuk7ngzjbnvkec3itcnx4-story.html

**Justice in Every Borough.**

Even worse, evidence has emerged that the data has been purposefully manipulated. During the July 12, 2022 BOC meeting, Chair Julio Medina expressed alarm about a "troubling pattern of document alteration regarding lengths of stay at intake." BOC Meeting, July 12, 2022, 1:32:27.[6] Details of data manipulation were recorded in a written memorandum: "Board staff observed and documented a pattern of data manipulation to DOC's Intake Dashboard. Specifically, Board staff documented 16 instances where Department staff retroactively changed a person's "In Custody Start Time," in what appears to be an effort to obscure or "cure" 24-hour housing violations." Memorandum from Board Staff to Amanda Masters (July 5, 2022), at 1.

Document alteration indicates that the Department is not only failing to abide by the Second Remedial Order and the commitment to implement it as stated in their court-ordered Action Plan, but that it is knowingly reporting false information about the length of time people in its custody are spending in Intake. This constitutes bad faith conduct in clear contempt of the Consent Judgment and Remedial Orders. We ask that the Defendants meet and confer with us immediately about these issues.

**Reports that Problems in EMTC have Resulted in Increased Violence and Inhumane Conditions**

Reports about conditions in EMTC indicate that members of the plaintiff class housed there are at serious risk. Though many of these observations describe facility-wide issues at EMTC and therefore are not limited to intake alone, they reflect systemic failures that have led to dangerous conditions including increased violence and uses of force—issues at the heart of the Consent Judgment.

Investigations by the BOC in June and July 2022 reveal inhumane conditions and violence in EMTC which present a danger both to people who are incarcerated and to staff. BOC staff reported in June 2022 that there were insufficient DOC staff for EMTC to run as the only intake facility at Rikers and described squalid conditions, denial of necessities and mandated services such as access to the law library, recreation, and religious services—all resulting in increased risk of violence. Memorandum from Board Staff to Amanda Masters, (June 10, 2022) (attached). In the first few months of 2022, DOC and Correctional Health Services (CHS) reported 113 serious injuries to people in custody at EMTC. *Id*. at 2. As of May 2022, the DOC-reported rate of slashings and stabbings was higher in EMTC than the average for the Department. *Id*. at 3. And for every month so far in 2022, DOC reported significantly more use of force (UOF) incidents in EMTC than the jail average—the monthly UOF rate in EMTC was 125.6 per 1,000 people in custody in January to May 2022, for example, as compared to 92.8 per 1,000 people Department-wide. *Id*. BOC staff also observed unmanned "B" officer posts in housing areas—including dorm areas with capacity for 40-45 people—at least three instances in May 2022 in which people were so seriously injured in an unmanned housing unit that they had to be hospitalized. *Id*. at 1. Oversight documents belie any

---

[6] *Available at* https://www.youtube.com/watch?v=aIkxto4XQWM

**Justice in Every Borough.**

Page 6

City assurances that EMTC staffing improved following the closure of the Otis Bantum Correctional Center (OBCC) in mid-June. On June 28, 2022, for example, there were 24 unstaffed B-Post areas at EMTC.  Memorandum from Board Staff to Amanda Masters (July 5, 2022), at 1 (attached).  Even with the City's assertions that staffing levels had improved, Board staff reported observing "unsanitary and inhumane conditions in two of the main intake's holding pens." *Id*. at 2.  Findings included reports such as the below incident on June 25, 2022:

> "At 11:33PM, a still-unidentified person in custody defecated on himself and soiled his clothes and the floor in the Main Intake in Pen #9, which does not have a toilet or sink. He and others in custody spent the next 12 hours in that pen, at times sleeping on the floor in the feces. The unidentified person remained in his soiled uniform for nearly 12 hours and was able to change at approximately 11:16 AM, only after another person in custody removed the clean uniform that he had on and offered it to that still-unidentified person."

*Id*. at 3. Violent incidents in unmanned housing units continued, some resulting in serious injury and hospitalization.  *Id*. at 2.  In one incident, a person in custody was attacked from behind, unprovoked, then went to the A officer post for help, was attacked again, and then "just left there, in a pool of his own blood, until DOC supervisors arrived about five minutes after the assaults."  Email from Bart Baily to Melissa Cintron Hernandez (July 13, 2022) (attached).

The problems in EMTC are serious and have continued to emerge over a span of months. These unacceptable conditions have led to increased violence and uses of force that run afoul of the requirements to implement the Use of Force Directive, ensure prompt medical attention following UOFs, and implementing the security initiatives required by the Second Remedial Order. *Consent Judgment* §§ IV.1, V.22; *Second Remedial Order* ¶ 1(i)(a); *See also Order: Action Plan* ¶ D(2) & E(3)(a).

**Requests**

The alarming facts described above appear to demonstrate that Defendants are not complying with their obligations under the Consent Judgment and Second Remedial Order. The Action Plan does not clearly set forth how Defendants intend to cure these grave and longstanding issues in facility intake units. Pursuant to Consent Judgment § XX1.2, we therefore request that Defendants respond in writing within 30 days setting forth their position with respect to whether they are in compliance with the sections of the orders noted above and what actions, if any, they propose to take to address the apparent lack of compliance.  We are available to meet and confer.

**Justice in Every Borough.**

Page 7

Thank you for your swift attention to this matter.

          Regards,

| _____/s/_____ | _____/s/_____ |
|---|---|
| THE LEGAL AID SOCIETY | EMERY CELLI BRINCKERHOFF |
| Mary Lynne Werlwas | ABADY WARD & MAAZEL LLP |
| Kayla Simpson | Jonathan S. Abady |
| David Billingsley | Debra L. Greenberger |
| 199 Water Street, 6th Floor | Nairuby L. Beckles |
| New York, New York 10038 | 600 Fifth Avenue, 10th Floor |
| Telephone: (212) 577-3530 | New York, NY  10020 |
| Email: | Telephone: (212) 763-5000 |
| mlwerlwas@legal-aid.org | Email: |
| ksimpson@legal-aid.org | jabady@ecbawm.com |
| dbillingsley@legal-aid.org | dgreenbergerg@ecbawm.com |
|  | nbeckles@ecbawm.com |

_Encl_. Memorandum from Board Staff to Amanda Masters (June 10, 2022)
   Memorandum from Board Staff to Amanda Masters (July 5, 2022)
   Email from Bart Baily to Amanda Masters (June 28, 2022)
   Email from Bart Baily to Melissa Citron Hernandez (July 13, 2022)

**Justice in Every Borough.**