OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

+1 646 895 6567 | afriedberg@tillidgroup.com

June 12, 2023

**VIA ECF**
The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Chief Judge Swain,

In anticipation of the Emergency Status conference on June 13, 2023 and in response to Your Honor's request to keep the Court updated as these matters evolve, the Monitoring Team provides: (1) an update on information regarding Incidents # 1 and # 2 and findings related to the five incidents more globally given that the City has withdrawn its assertions regarding certain privileges and given new public disclosures about these incidents made by the Commissioner and the Mayor of New York City. This information was not included in the City's June 5, 2023 report so the Monitoring Team was not in a position to address these issues in the Monitor's June 8, 2023 Report; (2) an update regarding the Department's recent appointment of a *Nunez* Manager; (3) a slightly revised Proposed Order to address some logistical matters identified by the City and the Department. (attached as Appendix B and C), and (4) a slightly updated proposed agenda for the June 13, 2023 Emergency Conference (attached as Appendix D).

As a procedural matter, it is difficult for the Monitoring Team to keep the Court appropriately apprised of matters when the City and Department take positions and actions that shift day to day and certain information is only provided piecemeal days after the deadline

imposed by the Court. For instance, when preparing the Monitor's June 8, 2023 Report, the

Monitoring Team worked to address the City's assertion that certain information provided about

the five incidents in the City's June 5, 2023 report was privileged. In finalizing the June 8, 2023

Report, the Monitoring Team gave due consideration to City's assertion of privilege pursuant to

Consent Judgment, Section XX, Paragraph 17. Further, the Monitor's June 8, 2023 Report did

not include certain information and facts because the information was not included in the City's

June 5, 2023 report[1], leaving the Monitoring Team unaware at the time the June 8, 2023 Report

was filed. On June 8, 2023, the same day the Monitor's Report was filed, the Mayor of New

York City and the Commissioner disclosed information about Incidents # 1 and # 2, and the

incidents more generally, that had not been previously divulged.[2] Thus the Monitoring Team now

provides additional information given this new information, along with the fact that the City

subsequently withdrew certain assertions of privilege following the public disclosures, to ensure

the Court and Parties possess the most updated account in preparation for the June 13, 2023

Emergency Status Conference. A short summary of the issues raised with respect to Incidents # 1

and # 2 are outlined below and in Appendix A of this letter includes an updated chart of

information related to Incidents # 1 and # 2.

**Updated Information Regarding Incident #1**: In the Commissioner's most recent public

---

[1] On May 31, 2023, the Court ordered the City by June 5, 2023 to provide the Monitoring Team with additional information regarding the five incidents from the Monitor's May 26, 2023 Special Report. (dkt. 535). On June 5, 2023, the City provided a report of these five incidents as well as documentation and information related to these incidents. Additional documentation and information has also been shared with the Monitoring Team by the City and Department since the June 5, 2023.

[2] *See* Dean Moses, EXCLUSIVE| Correction commissioner, Mayor Adams show Rikers Island security videos in effort to counter federal monitor's claims of misdeeds, amNY, https://www.amny.com/police-fire/rikers-island/exclusive-correction-commissioner-mayor-adams-show-rikers-island-security-videos-in-effort-to-counter-federal-monitors-claims-of-misdeeds/.

remarks regarding this incident, he stated that the two uses of force were in response to an attempted escape and assault on staff, opined that the uses of force were necessary, and concluded that no misconduct occurred.[3] Given these statements, which were made despite the fact that multiple investigations are still ongoing, the Monitoring Team is sharing additional facts about this incident in order to provide important context and background.

This incident is replete with a number of security breaches and lapses. Prior to the first use of force incident, the individual was left unattended in the elevator by a staff member while escorting a large group of people in custody. Another staff member entered the elevator and tried to engage in conversation with the individual before the individual rushed out of the elevator and through a gate which staff had left unsecured. The Commissioner labeled this event an "escape attempt,"[4] which is questionable. A large group of staff then attempted to restrain the individual and took him to the ground. There is a question as to whether this entire incident was avoidable given the lack of appropriate supervision that even the most basic correctional protocols require. Following this use of force, the individual was then taken to the search room; he was in rear cuffs and leg restraints. As staff assisted him with his shoes, the individual jerked his knee towards the helmet of an officer who was in full protective gear, which the Commissioner characterized as an "assault on staff."[5] Even if this characterization were accepted, a question remains as to whether taking the individual to the ground was proportional to the extant level of threat, particularly since the individual's hands were restrained which limited not only his ability to assault someone but also to break his fall.

---

[3] *See*, id.

[4] *See*, id.

[5] *See*, id.

Multiple staff reporting failures are evident in these incidents: the second use of force was not reported (and still has not been), the fact that the individual's head made contact with several hard surfaces was not reported and neither was his subsequent transport via EMS. Following the incident, the Department reported that it took immediate corrective action against five staff, including staff discipline for improper escort, failure to secure a gate, failure to report the severity of the injuries, and failure to report the individual's transport via EMS. Given even these initial findings and disciplinary actions by the Department, it is unclear how the Commissioner could reportedly adamantly deny wrongdoing in this case or how the Department could claim that the force was necessary and therefore assert that there was no inappropriate conduct.[6]

**This update reaffirms the need for a complete investigation before any conclusions about the role of staff misconduct in the event should be drawn**. As described in the Monitor's June 8, 2023 Report (dkt. 541 at pgs.44-46), a central concern of this case (and others highlighted in the Monitor's May 26, 2023 Report) is the Commissioner's premature conclusions that not only appear inconsistent with the available objective evidence but also suggest an attempt to excuse or avoid responsibility for a very serious event. The investigation(s) of this event must follow the facts and reach an appropriate conclusion without fear or favor. The chart containing information about this incident, previously provided in Appendix B of the Monitor's May 26, 2023 Report, has been updated and included in Appendix A to this letter.

**Updated Information Regarding Incident #2**: This incident has a number of open questions regarding both the operation of the unit and staff's reporting practices. The City and Department

---

[6] *See*, id.

have repeatedly claimed there were two staff on the floor engaged in supervision, but video shows that one officer was in a cell converted into an office and so was not actively supervising, and the other officer was seated at a table with three individuals in custody playing dominoes. While building rapport in this way is laudable, there is at least a question about whether there was, in fact, adequate overall supervision on the unit. Further, at the time of the incident, a number of cells were unsecured, raising questions about whether proper security procedures were being followed during lock-out.

After the incident occurred, the Commissioner reported that facility leadership was made aware of this incident via telephone, and a medical emergency was called after the individual jumped from the top tier of the housing unit to the floor below. These statements do not alleviate the Monitoring Team's concern regarding staff conduct and failure to report. While there is evidence that a medical emergency was indeed called immediately, summoning medical staff does not absolve security staff from their duty to report this incident to the Central Operations Desk as required by at least two Department policies.[7] The initial COD report is linked to the Incident Reporting System, which compiles information about incidents and then generates the frequency of various types of events. In addition to ensuring accurate data, the COD report also establishes a factual account of events as they unfold. Thus, staffs' failure to make a COD report serves to limit all stakeholders' understanding of the full scope of events that occur in the jails. Further, the Commissioner noted in his public remarks that staff and/or facility leadership were unsure of what happened[8] and thus seemed to suggest that staff and/or facility leadership may not have been required to report the incident. Department policy does not include such an

---

[7] Department Directives 4521R-A (Suicide Prevention and Intervention) and 5000R-A (Reporting Unusual Incidents) both require reporting of such events within at least an hour (and sooner if possible).

[8] *See*, footnote 2.

exception for reporting, in fact it requires reporting in a timely manner. Staff and facility leadership *knew* an individual jumped from the top tier to the floor below, resulting in a medical emergency and thus there was an obligation to report the event. The City's and Department's public refusal to acknowledge the possibility of operational failures and mitigate reporting issues raises significant concerns about whether Department leadership adequately appreciates the importance of the issues the Monitoring Team has raised and their connection to the variety of metrics used to assess progress with the *Nunez* Court Orders.[9] The description of this incident in Appendix A of this letter has been updated to include this additional information.

**Characterization of Five Incidents:** The five incidents cited in the Monitor's May 26, 2023 Report (and discussed in more detail in the Monitor's May 31, 2023 letter and June 8, 2023 Report) characterize a variety of concerns regarding the safety and security of the jails that gave rise to the Consent Judgment and have continued unabated since the original Consent Judgment was entered in 2015. The Mayor's and the Commissioner's public comments suggest that the Monitoring Team's concerns related to communication and lack of transparency regarding these incidents and other matters, including the conditions in the jails, are somehow inappropriate.[10] The Monitoring Team believes that such comments merely reflect a failure to fully to appreciate the Monitoring Team's findings in every report to date which have noted unsafe and dangerous conditions and are not new or tied specifically to these five incidents. The City itself contends that conditions are unsafe as it has filed Emergency Executive Orders every five days since

---

[9] The *Nunez* Court Orders, include, but are not limited to the Consent Judgment (dkt.249), the First Remedial Order (dkt. 350), the Second Remedial Order (dkt. 398), the Third Remedial Order (dkt. 424), the Action Plan (dkt. 465) and any other relevant Orders issued by this court in the matter prior to the issuance of this Order and any Order in the future.

[10] *See*, footnote 2.

September 21, 2021.[11] To suggest that the Department's responses to these five incidents reflect "great discipline,", "great patience" and professionalism fails[12] to appreciate the objective evidence and even in some cases, the Department's own findings of wrongdoing.

**Department's Appointment of *Nunez* Manager**: On Friday, June 9, 2023 at the end of the day, the City and Department advised the Monitoring Team that the Commissioner has appointed a *Nunez* Manager who will begin working at the Department on Monday, June 12, 2023. The full contours of this role are not yet known, including but not limited to, to whom the *Nunez* Manager will report, the scope of their responsibilities, and the resources dedicated to the *Nunez* Manager. The Monitoring Team certainly welcomes this appointment as the role has been and is sorely needed and the individual who was appointed is highly qualified. This appointment, however, does not alter the Monitoring Team's recommendation that this role should be subject to a proposed Court Order originally included in Appendix C of the Monitor's June 8, 2023 Report and an updated copy attached to this letter. The City's and Department's efforts to achieve compliance with the *Nunez* Court Orders cannot be sustained in the current manner. In particular, for months, the Monitoring Team has attempted to work collaboratively with the Department on the appointment of a *Nunez* Manager, but its recommendation was essentially ignored (*see* June 8, 2023 Report, dkt. 541 at pg. 31 to 32). The Department seems to have finally accepted the recommendation but only after multiple urgent Monitor's Reports were filed with the Court and an Emergency Status Hearing was scheduled. The Monitoring Team also considers a Court Order to be necessary to ensure the stability and integrity of this role given the Department's

---

[11] *See*, e.g. Mayor's Executive Order 429 signed on June 9, 2023 at https://www.nyc.gov/office-of-the-mayor/news/429-003/emergency-executive-order-429.

[12] *See*, footnote 2.

shifting position on this issue, as outlined in the Monitor's June 8, 2023 Report, and to ensure that the Department's appointment of this individual is not immediately altered following the Court conference. The Monitoring Team, therefore, continues to strongly recommend that the Court adopt the Proposed Order in Appendix B of this letter (which is a slightly modified version of proposed order attached to the Monitor's June 8, 2023 Report (dkt. 541, Appx. C) discussed below).

**Immediate Next Steps**

The Monitoring Team proposed a court order in its June 8, 2023 Report to *immediately* ensure that the Monitor can fulfill his responsibilities under the *Nunez* Court Orders. The Proposed Order has been modified slightly to address a few logistical matters identified by the City—the revised Proposed Order is provided in Appendix B to this letter and a redline identifying the changes has been attached as Appendix C to this letter. In light of the foregoing, the Monitor respectfully renews its request that the Court impose the Proposed Order, along with ***any other such relief*** the Court deems just and proper to ensure that the City and Department abide by the *Nunez* Courts Orders, to ensure the Monitor may fulfill his responsibilities as required under the *Nunez* Court Orders, and to ensure that the Court receives accurate, timely, and reliable information.  The Monitoring Team has also provided a slightly revised proposed agenda for the June 13, 2023 Emergency Conference as Appendix D.

We appreciate the Court's attention to this matter.

Sincerely,

s/ Steve J. Martin
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*

# APPENDIX A: UPDATE ON INCIDENTS #1 AND #2 FROM MAY 26, 2023 SPECIAL REPORT

The following two tables include an update on the summary of two of the five incidents first detailed in the Monitor's May 26, 2023 Special Report and subsequently reported on in the Monitor's June 8, 2023 Report.

| Incident #1 |
|---|
| After exiting an elevator unauthorized, an individual was taken to the ground and placed in restraints when the probe team arrived. An initial assessment of the incident found it occurred as a result of staff failing to properly escort a number of incarcerated individuals to the Law Library. When staff were escorting multiple individuals out of an elevator, the staff member failed to realize that one individual remained on the elevator. This individual walked down the corridor and attempted to go through an open gate which was not properly secured. The individual tried to open a locked corridor door, but ceased the action as a large number of staff arrived. He was then taken to the floor and placed in restraints. After the first use of force, the individual was escorted to the Main Intake. After being transported to Intake on a gurney, the individual walked to the search area. While in the Search area, a second use of force occurred. At one point, the individual stood, while rear-cuffed and shackled, as staff attempted to assist him with putting on his shoes. The individual jerked his leg toward the staff helping him with his shoes and he was taken to the floor by two staff. During the take-down, the individual hit his head on a bench, a plastic container, a partition and the floor. The individual's body was limp as the probe team lifted him onto the gurney. The second use of force and the fact the individual hit his head was not originally reported to the Tour Commander. Further, the Commissioner's Office received delayed notification of the event, and at no time was it stated that the PIC was sent out via EMS due to a head injury or that he could not feel his body. The Department reports that corrective action has already been taken with respect to five staff enumerated below. |

| Date of Incident | May 11, 2023 |
|---|---|
| **Status of the individual** | The individual underwent three surgeries and is now paralyzed from the neck down. |
| **Status of investigation** | The ID Division opened an investigation into the use of force, but that investigation is now on hold as the Department of Investigation is conducting an investigation. The Board of Corrections is also conducting a review of this incident. |
| **Corrective action imposed** | The City and Department report that corrective action has been taken with respect to at least five staff members as a result of various misconduct during their involvement in the incident.<br>• An officer who initially escorted other individuals from the elevator and did not realize that the individual involved in this incident stayed behind received a 10-day suspension. |

|  | <ul><li>Two officers who failed to secure a door received Command Disciplines. As of May 25, 2023, these command disciplines were pending hearing officer review to determine the final penalty.</li><li>A Captain received a four day CD for not reporting to the Tour Commander the second Use of Force in which the individual sustained his injuries.</li><li>An ADW received a corrective interview for a failure to report to the Commissioner's office the EMS activation and serious injuries.</li></ul> |
|---|---|
| **Reporting of incident within Department** | Initial incident was reported as required, but Staff failed to report the second use of force, the individual's injury, and transport to the hospital. |

| Incident #2 | |
|---|---|
| A person in custody jumped from a GRVC housing unit's upper tier onto the floor below, after leaving a suicide note. Despite reports from the City and the Department that two staff were actively supervising on the floor, one staff member was on the second tier in an office with no line of sight into the housing unit and was not actively supervising the unit at the time of the incident. A medical emergency was called after the individual fell to the floor, but staff and leadership did not report the incident to the Central Operations Desk until 33 hours after the incident. The individual was subsequently taken to the hospital and placed on life support. He was removed from life support and pronounced dead on May 16, 2023. | |
| **Date of Incident** | May 14, 2023 |
| **Status of the individual** | The individual is deceased. |
| **Status of reviews/ investigation** | <ul><li>The Department and Correctional Health Services (CHS) have held two Joint Action Reviews (JAR) related to this incident.</li><li>The Special Investigation Unit is conducting an investigation. The Department reports that the Department of Investigation and Attorney General's office are also reviewing the matter. The Board of Corrections is also conducting a review of this incident.</li></ul> |
| **Corrective action imposed** | <ul><li>The Department reported it is considering the feasibility of installing a preventative barrier to be affixed to help prevent similar incidents.</li><li>No corrective action for staff reported.</li></ul> |
| **Internal staff reporting** | Staff did not report this self-harm incident until 33 hours after it occurred and was reported at the same time of his death. |

# APPENDIX B: UPDATED PROPOSED ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MARK NUNEZ, et al.,                                          :
                                                             :
 Plaintiffs,                                                 :
                                                             :
 - against -                                                 :
                                                             :
CITY OF NEW YORK, et al.,                                    :
                                                             :
 Defendants.                                                 :
                                                             :   **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
                    Plaintiff-Intervenor,                    :
                                                             :
 - against -                                                 :
                                                             :
CITY OF NEW YORK and NEW YORK CITY                           :
DEPARTMENT OF CORRECTION,                                    :
                                                             :
                    Defendants.                              :
------------------------------------------------------------ X

**[PROPOSED] ORDER**

## I.     <u>Monitor's Access to Information</u>

1. <u>Communicate Obligations Under the *Nunez* Court Orders[13] to All Department Leadership and Staff</u>: Within 7 days of this Order:

   a. All Department leadership and staff must be advised that they must engage with the Monitor and must be candid, transparent, forthright, and accurate in their communications with the Monitor. This communication must be approved by the Monitor prior to its dissemination. Within 14 days of this Order, the Department must provide the Monitor with verification that this communication was provided to all Department leadership and staff.

2. <u>Notification of Deaths In-Custody and Compassionate Releases in 2023</u>: Within 10 days of this Order, the Department shall advise the Monitor of all available information regarding individuals who have: (a) died in custody or (b) were compassionately released between January 1, 2023, and the date of this Order. At a minimum, to the extent it has not already been provided, the Department shall advise the Monitor of the name of each individual, the date and time of death or compassionate release, any report to the Central Operations Desk regarding the either the death or compassionate release, the cause and circumstances surrounding the event, and current investigative findings. Any additional information the Monitor may request about these incidents, to the extent available, shall be provided by the Department to the Monitor within 5 business days of the request.

---

[13] The *Nunez* Court Orders, include, but are not limited to the Consent Judgment (dkt.249), the First Remedial Order (dkt. 350), the Second Remedial Order (dkt. 398), the Third Remedial Order (dkt. 424), the Action Plan (dkt. 465) and any other relevant Orders issued by this court in the matter prior to the issuance of this Order and any Order in the future.

3.  <u>Immediate Notification to the Monitor of Serious Events</u>: As of the date of this Order, the Department must advise the Monitor of any individual who: (a) dies in custody, (b) sustains a serious injury or serious condition that requires admission to a hospital, or (c) is compassionately released. An initial report of the death in custody or compassionate release must occur as soon as practical, but no later than 24 hours after it occurred. An initial report of an individual who has been hospitalized due to a serious injury or serious condition shall be made as soon as practicable but no later than 24 hours after the Department is informed by the Correctional Health Service or the treating hospital of such serious injury or serious condition.  The Department shall provide the Monitor with all available information at the time of the report including any report to the Central Operations Desk regarding the event; the circumstances (to extent known) that resulted in or preceded the death, hospital admission, or compassionate release; any immediate corrective action taken and any initial investigative findings. The Department shall timely provide the Monitor with any additional information regarding the circumstances and causes of the incident as it becomes available. Any video, or other information, relating to such incidents shall be made available to the Monitor upon request.

4.  <u>Produce Timely, Accurate and Reliable Information to the Monitor</u>: The Department shall promptly, and no later than within 10 business days of a request, respond to any request by the Monitor for information that the Monitor requests to fulfill his responsibilities[14] under the *Nunez* Court Orders. In that response the Department shall

---

[14] The Monitor's responsibilities are any and all of those requirements enumerated in the *Nunez* Court Orders, including, but not limited to, his responsibility to evaluate and report to the Court on the

provide the Monitor with any available information, and if any information is not yet available the Department shall report its efforts to gather the requested information, the status of those efforts, and provide the information no later than 30 days after the request was made. To the extent the Department has a good faith basis to claim the requested information cannot be provided within 30 days, it shall seek approval from the Monitor for an extension, no later than 21 business days after the request was made, to provide the information at a reasonable date certain.  In the event that the Monitor determines that he needs the requested information to be provided on a more expedited timeline in order to fulfill his responsibilities under the *Nunez* Court Orders, the Department shall make all reasonable efforts to provide the information on an expedited timeframe. The Department shall take all reasonable steps to ensure that the information provided to the Monitor is complete, responsive, and accurate, based on the information available at the time of the response.

5. <u>Engage in Proactive Communications with the Monitor Related to the *Nunez* Court Orders</u>: The Department shall proactively consult with the Monitor in advance of promulgating any new policies or procedures that relate to compliance with the *Nunez* Court Orders. The Department shall provide the Monitor reasonable notice and information of any such new policy and practice, at least three weeks prior to planned implementation, in order to afford the Monitor an opportunity to provide meaningful

---

Department's efforts to implement any requirements of the *Nunez* Court Orders, assess the Department's compliance with the requirements of the *Nunez* Court Orders, as well as his responsibility to consult on the development of policies, procedures, and initiatives and to approve such policies, procedures and initiatives as required by the *Nunez* Court Orders.

feedback and for the Department to consider and reasonably incorporate any feedback
from the Monitor prior to implementing any new policy and practice.

6. <u>Provide the Monitor with Unfettered Access to Department Leadership and Staff</u>: The
Monitor shall have unencumbered, direct access to communicate with and seek
information from all Department leadership and staff to fulfill his responsibilities
under the *Nunez* Court Orders. The Monitor shall be permitted to have confidential
communications with Department leadership and staff outside the presence of other
Department personnel.

7. <u>Appoint *Nunez* Manager</u>: Within 30 business days of the Order, the Department shall
designate a senior official to serve as the Department's internal *Nunez* Manager. The
*Nunez* Manager's responsibilities shall be limited to the areas covered by the *Nunez*
Court Orders. The *Nunez* Manager shall serve as a point of contact for the Monitor,
ensure that the Monitor timely receives the information he needs to fulfill his
responsibilities under the *Nunez* Court Orders, coordinate the Department's responses
to requests from the Monitor, and ensure that any recommendations or feedback
provided by the Monitor concerning requirements or areas covered by the *Nunez*
Court Orders are timely conveyed to the appropriate and relevant Department
personnel. Selection of the *Nunez* Manager, and any subsequent *Nunez* Manager in
the event the individual selected leaves or is removed from the position, shall be
subject to the approval of the Monitor.

   a. The *Nunez* Manager shall have unfettered access to all Department records
   and information necessary to perform these responsibilities, and the City and

Department shall provide the *Nunez* Manager with sufficient resources to allow them to perform these responsibilities.

8. <u>Notification to the Court</u>: The Monitor shall promptly notify the Court if he determines that the City or the Department are not complying with the requirements of Paragraphs I.1 – I.7 of this Order, or is otherwise not engaging with the Monitor or his team in a good faith manner.

II.   **Department-Wide Remedial Steps to Address the Five Incidents Discussed in the May 26, 2023 Special Report**

The Department shall produce a concrete and specific plan of action related to its stated intention to (1) promulgate a policy that people in custody should not remain unclothed for an extended period absent exigent circumstances, (2) consider installing a preventive barrier in the housing unit where the individual jumped from the top tier, (3) consider revising procedures to require that an incarcerated individual who is involved in a violent encounter should be seen at the clinic on an "urgent basis" under certain circumstances that are not currently specified in its Directive and (4)consider any subsequent or additional remedial measures that alter Department policy or procedure to address the issues identified during its review of the five incidents described in the Monitor's May 26, 2023 Report. This plan of action must include reasonable deadlines by which the Department will complete each task and identify the specific Department leaders and staff responsible for implementing these initiatives. The plan of action must be produced to the Monitor no later than June 27, 2023. The Monitor shall report to the Court on the sufficiency of the plan of action in its July 10, 2023 Report and identify whether additional remedial measures are necessary.

**III.**     **Prioritize and Focus on Foundational Requirements of *Nunez* Court Order**

The Action Plan, § G, ¶ 5(b) shall be modified to include the language in bold below:

*Modification to § G, ¶5(b) of the Action Plan - Compliance Assessment*: Given the Monitor's findings in the Monitor's March 16, 2022 Special Report, (pages 63 to 65), **the Monitor's October 27, 2022 Special Report, the Monitor's February 3, 2023 Special Report, the Monitor's April 3, 2023 Report, the Monitor's April 24, 2023 Status Report, the May 26, 2023 Special Report, and the Monitor's June 8, 2023 Special Report,** the Monitor's assignment of compliance ratings for each provision of the Consent Judgment (required by § XX, ¶ 18 of the Consent Judgment) and the First Remedial Order are suspended for the time period covering January 1, 2022 to **June 30, 2023**, except for those provisions incorporated into this Order and the provisions listed below (collectively "select group of provisions").

   i.  The Monitor shall assign compliance ratings, required by § XX, ¶ 18 of the Consent Judgment, for the following provisions from the Consent Judgment and the First Remedial Order:

      1.  Consent Judgment § IV. (Use of Force Policy), ¶ 1;

      2.  Consent Judgment § V. (Use of Force Reporting & Tracking), ¶¶ 2 & 22;

      3.  Consent Judgment § VII. (Use of Force Investigations), ¶¶ 1 & 9(a);

      4.  Consent Judgment § VIII. (Staff Discipline and Accountability), ¶¶ 1, 3(c) & 4;

      5.  Consent Judgment § X. (Risk Management) ¶ 1;

      6.  Consent Judgment § XII. (Screening and Assignment of Staff), ¶¶ 1 to 3;

      7.  Consent Judgment § XV. (Safety and Supervision of Inmates Under the Age of 19), ¶ 1, 12 and 17;

8. First Remedial Order § A. (Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force), ¶¶ 1 to 4, & 6; and

9. First Remedial Order § C. (Timely, Appropriate, and Meaningful Staff Accountability), ¶¶ 1, 2, 4 & 5.

SO ORDERED this _____ day of _____, 2023

_____
LAURA TAYLOR SWAIN
Chief United States District Judge

# APPENDIX C: REDLINE OF UPDATED PROPOSED ORDER IDENTIFYING CHANGES FROM JUNE 8, 2023 VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MARK NUNEZ, et al.,                                          :
                                                             :
  Plaintiffs,                                                :
                                                             :
  - against -                                                :
                                                             :
CITY OF NEW YORK, et al.,                                    :
                                                             :
  Defendants.                                                :
                                                             :  **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
                    Plaintiff-Intervenor,                    :
                                                             :
  - against -                                                :
                                                             :
CITY OF NEW YORK and NEW YORK CITY                           :
DEPARTMENT OF CORRECTION,                                    :
                                                             :
                    Defendants.                              :
------------------------------------------------------------ X

**[PROPOSED] ORDER**

**IV.** <u>**Monitor's Access to Information**</u>

9. <u>Communicate Obligations Under the *Nunez* Court Orders[15] to All Department</u>
   <u>Leadership and Staff</u>: Within 7 days of this Order:

   a. All Department leadership and staff must be advised that they must engage
      with the Monitor and must be candid, transparent, forthright, and accurate in
      their communications with the Monitor. This communication must be
      approved by the Monitor prior to its dissemination. Within 14 days of this
      Order, the Department must provide the Monitor with verification that this
      communication was provided to all Department leadership and staff.

10. <u>Notification of Deaths In-Custody and Compassionate Releases in 2023</u>: Within 10
    days of this Order, the Department shall advise the Monitor of all ~~relevant~~available
    information regarding individuals who have: (a) died in custody or (b) were
    compassionately released between January 1, 2023, and the date of this Order. At a
    minimum, to the extent it has not already been provided, the Department shall advise
    the Monitor of the name of each individual, the date and time of death or
    compassionate release, any report to the Central Operations Desk regarding the either
    the death or compassionate release, the cause and circumstances surrounding the
    event, and current investigative findings. Any additional information the Monitor may
    request about these incidents, to the extent available, shall be provided by the
    Department to the Monitor within 5 business days of the request.

---

[15] The *Nunez* Court Orders, include, but are not limited to the Consent Judgment (dkt.249), the First
Remedial Order (dkt. 350), the Second Remedial Order (dkt. 398), the Third Remedial Order (dkt. 424),
the Action Plan (dkt. 465) and any other relevant Orders issued by this court in the matter prior to the
issuance of this Order and any Order in the future.

11. <u>Immediate Notification to the Monitor of Serious Events</u>: As of the date of this Order, the Department must advise the Monitor of any individual who: (a) dies in custody, (b) sustains a serious injury or serious condition that requires admission to a hospital, or (c) is compassionately released. An initial report of the death in custody~~, serious injury or serious condition that requires admission to a hospital;~~ or compassionate release must occur as soon as practical, but no later than 24 hours after it occurred. <u>An initial report of an individual who has been hospitalized due to a serious injury or serious condition shall be made as soon as practicable but no later than 24 hours after the Department is informed by the Correctional Health Service or the treating hospital of such serious injury or serious condition.</u> The Department shall provide the Monitor with all available information at the time <u>of the report</u> including any report to the Central Operations Desk regarding the event; the circumstances (to extent known) that resulted in or preceded the death, hospital admission, or compassionate release; any immediate corrective action taken and any initial investigative findings. The Department shall timely provide the Monitor with any additional information regarding the circumstances and causes of the incident as it becomes available. Any video, or other information, relating to such incidents shall be made available to the Monitor upon request.

12. <u>Produce Timely, Accurate and Reliable Information to the Monitor</u>: The Department shall promptly, and no later than within 10 business days of a request, ~~provide~~<u>respond to any request by</u> the Monitor ~~with all~~<u>for</u> information that the Monitor requests to

fulfill his responsibilities[16] under the *Nunez* Court Orders. In that response the Department shall provide the Monitor with any available information, and if any information is not yet available the Department shall report its efforts to gather the requested information, the status of those efforts, and provide the information no later than 30 days after the request was made. To the extent the Department has a good faith basis to claim the requested information cannot be provided within 30 days, it shall seek approval from the Monitor for an extension, no later than 21 business days after the request was made, to provide the information at a reasonable date certain.  In the event that the Monitor determines that he needs the requested information to be provided on a more expedited timeline in order to fulfill his responsibilities under the *Nunez* Court Orders, the Department shall make all reasonable efforts to provide the information on an expedited timeframe. The Department shall take all ~~necessary~~reasonable steps to ensure that the information provided to the Monitor is complete, responsive, and accurate, based on the information available at the time of the response.

13. Engage in Proactive Communications with the Monitor Related to the *Nunez* Court Orders: The Department shall proactively consult with the Monitor in advance of promulgating any new policies or procedures that relate to compliance with the *Nunez* Court Orders. The Department shall provide the Monitor reasonable notice and

---

[16] The Monitor's responsibilities are any and all of those requirements enumerated in the *Nunez* Court Orders, including, but not limited to, his responsibility to evaluate and report to the Court on the Department's efforts to implement any requirements of the *Nunez* Court Orders, assess the Department's compliance with the requirements of the *Nunez* Court Orders, as well as his responsibility to consult on the development of policies, procedures, and initiatives and to approve such policies, procedures and initiatives as required by the *Nunez* Court Orders.

information of any such new policy and practice, at least ~~four~~three weeks prior to planned implementation, in order to afford the Monitor an opportunity to provide meaningful feedback and for the Department to consider and reasonably incorporate any feedback from the Monitor prior to implementing any new policy and practice.

14. <u>Provide the Monitor with Unfettered Access to Department Leadership and Staff</u>: The Monitor shall have unencumbered, direct access to communicate with and seek information from all Department leadership and staff to fulfill his responsibilities under the *Nunez* Court Orders. The Monitor shall be permitted to have confidential communications with Department leadership and staff outside the presence of other Department personnel.

15. <u>Appoint *Nunez* Manager</u>: Within 30 business days of the Order, the Department shall designate a senior official to serve as the Department's internal *Nunez* Manager. The *Nunez* Manager's responsibilities shall be limited to the areas covered by the *Nunez* Court Orders. The *Nunez* Manager shall serve as a point of contact for the Monitor, ensure that the Monitor timely receives the information he needs to fulfill his responsibilities under the *Nunez* Court Orders, coordinate the Department's responses to requests from the Monitor, and ensure that any recommendations or feedback provided by the Monitor concerning requirements or areas covered by the *Nunez* Court Orders are timely conveyed to the appropriate and relevant Department personnel. Selection of the *Nunez* Manager, and any subsequent *Nunez* Manager in the event the individual selected leaves or is removed from the position, shall be subject to the approval of the Monitor.

a.   The *Nunez* Manager shall have unfettered access to all Department records and information necessary to perform these responsibilities, and the City and Department shall provide the *Nunez* Manager with sufficient resources to allow them to perform these responsibilities.

16. <u>Notification to the Court</u>: The Monitor shall promptly notify the Court if he determines that the City or the Department are not complying with the requirements of Paragraphs I.1 – I.7 of this Order, or is otherwise not engaging with the Monitor or his team in a good faith manner.

## V.   **Department-Wide Remedial Steps to Address the Five Incidents Discussed in the May 26, 2023 Special Report**

The Department shall produce a concrete and specific plan of action related to its stated intention to (1) promulgate a policy that people in custody should not remain unclothed for an extended period absent exigent circumstances, (2) consider installing a preventive barrier in the housing unit where the individual jumped from the top tier, (3) consider revising procedures to require that an incarcerated individual who is involved in a violent encounter should be seen at the clinic on an "urgent basis" under certain circumstances that are not currently specified in its Directive and (4)consider any subsequent or additional remedial measures that alter Department policy or procedure to address the issues identified during its review of the five incidents described in the Monitor's May 26, 2023 Report. This plan of action must include reasonable deadlines by which the Department will complete each task and identify the specific Department leaders and staff responsible for implementing these initiatives. The plan of action must be produced to the Monitor no later than June 27, 2023. The Monitor shall report to the Court on the sufficiency of the plan of action in its July 10, 2023 Report and identify whether additional

xxviii

remedial measures are necessary.

**VI.     Prioritize and Focus on Foundational Requirements of *Nunez* Court Order**

The Action Plan, § G, ¶ 5(b) shall be modified to include the language in bold below:

*Modification to § G, ¶5(b) of the Action Plan - Compliance Assessment*: Given the Monitor's findings in the Monitor's March 16, 2022 Special Report, (pages 63 to 65), **the Monitor's October 27, 2022 Special Report, the Monitor's February 3, 2023 Special Report, the Monitor's April 3, 2023 Report, the Monitor's April 24, 2023 Status Report, the May 26, 2023 Special Report, and the Monitor's June 8, 2023 Special Report,** the Monitor's assignment of compliance ratings for each provision of the Consent Judgment (required by § XX, ¶ 18 of the Consent Judgment) and the First Remedial Order are suspended for the time period covering January 1, 2022 to **June 30, 2023**, except for those provisions incorporated into this Order and the provisions listed below (collectively "select group of provisions").

ii.   The Monitor shall assign compliance ratings, required by § XX, ¶ 18 of the Consent Judgment, for the following provisions from the Consent Judgment and the First Remedial Order:

1.   Consent Judgment § IV. (Use of Force Policy), ¶ 1;

2.   Consent Judgment § V. (Use of Force Reporting & Tracking), ¶¶ 2 & 22;

3.   Consent Judgment § VII. (Use of Force Investigations), ¶¶ 1 & 9(a);

4.   Consent Judgment § VIII. (Staff Discipline and Accountability), ¶¶ 1, 3(c) & 4;

5.   Consent Judgment § X. (Risk Management) ¶ 1;

6.   Consent Judgment § XII. (Screening and Assignment of Staff), ¶¶ 1 to 3;

7.   Consent Judgment § XV. (Safety and Supervision of Inmates Under the Age of 19), ¶ 1, 12 and 17;

8. First Remedial Order § A. (Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force), ¶¶ 1 to 4, & 6; and

9. First Remedial Order § C. (Timely, Appropriate, and Meaningful Staff Accountability), ¶¶ 1, 2, 4 & 5.

SO ORDERED this _____ day of _____, 2023

_____
LAURA TAYLOR SWAIN
Chief United States District Judge

xxx

# APPENDIX D:
# PROPOSED AGENDA FOR
# JUNE 13, 2023 COURT CONFERENCE

**Proposed Agenda for Court Conference**
*June 13, 2023 – 9:30 a.m.*

1. Updates regarding the incidents described in the Monitor's May 26, 2023 Special Report, and status of related disclosures, investigations, and remedial steps (10 minutes)

    o   Introduction of matter by Monitor

2. Defendants Compliance with disclosure and communication requirements of the Consent Decree, Remedial Orders and Action Plan (25 minutes)

    o   Introduction of matter by Deputy Monitor

    o   Plaintiff Class Counsel

    o   Southern District of New York

    o   City of New York

3. UOF, self-harm, and mortality trends 2023 compared with 2021 and 2016 (20 minutes)

    o   Introduction of matter by Monitor

    o   Plaintiff Class Counsel

    o   Southern District of New York

    o   City of New York

4. Next steps (35 minutes)

    o   Introduction of matter by Monitor and Deputy Monitor

    o   Plaintiff Class Counsel

    o   Southern District of New York

    o   City of New York