

**T**HE **C**ITY OF **N**EW **Y**ORK

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**John Schemitsch**
**Senior Counsel**
Desk: 212-356-3539
jschemit@law.nyc.gov

September 11, 2023

**BY ECF**
Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Nunez, et al. v. City of New York et al.,* 11-cv-5845 (LTS)

Dear Chief Judge Swain:

The parties write jointly to provide the Court with a status update and their respective positions on Plaintiffs' and SDNY's motion for contempt and outstanding discovery issues, pursuant to the Court's August 10, 2023 Order.

**The position of the Plaintiff Class and the United States (collectively, "Plaintiffs") is as follows:**

Defendants' Non-Compliance With Court Orders and Subsequent Relief:

On August 23, 2023, Defendants responded to Plaintiffs' notice of non-compliance sent on July 24, 2023. Defendants disputed that they were non-compliant with the provisions of the Consent Judgment and other court orders that we identified in our notice. Plaintiffs continued to engage in good faith negotiations as required by Para XXI.2 of the Consent Judgment by meeting on September 7 and September 8, 2023, but have not been able to resolve the dispute regarding non-compliance. Accordingly, Plaintiffs intend to proceed with the plan to file a motion for contempt and the appointment of a receiver in accordance with the schedule set by the Court.

Responses to Plaintiffs' Requests for Information:

During the meet and confer process in July 2023, and through written requests dated July 13, 2023, July 28, 2023, and August 31, 2023, Plaintiffs have asked the Monitor to provide certain categories of information and documents related to Defendants' compliance with the Consent

Judgment and other court orders. Pursuant Para XIX.2 of the Consent Judgment, such requests must be directed initially to the Monitor as opposed to the Defendants. The Monitoring Team promptly provided documents and information in response to many of these requests, and stated that it will provide additional responses on a rolling basis shortly.

However, with respect to several of the requests, the Monitoring Team advised that it has responsive documents and information but does not believe it can provide the requested documents and information until Defendants provide their position on: (i) whether they assert that the requested documents are privileged and thus should be not be produced to Plaintiffs; and (ii) whether the requested documents should be designated as "Confidential Materials" under the Amended Protective Order (and thus be subject to the limitations set forth in that Order). To date, Defendants have not provided their position on either of these two issues, and were unprepared to address these issues during the meet and confer sessions held last week.

Defendants have agreed to provide their position on any confidentiality or privilege assertions as to each request by September 15, 2023. If the parties do not resolve any disagreements shortly thereafter, the parties have agreed to present the disputes to the Court by September 22, 2023.

Nunez Compliance Unit Audit Findings:

In July 2023, Plaintiffs requested records related to the security audits conducted by the Nunez Compliance Unit ("NCU") and that are referenced on pages 31-32 of the Monitor's July 10, 2023 Report. NCU began conducting these audits of housing areas in December 2021 to assess whether staff were conducting required tours of housing areas and whether there were any apparent operational or security failures that could potentially lead to additional violence (*e.g.*, door security issues, congregation in vestibules, and staff failing to remain on post). On August 1, 2023, the Monitor provided the "overall findings" of each audit, which consisted of a very brief summary of each audit's findings. Defendants designated each of these summaries "confidential." The underlying records relating to each audit, which include still images and more specific descriptions of the basis for the overall findings, were not disclosed because Defendants claimed that the law enforcement privilege applied.

*Confidentiality Dispute*

The Plaintiff Class objected to the City's confidentiality designations for the "overall findings" of the NCU audits in writing on August 2, 2023, and asked for the basis for marking these documents confidential. The City first claimed that the confidentiality designation was based on Paragraphs 2(d)-(f) of the Amended Protective Order. When Plaintiffs pointed out that the "overall findings" documents did not contain any of the information covered by Paragraphs (d)-(f), Defendants revised their position and claimed that the "overall findings" were confidential pursuant to Paragraph 2(h) of the Amended Protective Order, which covers various documents "setting forth DOC policy and procedures, to the extent that these documents provide specific operational guidance to DOC staff that, if disclosed, would jeopardize the safety and security of DOC staff or prisoners." Counsel for the Plaintiff Class continued to object because the "overall findings" do not contain "specific operational guidance," nor could their disclosure pose a threat

2

to safety and security of DOC staff or people in custody. The parties met and conferred in good faith on the issue of whether or not this confidentiality designation was justified, but could not reach agreement within 30 days. Under paragraph 5 of the Amended Protective Order, Defendants must move for an order approving their confidentiality designation by October 1, 2023.

*Privilege Dispute*

As noted above, the underlying records relating to the requested NCU security audits (beyond the "overall findings" summaries) were not provided to Plaintiffs' counsel because Defendants asserted law enforcement privilege over those documents. On August 2, 2023, counsel for the Plaintiff Class requested a privilege log identifying the materials as to which Defendants asserted a privilege, and the basis for the privilege. Defendants provided neither, and instead stated that they were amenable to providing the records relating to the NCU audits if Plaintiff Class counsel would agree to designate them as "Attorneys' Eyes Only." Plaintiff Class counsel objected because no such designation exists under the Amended Protective Order and additional protections beyond those the parties already agreed to under the Amended Protective Order are not necessary. To date, Defendants have not provided any basis for their initial assertion of law enforcement privilege, and yet the remaining documents have still not been produced. The parties met and conferred in good faith on this issue, but could not reach resolution. This issue will be presented to the court along with any other privilege disputes on September 22, 2023.

Confidentiality of Records Related to May 17, 2023 Incident:

The Monitor's May 26, 2023 report described five disturbing incidents, including one in which an individual who had been recently assaulted was left alone naked in an intake pen for three hours on May 17, 2023. Dkt. 533, at 6 ("Incident 3.") On June 6, 2023, Defendants asserted that release of documents about these incidents would implicate the law enforcement privilege.[1] The Plaintiff Class has repeatedly asked Defendants to provide a basis for their assertion that this individual's treatment is the subject of on-going law enforcement investigation. In a meet and confer on August 17, 2023, Defendants agreed to provide an affidavit to that effect, but it has not done so. Defendants have informed us that they will provide their affidavit by September 15, 2023. Counsel for the Plaintiff Class will review the material submitted, and submit the dispute to the Court on September 22 if it is not resolved.

---

[1] While Defendants had initially asserted that the "law enforcement privilege" prohibited disclosure of further information about all the incidents in the Monitor's May Report, they withdrew that assertion for four of the incidents upon revelations that the City had provided some of those materials to the press. Defendants maintain the assertion of privilege with respect to the incident they did not reveal to the press, Incident 3.

**Defendants' Positions:**

Contempt Motion:

On July 24, 2023, Plaintiffs provided to Defendants, the City of New York ("City") and Department of Correction ("DOC" or "the Department"), a letter alleging that Defendants are not in compliance with twenty-five provisions of the Consent Judgment and ensuing Court orders. Following a hearing held on August 10, 2023, the Court issued a briefing schedule on Plaintiffs' anticipated motion for contempt of these provisions, which will seek the remedy of the Department being placed into Receivership. Pursuant to the Consent Judgement, Section XXI, ¶ 2, on August 23, 2023, Defendants responded to Plaintiffs' non-compliance letter in a lengthy submission, which disputed Plaintiffs' contentions, detailed Defendants' diligent efforts to achieve compliance with the cited provisions, and highlighted the actions and plans of the Department to remain in compliance. At a meet and confer following Defendants' letter, the parties reached no resolution, because Plaintiffs and SDNY asserted that Defendants' letter did not demonstrate to them that motion practice on some or all of those items was not warranted.

Defendants contend that they are not in contempt of these provisions. A civil contempt order is "warranted only if the 'moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict.'" Mister Softee, Inc. v. Tsirkos, No. 14-CV-1975-LTS-RLE, 2014 WL 2971106, at *3 (S.D.N.Y. July 2, 2014) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)). The movant seeking a contempt of court order bears the burden of demonstrating that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Id. (quoting United States v. N.Y.C. Dist. Council of N.Y.C., 229 F. App'x 14, 18 (2d Cir. 2007)). The various requirements of the Consent Judgment and ensuing orders are interconnected, and the Department has worked diligently to set policies and persons in place to enact compliance. The Department continues to effectuate meaningful improvements in the various areas in which Plaintiffs allege Defendants are in contempt. For example: 1) the Department has infused new leadership in various roles from outside of the Department with a depth of experience in correctional institutions, including a new Deputy Commissioner for Facility Administration and Management with 20 years of experience; a Deputy Commissioner of Health Affairs who has worked on health care issues for 36 years; and a Deputy Commissioner of Training who has 25 years of experience; 2) slashings and stabbings declined 31% during the six-month period of January 1, 2023 to June 30, 2023 as compared to the period from July 1, 2021 to December 31, 2021 (with 327 events in the 2021 period and only 164 in the 2023 period); 3) correspondingly, serious injuries to incarcerated individuals have declined 39% comparing the two previously referenced periods; 4) since early 2022, DOC has followed best correctional practices by not allowing any one gang to control a housing unit; 5) the Department has significantly reduced the staff outages from 2021 -in January 2022, the average number of officers out sick was 2,096, yet in June 2023, this number was 449, which is a 78 percent reduction from January 2022 (on average, 7.4 percent of staff are now out sick on a day as compared to 28.7 percent in January 2022); 6) the Department has created two Rapid Review teams in the Investigation Division to assess use of force incidents to determine if any disciplinary action is warranted, alongside additional training opportunities to ensure timely and unbiased investigations; and 7) the Department has worked to improve communications with the Monitoring

Team through the appointment of the Nunez Manager, as well as direct communications between the Commissioner and the Monitor. Further, the remedy of Receivership sought by Plaintiffs is an extraordinary one, which should not be considered lightly. Defendants continue to enact change in the Department and Defendants reemphasize their commitment to the core goal of the Nunez Consent Judgment: achieving safety and security for all of those who are in the Department's custody.

Outstanding Discovery Issues:

Interim Protective Order: The parties have met and conferred on documents Plaintiffs and SDNY have requested under the Interim Protective Order, which the Court issued on June 13, 2023. The parties have agreed on what documents remain subject to confidentiality. Defendants have asserted law enforcement privilege as pertains to Incident No. 3, and have agreed to produce documents in support of that privilege by September 15, 2023.

NCU Audits: The parties have met and conferred on documents related to security audits performed by the Nunez Compliance Unit and the parties are at an impasse. Defendants maintain that 1) the summary page of these audits should be designated as "Confidential Materials" pursuant to paragraph 2(h) of the Amended Protective Order, which set forth areas in which policies and procedures need to be reviewed and potentially enhanced, and 2) the supporting documents, which include photographs of facilities, images of faces of correction officers, persons in custody, discern locations of facility cameras and layouts of facilities, and which detail security issues, should be designated as "Attorneys-Eyes-Only." The fact that there has not been such a designation in the past does not preclude these documents being designated as such on an ongoing basis; NCU Audits were not in existence at the time of the entry of the Amended Protective Order, and plaintiffs have not given a substantive reason why they would not be harmed by such a designation. Defendants have agreed to provide to plaintiffs a proposed protective order to attempt to resolve this issue prior to submitting to the Court. Defendants will provide the proposed protective order by September 20, 2023.

Additional Discovery Requests: Defendants have agreed to provide their position to outstanding discovery requests to Plaintiffs and SDNY by September 15, 2023. Plaintiff will provide their response to Defendants positions by no later than September 19, 2023. The parties have agreed to raise any outstanding issues with the Court by September 22, 2023.

**Monitoring Team Statement for September 11, 2023 Submission:**

The Monitoring Team has worked closely with all the Parties since the August 10, 2023 Status Conference. The Monitoring Team has facilitated discussions during the meet and confer process by providing information, documents, and identifying and cataloguing the items that require resolution.

Since July, counsel for the Plaintiff Class and the Southern District of New York have submitted over 50 requests for documents and information (many with multiple sub-parts) to the Monitoring Team pursuant to § XIX, ¶ 8 and § XX, ¶ 10 of the Consent Judgment. The Monitoring

Team has provided the Parties with a significant amount of information in response to these requests and is continuing to collect additional information to provide in the coming weeks. There are approximately ten requests, in which the Monitoring Team has responsive documents and information, but cannot yet produce them because Defendants must first advise the Monitoring Team whether they claim privilege or claim that certain confidentially designations must be placed on the information or documents prior to production. The Monitoring Team requested that Defendants provide its position regarding these requests by a date certain, in the near term, so this process is not further protracted.  If agreement on the production of these materials cannot be reached, then the Monitoring Team requested that the Parties agree on a date upon which any disputes may be brought to the Court for resolution. Defendants have advised they will provide the Monitoring Team and the Parties their position on the approximately ten requests by September 15, 2023. It has been further agreed that to the extent that there are any disputes among the Parties regarding Defendants' position on the production of these materials, then those disputes will be raised with the Court by September 22, 2023.

While the Monitoring Team hopes that the Parties may resolve any issues related to the production of materials among themselves, should resolution be necessary, the Monitoring Team supports this schedule for resolution as it ensures these issues will be raised with the Court as soon as practicable so any disputes may be resolved timely.  This is critical to ensure the Monitoring Team can allocate its resources efficiently and obtain the necessary direction regarding production of the materials requested.

    Respectfully submitted,

    */s/*
    John Schemitsch

cc:    BY ECF
    *All counsel of record*