# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

JONATHAN S. ABADY
MATTHEW D. BRINCKERHOFF
ANDREW G. CELLI, JR.
RICHARD D. EMERY
DEBRA L. GREENBERGER
DIANE L. HOUK
DANIEL J. KORNSTEIN
JULIA P. KUAN
HAL R. LIEBERMAN
ILANN M. MAAZEL
KATHERINE ROSENFELD
ZOE SALZMAN
SAM SHAPIRO
EARL S. WARD
O. ANDREW F. WILSON

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

MONDAIRE JONES
VASUDHA TALLA

ERIC ABRAMS
DAVID BERMAN
NICK BOURLAND
DANIEL M. EISENBERG
SARA LUZ ESTELA
SARAH MAC DOUGALL
SANA MAYAT
HARVEY PRAGER
VIVAKE PRASAD
MAX SELVER
EMILY K. WANGER

October 10, 2023

**By ECF**

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Nunez, et. al. v. City of New York, et. al.,* 11-cv-5845 (LTS)

Your Honor:

      The Plaintiff class opposes the City Defendants' motion to withhold from Plaintiffs information about the deaths of three class members, and about several other specifically identified incidents, based on the "law enforcement privilege." Dkt. 576.[1] This is a blanket effort by the City to prevent the Monitor from disclosing to Plaintiffs information about certain deadly and violent incidents in the jails that Plaintiffs have repeatedly sought for their contempt motion, simply because the Department of Correction (DOC) has not yet closed its internal investigations. The City has failed to make even a threshold showing that the privilege applies here, much less produce the required information about specific harms from disclosing the information sought. "The law enforcement privilege is not an instrument by which law enforcement agencies may shield themselves from public scrutiny. Therefore, courts must vigilantly review an assertion of the privilege." *Floyd v. City of New York*, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010). As the law enforcement privilege does not apply and, even if it does,

---

[1] Since the City filed its letter, the parties have resolved disputes with respect to the following documents referenced in their letter: the two incidents that are the subject of the Attorney General's criminal investigation (the death of Mr. Pines on February 4, 2023 and the death of Mr. Ubiera on August 22, 2023); and the two incidents that are or may be subject to investigation by the Bronx District Attorney, "Incident 3" from the Monitor's May 26 Report and "Illustrative Example 6." Plaintiffs have withdrawn their objections to these privilege assertions without prejudice to renewal upon notification that the criminal investigations have closed.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 2

Plaintiffs have overcome the privilege given the Plaintiffs' and the public's interests in disclosure, the City's motion should be denied.

<u>The City Has Not Identified the Documents It Seeks to Withhold</u>

The City has never identified the documents it seeks to withhold: it provided no privilege log, nor any other description of the documents, other than telling the Court they are "voluminous." Dkt. 576 at n.3. The City describes the materials only as documents "pertaining to" the incidents. *Id.* at 2. This is patently insufficient to meet their burden. Even if the law enforcement privilege might properly protect some information in an investigation, "some documents generated in the course of an investigation may not be privileged because maintaining their confidentiality simply does not advance any of the purposes of the privilege." *Kshel Realty Corp. v. City of New York*, 2004 WL 2978295, at *2 (S.D.N.Y. Dec. 20, 2004). For these reasons, pursuant to Fed. R. Civ. P. 26(b)(5), any privilege log produced by the City must identify the subject matter of each withheld document with specificity sufficient to allow Plaintiff to assess the claimed privilege. *See United States v. Construction Projects Research Inc.,* 73 F.3d 464, 473 (2d. Cir. 1996) (denying privilege on the basis of a deficient privilege log that "contain[ed] a cursory description of each document, the date, author, recipient and comments," and asserted the privilege itself as the "basis of claim."). The City's failure to produce a privilege log for the materials it is withholding in this case has rendered its assertion of privilege "substantially deficient," *Melendez v. Greiner*, 2003 WL 22434101, at *6 (S.D.N.Y. Oct. 23, 2003) (concluding that "mere citation" of privilege without any specific showing "cannot justify withholding materials").

By failing to provide a timely and complete privilege log, the City waived its claim that the documents are protected by privilege. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 166 (2d Cir. 1992) (failure to timely provide a privilege log "may result in a finding that the privilege has been waived"); *Kitevski v. City of New York*, 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006) (holding that defendant waived law enforcement privilege where it failed to provide a privilege log and failed to present any justification for that failure); *accord Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *3 (S.D.N.Y. May 23, 2016) (holding that "waiting over three months to serve anything approximating a privilege log, and failing to proffer any explanation or excuse for that delay" constituted a waiver of privilege). In this matter, the City has been particularly dilatory in asserting its privilege claims, ignoring the Monitor's repeated requests to provide its position and refusing to state any position at multiple meet and confer sessions. *See Declaration of Mary Lynne Werlwas* ("Werlwas Decl.")*,* ¶ 2 and Exhibits 3-7. And when the City did invoke "law enforcement privilege," as late as the night before it had promised its motion to the Court, it did so merely by stating those words with no further description. *Id.* This is obstruction, serving only to prolong the production of documents Plaintiffs seek for their contempt motion to be filed next month, and such tactics should not be countenanced.

Not only do Plaintiffs and the Court have no means to discern what documents the City seeks to shield, but the City presents no evidence that the affiants or counsel have *read* the documents to ascertain privilege. None of the five affidavits supplied by the City state that the

affiant read or obtained these documents; rather, the affiants stated they were aware the incidents were under investigation, and then summarily asserted that "any" or "all" documents about such incidents should be shielded. Nor does the record demonstrate whether the City's counsel had obtained and read each document before asserting the privilege, as is necessary to properly assert a privilege. *Kivetski,* 2006 WL 680527 at *2 ("it is improper for counsel to invoke a privilege without first analyzing and reviewing the documents in question").

The City's offer to have the court review "voluminous" documents *in camera* does not cure its deficient assertions of privilege. "If *in camera* review were an adequate remedy to a deficient privilege log, there would be little reason for litigants to comply with the Federal Rules of Civil Procedure and the Local Rules and prepare an index of documents withheld on privilege." *Davis v. City of New York,* 2012 WL 2005826, at *4 (S.D.N.Y. Jun. 4, 2012) Moreover, "in camera review is conducted only in exceptional circumstances," (*id.*), which surely do not include a party choosing to be dilatory in asserting the privilege as the City has been here. Exs. 3-7; *see also Kshel*, 2004 WL 2978295, at *2–3.

The City Has Not Met Its Burden to Show How the Withheld Documents Are Shielded by Law Enforcement Privilege

The law enforcement privilege exists "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Floyd*, 739 F. Supp. 2d at 379 (internal quotations omitted). A party seeking to invoke a claim of law enforcement pr*i*vilege bears the burden of explaining the relationship between the information contained in the privilege log and the *specific* harms likely to accrue from disclosure. *Kunstler v. City of New York,* 2005 WL 2656117 (S.D.N.Y. Oct. 18, 2005) (parties seeking protection of privilege must first "make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted"); *see also Floyd*, 739 F. Supp. 2d at 380 ("The ultimate burden of showing the law enforcement privilege blocks disclosure falls on the party asserting the privilege."); *King v. Conde*, 121 F.R.D. 180, 189-190 (E.D.N.Y. 1988). The City has utterly failed to do so here.

The City's boilerplate affidavits in support of the law enforcement privilege are insufficient to support its claim. *See, e.g.*, *Micillo* , 2016 WL 2997507, at *4  ("conclusory or *ipse dixit* assertions" insufficient to invoke law enforcement privilege); *Kitevski*, 2006 WL 680527, at *3 ("vague and conclusory statements without any specific or particularized facts" are insufficient to invoke the law enforcement privilege). Rather than *show* how disclosure of any (let alone all) of the documents in question would harm the law enforcement interests set forth above, the affidavits merely assert this harm. This fails to satisfy their burden. *See Kshel*, 2004 WL 2978295, at *2–3 (ordering New York City defendants who failed to provide an "individualized proffer justifying the withholding of specific documents" to "engage in a two-step process to justify their assertion of the law enforcement privilege," including first promulgating "a revised privilege log that identifies the subject matter of each document with as much specificity as possible" and second providing "a document-by-document explanation of the

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 4

relationship between the information contained in the document and the grounds on which the privilege is asserted").

Nor is it sufficient to simply claim that an investigation is ongoing. *See id.* (explaining that the fact that an investigation is ongoing is insufficient in and of itself to invoke the privilege). "That an investigation is open does not guarantee protection from disclosure; otherwise, a party could simply keep an investigation open during the pendency of a lawsuit in order to avoid disclosure." *Floyd*, 739 F. Supp. 2d at 380. That prospect is not merely theoretical here: these investigations are all internal to DOC, and their duration is wholly within DOC's control. Nor is DOC completing these internal investigations timely. Under the court's orders, ID must close full use of force investigations within 120 days of referral of the incident. Consent Judgment, Section VII(9)(a)(ii). The use of force incidents at issue here occurred between January 29 and April 22, 2023, and thus should be closed. To permit Defendants to use their failure to comply with one Court-ordered obligation—completing timely investigations—as a justification for withholding documents Plaintiffs seek to demonstrate non- compliance with other obligations would be perverse in the extreme.

Defendants' position that revealing any information from "open" incidents harms law enforcement interests cannot be credited, given their treatment of the identical categories of documents in this litigation. In May 2023, Defendants invoked law enforcement privilege to shield information about incidents of use of force, violence and death described in the Monitor's alarming May 26 Report. *See* Werlwas Decl. Ex. 8. The very same day that the City invoked the privilege, DOC and the Mayor were providing these materials to the press and briefing them on the incidents. *Id.* Ex. 9. When confronted with the obvious contradiction, Defendants withdrew the privilege for these incidents. *Id.* Ex. 10. Yet here, it continues to assert that privilege for the same categories of documents. Since "principles of waiver apply to the law enforcement privilege, so that a document otherwise properly withheld may be subject to disclosure if the privilege has been forfeited," *Kshel*, 2004 WL 297829 at *2, the City should be foreclosed from asserting that the fact that a use of force incident is "open" justifies application of the privilege.

Moreover, the mere fact that DOC has an open investigation does not answer the question of how disclosure of each document would harm the law enforcement interests identified above. The vast majority of the documents included in use of force investigations are standard reports of officers and witnesses and video footage from cameras that, by court order, are required to show all areas of the jail. The materials sought are files ordinarily produced at the conclusion of a use of force investigation or death investigation, and not the kind of detailed descriptions of undercover police operations that implicated law enforcement privilege in the more typical case. *See, e.g., In re The City of New York,* 607 F.3d at 933.

Finally, while it is impossible to firmly resolve any claims of privilege over documents that have never been identified, any presumption of privilege that may attach to the materials is outweighed by the importance of the materials to Plaintiffs' case. *Kitevski*, 2006 WL 680527, at *3 ("When the records are both relevant and essential to the presentation of the case on the

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 5

merits, the need for disclosure outweighs the need for secrecy, and the privilege is overcome.") These materials go directly to the harm Plaintiffs face and the Department's repeated failures to abide by this Court's orders. For example, the materials contain details about horrific incidents reported by the Monitoring Team that are critical to assess the degree of the City's compliance with this Court's orders.

There is a "longstanding" judicial recognition of the "great weight of the policy in favor of discovery in civil rights actions," recognizing the public's profound interest in "in giving force to the federal civil rights law, and in reasonable transparency from law enforcement agencies." *Floyd*, 739 F. Supp.2d at 381 n.21, 382 (quotations omitted). This rings especially true in this case, where the City has failed over and over to be transparent with Plaintiffs, the Monitor, and the Court.

For these reasons, the City's motion should be denied.

Respectfully submitted,

*/s/*
Mary Lynne Werlwas
Kayla Simpson
Katherine Haas

THE LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT

Counsel for Plaintiff Class

*/s/*
Debra L. Greenberger
Jonathan Abady
Vasudha Talla
Sana Mayat

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP

Counsel for Plaintiff Class