# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
MARK NUNEZ, et al.,                                          :
                                                             :
                        Plaintiffs,                          :
                                                             :
   - against -                                               :
                                                             :
CITY OF NEW YORK, et al.,                                    :
                                                             :
                        Defendants.                          :
                                                             :  **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
                        Plaintiff-Intervenor,                :
                                                             :
   - against -                                               :
                                                             :
CITY OF NEW YORK and NEW YORK CITY                           :
DEPARTMENT OF CORRECTION,                                    :
                                                             :
                        Defendants.                          :
------------------------------------------------------------ X

## DECLARATION OF STEVE J. MARTIN

**STEVE J. MARTIN** hereby declares as follows:

1.     I submit this declaration in support of the Parties' proposed Second Remedial Order ("Second Remedial Order"), attached as **Exhibit A**.

2.     I am currently the Court-appointed Monitor of the *Nunez* Consent Judgment (dkt. 249) ("Consent Judgment") and I am responsible for assessing the Department's compliance with the Consent Judgment, and Remedial Consent Order Addressing Non-Compliance (the "First Remedial Order," Dkt. No. 350) that included several remedial measures designed to address ongoing non-compliance with the Consent Judgment. The Monitoring Team includes professionals with substantial experience and commitment to advancing correctional reform (collectively, "the Monitoring Team"). Team members include the Monitor, Deputy Monitor, Associate Deputy Monitor, Associate Director,

1

Senior Analyst, and three Subject Matter Experts all of whom reflect diverse professional backgrounds, experiences, and perspectives that help to ensure that the Monitoring Team's work is neutral, independent, balanced, objective, fair, reasonable, and responsible. The Monitoring Team has developed significant expertise in the operations of the New York City Department of Correction as it relates to the use of force and security protocols.  Further, the Monitor and three Subject Matter Experts collectively have over one hundred years of experience in the management, operation, and monitoring of confinement facilities across the country.

3.     I have worked as a corrections professional for almost 50 years, including as a correctional officer, General Counsel of the Texas State Prison System, and expert consultant for the United States Department of Justice, Civil Rights Division, and the United States Department of Homeland Security, Office of Civil Rights and Civil Liberties. I have visited or inspected over 700 confinement facilities in the United States and abroad and have been continuously involved in institutional reform litigation. Since 1987, I have been retained as an expert witness and consultant in more than 200 cases involving correctional facilities, many of which involved allegations of excessive and unnecessary use of force. Notably, I served as one of two Joint Expert Consultants in the remedial phase of *Sheppard v. Phoenix*, 91 Civ. 4141 (RPP) (S.D.N.Y.), an earlier class action brought against Defendant the City of New York (the "City") with respect to use of force in the Central Punitive Segregation Unit. I also was retained as an expert by the plaintiffs in *Ingles v. Toro*, 01 Civ. 8279 (DC) (S.D.N.Y.), another action alleging a pattern and practice of excessive and unnecessary use of force in the City jails. I also have served as a federal court monitor in numerous prisons and state systems, large metropolitan jail systems, and juvenile justice facilities. I keep myself apprised of developments with respect to legal standards, as well as best practices, with respect to use of force by corrections staff and security protocols in general.  A copy of my curriculum vitae is attached to this declaration as **Exhibit B**.

4.     The Monitoring Team has filed eleven monitor's reports with the Court (docket entries 269, 291, 295, 305, 311, 317, 327, 332, 341, 360, and 368) that have covered the period of October 22, 2015, to December 31, 2020, as well as two Remedial Order reports (docket entries 365 and 373), and recently three status letters addressing

the current dire conditions at Rikers Island (docket entries 378, 380, and 387). The reports describe the efforts the Department has taken to implement the requirements of the Consent Judgment and First Remedial Order and evaluate the extent to which the Department has complied with each substantive provision of the Consent Judgment and First Remedial Order.

5.    The Department has repeatedly been found in Non-Compliance[1] with Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision) (collectively "Non-Compliance Provisions"), and more recently with regard to the First Remedial Order Provisions Section A. ¶ 2 (Facility Leadership Responsibilities), Section A. ¶ 3 (Revised De-escalation Protocol), Section A. ¶ 6 (Facility Emergency Response Teams), Section D. ¶ 1 (Consistent Staffing), Section D. ¶ 2 (ii) (Tracking of Incentives and Consequences), and Section D. ¶ 3 (Direct Supervision). *See* Chart of Non-Compliance Provisions, attached as **Exhibit C** for ease of reference.

6.    Three status letters dated August 24, 2021 (Dkt. No. 378), September 2, 2021 (Dkt. No. 380), and September 23, 2021 (Dkt. No. 387), detail the deteriorating circumstances at Rikers Island and the ongoing dangerous and unsafe conditions in the jails. As noted in the September 23, 2021, status report, the current state of affairs is nothing short of an emergency posing an immediate threat to the safety and well-being of Inmates and Staff, and the current harmful conditions in the jails are directly linked to the Department's failure to comply with the foundational requirements of the Consent Judgment and the First Remedial Order.

7.    The remedial measures included in the proposed Second Remedial Order were based on recommendations outlined in the September 23, 2021, status report that I developed, based on my professional judgment in consultation with the Deputy

---

[1] As defined by Consent Judgment Section XX (Monitoring), ¶ 18.

Monitor and Associate Deputy Monitor, that were intended to address the unsafe and dangerous conditions in the jails. The development of these recommendations also included consultation with the three Subject Matter Experts on our team who have extensive experience in the management and operation of confinement settings across the country. I also directly participated in the negotiations with the Parties on the development of this Second Remedial Order.

8.   The provisions in the proposed Second Remedial Order were extensively negotiated, at arm's-length, and closely analyzed, with the parties mindful of the operational challenges and burdens associated with implementing the relief, and the relief was appropriately tailored to address such concerns while still serving the goal of reducing excessive and unnecessary use of force and violence in the City jails.

9.   Recognizing the requirement that remedies should represent the least intrusive means necessary and be tailored to properly address the implicated rights and interests, certain provisions in the proposed Second Remedial Order require the Department to develop and implement certain systems or policies in consultation with the Court-appointed Monitor, thereby preserving the Department's ability to fashion these remedies (in consultation with the Monitor) in an appropriately targeted manner that takes into account any legitimate operational and logistical concerns. Further, certain provisions specifically require further consultation and discussion between the City, the Department, and the Monitoring Team to determine the most appropriate path forward.

10.  As explained in more detail below, I believe that the relief included in the proposed Second Remedial Order is necessary to adequately address the continued violations occurring as a result of sustained Non-Compliance with provisions of the Consent Judgment and First Remedial Order and is narrowly tailored to properly address the implicated rights and interests, and no more intrusive than is necessary to protect incarcerated individuals' constitutional rights. The provisions are targeted to remedy the deficiencies identified.

11.  Moreover, the remedial measures included in the proposed Second Remedial Order should not have an adverse impact on public safety or the operation of the criminal justice system and are consistent with sound security practice. Moreover, because the

remedies are designed to reduce violence in the City jails, the required changes are likely to promote public safety and protect both incarcerated individuals and DOC staff from unnecessary harm and injuries.

12.    The proposed Second Remedial Order includes six provisions designed to *immediately* address the current lapses in security management, expanding criteria for Department leadership beyond the uniform ranks, and consideration of appointment of an external Security Operations Manager. *See* Second Remedial Order § 1, ¶ (i-iii). As described below, each provision is necessary and narrowly tailored.

13.    **§ 1, ¶ i: Immediate Security Initiatives**: The Department has, thus far, failed to effectively address the unsafe conditions that are posing an imminent risk of harm to those in custody and Department Staff. This includes violence among incarcerated people, violence at the hands of Staff and violence toward Staff, in addition to a disturbing rise in self-harming behavior. The harm flowing to incarcerated individuals and Staff are directly linked to and caused by a wide range of security failures, including failures to properly secure doors on cells, vestibules and control stations; poor situational awareness and lack of vigilance while on post; overreliance on Probe Teams; failures in adequately securing incarcerated individuals following violent assaults; and failures to respond to self-harming behavior. Supervisors' repeated failures to identify and address these problems mean that Staff continue their dangerous practices unchecked. This provision requires the Department to develop and implement an interim Security Plan, improve Staff response to self-harm, process inmates through Intake in 24 hours or less, maintain the video monitoring units with adequate staffing and supervisors, implement a post-incident management protocol to secure incarcerated individuals following involvement in a violent incident, and retain a consultant to advise the Department on a strategy to safely house incarcerated individuals in consideration of gang affiliation. These provisions are all necessary to remedy the dangerous conditions and security management failures in the City jails, as outlined in the Monitor's three status letters to the Court dated August 24, 2021 (Dkt. No. 378), September 2, 2021 (Dkt. No. 380), and September 23, 2021 (Dkt. No. 387).

14.     **§ 1, ¶ ii: Expanded Criteria for Department Leadership**: The Department has long
struggled with adequate supervision of its Staff throughout the life of the Consent
Judgment (October 2015 to the present) and Facility leadership have not been
successful in dismantling the culture that gave rise to the Consent Judgment. The
Monitoring Team's observation of Facility practices and various leadership meetings
suggest that Facility Leadership has not embraced, and in some cases has not quite
grasped, what is needed for the task at hand. The current group of Facility leaders
alone are not capable of dismantling the dysfunctional/abusive culture at the Facilities
and replacing it with one built on dignity, respect, and problem-solving (*see* **Exhibit
D: Monitoring Team Findings of Supervisory Deficiencies**). Therefore, I have
recommended that the criteria for who may serve on Facility leadership teams (*e.g.*,
Warden) must be expanded so that the Department is no longer limited to only
selecting individuals from the current uniform ranks (*see* status letter to the Court
dated September 23, 2021 (Dkt. No. 387), and Eleventh Monitor's Report at pgs. 12-
14 (Dkt. 368)). The Department must have the ability to also seek, from the broader
corrections community, managers with the required skills and willingness to improve
the state of facility operations and the ability to inspire, encourage, and motivate Staff
to embrace the new practices that are at the heart of the reform effort. This provision
requires the City to confer with relevant State leadership to determine how this
recommendation may be adopted, and for my office to submit to the Court on
October 14, 2021, a report that describes the City's proposed approach for
implementing this recommendation.

15.     **§ 1, ¶ iii: Appointment of Security Operations Manager**: The significant
deterioration in safety, the ubiquitous poor management, the systemic dysfunction,
and the corresponding harm to incarcerated individuals and Staff have led the
Monitoring Team to conclude that the Department does not have the requisite internal
capacity to manage the security functions necessary to implement the reforms under
the Consent Judgment and Remedial Order. I therefore recommended the
appointment of an external Security Operations Manager with significant expertise in
correctional security who would have the authority to develop and implement the
Department's security protocols (*see* status letter to the Court dated September 23,

2021 (Dkt. No. 387)). Security failures have been an ongoing and pervasive problem in this Department throughout the pendency of the Consent Judgment, *see* **Exhibit E: Monitoring Team Findings of Security Failures**. This provision requires the Parties to discuss the recommendation to appoint the Security Operations Manager and for my office to submit to the Court on October 14, 2021, the status of these discussions, the proposed duties and responsibilities of that individual, and whether the Defendants intend to appoint such an individual as recommended.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 28, 2021.

_____ s/Steve J. Martin
Steve J. Martin
*Monitor*

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                :

MARK NUNEZ, et al.,                           :

                      Plaintiffs,          :

                                               :

  - against -                           :

CITY OF NEW YORK, et al.,                    :

                                             :

                    Defendants.       :

-------------------------------------------------------- X    **11 Civ. 5845 (LTS)(JCF)**
                                             :

UNITED STATES OF AMERICA,                :

                                           :

                Plaintiff-Intervenor,   :

                                           :

  - against -                           :

CITY OF NEW YORK and NEW YORK CITY  :
DEPARTMENT OF CORRECTION,

                                           :

                    Defendants.      :

-------------------------------------------------------- X

## [PROPOSED] SECOND REMEDIAL ORDER

      WHEREAS, on October 22, 2015, this Court entered a Consent Judgment in this matter requiring the Defendants to take specific actions to remedy a pattern and practice of violence by Staff against incarcerated individuals, and to develop and implement new practices, policies, and procedures designed to reduce violence in the jails and ensure the safety and well-being of incarcerated individuals (the "Consent Judgment," Dkt. No. 249);

      WHEREAS, in prior reports filed with the Court, the Monitor has repeatedly found the Defendants to be in non-compliance with Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision);

WHEREAS, on August 14, 2020, the Court entered a Remedial Consent Order Addressing Non-Compliance (the "Remedial Order," Dkt. No. 350) that included several remedial measures designed to address this ongoing non-compliance;

WHEREAS, in his Eleventh Report filed on May 11, 2021 (Dkt. No. 368), the Monitor reported that that the Defendants were in non-compliance with Remedial Order § A. ¶ 2 (Facility Leadership Responsibilities), § A. ¶ 3 (Revised De-escalation Protocol), § A. ¶ 6 (Facility Emergency Response Teams), § D. ¶ 1 (Consistent Staffing), § D. ¶ 2 (ii) (Tracking of Incentives and Consequences), and § D. ¶ 3 (Direct Supervision);

WHEREAS, the Monitor has submitted to the Court reports dated August 24, 2021 (Dkt. No. 378), September 2, 2021 (Dkt. No. 380), and September 23, 2021 (Dkt. No. 387), detailing the deteriorating circumstances at Rikers Island and the ongoing dangerous and unsafe conditions in the jails;

WHEREAS, in his September 23, 2021 report, the Monitor reported that "[t]he current state of affairs is nothing short of an emergency posing an immediate threat to the safety and well-being of Inmates and Staff;"

WHEREAS, in his September 23, 2021 report, the Monitor reported that the current "harmful conditions in the jails are directly linked to the Department's failure to comply with the foundational requirements of the Consent Judgment and the Remedial Order;"

WHEREAS, in his September 23, 2021 report, the Monitor reported that the "use of force rate remains extremely high;" the number of use of force incidents in Intake areas in August 2021 (190) was 170% higher than the number in August 2020; recent use of force incidents reflect "a troubling increase in the number of problematic incidents[,] including the use of head strikes and unnecessary uses of force; "the majority of problematic use of force incidents reflects a corresponding lack of adequate supervision of Staff; and "[a] large number of use of force incidents are accompanied by or caused by security failures;"

WHEREAS, in his September 23, 2021 report, the Monitor set forth a number of steps that he recommended the Department of Correction (the "Department") implement to address the unsafe conditions in the jails and the ongoing violation of core provisions of the Consent Judgment;

WHEREAS, on September 24, 2021, this Court held a conference with the Monitor and the parties to discuss the recommendations made by the Monitor and the ongoing non-compliance with the Consent Judgment;

WHEREAS, the Monitor has submitted a Declaration setting forth the rationale and basis for his belief that the remedial measures included in this Order are necessary, and explaining the approach taken in tailoring the proposal to properly address the implicated rights and interests;

NOW, THEREFORE, the Plaintiff Class, the United States, and the Defendants stipulate and agree, and IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.     **Implementation of Monitor's Recommendations.**  The Defendants shall implement the recommendations set forth on pages 6 through 8 of the Monitor's September 23, 2021 report.  Specifically:

    i.     **Immediate Security Initiatives**: In order to immediately address the current lapses in security management, the Department must do the following:

        a.  Develop, in consultation with the Monitor, and implement an interim Security Plan that describes, in detail, how various security breaches will be addressed by October 11, 2021.  This plan shall address, among other things, the following issues:  unsecured doors, abandonment of a post, key control, post orders, escorted movement with restraints when required, control of undue congregation of detainees around secure ingress/egress doors, proper management of vestibules, and properly securing officer keys and OC spray.

        b.  Communicate to Staff their obligations under the Suicide Prevention and Intervention Policy ("Suicide Prevention Policy") by ordering Staff to respond timely to self-harming behavior via tele-type, roll call and other forms of on-the-job supervision and guidance.  This shall be done immediately and then routinely (*e.g.* weekly) thereafter.  The Department shall also take necessary steps to ensure that Staff follow the Suicide Prevention Policy.

        c.  Process all incarcerated individuals, including but not limited to new admissions and intra-facility transfers, through Intake and place them in an assigned housing unit within 24 hours.  The Department shall provide the necessary Intake staff and space to satisfy this requirement.  By November 15, 2021, the Department shall develop and implement a reliable system to track and record the amount of time any incarcerated individual is held in Intake and any instance when an individual remains in Intake for more than 24 hours.

        d.  Maintain the video monitoring unit on all three tours with adequate staffing (with either uniform or civilian staff) and supervisors (uniform).

        e.  Implement a Post-Incident Management protocol, in consultation with the Monitor, to immediately secure those persons in custody involved in violent incidents, pending a decision about appropriate disciplinary sanctions. Such protocol shall be consistent with BOC and SCOC rules and standards.

        f.  Retain a consultant, within 30 days of the date of this Order, with expertise in the internal classification and safe housing of incarcerated persons to advise the Department on a strategy to safely house people in consideration of gang affiliation. The selection of the consultant shall be subject to the approval of the Monitor.

ii.     **Expanded Criteria for Department Leadership**: The Monitor has recommended that the criteria for who may serve on facility leadership teams (*e.g.*, Warden) must be expanded so that the Department is no longer limited to only selecting individuals from the current uniform ranks and can have the ability to also seek managers, from the broader corrections community, with the required skills and willingness to improve the state of facility operations. The appropriate City officials shall confer with the relevant State leadership to determine how this recommendation may be adopted. By October 14, 2021, the Monitor shall submit a report to the Court that describes the Defendants' proposed approach to adopting and implementing this recommendation, the timeline under which the City has agreed to take the necessary steps to implement this recommendation, and how the Defendants plan to address any impediments they identify to implementing this recommendation.

iii.    **Appointment of Security Operations Manager**: The Monitor has recommended the appointment of an external Security Operations Manager with significant expertise in correctional security who would have the authority to develop and implement the Department's security protocols. The Court recognizes that the adoption of this recommendation necessarily requires discussion and input with the Parties. Accordingly, the Monitor will discuss this recommendation further with the Parties. By October 14, 2021, the Monitor shall submit a report to the Court setting forth the status of these discussions, the proposed duties and responsibilities that the external Security Operations Manager would have, and whether the Defendants intend to adopt the Monitor's recommendation to appoint an external Security Operations Manager.

2.      **Status Reports to the Court.**

i.      By October 14, 2021, the Monitor shall submit a status report to the Court setting forth the status of the Department's efforts to implement the requirements set forth in Paragraph 1.i above.

ii.     By October 14, 2021, the Defendants shall submit a report to the Court setting forth the status of efforts to implement the ongoing initiatives that the City has articulated and that are set forth in Appendix A of the Monitor's September 23, 2021 report ("Appendix A"), including but not limited to efforts to address current staffing shortages and to reduce the population in the jails. The Defendants shall submit a similar status report to the Monitor by November 8, 2021. These reports should include data reflecting the extent to which progress has been made in each area set forth in Appendix A, and shall include at least the following data broken out by day:

        a.      The number of new admission incarcerated individuals who remained in Intake for longer than 24 hours, and the length of time each individual was in Intake;

        b.      The number of uniformed Staff out on sick leave;

4

      c.   The number of uniformed Staff on medically monitored/restricted duty status;

      d.   The number of uniformed Staff who did not report for a shift without providing a reason as required by Department policy; and

      e.   The number instances when a housing unit had no Staff work a tour or had insufficient Staff available to adequately manage the population.

iii.    By November 15, 2021, the Monitor shall submit a report to the Court that will include: (A) an update on the status of the Department's efforts to implement the recommendations set forth in Paragraphs 1.i -1.iii above; and (B) the status of the Department's efforts to implement the initiatives set forth in Appendix A, including the data set forth in Paragraphs 2.ii(a) – (e) above and other data reflecting the extent to which progress has been made in each area set forth in Appendix A.

iv.    The next status conference in this matter shall be held on November __, 2021.

3.    The Parties stipulate and agree, and the Court finds, that this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a). The Parties further stipulate and agree, and the Court finds, that the prospective relief in this Order is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that the Order complies with the provisions of 18 U.S.C. § 3626(a). Except to enforce the Order, this section shall not be admissible against the Defendants in any court for any purpose.

FOR THE UNITED STATES:

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By:  _____
     JEFFREY K. POWELL
     LARA K. ESHKENAZI
     Assistant United States Attorneys
     86 Chambers Street, 3rd Floor
     New York, NY  10007
     Telephone: (212) 637-2706/2758
     Email: Jeffrey.Powell@usdoj.gov
            Lara.Eshkenazi@usdoj.gov


FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By:  _____
     MARY LYNNE WERLWAS
     KAYLA SIMPSON
     DAVID BILLINGSLEY
     199 Water Street, 6th Floor
     New York, New York  10038
     Telephone: (212) 577-3530
     Email:   mlwerlwas@legal-aid.org
              ksimpson@legal-aid.org
              DBillingsley@legal-aid.org


EMERY CELLI BRINCKERHOFF & ABADY LLP

By:  _____
     JONATHAN S. ABADY
     DEBBIE GREENBERGER
     NAIRUBY BECKLES

     600 Fifth Avenue, 10th Floor
     New York, NY  10020
     Telephone:  (212) 763-5000
     Email:   jabady@ecbalaw.com
              dgreenbergerg@ecbalaw.com
              NBeckles@ecbawm.com

6

FOR THE UNITED STATES:

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By:  _____

    JEFFREY K. POWELL
    LARA K. ESHKENAZI
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, NY  10007
    Telephone: (212) 637-2706/2758
    Email: Jeffrey.Powell@usdoj.gov
           Lara.Eshkenazi@usdoj.gov

FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By: *Mary Lynne Werlwas*
_____

    MARY LYNNE WERLWAS
    KAYLA SIMPSON
    DAVID BILLINGSLEY
    199 Water Street, 6th Floor
    New York, New York  10038
    Telephone: (212) 577-3530
    Email:   mlwerlwas@legal-aid.org
             ksimpson@legal-aid.org
             DBillingsley@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____

    JONATHAN S. ABADY
    DEBBIE GREENBERGER
    NAIRUBY BECKLES

    600 Fifth Avenue, 10th Floor
    New York, NY  10020
    Telephone:  (212) 763-5000
    Email:   jabady@ecbalaw.com
             dgreenbergerg@ecbalaw.com
             NBeckles@ecbawm.com

FOR DEFENDANTS CITY OF NEW YORK AND DEPARTMENT OF CORRECTION:

GEORGIA PESTANA
Corporation Counsel for the City of New York

By:     _s/ Kimberly Joyce_____
        KIMBERLY JOYCE
        100 Church Street
        New York, New York  10007
        Telephone: (212) 356-2650
        Email:  kjoyce@law.nyc.gov

                        SO ORDERED this _____ day of _____, 2021


                        _____
                        LAURA TAYLOR SWAIN
                        UNITED STATES DISTRICT JUDGE

# <u>Exhibit B</u>

# CURRICULUM VITAE

**NAME:**                                 Steve J. Martin

**EDUCATION:**

| | |
|---|---|
| 1973 | Bachelor of Science |
| | Criminology and Corrections |
| | Sam Houston State University |
| | Huntsville, Texas |
| | |
| 1974 | Master of Arts |
| | Correctional Administration |
| | Sam Houston State University |
| | Huntsville, Texas |
| | |
| 1981 | Juris Doctor |
| | University of Tulsa |
| | School of Law |
| | Tulsa, Oklahoma |
| | (Admitted to Texas State Bar-Card #13106550) |

**EMPLOYMENT:**

| | |
|---|---|
| 1987-Present | Corrections Consultant and Attorney |
| | |
| 1986-1987 | Gray & Becker, Attorneys at Law |
| | General practice law firm engaged in litigation, administrative law, civil rights and legislative work. |
| | |
| 1985-1986 | Texas Office of the Attorney General, Special Assistant Attorney General.  Worked as a consultant to the Chief of the Enforcement Division on litigation involving the Texas Department of Corrections. |

(Vita current as of  March 2021)

**STEVE J. MARTIN VITA PAGE 2**
**Employment (continued)**

1981-1985

Texas Department of Corrections, Executive Assistant to the Director (1984-85); General Counsel (1983-85); Legal Counsel (1981-83), Huntsville, Texas.

As Legal Counsel, I served as the in-house attorney on class action litigation. In 1982, I was given responsibility for providing primary case administration of RUIZ v. ESTELLE (a class action conditions lawsuit in which virtually all operational aspects of the prison system were subject to court orders). From 1983-85, I served as the chief legal officer of the department. I also served as the liaison to the Office of the Special Master in RUIZ as well as liaison to the Office of the Attorney General and the Texas Legislature. From 1984 I also served as the Director's Executive Assistant, an operations position and the third ranking official in the department.

1980-1981

Tulsa County District Attorney's Office
Assistant District Attorney/Legal Intern
Tulsa, Oklahoma

As an Assistant District Attorney/Legal Intern, I provided representation to county jail officials on civil rights litigation filed by county jail prisoners. I also drafted a set of jail standards adopted by the district judges for operation of the jail.

1975-1980

United States Probation and Parole Office
U.S. Probation and Parole Officer
McAllen, Texas (1975-77)
Tulsa, Oklahoma (1977-80)

As a probation officer I supervised an average caseload of 50 to 75 probationers and parolees in addition to conducting pre-sentence and pre-trial diversion reports.

1974

Federal Bureau of Prisons
Federal Corrections Institution, Ft. Worth, Texas

After my first year of graduate school, I worked as a summer Casework Intern for the Director of Mental Health Programs at the facility.

**STEVE J. MARTIN VITA PAGE 3**
**Employment (continued)**

| | |
|---|---|
| 1972-1973 | Texas Department of Corrections, Correctional Officer, Huntsville, Texas. |
| | I was assigned to the Ellis Unit, a maximum security prison, and worked routine security posts such as cellblocks, control center, hall officer, and death row.  I also worked at the Goree Unit for female offenders. |

**REPRESENTATIVE PROFESSIONAL ACTIVITIES:**

| | |
|---|---|
| 2015-Present | Appointed as Federal Court Monitor, NUNEZ v. NEW YORK CITY DEPARTMENT OF CORRECTIONS to monitor Consent Judgment related to department use of force, inmate discipline, and supervision of inmates. |
| 2006-Present | Member of Editorial Board, *Correctional Law Reporter.* |
| 2019-Present | Retained as an expert witness, Rivera v. Cameron County Sheriff's Office, regarding the in-custody death from staff Use of force. |
| 2020-Present | Retained as an expert witness, Gutierrez v. Sainz, regarding the execution of a Texas death row prisoner. |
| 2015-2017 | Retained as an expert witness, Cheatham v. Thomas, regarding conditions of confinement at the St. Clair Correctional Facility, Alabama Department of Corrections. |
| 2010-2011 | Retained as an expert witness, Dunlap v. Zavaras, conditions of confinement on death row, Colorado Department of Corrections. |
| 2005-2016 | Retained as an expert witness, T.R., P.R., and K.W.  v. SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, class action litigation regarding the treatment of mentally ill inmates in the South Carolina Department of Corrections. |
| 2012-2016 | Appointed as Federal Court Monitor, C.B. v. WALNUT GROVE CORRECTIONAL AUTHORITY, Mississippi, to monitor Consent Decree regarding conditions of confinement. |

**STEVE J. MARTIN VITA PAGE 4**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2013-2016 | Retained as an expert witness, BERNDT v. CDCR, regarding sexual harassment claims by female correctional officers. |
| 2006-2016 | Retained as an expert witness, WILKERSON, et al. v. STALDER, regarding the placement of inmates in long-term segregation at the Louisiana State Penitentiary, Angola. |
| 2013-2015 | Retained as an expert witness, NUNEZ v. CITY OF NEW YORK, class action lawsuit regarding staff use of force in the New York City jails. |
| 2011-2015 | Retained by the Department of Homeland Security, Office for Civil Rights and Civil Liberties as penology expert. |
| 2012-2014 | Retained as an expert witness, ROSAS v. BACA, class action lawsuit regarding staff use of force at the Los Angeles County jails. |
| 2012-2014 | Retained as an expert witness, MASON v. HALE, class action lawsuit regarding conditions of confinement at the Jefferson County Jail, Birmingham, Alabama. |
| 2011-2014 | Retained as expert witness, BOOKER v. CITY AND COUNTY OF DENVER, regarding in-custody death related to staff use of force. |
| 2007-2013 | Retained by the U.S. Attorney's Office, New York City, to examine staff use of force at the Westchester County Jail, White Plains, New York. |
| 2008-2013 | Retained as an expert witness, CARTY v DEJONGH, regarding conditions of confinement at facilities in St. Thomas, Virgin Islands. |
| 2010-2015 | Retained as an expert witness, SHREVE v FRANKLIN COUNTY JAIL, regarding staff use of force. |
| 2010-2013 | Retained as an expert witness, SOLIS v BACA, regarding strip searches at the Los Angeles County Jail. |
| 2011-2014 | Retained by Department of Justice, State of California, as a consultant in the matter of COLEMAN V. BROWN. |

**STEVE J. MARTIN VITA PAGE 5**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2011-2013 | Retained as an expert witness, RODRIGUEZ, et al. v. COUNTY OF LOS ANGELES, et al., regarding use of force. |
| 2013 | National PREA Resource Center, Certified Auditor for Adult Prison, Jail, and Juvenile Facility Standards. |
| 2010-2014 | Appointed as Court Monitor, REYNOLDS v SCHRIRO, to monitor use of restraints by New York City Department of Corrections at the Bellevue and Elmhurst hospitals. |
| 2007-2013 | Retained as a subject matter expert by Federal Court Montior, S.H. v. STICKRATH, to examine/monitor staff use of force, restraints, seclusion, classification, youth disciplinary practices, and youth grievances at the Ohio Department of Youth Services. |
| 2011-2012 | Appointed as Federal Court Monitor, D.D. v. WASHINGTON COUNTY, OHIO, to monitor Consent Decree regarding operations at the WC Juvenile Center. |
| 2011-2012 | Retained as an expert witness, KELLEY v ERICKSEN, regarding placement and conditions of confinement at the Green Bay Correctional Institution, Wisconsin. |
| 2011-2012 | Retained as an expert witness, BLAKE v MAYNARD, regarding excessive use of force claim at the Maryland Reception and Diagnostic Classification Center. |
| 2001-2005 | Appointed as a Court Expert, CARRUTHERS v. JENNE, to examine the conditions of confinement in Broward County Department of Detention, Ft. Lauderdale, Florida. |
| 2003-2012 | Retained as an expert witness in DISABILITY ADVOCATES, INC. v. NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., involving class action civil rights claims regarding the treatment of mentally ill inmates confined to disciplinary segregation, New York State Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 6**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2009-2012 | Retained as an expert witness, HICKS v HETZEL, regarding conditions of confinement at the Donaldson Correctional Facility, Bessemer, Alabama. |
| 2011 | Retained as an expert witness, HAMILTON v HALL, regarding correspondence policies of the Santa Rosa County Jail, Florida. |
| 2004-2011 | Appointed as Court Monitor, GATES v. BARBOUR, to monitor capacity orders for the Mississippi Department of Corrections. |
| 2005-2011 | Retained as an expert witness, FAIRLEY v. ANDREWS, regarding allegations of excessive force in the Cook County Jail, Chicago, Illinois. |
| 2006-2009 | Retained as an expert, DITTIMUS-BEY, et al. v. TAYLOR, et al., regarding conditions of confinement at the Camden County Jail, Camden, New Jersey. |
| 2007-2011 | Retained as an expert witness, VANDEHEY v. VALLARO, regarding use of force at the Garfield County Jail, Colorado. |
| 2008-2011 | Retained as expert witness, SILVERSTEIN v. BOP, regarding confinement at the United States Penitentiary Administrative Maximum ("ADX"), Florence, Colorado. |
| 2010 | Participated as *amici curiae,* SCHWARZENEGGER v. PLATA, regarding prison overcrowding in the California Department of Corrections. |
| 1993-2008 | United States Department of Justice, Civil Rights Division, Special Litigation Section, Corrections Expert. |
| 2005-2008 | Retained as an expert, WILLIAMS v. TASER INTERNATIONAL, INC., regarding use of force at the Gwinnett County Detention Center, Georgia. |
| 2006-2008 | Retained as an expert witness, IKO v. GALLEY, regarding use of force at the Western Correctional Institution, Maryland Department of Public Safety and Correctional Service. |

**STEVE J. MARTIN VITA PAGE 7**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2007 | Participated as *amici curiae*, IQBAL v. ASHCROFT, U. S. Court of Appeals, 2nd Cir., regarding treatment of detainees at the Metropolitan Detention Center, New York City. |
| 2008-2010 | Retained as an expert witness, JACKSON v. GERL, regarding use of force at the Wisconsin Secure Program Facility, Boscobel. |
| 2007-2009 | Retained as an expert witness, YOUNG v. COOK COUNTY, regarding the strip search policies of the Cook County Jail. |
| 2007-2008 | Retained as an expert witness, RUTLEDGE v. COOK COUNTY, regarding staff use of force at the Cook County Jail. |
| 2007 | National Prison Rape Elimination Commission, Standards Development Expert Committee Member; also served as Member of Training Standards Committee. |
| 2006-2007 | Retained as a consulting expert by the State Attorney, 13th Judicial Circuit, Tampa, Florida, In Re: In-Custody Death of Martin Lee Anderson while confined at the Bay County Boot Camp, Panama City, Florida. |
| 2004-2006 | Retained as an expert witness, INGLES v. TORO, class action use of force litigation involving the New York City Department of Corrections. |
| 2005-2006 | Retained as an expert witness, GILLIS v. LITSCHER, et al., regarding placement of an inmate in the Behavior Management Program, Wisconsin Secure Program Facility. |
| 2005 | American Bar Association, Criminal Justice Section, ABA Standards Committee, Legal Status of Prisoners Task Force Meeting, Participant assisting in the development of ABA Criminal Justice Standards on the Treatment of Prisoners. |
| 2005 | Member, Travis County, Citizen Bond Advisory Committee; Chairman, Sub-Committee on Jails, Travis County, Texas. |

**STEVE J. MARTIN VITA PAGE 8**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2005 | Participated as *amici curiae*, WILKINSON v. AUSTIN, No. 04-495, Supreme Court of the United States; placement process for inmates in supermax prisons. |
| 2002-2005 | Appointed as Court Monitor, UNITED STATES v. NASSAU COUNTY, to monitor Settlement Agreement on use of force, Nassau County Corrections Center, Long Island, New York. |
| 2002-2005 | Retained as a consultant by the Georgia Attorney General's Office to review use of force practices at the Phillips State Prison, Buford, Georgia. |
| 2003-2004 | Retained as an expert witness, HARGETT v. ADAMS, class action litigation regarding conditions of confinement at the Joliet Treatment & Detention Facility, Illinois. |
| 2003-2004 | Retained as an expert witness, NEW TIMES v. ADAMS, class action litigation regarding censorship practices of the Colorado Department of Corrections. |
| 2002-2004 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. LEWIS; criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2003-2004 | Retained as a consultant by the Georgia Attorney General's Office in BURNS v. WETHERINGTON, regarding civil rights claim for failure to protect an inmate at the Lee Arrendale State Prison, Alto, Georgia. |
| 2004 | Retained as a consultant to the Ohio Department of Youth Services on staff use of force. |
| 2004 | Retained as a consultant by the Los Angeles County, Special Counsel, to assist in a report to the Los Angeles County Board of Supervisors on inmate violence in the Los Angeles County jails. |
| 2000-2002 | Appointed as Court Monitor, DOES v. STEWART, to monitor a system-wide class action remedial order on protective segregation for the Arizona Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 9**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1998-2002 | Appointed as Court Monitor, SHEPPARD v. PHOENIX, to monitor a court order on use of force in the New York City Department of Corrections, Rikers Island. |
| 2001 | Retained by the US Department of Justice and the U.S. Attorney's Office, Brooklyn, NY to assist in the development of use of force remedial plan for Nassau County Sheriff's Department. |
| 2001 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. POWERS and GARCIA, a criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2001 | Retained by the Los Angeles County Board of Supervisors to evaluate the in-custody restraint death of a detainee. |
| 2001 | Served as a Member of the research team of the Berkman Center, Harvard Law School, to evaluate rehabilitation programs in two Jamaican maximum security prisons. |
| 2000 | Participated as *amici curiae*, ATWATER v. CITY OF LAGO VISTA, No. 99-1408, Supreme Court of the United States, regarding custodial arrests for a non-jailable misdemeanor. |
| 1989-2000 | Retained as an expert witness and consultant, FELICIANO v. COLON, conditions litigation involving the Puerto Rico prison system. |
| 1999-2001 | Retained as an expert, MULDROW v. KEOHANE, litigation regarding the use of restraints, USP, Atlanta, Georgia. |
| 1999-2000 | Retained as an expert, SABATINO v. AMENN, class action litigation on the use of restraints, Erie County Prison, Pennsylvania. |
| 1999-2000 | Retained as a consultant to review Immigration and Naturalization Service Detention Standards, United States Department of Justice. |

**STEVE J. MARTIN VITA PAGE 10**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1996-1999 | Retained as an expert, LEE v. COUGHLIN, litigation involving punitive segregation at Sing Sing/Southport prisons, New York. |
| 1998-1999 | Retained as an expert, SPATES v. IOWA CORRECTIONAL INSTITUTION FOR WOMEN, conditions litigation. |
| 1992-1995 | Retained as an expert witness, MADRID v. GOMEZ, conditions litigation involving Pelican Bay State Prison, California. |
| 1996-1998 | Retained as an expert witness, COLLINS v. ALGARIN, litigation involving excessive force at Montgomery County Jail, Pennsylvania. |
| 1994-1998 | Retained as an expert witness, ALLEN v. CHISHOLM, excessive use of force litigation involving Montana State Prison. |
| 1995-1998 | Retained as an expert witness, BOLTON v. COOMBE, litigation involving double-celling practices at Woodbourne Correctional Facility, New York. |
| 1996-1998 | Retained as an expert witness, SOLOMON v. DELLANA, litigation involving excessive use of force at the Allegheny County Jail, Pittsburgh. |
| 1997-1998 | Retained as an expert witness, BLACKMON v. McCOTTER, litigation involving in-custody death at the Central Utah Correctional Facility. |
| 1997-1998 | Retained as an expert witness, CLARK v. CALIFORNIA, litigation involving treatment of developmentally disabled prisoners in the California Department of Corrections. |
| 1997-1998 | Retained as an expert witness, TATE v. GOMEZ, litigation involving lethal force at the Corcoran State Prison, California. |

**STEVE J. MARTIN VITA PAGE 11**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1994-1995 | Retained as an expert witness by the New York Attorney General's Office, BIN-WAHAD v. COUGHLIN, litigation involving claim of retaliatory transfer in New York Department of Corrections. |
| 1993-1995 | Retained as a consultant to the Texas Comptroller of Public Accounts, Performance Review of the Texas Department of Criminal Justice. |
| 1991-1993 | Gubernatorial appointee to the Texas Punishment Standards Commission; Vice-Chair, Policy Development Committee. |
| 1989-1993 | Retained as a consultant and expert witness on prison and jail litigation by the Texas Attorney General's Office. |
| 1992-1993 | Retained as a consultant, BENJAMIN v. ABATE.  Principal author of Reports of Plaintiffs' Expert Consultants on Conditions in the New York City Jails, Legal Aid Society, New York. |
| 1991-1992 | Staff Director, Study Committee on Judicial Education, Texas Supreme Court.  Principal investigator for the Report on Judicial and Court Personnel Education Programs. |
| 1990-1992 | Retained as an expert witness and consultant, JENSEN v. CLARKE, crowding litigation involving Nebraska State Prison, Lincoln, Nebraska. |
| 1989-1993 | Retained as a consultant on litigation involving numerous county jails including Detroit, Seattle, Houston, Austin and San Antonio. |
| 1989-1991 | Assisted Texas Legislature on the development of criminal justice legislation , 71st and 72nd Sessions. |
| 1988-1989 | Gubernatorial Appointee to Texas Council on Offenders with Mental Impairments; Chairman, Legislative Subcommittee. |
| 1986-1990 | Retained by Corrections Corporation of America, Nashville, Tennessee, to assist in the development and operation of private prison facilities in Texas. |

**STEVE J. MARTIN VITA PAGE 12**
 **Representative Professional Activities (continued)**

| | |
|---|---|
| 1988-1992 | Employed as expert witness by Prison Law Office, San Quentin on litigation involving Vacaville, San Quentin and Tracy prisons. |
| 1987-1993 | Employed as expert witness by Prisoners Legal Services of New York on litigation involving Attica and Elmira prisons. |
| 1987-1989 | Employed as expert witness by NAACP LDF, New York on death row conditions litigation in Missouri and Arkansas. |

**TEACHING/LECTURES/SYMPOSIUMS:**

| | |
|---|---|
| 2016 | Presenter, Criminal Law Seminar, New York University School of Law, October 18, 2016; My role as Federal Court Monitor, New York City Department of Corrections. |
| 2013 | Conducted training session for Civil Rights Civil Liberties Division personnel, Department of Homeland Security, Washington, D.C., June 4, 2013. |
| 2012 | Panelist, *Dialogues on Detention*, Austin, Texas, September 12, 2012, Human Rights First. |
| 2012 | Panelist, *Next Steps in ICE Detention Reform: A Dialogue Among Experts in the Criminal Justice/Corrections and Immigration Detention Systems*, Washington, D.C., Human Rights First, January 30, 2012. |
| 2011 | Panelist, National Institute of Corrections Public Hearings, *Shifting the Focus to Reshape Our Thinking Toward Performance Based Outcomes*, Stanford University, November 2-3, 2011. |
| 2010 | Participant, Department of Homeland Security, "*Roundtable on Mental Health and Immigration Enforcement*," Washington, DC, September 24, 2010**.** |

**STEVE J. MARTIN VITA PAGE 13**
**Teaching/Lectures/Symposiums (continued)**

| | |
|---|---|
| 2009 | Speaker, Texas Criminal Defense Lawyers Association, Seminar, Post Conviction Law and Criminal Administrative Remedies, *Status of Prisoners' Rights in Today's Criminal Justice Arena*, January 9, 2009. |
| 2005 | Testified before Commission on Safety & Abuse in America's Prisons on Staff Use of Force in United States Confinement Settings; April 20, 2005, Tampa, Florida. |
| 2003 | Symposium on Prison Reform, Pace Law School, Judicial Institute and the Open Society; moderator and presenter for Effective Post-PLRA Settlement Models, October 2003. |
| 2001 | Presenter, Southern Methodist University School of Law, Colloquium on the Judicial Work of Judge William Wayne Justice, May 2001. |
| 2000 | Guest Lecturer, University of Minnesota Law School, Institute of Criminal Justice; "Responding to the Crowded Jail, Legal Issues." |
| 1999 | Visiting Scholar, Institute of Criminology and School of Law, Queen's University, Belfast, Ireland; Seminar: "Punishment as Big Business: The Iron Triangle," October 1999. |
| 1999 | Guest Lecturer, New York University School of Law. |
| 1996 | Panelist, Texas Department of Criminal Justice, 3rd Annual Management Conference, "Texas and the National Criminal Justice Debate." |
| 1995 | Guest Lecturer, National Association of Attorneys General Annual Conference; "The Role of Experts in Prison Litigation." |
| 1995 | Testified before the United States Senate Judiciary Committee as a panel member on the Prison Litigation Reform Act. |
| 1990 | Southwest Texas State University, San Marcos, Texas. Adjunct faculty - taught corrections course. |

**STEVE J. MARTIN VITA PAGE 14**
**Teaching/Lectures/Symposiums (continued**)

| | |
|---|---|
| 1989 | St. Edwards University, Austin, Texas.  Adjunct faculty-taught corrections course. |
| 1988 | Technical Assistance Consultant, National Institute of Corrections Boulder, Colorado. |
| 1986 | The University of Texas School of Law, Austin, Texas. Visiting faculty-taught seminar on institutional reform litigation. |
| 1979-1981 | Langston University, Tulsa, Oklahoma.  Adjunct faculty-taught probation and parole, corrections, and criminology courses. |
| 1976-1977 | Pan American University, Edinburg, Texas. Adjunct faculty - taught corrections courses. |
| 1973-1974 | Sam Houston State University, Huntsville, Texas.  Graduate Fellow - taught course in social problems. |

**PUBLICATIONS/PAPERS:**

Kercher, Glen A. And Steve J. Martin, "*Severity of Correctional Officer Behavior in the Prison Environment*," presented before the Texas Academy of Science, Huntsville, Texas, 1975.

Martin, Steve J., and Sheldon Ekland-Olson, Texas Prisons: The Walls Came Tumbling Down, Austin: Texas Monthly Press, 1987.

Ekland-Olson, Sheldon and Steve J. Martin, "*Organizational Compliance with Court-Ordered Reform,*" 22 Law and Society Review 359, 1988.

Martin, Steve J., "*Prisoners' Rights",* Texas Tech Law Review, Volume 20, Symposium 1989, Number 2.

Martin, Steve J., "*Texas Prisons: A Brooding Crisis Behind Bars*", Texas Lawyer, March 13, 1989.

Martin, Steve J., and Sheldon Ekland-Olson, "*Ruiz, A Struggle Over Legitimacy*", Courts, Corrections and the Constitution: The Impact of Judicial Intervention on Prisons and Jails, edited by John J. DiIulio, Jr., Oxford University Press, 1990.

**STEVE J. MARTIN VITA PAGE 15**
**Publications/Papers (continued)**

Martin, Steve J., "*The Celling of Texas*", Texas Observer, January 11, 1991.

Martin, Steve J., "*An End to Ruiz: Shifting the Debate from Rhetoric to Reason*", Texas Public Policy Foundation, April 1995.

Grant, Darlene and Steve Martin, "*Should Prison Reform Litigation Be Curtailed*?" National Council on Crime and Delinquency *Focus*, May 1996.

Martin, Steve J., "Prison Reform Litigation: Shifting the Debate From Rhetoric to Reason," Alan Fortunoff Criminal Justice Colloquium, Center for Research in Crime and Justice of New York University School of Law, February 26, 1996.

Martin, Steve J., Perspectives on Justice, "*Inmates Haven't Changed, Prisons Have*," Los Angeles Times*, July 1998.

Martin, Steve J., "*Sanctioned Violence in American Prisons,*" Building Violence: How America's Rush to Incarcerate Creates More Violence, edited by John May, Sage Publications, Inc., January 2000.

Martin, Steve J., "*Corrections in the New Millennium: The Mean Season,*" Voice for the Defense, Texas Criminal Defense Lawyers Association, Vol.29 Number 2, March 2000.

Martin, Steve J., "Introduction," *Frontiers of Justice, Volume 3: The Crime Zone*, Biddle Publishing Co., Brunswick, Maine, March 2000.

Martin, Steve J., Book Review-Going Up the River: Travels in a Prison Nation, Punishment & Society, *International Journal of Penology*," Vol. 4, Number 1, January 2002.

Martin, Steve J., Book Review-Punishment & Democracy: Three Strikes and You're Out in California, *British Journal of Criminology*, Vol.43, Number 1 Winter 2003.

Martin, Steve J., Book Review-Maconochie's Gentlemen: The Story of Norfolk Island and the Roots of Prison Reform, *British Journal of Criminology*, Vol.43, Number 4 Autumn 2003.

Hill, Debbie, Larry Hammond, Bruce Skolnik, Steve J. Martin and Donna Clement; "*Effective Post-PLRA Settlement Models: A Case Study of Arizona's Protective Segregation Lawsuit*," 24 Pace Law Review 743 (Spring 2004).

Martin, Steve J., Staff *Use of Force in U.S. Confinement Settings*; Commission on Safety and Abuse in America's Prisons, 601 Thirteenth St., N.W., Washington, D. C., *Washington Journal of Law & Policy*, Volume 22 (2006 )

**STEVE J. MARTIN VITA PAGE 16**
**Publications/Papers (continued**

Martin, Steve J., *Staff Use of Force in U. S. Confinement Settings: Lawful Control Versus Corporal Punishment*; Social Justice Quarterly, Vol. 33, No.4 (2007).

Martin, Steve J., *Effective Expert Witnessing in Corrections Litigation: Rules, Relevance & Reliability*, Correctional Law Reporter; Volume XX No.1, June/July 2008.

Martin, Steve J., *A Clarion Call for a National Corrections College,* Correctional Law Reporter; Volume XXIV No. 4, December-January 2012.

Martin, Steve J., *Staff Use of Force in a Confinement Setting: When Is It Really Necessary,* Correctional Law Reporter, Volume XXV No. 1, June-July 2013.

Martin, Steve J., *Use of Force in a Confinement Setting: How Much Is Enough; When Is It Too Much?,* Correctional Law Reporter, Volume XXV No. 6, April-May 2014.

Martin, Steve J., *Staff Use of Force in Confinement Settings: Failure to Act (or When Good Men Do Nothing),* Correctional Law Reporter, Volume XXVI No.3, October/November 2014.

Martin, Steve J., *Kingsley v. Hendrickson: A Real World Application of the Objective Use-ofForce Legal Standard for Pre-Trial Detainees*, Correctional Law Reporter, Volume XXIX No.6, April/May 2018.

Martin, Steve J., *It's Not Just Policing That Needs Reform: Prison Need It, Too*; Washington Post, July 6, 2020.

# **Exhibit C**

**Consent Judgment Non-Compliance Provisions**

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| Section IV, ¶ 1 (Implementation of Use of Force Directive) | Fifth Monitor's Report at pgs. 40 to 41 (dkt. 311), Sixth Monitor's Report at pgs. 40 to 41 (dkt. 317), Seventh Monitor's Report at pgs. 52 to 54 (dkt. 327), Eighth Monitor's Report at pgs. 68 to 69 (dkt. 332), Ninth Monitor's Report at pgs. 79 to 80 (dkt. 341), Tenth Monitor's Report at pgs. 74 to 76 (dkt. 360), and Eleventh Monitor's Report at pgs. 121 to 122 (dkt. 368). |
| Section VII, ¶ 1 (Thorough, Timely, Objective Investigations) | Fifth Monitor's Report at pgs. 92 to 93 (dkt. 311), Sixth Monitor's Report at pgs. 94 to 95 (dkt. 317), Seventh Monitor's Report at pgs. 106 to 107 (dkt. 327), Eighth Monitor's Report at pgs. 136 to 137 (dkt. 332), and Ninth Monitor's Report at pgs. 156 to 157 (dkt. 341). |
| Section VII, ¶ 7 (Timeliness of Preliminary Reviews) | Eighth Monitor's Report at pgs. 145 to 147 (dkt. 332), and Ninth Monitor's Report at pgs. 163 to 164 (dkt. 341). |
| Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations) | Seventh Monitor's Report at pgs. 119 to 125 (dkt. 327), Eighth Monitor's Report at pgs. 149 to 152 (dkt. 332), Ninth Monitor's Report at pg. 167 to 170 (dkt. 341), Tenth Monitor's Report at pg. 151 to 153 (dkt. 360), and Eleventh Monitor's Report at pgs. 222 to 227 (dkt. 368). |
| Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline) | Fourth Monitor's Report at pgs. 165 to 174 (dkt. 305), Fifth Monitor's Report at pgs. 119 to 120 (dkt. 311), Sixth Monitor's Report at pg. 124 to 126 (dkt. 317), Seventh Monitor's Report at pgs. 159 to 161 (dkt. 327), Eighth Monitor's Report at pgs. 185 to 186 (dkt. 332), Ninth Monitor's Report at pg. 208 to 210 (dkt. 341), Tenth Monitor's Report at pg. 181 to 184 (dkt. 360), and Eleventh Monitor's Report at pgs. 121 to 122 (dkt. 368). |

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm) | Seventh Monitor's Report at pgs. 211 to 212 (dkt. 327), Eighth Monitor's Report at pg. 255 (dkt. 332), Ninth Monitor's Report at pg. 288 (dkt. 341), Tenth Monitor's Report at pg. 251 (dkt. 360), and Eleventh Monitor's Report at pgs. 289 (dkt. 368). |
| Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision) | Seventh Monitor's Report at pgs. 222 to 223 (dkt. 327), Eighth Monitor's Report at pgs. 268 to 269 (dkt. 332), and Eleventh Monitor's Report at pgs. 301 to 304 (dkt. 368). |

**Remedial Order Non-Compliance Provisions**

| Remedial Order Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| § A. ¶ 2 (Facility Leadership Responsibilities) | Eleventh Monitor's Report at pgs. 108 to 110 (dkt. 368). |
| § A. ¶ 3 (Revised De-escalation Protocol) | Eleventh Monitor's Report at pgs. 110 to 111 (dkt. 368). |
| § A. ¶ 6 (Facility Emergency Response Teams) | Eleventh Monitor's Report at pgs. 116 to 120 (dkt. 368). |
| § D. ¶ 1 (Consistent Staffing) | Eleventh Monitor's Report at pgs. 304 to 307 (dkt. 368). |
| § D. ¶ 2 (ii) (Tracking of Incentives and Consequences) | Eleventh Monitor's Report at pgs. 317 to 320 (dkt. 368). |
| § D. ¶ 3 (Direct Supervision) | Eleventh Monitor's Report at pgs. 301 to 304 (dkt. 368). |

2

# <u>Exhibit D</u>

**Citations to Monitoring Team Findings re: Supervisory Deficiencies**

| Monitor Report Section | Pages |
|---|---|
| **Second Monitor's Report (dkt. 291)** | |
| Use of Force and Inmate Violence Trends | Pg. 12 |
| **Third Monitor's Report (dkt. 295)** | |
| Use of Force Policy | Pg. 37 |
| Use of Force Investigations | Pg. 128 |
| Current Status of Young Inmates | Pgs. 222-224 |
| **Fourth Monitor's Report (dkt. 305)** | |
| Introduction | Pgs. 7-11 |
| Use of Force Investigations | Pgs. 142-145 |
| Current Status of Young Inmates | Pg. 207 |
| **Fifth Monitor's Report (dkt. 311)** | |
| Staff Use of Force and Inmate Violence Trends During the Fifth Monitoring Period | Pg. 19 |
| Identifying and Addressing Use of Force Misconduct | Pgs. 25-34 |
| Current Status of Young Inmates | Pg. 141 |
| **Sixth Monitor's Report (dkt. 317)** | |
| Introduction | Pg. 5 |
| Identifying and Addressing Use of Force Misconduct | Pg. 29 |
| Use of Force Reporting | Pgs. 102-105, 118-121 |
| **Seventh Monitor's Report (dkt. 327)** | |
| Use of Force Reporting | Pgs. 118-125 |
| **Eighth Monitor's Report (dkt. 332)** | |
| Introduction | Pgs. 4-13 |
| Identifying and Addressing Use of Force Misconduct | Pgs. 34 |
| Use of Force Policy | Pgs. 68-69 |
| Use of Force Investigations | Pgs. 149-152 |
| Risk Management | Pgs. 165-172 |
| Screening and Assignment of Staff | Pgs. 197-203 |
| Inmate Discipline | Pgs. 246-248 |
| Status of 18-Year-Olds Housed on Rikers Island | Pg. 253 |
| **Ninth Monitor's Report (dkt. 341)** | |
| Introduction | Pg. 4 |
| Use of Force and Inmate Violence Trends | Pgs. 24-32 |
| Risk Management | Pgs. 188-195 |
| Risk Management | Pgs. 199-201 |
| Inmate Discipline | Pgs. 277-279 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 284-286 |

| Monitor Report Section | Pages |
|---|---|
| **Tenth Monitor's Report (dkt. 360)** | |
| Use of Force and Inmate Violence Trends | Pgs.15, 22-30, 36-38 |
| Use of Force Policy | Pgs. 74-76 |
| Staff Discipline and Accountability | Pgs. 184-194 |
| Screening and Assignment of Staff | Pgs. 205-209 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 227-228, 240-237, 264-265 |
| **Eleventh Monitor's Report (dkt. 368)** | |
| Introduction | Pgs. 7-15 |
| Use of Force Trends | Pgs. 24-26 |
| Use of Force Data | Pgs. 32-33 |
| Overreliance on Emergency Response Teams | Pgs. 46-50 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 75-81, 90-91 |
| Remedial Order § A | Pgs. 108-113 |
| Use of Force Policy | Pgs. 121-122 |
| Risk Management | Pgs. 208-213 |
| Staff Discipline and Accountability | Pgs. 221 |
| Screening and Assignment of Staff | Pgs. 260-265 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 288, 290, 301-304 |
| **Second Remedial Order Report (dkt. 373)** | |
| Key Priorities | Pgs. 3-4 |

# Exhibit E

**Citations to Monitoring Team Findings re: Security Failures**

| Monitor Report Section | Pages |
|---|---|
| **First Monitor's Report (dkt. 269)** | |
| Introduction | Pgs. 1 to 20 |
| Use of Force in the First Monitoring Period | Pgs. 8 to 18 |
| Safety and Supervision of Inmates Under the Age of 19 | Pgs. 87 to 96 |
| **Second Monitor's Report (dkt. 291)** | |
| Introduction | Pgs. 1 to 9 |
| Use of Force and Inmate Violence During the Second Monitoring Period | Pgs. 9 to 27 |
| Risk Management | Pgs. 108 to 123 |
| Safety and Supervision of Inmates Under the Age of 19 | Pgs. 123 to 138 |
| **Third Monitor's Report (dkt. 295)** | |
| Introduction | Pgs. 1 to 8 |
| Use of Force and Inmate Violence During the Third Monitoring Period | Pgs. 10 to 33 |
| Use of Force Policy | Pgs. 35 to 43 |
| Risk Management | Pgs. 157 to 174 |
| **Fourth Monitor's Report (dkt. 305)** | |
| Introduction | Pgs. 1 to 16 |
| Staff Use of Force and Inmate Violence Trends During the Fourth Monitoring Period | Pgs. 18 to 39 |
| Staff Discipline and Accountability | Pgs. 161 to 182 |
| Trends in Use of Force | Pgs. 205 to 209 |
| **Fifth Monitor's Report (dkt. 311)** | |
| Introduction | Pgs. 1 to 8 |
| Staff Use of Force and Inmate Violence Trends During the Fifth Monitoring Period | Pgs. 10 to 25 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 25 to 38 |
| Current Status of Young Inmates | Pgs. 140 to 150 |
| **Sixth Monitor's Report (dkt. 317)** | |
| Introduction | Pgs. 1 to 8 |
| Staff Use of Force and Inmate Violence Trends During the Sixth Monitoring Period | Pgs. 8 to 18 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 19 to 30 |
| Current Status of Young Inmates | Pgs. 149 to 162 |
| **Seventh Monitor's Report (dkt. 327)** | |
| Introduction | Pgs. 1 to 9 |
| Staff Use of Force and Inmate Violence Trends During the Seventh Monitoring Period | Pgs. 11 to 31 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 31 to 52 |
| Transfer and Management of 16- and 17-Year-Old Youth | Pgs. 190 to 208 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 208 to 228 |

| Monitor Report Section | Pages |
|---|---|
| **Eighth Monitor's Report (dkt. 332)** | |
| Introduction | Pgs. 1 to 16 |
| Staff Use of Force and Inmate Violence Trends During the Eight Monitoring Period | Pgs. 19 to 33 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 34 to 52 |
| Current Status of 16- and 17-Year-Old Youth | Pgs. 218 to 249 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 248 to 272 |
| **Ninth Monitor's Report (dkt. 341)** | |
| Introduction | Pgs. 1 to 13 |
| Use of Force and Inmate Violence Trends During the Ninth Monitoring Period | Pgs. 13 to 41 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 41 to 77 |
| Use of Force Policy | Pgs. 78 to 81 |
| Current Status of 16- and 17-Year-Old Youth | Pgs. 253 to 283 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 283 to 290 |
| **Tenth Monitor's Report (dkt. 360)** | |
| Introduction | Pgs. 1 to 13 |
| Use of Force and Inmate Violence Trends During the Tenth Monitoring Period | Pgs. 13 to 39 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 39 to 74 |
| Use of Force Policy | Pgs. 74 to 77 |
| Current Status of 16- and 17-Year-Old Youth | Pgs. 221 to 33 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 238 to 268 |
| **First Remedial Order Report (dkt. 365)** | |
| Section A. Initiatives to Enhance Safe Custody Management, Improve Staff Supervision and Reduce Unnecessary Uses of Force | Pgs. 2 to 3 |
| **Eleventh Monitor's Report (dkt. 368)** | |
| Introduction | Pgs. 1 to 22 |
| Use of Force Trends During the Eleventh Monitoring Period | Pgs. 22 to 61 |
| Identifying & Addressing Use of Force Misconduct | Pgs. 61 to 104 |
| Use of Force Policy | Pgs. 120 to 125 |
| Status of 18-Year-Olds Housed on Rikers Island | Pgs. 274 to 307 |
| **Second Remedial Order Report (dkt. 373)** | |
| Key Priorities | Pgs. 2 to 4 |