# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                                 :

MARK NUNEZ, et al.,               :

                  Plaintiffs,    :

  - against -             :

CITY OF NEW YORK, et al.,      :

                 Defendants.   :

                                 :  **11 Civ. 5845 (LTS)(JCF)**

--------------------------------------------------------- X
                                 :

UNITED STATES OF AMERICA,   :

             Plaintiff-Intervenor,   :

  - against -             :

CITY OF NEW YORK and NEW YORK CITY :
DEPARTMENT OF CORRECTION,

                 Defendants.   :

--------------------------------------------------------- X

## DECLARATION OF STEVE J. MARTIN

**STEVE J. MARTIN** hereby declares as follows:

1.     I submit this declaration in support of the Parties' proposed Third Remedial Order ("Third Remedial Order").

2.     I am currently the Court-appointed Monitor of the *Nunez* Consent Judgment (Dkt. 249) ("Consent Judgment") and I am responsible for assessing the Department's compliance with the original Consent Judgment, and two subsequent remedial orders designed to address ongoing non-compliance with the Consent Judgment and current conditions of the jails (First Remedial Order Addressing Non-Compliance (Dkt. No. 350) and Second Remedial Order (Dkt. 398)). The Monitoring Team includes professionals with substantial experience and commitment to advancing correctional reform (collectively, "the Monitoring Team"). Team members include the Monitor, Deputy Monitor,

Associate Deputy Monitor, Associate Director, Senior Analyst, and three Subject Matter Experts all of whom reflect diverse professional backgrounds, experiences, and perspectives that help to ensure that the Monitoring Team's work is neutral, independent, balanced, objective, fair, reasonable, and responsible. The Monitoring Team has developed significant expertise in the operations of the New York City Department of Correction as it relates to the use of force, security protocols, and the practices and procedures regarding the imposition of discipline for use of force-related violations. Further, the Monitor and three Subject Matter Experts collectively have over one hundred years of experience in the management, operation, and monitoring of confinement facilities across the country.

3.    I have worked as a corrections professional for almost 50 years, including as a correctional officer, General Counsel of the Texas State Prison System, and expert consultant for the United States Department of Justice, Civil Rights Division, and the United States Department of Homeland Security, Office of Civil Rights and Civil Liberties. I have visited or inspected over 700 confinement facilities in the United States and abroad and have been continuously involved in institutional reform litigation. Since 1987, I have been retained as an expert witness and consultant in more than 200 cases involving correctional facilities, many of which involved allegations of excessive and unnecessary use of force. Notably, I served as one of two Joint Expert Consultants in the remedial phase of *Sheppard v. Phoenix*, 91 Civ. 4141 (RPP) (S.D.N.Y.), an earlier class action brought against Defendant the City of New York (the "City") with respect to use of force in the Central Punitive Segregation Unit. I also was retained as an expert by the plaintiffs in *Ingles v. Toro*, 01 Civ. 8279 (DC) (S.D.N.Y.), another action alleging a pattern and practice of excessive and unnecessary use of force in the City jails. I also served as the consulting expert for Plaintiffs' Class Counsel in this instant matter before my appointment as Monitor. I also have served as a federal court monitor in numerous prisons and state systems, large metropolitan jail systems, and juvenile justice facilities. I keep myself apprised of developments with respect to legal standards, as well as best practices, with respect to use of force by corrections staff and security protocols in general.  A copy of my curriculum vitae is attached to this declaration as **Exhibit A**.

4.    The Monitoring Team has filed eleven monitor's reports with the Court (docket

entries 269, 291, 295, 305, 311, 317, 327, 332, 341, 360, and 368) that have covered the period of October 22, 2015, to December 31, 2020, as well as two Remedial Order reports (Dkt. entries 365 and 373), and six status reports addressing the current conditions at Rikers Island (Dkt. entries 378, 380, 387, 403, and 420) and the imposition of use of force-related discipline (Dkt. 399). Collectively, these reports describe the efforts the Department has taken to implement the requirements of the Consent Judgment, the First and Second Remedial Orders, and the impediments and obstacles that are inhibiting progress to advancing the reforms.

5.     The Department has been found in Non-Compliance[1] with a number of provisions, many for a number of years, directly linked to the foundational elements of practice and procedure that are needed to implement the reforms required by the Consent Judgment and the First and Second Remedial Orders.  *See* Chart of Non-Compliance Provisions, attached as **Exhibit B** for ease of reference.

6.     I have been extensively involved in the negotiation of the Consent Judgment as well as the First and Second Remedial Orders.  The First Remedial Order included four overarching categories of remedial measures—(1) Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force, (2) Improved and Prompt Use of Force Investigations, (3) Timely, Appropriate, and Meaningful Staff Accountability, and (4) 18-Year-Old Incarcerated Individuals at RNDC—as well as proposed modifications to certain Consent Judgment provisions. The Second Remedial Order included six provisions designed to immediately address the current lapses in security management, expanding criteria for Department leadership beyond the uniform ranks, and consideration of appointment of an external Security Operations Manager.

7.     The Eleventh Monitor's Report (Dkt. 368), the Second Remedial Order Report (Dkt. 373), and Status Report on Use of Force Discipline dated September 30, 2021 (Dkt. 399), detail the City's ongoing failure to implement timely, appropriate, and meaningful staff accountability. This has resulted in a significant backlog of cases of over 1,900 cases pending resolution. The Monitor reports have detailed the

---

[1] As defined by Consent Judgment Section XX (Monitoring), ¶ 18.

Department's and the Office of Administrative Trials and Hearings' (OATH) inefficiencies and limited capacity to adequately address disciplinary matters that have consequently resulted in lengthy delays in resolving disciplinary proceedings. The record of Non-Compliance to impose appropriate and meaningful discipline pursuant to Consent Judgment § VIII., (Staff Discipline and Accountability), ¶ 1 is prolonged, *over four years*,[2] and has had a significant negative impact on the Department's ability to progress toward compliance with other components of the Consent Judgment.

8. The remedial measures included in the proposed Third Remedial Order were based on recommendations outlined in the Status Report on Use of Force Discipline dated September 30, 2021. I developed these recommendations based on my professional judgment in collaboration with the professional judgment of the Deputy Monitor and Associate Deputy Monitor.  The three of us, along with the rest of my team, has worked extensively in evaluating the disciplinary process and worked closely with stakeholders from the City, OATH, and the Department.  I also directly participated in the negotiations with the Parties on the development of this Third Remedial Order.

9. The provisions in the proposed Third Remedial Order were extensively negotiated, at arm's-length, and closely analyzed, with the parties mindful of the operational challenges and burdens associated with implementing the relief, and the relief was appropriately tailored to address such concerns while still serving the goal of reducing excessive and unnecessary use of force and violence in the City jails.

10. Recognizing the requirement that remedies should represent the least intrusive means necessary and be tailored to properly address the implicated rights and interests, certain provisions in the proposed Third Remedial Order require the Department to develop and implement certain systems or policies in consultation with the Court-appointed Monitor, thereby preserving the Department's ability to fashion these remedies (in consultation with the Monitor) in an appropriately targeted manner that takes into account any legitimate operational and logistical concerns.

---

[2] The City and DOC have been found to be in Non-Compliance with this provision for four years (beginning with January 2017) covering seven consecutive Monitoring Periods.

11.     As explained in more detail below, I believe that the relief included in the proposed
        Third Remedial Order is necessary to adequately address the continued violations
        occurring as a result of sustained Non-Compliance with provisions of the Consent
        Judgment and is narrowly tailored to properly address the implicated rights and
        interests, and no more intrusive than is necessary to protect incarcerated individuals'
        constitutional rights. The provisions are targeted to remedy the deficiencies identified.

12.     Moreover, the remedial measures included in the proposed Third Remedial Order
        should not have an adverse impact on public safety or the operation of the criminal
        justice system and are consistent with sound security practice, as staff accountability
        is foundational to running a safe system with integrity.

13.     The proposed Third Remedial Order includes five distinct remedial measures
        designed to support timely, appropriate, and meaningful staff accountability. I believe
        each requirement is necessary and narrowly tailored, and these requirements are
        necessary to address the Department's sustained Non-Compliance with implementing
        Appropriate and Meaningful Staff Discipline (Consent Judgment Section VIII, ¶ 1),
        Non-Compliance with the Trials Division staffing requirements (Consent Judgment
        Section VIII, ¶ 4), and resolve the disciplinary case backlog of over 1,900 cases
        ("backlog") as most recently outlined in the Status Report on Use of Force Discipline
        dated September 30, 2021.

14.     **Backlog of Disciplinary Cases Involving Use of Force Violations (¶ 1)**: This
        provision requires the Department to identify, in consultation with the Monitoring
        Team, a group of 400 cases that should be prioritized for closure by April 30, 2022
        ("Priority Backlog Disciplinary Cases").  The Monitoring Team will provide a report
        to the Court by June 30, 2022, which assesses the Department's efforts to resolve the
        Priority Backlog Disciplinary Cases, and the steps that the Monitor recommends be
        taken, including relevant timeframes, to resolve the backlog that remains.  The
        Department will provide a status report on its efforts to address the remaining backlog
        to the Monitor by July 29, 2022.  Given the magnitude of the backlog and the
        complexity of the imposition of discipline, the Monitoring Team believes this
        approach balances the need to aggressively resolve the backlog in a systematic and
        achievable way, while preserving the necessary rights for Staff, and ensuring there is

accountability for sustained violations.

15. **Increased Number of OATH Pre-Trial Conferences (¶ 2 ) & New OATH Procedures and Protocols (¶ 3)**: These provisions require OATH to increase capacity and effectiveness of disciplinary proceedings related to use of force misconduct. Given the increased volume of disciplinary cases pending resolution, the number of pre-trial conferences that OATH must conduct each month must be increased from 50 cases (which was required by Paragraph C.4 of the First Remedial Order) to 150 cases. Along with an increased number of pre-trial conferences, OATH must, in consultation with the Monitor, develop and implement a plan to expeditiously process use of force disciplinary cases. This plan must include an increase in staff for OATH, improved procedures for scheduling and conducting trials, and procedures to encourage prompt agreed-upon resolutions of disciplinary cases when appropriate. All of these elements are necessary to improve the efficiency and effectiveness of OATH's proceedings so that the backlog of disciplinary cases can be eliminated in a reasonable period of time and new cases can be proceeded more timely in the future.

16. **Increased Staffing for Department's Trials Division (¶ 4)**: This provision requires the Defendants to substantially increase the number of attorneys assigned to the Trials Division, and at a minimum assign eight additional attorneys to the Trials Division by December 31, 2021. Increased staffing is necessary to support the work of the Department's Trials Division, as the division has simply been unable to keep pace with the volume of cases which must be processed.

17. **Department Disciplinary Manager (¶ 5)**: This provision requires the Department to designate a senior official to serve as a Disciplinary Manager who will be responsible for managing and shepherding the Department's efforts to comply with the staff accountability requirements of the Consent Judgment, First Remedial Order, and the requirements of this proposed order. This person must have expertise in *all* of the following subject matters: the Department's use of force guidelines, investigation protocols, settlement options, the Department's Trials procedures, and OATH procedures. The individual must also have an ability to work constructively with all stakeholders, including DOC, OATH, and the City, along with a demonstrated commitment to reforming the Department's disciplinary process to ensure cohesive

management of these issues. The Department has selected Deputy Commissioner Sarena Townsend. I have worked with Deputy Commissioner Townsend extensively, over a number of years, and she is highly competent and possesses the qualities and expertise needed to fill this role. I have recognized and reported Deputy Commissioner Townsend's commitment, strong leadership, and creative thinking in multiple Monitor reports.[3] It is necessary for the Department to have this designated role, filled with a highly competent individual, with deep expertise in all relevant subject matters, to maintain responsibility of this initiative as continuity of leadership and oversight of every facet of these initiatives is necessary to ensure these revised procedures result in improved practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 19, 2021.

_____ s/Steve J. Martin
Steve J. Martin
*Monitor*

---

[3] *See* Fifth Monitor's Report at pg. 92 (Dkt. 311), Sixth Monitor's Report at pgs. 92-93 (Dkt. 317), Seventh Monitor's Report at pgs. 104-105 (Dkt. 327), Eighth Monitor's Report at pgs. 128-129 (Dkt. 332), Ninth Monitor's Report at pg. 150 (Dkt. 341), Tenth Monitor's Report at pg. 133 (Dkt. 360), and Eleventh Monitor's Report at pg. 180 (Dkt. 368).

# Exhibit A

# CURRICULUM VITAE

**NAME:**                              Steve J. Martin

**EDUCATION:**

1973                              Bachelor of Science
                                  Criminology and Corrections
                                  Sam Houston State University
                                  Huntsville, Texas

1974                              Master of Arts
                                  Correctional Administration
                                  Sam Houston State University
                                  Huntsville, Texas

1981                              Juris Doctor
                                  University of Tulsa
                                  School of Law
                                  Tulsa, Oklahoma
                                  (Admitted to Texas State Bar-Card #13106550)

**EMPLOYMENT:**

1987-Present                      Corrections Consultant and Attorney

1986-1987                         Gray & Becker, Attorneys at Law
                                  General practice law firm engaged in litigation,
                                  administrative law, civil rights and legislative work.

1985-1986                         Texas Office of the Attorney General, Special Assistant
                                  Attorney General. Worked as a consultant to the Chief of the
                                  Enforcement Division on litigation involving the Texas
                                  Department of Corrections.

(Vita current as of March 2021)

**STEVE J. MARTIN VITA PAGE 2**
**Employment (continued)**

| | |
|---|---|
| 1981-1985 | Texas Department of Corrections, Executive Assistant to the Director (1984-85); General Counsel (1983-85); Legal Counsel (1981-83), Huntsville, Texas. |

As Legal Counsel, I served as the in-house attorney on class action litigation. In 1982, I was given responsibility for providing primary case administration of RUIZ v. ESTELLE (a class action conditions lawsuit in which virtually all operational aspects of the prison system were subject to court orders). From 1983-85, I served as the chief legal officer of the department. I also served as the liaison to the Office of the Special Master in RUIZ as well as liaison to the Office of the Attorney General and the Texas Legislature. From 1984 I also served as the Director's Executive Assistant, an operations position and the third ranking official in the department.

| | |
|---|---|
| 1980-1981 | Tulsa County District Attorney's Office<br>Assistant District Attorney/Legal Intern<br>Tulsa, Oklahoma |

As an Assistant District Attorney/Legal Intern, I provided representation to county jail officials on civil rights litigation filed by county jail prisoners. I also drafted a set of jail standards adopted by the district judges for operation of the jail.

| | |
|---|---|
| 1975-1980 | United States Probation and Parole Office<br>U.S. Probation and Parole Officer<br>McAllen, Texas (1975-77)<br>Tulsa, Oklahoma (1977-80) |

As a probation officer I supervised an average caseload of 50 to 75 probationers and parolees in addition to conducting pre-sentence and pre-trial diversion reports.

| | |
|---|---|
| 1974 | Federal Bureau of Prisons<br>Federal Corrections Institution, Ft. Worth, Texas |

After my first year of graduate school, I worked as a summer Casework Intern for the Director of Mental Health Programs at the facility.

**STEVE J. MARTIN VITA PAGE 3**
**Employment (continued)**

| | |
|---|---|
| 1972-1973 | Texas Department of Corrections, Correctional Officer, Huntsville, Texas. |
| | I was assigned to the Ellis Unit, a maximum security prison, and worked routine security posts such as cellblocks, control center, hall officer, and death row. I also worked at the Goree Unit for female offenders. |

**REPRESENTATIVE PROFESSIONAL ACTIVITIES:**

| | |
|---|---|
| 2015-Present | Appointed as Federal Court Monitor, NUNEZ v. NEW YORK CITY DEPARTMENT OF CORRECTIONS to monitor Consent Judgment related to department use of force, inmate discipline, and supervision of inmates. |
| 2006-Present | Member of Editorial Board, *Correctional Law Reporter.* |
| 2019-Present | Retained as an expert witness, Rivera v. Cameron County Sheriff's Office, regarding the in-custody death from staff Use of force. |
| 2020-Present | Retained as an expert witness, Gutierrez v. Sainz, regarding the execution of a Texas death row prisoner. |
| 2015-2017 | Retained as an expert witness, Cheatham v. Thomas, regarding conditions of confinement at the St. Clair Correctional Facility, Alabama Department of Corrections. |
| 2010-2011 | Retained as an expert witness, Dunlap v. Zavaras, conditions of confinement on death row, Colorado Department of Corrections. |
| 2005-2016 | Retained as an expert witness, T.R., P.R., and K.W. v. SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, class action litigation regarding the treatment of mentally ill inmates in the South Carolina Department of Corrections. |
| 2012-2016 | Appointed as Federal Court Monitor, C.B. v. WALNUT GROVE CORRECTIONAL AUTHORITY, Mississippi, to monitor Consent Decree regarding conditions of confinement. |

**STEVE J. MARTIN VITA PAGE 4**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2013-2016 | Retained as an expert witness, BERNDT v. CDCR, regarding sexual harassment claims by female correctional officers. |
| 2006-2016 | Retained as an expert witness, WILKERSON, et al. v. STALDER, regarding the placement of inmates in long-term segregation at the Louisiana State Penitentiary, Angola. |
| 2013-2015 | Retained as an expert witness, NUNEZ v. CITY OF NEW YORK, class action lawsuit regarding staff use of force in the New York City jails. |
| 2011-2015 | Retained by the Department of Homeland Security, Office for Civil Rights and Civil Liberties as penology expert. |
| 2012-2014 | Retained as an expert witness, ROSAS v. BACA, class action lawsuit regarding staff use of force at the Los Angeles County jails. |
| 2012-2014 | Retained as an expert witness, MASON v. HALE, class action lawsuit regarding conditions of confinement at the Jefferson County Jail, Birmingham, Alabama. |
| 2011-2014 | Retained as expert witness, BOOKER v. CITY AND COUNTY OF DENVER, regarding in-custody death related to staff use of force. |
| 2007-2013 | Retained by the U.S. Attorney's Office, New York City, to examine staff use of force at the Westchester County Jail, White Plains, New York. |
| 2008-2013 | Retained as an expert witness, CARTY v DEJONGH, regarding conditions of confinement at facilities in St. Thomas, Virgin Islands. |
| 2010-2015 | Retained as an expert witness, SHREVE v FRANKLIN COUNTY JAIL, regarding staff use of force. |
| 2010-2013 | Retained as an expert witness, SOLIS v BACA, regarding strip searches at the Los Angeles County Jail. |
| 2011-2014 | Retained by Department of Justice, State of California, as a consultant in the matter of COLEMAN V. BROWN. |

**STEVE J. MARTIN VITA PAGE 5**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2011-2013 | Retained as an expert witness, RODRIGUEZ, et al. v. COUNTY OF LOS ANGELES, et al., regarding use of force. |
| 2013 | National PREA Resource Center, Certified Auditor for Adult Prison, Jail, and Juvenile Facility Standards. |
| 2010-2014 | Appointed as Court Monitor, REYNOLDS v SCHRIRO, to monitor use of restraints by New York City Department of Corrections at the Bellevue and Elmhurst hospitals. |
| 2007-2013 | Retained as a subject matter expert by Federal Court Montior, S.H. v. STICKRATH, to examine/monitor staff use of force, restraints, seclusion, classification, youth disciplinary practices, and youth grievances at the Ohio Department of Youth Services. |
| 2011-2012 | Appointed as Federal Court Monitor, D.D. v. WASHINGTON COUNTY, OHIO, to monitor Consent Decree regarding operations at the WC Juvenile Center. |
| 2011-2012 | Retained as an expert witness, KELLEY v ERICKSEN, regarding placement and conditions of confinement at the Green Bay Correctional Institution, Wisconsin. |
| 2011-2012 | Retained as an expert witness, BLAKE v MAYNARD, regarding excessive use of force claim at the Maryland Reception and Diagnostic Classification Center. |
| 2001-2005 | Appointed as a Court Expert, CARRUTHERS v. JENNE, to examine the conditions of confinement in Broward County Department of Detention, Ft. Lauderdale, Florida. |
| 2003-2012 | Retained as an expert witness in DISABILITY ADVOCATES, INC. v. NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., involving class action civil rights claims regarding the treatment of mentally ill inmates confined to disciplinary segregation, New York State Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 6**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2009-2012 | Retained as an expert witness, HICKS v HETZEL, regarding conditions of confinement at the Donaldson Correctional Facility, Bessemer, Alabama. |
| 2011 | Retained as an expert witness, HAMILTON v HALL, regarding correspondence policies of the Santa Rosa County Jail, Florida. |
| 2004-2011 | Appointed as Court Monitor, GATES v. BARBOUR, to monitor capacity orders for the Mississippi Department of Corrections. |
| 2005-2011 | Retained as an expert witness, FAIRLEY v. ANDREWS, regarding allegations of excessive force in the Cook County Jail, Chicago, Illinois. |
| 2006-2009 | Retained as an expert, DITTIMUS-BEY, et al. v. TAYLOR, et al., regarding conditions of confinement at the Camden County Jail, Camden, New Jersey. |
| 2007-2011 | Retained as an expert witness, VANDEHEY v. VALLARO, regarding use of force at the Garfield County Jail, Colorado. |
| 2008-2011 | Retained as expert witness, SILVERSTEIN v. BOP, regarding confinement at the United States Penitentiary Administrative Maximum ("ADX"), Florence, Colorado. |
| 2010 | Participated as *amici curiae,* SCHWARZENEGGER v. PLATA, regarding prison overcrowding in the California Department of Corrections. |
| 1993-2008 | United States Department of Justice, Civil Rights Division, Special Litigation Section, Corrections Expert. |
| 2005-2008 | Retained as an expert, WILLIAMS v. TASER INTERNATIONAL, INC., regarding use of force at the Gwinnett County Detention Center, Georgia. |
| 2006-2008 | Retained as an expert witness, IKO v. GALLEY, regarding use of force at the Western Correctional Institution, Maryland Department of Public Safety and Correctional Service. |

**STEVE J. MARTIN VITA PAGE 7**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2007 | Participated as *amici curiae*, IQBAL v. ASHCROFT, U. S. Court of Appeals, 2nd Cir., regarding treatment of detainees at the Metropolitan Detention Center, New York City. |
| 2008-2010 | Retained as an expert witness, JACKSON v. GERL, regarding use of force at the Wisconsin Secure Program Facility, Boscobel. |
| 2007-2009 | Retained as an expert witness, YOUNG v. COOK COUNTY, regarding the strip search policies of the Cook County Jail. |
| 2007-2008 | Retained as an expert witness, RUTLEDGE v. COOK COUNTY, regarding staff use of force at the Cook County Jail. |
| 2007 | National Prison Rape Elimination Commission, Standards Development Expert Committee Member; also served as Member of Training Standards Committee. |
| 2006-2007 | Retained as a consulting expert by the State Attorney, 13th Judicial Circuit, Tampa, Florida,  In Re: In-Custody Death of Martin Lee Anderson while confined at the Bay County Boot Camp, Panama City, Florida. |
| 2004-2006 | Retained as an expert witness, INGLES v. TORO, class action use of force litigation involving the New York City Department of Corrections. |
| 2005-2006 | Retained as an expert witness, GILLIS v. LITSCHER, et al., regarding placement of an inmate in the Behavior Management Program, Wisconsin Secure Program Facility. |
| 2005 | American Bar Association, Criminal Justice Section, ABA Standards Committee, Legal Status of Prisoners Task Force Meeting, Participant assisting in the development of ABA Criminal Justice Standards on the Treatment of Prisoners. |
| 2005 | Member, Travis County, Citizen Bond Advisory Committee; Chairman, Sub-Committee on Jails, Travis County, Texas. |

**STEVE J. MARTIN VITA PAGE 8**
**Representative Professional Activities (continued)**

2005 — Participated as *amici curiae*, WILKINSON v. AUSTIN, No. 04-495, Supreme Court of the United States; placement process for inmates in supermax prisons.

2002-2005 — Appointed as Court Monitor, UNITED STATES v. NASSAU COUNTY, to monitor Settlement Agreement on use of force, Nassau County Corrections Center, Long Island, New York.

2002-2005 — Retained as a consultant by the Georgia Attorney General's Office to review use of force practices at the Phillips State Prison, Buford, Georgia.

2003-2004 — Retained as an expert witness, HARGETT v. ADAMS, class action litigation regarding conditions of confinement at the Joliet Treatment & Detention Facility, Illinois.

2003-2004 — Retained as an expert witness, NEW TIMES v. ADAMS, class action litigation regarding censorship practices of the Colorado Department of Corrections.

2002-2004 — Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. LEWIS; criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison.

2003-2004 — Retained as a consultant by the Georgia Attorney General's Office in BURNS v. WETHERINGTON, regarding civil rights claim for failure to protect an inmate at the Lee Arrendale State Prison, Alto, Georgia.

2004 — Retained as a consultant to the Ohio Department of Youth Services on staff use of force.

2004 — Retained as a consultant by the Los Angeles County, Special Counsel, to assist in a report to the Los Angeles County Board of Supervisors on inmate violence in the Los Angeles County jails.

2000-2002 — Appointed as Court Monitor, DOES v. STEWART, to monitor a system-wide class action remedial order on protective segregation for the Arizona Department of Corrections.

**STEVE J. MARTIN VITA PAGE 9**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1998-2002 | Appointed as Court Monitor, SHEPPARD v. PHOENIX, to monitor a court order on use of force in the New York City Department of Corrections, Rikers Island. |
| 2001 | Retained by the US Department of Justice and the U.S. Attorney's Office, Brooklyn, NY to assist in the development of use of force remedial plan for Nassau County Sheriff's Department. |
| 2001 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. POWERS and GARCIA, a criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2001 | Retained by the Los Angeles County Board of Supervisors to evaluate the in-custody restraint death of a detainee. |
| 2001 | Served as a Member of the research team of the Berkman Center, Harvard Law School, to evaluate rehabilitation programs in two Jamaican maximum security prisons. |
| 2000 | Participated as *amici curiae*, ATWATER v. CITY OF LAGO VISTA, No. 99-1408, Supreme Court of the United States, regarding custodial arrests for a non-jailable misdemeanor. |
| 1989-2000 | Retained as an expert witness and consultant, FELICIANO v. COLON, conditions litigation involving the Puerto Rico prison system. |
| 1999-2001 | Retained as an expert, MULDROW v. KEOHANE, litigation regarding the use of restraints, USP, Atlanta, Georgia. |
| 1999-2000 | Retained as an expert, SABATINO v. AMENN, class action litigation on the use of restraints, Erie County Prison, Pennsylvania. |
| 1999-2000 | Retained as a consultant to review Immigration and Naturalization Service Detention Standards, United States Department of Justice. |

**STEVE J. MARTIN VITA PAGE 10**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1996-1999 | Retained as an expert, LEE v. COUGHLIN, litigation involving punitive segregation at Sing Sing/Southport prisons, New York. |
| 1998-1999 | Retained as an expert, SPATES v. IOWA CORRECTIONAL INSTITUTION FOR WOMEN, conditions litigation. |
| 1992-1995 | Retained as an expert witness, MADRID v. GOMEZ, conditions litigation involving Pelican Bay State Prison, California. |
| 1996-1998 | Retained as an expert witness, COLLINS v. ALGARIN, litigation involving excessive force at Montgomery County Jail, Pennsylvania. |
| 1994-1998 | Retained as an expert witness, ALLEN v. CHISHOLM, excessive use of force litigation involving Montana State Prison. |
| 1995-1998 | Retained as an expert witness, BOLTON v. COOMBE, litigation involving double-celling practices at Woodbourne Correctional Facility, New York. |
| 1996-1998 | Retained as an expert witness, SOLOMON v. DELLANA, litigation involving excessive use of force at the Allegheny County Jail, Pittsburgh. |
| 1997-1998 | Retained as an expert witness, BLACKMON v. McCOTTER, litigation involving in-custody death at the Central Utah Correctional Facility. |
| 1997-1998 | Retained as an expert witness, CLARK v. CALIFORNIA, litigation involving treatment of developmentally disabled prisoners in the California Department of Corrections. |
| 1997-1998 | Retained as an expert witness, TATE v. GOMEZ, litigation involving lethal force at the Corcoran State Prison, California. |

**STEVE J. MARTIN VITA PAGE 11**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1994-1995 | Retained as an expert witness by the New York Attorney General's Office, BIN-WAHAD v. COUGHLIN, litigation involving claim of retaliatory transfer in New York Department of Corrections. |
| 1993-1995 | Retained as a consultant to the Texas Comptroller of Public Accounts, Performance Review of the Texas Department of Criminal Justice. |
| 1991-1993 | Gubernatorial appointee to the Texas Punishment Standards Commission; Vice-Chair, Policy Development Committee. |
| 1989-1993 | Retained as a consultant and expert witness on prison and jail litigation by the Texas Attorney General's Office. |
| 1992-1993 | Retained as a consultant, BENJAMIN v. ABATE.  Principal author of Reports of Plaintiffs' Expert Consultants on Conditions in the New York City Jails, Legal Aid Society, New York. |
| 1991-1992 | Staff Director, Study Committee on Judicial Education, Texas Supreme Court.  Principal investigator for the Report on Judicial and Court Personnel Education Programs. |
| 1990-1992 | Retained as an expert witness and consultant, JENSEN v. CLARKE, crowding litigation involving Nebraska State Prison, Lincoln, Nebraska. |
| 1989-1993 | Retained as a consultant on litigation involving numerous county jails including Detroit, Seattle, Houston, Austin and San Antonio. |
| 1989-1991 | Assisted Texas Legislature on the development of criminal justice legislation , 71st and 72nd Sessions. |
| 1988-1989 | Gubernatorial Appointee to Texas Council on Offenders with Mental Impairments; Chairman, Legislative Subcommittee. |
| 1986-1990 | Retained by Corrections Corporation of America, Nashville, Tennessee, to assist in the development and operation of private prison facilities in Texas. |

**STEVE J. MARTIN VITA PAGE 12**
 **Representative Professional Activities (continued)**

| | |
|---|---|
| 1988-1992 | Employed as expert witness by Prison Law Office, San Quentin on litigation involving Vacaville, San Quentin and Tracy prisons. |
| 1987-1993 | Employed as expert witness by Prisoners Legal Services of New York on litigation involving Attica and Elmira prisons. |
| 1987-1989 | Employed as expert witness by NAACP LDF, New York on death row conditions litigation in Missouri and Arkansas. |

**TEACHING/LECTURES/SYMPOSIUMS:**

| | |
|---|---|
| 2016 | Presenter, Criminal Law Seminar, New York University School of Law, October 18, 2016; My role as Federal Court Monitor, New York City Department of Corrections. |
| 2013 | Conducted training session for Civil Rights Civil Liberties Division personnel, Department of Homeland Security, Washington, D.C., June 4, 2013. |
| 2012 | Panelist, *Dialogues on Detention*, Austin, Texas, September 12, 2012, Human Rights First. |
| 2012 | Panelist, *Next Steps in ICE Detention Reform: A Dialogue Among Experts in the Criminal Justice/Corrections and Immigration Detention Systems*, Washington, D.C., Human Rights First, January 30, 2012. |
| 2011 | Panelist, National Institute of Corrections Public Hearings, *Shifting the Focus to Reshape Our Thinking Toward Performance Based Outcomes*, Stanford University, November 2-3, 2011. |
| 2010 | Participant, Department of Homeland Security, "*Roundtable on Mental Health and Immigration Enforcement*," Washington, DC, September 24, 2010. |

**STEVE J. MARTIN VITA PAGE 13**
**Teaching/Lectures/Symposiums (continued**)

2009                               Speaker, Texas Criminal Defense Lawyers Association, Seminar, Post Conviction Law and Criminal Administrative Remedies, *Status of Prisoners' Rights in Today's Criminal Justice Arena*, January 9, 2009.

2005                               Testified before Commission on Safety & Abuse in America's Prisons on Staff Use of Force in United States Confinement Settings; April 20, 2005, Tampa, Florida.

2003                               Symposium on Prison Reform, Pace Law School, Judicial Institute and the Open Society; moderator and presenter for Effective Post-PLRA Settlement Models, October 2003.

2001                               Presenter, Southern Methodist University School of Law, Colloquium on the Judicial Work of Judge William Wayne Justice, May 2001.

2000                               Guest Lecturer, University of Minnesota Law School, Institute of Criminal Justice; "Responding to the Crowded Jail, Legal Issues."

1999                               Visiting Scholar, Institute of Criminology and School of Law, Queen's University, Belfast, Ireland; Seminar: "Punishment as Big Business: The Iron Triangle," October 1999.

1999                               Guest Lecturer, New York University School of Law.

1996                               Panelist, Texas Department of Criminal Justice, 3rd Annual Management Conference, "Texas and the National Criminal Justice Debate."

1995                               Guest Lecturer, National Association of Attorneys General Annual Conference; "The Role of Experts in Prison Litigation."

1995                               Testified before the United States Senate Judiciary Committee as a panel member on the Prison Litigation Reform Act.

1990                               Southwest Texas State University, San Marcos, Texas. Adjunct faculty - taught corrections course.

**STEVE J. MARTIN VITA PAGE 14**
**Teaching/Lectures/Symposiums (continued**)

| | |
|---|---|
| 1989 | St. Edwards University, Austin, Texas.  Adjunct faculty-taught corrections course. |
| 1988 | Technical Assistance Consultant, National Institute of Corrections Boulder, Colorado. |
| 1986 | The University of Texas School of Law, Austin, Texas.  Visiting faculty-taught seminar on institutional reform litigation. |
| 1979-1981 | Langston University, Tulsa, Oklahoma.  Adjunct faculty-taught probation and parole, corrections, and criminology courses. |
| 1976-1977 | Pan American University, Edinburg, Texas. Adjunct faculty - taught corrections courses. |
| 1973-1974 | Sam Houston State University, Huntsville, Texas.  Graduate Fellow - taught course in social problems. |

**PUBLICATIONS/PAPERS:**

Kercher, Glen A. And Steve J. Martin, "*Severity of Correctional Officer Behavior in the Prison Environment,*" presented before the Texas Academy of Science, Huntsville, Texas, 1975.

Martin, Steve J., and Sheldon Ekland-Olson, <u>Texas Prisons: The Walls Came Tumbling Down</u>, Austin: Texas Monthly Press, 1987.

Ekland-Olson, Sheldon and Steve J. Martin, "*Organizational Compliance with Court-Ordered Reform,*" 22 Law and Society Review 359, 1988.

Martin, Steve J., "*Prisoners' Rights",* Texas Tech Law Review, Volume 20, Symposium 1989, Number 2.

Martin, Steve J., "*Texas Prisons: A Brooding Crisis Behind Bars*", Texas Lawyer, March 13, 1989.

Martin, Steve J., and Sheldon Ekland-Olson, "*Ruiz, A Struggle Over Legitimacy*", <u>Courts, Corrections and the Constitution: The Impact of Judicial Intervention on Prisons and Jails</u>, edited by John J. DiIulio, Jr., Oxford University Press, 1990.

**STEVE J. MARTIN VITA PAGE 15**
**Publications/Papers (continued)**

Martin, Steve J., "*The Celling of Texas*", Texas Observer, January 11, 1991.

Martin, Steve J., "*An End to Ruiz: Shifting the Debate from Rhetoric to Reason*", Texas Public Policy Foundation, April 1995.

Grant, Darlene and Steve Martin, "*Should Prison Reform Litigation Be Curtailed*?" National Council on Crime and Delinquency *Focus*, May 1996.

Martin, Steve J., "Prison Reform Litigation: Shifting the Debate From Rhetoric to Reason," Alan Fortunoff Criminal Justice Colloquium, Center for Research in Crime and Justice of New York University School of Law, February 26, 1996.

Martin, Steve J., Perspectives on Justice, "*Inmates Haven't Changed, Prisons Have*," Los Angeles Times*, July 1998.

Martin, Steve J., "*Sanctioned Violence in American Prisons,*" Building Violence: How America's Rush to Incarcerate Creates More Violence, edited by John May, Sage Publications, Inc., January 2000.

Martin, Steve J., "*Corrections in the New Millennium: The Mean Season*," Voice for the Defense, Texas Criminal Defense Lawyers Association, Vol.29 Number 2, March 2000.

Martin, Steve J., "Introduction," *Frontiers of Justice, Volume 3: The Crime Zone*, Biddle Publishing Co., Brunswick, Maine, March 2000.

Martin, Steve J., Book Review-Going Up the River: Travels in a Prison Nation, Punishment & Society, *International Journal of Penology*," Vol. 4, Number 1, January 2002.

Martin, Steve J., Book Review-Punishment & Democracy: Three Strikes and You're Out in California, *British Journal of Criminology*, Vol.43, Number 1 Winter 2003.

Martin, Steve J., Book Review-Maconochie's Gentlemen: The Story of Norfolk Island and the Roots of Prison Reform, *British Journal of Criminology*, Vol.43, Number 4 Autumn 2003.

Hill, Debbie, Larry Hammond, Bruce Skolnik, Steve J. Martin and Donna Clement; "*Effective Post-PLRA Settlement Models: A Case Study of Arizona's Protective Segregation Lawsuit*," 24  Pace Law Review 743 (Spring 2004).

Martin, Steve J., Staff  *Use of Force in U.S. Confinement Settings*; Commission on Safety and Abuse in America's Prisons, 601 Thirteenth St., N.W., Washington, D. C., *Washington  Journal of Law & Policy*, Volume 22 (2006 )

**STEVE J. MARTIN VITA PAGE 16**
**Publications/Papers (continued**

Martin, Steve J., *Staff Use of Force in U. S. Confinement Settings: Lawful Control Versus Corporal Punishment*; Social Justice Quarterly*, Vol. 33, No.4 (2007).

Martin, Steve J., *Effective Expert Witnessing in Corrections Litigation: Rules, Relevance & Reliability*, Correctional Law Reporter*; Volume XX No.1, June/July 2008.

Martin, Steve J., *A Clarion Call for a National Corrections College,* Correctional Law Reporter; Volume XXIV No. 4, December-January 2012.

Martin, Steve J., *Staff Use of Force in a Confinement Setting: When Is It Really Necessary,* Correctional Law Reporter, Volume XXV No. 1, June-July 2013.

Martin, Steve J., *Use of Force in a Confinement Setting: How Much Is Enough; When Is It Too Much?,* Correctional Law Reporter, Volume XXV No. 6, April-May 2014.

Martin, Steve J., *Staff Use of Force in Confinement Settings: Failure to Act (or When Good Men Do Nothing),* Correctional Law Reporter, Volume XXVI No.3, October/November 2014.

Martin, Steve J., *Kingsley v. Hendrickson: A Real World Application of the Objective Use-ofForce Legal Standard for Pre-Trial Detainees*, Correctional Law Reporter, Volume XXIX No.6, April/May 2018.

Martin, Steve J., *It's Not Just Policing That Needs Reform: Prison Need It, Too*; Washington Post, July 6, 2020.

# **<u>Exhibit B</u>**

**Consent Judgment Non-Compliance Provisions**

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
| --- | --- |
| Section IV, ¶ 1 (Implementation of Use of Force Directive) | Fifth Monitor's Report at pgs. 40 to 41 (dkt. 311), Sixth Monitor's Report at pgs. 40 to 41 (dkt. 317), Seventh Monitor's Report at pgs. 52 to 54 (dkt. 327), Eighth Monitor's Report at pgs. 68 to 69 (dkt. 332), Ninth Monitor's Report at pgs. 79 to 80 (dkt. 341), Tenth Monitor's Report at pgs. 74 to 76 (dkt. 360), and Eleventh Monitor's Report at pgs. 121 to 122 (dkt. 368). |
| Section VII, ¶ 1 (Thorough, Timely, Objective Investigations) | Fifth Monitor's Report at pgs. 92 to 93 (dkt. 311), Sixth Monitor's Report at pgs. 94 to 95 (dkt. 317), Seventh Monitor's Report at pgs. 106 to 107 (dkt. 327), Eighth Monitor's Report at pgs. 136 to 137 (dkt. 332), and Ninth Monitor's Report at pgs. 156 to 157 (dkt. 341). |
| Section VII, ¶ 7 (Timeliness of Preliminary Reviews) | Eighth Monitor's Report at pgs. 145 to 147 (dkt. 332), and Ninth Monitor's Report at pgs. 163 to 164 (dkt. 341). |
| Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations) | Seventh Monitor's Report at pgs. 119 to 125 (dkt. 327), Eighth Monitor's Report at pgs. 149 to 152 (dkt. 332), Ninth Monitor's Report at pg. 167 to 170 (dkt. 341), Tenth Monitor's Report at pg. 151 to 153 (dkt. 360), and Eleventh Monitor's Report at pgs. 195 to 196 (dkt. 368). |
| Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline) | Fourth Monitor's Report at pgs. 165 to 174 (dkt. 305), Fifth Monitor's Report at pgs. 119 to 120 (dkt. 311), Sixth Monitor's Report at pg. 124 to 126 (dkt. 317), Seventh Monitor's Report at pgs. 159 to 161 (dkt. 327), Eighth Monitor's Report at pgs. 185 to 186 (dkt. 332), Ninth Monitor's Report at pg. 208 to 210 (dkt. 341), Tenth Monitor's Report at pg. 181 to 184 (dkt. 360), and Eleventh Monitor's Report at pgs. 222 to 227 (dkt. 368). |

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| Section VIII, ¶ 4<br>(Trials Division Staffing) | Eleventh Monitor's Report at pgs. 257 to 258 (dkt. 368). |
| Section XIII, ¶ 5<br>(Re-Training) | Eleventh Monitor's Report at pgs. 161 to 164 (dkt. 368). |
| Section XV, ¶ 1<br>(Inmates Under the Age of 19, Protection from Harm) | Seventh Monitor's Report at pgs. 211 to 212 (dkt. 327),<br>Eighth Monitor's Report at pg. 255 (dkt. 332),<br>Ninth Monitor's Report at pg. 288 (dkt. 341),<br>Tenth Monitor's Report at pg. 251 (dkt. 360), and<br>Eleventh Monitor's Report at pgs. 289 (dkt. 368). |
| Section XV, ¶ 12<br>(Inmates Under the Age of 19, Direct Supervision) | Seventh Monitor's Report at pgs. 222 to 223 (dkt. 327),<br>Eighth Monitor's Report at pgs. 268 to 269 (dkt. 332), and<br>Eleventh Monitor's Report at pgs. 301 to 304 (dkt. 368). |
| Section XV, ¶ 17<br>(Consistent Assignment of Staff) | Eleventh Monitor's Report at pgs. 304 to 307 (dkt. 368). |

**First Remedial Order Non-Compliance Provisions**

| Remedial Order Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| § A. ¶ 2 (Facility Leadership Responsibilities) | Eleventh Monitor's Report at pgs. 108 to 110 (dkt. 368). |
| § A. ¶ 3 (Revised De-escalation Protocol) | Eleventh Monitor's Report at pgs. 110 to 111 (dkt. 368). |
| § A. ¶ 6 (Facility Emergency Response Teams) | Eleventh Monitor's Report at pgs. 116 to 120 (dkt. 368). |
| § D. ¶ 1 (Consistent Staffing) | Eleventh Monitor's Report at pgs. 304 to 307 (dkt. 368). |
| § D. ¶ 2 (ii) (Tracking of Incentives and Consequences) | Eleventh Monitor's Report at pgs. 317 to 320 (dkt. 368). |
| § D. ¶ 3 (Direct Supervision) | Eleventh Monitor's Report at pgs. 301 to 304 (dkt. 368). |