# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                    :

MARK NUNEZ, et al.,                      :
                                    :
                 Plaintiffs,       :
                                    :
    - against -                          :
                                    :
CITY OF NEW YORK, et al.,           :
                                    :
               Defendants.      :
                                    : **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------- X
                                    :

UNITED STATES OF AMERICA,        :
                                    :
              Plaintiff-Intervenor,   :
                                    :
    - against -                          :
                                    :
CITY OF NEW YORK and NEW YORK CITY   :
DEPARTMENT OF CORRECTION,        :
                                    :
              Defendants.      :
------------------------------------------------------------- X

## DECLARATION OF STEVE J. MARTIN

      **STEVE J. MARTIN** hereby declares as follows:

1.      I submit this declaration in support of the Parties' proposed Order on Facility Supervisors, attached as **Exhibit A**.

2.      I am currently the Court-appointed Monitor of the *Nunez* Consent Judgment (Dkt. 249) ("Consent Judgment") and I am responsible for assessing the Department's compliance with the Consent Judgment, the three subsequent remedial orders (First Remedial Order Addressing Non-Compliance (Dkt. No. 350), Second Remedial Order (Dkt. 398), and Third Remedial Order (Dkt. 424)), as well as the Action Plan (Dkt. 465). The Monitoring Team includes professionals with substantial experience and commitment to advancing correctional reform (collectively, "the Monitoring Team"). Team members include the Monitor, Deputy Monitor, Associate Deputy Monitor, Associate Director, Analyst, and

1

three Subject Matter Experts all of whom reflect diverse professional backgrounds, experiences, and perspectives that help to ensure that the Monitoring Team's work is neutral, independent, balanced, objective, fair, reasonable, and responsible. The Monitoring Team has developed significant expertise in the operations of the New York City Department of Correction as it relates to the use of force, security protocols, the practices and procedures regarding the imposition of discipline for use of force-related violations, as well as the overall operations of the jails.  Further, the Monitor and three Subject Matter Experts collectively have over one hundred years of experience in the management, operation, and monitoring of confinement facilities across the country.

3.      I have worked as a corrections professional for 50 years, including as a correctional officer, General Counsel of the Texas State Prison System, and expert consultant for the United States Department of Justice, Civil Rights Division, and the United States Department of Homeland Security, Office of Civil Rights and Civil Liberties. I have visited or inspected over 700 confinement facilities in the United States and abroad and have been continuously involved in institutional reform litigation. Since 1987, I have been retained as an expert witness and consultant in more than 200 cases involving correctional facilities, many of which involved allegations of excessive and unnecessary use of force. Notably, I served as one of two Joint Expert Consultants in the remedial phase of *Sheppard v. Phoenix*, 91 Civ. 4141 (RPP) (S.D.N.Y.), an earlier class action brought against Defendant the City of New York (the "City") with respect to use of force in the Central Punitive Segregation Unit. I also was retained as an expert by the plaintiffs in *Ingles v. Toro*, 01 Civ. 8279 (DC) (S.D.N.Y.), another action alleging a pattern and practice of excessive and unnecessary use of force in the City jails. I also served as the consulting expert for Plaintiffs' Class Counsel in this instant matter before my appointment as Monitor. I also have served as a federal court monitor in numerous prisons and state systems, large metropolitan jail systems, and juvenile justice facilities. I keep myself apprised of developments with respect to legal standards, as well as best practices, with respect to use of force by corrections staff and security protocols in general.  A copy of my curriculum vitae is attached to this declaration as **Exhibit B**.

4.      The Monitoring Team has filed over 25 reports in this case. This includes, among others, twelve bi-annual monitor's reports (docket entries 269, 291, 295, 305, 311,

2

317, 327, 332, 341, 360, 368, and 431), as well as three Remedial Order reports (Dkt. entries 365, 373, and 435), thirteen status reports filed since August 2021 (Dkt. entries 378, 380, 387, 399, 403, 420, 429, 438, 445, 448, 454, 467) and most recently a status report on the Department's progress in implementing the Action Plan (Dkt. 472).

5.     Collectively, these reports describe the efforts the Department has taken to implement the requirements of the Consent Judgment, the First, Second, and Third Remedial Orders, and the Action Plan, and the impediments and obstacles that are inhibiting progress to advance reforms.

6.     The Department has repeatedly been found in Non-Compliance[1] with a number of provisions in the Consent Judgment and First Remedial Order.  *See* Chart of Non-Compliance Provisions, attached as **Exhibit C** for ease of reference.

7.     Underpinning the Department's Non-Compliance is a lack of adequate supervision of uniform staff. Assigning the appropriate individuals to command each facility is necessary to elevate the quality of supervision throughout the facility and make the essential improvements to staff practice become possible. Skill, commitment, and strong leadership are essential for the supervisors in each jail to provide consistent and unwavering reinforcement to staff when modeling, guiding, training, and holding staff accountable to do their responsibilities and duties. A significant number of Facility Wardens have not been adequately supervising their staff and implementing the Use of Force Policy and have been unsuccessful in dismantling the culture that gave rise to the Consent Judgment. There are persistent operational issues, including the use of inadequate or unreasonable security protocols, which contribute to the use of excessive or unnecessary force and the frequency of use of force incidents in general. For years, steps were taken to create the foundation to address these issues, but too many Facility Wardens have simply made no progress in implementing initiatives to reduce the persistent operational issues that have been developed to remedy Non-Compliance throughout the life of the Consent Judgment.

---

[1] As defined by Consent Judgment Section XX (Monitoring), ¶ 18.

8.     Further, the Monitoring Team's observation of facility practices and various leadership meetings suggest that a number of Facility Wardens have not embraced, and in some cases have not quite grasped, what is needed for the task at hand. The current group of Facility Wardens alone are not capable of dismantling the dysfunctional/abusive culture at the facilities and replacing it with one built on dignity, respect, and problem-solving. Therefore, I have long recommended that the criteria for who may serve on facility leadership teams (*e.g*., Warden) must be expanded so that the Department is no longer limited to ***only*** selecting individuals from the current uniform ranks so that the Department may appoint qualified individuals from the broader corrections community with the required skills and willingness to improve the state of facility operations. (*See* Status letter to the Court dated September 23, 2021 (Dkt. 387), Eleventh Monitor's Report at pg. 15 (Dkt. 368), and Twelfth Monitor's Report at pgs. 13 (Dkt. 368)).

9.     In response to this recommendation, the Second Remedial Order (Dkt. 398) required the City to confer with relevant State leadership to determine how the Department could address the Monitoring Team's recommendation regarding expanded criteria for who may serve as Facility Wardens. To address this requirement, the Department created an alternative leadership structure in which it intended to appoint Senior Correctional Administrators to work *alongside* uniform Wardens. (*See* Special Report dated March 16, 2022 (Dkt. 438) pgs. 56-57). This approach had limitations, which the Monitoring Team outlined in its June 10, 2022 letter to the Court (Dkt. 462) and June 30, 2022 Status Report (Dkt. 467) at pgs. 8 to 9.

10.    The Department's attempt to implement an alternative leadership structure has proven inadequate and has not addressed the needs identified in the preceding paragraphs. The alternative leadership structure further reinforced that the Department must have the ability to seek the most capable and qualified candidates, including those from outside the Department, to serve in the position of Warden to ensure the success of the reform effort. *See* Status Report to the Court dated October 28, 2022 (Dkt. 472) at pgs. 4, 7, and 81.

11.    To support the overall reform effort and implement the requirements of the Consent Judgment, Remedial Orders, and the Action Plan (Dkt. 465), it is necessary that the

Department have the ability to appoint Wardens who are not encumbered by the longstanding and deeply entrenched dysfunctional patterns and practices in the agency that run counter to sound correctional practices and have the required skills and willingness to improve the state of facility operations and the ability to inspire, encourage, and motivate staff to embrace the new practices that are at the heart of the reform effort, as less intrusive means have proven unable to address the issue.

12. Recognizing the requirement that remedies should represent the least intrusive means necessary and be tailored to properly address the implicated rights and interests, the provision in the proposed Order to expand the criteria for Facility Wardens was carefully crafted, keeping in mind the operational challenges and burdens associated with implementing the relief, and the relief was appropriately tailored to address such concerns.

13. I believe that the relief included in the proposed Order is necessary to correct the violation of Federal rights at issue in this matter. It is necessary to correct the unsafe conditions in the jails and the Department's inability to implement the requirements of the Consent Judgment and other orders This relief is no more intrusive than is necessary to protect incarcerated individuals' constitutional rights and is appropriately targeted to remedy the deficiency identified. Finally, the alternative options that have been attempted are not adequate to address the depth of the problem described in paragraph 11 and I am not aware of any other relief that will allow the Department to correct the inadequate supervision by Facility Wardens except the relief in the proposed Order.

14. Moreover, the remedial measure included in the proposed Order should not have an adverse impact on public safety or the operation of the criminal justice system, in fact it should have the opposite effect and *improve* safety, and is consistent with sound security practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 30, 2022.

_____ s/Steve J. Martin
Steve J. Martin
*Monitor*

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                        :

MARK NUNEZ, et al.,                          :
                                        :

                  Plaintiffs,        :
                                        :

   - against -                             :
                                        :

CITY OF NEW YORK, et al.,           :
                                        :

                Defendants.      :
                                        : **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------- X
                                        :

UNITED STATES OF AMERICA,      :
                                         :

                Plaintiff-Intervenor,  :
                                         :

   - against -                             :
                                        :

CITY OF NEW YORK and NEW YORK CITY   :
DEPARTMENT OF CORRECTION,         :
                                        :

                Defendants.      :
------------------------------------------------------------- X

## PROPOSED ORDER ON FACILITY SUPERVISORS

        **WHEREAS**, the Nunez Monitor has recommended on various occasions that the City of New York ("the City") and the New York City Department of Correction ("DOC") expand the criteria for those who can hold the position of warden within the DOC;

        **WHEREAS,** in numerous submissions to the Court, the Monitor has repeatedly attributed the ongoing non-compliance with core provisions of the Consent Judgment to the inadequate supervision of line-level uniformed staff provided by those who hold facility leadership positions, and has concluded that facility leaders, including some of those who have been promoted during the pendency of the Consent Judgment, have proven to lack the ability to implement the reforms required by the Consent Judgment;

        **WHEREAS**, the Monitor stated that the Department "must expand the criteria for who may serve on Facility leadership teams, so the Department is not limited to selecting individuals from the uniform ranks." *Monitor's 11th Monitor's Report, dated May 11, 2021, p. 15;*

**WHEREAS**, the Monitor stated that the Department must "broaden the criteria of candidates who may serve in these roles, which will allow for the selection of individuals based on their breadth of experience and demonstrated effectiveness as leaders. Only then, with the right people at the top of the Facility hierarchy, will the vision for elevating the quality of supervision further down the chain of command and the essential improvements to Staff practice become possible." *Monitor's 11th Report, p. 15*;

**WHEREAS**, the Monitor stated "[t]he Department has long struggled with adequate supervision of its Staff in the effort to properly implement the UOF directive. Unfortunately, over the past five years, the Wardens and Deputy Wardens have not been successful in dismantling the culture that gave rise to the Consent Judgment." *Monitor's 11th Report, pgs. 8-9;*

**WHEREAS**, the Monitor continued to recommend the infusion of those with external expertise, and stated that "[t]he criteria for who may serve on Facility leadership teams (e.g. Warden) must be expanded so that the Department is no longer limited to only selecting individuals from the current uniform ranks. Instead, the Department must have the ability to also seek managers, from the broader corrections community, with the required skills and willingness to improve the state of facility operations." *Monitor's September 23, 2021 Status Letter to the Court, p. 7.*

**WHEREAS**, the Monitor continued that "[t]he Department must improve its security practices. An overhaul of security practices can only occur with an expansion of in-house expertise, particularly [] those individuals who serve as facility leaders who are responsible for reinforcing sound practice… ." *Monitor's 12th Monitor's Report, dated December 6, 2021, p. 13*;

**WHEREAS**, as detailed in the City's declaration, the City and the Department's efforts to work within the existing statutory framework to enhance facility leadership has been unsuccessful;

**WHEREAS**, at the May 24, 2022 status conference, the Department set forth a plan to support and improve the effectiveness of the current uniformed Wardens, whereby each facility would be led by one uniformed Warden and one civilian Assistant Commissioner who would report directly to the Associate Commissioner of Operations, and would infuse external knowledge and oversight at the facility level;

**WHEREAS**, as detailed in the City's declaration, the Department's plan set forth in Spring 2022 proved unsuccessful, for reasons the Department ascribes to the dual supervisory structure and a dearth of qualified external candidates willing to accept the co-leadership positions;

**WHEREAS**, the City now believes it is legally appropriate to seek an Order from this Court that would permit the Department to hire facility leadership at the Warden level from outside the Department's current uniformed ranks;

**WHEREAS**, the Monitor has submitted a Declaration setting forth the rationale and basis for his belief that the remedial measures included in this Order are necessary to correct the violation of a Federal Right, explaining no other relief will correct the violation, and explaining the approach taken in tailoring the proposal to properly address the implicated rights and interests;

**NOW**, **THEREFORE**, the Plaintiff Class, the United States, and the Defendants stipulate and agree, and **IT IS HEREBY ORDERED**, **ADJUDGED**, **AND DECREED** as follows:

1.  The City shall establish a new position titled "Facility Supervisor," which shall replace the position formerly known as "Warden." The City shall establish and classify the title "Facility Supervisor" in the classified service as a non-competitive title. Defendants shall not be not limited to promoting only uniformed staff into the Facility Supervisor position but instead can also hire qualified individuals outside of current Department uniformed staff who have demonstrated corrections expertise and served as effective supervisors of corrections facilities. Defendants shall promptly seek to recruit and identify qualified candidates from outside the Department who meet these criteria and are committed to implementing the reforms required under the Consent Judgment, the prior Remedial Orders, and the Action Plan. Selection of a Facility Supervisor need not be made by competitive examination, and instead can be made through a resume and interview process.

2.  To the extent that any requirements under state and local laws or regulations are inconsistent with the terms of the relief set forth in this order, including by not limited to New York State Civil Service Law §§ 20, 50, 51, 52, 65, Correction Law § 120, Public Officer Law § 3, and New York City Administrative Code § 9-117, this order shall supersede the requirements of such laws and regulations.

3.  Nothing herein should be construed as denying the opportunity of qualified current Department uniformed staff from seeking, applying for, or ultimately obtaining a promotion to a Facility Supervisor position.

4.  The Parties stipulate and agree, and the Court finds, that this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a)(1)(A) and (B). The Parties further stipulate and agree, and the Court finds, that the prospective relief in this Order is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is narrowly drawn and extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, will not have an adverse impact on public safety or the operation of a criminal justice system, and is required by federal law and no other relief will correct the violation of the federal rights as alleged by the United States and the Plaintiff Class. Accordingly, the Parties agree and represent, and the Court finds, that the Order complies with the provisions of 18 U.S.C. § 3626(a)(1)(A) and (B).

FOR THE UNITED STATES:

DAMIAN WILLIAMS
United States Attorney for the Southern District of New York

By: *[signature: Jeffrey Powell]*

      JEFFREY K. POWELL
      LARA K. ESHKENAZI
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, NY 10007
      Telephone: (212) 637-2706/2758
      Email: Jeffrey.Powell@usdoj.gov
              Lara.Eshkenazi@usdoj.gov


FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By: _____

      MARY LYNNE WERLWAS
      KAYLA SIMPSON
      DAVID BILLINGSLEY
      KATHERINE HAAS
      199 Water Street, 6th Floor
      New York, New York 10038
      Telephone: (212) 577-3530
      Email:    mlwerlwas@legal-aid.org
              ksimpson@legal-aid.org
              dbillingsley@legal-aid.org
              khaas@legal-aid.org

FOR THE UNITED STATES:

DAMIAN WILLIAMS
United States Attorney for the Southern District of New York

By: _____

      JEFFREY K. POWELL
      LARA K. ESHKENAZI
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, NY  10007
      Telephone: (212) 637-2706/2758
      Email:  Jeffrey.Powell@usdoj.gov
             Lara.Eshkenazi@usdoj.gov


FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY

By:    /s/
_____
      MARY LYNNE WERLWAS
      KAYLA SIMPSON
      DAVID BILLINGSLEY
      KATHERINE HAAS
      199 Water Street, 6th Floor
      New York, New York  10038
      Telephone: (212) 577-3530
      Email:    mlwerlwas@legal-aid.org
             ksimpson@legal-aid.org
             dbillingsley@legal-aid.org
             khaas@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____/s/_____ _____
     JONATHAN S. ABADY
     DEBBIE GREENBERGER
     NAIRUBY BECKLES

     600 Fifth Avenue, 10th Floor
     New York, NY 10020
     Telephone: (212) 763-5000

     Email:    jabady@ecbalaw.com
               dgreenbergerg@ecbalaw.com
               nbeckles@ecbawm.com

FOR DEFENDANTS CITY OF NEW YORK AND DEPARTMENT OF CORRECTION:

SYLVIA O. HINDS-RADIX

Corporation Counsel for the City of New York

By:  _____

       KIMBERLY JOYCE
       100 Church Street
       New York, New York  10007
       Telephone: (212) 356-2650
       Email:  kjoyce@law.nyc.gov

                SO ORDERED this _____ day of _____, 2022


                _____

                LAURA TAYLOR SWAIN

                UNITED STATES DISTRICT JUDGE

# <u>Exhibit B</u>

# CURRICULUM VITAE

**NAME:**                              Steve J. Martin

**EDUCATION:**

1973                         Bachelor of Science
                             Criminology and Corrections
                             Sam Houston State University
                             Huntsville, Texas

1974                         Master of Arts
                             Correctional Administration
                             Sam Houston State University
                             Huntsville, Texas

1981                         Juris Doctor
                             University of Tulsa
                             School of Law
                             Tulsa, Oklahoma
                             (Admitted to Texas State Bar-Card #13106550)

**EMPLOYMENT:**

1987-Present                 Corrections Consultant and Attorney

1986-1987                    Gray & Becker, Attorneys at Law
                             General practice law firm engaged in litigation,
                             administrative law, civil rights and legislative work.

1985-1986                    Texas Office of the Attorney General, Special Assistant
                             Attorney General. Worked as a consultant to the Chief of the
                             Enforcement Division on litigation involving the Texas
                             Department of Corrections.

(Vita current as of March 2021)

**STEVE J. MARTIN VITA PAGE 2**
**Employment (continued)**

| | |
|---|---|
| 1981-1985 | Texas Department of Corrections, Executive Assistant to the Director (1984-85); General Counsel (1983-85); Legal Counsel (1981-83), Huntsville, Texas. |

As Legal Counsel, I served as the in-house attorney on class action litigation. In 1982, I was given responsibility for providing primary case administration of RUIZ v. ESTELLE (a class action conditions lawsuit in which virtually all operational aspects of the prison system were subject to court orders). From 1983-85, I served as the chief legal officer of the department. I also served as the liaison to the Office of the Special Master in RUIZ as well as liaison to the Office of the Attorney General and the Texas Legislature. From 1984 I also served as the Director's Executive Assistant, an operations position and the third ranking official in the department.

1980-1981　　　　　　Tulsa County District Attorney's Office
　　　　　　　　　　　Assistant District Attorney/Legal Intern
　　　　　　　　　　　Tulsa, Oklahoma

As an Assistant District Attorney/Legal Intern, I provided representation to county jail officials on civil rights litigation filed by county jail prisoners. I also drafted a set of jail standards adopted by the district judges for operation of the jail.

1975-1980　　　　　　United States Probation and Parole Office
　　　　　　　　　　　U.S. Probation and Parole Officer
　　　　　　　　　　　McAllen, Texas (1975-77)
　　　　　　　　　　　Tulsa, Oklahoma (1977-80)

As a probation officer I supervised an average caseload of 50 to 75 probationers and parolees in addition to conducting pre-sentence and pre-trial diversion reports.

1974　　　　　　　　Federal Bureau of Prisons
　　　　　　　　　　　Federal Corrections Institution, Ft. Worth, Texas

After my first year of graduate school, I worked as a summer Casework Intern for the Director of Mental Health Programs at the facility.

**STEVE J. MARTIN VITA PAGE 3**
**Employment (continued)**

| | |
|---|---|
| 1972-1973 | Texas Department of Corrections, Correctional Officer, Huntsville, Texas. |
| | I was assigned to the Ellis Unit, a maximum security prison, and worked routine security posts such as cellblocks, control center, hall officer, and death row. I also worked at the Goree Unit for female offenders. |

**REPRESENTATIVE PROFESSIONAL ACTIVITIES:**

| | |
|---|---|
| 2015-Present | Appointed as Federal Court Monitor, NUNEZ v. NEW YORK CITY DEPARTMENT OF CORRECTIONS to monitor Consent Judgment related to department use of force, inmate discipline, and supervision of inmates. |
| 2006-Present | Member of Editorial Board, *Correctional Law Reporter*. |
| 2019-Present | Retained as an expert witness, Rivera v. Cameron County Sheriff's Office, regarding the in-custody death from staff Use of force. |
| 2020-Present | Retained as an expert witness, Gutierrez v. Sainz, regarding the execution of a Texas death row prisoner. |
| 2015-2017 | Retained as an expert witness, Cheatham v. Thomas, regarding conditions of confinement at the St. Clair Correctional Facility, Alabama Department of Corrections. |
| 2010-2011 | Retained as an expert witness, Dunlap v. Zavaras, conditions of confinement on death row, Colorado Department of Corrections. |
| 2005-2016 | Retained as an expert witness, T.R., P.R., and K.W. v. SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, class action litigation regarding the treatment of mentally ill inmates in the South Carolina Department of Corrections. |
| 2012-2016 | Appointed as Federal Court Monitor, C.B. v. WALNUT GROVE CORRECTIONAL AUTHORITY, Mississippi, to monitor Consent Decree regarding conditions of confinement. |

**STEVE J. MARTIN VITA PAGE 4**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2013-2016 | Retained as an expert witness, BERNDT v. CDCR, regarding sexual harassment claims by female correctional officers. |
| 2006-2016 | Retained as an expert witness, WILKERSON, et al. v. STALDER, regarding the placement of inmates in long-term segregation at the Louisiana State Penitentiary, Angola. |
| 2013-2015 | Retained as an expert witness, NUNEZ v. CITY OF NEW YORK, class action lawsuit regarding staff use of force in the New York City jails. |
| 2011-2015 | Retained by the Department of Homeland Security, Office for Civil Rights and Civil Liberties as penology expert. |
| 2012-2014 | Retained as an expert witness, ROSAS v. BACA, class action lawsuit regarding staff use of force at the Los Angeles County jails. |
| 2012-2014 | Retained as an expert witness, MASON v. HALE, class action lawsuit regarding conditions of confinement at the Jefferson County Jail, Birmingham, Alabama. |
| 2011-2014 | Retained as expert witness, BOOKER v. CITY AND COUNTY OF DENVER, regarding in-custody death related to staff use of force. |
| 2007-2013 | Retained by the U.S. Attorney's Office, New York City, to examine staff use of force at the Westchester County Jail, White Plains, New York. |
| 2008-2013 | Retained as an expert witness, CARTY v DEJONGH, regarding conditions of confinement at facilities in St. Thomas, Virgin Islands. |
| 2010-2015 | Retained as an expert witness, SHREVE v FRANKLIN COUNTY JAIL, regarding staff use of force. |
| 2010-2013 | Retained as an expert witness, SOLIS v BACA, regarding strip searches at the Los Angeles County Jail. |
| 2011-2014 | Retained by Department of Justice, State of California, as a consultant in the matter of COLEMAN V. BROWN. |

**STEVE J. MARTIN VITA PAGE 5**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2011-2013 | Retained as an expert witness, RODRIGUEZ, et al. v. COUNTY OF LOS ANGELES, et al., regarding use of force. |
| 2013 | National PREA Resource Center, Certified Auditor for Adult Prison, Jail, and Juvenile Facility Standards. |
| 2010-2014 | Appointed as Court Monitor, REYNOLDS v SCHRIRO, to monitor use of restraints by New York City Department of Corrections at the Bellevue and Elmhurst hospitals. |
| 2007-2013 | Retained as a subject matter expert by Federal Court Montior, S.H. v. STICKRATH, to examine/monitor staff use of force, restraints, seclusion, classification, youth disciplinary practices, and youth grievances at the Ohio Department of Youth Services. |
| 2011-2012 | Appointed as Federal Court Monitor, D.D. v. WASHINGTON COUNTY, OHIO, to monitor Consent Decree regarding operations at the WC Juvenile Center. |
| 2011-2012 | Retained as an expert witness, KELLEY v ERICKSEN, regarding placement and conditions of confinement at the Green Bay Correctional Institution, Wisconsin. |
| 2011-2012 | Retained as an expert witness, BLAKE v MAYNARD, regarding excessive use of force claim at the Maryland Reception and Diagnostic Classification Center. |
| 2001-2005 | Appointed as a Court Expert, CARRUTHERS v. JENNE, to examine the conditions of confinement in Broward County Department of Detention, Ft. Lauderdale, Florida. |
| 2003-2012 | Retained as an expert witness in DISABILITY ADVOCATES, INC. v. NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., involving class action civil rights claims regarding the treatment of mentally ill inmates confined to disciplinary segregation, New York State Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 6**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2009-2012 | Retained as an expert witness, HICKS v HETZEL, regarding conditions of confinement at the Donaldson Correctional Facility, Bessemer, Alabama. |
| 2011 | Retained as an expert witness, HAMILTON v HALL, regarding correspondence policies of the Santa Rosa County Jail, Florida. |
| 2004-2011 | Appointed as Court Monitor, GATES v. BARBOUR, to monitor capacity orders for the Mississippi Department of Corrections. |
| 2005-2011 | Retained as an expert witness, FAIRLEY v. ANDREWS, regarding allegations of excessive force in the Cook County Jail, Chicago, Illinois. |
| 2006-2009 | Retained as an expert, DITTIMUS-BEY, et al. v. TAYLOR, et al., regarding conditions of confinement at the Camden County Jail, Camden, New Jersey. |
| 2007-2011 | Retained as an expert witness, VANDEHEY v. VALLARO, regarding use of force at the Garfield County Jail, Colorado. |
| 2008-2011 | Retained as expert witness, SILVERSTEIN v. BOP, regarding confinement at the United States Penitentiary Administrative Maximum ("ADX"), Florence, Colorado. |
| 2010 | Participated as *amici curiae,* SCHWARZENEGGER v. PLATA, regarding prison overcrowding in the California Department of Corrections. |
| 1993-2008 | United States Department of Justice, Civil Rights Division, Special Litigation Section, Corrections Expert. |
| 2005-2008 | Retained as an expert, WILLIAMS v. TASER INTERNATIONAL, INC., regarding use of force at the Gwinnett County Detention Center, Georgia. |
| 2006-2008 | Retained as an expert witness, IKO v. GALLEY, regarding use of force at the Western Correctional Institution, Maryland Department of Public Safety and Correctional Service. |

**STEVE J. MARTIN VITA PAGE 7**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2007 | Participated as *amici curiae*, IQBAL v. ASHCROFT, U. S. Court of Appeals, 2nd Cir., regarding treatment of detainees at the Metropolitan Detention Center, New York City. |
| 2008-2010 | Retained as an expert witness, JACKSON v. GERL, regarding use of force at the Wisconsin Secure Program Facility, Boscobel. |
| 2007-2009 | Retained as an expert witness, YOUNG v. COOK COUNTY, regarding the strip search policies of the Cook County Jail. |
| 2007-2008 | Retained as an expert witness, RUTLEDGE v. COOK COUNTY, regarding staff use of force at the Cook County Jail. |
| 2007 | National Prison Rape Elimination Commission, Standards Development Expert Committee Member; also served as Member of Training Standards Committee. |
| 2006-2007 | Retained as a consulting expert by the State Attorney, 13th Judicial Circuit, Tampa, Florida, In Re: In-Custody Death of Martin Lee Anderson while confined at the Bay County Boot Camp, Panama City, Florida. |
| 2004-2006 | Retained as an expert witness, INGLES v. TORO, class action use of force litigation involving the New York City Department of Corrections. |
| 2005-2006 | Retained as an expert witness, GILLIS v. LITSCHER, et al., regarding placement of an inmate in the Behavior Management Program, Wisconsin Secure Program Facility. |
| 2005 | American Bar Association, Criminal Justice Section, ABA Standards Committee, Legal Status of Prisoners Task Force Meeting, Participant assisting in the development of ABA Criminal Justice Standards on the Treatment of Prisoners. |
| 2005 | Member, Travis County, Citizen Bond Advisory Committee; Chairman, Sub-Committee on Jails, Travis County, Texas. |

**STEVE J. MARTIN VITA PAGE 8**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2005 | Participated as *amici curiae*, WILKINSON v. AUSTIN, No. 04-495, Supreme Court of the United States; placement process for inmates in supermax prisons. |
| 2002-2005 | Appointed as Court Monitor, UNITED STATES v. NASSAU COUNTY, to monitor Settlement Agreement on use of force, Nassau County Corrections Center, Long Island, New York. |
| 2002-2005 | Retained as a consultant by the Georgia Attorney General's Office to review use of force practices at the Phillips State Prison, Buford, Georgia. |
| 2003-2004 | Retained as an expert witness, HARGETT v. ADAMS, class action litigation regarding conditions of confinement at the Joliet Treatment & Detention Facility, Illinois. |
| 2003-2004 | Retained as an expert witness, NEW TIMES v. ADAMS, class action litigation regarding censorship practices of the Colorado Department of Corrections. |
| 2002-2004 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. LEWIS; criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2003-2004 | Retained as a consultant by the Georgia Attorney General's Office in BURNS v. WETHERINGTON, regarding civil rights claim for failure to protect an inmate at the Lee Arrendale State Prison, Alto, Georgia. |
| 2004 | Retained as a consultant to the Ohio Department of Youth Services on staff use of force. |
| 2004 | Retained as a consultant by the Los Angeles County, Special Counsel, to assist in a report to the Los Angeles County Board of Supervisors on inmate violence in the Los Angeles County jails. |
| 2000-2002 | Appointed as Court Monitor, DOES v. STEWART, to monitor a system-wide class action remedial order on protective segregation for the Arizona Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 9**
**Representative Professional Activities (continued**)

| | |
|---|---|
| 1998-2002 | Appointed as Court Monitor, SHEPPARD v. PHOENIX, to monitor a court order on use of force in the New York City Department of Corrections, Rikers Island. |
| 2001 | Retained by the US Department of Justice and the U.S. Attorney's Office, Brooklyn, NY to assist in the development of use of force remedial plan for Nassau County Sheriff's Department. |
| 2001 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. POWERS and GARCIA, a criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2001 | Retained by the Los Angeles County Board of Supervisors to evaluate the in-custody restraint death of a detainee. |
| 2001 | Served as a Member of the research team of the Berkman Center, Harvard Law School, to evaluate rehabilitation programs in two Jamaican maximum security prisons. |
| 2000 | Participated as *amici curiae*, ATWATER v. CITY OF LAGO VISTA, No. 99-1408, Supreme Court of the United States, regarding custodial arrests for a non-jailable misdemeanor. |
| 1989-2000 | Retained as an expert witness and consultant, FELICIANO v. COLON, conditions litigation involving the Puerto Rico prison system. |
| 1999-2001 | Retained as an expert, MULDROW v. KEOHANE, litigation regarding the use of restraints, USP, Atlanta, Georgia. |
| 1999-2000 | Retained as an expert, SABATINO v. AMENN, class action litigation on the use of restraints, Erie County Prison, Pennsylvania. |
| 1999-2000 | Retained as a consultant to review Immigration and Naturalization Service Detention Standards, United States Department of Justice. |

**STEVE J. MARTIN VITA PAGE 10**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1996-1999 | Retained as an expert, LEE v. COUGHLIN, litigation involving punitive segregation at Sing Sing/Southport prisons, New York. |
| 1998-1999 | Retained as an expert, SPATES v. IOWA CORRECTIONAL INSTITUTION FOR WOMEN, conditions litigation. |
| 1992-1995 | Retained as an expert witness, MADRID v. GOMEZ, conditions litigation involving Pelican Bay State Prison, California. |
| 1996-1998 | Retained as an expert witness, COLLINS v. ALGARIN, litigation involving excessive force at Montgomery County Jail, Pennsylvania. |
| 1994-1998 | Retained as an expert witness, ALLEN v. CHISHOLM, excessive use of force litigation involving Montana State Prison. |
| 1995-1998 | Retained as an expert witness, BOLTON v. COOMBE, litigation involving double-celling practices at Woodbourne Correctional Facility, New York. |
| 1996-1998 | Retained as an expert witness, SOLOMON v. DELLANA, litigation involving excessive use of force at the Allegheny County Jail, Pittsburgh. |
| 1997-1998 | Retained as an expert witness, BLACKMON v. McCOTTER, litigation involving in-custody death at the Central Utah Correctional Facility. |
| 1997-1998 | Retained as an expert witness, CLARK v. CALIFORNIA, litigation involving treatment of developmentally disabled prisoners in the California Department of Corrections. |
| 1997-1998 | Retained as an expert witness, TATE v. GOMEZ, litigation involving lethal force at the Corcoran State Prison, California. |

**STEVE J. MARTIN VITA PAGE 11**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1994-1995 | Retained as an expert witness by the New York Attorney General's Office, BIN-WAHAD v. COUGHLIN, litigation involving claim of retaliatory transfer in New York Department of Corrections. |
| 1993-1995 | Retained as a consultant to the Texas Comptroller of Public Accounts, Performance Review of the Texas Department of Criminal Justice. |
| 1991-1993 | Gubernatorial appointee to the Texas Punishment Standards Commission; Vice-Chair, Policy Development Committee. |
| 1989-1993 | Retained as a consultant and expert witness on prison and jail litigation by the Texas Attorney General's Office. |
| 1992-1993 | Retained as a consultant, BENJAMIN v. ABATE. Principal author of Reports of Plaintiffs' Expert Consultants on Conditions in the New York City Jails, Legal Aid Society, New York. |
| 1991-1992 | Staff Director, Study Committee on Judicial Education, Texas Supreme Court. Principal investigator for the Report on Judicial and Court Personnel Education Programs. |
| 1990-1992 | Retained as an expert witness and consultant, JENSEN v. CLARKE, crowding litigation involving Nebraska State Prison, Lincoln, Nebraska. |
| 1989-1993 | Retained as a consultant on litigation involving numerous county jails including Detroit, Seattle, Houston, Austin and San Antonio. |
| 1989-1991 | Assisted Texas Legislature on the development of criminal justice legislation , 71st and 72nd Sessions. |
| 1988-1989 | Gubernatorial Appointee to Texas Council on Offenders with Mental Impairments; Chairman, Legislative Subcommittee. |
| 1986-1990 | Retained by Corrections Corporation of America, Nashville, Tennessee, to assist in the development and operation of private prison facilities in Texas. |

**STEVE J. MARTIN VITA PAGE 12**
 **Representative Professional Activities (continued)**

| | |
|---|---|
| 1988-1992 | Employed as expert witness by Prison Law Office, San Quentin on litigation involving Vacaville, San Quentin and Tracy prisons. |
| 1987-1993 | Employed as expert witness by Prisoners Legal Services of New York on litigation involving Attica and Elmira prisons. |
| 1987-1989 | Employed as expert witness by NAACP LDF, New York on death row conditions litigation in Missouri and Arkansas. |

**TEACHING/LECTURES/SYMPOSIUMS:**

| | |
|---|---|
| 2016 | Presenter, Criminal Law Seminar, New York University School of Law, October 18, 2016; My role as Federal Court Monitor, New York City Department of Corrections. |
| 2013 | Conducted training session for Civil Rights Civil Liberties Division personnel, Department of Homeland Security, Washington, D.C., June 4, 2013. |
| 2012 | Panelist, *Dialogues on Detention*, Austin, Texas, September 12, 2012, Human Rights First. |
| 2012 | Panelist, *Next Steps in ICE Detention Reform: A Dialogue Among Experts in the Criminal Justice/Corrections and Immigration Detention Systems*, Washington, D.C., Human Rights First, January 30, 2012. |
| 2011 | Panelist, National Institute of Corrections Public Hearings, *Shifting the Focus to Reshape Our Thinking Toward Performance Based Outcomes*, Stanford University, November 2-3, 2011. |
| 2010 | Participant, Department of Homeland Security, "*Roundtable on Mental Health and Immigration Enforcement*," Washington, DC, September 24, 2010**.** |

**STEVE J. MARTIN VITA PAGE 13**
**Teaching/Lectures/Symposiums (continued**)

| | |
|---|---|
| 2009 | Speaker, Texas Criminal Defense Lawyers Association, Seminar, Post Conviction Law and Criminal Administrative Remedies, *Status of Prisoners' Rights in Today's Criminal Justice Arena*, January 9, 2009. |
| 2005 | Testified before Commission on Safety & Abuse in America's Prisons on Staff Use of Force in United States Confinement Settings; April 20, 2005, Tampa, Florida. |
| 2003 | Symposium on Prison Reform, Pace Law School, Judicial Institute and the Open Society; moderator and presenter for Effective Post-PLRA Settlement Models, October 2003. |
| 2001 | Presenter, Southern Methodist University School of Law, Colloquium on the Judicial Work of Judge William Wayne Justice, May 2001. |
| 2000 | Guest Lecturer, University of Minnesota Law School, Institute of Criminal Justice; "Responding to the Crowded Jail, Legal Issues." |
| 1999 | Visiting Scholar, Institute of Criminology and School of Law, Queen's University, Belfast, Ireland; Seminar: "Punishment as Big Business: The Iron Triangle," October 1999. |
| 1999 | Guest Lecturer, New York University School of Law. |
| 1996 | Panelist, Texas Department of Criminal Justice, 3rd Annual Management Conference, "Texas and the National Criminal Justice Debate." |
| 1995 | Guest Lecturer, National Association of Attorneys General Annual Conference; "The Role of Experts in Prison Litigation." |
| 1995 | Testified before the United States Senate Judiciary Committee as a panel member on the Prison Litigation Reform Act. |
| 1990 | Southwest Texas State University, San Marcos, Texas. Adjunct faculty - taught corrections course. |

**STEVE J. MARTIN VITA PAGE 14**
**Teaching/Lectures/Symposiums (continued**)

| | |
|---|---|
| 1989 | St. Edwards University, Austin, Texas. Adjunct faculty-taught corrections course. |
| 1988 | Technical Assistance Consultant, National Institute of Corrections Boulder, Colorado. |
| 1986 | The University of Texas School of Law, Austin, Texas. Visiting faculty-taught seminar on institutional reform litigation. |
| 1979-1981 | Langston University, Tulsa, Oklahoma. Adjunct faculty-taught probation and parole, corrections, and criminology courses. |
| 1976-1977 | Pan American University, Edinburg, Texas. Adjunct faculty - taught corrections courses. |
| 1973-1974 | Sam Houston State University, Huntsville, Texas. Graduate Fellow - taught course in social problems. |

**PUBLICATIONS/PAPERS:**

Kercher, Glen A. And Steve J. Martin, "*Severity of Correctional Officer Behavior in the Prison Environment,*" presented before the Texas Academy of Science, Huntsville, Texas, 1975.

Martin, Steve J., and Sheldon Ekland-Olson, Texas Prisons: The Walls Came Tumbling Down, Austin: Texas Monthly Press, 1987.

Ekland-Olson, Sheldon and Steve J. Martin, "*Organizational Compliance with Court-Ordered Reform,*" 22 Law and Society Review 359, 1988.

Martin, Steve J., "*Prisoners' Rights",* Texas Tech Law Review, Volume 20, Symposium 1989, Number 2.

Martin, Steve J., "*Texas Prisons: A Brooding Crisis Behind Bars*", Texas Lawyer, March 13, 1989.

Martin, Steve J., and Sheldon Ekland-Olson, "*Ruiz, A Struggle Over Legitimacy*", Courts, Corrections and the Constitution: The Impact of Judicial Intervention on Prisons and Jails, edited by John J. DiIulio, Jr., Oxford University Press, 1990.

**STEVE J. MARTIN VITA PAGE 15**
**Publications/Papers (continued)**

Martin, Steve J., "*The Celling of Texas*", Texas Observer, January 11, 1991.

Martin, Steve J., "*An End to Ruiz: Shifting the Debate from Rhetoric to Reason*", Texas Public Policy Foundation, April 1995.

Grant, Darlene and Steve Martin, "*Should Prison Reform Litigation Be Curtailed*?" National Council on Crime and Delinquency *Focus*, May 1996.

Martin, Steve J., "Prison Reform Litigation: Shifting the Debate From Rhetoric to Reason," Alan Fortunoff Criminal Justice Colloquium, Center for Research in Crime and Justice of New York University School of Law, February 26, 1996.

Martin, Steve J., Perspectives on Justice, "*Inmates Haven't Changed, Prisons Have*," Los Angeles Times*, July 1998.

Martin, Steve J., "*Sanctioned Violence in American Prisons,*" <u>Building Violence: How America's Rush to Incarcerate Creates More Violence</u>, edited by John May, Sage Publications, Inc., January 2000.

Martin, Steve J., "*Corrections in the New Millennium: The Mean Season*," Voice for the Defense, Texas Criminal Defense Lawyers Association, Vol.29 Number 2, March 2000.

Martin, Steve J., "Introduction," *Frontiers of Justice, Volume 3: The Crime Zone*, Biddle Publishing Co., Brunswick, Maine, March 2000.

Martin, Steve J., Book Review-<u>Going Up the River: Travels in a Prison Nation, Punishment & Society</u>, *International Journal of Penology*," Vol. 4, Number 1, January 2002.

Martin, Steve J., Book Review-<u>Punishment & Democracy: Three Strikes and You're Out in California</u>, *British Journal of Criminology*, Vol.43, Number 1 Winter 2003.

Martin, Steve J., Book Review-<u>Maconochie's Gentlemen: The Story of Norfolk Island and the Roots of Prison Reform</u>, *British Journal of Criminology*, Vol.43, Number 4 Autumn 2003.

Hill, Debbie, Larry Hammond, Bruce Skolnik, Steve J. Martin and Donna Clement; "*Effective Post-PLRA Settlement Models: A Case Study of Arizona's Protective Segregation Lawsuit,*" 24 Pace Law Review 743 (Spring 2004).

Martin, Steve J., Staff *Use of Force in U.S. Confinement Settings*; Commission on Safety and Abuse in America's Prisons, 601 Thirteenth St., N.W., Washington, D. C., *Washington Journal of Law & Policy*, Volume 22 (2006 )

**STEVE J. MARTIN VITA PAGE 16**
**Publications/Papers (continued**

Martin, Steve J., *Staff Use of Force in U. S. Confinement Settings: Lawful Control Versus Corporal Punishment*; Social Justice Quarterly, Vol. 33, No.4 (2007).

Martin, Steve J., *Effective Expert Witnessing in Corrections Litigation: Rules, Relevance & Reliability*, Correctional Law Reporter; Volume XX No.1, June/July 2008.

Martin, Steve J., *A Clarion Call for a National Corrections College,* Correctional Law Reporter; Volume XXIV No. 4, December-January 2012.

Martin, Steve J., *Staff Use of Force in a Confinement Setting: When Is It Really Necessary,* Correctional Law Reporter, Volume XXV No. 1, June-July 2013.

Martin, Steve J., *Use of Force in a Confinement Setting: How Much Is Enough; When Is It Too Much?,* Correctional Law Reporter, Volume XXV No. 6, April-May 2014.

Martin, Steve J., *Staff Use of Force in Confinement Settings: Failure to Act (or When Good Men Do Nothing),* Correctional Law Reporter, Volume XXVI No.3, October/November 2014.

Martin, Steve J., *Kingsley v. Hendrickson: A Real World Application of the Objective Use-ofForce Legal Standard for Pre-Trial Detainees*, Correctional Law Reporter, Volume XXIX No.6, April/May 2018.

Martin, Steve J., *It's Not Just Policing That Needs Reform: Prison Need It, Too*; Washington Post, July 6, 2020.

# **<u>Exhibit C</u>**

**Consent Judgment Non-Compliance Provisions**

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| Section IV, ¶ 1 (Implementation of Use of Force Directive) | Fifth Monitor's Report at pgs. 40 to 41 (dkt. 311), Sixth Monitor's Report at pgs. 40 to 41 (dkt. 317), Seventh Monitor's Report at pgs. 52 to 54 (dkt. 327), Eighth Monitor's Report at pgs. 68 to 69 (dkt. 332), Ninth Monitor's Report at pgs. 79 to 80 (dkt. 341), Tenth Monitor's Report at pgs. 74 to 76 (dkt. 360), Eleventh Monitor's Report at pgs. 121 to 122 (dkt. 368), Twelfth Monitor's Report at pgs. 52-54 (dkt. 431), and Second Status Report on DOC's Action Plan at pg. 121 (dkt. 472). |
| Section VII, ¶ 1 (Thorough, Timely, Objective Investigations) | Fifth Monitor's Report at pgs. 92 to 93 (dkt. 311), Sixth Monitor's Report at pgs. 94 to 95 (dkt. 317), Seventh Monitor's Report at pgs. 106 to 107 (dkt. 327), Eighth Monitor's Report at pgs. 136 to 137 (dkt. 332), and Ninth Monitor's Report at pgs. 156 to 157 (dkt. 341).[1] |
| Section VII, ¶ 7 (Timeliness of Preliminary Reviews) | Eighth Monitor's Report at pgs. 145 to 147 (dkt. 332), and Ninth Monitor's Report at pgs. 163 to 164 (dkt. 341).[2] |
| Section VII, ¶ 9(a) (Timeliness of Full ID Investigations) | Seventh Monitor's Report at pgs. 119 to 125 (dkt. 327), Eighth Monitor's Report at pgs. 149 to 152 (dkt. 332), Ninth Monitor's Report at pg. 167 to 170 (dkt. 341), Tenth Monitor's Report at pg. 151 to 153 (dkt. 360), Eleventh Monitor's Report at pgs. 195 to 196 (dkt. 368), Twelfth Monitor's Report at pg. 86 (dkt. 431), and Second Status Report on DOC's Action Plan at pgs. 136-140 (dkt. 472). |
| Section X, ¶ 1 | Twelfth Monitor's Report at pgs. 92-94 (dkt. 431).[3] |

---

[1] The Department moved out of Non-Compliance in the Tenth Monitor's Report at pgs. 140-141.

[2] The Department moved out of Non-Compliance in the Tenth Monitor's Report at pgs. 148-149.

[3] The Department moved out of Non-Compliance in the 2nd Status Report on DOC's Action Plan at pgs. 141-144.

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| (Early Warning System) | |
| Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline) | Fourth Monitor's Report at pgs. 165 to 174 (dkt. 305), Fifth Monitor's Report at pgs. 119 to 120 (dkt. 311), Sixth Monitor's Report at pg. 124 to 126 (dkt. 317), Seventh Monitor's Report at pgs. 159 to 161 (dkt. 327), Eighth Monitor's Report at pgs. 185 to 186 (dkt. 332), Ninth Monitor's Report at pg. 208 to 210 (dkt. 341), Tenth Monitor's Report at pg. 181 to 184 (dkt. 360), Eleventh Monitor's Report at pgs. 222 to 227 (dkt. 368), and Twelfth Monitor's Report at pgs. 97-101 (dkt. 431).[4] |
| Section VIII, ¶ 3(c) (Expeditiously Prosecuting Cases) | Twelfth Monitor's Report at pgs. 108-113 (dkt. 431).[5] |
| Section VIII, ¶ 4 (Trials Division Staffing) | Eleventh Monitor's Report at pgs. 257 to 258 (dkt. 368), and Twelfth Monitor's Report at pg. 115 (dkt. 431).[6] |
| Section XIII, ¶ 5 (Re-Training) | Eleventh Monitor's Report at pgs. 161 to 164 (dkt. 368), and Twelfth Monitor's Report at pgs. 71-73 (dkt. 431).[7] |
| Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm) | Seventh Monitor's Report at pgs. 211 to 212 (dkt. 327), Eighth Monitor's Report at pg. 255 (dkt. 332), Ninth Monitor's Report at pg. 288 (dkt. 341), Tenth Monitor's Report at pg. 251 (dkt. 360), Eleventh Monitor's Report at pgs. 289 (dkt. 368), Twelfth Monitor's Report at pgs. 123-124 (dkt. 431), and Second Status Report on DOC's Action Plan at pg. 171 (dkt. 472). |

[4] The Department moved out of Non-Compliance in the 2nd Status Report on DOC's Action Plan at pgs. 145-159.
[5] The Department moved out of Non-Compliance in the 2nd Status Report on DOC's Action Plan at pgs. 145-159.
[6] The Department moved out of Non-Compliance in the 2nd Status Report on DOC's Action Plan at pgs. 167-169.
[7] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

2

| Consent Judgment Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| Section XV, ¶ 2 (Daily Inspections) | Twelfth Monitor's Report at pg. 125 (dkt. 431).[8] |
| Section XV, ¶ 5 (Programming) | Twelfth Monitor's Report at pgs. 126-127 (dkt. 431).[9] |
| Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision) | Seventh Monitor's Report at pgs. 222 to 223 (dkt. 327), Eighth Monitor's Report at pgs. 268 to 269 (dkt. 332), Eleventh Monitor's Report at pgs. 301 to 304 (dkt. 368), and Twelfth Monitor's Report at pgs. 128-129 (dkt. 431).[10] |
| Section XV, ¶ 17 (Consistent Assignment of Staff) | Eleventh Monitor's Report at pgs. 304 to 307 (dkt. 368), Twelfth Monitor's Report at pgs. 129-131 (dkt. 431), and Second Status Report on DOC's Action Plan at pg. 172 (dkt. 472). |
| Section XVI, ¶ 6 (Continuum of Disciplinary Options) | Twelfth Monitor's Report at pgs. 132-133 (dkt. 431).[11] |

---

[8] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

[9] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

[10] This provision was not rated in the Second Status Report on DOC's Action Plan (dkt. 472).

[11] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

**First Remedial Order Non-Compliance Provisions**

| Remedial Order Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| § A. ¶ 2<br>(Facility Leadership Responsibilities) | Eleventh Monitor's Report at pgs. 108 to 110 (dkt. 368), Twelfth Monitor's Report at pgs. 42-43 (dkt. 431), and Second Status Report on DOC's Action Plan at pg. 108 (dkt. 472). |
| § A. ¶ 3<br>(Revised De-escalation Protocol) | Eleventh Monitor's Report at pgs. 110 to 111 (dkt. 368) and Twelfth Monitor's Report at pgs. 43-44 (dkt. 431).[12] |
| § A. ¶ 4<br>(Supervision of Captains) | Twelfth Monitor's Report at pgs. 44-45 (dkt. 431), and Second Status Report on DOC's Action Plan at pg. 115 (dkt. 472). |
| § A. ¶ 6<br>(Facility Emergency Response Teams) | Eleventh Monitor's Report at pgs. 116 to 120 (dkt. 368) Twelfth Monitor's Report at pgs. 49-51 (dkt. 431), and Second Status Report on DOC's Action Plan at pg. 119 (dkt. 472). |
| § C. ¶ 3<br>(Expeditious Prosecution of Disciplinary Cases) | Twelfth Monitor's Report at pgs. 108-113 (dkt. 431).[13] |
| § D. ¶ 1<br>(Consistent Staffing) | Eleventh Monitor's Report at pgs. 304 to 307 (dkt. 368), and Twelfth Monitor's Report at pgs. 129-131 (dkt. 431).[14] |
| § D. ¶ 2 (ii)<br>(Tracking of Incentives and Consequences) | Eleventh Monitor's Report at pgs. 317 to 320 (dkt. 368), and Twelfth Monitor's Report at pgs. 133-134 (dkt. 431).[15] |
| § D. ¶ 2 (iv) | Twelfth Monitor's Report at pgs. 134-135 (dkt. 431).[16] |

---

[12] The Department moved out of Non-Compliance in the Second Status Report on DOC's Action Plan at pgs. 108-112.

[13] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

[14] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

[15] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

[16] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).

| Remedial Order Provision | Monitor Report Citations to Non-Compliance Ratings |
|---|---|
| (Metrics for Incentives and Consequences) | |
| § D. ¶ 3<br>(Direct Supervision) | Eleventh Monitor's Report at pgs. 301 to 304 (dkt. 368), and Twelfth Monitor's Report at pgs. 128-129 (dkt. 431).[17] |
| § D. ¶ 3(i)<br>(Reinforcement of Direct Supervision) | Twelfth Monitor's Report at pgs. 128-129 (dkt. 431).[18] |

---

[17] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).
[18] The assessment of compliance for this provision was suspended for the time period covering January 1, 2022 to December 31, 2022 per the Action Plan (dkt. 465).