# EXHIBIT 48


**THE
LEGAL AID
SOCIETY
CRIMINAL
DEFENSE**

Prisoners' Rights Project
199 Water Street
New York, NY 10038
T (212) 577-3530
www.legal-aid.org

Blaine (Fin) V. Fogg
*President*

Janet E. Sabel
*Attorney-in-Chief
Chief Executive Officer*

Mary Lynne Werlwas
*Director
Prisoners' Rights Project*

*Sent via email to tgiovann@law.nyc.gov and kjoyce@law.nyc.gov.*

June 25, 2019

Zachary Carter
*Attn*: Thomas Giovanni and Kimberly Joyce, *Of Counsel*
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

Steve J. Martin
*Nuñez* Independent Monitor
135 West 41st Street, 5th Floor
New York, NY 10036

**Re: Non-Compliance with Consent Judgment in *Nuñez v. City of New York*, 11-CV-5845-LTS.**

Dear Counsel and Monitor Martin:

We write pursuant to Section XXI, ¶ 2 of the Consent Judgment in *Nuñez v. City of New York*, 11-CV-5845-LTS ("Consent Judgment"), to provide notice that we believe the Defendants are not in compliance with the Court's order in several respects. We specifically wish to address Defendants' non-compliance with the following core provisions:

1. Section IV, ¶ 1: Implementation of Use of Force Directive
2. Section VII, ¶ 1: Thorough, Timely, Objective Investigations
3. Section VII, ¶ 7: Preliminary Reviews
4. Section VII, ¶ 9: Full ID Investigations
5. Section VII, ¶ 11: ID Staffing
6. Section VIII, ¶ 1: Timely, Appropriate, and Meaningful Staff Accountability
7. Section XV, ¶ 1: Inmates Under the Age of 19, Prevent Fight/Assault [18-year-olds]
8. Section XV, ¶ 12: Inmates Under the Age of 19, Direct Supervision [18-year-olds]
9. Section XV, ¶ 17: Inmates Under the Age of 19, Consistent Assignment of Staff [18-year-olds]

While Defendants are also in non-compliance with other provisions of the Consent Judgment as set forth in Section II, at this time we wish to prioritize the above-referenced core Non-Compliance issues in order to focus our discussions regarding potential remedial measures.

After seven Monitoring Periods under the Consent Judgment, Defendants still have not met many of its important requirements. As a result, as the *Nuñez* Independent Monitor ("Monitor") noted in his

**Justice in Every Borough.**

Seventh Report, "[t]he Department simply is failing to achieve compliance with the core goals of the Consent Judgment."[1] The Monitor describes the ensuing dire circumstances in Department of Correction ("the Department" or "DOC") facilities:

> "By any measure, the Department is not meeting its obligations as the number of uses of force continues to climb, reaching the highest level in December 2018...since the Consent Judgment went into effect. Additionally, when bringing an incident under control, the degree of injury, as well as the needless and gratuitous infliction of pain which may not result in visible or identifiable injury, are important hallmarks of 'excessive and unnecessary force' and, thus, were at the center of the concerns that gave rise to the Consent Judgment. Staff actions can and often do result in varying degrees of bodily pain with no visible or identifiable injury, e.g., chokeholds, takedowns, wall slams, OC, painful escorts holds, body strikes, etc. Such actions also contribute significantly to a destructive culture, and the Monitoring Team remains very concerned that such actions on the part of Staff are not being successfully addressed and remain largely unchecked. Therefore, of equal concern to the sheer volume of incidents (and problematic incidents in particular), is DOC's response when Staff have engaged in misconduct—the agency's record of assessing misconduct, as well as imposing discipline for such misconduct is woefully inadequate, as set out throughout this report."[2]

These observations echo a pattern of non-compliance identified by the Monitor in prior reports, including the Sixth Report:

> "Despite significant effort by the Department, these measures simply have not yielded the results necessary to materially advance the overarching goals of the Consent Judgment...there remains a significant disconnect between the goals of those governing the agency and those of the on-the-ground operators who have daily contact with the inmates incarcerated in the 12 Facilities managed by the Department."[3]

### I. Nine Priority Compliance Issues

Implementation of Use of Force Directive: Section IV, ¶ 1

The Monitor found the Department to be in Non-Compliance with its obligation to implement a new Use of Force ("UOF") policy.[4] This is the third consecutive Monitoring Period in which the Monitor has found the Department was not compliant with this provision.[5]

---

[1] Seventh Report of the *Nuñez* Independent Monitor (ECF No. 327, April 18, 2019), pp. 187-188.
[2] Seventh Report, p. 11.
[3] Sixth Report of the *Nuñez* Independent Monitor (ECF No. 317, October 17, 2018), p. 4.
[4] Seventh Report, pp. 52-54.

**Justice in Every Borough.**

The definition of "implement[ing]" a policy in Section III, ¶ 17 of the Consent Judgment includes "consistently following, applying, or using the policy."[6] As the Monitor noted in the Seventh Report, "[i]mplementing the New Directive requires not only informing and training relevant Staff, but also consistently following and applying the policy...clearly demonstrating that Staff's practices are aligned with policy and the Consent Judgment."[7] The Monitoring Team described the vast scope of the Department's failure to implement an adequate UOF policy, writing:

> "[T]he Monitoring Team is extremely concerned about the current state of use of force within the agency. Unnecessary and excessive force is occurring too frequently and is often precipitated by Staff's behavior. Furthermore, the overall volume of UOF suggests that the Department has yet to effectively address the dynamics underlying inmate violence or to improve Staff's skill in relating to inmates, de-escalating tensions, and resolving interpersonal conflict in any meaningful way...the continued upward trend in the UOF rate and the sheer number of instances in which force is unnecessary and/or excessive clearly illustrate that the Department has yet to achieve the necessary reductions in harmful practices to demonstrate compliance."[8]

Given the increasing UOF rate and the frequency with which staff still utilize unnecessary and excessive force, Defendants are not in compliance with the requirement to implement the new UOF Policy.

<u>Thorough, Timely, Objective Investigations: Section VII, ¶ 1</u>

The Monitor found the Department to be in Non-Compliance with its obligation to conduct thorough, timely, objective investigations of all UOF incidents.[9] This provision is critical, and this is the third consecutive Monitoring Period where the Department has received a Non-Compliance rating.[10] As the Sixth Report warns, "[i]nvestigations into potential use of force-related misconduct are at the core of the *Nuñez* reforms."[11] The Seventh Report likewise emphasizes the importance of this section, advising that "[h]igh-quality investigations are essential to stemming the tide of unnecessary and excessive force that is so prevalent in the Department."[12]

The Monitor found that ID investigations "still suffer from serious deficiencies which have not changed appreciably from Monitoring Period to Monitoring Period," deeming them "inconsistent in quality" and noting that they "take too long to close."[13] The Monitor noted the following deficiencies in ID investigations reviewed this Monitoring Period: "(1) investigators did not properly

---

[5] Fifth Report of the *Nuñez* Independent Monitor (ECF No. 311, April 18, 2018), p. 41 ("Fifth Report"); Sixth Report, p. 41.
[6] *See* Consent Judgment § III (Definitions), ¶ 17, definition of "implement."
[7] Seventh Report, p. 53.
[8] *Id.*
[9] Seventh Report, p. 95.
[10] Fifth Report, p. 93; Sixth Report, p. 95.
[11] Sixth Report, p. 92.
[12] Seventh Report, p. 104.
[13] Seventh Report, p. 106.

**Justice in Every Borough.**

investigate *all* issues; (2) investigators disregarded video evidence or unreasonably assessed the video evidence; and (3) the investigators' conclusions were not justified based on the preponderance of the evidence."[14] Further, the Monitor concluded that "the findings of Facility investigations were generally not reliable, as they often ignored objective evidence, with analysis that is *pro forma*."[15][16]

With regard to the thoroughness, timeliness, and objectivity of both Facility and ID investigations, the Department is in Non-Compliance and the implications for its failure in this regard are severe.

Preliminary Reviews: Section VII, ¶ 7, Timeliness

Although the Monitor found the Department generally to be in Partial Compliance with its obligation to conduct Preliminary Reviews, we believe the information in the Seventh Report supports a finding of Non-Compliance with respect to the timing of the Preliminary Reviews.[17] The Monitor noted a "particular concern" with "the protracted time for completion" of these reviews.[18] During the Seventh Monitoring Period, the Department averaged 53 days—an increase from an average of 41 days in the Sixth Monitoring Period—to complete Preliminary Reviews, which have a 5-day time limit.[19] In addition, and even more concerning, Preliminary Reviews for 1,617 UOF incidents, or 46% of the total UOF incidents during the period, were still pending and had not been fully completed as of the end of the Seventh Monitoring Period.[20] This data clearly demonstrate Non-Compliance with the five-day deadline.

Full ID Investigations: Section VII, ¶ 9(a), Timeliness

The Monitor found the Department to be in Non-Compliance with its obligation to complete Full ID investigations within the required timeframe, which is now 120 days and was 180 days before October 2018. The Monitor concluded that "[t]he overwhelming majority of investigations have not closed within the Consent Judgment's original 180-day timeline, nor the new 120-day timeline that

---

[14] *Id.*, emphasis in original.

[15] *Id.* at 107.

[16] The Defendants are clearly out of compliance with obligations relating to Facility Investigations, most significantly: Section VII, ¶ 13(a)-(c), (f)-(h): Facility Investigations (Seventh Report, pp. 129-30) and Section XIII, ¶ 2(c)(ii): Facility Investigator Training (Seventh Report, pp. 107-108). However, we are aware that DOC leadership has represented that the Department is actively working to eliminate Facility UOF Investigations, and that "responsibility for facility investigations [will be centralized and handled by the Department's] Investigations and Trials unit." *See* Testimony of Heidi Grossman, New York City Department of Correction General Counsel and Deputy Commissioner for Legal Matters, before the New York City Board of Correction, May 14, 2019. *Available at* https://www1.nyc.gov/site/boc/meetings/may-14-2019.page (relevant testimony at 1:36:39-1:37:08). Relying on this representation, we do not raise these provisions for discussion at this time. Should the Department continue to have use facility staff conduct UOF investigations, Plaintiffs reserve the right to seek judicial relief with respect to these provisions.

[17] Seventh Report, pp. 115-117.

[18] *Id.* at 116.

[19] Seventh Report, p. 116; Sixth Report, p. 100.

[20] Seventh Report, pp. 115.

**Justice in Every Borough.**

went into effect on October 1, 2018."[21] By the end of the Seventh Monitoring Period, there were approximately 1,500 cases pending beyond the statute of limitations.[22] The Department is clearly non-compliant with Paragraph 9(a).

### ID Staffing: Section VII, ¶ 11

Under this provision, the Department "shall hire a sufficient number of additional qualified ID investigators to maintain ID Investigator caseloads at reasonable levels so that they can complete Full ID Investigations in a manner that consistent with this Agreement."[23] Although the Monitor found the Department to be in Partial Compliance, we respectfully contend that the data presented in the Seventh Report demonstrate Non-Compliance.[24] The average caseload of ID investigators during the Seventh Monitoring Period was 52 cases—which is nearly identical to an average of 53 cases in the Sixth Monitoring Period—but remains markedly higher than the average of 42 cases in the Fifth Monitoring Period and 32.8 cases in the Fourth Monitoring Period.[25]

While we recognize that the Department has made significant efforts to recruit and hire additional investigators and that the large caseloads are partially attributable to the spike in ID referrals since the Consent Judgment, there simply are not enough investigators to conduct thorough and timely investigations. The shortage of staff contributes to the delayed and inadequate UOF investigations discussed above, which in turn undermine the Department's ability to hold staff accountable for any misconduct in a timely manner. Further, many of the additional hires—and approximately half of the ID investigators as of December 2018—are correction officers which, as we have expressed before, presents a risk of biased investigations. Investigator caseloads are excessive and unreasonable, and the Department is not in compliance with this provision.

### Timely, Appropriate, and Meaningful Staff Accountability: Section VIII, ¶ 1

The Monitor found the Department to be in Non-Compliance with its obligation to impose timely, appropriate, and meaningful Staff discipline.[26] This is the fourth consecutive Monitoring Period with a rating of Non-Compliance.[27] The Seventh Report notes that the Department "continues to struggle to consistently identify and responding to misconduct" and "does not impose meaningful corrective action nearly often enough."[28] In addition, "the Department's findings of misconduct are out of sync with the objective evidence of wrongdoing identified by the Monitor's work."[29]

---

[21] Seventh Report, p. 120.
[22] Seventh Report, pp.121-122.
[23] Consent Judgment § VII (Use of Force Investigations), ¶ 11, ID Staffing.
[24] Seventh Report, pp. 126-127.
[25] Sixth Report, p. 106; Fifth Report, p. 104; Fourth Report, p. 139.
[26] Seventh Report, pp. 159-161.
[27] Fourth Report, p. 174; Fifth Report, p. 120; Sixth Report, p. 126.
[28] Seventh Report, p. 160.
[29] Seventh Report, p. 160.

**Justice in Every Borough.**

To the extent that discipline is recommended, "the Department has consistently failed [to impose it]," including "failures to adjudicate Command Discipline at the Facility Level" and "struggles with imposing discipline for probationary Staff."[30] The Department is failing to hold Staff accountable, and is not compliant with its obligations under this critical provision.

### Inmates Under the Age of 19, Prevent Fight/Assault: Section XV, ¶ 1 [18-year-olds]

The Monitor found the Department to be in Non-Compliance with its obligations to supervise with 18-year-old inmates in a manner that protects them from an unreasonable risk of harm, intervene in a timely manner to prevent fights and assaults, and de-escalate inmate-on-inmate confrontations as soon as it reasonable and practicable to do so.[31] The rate of violence among 18-year-olds "hit a record high" during the Seventh Monitoring Period, with the average rate of violence more than doubling the rate in the prior Monitoring Period.[32] The Monitor attributed the spike in violence in part to DOC's poor management of the transition of 18-year-olds from GMDC to RNDC and a lack of preparation for this transition, which the Department knew was on the horizon for some time.[33] The Monitor found that "[a]s currently operated, [RNDC's] level of disorder and rate of use of force are simply unsafe."[34] Plaintiffs agree. The Department is clearly not in compliance with this provision.

### Inmates Under the Age of 19, Direct Supervision: Section XV, ¶ 12 [18-year-olds]

The Monitor found the Department to be in Non-Compliance with its obligation to adopt and implement a Direct Supervision Model to supervise 18-year-old incarcerated people.[35] Despite many efforts over "several avenues" from the Monitoring Team, "the Department has not made any substantive effort to implement the key aspects of Direct Supervision in a holistic fashion or to demonstrate proof of practice for the few fragments that reportedly exist."[36] Given the unacceptable level of UOF and violence among the 18-year-old population, the Department's failure to adopt a Direct Supervision Model—which most experts believe can lead to a safer environment—is inexplicable.

### Inmates Under the Age of 19, Consistent Assignment of Staff: Section XV, ¶ 17 [18-year-olds]

This provision requires the Department to consistently assign teams of staff to units housing 18-year-olds to the extent feasible. The purpose of consistent staff assignments is "to facilitate constructive Staff-youth relationships."[37] Although the Monitor found the Department to be in Partial Compliance, we respectfully disagree and believe the data presented in the Seventh Report

---

[30] Seventh Report, pp. 160-161.
[31] Seventh Report, pp. 211-212.
[32] Seventh Report, p. 209.
[33] Seventh Report, pp. 209-10.
[34] Seventh Report, p. 212.
[35] Seventh Report, pp. 222-223.
[36] Seventh Report, p. 223.
[37] Seventh Report, p. 227.

**Justice in Every Borough.**

demonstrate Non-Compliance.[38] When the Monitoring Team conducted a two-week audit at RNDC, only 40% of housing unit posts achieved week-to-week stability; during a four-week audit at RMSC, only 38% of housing unit posts achieved week-to-week stability. These low rates comport with the Department's failure to implement Direct Supervision for 18-year-olds, and establish Non-Compliance with this provision.[39]

## II. Additional Areas of Non-Compliance

We believe the information reported by the Monitor in the Seventh Report shows that Defendants are not in compliance with additional provisions, namely:

1. Section VII, ¶ 4: Biased, Incomplete, or Inadequate Investigations
2. Section X, ¶ 1: Early Warning System
3. Section X, ¶ 3: Use of Force Auditor
4. Section XII, ¶¶ 4-6: Assignment to Special Units
5. Section XIII, ¶ 1(c): Probe Team Training
6. Section XIII, ¶ 2(b): Cell Extraction Team Training (In-Service)

Some of the obligations in these provisions are related to the nine provisions we list in Section I. We wish to focus discussions and negotiations on those nine provisions, and so we do not seek a response from Defendants at this time as to the additional provisions listed in this section. We reserve our rights to seek judicial relief with respect to these provisions in the future.

## Conclusion

The Seventh Report notes that "[t]he average [UOF] rate for the current Monitoring Period is **79% higher** than the rate in the first full six-month Monitoring Period" and that "in every month in 2018, the UOF rate was higher than all previous years."[40] This is the second consecutive Monitoring Period producing UOF rates that are the highest in the life of the Consent Judgment.[41] It is even more striking that while the population of incarcerated people continues to decrease, "even more force is being used with fewer inmates."[42] The Department continues to classify at least 22% of its UOF as "avoidable."[43] For many reasons, "the conditions at Rikers remain out of conformity with the requirements of the Consent Judgment…[and the Department] has yet to achieve, on a systemic level, most of the principal reforms required."[44]

---

[38] Seventh Report, pp. 227-228.
[39] Seventh Report, pp. 227-228.
[40] Seventh Report, p. 13 (emphasis in original).
[41] Sixth Report, p.8.
[42] Seventh Report, p. 12 (emphasis in original).
[43] Seventh Report, p. 33.
[44] Seventh Report, pp. 2-3.

**Justice in Every Borough.**

The Department's lack of progress in implementing core provisions of the Consent Judgment is extremely concerning, as is its ongoing failure to address deficiencies in a timely manner absent pressure from the Monitoring Team.[45] The Monitor acknowledges in the Sixth Report, as we do, that "[c]omplex institutional reform is necessarily incremental and can move at a glacial pace," but notes immediately thereafter that "[t]he two-and-half year record of reform…established [by the Department] portends a pace that will become intolerable at some point in the future."[46] That period of attempted reform is now over three-and-a-half years with a "lack of significant progress to date."[47] We submit that the pace toward compliance with the Consent Judgment is simply unacceptable.

We look forward to receiving Defendants' written response setting forth their positions with respect the above-referenced issues and what actions they propose to address the lack of compliance in these areas. *See* Section XXI, ¶ 2 (response due within 30 days). Thank you for your swift attention to this matter.

FOR PLAINTIFF CLASS:

| THE LEGAL AID SOCIETY | EMERY CELLI BRINKERHOFF & ABADY LLP |
|---|---|
| By: Mary Lynne Werlwas<br>Kayla Simpson<br>199 Water Street, 6th Floor<br>New York, NY 10038 | By: Jonathan S. Abady<br>Debra Greenberger<br>600 Fifth Avenue, 10th Floor<br>New York, NY 10020 |

---

[45] Many examples of this pattern exist throughout the Seventh Report, such as: management of Command Disciplines, p. 41 ("the Monitoring Team, not the Department…identified the pervasive deficiencies and exerted significant pressure to correct the problem"); Personnel Determination Reviews, p. 48 ("significant pressure, follow-up, and oversight by the Monitoring Team was required for the Department to be in a position to demonstrate any progress"); assessment of batons available to Staff, pp. 54-55 ("the Monitoring Team had to make repeated inquires to the Department to ensure that the Department made progress on this assessment"); managing the deployment of training, pp. 74, 76 ("the Monitoring Team has had to exert significant and persistent oversight to ensure that *Nunez*-required trainings were deployed as required…and has often been the primary manager of training initiatives"); Direct Supervision Training, p. 85 ("[a]fter much prompting, the Department identified the Staff who required the training and began to deploy it. Unfortunately, the Monitoring Team, rather than the Department, identified that all required Staff at RNDC had not yet received the training and that Direct Supervision was being randomly deployed to Staff at other Facilities who do not require the training"); screening process to ensure that staff with concerning disciplinary histories do not have extensive inmate contact, p. 180 ("to the extent that progress has been made, it has been in concert with significant guidance and assistance from the Monitoring Team"); policies about arrests of incarcerated persons, p. 186 ("the Monitoring Team has had to prod the Department to move this review forward as the Department's assessment…has languished and taken longer than seems reasonable"); the need for continuum of disciplinary responses to youth misconduct, p. 211 ("the Monitoring Team has repeatedly encouraged the Department to develop a more robust and effective continuum").
[46] Sixth Report, p. 4.
[47] Seventh Report, p. 8.

**Justice in Every Borough.**

FOR THE UNITED STATES:

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: *Jeffrey Powell*
Jeffrey K. Powell
Lara K. Eshkenazi
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007

**Justice in Every Borough.**