# EXHIBIT 83

# *COBA*, 11 OCB2d 33 (BCB 2018)

## (IP) (Docket No. BCB-4208-17)

***Summary of Decision*:**  The Union alleged that the DOC violated NYCCBL § 12-306(a)(1) and (4) when it unilaterally established new rules pertaining to promotion from the competitive civil service position of Correction Officer to the civil service position of Correction Captain.  The City argued that that there has been no substantive change to the way in which the DOC evaluates and considers Correction Officers for promotion to Captain because it has always considered the employee's past discipline and Use of Force history.  It further argued that, to the extent the Board did find a change, any change was *de minimis* and not a mandatory subject of bargaining.  Finally, the City argued that bargaining over the subject was precluded by public policy, because any change was made as a result of a federal court consent decree.  The Board found that the DOC did not make a unilateral change to a mandatory subject of bargaining.  Accordingly, the petition was denied. ***(Official decision follows.)***

---

**OFFICE OF COLLECTIVE BARGAINING**
**BOARD OF COLLECTIVE BARGAINING**

**In the Matter of the Improper Practice Proceeding**

*-between-*

**CORRECTION OFFICERS' BENEVOLENT ASSOCIATION,**

*Petitioner,*

*-and-*

**THE CITY OF NEW YORK AND THE NEW YORK CITY DEPARTMENT OF CORRECTION,**

*Respondents.*

---

## DECISION AND ORDER

On April 24, 2017, the Correction Officers' Benevolent Association, Inc. ("COBA" or "Union") filed a verified improper practice petition against the City of New York ("City") and its Department of Correction ("DOC" or "Department").  The Union claims that the DOC violated § 12-306(a)(1) and (4) of the New York City Collective Bargaining Law (New York City

Administrative Code, Title 12, Chapter 3) ("NYCCBL") by unilaterally establishing new rules

pertaining to promotion from the competitive civil service position of Correction Officer ("CO")

to the civil service position of Correction Captain ("Captain").  The City argues that that there has

been no substantive change to the way in which the DOC evaluates and considers COs for

promotion to Captain, because it has always considered the employee's past discipline and Use of

Force history.  It further argues that, to the extent the Board does find a change, any change was

*de minimis* and not a mandatory subject of bargaining.  Finally, the City argues that bargaining

over this subject is precluded by public policy, because any change was made in accordance with

a federal court consent decree.  This Board finds that the DOC did not make a unilateral change to

a mandatory subject of bargaining.  Accordingly, the petition is denied.


### BACKGROUND

The Union is the certified collective bargaining representative for DOC employees in the

civil service title of CO.  The City and the Union are parties to the Correction Officers 2011-2019

Agreement ("Agreement").  Captain is a competitive class title.  Captains are represented for

purposes of collective bargaining by a different union and are in a separate bargaining unit.  COs

who take a civil service test for the Captain position are eligible for promotion to that title.  The

issue here concerns how the DOC selects COs for promotion to Captain from the list of eligible

candidates.

In early 2015, the City and the DOC were involved in settlement negotiations with a class

of plaintiffs and the United States Department of Justice in a pending court case, *Nunez et al*, Index

No. 1:11-cv-05845-LTS-JCF (SDNY), concerning allegations of widespread and excessive use of

force incidents in DOC facilities.  The negotiations resulted in a Consent Judgment in June 2015,

which was signed by Judge Swain on October 21, 2015.  (*See* Pet., Ex. A)  Thereafter, the court

appointed a monitor to assess the DOC's compliance with the Consent Judgment.

On December 23, 2016, the DOC issued Directive 2230, entitled "Pre-Promotional

Assignment Procedures."  (Pet., Ex. B)  According to the Union, Directive 2230 codified certain

portions of the Consent Judgment that required screening COs for their involvement in Use of

Force incidents prior to awarding them a promotion to Captain and "created additional pre-

promotional evaluations and restrictions not required by the [C]onsent [J]udgment."[1]  (Pet. ¶ 13)

There are three promotional considerations relevant to the Union's claim contained in Directive

2230 that were mandated by the Consent Judgment.  While Directive 2230 is a new written policy,

the parties disagree as to which considerations represent a change in the way candidates were

assessed for and awarded promotions.

The first consideration is a required review of the CO's Use of Force and disciplinary

history during the prior five years ("*Nunez* screening").  Specifically, the DOC's Investigation

Division and the Trial and Litigation Division will review the following:

- The number, type, severity, and classification of each Use of Force incident;[2]
- Whether the Use of Force incident or allegation involved a strike or blow to the head or other vital area of an inmate, kicking, or the use of a baton or other instrument of force;

---

[1] A Use of Force Incident is defined in the Consent Judgment as:

> [A]n instance where Staff use their hands or other parts of their body, objects, instruments, chemical agents, electric devices, firearm, or any other physical method to restrain, subdue, or compel an Inmate to act in a particular way, or stop acting in a particular way.

(Pet., Ex. A at 5)

[2] Uses of Force are divided into Class A, B, and C, with Class A being the most severe.

- ▪ Whether the Use of Force incident or allegation involved the use of a prohibited restraint hold;
- ▪ Whether the inmate was in restraints prior to the Use of Force;
- ▪ Whether the CO has been found guilty of pleaded guilty to charges relating to a Use of Force incident; and
- ▪ Any command discipline imposed as a result of the Use of Force within the last year to date.

Additionally, the Investigation Division must review its closing memoranda issued within the prior two years to determine whether the CO used or was alleged to have used force.

The second consideration is a prohibition on promoting candidates who were found guilty or pleaded guilty on two or more occasions to five categories of discipline during the prior five-year period.[3]  The Commissioner or his designee can make an exception to this prohibition if he determines that circumstances exist that make such promotion appropriate.  The basis for this exception must be documented in the CO's personnel file. Pursuant to a Joint Stipulation of Facts, the parties agree that this prohibition did not exist prior to the promulgation of Directive 2230.

The third consideration is a prohibition on promotion from CO to Captain while disciplinary charges related to Use of Force incidents are pending.

Prior to the issuance of Directive 2230, multiple units or divisions conducted a review to determine whether the CO had been the subject of a past or pending investigation in that division and submitted a pre-promotional report on a form labelled as an "HQPP form," with one of the following choices selected:

- ▪ Inquiry reveals negative results - no history;

---

[3] These categories included: excessive, impermissible, or unnecessary Use of Force that resulted in a Class A or B Use of Force; failure to supervise in connection with a Class A or B Use of Force; false reporting or false statements in connection with a Class A or B Use of Force; failure to report a Class A or B Use of Force; or conduct unbecoming of an officer in connection with Class A or B Use of Force.

- ▪ Inquiry reveals past/present investigation(s) will not affect promotion;
- ▪ Inquiry reveals confidential investigation pending, promotion <u>not</u> recommended;
- ▪ Do not recommend promotion for the following reason(s).[4]

(Pet., Ex. B) (emphasis in original)[5]  As outlined in Directive 2230, the various divisions within the DOC continue to submit the HQPP forms.  A review of the forms shows that, although they were updated after the implementation of Directive 2230, there has been no substantive change in the information sought from the DOC's Correction Assistance Response for Employees ("CARE") unit, the Equal Employment Opportunity ("EEO") Division, the Health Management Division, the Inspector General's office, and the Legal Division.  However, with respect to the Investigations Division and the Trials and Litigation Division, the updated HQPP forms now include a new choice in addition to those listed above: "Do not recommend promotion possible *Nunez* implications." (*Id*.) (italics added)

Additionally, both before and after the implementation of Directive 2230, the CO's Commanding Officer has been required to submit Form No. 22R, titled the "Employees Performance Service Report" ("Form 22R").  (*Id*.)  Form 22R includes general background information, such as the CO's departmental assignments, recognitions, and firearm information. It also contains sections for the Commanding Officer to list the CO's corrective interviews and Command Disciplines within the last 12 months, as well as all memoranda of complaint and their

---

[4] The form included a blank space after this choice to list the reasons why promotion was not recommended.

[5] There is no evidence that prior to the issuance of Directive 2230, written instructions, procedures or a directive relating to this Pre-Promotion Screening existed, other than the checklists in Form No. 22R and Form OD/PP3 described below.

dispositions since the CO's appointment to the Department.[6]  Furthermore, Form 22R contains information regarding the CO's attendance and lateness records.  Both before and after implementation of Directive 2230, all the required reports are listed and must be checked off as received, and their results listed, on Form OD/PP3, the "Headquarters Pre-Promotion Checklist." (Ans., Ex. 3)  According to the City, this checklist is then used to tabulate the CO's "score/eligibility/determination for promotion."[7]  (Ans. ¶ 87)

The City claims that COs who are not promoted can appeal that decision by requesting a meeting with the Commissioner, which will generally occur within one week.  Additionally, the parties agree that if a CO is not selected for promotion because he or she was found guilty or pleaded guilty on two or more occasions to any of the five prohibited categories of discipline during the prior five-year period, the CO will be coded on the list as Considered Not Selected ("CNS").  This code means that they will remain on the civil service list and are eligible to be considered for promotion until the civil service list expires.[8]

On December 28, 2016, a civil service list for promotion to Captain was established, and on March 27, 2017, the City's Department of Citywide Administrative Services ("DCAS") certified the list, which contained 202 eligible candidates.  According to the Union, the candidates on the December 2016 civil service list were the first to be evaluated in accordance with Directive

---

[6] The parties stipulated that Form 22R "contains the members['] prior disciplinary history, including use of force charges, for the members' entire tenure with the Department." (March 7, 2018 Joint Stip. of Facts)  The parties also agree that charges that result in a Command Discipline will be expunged from a member's personnel folder after one calendar year of the occurrence of the violation, if the member has not been penalized as a result of any subsequent Command Discipline proceeding or Departmental disciplinary trial.

[7] This checklist was last revised on May 4, 2015, prior to the promulgation of Directive 2230.

[8] Under § 56 of the Civil Service Law ("CSL"), the duration of an eligible list is "not less than one nor more than four years . . . ."

2230 and the Consent Judgment.  The Union alleges, and the City denies, that some candidates

from the December 2016 list have been denied promotion based on the new criteria contained in

Directive 2230.  The Union submitted as evidence four "teletypes" that the DOC published to its

staff ordering specific COs to report to the Correction Academy for pre-promotional training to

the rank of Captain.  (*See* Rep., Exs. C(h), C(i), C(j), C(k))  A comparison of the teletypes to the

certified civil service list shows that some eligible COs were passed over for promotion.  The

Union claims that these COs were passed over "for some undisclosed reason – and clearly in

accordance with Directive 2230." [9]  (Rep. ¶ 78)

## POSITIONS OF THE PARTIES

### Union's Position

The Union argues that the promulgation of Directive 2230 constitutes a unilateral change

to a term or condition of employment, in violation of NYCCBL § 12-306(a)(1) and (a)(4).

According to the Union, under Directive 2230, the review of candidates for promotion from CO

to Captain has fundamentally changed because it involves a wider array of information that was

not part of the previous review of disciplinary histories, whether formal or otherwise, and for a

longer period of time.  In particular, the Union contends that Directive 2230 mandates a review of

unsubstantiated Use of Force charges, as well as Use of Force incidents that did not result in

discipline and that were not previously listed on Form 22R.  The Union also contends that the

---

[9] A few weeks after this improper practice petition was filed, on May 10, 2017, the Union filed an
Article 78 petition seeking to annul the DOC's determination that established a class of Captains
who entered into the Correction Academy on or about April 24, 2017, "in violation of the Merit
and Fitness clause in the New York State Constitution, as well as in derogation of the 'One in
Three' rule . . . ."  (Rep., Ex. C ¶ 1)  The Article 78 petition was discontinued and dismissed with
prejudice by stipulation of the parties dated January 22, 2018.

prohibition on promoting a CO with any pending disciplinary charges is new.  Furthermore, it is undisputed that prior to the promulgation of Directive 2230, COs who plead or were found guilty of certain Use of Force violations in the past five years were not prohibited from being promoted to Captain.  As such, the Union contends that Directive 2230 represents a substantial change in practice.

Additionally, the Union asserts that Directive 2230 establishes procedures for promotion of competitive class employees, which it claims constitutes a mandatory subject of bargaining. The Union contends that these procedures are different from the published criteria and qualifications for promotion, and the decision to promote, which are non-mandatory subjects. According to the Union, "[t]his is not a case about promotional 'qualifications' fairly announced and noticed to members of the [Union].  This is about 'disqualifications' illegally adopted."  (Rep. ¶ 118)  It contends that qualifications have generally been found to be such considerations as a degree, license, language, or special skill set.  Furthermore, qualifications listed on the Notice of Examination for Captain do not include reference to a number or type of Use of Force incidents or discipline.  Moreover, the Union asserts that the absence of Use of Force incidences in a violence-filled environment is not an achievement or special status.

Instead, the Union argues that this case concerns promotional procedures that are mandatorily bargainable.  It maintains that the process for review of an employee's performance as it relates to Use of Force incidents, which includes the review of specified types of conduct for a specified number of years, is a negotiable procedure.  Because this review may or may not result

in the denial of a promotion, the Union asserts that bargaining over the review process would not affect the criteria for promotion or the ultimate decision to promote.[10]

Citing PERB precedent, the Union also asserts that a policy requiring the denial of a promotion based on Use of Force incidents constitutes a disciplinary penalty for a rule violation, which it claims is a mandatory subject of bargaining. According to the Union, COs are subject to discipline pursuant to Civil Service Law ("CSL") § 75 only for "'incompetence or misconduct shown after a hearing upon stated charges.'" (Union Br. at 7, citing CSL § 75(1)) Therefore, the Union argues that "the addition of a penalty of non-promotion" must be bargained. (*Id.*) Furthermore, under this theory, the Union contends that the review of Use of Force incidents and discipline in the prior five-year period violates other provisions of the CSL.[11] Thus, it claims that imposing a penalty in ways that do not comport with the CSL is a modification to disciplinary procedure that requires bargaining.

In response to the City's argument that bargaining over the promulgation of Directive 2230 is prohibited because it was required by the Consent Decree, the Union argues that the case relied upon by the City, *Sheppard v. Phoenix*, 91 CIV. 4148 (RPP), 1998 WL 397846, (S.D.N.Y. July 16, 1998), does not stand for the proposition that *any* measures the DOC adopts with the intent to decrease excessive force are non-negotiable. To read the case in this manner would "render[] entire fields of otherwise negotiable terms and conditions of employment off-limits." (Union May

---

[10] In its reply, the Union makes several allegations regarding why it believes that the pre-screening process laid out in Directive 2230 violates the CSL and the Merit and Fitness Clause in the New York State Constitution. Because this Board does not have jurisdiction to remedy such alleged violations, these allegations are not detailed here at length.

[11] In particular, the Union claims that Directive 2230 violates CSL § 75(4), which states that disciplinary charges may ordinarily only be brought within 18 months of alleged misconduct, and § 75(3), which limits pre-hearing penalties to suspensions no longer than 30 days and limits post-hearing penalties to a reprimand, a fine, a suspension not exceeding two months, or dismissal.

22, 2018 Closing Br., at 2)  Furthermore, the Court in *Sheppard* did not discuss in detail the
provisions of the settlement at issue, and therefore, there is no way of knowing whether those
provisions are analogous to Directive 2230.

**City's Position**

        The City argues that the Union's petition should be denied because it has not established
that the DOC made a unilateral change to a mandatory subject of bargaining.  First, the City
contends that it has the managerial right under NYCCBL § 12-307(b) to direct its employees and
to determine the personnel by which its operations will be conducted.  Consequently, this Board
and PERB have long held that the City has the right to determine qualifications for promotion.
The City contends that Directive 2230 merely clarifies qualifications for promotion to Captain and,
as such, it does not implicate a mandatory subject of bargaining.

        Alternatively, the City argues that even if the Board were to find that Directive 2230
implicates a mandatory subject of bargaining, any change in the DOC's promotional process is *de
minimis* and does not require bargaining.  The City contends that the basic requirements to be
promoted to Captain are essentially the same as they were before the implementation of Directive
2230.  According to the City, the DOC has always taken into consideration Use of Force charges
in a CO's disciplinary history when assessing them for promotion.  Specifically, it claims that
Form 22R, which has not been changed, lists a CO's formal disciplinary history from their date of
hire.  If anything, the City argues that Directive 2230 has narrowed the "lookback" period to only
five years.  Furthermore, the pre-promotion checklist used to tabulate the CO's eligibility for
promotion has not been modified in over two years.  With regard to Directive 2230's prohibition
on promotion from CO to Captain while disciplinary charges related to Use of Force incidents are

pending, the City claims that both before and after Directive 2230 "[t]he Department does not promote candidates when there is a pending investigation . . . ."  (City Closing Br. at 9)

Finally, the City argues that bargaining over the promulgation of Directive 2230 is prohibited.  In support of this argument, the City asserts that *Sheppard v. Phoenix*, 91 CIV. 4148 (RPP), 1998 WL 397846, (S.D.N.Y. July 16, 1998), stands for the proposition that "bargaining over stipulated terms of a consent decree concerning the treatment of inmates at DOC would violate public policy."[12]  (City Closing Br. at 10)

## DISCUSSION

The Union alleges that the DOC made a unilateral change in violation of NYCCBL § 12-306(a)(1) and (4), when it promulgated Directive 2230, thereby changing the rules for promotion from the competitive class position of CO to Captain.  NYCCBL § 12-306(a)(4) makes it an improper practice for a public employer or its agents "to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees."  Thus, NYCCBL § 12-307 requires that public employers and employee organizations "bargain over matters concerning wages, hours, and working conditions, and any subject with a significant or material relationship to a condition of employment."  *CEU, L. 237, IBT*, 2 OCB2d 37, at 11 (BCB 2009).  The Board has long held that "[a]s a unilateral change in a term and condition of employment accomplishes the same result as a refusal to bargain in good faith, it is likewise an improper practice."  *DC 37, L. 420*, 5 OCB2d 19, at 9 (BCB 2012).

---

[12] The City also argues that the Union has not established an independent violation of NYCCBL § 12-306(a)(1).  However, the Union did not plead such a violation in its petition, and therefore this argument will not be addressed.

In order to establish that a unilateral change has occurred in violation of the NYCCBL, a union "must demonstrate that (i) the matter sought to be negotiated is, in fact, a mandatory subject and (ii) the existence of such a change from existing policy." *DC 37, L. 436*, 4 OCB2d 31, at 13 (BCB 2011) (quoting *DC 37*, 79 OCB 20, at 9 (BCB 2007)) (internal quotation marks omitted). The Board has consistently held that unilateral changes in terms and conditions of employment that violate NYCCBL § 12-306(a)(4) also violate NYCCBL § 12-306(a)(1) because a violation of the duty to bargain in good faith also interferes "with employees' rights to bargain collectively." *DC 37*, 6 OCB2d 24, at 19, n. 14 (BCB 2013).

Here, the parties stipulated that at least one portion of Directive 2230 is a new requirement that was mandated by the Consent Decree. Specifically, the prohibition on promoting candidates who were found guilty or pleaded guilty on two or more occasions to five categories of discipline during the prior five-year period did not exist prior to Directive 2230's promulgation. Consequently, this represents a change from the DOC's existing policy.

With regard to other requirements, however, the parties dispute whether and to what degree Directive 2230's provisions constitute a change. As to the *Nunez* screening, a review of the record shows that, while not formally set forth in a policy, a similar Pre-Promotion screening and disciplinary history review had been conducted prior to December 2016, in which at least five divisions completed reviews of the candidates and submitted information that was documented in in HQPP forms, as well as Form 22R and Form OD/PP3. The parties agree that Form 22R has always contained the CO's "prior disciplinary history, including use of force charges," for the CO's entire tenure. (March 7, 2018 Joint Stip. of Facts) Additionally, with respect to the CARE, EEO, Health Management, Inspector General and Legal divisions' review, the evidence demonstrates that their review process and procedures were not affected by Directive 2230.

However, the Union argues that under Directive 2230, the Department's review has been newly expanded to include unsubstantiated Use of Force charges, as well as Use of Force incidents that did not result in discipline and that were not previously listed on Form 22R.  The City did not address the review of unsubstantiated Use of Force charges but claims that the Pre-Promotion screening and review of the applicant's disciplinary history has not substantially changed.

The record establishes that Directive 2230 expressly requires the Investigation and Trial and Litigation Divisions to review of all Use of Force incidents, including unsubstantiated ones and command discipline for each candidate.  There is no evidence that prior to the issuance of Directive 2230, these divisions were specifically required to review these facts.  In addition, the record also establishes that after Directive 2230 was issued, the HQPP forms that constitute part of the disciplinary review were explicitly modified for the Investigations Division and the Trials and Litigation Division to ask whether a candidate is not recommended for promotion due to "possible *Nunez* implications."

This term is not defined anywhere in the Consent Decree, and the record does not clarify what "possible *Nunez* implications" refers to.  Nevertheless, the HQPP forms for these divisions have always directed the reviewer to consider past and pending investigations.  Therefore, it is not clear whether those past or pending investigations encompassed Use of Force allegations that did not ultimately lead to discipline or were unsubstantiated.  Thus, while Directive 2230 appears to set forth with greater specificity the requirements for the Investigations and Trial and Litigations Divisions' review of Use of Force incidents, we cannot determine on this record whether a review of unsubstantiated Use of Force allegations represents a change in practice.

With respect to Directive 2230's prohibition on promotion of COs with pending disciplinary charges related to a Use of Force incident, the Union argues that this constitutes a

change.  The City, on the other hand, argues broadly that both before and after Directive 2230, the DOC "does not promote candidates when there is a pending investigation."  (City Closing Br. at 9).  The HQPP forms always asked the reviewing division to indicate whether "past/present investigations will not affect promotion," and whether there was a "confidential investigation pending, [and] promotion not recommended." (Ans., Ex. 3)  Again, it is not clear that either of these inquiries would have encompassed pending disciplinary charges related to a Use of Force incident or resulted in a recommendation not to promote a CO so affected.  Nevertheless, Directive 2230 expressly prohibits promotion of a CO when there is a pending Use of Force disciplinary charge and this specific prohibition was not articulated previously.

As a result, while the record is inconclusive concerning whether all the alleged elements of the Pre-Promotional policy were changes, the evidence has established that at least some portions of Directive 2230 were new.  Therefore, the Board must consider whether these changes affect a mandatory subject of bargaining.  As the Board has explained, "deciding whether some types of experience are more valuable than others in preparing employees for particular job assignments or for promotion is the type of judgment reserved to the City by NYCCBL § 12-307(b)." *CSBA, L. 237*, 65 OCB 9, at 12-13 (BCB 2000), *affd., City of New York v. DeCosta, Civ. Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters*, Index No. 403335/2000 (Sup. Ct. N.Y. Co. June 7, 2001)).  Consequently, the Board has found that a demand to bargain over newly-added criteria for selection of a position "impermissibly infringes management's ability to make that judgment, and therefore is not a mandatory subject of bargaining."  *UFA*, 4 OCB2d 3, at 8 (consideration of newly-added criteria of aptitude, demeanor, and judgment in awarding assignments to chauffeur position concerned non-mandatory subjects of bargaining); *see also PBA*, 39 OCB 24 (BCB 1987), *affd sub nom. Caruso v. Anderson*, 138 Misc.2d 719, 525 N.Y.S.2d 109

(Sup. Ct. N.Y. Co. 1987), *affd.*, 145 A.D.2d 1004, 536 N.Y.S.2d 689 (1st Dept. 1988), *lv. denied*, 73 N.Y.2d 709 (1989) (creation of a point system that gave more points to employees in certain positions than others established standards and criteria for promotion and was therefore a managerial prerogative).

Here, we find that the contested changes in promotions set forth in Directive 2230 concern criteria for promotion.  By evaluating the number and types of a CO's Use of Force incidents, including unsubstantiated incidents, and prohibiting the promotion of those who have been disciplined two or more times in the past five years or who are under investigation concerning certain Uses of Force, the DOC has exercised its prerogative to determine which factors it considers more desirable in a candidate for promotion.  In this way, the contested aspects of Directive 2230 are most akin to promotional considerations like aptitude, demeanor, and judgment, or to awarding greater points for those candidates with a less extensive disciplinary history.  *See UFA*, 4 OCB2d 3 at 8; *see also PBA*, 39 OCB 24.

In reaching this conclusion, we reject the Union's argument that Directive 2230 concerns only procedures for promotion.[13]  Moreover, in this instance the contested policy concerns promotion to a position outside of COBA's bargaining unit.  This Board has held that to the extent a union's proposal for a competitive promotion process without favoritism "seeks to create and

---

[13] We also reject the Union's assertion that under the Taylor Law promotional procedures for competitive titles are mandatory subjects of bargaining.  The Union relies on *Monroe-Woodbury Bd. of Educ.*, 3 PERB ¶ 3104 (1970), which concerns neither promotions nor procedures for promotion as prescribed by the CSL.  It also relies upon *City of Albany*, 7 PERB ¶ 3078, 3135 (1974), in which PERB suggests that a bargaining proposal concerning an employer's discretion under the "one in three" rule may be mandatorily negotiable "where civil service law and rules are not obligatory."  Here, the Union has taken the position that the applicable civil service law and its promotion rules *are* obligatory.  Thus, *City of Albany* does not apply.  *See City of Buffalo (Police Dept.)*, 29 PERB ¶ 4515 (ALJ 1996) (finding *City of Albany* inapplicable where neither party argued that § 61 of the CSL governing appointment and promotions was not obligatory).

impose any new procedures regarding the assignment of employees to jobs within the bargaining unit, or any *procedures regarding promotions out of the unit*, it infringes on the statutory rights of the City and is a non-mandatory subject." *LEEBA*, 3 OCB2d 29, 26 (BCB 2010) (emphasis added) (but also finding that the proposal at issue concerned a mandatory subject to the extent it "merely seeks the City's agreement to comply with the applicable provisions of the State Constitution, the Civil Service Law, and the formal rules and regulations promulgated by DCAS….").  *See also West Irondequoit Bd. of Educ.*, 4 PERB ¶ 3070, at 3728 (1971) (finding that "promotional policy for titles outside the negotiating unit . . . are not terms and conditions of employment and, therefore, are not mandatory subjects of negotiations."); *NYSNA*, 11 OCB 2, at 6 (1973) (bargaining for a promotional guarantee concerning wages and seniority upon promotion to a position outside of the unit is not required).

We also do not find that limitations on recommending promotion set forth in Directive 2230 constitutes a disciplinary penalty that must be bargained.  The Union argues that Directive 2230 is a mandatory subject because it effectively deprives its members of a professional advantage and, citing *Solvay Union Free School Dist.*, 28 PERB ¶ 3024 (1995), it maintains that PERB has found terms that have this effect to be mandatory subjects of bargaining.  The Union's interpretation of *Solvay*, however, misstates PERB's holding.  In *Solvay*, PERB did not create a legal standard pertaining to bargaining over promotions. Rather, it addressed specific proposed contract language that stated, "[n]o member of the bargaining unit will be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause." *Id*. at 3056.  PERB determined that this language addressed "both the grounds for the imposition of discipline and the penalties which may be invoked upon satisfaction of the predicate

for disciplinary action," both of which are mandatory subjects of bargaining.[14]   *Id*. at 3057.   Here, we find that Directive 2230 does not concern these subjects of bargaining, but instead outlines criteria for promotion.   As such, we find that limitations on promotion recommendations set forth in Directive 2230 are not a disciplinary penalty in this context.

In light of the above, we find that Directive 2230 concerns criteria for promotion, which is a non-mandatory subject of bargaining.[15]   Consequently, we find that the DOC did not make an improper unilateral change when it promulgated Directive 2230.   We therefore dismiss the Union's improper practice petition in its entirety.

---

[14] The other cases cited to by the Union in this regard concern the employer's imposition of a financial penalty for lateness and the unilateral elimination of pre-determined penalty guidelines in favor of a case-by-case analysis of each offense.   *See City of Albany*, 9 PERB ¶ 3009; *NYCTA*, 20 PERB ¶ 3037.   These facts are clearly distinguishable from the instant case.

[15] Because we find that Directive 2230 concerns a non-mandatory subject of bargaining, we need not reach the City's argument that bargaining over its promulgation is prohibited as against public policy.

## **ORDER**

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City

Collective Bargaining Law, it is hereby

ORDERED, that the improper practice petition, docketed as BCB-4208-18, filed by the

Correction Officers' Benevolent Association, against the City of New York and the New York

City Department of Correction, hereby is dismissed in its entirety.

Dated:  September 6, 2018
          New York, New York


                                                      SUSAN J. PANEPENTO
                                                      CHAIR

                                                      ALAN R. VIANI
                                                      MEMBER

                                                      M. DAVID ZURNDORFER
                                                      MEMBER

                                                      PAMELA S. SILVERBLATT
                                                      MEMBER

                              I dissent.             CHARLES G. MOERDLER
                                                      MEMBER

                              I dissent.             GWYNNE A. WILCOX
                                                      MEMBER