# EXHIBIT 88

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mark Nunez, et al., <br><br>       Plaintiffs, <br><br> -against- <br><br>The City of New York, et al., <br><br>       Defendants. | Case No. 11-cv-5845 (LTS)(JCF) |

## DECLARATION OF JAMES BRADLEY

  JAMES BRADLEY, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

  1. I make this declaration in support of Plaintiffs' Motion for Contempt and Receivership filed in this case, *Nunez, et al. v. City of New York, et al.*, 11-cv-5845.

  2. On June 30, 2023, I was arrested, arraigned, and then entered the custody of the New York City Department of Correction ("DOC"). I was released on bail on July 3, 2023. I returned to DOC custody on August 15, 2023, after I was sentenced to one year of incarceration.

  3. On June 30, 2023, after my arraignment, I was transported, while front cuffed and shackled, in a bus with several other people to Rikers Island. There were two Corrections Officers ("COs") on the bus—the bus driver and an officer who sat on the side of the bus, who I call the transportation officer.

  4. After the bus arrived at the depot of the Eric M. Taylor Center ("EMTC"), we were not immediately escorted off the bus. Instead, the other people in custody and I sat on the bus for what I estimated to be between around 30 minutes to one hour. During this period, the officers left us alone on the bus for most of the time, although the transportation officer checked on us briefly about two times. People on the bus, including me, were getting agitated. Other individuals made requests to that officer, like saying that they had to go to the bathroom or

needed water. He was dismissive and would respond with something like, "You'll get off the bus when you get off the bus." I grew anxious, which caused me to have chest pains. Every time the transportation officer came on the bus, I said, "I'm having chest pains, I need medical attention." Other individuals tried to advocate on my behalf to him as well. The officer and I then had a verbal dispute about me not getting medical attention.

5. When we were finally taken off the bus, an officer escorted us into the intake room at EMTC. I really wanted to have my handcuffs taken off because they had been on for so long—ever since I had been put on the bus at the courthouse. My wrists were becoming numb, and I could not feel my hands. I asked a CO who had not been on the bus to uncuff me about three or four times. The transportation CO then started to approach me, said that he was going to uncuff me, and said, "You think you're tough. I'm going to show you." I then extended my arms towards him so that he could unlock my handcuffs. He then punched me in my face twice—once with each fist. The punches landed on my jaw and on my forehead. I was still cuffed and shackled.

6. Other officers escorted the transportation officer out of the intake area. Then another CO uncuffed and unshackled me and placed me in a holding cell. My jaw, head, and ear were sore from the punches.

7. I was in pain for about three days. There was a constant ringing in my ear, and it was hard for me to chew during that time.

8. This incident is only one example of assault by DOC staff. This kind of thing happens all the time while in DOC custody. DOC staff use force instead of de-escalation all the time. The COs say their tactics are necessary to "get custody and control," and they treat us like their property. They don't offer us mental health assistance or ask us if there is something else going on. Some days, I might have a bad phone call, or something might be happening with my

family. Someone might have passed away. The COs abuse their authority and use punishments that don't merit the situation. I could have asthma, but they would still spray me in my face. There are a lot of factors that transpire within us, but they don't care. I am human, and I deserve to be treated as one.

Dated: November 9, 2023
New York, New York

_____
James Bradley