

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

November 17, 2023

**BY ECF**
The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Nunez v. City of New York*, 11 Civ. 5845 (LTS)(JCF)

Dear Judge Swain:

    The United States of America (the "Government") respectfully submits this letter in support of the Motion for Contempt and Application for Appointment of a Receiver filed today by the Plaintiff Class and the United States.[1] For the more than eight years since the Consent Judgment was entered (Dkt. No. 249), Defendants—under two administrations and four Department of Correction ("DOC") Commissioners—have been unable or unwilling to implement the sweeping institutional reforms necessary to address the pervasive culture of violence in the jails and remedy the ongoing violation of the constitutional rights of people in custody. Defendants have consistently failed to comply with core provisions of the Consent Judgment as well as the Court's numerous remedial orders[2] (collectively, the "Nunez Orders") designed to redress those violations, all of which were drafted with the input of Defendants and entered with their consent. The appointment of an independent receiver who reports only to this Court and is empowered to take all necessary steps to promptly comply with this Court's orders is the best option to address the "unsafe, dangerous, and chaotic" conditions plaguing the City's jail system.[3]

    The Government acknowledges that the Department of Justice has sought this type of equitable relief in only a handful of corrections cases and under exceptional circumstances. As laid out in great detail in Plaintiffs' Proposed Findings of Fact, those circumstances exist here, and there is no other court-ordered remedy that can correct the ongoing constitutional violations.

---

[1] The Government fully supports the arguments set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Contempt and Application for Appointment of a Receiver filed by counsel for the Plaintiff Class. We submit this letter in lieu of a lengthy brief that would largely mirror the recitation of facts and legal arguments included in that memorandum.

[2] *See* Dkt. Nos. 350, 398, 424, 465.

[3] *See* Oct. 27, 2023 Monitor Letter at 5, Dkt. No. 588.

All of the people in custody and the thousands of DOC uniformed staff at Rikers face a grave risk of serious harm on a daily basis because of Defendants' failure to comply with the Nunez Orders.[4]  As established by the overwhelming evidence presented, Defendants have been in longstanding noncompliance with the clear and unambiguous terms of the orders and have failed to diligently attempt to comply with their requirements.  The voluminous record before the Court includes:  dozens of exhaustive and detailed reports from the Monitor; the Monitoring Team's first-hand observations during site visits; DOC's own data, records and admissions; the results of DOC's internal reviews, investigations, and audits; and descriptions of numerous tragic incidents exemplifying the injuries and suffering resulting from DOC staff's failure to follow basic use of force and security policies, procedures, and protocols.

Despite the undoubtedly good intentions of many City and DOC officials, Defendants' compliance efforts "have been limited and ineffective."[5]  Defendants have developed "few concrete plans for solving the intractable problems," and their "most recent proposals remain haphazard, tepid, and insubstantial."[6]  Instead of implementing desperately-needed operational and structural reforms, Defendants' remedial efforts too often focus on perfunctory measures, such as reading teletypes to staff at roll call, issuing memoranda reminding staff of their basic responsibilities, and reiterating existing practices or trainings.[7]  Facility leaders and supervisors have been unable to reduce the violence and disorder in the jails, fail to consistently identify and address staff misconduct, and frequently cede control of housing areas to incarcerated people.[8]

While we recognize that receivership is an extraordinary remedy, the amount of harm being inflicted on incarcerated people and DOC staff is extraordinary as well.  Since January 2022, twenty-eight incarcerated people have died while in custody or immediately after their release.  Investigations of these deaths have revealed the same violations of basic security protocols that are ubiquitous in this system, including unsecured doors, staff abandoning their posts, a failure to enforce lock-in, and staff failing to conduct proper tours and adequately supervise housing units.[9]  As the Monitor recently concluded, housing units "are rampant with security lapses that heighten the risk of serious injury or an in-custody death in every housing area."[10]

---

[4] *See* Nov. 8, 2023 Monitor Report at 2, Dkt. No. 595.

[5] *See* Oct. 5, 2023 Monitor Report at 2, Dkt. No. 581.

[6] *See* Oct. 5, 2023 Monitor Report at 2-3, Dkt. No. 581.

[7] *See* Oct. 5, 2023 Monitor Report at 23, Dkt. No. 581; Aug. 7, 2023 Monitor Report at 6, Dkt. No. 561.

[8] *See* Oct. 5, 2023 Monitor Report at 1, 4, 7, 10, 12, Dkt. No. 581.

[9] *See* Nov. 8, 2023 Monitor Report at 6-7, Dkt. No. 595; Oct. 5, 2023 Monitor Report at 4-5, Dkt. No. 581; Aug. 7, 2023 Monitor Report at 10-11, Dkt. No. 561.

[10] *See* Aug. 7, 2023 Monitor Report at 11, Dkt. No. 561.

Indeed, every safety and violence indicator is substantially worse now than it was at the time the Consent Judgment was entered.[11] DOC staff use force against incarcerated people at an extraordinarily high rate, often utilizing high impact force and head strikes, and the "pattern and practice of unnecessary and excessive force that brought about the Consent Judgment remains pervasive."[12] The numbers of stabbing and slashings, serious injuries, fights, assaults on staff, and self-harm incidents are alarming.[13] Drug use and overdoses are commonplace, and dangerous weapons and other contraband are readily available throughout the jails.[14]

Additional Court orders—or further admonishments from the Court directing Defendants to act more urgently or engage more productively with the Monitoring Team[15]—would be futile. Over the past 39 months, the Court has issued seven different orders directing Defendants to take a wide range of remedial steps to address noncompliance with the Consent Judgment and the systemic deficiencies and dangerous conditions repeatedly identified by the Monitor.[16] Further, DOC's leadership have been unable (or unwilling) to implement the recommendations of the Monitor and his team of corrections experts and take full advantage of the technical assistance they offer.[17] Defendants' actions—or inaction—have not given the Court, the Government, the Plaintiff Class, or the public any basis to believe this will change in the near term.

---

[11] *See* Oct. 5, 2023 Monitor Report at 4, Dkt. No. 581; July 10, 2023 Monitor Report at 12, 15, Dkt. No. 557; June 8, 2023 Monitor Report at 7, Dkt. No. 541.

[12] *See* Nov. 8, 2023 Monitor Report at 3, Dkt. No. 595; see also July 10, 2023 Monitor Report at 14, Dkt. No. 557 ("a pattern and practice of the excessive and unnecessary use of force remains clearly evidence in this system") (emphasis in original); Oct. 5, 2023 Monitor Report at 5, Dkt. No. 581.

[13] *See* Oct. 5, 2023 Monitor Report at 4-5, 11-12, Dkt. No. 581; July 10, 2023 Monitor Report at 12, 55-57, 67-68, Dkt. No. 557. The actual volume of slashing and stabbing incidents are even greater than the high numbers reported by DOC due to the agency's failure to properly classify incidents. *See* Nov. 8, 2023 Monitor Report at 32-33, 35-36, Dkt. No. 595. Indeed, the Monitor recently expressed a lack of confidence in the accuracy and timeliness of various violence-related metrics reported by DOC. *Id*. at 33-36.

[14] *See* Oct. 5, 2023 Monitor Report at 8, Dkt, No. 581.

[15] *See*, *e.g.*, Tr. of Aug. 10, 2023 Status Conference at 73:7 - 74:12, Dkt. No. 566; Tr. of June 13, 2023 Status Conference at 89:6 - 90:6, Dkt. No. 554; Tr. of Apr. 27, 2023 Status Conference at 68:6 - 69:2, Dkt. No. 530.

[16] *See* Dkt. Nos. 350, 398, 424, 465, 550, 564, 582.

[17] *See*, *e.g.*, Nov. 8, 2023 Monitor Report at 17, Dkt. No. 595 ("[E]ven when provided specific recommendations for remediating deficient practices, the Department has taken few concrete actions to adopt these recommendations…. Despite repeated attempts via multiple Court Orders and [the] Monitor's recommendations, the Department has simply been unable to implement any immediate or short-term initiatives to ameliorate harm.").

Absent the appointment of a receiver, DOC will continue along the same course with little to no improvement to the safety of incarcerated individuals and staff.[18] DOC will develop more pilots, plans, and initiatives—similar to those developed in the past—only to soon abandon them when implementation stalls or executive and facility leaders turn over and are replaced.[19] DOC will continue "to lurch from crisis to crisis under a revolving door of leadership," which undermines its capacity to develop and implement a comprehensive and cohesive strategy to remediate the fundamental security and operational deficiencies that have plagued the jails for years.[20] Further, the City's resources will continue to be wasted, as Defendants spend an exorbitant amount of money each year to run the jails,[21] incur huge overtime costs due to the inefficient management and deployment of uniformed staff,[22] and pay tens of millions of dollars to settle lawsuits brought by incarcerated people.[23]

As the Court is aware, the Government did not join Plaintiff Class counsel's request for leave to move for contempt and the appointment of a receiver in the spring of 2022.[24] Instead, the Government decided to afford the then-new administration and Commissioner Molina an opportunity to implement their "Action Plan," developed by DOC leadership with significant input from the Monitor, to finally bring DOC into compliance with this Court's orders. We were hopeful that the City's commitment to bring in a new leadership team and to work in close consultation with the Monitor and his subject matter experts could avert the need for more intrusive court relief. Indeed, at that time, Commissioner Molina represented to the Court that he and the Monitor were "aligned" on what needed to be done, and asked this Court to afford him an opportunity to partner with the Monitor to "implement the reform that has been long

---

[18] *See* Nov. 8, 2023 Monitor Report at 5, Dkt. No. 595 ("On the present trajectory, the current state of affairs will continue, and likely worsen.").

[19] *See, e.g.*, July 10, 2023 Monitor Report at 144, Dkt. No. 557 ("[T]he Department's work over the past year has often repeated the same cycle the Monitoring Team has seen in the past—initiatives are created, changed in some material way, and then must be restarted."); May 11, 2021 Monitor Report at 10, Dkt. No. 368 (noting how "near constant turnover among Facility leaders" delayed implementation of initiatives). Indeed, two of the Assistant Commissioners appointed in the spring of 2023 to oversee two jails have already resigned; OBCC and the recently-opened restrictive unit for individuals who engage in serious violence, RESH, have each had at least three different leaders within just the last three or four months. *See* Nov. 8, 2023 Monitor Report at 8, 10, Dkt. No. 595.

[20] *See* Nov. 8, 2023 Monitor Report at 6, Dkt. No. 595.

[21] In FY 2021, the City spent on average $556,539 per incarcerated per year, "a per capita cost that is simply unparalleled." *See* Mar. 16, 2022 Monitor Report at 11, Dkt. No. 438.

[22] *See* Oct. 5, 2023 Monitor Report at 10, Dkt. No. 581.

[23] In FY 2022, the City paid a total of $37.2 million to resolve lawsuits and claims brought against the agency. *See* https://comptroller.nyc.gov/reports/annual-claims-report/#ii-tort-claims.

[24] *See* Dkt. No. 464

overdue."[25] He assured Your Honor that you would "see change."[26] And the City described the Action Plan to the Court as "a road map to sustainable reform and to the stabilization of the Department."[27] Based in part on the representations of the City and DOC's new leadership regarding their commitment to reform, the Court approved and entered the Action Plan on June 14, 2022.[28]

Now, almost a year-and-a-half after the Action Plan, it is abundantly clear that the promised reforms and progress have not materialized. And instead of partnering and collaborating with the Monitor and his team as Defendants represented, DOC has failed to consistently provide the Monitor with complete, accurate, and reliable information and has repeatedly failed to consult with him on key areas related to the Consent Judgment. Indeed, in his July 10, 2023 report, the Monitor concluded that Defendants had not made "substantial and demonstrable progress in implementing the reforms, initiatives, plans, systems, and practices outlined in the Action Plan," and that "the Department's accuracy, transparency and collaboration with the Monitoring Team [have] markedly deteriorated."[29]

Further, the Court recently has resorted to issuing multiple orders directing DOC to be more transparent with the Monitor, to provide him with timely and accurate information, and to work more collaboratively with him and his team.[30] Yet, the Monitor still reported last week that Defendants' "persistent interference, obstruction, and lack of transparency" have resulted "in an erosion of the Monitoring Team's confidence that the Department is operating transparently and in a manner that advances the reforms."[31] In response to the Monitor's latest submission this week detailing DOC's failure to consult with him and his team prior to opening a new unit,[32] the Court issued an Order to Show Cause directing Defendants to explain why they should not be held in contempt due to this incident and "the broader, consistent failure of the Department to communicate transparently, proactively, and accurately with the Monitoring Team."[33]

On October 31, the Mayor announced that Commissioner Molina would be promoted to serve as assistant deputy mayor for public safety. Presumably, the Mayor will soon announce Mr. Molina's replacement—the fifth DOC Commissioner during the life of the Consent

---

[25] *See* Tr. of Apr. 26, 2022 Status Conference at 30:25-31:1, 31:17-18, Dkt. No. 456.

[26] *See* Tr. of Apr. 26, 2022 Status Conference at 31:18-19, Dkt. No. 456.

[27] *See* City's June 10, 2022 Letter to Court at 1, Dkt. No. 463.

[28] *See* Dkt Nos. 465, 466.

[29] *See* July 10, 2023 Monitor Report at 157, 173, Dkt. No. 557. The Monitor repeated these troubling findings in the report filed last week. *See* Nov. 8, 2023 Monitor Report at 1 n.2, Dkt. No. 595.

[30] *See, e.g.,* June 14, 2023 Order at ¶¶ 4, 5, Dkt. No. 550; Oct. 10, 2023 Order, Dkt. No. 582.

[31] *See* Nov. 8, 2023 Monitor Report at 4, Dkt. No. 595.

[32] *See* Nov. 15, 2023 Monitor Report, Dkt. No. 599.

[33] *See* Dkt. No. 600.

Judgment. Unfortunately, there is no basis to believe that this individual will have any more success in overcoming the institutional, bureaucratic, political, and structural constraints and barriers that have stymied their predecessors' prior reform efforts. As the Monitor recently observed, Defendants "have repeatedly and consistently demonstrated they are incapable of effectively directing and managing the multilayered and multifaceted reform effort, and continuing on the current path is not likely to alter the present course in any meaningful way."[34]

The appointment of an independent receiver with broad authorities to take all necessary steps to promptly achieve compliance with the Nunez Orders presents the most promising path forward. The receiver would report solely to the Court and be insulated from any political pressures or outside influences. To be clear, we do not seek to transfer full operational control of the jail system to the receiver. The Commissioner would retain authority over areas outside the scope of the Nunez Orders, leaving the receiver free to focus exclusively on addressing the core management, practice, operational, and personnel issues covered by the orders. Under the proposed order accompanying this Motion, the receiver would be granted the general power to take all necessary steps to achieve Substantial Compliance (as defined in the Consent Judgment[35]) with the Nunez Orders. The proposed order also would give the Receiver specific enumerated powers, such as the authority to implement changes to DOC policies, procedures, protocols, and systems relating to the requirements of the Nunez Orders; the authority to review, investigate, and take disciplinary or corrective actions with respect to violations of the Use of Force Directive; the authority to more efficiently assign and deploy uniformed staff to maximize coverage in housing areas; the authority to hire and promote staff so that there are a sufficient number of qualified and experienced individuals to fill supervisory and other uniformed positions; and the authority to procure necessary equipment and supplies to enhance security in the jails. We would expect the receiver to work collaboratively with the Monitor and his team, taking full advantage of the sound recommendations and technical assistance they provide.

Finally, the receivership would be a temporary remedy to address what to date have proved to be intractable systemic failures and a "deeply entrenched culture of dysfunction that has persisted across decades and many administrations."[36] While the Government does not view a receiver as a "magic bullet" or a "quick fix," the receivership would in no way be permanent. The receiver's authorities would terminate as soon as the Court determines that Defendants have achieved Substantial Compliance with the Nunez Orders.

---

[34] *See* Oct. 5, 2023 Monitor Report at 25, Dkt. No. 581.

[35] *See* Consent Judgment, § XX, ¶ 18 n.2, Dkt. No. 249.

[36] *See* July 10, 2023 Monitor Report at 142, Dkt. No. 557.

For the foregoing reasons, and all of the reasons stated in the Memorandum of Law in Support of Plaintiffs' Motion for Contempt and Application for Appointment of a Receiver, the Government respectfully requests that the Court grant the Motion, find Defendants in contempt of the Nunez Orders, and enter the proposed order appointing a receiver.

        Respectfully,

        DAMIAN WILLIAMS
        United States Attorney

By: /s/ Jeffrey K. Powell
    JEFFREY K. POWELL
    LARA K. ESHKENAZI
    Assistant United States Attorneys
    Tel:   (212) 637-2706/2758
    Email: Jeffrey.Powell@usdoj.gov
             Lara.Eshkenazi@usdoj.gov

cc:    all counsel of record (*via* ECF)