

**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**John Schemitsch**
Senior Counsel
Desk: 212-356-3539
jschemit@law.nyc.gov

November 28, 2023

**BY ECF**
Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  *Nunez, et al. v. City of New York et al.,* 11-cv-5845 (LTS)

Dear Chief Judge Swain:

      I am a Senior Counsel in the Office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel for the City of New York (the "City"), assigned to represent the City and the Department of Correction ("DOC") in this matter. Defendants write in response to the Court's Order to Show Cause, filed on November 16, 2023. *See* ECF No. 600.

      By way of background, on November 15, 2023 (*see* ECF No. 599) the Monitoring Team wrote to the Court alleging that Defendants were not in compliance with a number of Court orders, in particular alleging that Defendants were not in compliance with paragraph I.5 of the June 13, 2023 Order[1] (*see* ECF No. 550) as well as requirements under the Action Plan § D ¶ 3[2] and § E ¶

---

[1] This section of the Court's Order pertain to the Monitor's access to information, including requirements that the Department "proactively consult with the Monitor in advance of promulgating any new policies or procedures that relate to compliance with the *Nunez* Court Orders." *See* ECF No. 550 at ¶ I.5.

[2] This section of the Action Plan provides that "[t]he Department shall consult with the Monitor on the system, plans, and initiatives to improve security practices as set forth in § D., ¶ 2 of this order above. If the Department's proposed systems, plans or initiative(s) fail to adequately and reasonably address the requirements of § D., ¶ 2 above, the Monitor, within 15 business days, must advise the Department in writing that the plan is insufficient to achieve compliance with the provision. The Monitor may direct the Department to refine the initiative(s) as necessary to ensure

4[3]. In particular, the Monitoring Team raised this issue regarding the Department's opening and closing of the Arson Reduction Housing Unit ("ARHU"). The Court thereafter issued an Order to Show Cause on November 16, 2023 directing Defendants to provide specific information and address why Defendants should not be held in contempt in connection with "(i) opening the ARHU without prior notification of the Monitoring Team, and (ii) the broader, consistent failure of the Department to communicate transparently, proactively, and accurately with the Monitoring Team." *See* ECF No. 600.

In response to the Court's inquiries, Defendants respectfully submit declarations from Commissioner Louis Molina, Senior Deputy Commissioner Charles Daniels, Deputy Commissioner of Security Operations Ronald Brereton, and *Nunez* Manager Kimberly Joyce, which are attached hereto as Exhibits A, B, C, and D, respectively.

The opening of the ARHU and any claimed failures in communication by the Monitor do not meet the standard for contempt. A contempt order is a "potent weapon" that is inappropriate if "there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Latino Officers Ass'n City of N.Y. Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) (quoting *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)); *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). A civil contempt order is warranted "for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. V. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotations and citations omitted).

First, the orders cited by the Monitoring Team are not clear and unambiguous in this instance. "The language of a consent decree must dictate what a party is to do and what it must refrain from doing." *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003). A court must measure the conduct in question against the language of the relevant order, and such language must be "unambiguous" and "leave no uncertainty in the minds of those to whom it is addressed." *Perez*, 347 F.3d at 424; *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615 (S.D.N.Y. 2008) (noting that in finding contempt, the order must have language "'specific and definite enough to apprise those within its scope of the conduct that is being proscribed' or required" (quoting *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989))). While the provisions cited pertaining to the Action Plan, § D ¶ 3 and § E ¶ 4, pertain to

---

compliance with the provision. The Department must then implement the revised initiative(s), including any additional requirements from the Monitor." ECF No. 465 at § D ¶ 3.

[3] This section of the Action Plan provides that "[w]ithin 60 days of this Order, the Department, in consultation with the Monitor, must develop a housing and management strategy that will safely and adequately manage those incarcerated individuals that have engaged in serious acts of violence and pose a heightened security risk to the safety of other incarcerated individuals and staff. This housing and management strategy must comply with the HALT Act, reflect sound correctional practice, and is subject to the approval of the Monitor. This housing and management strategy must be implemented within 30 days of receipt of approval." ECF No. 465 at § E ¶ 4.

housing and management strategies as well consultation with the Monitor, Defendants have been in communication with the Monitor regarding housing and facility management. The Monitor appears to contend that Defendants have not engaged in proactive consultation with the Monitor regarding the opening the ARHU. *See* ECF No. 550 at ¶ I.5. Paragraph I.5 of the July 13, 2023 order does not provide for what would constitute 'proactive' communication, and does not set forth specific or definite requirements to apprise Defendants of what is required in order to 'proactively' communicate. Indeed, the Department has engaged in communications with the Monitoring Team about the proposed ARHU and has affirmatively reached out to communicate that the unit was being developed in response to issues raised by the Monitoring Team about the need to take immediate steps to reduce violence as well as incidents of arsons within Department Facilities. *See* Exhibits B and C.

Second, there is not clear and convincing evidence of non-compliance. As Defendants have previously affirmed to the Court, the Department is committed to improved communications with the Monitoring Team. *See* ECF No. 562 at p. 7. This remains true today. Indeed, as noted in the attached declarations, the Department did engage with the Monitoring Team in discussing options to reduce violence and incidents of arson, with SDC Daniels meeting with the Monitoring Team on October 16, 2023, and October 23, 2023. *See* Exhibit B. Further, DC Brereton met with the Monitor on or about November 9, 2023 to discuss the ARHU project and its compliance with *Nunez* orders, and believed based upon those conversations that the Department could initiate the pilot and open the ARHU. *See* Exhibit C. Indeed, Defendants' conduct, in moving forward to initiate the ARHU, was undertaken in good faith in an attempt to comply with Court orders, and address arson issues, and does not constitute clear and convincing evidence of non-compliance. In any event, due to a miscommunication about suitability of the location of the unit, it was prematurely opened and closed within 24 hours. *See* Exhibits B and C. Should a similar unit be opened in the future, SDC Daniel's team, including DC Brereton will consult with the Monitoring Team. *See id*.

Third, Defendants have diligently attempted to comply with the Court's orders regarding transparent, proactive, and accurate communication with the Monitoring Team in a reasonable manner. "In evaluating the purported contemnor's conduct, '[t]he court is not empowered to command, any more than it can pretend for itself to achieve, performance approximating perfection. The court is obliged, however, to require substantial performance and due diligence.'" *Zino Davidoff SA v. CVS Corp.*, 2008 U.S. Dist. LEXIS 36548, at *16-17 (S.D.N.Y. Apr. 17, 2008) (quoting *Aspira of New York, Inc. v. Bd. of Educ. of the City of New York*, 423 F. Supp. 647, 651 (S.D.N.Y. 1976)); *see also Dunn v. N.Y.S. Dept. of Labor*, 47 F.3d 485, 490 (2d Cir. 1995) ("The failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt . . . ."). "Reasonable diligence therefore does not require . . . [the alleged violator] to 'exhaust all means available' to them." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 293 (2d Cir. 2008). "Reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance." *Zino Davidoff SA v. CVS Corp.*, 2008 U.S. Dist. LEXIS 36548, at *23. As noted in the declarations of SDC Daniels and DC Brereton, the Department has communicated with the Monitoring Team on October 16, 2023, October 23, 2023, November 9, 2023, and November 14, 2023 regarding the ARHU. *See* Exhibit B. In addition to the previously mentioned meetings, SDC Daniels, who started at the Department in mid-September 2023, first met with the Monitoring Team on October 12, 2023, and has an upcoming scheduled meeting on November 30,

2023, with future meetings to occur with regularity. *See* Exhibit D.  Further, DC Brereton has regular meetings scheduled with the Monitoring Team on an approximately twice a month basis. *See id*. In addition to SDC Daniels and DC Brereton, other members of the Department's leadership team regularly met with the Monitoring Team, a summary of the recent communications between various Department stakeholders, pertaining to Training, the Investigation Division, Trials an Litigation, Administration, Security, the Nunez Compliance Unit, and Facility Operations, are detailed in Exhibit D. The Department is working to achieve meaningful reform in order advance the core purpose the Consent Judgement and ensuing Orders, which is to protect individuals from violence and unnecessary force, and takes it obligations to consult with the Monitoring Team seriously.

      Thank you for your consideration of this matter.

      Respectfully submitted,

      /s/
      John Schemitsch

cc:    BY ECF
      *All counsel of record*