UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
MARK NUNEZ, et al.,                                   :

                Plaintiffs,                     :

  -against-                                                    :          11 Civ. 5845 (LTS)(JCF)

CITY OF NEW YORK, et. al.,                   :

                Defendants,                 :
---------------------------------------------------------------x
UNITED STATES OF AMERICA,                    :

                Plaintiff-Intervenor,       :

  -against-                                                    :

CITY OF NEW YORK and NEW YORK          :
CITY DEPARTMENT OF CORRECTION,         :

                Defendants.                :
---------------------------------------------------------------x


**BRIEF OF AMICUS CURIAE NEW YORK CIVIL LIBERTIES UNION IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT A RECEIVER**


                                                            NEW YORK CIVIL LIBERTIES UNION
                                                            FOUNDATION
                                                            Molly K. Biklen
                                                            Christopher Dunn
                                                           125 Broad Street, 19th Floor
                                                            New York, N.Y. 10004
                                                            mbiklen@nyclu.org

Dated:  December 1, 2023
         New York, N.Y.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    COMPLIANCE WITH LOCAL LAW REQUIREMENTS OF CLOSING RIKERS ISLAND IS CONSISTENT WITH RECEIVERSHIP. ................................................................ 3

    II.    DEPARTMENT OF CORRECTION EFFORTS TO CONCEAL INFORMATION ABOUT RIKERS ISLAND STRONGLY SUPPORT A RECEIVERSHIP, AND THE COURT SHOULD ASSURE THE RECEIVERSHIP PRIORITIZES TRANSPARENCY. ..................... 4

        A.    The Department of Correction Recently Has Engaged in a Concerted Campaign to Conceal the Extent of Constitutional Violations at Rikers Island. ........................................ 5

        B.    The Court Should Assure the Receivership Promotes Full Transparency About Rikers Island. ................................................................................................................................. 8

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases** .................................................................................................................................. **Page(s)**

*Brown v. Plata*, 563 U.S. 493 (2011) ............................................................................................. 3

*M.C. v. Jefferson County*, 2022 WL 1541462 (N.D.N.Y. 2022) ................................................... 2

*New York Civil Liberties Union v. New York City Department of Correction*, 213 A.D.3d 530 (1st Dept. 2023) ............................................................................................................................. 2

*Peoples v. Annucci,* 180 F.Supp.3d 294 (S.D.N.Y. 2016) ............................................................. 2

*Plata v. Schwarzenegger*, 603 F.3d 1088 (9th Cir. 2010) ............................................................. 3

*United States v. Erie County*, 763 F.3d 235 (2d Cir. 2014) ................................................... 2,8,11

*V.W. v. Conway,* 236 F.Supp.3d 554 (N.D.N.Y. 2017) ................................................................. 2

**Statutes, Rules, & Regulations**

N.Y.C. Admin. Code § 4-215(a)(1) ............................................................................................... 4

**Other Authorities**

Jacob Kaye, *DOC agrees to restore Rikers video access to oversight body*, Queens Daily Eagle (Oct. 3, 2023), https://queenseagle.com/all/2023/10/3/doc-agrees-to-restore-rikers-video-access-to-oversight-body .................................................................................................................. 7

Jake Neenan, *As Overdose Deaths Mount in New York Prisons, Treatment Program Crawls*, New York Focus (Nov. 9, 2023), https://nysfocus.com/2023/11/09/prison-overdose-death-opioid-mat ................................................................................................................................... 10

Jonathan Lippman et al., *A More Just New York City* (April 2017), available at https://bit.ly/2m6xfXa ................................................................................................................... 4

Jonathan Lippman, et al., *A More Just New York City: Closing the Chapter on Rikers* (October 2019), available at https://tinyurl.com/yckt6a9n ......................................................................... 4

*Monthly Statistical Reports*, NYC Civilian Complaint Review Board, https://www.nyc.gov/site/ccrb/policy/monthly-statistical-reports.page ..................................... 10

New York City, *A Roadmap to Closing Rikers*, ........................................................................... 4

*New York City Is Leading A Historic Decarceration Plan*, available at https://criminaljustice.cityofnewyork.us/wp-content/uploads/2019/10/Historic-Decarceration-Plan.pdf ......................................................................................................................................... 4

Reuven Blau, *City Jails No Longer Announcing Deaths Behind Bars*, *Angering Watchdogs*, The City (May 31, 2023), https://www.thecity.nyc/2023/05/31/correction-jails-not-announcing-deaths-rikers/ ................................................................................................................................. 7

Reuven Blau, *Demand Grows to Make Rikers Island Death Reports Public*, The City (Aug. 28, 2023), https://www.thecity.nyc/2023/08/28/demand-rikers-death-reports-public-rivera/.............8

**INTRODUCTION**

Facing a humanitarian crisis arising from years of grave constitutional violations that pose a daily threat to the thousands of people incarcerated in New York City jails – and that killed nineteen people in 2022 alone – this Court now must decide whether to take the critical step of appointing an independent receiver. The New York Civil Liberties Union submits this amicus brief in support of the appointment of a receiver and to highlight two aspects of a receivership the NYCLU believes are essential for curing the ongoing constitutional violations.[1]

First, the long history of the dangerous, inhumane, and unconstitutional conditions on Rikers Island and the demonstrated unwillingness or inability of New York City officials to remedy those conditions make clear that the ultimate remedy to the pervasive constitutional violations is to close Rikers Island entirely. In recognition of this, the New York City Council has mandated that jail facilities on Rikers Island be closed by August 31, 2027, but recent progress towards complying with that deadline has stalled. Though not the express goal of the receivership being proposed to this Court, the NYCLU submits that the appointment of a receiver is consistent with and ultimately will facilitate the closing of Rikers Island.

Second, the NYCLU notes that a central feature of the current crisis facing the Court has been the aggressive effort by City officials to block the Court, other oversight bodies, and the public from access to vital information about the operation of the City's jail system and about the plight of those trapped in that system. The appointment of a receiver offers this Court and the public an important opportunity to increase transparency into the humanitarian crisis engulfing

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than the amicus curiae or its counsel contributed money that was intended to fund preparing or submitting this brief. The NYCLU is a nonprofit organization with no parent corporation and in which no person or entity owns stock.

1

the plaintiff class. The NYCLU therefore urges the Court to build into the receivership robust transparency measures, including mandated public release of a wide range of information about the jail system.

Founded in 1951 as the New York State affiliate of the American Civil Liberties Union, the NYCLU is a non-profit, non-partisan organization whose mission is to defend and promote civil rights and liberties, including the rights of individuals in government custody to humane and constitutional conditions and the right of the public to information about the government treatment of those in its custody. Though the NYCLU has not previously been involved in this litigation, it has extensive experience challenging unconstitutional conditions in prisons and jails in New York State. *See, e.g., Peoples v. Annucci,* 180 F.Supp.3d 294 (S.D.N.Y. 2016) (approving settlement agreement in NYCLU class-action challenge to unconstitutional use solitary-confinement in state prison system); *V.W. v. Conway,* 236 F.Supp.3d 554 (N.D.N.Y. 2017) (granting preliminary injunction in NYCLU class-action challenge to unconstitutional solitary confinement of juveniles in Syracuse jail); *M.C. v. Jefferson County*, 2022 WL 1541462 (N.D.N.Y. 2022) (granting preliminary injunction in NYCLU class-action challenge to unconstitutional failure to provide medical services in county jail). The NYCLU also has long been involved in efforts to assure public access to information about jail conditions, *see, e.g., United States v. Erie County*, 763 F.3d 235 (2d Cir. 2014) (holding NYCLU entitled to monitor reports about compliance with consent decree about jail conditions), and currently is litigating the Department of Correction's refusal to give the NYCLU access to information about department disciplinary practices, *see New York Civil Liberties Union v. New York City Department of Correction*, 213 A.D.3d 530 (1st Dept. 2023) (affirming order requiring

Department of Correction to produce records). The NYCLU respectfully submits that this history enables it to contribute to this Court's consideration of the request for a receiver.

## ARGUMENT

### I. COMPLIANCE WITH LOCAL LAW REQUIREMENTS FOR CLOSING RIKERS ISLAND IS CONSISTENT WITH RECEIVERSHIP.

Courts have broad equitable powers to remedy incorrigible constitutional violations. A receivership allows a court to "tak[e] over other governmental agencies that could not or would not comply with the law." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093 (9th Cir. 2010). The plaintiff class and the United States detail how the New York City Department of Correction ("DOC") cannot comply with existing court orders, action plans, and the minimum guarantees of the Constitution. *See* Mem. of Law in Supp. of Pls.'s Mot. for Contempt and Appl. for Appointment of a Receiver, Nov. 17, 2023, ECF No. 603; Letter in Supp. Of Mem., Nov. 17, 2023, ECF No. 604; Proposed Findings of Fact in Supp. of Pls.'s Mot. For Contempt and Appointment of a Receiver, Nov. 17, 2023, ECF No. 605. DOC's ongoing failure to comply with the Consent Decree and remedial orders and the dangerous deterioration of jail conditions compels the appointment of a receiver as the least intrusive means for remedying the risk of harm to individuals in custody. *Cf. Brown v. Plata*, 563 U.S. 493, 511 (2011); *Plata*, 603 F.3d at 1098. And the mandate of the receiver to redress the "unsafe, dangerous, and chaotic" conditions at the jails is fully consistent with compliance with the local laws providing for the closure of Rikers Island. Monitor Letter Mot. at 5, Oct. 27, 2023, ECF No. 588.

The legislation requiring the closure of Rikers by August 31, 2027, centers on a commitment to a much smaller jail system that incarcerates thousands fewer people.[2] The Rikers Island facilities, located far from the courts, service providers, and the community, will be replaced by alternatives to incarceration and smaller, borough-based jails that are much closer to each county's courthouses.[3] *See* N.Y.C. Admin. Code § 4-215(a)(1) (providing that by no later than August 31, 2027, Rikers Island "shall no longer be used by the department of correction for the housing of incarcerated persons."). Decarcerating individuals in custody and diverting others to community programs aligns with remedial efforts here, as the Monitor has explained that "[r]educing the jail population is necessary to support the overall reform efforts." Monitor Report at 168, Jul. 10, 2023, ECF No. 557. And reducing the length of stay of individuals in custody and ensuring timely court appearances is an important measure of the independent receiver's ability to manage the jails. The ultimate resolution for the dangerous and unconstitutional conditions at Rikers Island is the closure of its jails, and compliance with the timeline for closure by August 31, 2027, aligns with the reform goals of an independent receivership in this case.

II. **DEPARTMENT OF CORRECTION EFFORTS TO CONCEAL INFORMATION ABOUT RIKERS ISLAND STRONGLY SUPPORT A RECEIVERSHIP, AND THE COURT SHOULD ASSURE THE RECEIVERSHIP PRIORITIZES TRANSPARENCY.**

Given the current conditions at Rikers, the appointment of an independent receiver is necessary for the safety of people in custody there. Appointment of a receiver now is particularly

---

[2] New York City, *A Roadmap to Closing Rikers*, https://rikers.cityofnewyork.us/ (last accessed Nov. 30, 2023). *See also* Jonathan Lippman et al., *A More Just New York City* at 25 (April 2017), available at https://bit.ly/2m6xfXa; Jonathan Lippman, et al., *A More Just New York City: Closing the Chapter on Rikers*, at 7 (October 2019), available at https://tinyurl.com/yckt6a9n.
[3] *New York City Is Leading A Historic Decarceration Plan*, available at https://criminaljustice.cityofnewyork.us/wp-content/uploads/2019/10/Historic-Decarceration-Plan.pdf (last accessed Nov. 30, 2023).

appropriate given recent and aggressive efforts by DOC to conceal information from this Court, from other oversight bodies, and from the public. In light of this history and the intense public interest in Rikers Island, the Court should assure that a central feature of the receivership is a commitment to full transparency about all aspects of Rikers Island.

### A. **The Department of Correction Recently Has Engaged in a Concerted Campaign to Conceal the Extent of Constitutional Violations at Rikers Island.**

As Rikers Island has become ever more dangerous over the last several years, DOC has resorted to an alarming campaign of attempting to conceal the constitutional violations permeating its jails and the deathly toll those violations are taking on those held there. The agency fails to collect useful data, withholds information the Monitor requests, and obscures crucial information from journalists and the watchdogs that inform the public. The results of this accelerating secrecy campaign are deadly and provide further support for an independent receiver.

Currently, DOC underestimates harm to people in custody at Rikers with data collection methods that fail at every step. To begin with, DOC staff have discretion over the disclosure of serious violent incidents, which they often do not report. *See, e.g.*, Special Report at 4-9, May 26, 2023, ECF No. 533 [hereinafter May 26 Special Report] (detailing five unreported incidents leading to the death or serious physical injury of people in custody that took place in less than one month). When reports occur, DOC frequently incorrectly or incomprehensibly categorizes the violence, making it difficult to track progress. *See* Status Report at 29-32, Nov. 8, 2023, ECF No. 595 [hereinafter Nov. 8 Report]. As a result of these inconsistent reporting practices, the Monitor has disclaimed any confidence in the accuracy of DOC's data regarding stabbings and slashings. *Id.* at 8. Sometimes, DOC falsifies statistics entirely. *See* Legal Aid Society Letter at 5, Nov. 14, 2022, ECF No. 477 (detailing how DOC "retroactively changed a person's 'In-Custody

5

Start Time'" in at least "16 instances" over several days to create the appearance of compliance with a 24-hour intake processing limit) (internal citations omitted). Undetected, these statistical "adjustments" would allow unconstitutional conditions to go unscrutinized. *See* Second Status Report on DOC's Action Plan by the Nunez Independent Monitor at 84-87 Oct. 28, 2022, ECF No. 472 (echoing these concerns and adding that "the data currently captured by the system [is] unreliable and unusable.").

Further, because "the Department's requirements for incident reporting are embedded in at least 8 different policies," resulting databases are piecemeal and do not provide a complete picture of violence or discipline. Nov. 8 Report at 30-31. Video footage and photography cannot fill in the gaps because staff often fail to turn on body cameras and photograph the wrong people after an incident. *Id*. at 84. The resulting data on use of force, stabbings and slashings, sexual misconduct, causes of hospitalizations, and deaths is unreliable and underestimates harm to those in custody. May 26 Special Report at 12 (detailing harm from 2019 and 2021; Nov. 8 Report at 33-34, 58. And many of the most troubling incidents are not reported timely, if at all. *See* Nov. 8 Report at 36; May 26 Special Report at 3-10.

As this Court is well aware, DOC has gone to increasing lengths to withhold accurate data from the Monitor in this case. Status Report at 1, Nov. 30, 2023, ECF No. 616. DOC's responses to inquiries from the Monitor about data collection have been vague and unresponsive or have provided incomplete data on injuries and hospitalizations. May 26 Special Report at 3-10; Nov. 8 Report at 32, 35, 43. In a willful attempt to hide these reports, DOC has claimed falsely that neither the Consent Decree nor the Action Plan required DOC to report deaths of people in their custody to the Monitor.  May 26 Special Report at 5-6; Second Remedial Order, ¶ 1(i)(b), ECF No. 398; Action Plan, § D, ¶ 2(g), §G, ¶ 4 (b)(iv)(1), ECF No. 465. As a policy,

6

DOC now makes "ongoing efforts to interfere, obfuscate and otherwise impede" transparency. Nov. 8 Report at 39. The Monitoring team "receives continuing reports that staff are afraid to speak or be candid with the Monitor for fear of reprisal by the Commissioner and possibly other Department leadership." Status Report at 12, Nov. 30, 2023, ECF No. 616. Last month, senior leadership threatened to sue the Monitor. *Id.* at 16.

Beyond the Monitor, DOC has also sought to limit information to the Board of Correction, which is responsible for the independent oversight of the Rikers Island correctional facilities. On January 9, 2023, DOC blocked the Board's previously broad remote access to surveillance footage from inside the jails that it uses to fulfil its oversight duties and investigate deaths of individuals in custody.[4] DOC successfully obfuscated investigations for nine months, backtracking only recently after the Board sued.[5] The Board of Correction's investigations are confidential, and DOC has provided no credible rationale for its efforts to stymie their work by sharply limiting access to video from the jails.[6] DOC has also sought to keep information from the public, most notably announcing that it has ceased the practice of notifying journalists about deaths in custody.[7] No credible justification supports this policy change. Further, the reviews of

---

[4] *See* Compl. ¶ 1, *N.Y.C. Board of Correction v. N.Y.C. Dept. Of Correction*, 812184/2023E, NYSCEF No. 1 (2023). *See also* Jacob Kaye, *DOC agrees to restore Rikers video access to oversight body*, Queens Daily Eagle (Oct. 3, 2023), https://queenseagle.com/all/2023/10/3/doc-agrees-to-restore-rikers-video-access-to-oversight-body.
[5] Jacob Kaye, *DOC agrees to restore Rikers video access to oversight body*, Queens Daily Eagle (Oct. 3, 2023), https://queenseagle.com/all/2023/10/3/doc-agrees-to-restore-rikers-video-access-to-oversight-body; Stipulation of Discontinuance, *N.Y.C. Board of Corrections v. N.Y.C. Dept. Of Correction*, No. 812184/2023E, NYSCEF No. 43 (2023); Memorandum of Understanding, *N.Y.C. Board of Corrections v. N.Y.C. Dept. Of Correction*, No. 812184/2023E, NYSCEF No. 41 (2023).
[6] *See* Compl. ¶ 3, *N.Y.C. Board of Correction v. N.Y.C. Dept. Of Correction*, No. 812184/2023E, NYSCEF No. 1 (2023).
[7] *See* Reuven Blau, *City Jails No Longer Announcing Deaths Behind Bars, Angering Watchdogs*, The City (May 31, 2023), https://www.thecity.nyc/2023/05/31/correction-jails-not-announcing-deaths-rikers/.

deaths in city jails by Correctional Health Services, the agency responsible for medical care at Rikers, are not public and any proposed corrective actions are not made transparent. Indeed, these reviews "are so tightly kept under wraps that Correctional Health Services does not even publicly acknowledge who receives them."[8]  Public findings by the Board of Correction and the state Commission on Correction are no substitute, as the Commission on Correction's reviews typically take years to complete its review.[9]

### B. The Court Should Assure the Receivership Promotes Full Transparency About Rikers Island.

Full transparency to the Court is essential for curing the grave violations that permeate Rikers Island. Full transparency to the public is equally essential for supporting the Court's efforts and the City's commitment to close Rikers Island. In light of these considerations, the NYCLU urges the Court to ensure the appointment of a receiver includes a robust commitment to transparency.

All reports from the independent receiver to the Court would be subject to a public right of access, *see, e.g., Erie County*, 763 F.3d at 238-44, and must be filed on the public docket. But the Court should go much further and require that the receiver regularly publish information to the public even if that information is not formally provided to the Court as part of a report. The Monitor currently discloses data on deaths in custody, use of force investigations, disciplinary records, and updates on progress and setbacks. *See, e.g.*, Second Remedial Order Report at 5, June 3, 2021, ECF No. 373 (use of force); *id.* at 9 (disciplinary data); Third Remedial Order Report at 4, Dec. 22, 2021, ECF No. 435 (noting total use of force incidents, pending

---

[8] Reuven Blau, *Demand Grows to Make Rikers Island Death Reports Public*, The City (Aug. 28, 2023), https://www.thecity.nyc/2023/08/28/demand-rikers-death-reports-public-rivera/.
[9] *Id.* (average of almost two and a half years from death).

investigations, and closed investigations compared to preceding four-year period); *id.* at 6 (listing cases referred for formal discipline through trial system); *id.* at 7 (detailing outcome of disciplinary trials at the Office of Administrative Trials and Hearings); Nov. 8 Report (describing use of force, deaths in custody, discipline, information gaps throughout). The appointment of and information generated by a receiver merits no less scrutiny.

But these reports alone are not sufficient for the public to understand whether jails are appropriately staffed and how staff are complying with policies on use of force. As many complaints are unresolved or abandoned, information on complaints, investigations, and unsubstantiated claims could reveal a great deal about the facilities' conditions, including the health and well-being of individuals who are in custody. The Court should require the receiver to publish information and databases on misconduct complaints, investigations, disciplinary proceedings and outcomes, and all uses of force.[10] *See* Order at 2, ECF No. 564 (ordering DOC to "develop a set of data and metrics for use of force, security and violence indicators that will be routinely evaluated by Department leadership" by September 30, 2023).

Such information is critical for the public to understand how complaints are processed, the handling of misconduct investigations, the obstacles to timely and thorough investigations and evidentiary collection, and how disciplinary recommendations are or are not overridden. As thorough and timely investigations and imposition of meaningful discipline are key elements of the Consent Judgment, *see* Consent Judgment § VII ¶¶ 1, 9, the metrics underlying them must be public.

---

[10] Currently, the NYCLU is aware of at least six databases containing detailed information on allegations of misconduct and discipline: (1) Time Matters; (2) Service Desk; (3) CMS (Case Management System); (4) CAPPI/ITTS (Investigations, Trials, Tracking System); (5) PREA (Prison Rape Elimination Act) tracker; and (6) Trials Tracker.

9

Understanding these processes is imperative for the public and a regular feature of monthly public reports by other city agencies charged with oversight, such as the New York City Civilian Complaint Review Board ("CCRB"). The CCRB investigates certain complaints of NYPD misconduct and each month it discloses data on complaints received, types of allegations, length of active cases and investigations, requests for body worn camera footage, dispositions, and investigations withdrawn, among others.[11] The receiver similarly could publish regular data to provide the public with a more complete view of progress or regression on Rikers Island.

Finally, this Court should require publication of additional data sets or analyses that are created during the receivership indicating the status of compliance at Rikers. This material might involve the receiver's analysis of DOC's own data, new sets the required by the receiver, or video or photographic documentation.[12] Disclosing this information will increase public accountability. To allow flexibility as the receiver uncovers hidden information, the Court should include a robust transparency requirement in its receivership order to ensure that new, pressing information on jail conditions reaches the public in a timely manner.

## CONCLUSION

After eight years of monitoring and remedial orders from the Court, conditions at Rikers continue to deteriorate and risk immediate harm to the health and safety of people in custody. A receivership is the most appropriate and least intrusive remedy to stem the tide of chaos and disfunction. These issues "are manifestly ones of public concern and therefore ones which the

---

[11] *See, e.g.*, *Monthly Statistical Reports*, NYC Civilian Complaint Review Board, https://www.nyc.gov/site/ccrb/policy/monthly-statistical-reports.page (last accessed Nov. 30, 2023).

[12] As an example of this analysis, see Jake Neenan, *As Overdose Deaths Mount in New York Prisons, Treatment Program Crawls*, New York Focus, (Nov. 9, 2023), https://nysfocus.com/2023/11/09/prison-overdose-death-opioid-mat (finding that while the prison population has shrunk over the last five years, "the overdose death rate has tripled" based on data published outside the monitorship)

public has an interest in overseeing." *Erie Cnty.*, 763 F.3d at 242. A receiver cannot oversee continued violations of New Yorkers' rights in the dark. The significance of the issues and the history of DOC's attempts to shield from public view the conditions at Rikers demand publicizing available information early and often, and an order appointing a receiver should include those requirements to ensure the public stays informed.

                                    Respectfully submitted,

                                    NEW YORK CIVIL LIBERTIES FOUNDATION

                        By: */s/Molly K. Biklen*
                                Molly K. Biklen
                                Christopher Dunn
                                125 Broad Street, 19th Floor
                                New York, N.Y. 10004
                                mbiklen@nyclu.org

On the brief: Kathryn Sachs

Dated:  December 1, 2023
           New York, N.Y.