UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK NUNEZ, *et al.*,<br><br>　　　Plaintiffs,<br><br>v.<br><br>THE CITY OF NEW YORK, *et al.*,<br><br>　　　Defendants. | No. 11 Civ. 5845 (LTS)(JCF) |

UNITED STATES OF AMERICA,

　　　Plaintiff-Intervenor,

v.

THE CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION,

　　　Defendants.

**MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

The New York City Bar Association (the "City Bar") and the Vera Institute of Justice ("Vera") (collectively, "proposed amici")—hereby respectfully move this Court for leave to file the accompanying brief, attached hereto as Exhibit A, as amici curiae.[1]

**PRELIMINARY STATEMENT**

Proposed amici are nonprofit organizations dedicated to, among other things, upholding the rule of law and ensuring access to justice in support of a fair society and the public interest, and have devoted significant efforts toward ending mass incarceration in New York City. The City Bar and Vera seek the Court's leave to file the accompanying brief in this action as amici

---

[1] Plaintiffs and the United States consented to this motion. Defendants declined to consent.

1

curiae to advise the Court regarding how appointing a receiver would promote the rule of law and prevent unconstitutional violence to current and future incarcerated people in New York City, and about the need to ensure that the receiver's work is consistent with the legislative mandate to close Rikers Island.

As the attached brief explains, the appointment of a federal receiver is imperative to remedy the unconstitutional state of violence in New York City's jails and bring them under the control of the law. Unlike the officials currently in control of the New York City Department of Correction ("DOC"), a federal receiver would have both the capability and the mandate to protect the constitutional rights of people currently incarcerated by the DOC, as well as the constitutional rights of persons who will be incarcerated by the DOC in the future.[2] This Court has wide discretion to craft an order appointing a federal receiver that is consistent with the Prison Litigation Reform Act, the constitutional rights of current and future incarcerated people, and the New York City Council's legislative mandate to close Rikers Island by 2027.

As advocates for the rule of law in New York City, for maintaining and improving New York's justice systems, and for the closure of Rikers Island, the proposed amici have an interest in this action as it relates to the constitutional rights of people detained in New York City jails, the legislative mandate to close Rikers Island, and, ultimately, New York City's long-term public safety. Proposed amici seek to brief the Court on the importance of crafting an order creating a receivership that will not impede the timely closure of Rikers Island, in order to promote the rule of law.

**ARGUMENT**

---

[2] *Cf.* Status Report on DOC's Action Plan at 10, ECF No. 595 ("It remains troubling that Defendants are unwilling or unable to embrace the realities of the situation and take definitive action to address the problems directly and effectively.").

Proposed amici request the Court's leave to submit the accompanying brief, attached as Exhibit A, which addresses issues pertaining to the appointment of a federal receiver over the DOC and its advancement of the rule of law.

### I.   Legal Standard.

"Unlike the Supreme Court Rules and the Federal Rules of Appellate Procedure, the Federal Rules of Civil Procedure do not specifically provide for the filing of amicus curiae briefs at the district court level.  Nevertheless, district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings."[3]  When exercising that authority, the Court has broad discretion in deciding whether to accept an amicus brief.[4]

"The primary role of the amicus is to assist the Court in reaching the right decision in a case affected with the interest of the general public."[5]  Courts have accepted amicus briefs where helpful to ensure that the court receives "a complete and plenary presentation of difficult issues so that the court may reach a proper decision."[6]  Ultimately, courts commonly exercise their discretion to "err on the side of granting leave" to file amicus briefs.[7]  That is because, when it

---

[3] *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006).
[4] *See Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5667181, at *8 (S.D.N.Y. Sept. 23, 2020); *City of New York v. United States*, 971 F. Supp. 789, 791 n.3 (S.D.N.Y. 1997); *see also United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984).
[5] *Russell v. Bd. of Plumbing Examiners of Cnty. Of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999).
[6] *Newark Branch, N.A.A.C.P. v. Town of Harrison, New Jersey*, 940 F.2d 792, 808 (3d Cir. 1991) (quoting *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974)); *accord SEC v. Ripple Labs, Inc.*, No. 20 CIV. 10832, 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021); *see Commonwealth of the Northern Mariana Islands v. United States*, 2009 WL 596986, at *1 (D.D.C. Mar. 6, 2009) ("The filing of an amicus brief should be permitted if it will assist the judge 'by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs.'" (quoting *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003))).
[7] *Kistler v. Stanley Black & Decker, Inc.*, No. 22-CV-966, 2023 WL 1827734, at *2 (D. Conn. Jan. 25, 2023) (quoting *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J.)).

comes time to decide the underlying motion, if the court finds the brief to be "unhelpful," the court can "simply disregard the amicus brief. . . . On the other hand, if a good brief is rejected, the [court] will be deprived of a resource that might have been of assistance."[8]

## II.     Proposed Amici Are Well-Positioned To Assist The Court.

As prominent advocates for the rule of law in New York City, and for justice in the administration of the City's criminal legal system, both proposed amici are well-positioned to participate as amici curiae in connection with Plaintiffs' motion.  Together, proposed amici represent a wealth of experience and expertise about criminal justice and incarceration in New York generally and the crisis within DOC and at Rikers Island specifically.  Proposed amici's brief aims to equip the Court with a perspective on the pending motion not otherwise presented by the parties but well-supported by proposed amici's experience and the record.

### A.     The New York City Bar Association.

The City Bar was founded in response to public concerns about corruption in New York's justice system, with a mission to promote reform of the law, and to uphold the rule of law and access to justice in support of a fair society and the public interest.[9]  To achieve this mission, the City Bar, which was founded in 1870 and has over 23,000 members, engages in social issues via policy initiatives, involvement in access-to-justice initiatives, and pro bono representation in many areas, including immigration, homelessness, and criminal justice.  It achieves these goals through the efforts of multiple committees composed of expert practitioners in relevant fields, including its Task Force on Mass Incarceration, Corrections & Community Reentry Committee, Civil Rights Committee, Criminal Justice Operations Committee, Task Force on the Rule of Law, and others.

---

[8] *Neonatology Assocs.*, 293 F.3d at 132-33 (finding it "prudent" to liberally grant leave to file amicus briefs).
[9] *See* N.Y.C. Bar Ass'n, *About Us*, https://www.nycbar.org/about (last visited Dec. 1, 2023).

Bar associations, including the City Bar, often present the perspectives of their membership to the courts as amici curiae, particularly in cases involving the administration of justice, the legal profession, and the rule of law.[10]

More than five years ago, and after extensive study, the City Bar determined to support the closure of the Rikers Island jail complex.[11] The City Bar is committed to rectifying the current "unacceptable conditions in City jails."[12]

### B.   The Vera Institute of Justice.

Vera is an independent, nonprofit national research and policy organization founded in New York City.  Since 1961, Vera has worked to end the overcriminalization and mass incarceration of people of color, immigrants, and people experiencing poverty.  Vera extensively publishes research on national and state criminal legal systems,[13] and advocates for improvements to those systems that result in less criminalization and mass incarceration, and more justice and

---

[10] *See, e.g.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 75 (2d Cir. 2017) (citing amicus brief of the City Bar); *Acosta v. New York City Dep't of Educ.*, 946 N.E.2d 731, 731 (2011).
[11] *See* N.Y.C. Bar Ass'n, *Rikers Island Must Be Closed* (Apr. 5, 2018), https://www.nycbar.org/media-listing/media/detail/rikers-island-must-be-closed.
[12] N.Y.C. Bar Ass'n, *Statement in Support of Closing Rikers Island* (Oct. 15, 2019), https://www.nycbar.org/media-listing/media/detail/closing-rikers-island-support-for-borough-based-jail-plan; *see* N.Y.C. Bar Ass'n, *The Human Rights Crisis at Rikers Island: A Call to Action for All Justice System Stakeholders* (Feb. 3, 2022), https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/rikers-island-humanitarian-crisis-a-call-to-action-for-all-justice-system-stakeholders.
[13] *See, e.g.*, Jullian Harris-Calvin et al., *The Cost of Incarceration in New York State*, Vera Inst. Just. (Oct. 31, 2022), https://www.vera.org/the-cost-of-incarceration-in-new-york-state; Lauren Jones et al., *Empire State of Incarceration*, (Feb. 18, 2021), https://www.vera.org/downloads/publications/empire-state-of-incarceration.pdf; Jaeok Kim et al., *Understanding the Impact of New York Bail Reform*, Vera Inst. Just. (Nov. 2022), https://www.vera.org/publications/the-impact-of-new-york-bail-reform-on-statewide-jail-populations.

safety for all.[14]  Nonprofit civil liberties organizations like Vera routinely provide amicus curiae briefing to courts in this district.[15]

Vera's president and other leaders have played key roles on the Independent Commission on New York City Criminal Justice and Incarceration Reform (also known as the "Lippman Commission"), which studied New York City's criminal justice system, gathered testimony and interviewed experts, undertook a far-reaching community engagement process, and researched programs and practices from across the country and around the globe.  The Lippman Commission crafted a closure plan, which the City later adopted, based on its determination that closing Rikers Island was the only path to ensuring that New York City operates a safe, humane jail system.  Vera's president remains on the recently expanded Lippman Commission, and Vera continues to work with other research advocates and policymakers to realize the City's commitment to closing Rikers Island and moving closer to a City that delivers both justice and safety for all its residents.

## III.  The Proposed Amicus Brief Offers An Important Perspective.

Proposed amici seek to present two arguments to the Court, neither of which duplicates arguments made by the Plaintiffs.  First, proposed amici would explain how appointing a receiver to administer Defendants' compliance with the Court's orders and with the Constitution would support the rule of law.  Second, proposed amici would urge the Court to consider the potential impact of an order appointing a receiver upon legislatively enacted, existing plans to close the jail facilities on Rikers Island, and to craft its order accordingly.

---

[14] *See, e.g.*, Mariam Gaye & Brian King, *2022-2023 New York State Policy Briefs*, Vera Inst. Just. (Jan. 2022), https://www.vera.org/publications/2022-new-york-state-policy-briefs.

[15] *See, e.g.*, *Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 CIV. 8668, 2023 WL 2403012, at *33-34 nn.36-38 (S.D.N.Y. Mar. 8, 2023); *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 430 (S.D.N.Y. 2019); *Ognibene v. Parkes*, No. 08 CIV. 1335, 2013 WL 1348462, at *1 (S.D.N.Y. Apr. 4, 2013) (Swain, J.); *Stern v. Cosby*, 645 F. Supp. 2d 258, 275 n.10 (S.D.N.Y. 2009).

In their opening brief, Plaintiffs amply make the case that Defendants' ongoing noncompliance—which is to say, the frighteningly dangerous state of DOC facilities for both the people who work there and those incarcerated there—meets the applicable legal tests for contempt and the appointment of a receiver to secure compliance.[16]  The attached brief does not intend to recapitulate these points.  Instead, proposed amici would describe how appointing a receiver—while admittedly a severe remedy—is unfortunately necessary in this case to uphold the rule of law.  Proposed amici are amply qualified to present this position; indeed, upholding the rule of law has been an important area of study for Vera,[17] and is a core mission of the City Bar and a focus of its work.[18]

While Plaintiffs are correct to seek the appointment of a receiver, the ramifications of that appointment could include impacts on the City's progress toward closing the jail facilities on Rikers Island.  The New York City Council has passed, and the City's previous Mayor signed, legislation requiring the DOC to sunset the use of Rikers Island for incarceration no later than August 2027.[19]  The closure of Rikers, and the opening of smaller, more modern pretrial detention facilities across the City, will represent a new epoch for the DOC, and will do much to alleviate the suffering experienced by the Plaintiff class on a daily basis.[20]  The imperative to close Rikers is therefore related to the issues this Court has sought to remedy throughout the *Nunez* litigation.  Moreover, the efforts of a receiver appointed to manage the DOC will likely impact the City's

---

[16] Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Contempt and Application for Appointment of a Receiver, ECF No. 603.
[17] *See, e.g.*, Jim Parsons, *Developing Indicators to Measure the Rule of Law: A Global Approach*, Vera Inst. Just. (June 2008), https://www.vera.org/publications/developing-indicators-to-measure-the-rule-of-law-a-global-approach.
[18] *See, e.g.*, N.Y.C. Bar Ass'n, *About Us*, https://www.nycbar.org/about (last visited Dec. 1, 2023).
[19] N.Y.C. Council Res. 1091-2019; N.Y. City Admin. Code § 4-215(a)(1).
[20] *See generally* Indep. Comm'n on N.Y.C. Crim. Just. & Incarceration Reform, *A More Just New York City: Closing the Chapter on Rikers* (2019), https://www.morejustnyc.org/reports.

ongoing efforts to move away from Rikers and toward a modern set of jail facilities, and could, depending on this Court's orders, hamper those efforts. However, no party has briefed this issue before the Court. Proposed amici therefore seek leave to advise the Court on the need to craft a receivership order that is consistent with the legislative mandate that incarceration on Rikers Island must come to an end.

## CONCLUSION

For the foregoing reasons, the proposed amici respectfully ask the Court to grant them leave to file the attached amicus brief.

Dated: December 1, 2023

JENNER & BLOCK LLP

By: /s/ Jeremy M. Creelan
Jeremy M. Creelan
Elizabeth Edmondson
Owen Keiter
Sara Cervantes
Sarah L. Atkinson
1155 Avenue of the Americas
New York, NY 10036
jcreelan@jenner.com
(212) 891-1678

*Counsel for the Proposed Amici Curiae*