EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

December 5, 2023

**Via ECF**

The Honorable Laura Taylor Swain
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10038

      Re:    *Nunez v. City of New York,* 11 Civ. 5845 (LTS)

Your Honor:

      We write on behalf of the Plaintiff Class in response to Defendants' submission regarding this Court's Order to Show Cause, filed on November 28, 2023. Dkt. 614. As Defendants' submissions and the report of the Monitoring Team dated November 15, 2023 make clear, Defendants have not complied with the requirements of Paragraphs § I ¶ 5 of this Court's June 13, 2023 Order and the Action Plan by opening a new restrictive housing unit (the Arson Reduction Housing Unit, or "ARHU") without proactive consultation with the Monitoring Team. *See, e.g.*, June 13, 2023 Order, § I ¶ 5; Action Plan § D ¶ 3; Action Plan § E ¶ 4.

      The Department's opening of the ARHU without meaningful consultation with the Monitor violates this Court's orders and the Court should find Defendants in contempt. A finding of civil contempt for failing to comply with a court order is appropriate if: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). Because the purpose of civil contempt is to enforce compliance and remedy the harms caused by non-compliance, it does not require a finding of bad faith, nor does good faith preclude contempt. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

      Here, the language of the June 13, 2023 Order and Action Plan is clear in requiring consultation with the Monitor. The Action Plan requires the Department to consult with the Monitor on Security Practices, *see* Action Plan § D ¶ 3, and must consult with and seek the Monitor's approval regarding the strategy for managing incarcerated individuals following serious incidents of violence, *see* Action Plan § E ¶ 4. The June 13, 2023 Order, issued in response to gaps in consultation with the Monitor, is even more detailed: the Department is required to "proactively consult with the Monitor in advance of promulgating any new policies or procedures that relate to compliance with the *Nunez* Court Orders" and "provide the Monitor

reasonable notice and information of any such new policy and practice, at least *three weeks prior to planned implementation*" to afford the opportunity for meaningful feedback. June 13, 2023 Order, § I ¶ 5 (emphasis added). The Department largely consented to the Order, including § I ¶ 5. Dkt. 545, 545-1. Defendants' sworn statement provides that ARHU was opened as part of a "Violence Reduction Plan" based on recommendations by the Monitor and thus falls squarely within the Nunez Orders. *See* Dkt. 614-2 ¶ 7 (Declaration of DOC Senior Commissioner Daniels); Dkt. 616 (Monitor's Nov. 30, 2023 Report) at 4. The Department was thus required to consult with the Monitor at least three weeks prior to implementation. Contrary to Defendants' position, this clear time frame is a "specific or definite requirement[] to apprise Defendants of what is required to 'proactively' communicate." Dkt. 614 at 3. The purpose of such communication was to ensure the Monitor had the opportunity to provide meaningful feedback— a consultation is not "proactive[]" if it comes too early, *i.e.*, before a plan has sufficiently taken shape that the Monitor can evaluate its details, *or* too late, *i.e.*, once a plan is finalized such that the Monitor's feedback cannot be incorporated.

The Department's version of events—confirmed by the Monitor's report—makes clear that the Department did not engage in the required consultation as set forth in this Court's Orders. It is undisputed that the Monitoring Team learned that the Department opened ARHU the day after it did so, from an anonymous source. Dkt. 599 at 1. The Department does not dispute that it was required to consult with the Monitor regarding opening ARHU. Dkt. 614 at 2-3. Instead, its entire defense rests on a single statement in Deputy Commissioner Brereton's declaration concerning one conversation with the Monitor concerning ARHU, four days before implementation, and Brereton's claimed belief, based on this conversation,[1] that the Department could open ARHU. Dkt. 614-3 at ¶¶ 6-7. Even under Deputy Commissioner Brereton's version, a conversation four days in advance is not "reasonable notice" and squarely violates the Order's requirement to consult with the Monitor at least *three weeks prior* to planned implementation. Moreover, his claimed belief that the Monitor approved DOC opening the AHRU is inconsistent with information the Monitor received from the *Nunez* Manager: the *Nunez* Manager assured the Monitor *on the same date* that plans regarding ARHU were "still in the early stages" and that the Monitoring Team "will be consulted." Dkt. 599 at 2 n. 2. Deputy Commissioner Brereton also does not dispute that he never provided the Monitor with ARHU's operation guide or criteria for admission in advance of this claimed approval; it is incredible that he would believe the Monitor would approve the opening of a pilot project without any such information. Dkt. 599 at 2 (Monitor describing the operation guide ultimately provided as "poorly written, haphazard, vague, and ambiguous" with "unclear" admission criteria). The Monitor's own submission explains that not only did he not approve the ARHU, but that he was relying on Department leadership's commitment that consultation would occur before implementing any such unit. Dkt. 599 at 1-2. And, despite regular communication with the Monitor, the Department never told the Monitoring Team that it had opened ARHU—such that the Monitor learned this crucial information from an anonymous source—further evidencing that the Department knew the Monitor had not blessed opening this pilot.

---

[1] While Deputy Commissioner Brereton states that he "believes based on *these conversations* with the Monitor that we could initiate the pilot," he describes only *one* conversation in his declaration. *Compare* Dkt. 614-3 ¶ 6 *with id.* ¶ 7 (emphasis added).

Finally, the Department has not diligently attempted to comply with the Court's orders requiring proactive consultation with the Monitor under clear time frames with respect to the ARHU. While it is true that the Department is not required to "exhaust all means available" to comply, *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 293 (2d Cir. 2008), "[m]ore is required than a grudging, half-hearted or foot dragging attempt at compliance," *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001). The relevant inquiry is whether the Department has been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Aspira of New York v. Bd. of Educ. of the City of New York,* 423 F. Supp. 647, 654 (S.D.N.Y. 1976). "Reasonably energetic compliance, at a minimum, requires a party to energetically police the effectiveness of its compliance measures and, when advised that such measures have fallen short, to modify them accordingly." *Zino Davidoff SA v. CVS Corp.*, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008). Here, the Department has been counseled by the Monitor and ordered by this Court *repeatedly* to consult and consider feedback before implementing major changes. It did not do so when opening the ARHU. That the Department has periodic meetings with the Monitor on other issues is irrelevant where it failed to consult within the required timeframe—or any reasonable timeframe—before opening ARHU and despite assurances that it would do so. This is far from the energetic compliance required to withstand a contempt finding. At best, the Department has exhibited a "grudging, half-hearted or foot dragging attempt" that borders on indifference. *Chao*, 514 F.3d at 293.

Additionally, the ARHU opening is yet another instance of dysfunction and a lack of transparency with the Monitor, further demonstrating why it is necessary to appoint a receiver. The Department's declarations tell a story of admitted deep dysfunction: it admits it opened and housed people in a unit that "did not have adequate fire suppression," Dkt. 614-2 (Daniels Decl.) ¶ 11, which would never be appropriate but is particularly concerning where the unit was intended to house people "that pose a heightened security risk to the safety of other[s]," Dkt 616 at 4. This is further evidence of what the Monitor has described as a "depth of dysfunction, created over decades of mismanagement, that permeates the entire system." Dkt. 603 at 96-97. Moreover, the Department's conflicting information about the ARHU is emblematic of its longstanding failure to be transparent with the Monitoring Team. In addition to the lack of proactive consultation described above, the Department also was not transparent about the reasons for the closure and continues to provide inconsistent reasoning. Despite telling the Monitor that the ARHU was closed within 24 hours "due to the Monitoring Team's disappointment and frustration," Dkt. 599 at 4, the Department now claims that the unit was dismantled because "each individual cell did not have adequate fire suppression" and based on other information learned about the facility. Dkt. 614-2 at ¶¶ 10-12; Dkt. 614-3 at ¶¶ 8-10.

For the foregoing reasons, the Department should be held in contempt for violating the June 13, 2023 Court Order and the Action Plan.

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____
Jonathan S. Abady
Debra L. Greenberger
Vasudha Talla
Sana Mayat
600 Fifth Avenue, 10th Floor
New York, New York, 10020
Telephone: (212) 763-5000
jabady@ecbawm.com


THE LEGAL AID SOCIETY

_____/s/_____
Mary Lynne Werlwas
Katherine Haas
Kayla Simpson
49 Thomas Street
New York, New York 10013
Telephone: (212) 577-3530
mlwerlwas@legal-aid.org