OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

+1 646 895 6567 | afriedberg@tilllidgroup.com

December 8, 2023

**VIA ECF**
The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Chief Judge Swain,

  We write to advise the Court on a number of issues in advance of the status conference in this matter that is scheduled for December 14, 2023 at 2:00 p.m. The Monitoring Team submits this corrected version of the letter filed moments ago as docket entry 637.  The previously letter incorrectly reported that the Mayor appointed Lynelle Magniley-Liddie as the *Acting* Commissioner of the Department of Correction.  Ms. Magniley-Liddie will serve as the Commissioner of the Department of Correction.  This has been corrected in the letter and is the only change made to the submission that was filed under docket entry 637. We provide the Court the following:

- **Updates on Department Leadership, Allegations of Misconduct & Security Initiatives**: Outlined below is an update to the Court on the Department's leadership and the Mayor's appointment of a new Commissioner, allegations of misconduct by the former Commissioner and an update on several security initiatives. A recently filed Notice of Claim, involving allegations related to the *Nunez* Court Orders, is also attached as Appendix A.

- **Proposed Conference Agenda**: The proposed agenda for the December 14, 2023 status conference is attached as Appendix B.

- **Proposed Order**: A revised version of the proposed Order the Monitor first submitted to the Court in his November 8, 2023 Report is attached as Appendix C. The first paragraph of the proposed Order was revised since it was initially submitted on November 8, 2023. The revisions to the first paragraph were made in response to a proposal from Defendants. No other changes to the proposed Order have been made since it was first submitted. All Parties have advised the Monitor that they do not object to the entry of the Order.

- **Proposed Schedule**: The proposed schedule for the Parties' motion practice and forthcoming conferences before the Court is attached as Appendix D.

## Updates on Department Leadership, Allegations of Misconduct & Security Initiatives

- *Appointment of Commissioner & Other Leadership*

The Mayor announced today, December 8, 2023, that Lynelle Maginley-Liddie will serve as the Commissioner of the Department of Correction, effective immediately. Prior to her appointment, the Mayor, via the Corporation Counsel, communicated with the Monitor regarding the selection of an Commissioner. The Monitor and the Monitoring Team have worked with Commissioner Maginley-Liddie for many years and have developed a good working relationship with her during this time. In her work at the Department, the Monitoring Team has found the Commissioner to be transparent and forthright. She also oversaw one of the most candid, insightful, and transparent assessments of Department practices during her tenure as the First Deputy Commissioner.[1] The Commissioner is well acquainted with the *Nunez* Court Orders, the requirements necessary to advance much needed reform, and the need to work collaboratively and constructively with the Monitoring Team.

The Monitor and Deputy Monitor already met with the Commissioner to ensure that good lines of communication are established from the outset and to discuss priority issues facing the agency. The meeting suggests that the Commissioner possesses a genuine understanding of the current state of affairs and the significant work that lies ahead to address and advance the reforms by the *Nunez* Court Orders and to reverse course on many issues identified by the Monitoring Team.

Also this week, a new Acting General Counsel and Acting Deputy General Counsel were appointed.[2] The Acting General Counsel and Acting Deputy General Counsel have been assigned on loan from the Law Department where they both worked in the Risk Management unit. The Acting Deputy General Counsel worked collaboratively and productively with the Monitoring Team in her prior role at the Law Department.

The appointment of the Commissioner along with the Acting General Counsel and Acting Deputy General Counsel are welcome and appear to reflect an attempt by the City to alter its approach to managing the *Nunez* Court Orders, by prioritizing transparency and by making a renewed commitment to consultation and collaboration.

---

[1] In the Monitor's October 28, 2022 Report, the Monitoring Team found, "The First Deputy Commissioner [now Commissioner] and her team evaluated [Health Management Division] practices to identify weaknesses and deficiencies. In the Monitoring Team's opinion, the assessment of HMD is one of the most candid, insightful, and transparent projects undertaken by the Department in the past seven years." *See* pg. 46.

[2] Prior to these appointments, the General Counsel position had been vacant for approximately three months and the position of Deputy General Counsel had been vacant for approximately one month (and had not been filled for much of the past two years).

- *Former Commissioner's Role and Responsibilities Related to Nunez in New Role &
  Allegations of Misconduct*

Former Commissioner Molina is being transferred to the position of the Assistant Deputy
Mayor of Public Safety, with possible responsibility for overseeing the jails. Former
Commissioner Molina has reported he intends to remain engaged in managing the Department.[3]
He also reported he will be reviewing and evaluating the need for the current Emergency
Executive Orders in place regarding the Department's operations.[4] The Monitoring Team
requested information from the City about former Commissioner Molina's possible oversight of
and involvement with the Department. To date, the City has not responded to the Monitor's
request.

The Monitoring Team's concerns regarding former Commissioner Molina's interference,
obfuscation and management failures, including the failure to consult and collaborate with the
Monitor are well documented. A detailed summary of those findings is included in the Monitor's
November 30, 2023 Report at pgs. 14 and 15 and Appendix B of that Report.

Since the filing of the Monitor's November 30, 2023 Report, a series of allegations
related to the *Nunez* Court Orders have been made by the former Associate Commissioner of the
Investigation Division ("ID") via a Notice of Claim he filed against the City of New York. The
former Associate Commissioner of ID is a well-respected and seasoned leader who has been an
integral part of the Department's reform effort and attempts to comply with the *Nunez* Court
Orders. His leadership and experience, in conjunction with that of a few others, supported
improvement in the Investigation Division prior to the regression seen in 2022.[5] In March 2023,
following the removal of the Deputy Commissioner of ID who was appointed by former
Commissioner Molina, the former Associate Commissioner's leadership was essential in
revitalizing the unit and regaining the ground that had been lost under the Deputy Commissioner
of ID.[6] Subsequently, on September 5, 2023, Commissioner Molina demoted the former

---

[3] Former Commissioner Molina reported "I'll definitely be carrying [items under the Action Plan]
supporting the next commissioner and continuing on the trajectory that we started 22 months ago and
continue building on that. I'm still going to have a voice in that area. Because corrections is part of the
overall public safety strategy for this city. So I'll still be involved in that." See Lisa Evers, Street Soldiers
with Lisa Evers: Hip-hop on Rikers Island exclusive, minute 6 and 41 seconds to minute 7, available at
https://www.youtube.com/watch?v=ulNXimukloo.

[4] *See* Commissioner's testimony at the November 14, 2023 Board of Correction Meeting at minute 50 and
45 seconds to 1 hour and 2 minutes; video available at: https://www.nyc.gov/site/boc/meetings/november-
14-2023.page.

[5] *See* Monitor's 12th Report (dkt. 431) at pgs. 79 to 80 noting that this individual and the then-Deputy
Commissioner of ID were "smart, creative, dedicated and reform-minded leaders who have successfully
guided the significant reform of the ID Division and have helped identify and support initiatives to elevate
the level of practice needed in the facilities." Note, at the time the Monitor's 12th Report was filed, this
individual served as the Assistant Commissioner of the Investigation Division.

[6] *See*, City's Letter to the Court on April 25, 2023 (dkt. 523) at pg. 5 in which the City reports "[i]n
addition, in March 2023, the Deputy Commissioner for ID resigned, and a new leader was appointed. *The
Associate Commissioner for ID, in whom we believe the Monitor has considerable confidence, remains in
place.* The Monitoring Team has shared that it has already seen a clear improvement in cooperation in ID
since the recent leadership changes." Emphasis supplied.

Associate Commissioner of ID.[7] At the time of that demotion, former Commissioner Molina advised the Monitor that the Monitor should refrain from making "glowing representations" about the former Associate Commissioner of ID in the Monitor's report or the Commissioner would "have to get into a public back and forth."[8] Former Commissioner Molina subsequently refused to provide information in response to three different Monitor's requests related to ID, including information about the former Associate Commissioner. The information was subsequently provided following protracted negotiations and, in one case, only after the Court compelled production.[9]

On December 4, 2023, the former Associate Commissioner of ID filed a Notice of Claim with the City of New York. The Notice of Claim includes a number of allegations that raise significant and serious concerns and are directly related to the Monitor's work under the *Nunez* Court Orders. A copy of the Notice of Claim is attached hereto. It must be noted that the Notice of Claim reflects allegations that have not yet been substantiated or refuted.[10]

- *Security and Operational Initiatives*

The jails continue to present a high risk of harm to those who are incarcerated and who work there. It is for this reason that "[i]mmediate, targeted initiatives to address the current driving forces of violence and to bring about even small pockets of relief to the ongoing harm are required."[11] This includes the need for the Department to develop effective initiatives, that have remained elusive to date, to address the foundational operational failures (e.g. securing doors, improved use of restraints/escorts, and lock-in and lock-out times), and initiatives to address housing strategies for certain individuals who for safety and security reasons need to be housed and managed while out-of-cell in smaller groups and/or for shorter periods of time.

The Monitoring Team remains concerned about the development and mismanagement by leadership of various initiatives. For example, the Senior Deputy Commissioner's Arson Reduction Housing Unit ("ARHU") was poorly conceptualized, involved poorly developed policies and procedures, and its operation was mismanaged. Rather than acknowledge these issues, the former Commissioner and the Senior Deputy Commissioner appeared to abdicate responsibility[12] and the City suggested that requirements to consult are unclear.[13] Subsequent

---

[7] At the time of the demotion, the Monitoring Team reported "grave concerns that the removal of the Associate Commissioner will compromise the revitalization effort and morale within the division." See Monitor's October 5, 2023 Report at pg. 13.

[8] The Commissioner also appeared to attempt to influence the Monitoring Team's reporting by requesting that the Monitor not file the May 26, 2023 Special Report. *See* Monitor's July 10, 2023 Report at pgs. 149 to 150.

[9] *See* Monitor's November 8, 2023 Report at pgs. 48 to 53.

[10] The Monitor is not permitted to conduct investigations pursuant to the terms of the *Nunez* Court Orders.

[11] *See* Monitor's November 8, 2023 Report at pg. 23.

[12] *See* Louis Molina's Declaration of November 24, 2023 (dkt. 614-1) at ¶ 6. *See,* also, Charles Daniels Declaration of November 28, 2023 (dkt. 614-2) at ¶¶ 7 to 14.

[13] *See* City's November 28, 2023 Letter to the Court at pgs. 2 to 3.

discussions the Monitor has had with the SDC have revealed an ongoing lack of awareness regarding the problems presented by the operationalization of a housing unit that was poorly developed and managed. Further, on November 30, 2023, during a meeting with the Monitor, the SDC appeared to blame the Monitor for the problems with ARHU, inexplicably suggesting that the concerns the Monitor raised about the large number of fires occurring in DOC housing areas was the reason that the ARHU was opened in the manner it was. To suggest that the Monitor's concerns about the significant number of fires being set in housing areas was an implicit or overt sanctioning of the irresponsible and haphazard development and management of a plan like the ARHU is simply an attempt at blame-shifting and a failure to accept responsibility. In fact, the Monitor affirmatively requested that the Department consult with the Monitor and the Monitoring Team on the development of such a housing unit in an effort to avoid the precipitously developed, poorly managed and potentially dangerous situation that occurred. The status of the ARHU and other violence reduction initiatives under development by the SDC are currently unknown.

One initiative currently underway does appear to hold some promise. The Department, via the Deputy Commissioner of Classification, Custody Management and Facility Operations ("DC of Classification") and the Department's consultant, Dr. James Austin,[14] have been consulting with the Monitoring Team on a proposed pilot project in the OBCC Annex ("OBCC Annex Pilot Project"). The OBCC Annex Pilot Project is intended to address the Monitor's recommendations that certain maximum custody individuals should only congregate in small groups for shorter periods of time.[15] The OBCC Annex Pilot Project appears to be a viable pilot project to address the Monitoring Team's recommendations and, ***if implemented with fidelity***, offers a pathway to provide immediate relief to ameliorate, in part, the unacceptable levels of harm in the jails right now. The Department has submitted the OBCC Annex Pilot Project to the State Commission of Correction for approval.

- ### *Monitoring Team's Ongoing Efforts to Encourage Consultation and Collaboration*

The Monitoring Team continues to have concerns regarding interference and obfuscation of its work, most recently detailed in the Monitor's November 30, 2023 Report. Therefore, the Monitor and Deputy Monitor have continued their efforts to improve collaboration and consultation with the Department. The Monitoring Team continues to meet with officials at all levels and encourages open and transparent communication. The Monitor has also advised those in leadership positions to err on the side of caution if they are unsure whether to consult with the Monitor on any initiative and to either seek guidance from the *Nunez* Manager or to reach out directly to the Monitor or a member of the Monitoring Team. Finally, the Monitoring Team continues to proactively request consultation (when we are in a position to know a matter may require consultation) in an effort to ensure that consultation occurs as required.

---

[14] Dr. Austin was retained pursuant to the Court's Second Remedial Order §1 (i)(f) (dkts. 398 and 415) as well as at the Monitor's recommendation. *See* Monitor's June 30, 2022 Report at pg. 26.

[15] *See* Monitor's November 8, 2023 Report at pgs. 23 to 24.

This is a pivotal time for the City and the Department. The change in Department leadership is an opportunity for the City and Department to take concrete steps to alter the current trajectory to reform. Clear and unequivocal messaging from City and Department leadership, both externally and internally, must emphasize that Defendants intend to be transparent and to comply with the *Nunez* Court Orders, and that a failure to consult with or provide the Monitor with requested information will not be tolerated or excused. More critically, transformative change in *actual practice* by all relevant City and Department leadership and staff must accompany these public proclamations. The City's and Department's *actions*, or lack thereof, will demonstrate whether Defendants are genuinely committed to reform.

We appreciate the Court's attention to this matter.

Sincerely,

<u>s/ Steve J. Martin</u>
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*

# Appendix A

# Appendix B

<u>**December 14, 2023 Court Conference Agenda**</u>

- Update on Current State of Affairs (*Monitor & Deputy Monitor*)

- Order to Show Cause

- Proposed Order regarding Department Reporting & Monitor Reporting (*Deputy Monitor*)

- Proposed Upcoming Schedule (*Parties*)

# Appendix C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                            :

MARK NUNEZ, et al.,                      :

 Plaintiffs,                        :

 - against -                        :

CITY OF NEW YORK, et al.,            :

 Defendants.                      :

                            :  **11 Civ. 5845 (LTS)(JCF)**

------------------------------------------------------------ X
                            :

UNITED STATES OF AMERICA,       :

            Plaintiff-Intervenor,      :

 - against -                        :

CITY OF NEW YORK and NEW YORK CITY   :
DEPARTMENT OF CORRECTION,        :

            Defendants.              :

------------------------------------------------------------ X

**[PROPOSED] ORDER**

1. _Department's Incident Reporting Practices_: The Department shall develop and implement a comprehensive and streamlined policy and procedures for all incidents and events that must be reported (New COD Policy). The policy and procedures shall be subject to the approval of the Monitor. Accordingly, by the dates set forth below, the Department, in consultation with the Monitor, shall:

   a. By December 15, 2023: Provide the Monitoring Team will the full list of Department policies that must be reviewed for potential consolidation into the new COD policy.

   b. By December 22, 2023: Review, revise, and implement updated definitions of Stabbing and Slashing to ensure that the definitions are clear and concise and will result in the collection and reporting of reliable and accurate data. The definitions for Stabbing and Slashing shall be subject to the approval of the Monitor.

   c. By February 2, 2024: Review, revise, and implement updated definitions for the various incident categories maintained by the Department, including all security indicators related to violence, including but not limited to use of force, use of force (allegation), assault/attack on staff, inmate-on-inmate fight/assault, inmate-on-inmate sexual assault, and staff sexual misconduct, to ensure that the definitions are clear and concise and will result in the collection and reporting of reliable and accurate data. The definitions of the various incident categories shall be subject to the approval of the Monitor.

   d. By May 31, 2024: The Department shall implement the New COD Policy.

2. _Monitor's Compliance Assessment - Modification to § G, ¶5(b) of the Action Plan_: The Action Plan, § G, ¶ 5(b) shall be modified to include the language in bold below:

   Given the Monitor's findings in the Monitor's March 16, 2022 Special Report, (pages 63 to 65), and subsequent reports on **October 27, 2022, February 3, 2023, April 3, 2023, April 24, 2023, May 26, 2023, June 8, 2023, July 10, 2023, August 7, 2023, October 5, 2023 and**

**November 8, 2023**, the Monitor's assignment of compliance ratings for each provision of the Consent Judgment (required by § XX, ¶ 18 of the Consent Judgment) and the First Remedial Order are suspended for the time period covering January 1, 2022 to **December 31, 2023**, except for those provisions incorporated into this Order and the provisions listed below (collectively "select group of provisions").

    i. The Monitor shall assign compliance ratings, required by § XX, ¶ 18 of the Consent Judgment, for the following provisions from the Consent Judgment and the First Remedial Order:

        1. Consent Judgment § IV. (Use of Force Policy), ¶ 1;

        2. Consent Judgment § V. (Use of Force Reporting & Tracking), ¶¶ 2 & 22;

        3. Consent Judgment § VII. (Use of Force Investigations), ¶¶ 1 & 9(a);

        4. Consent Judgment § VIII. (Staff Discipline and Accountability), ¶¶ 1, 3(c) & 4;

        5. Consent Judgment § X. (Risk Management) ¶ 1;

        6. Consent Judgment § XII. (Screening and Assignment of Staff), ¶¶ 1 to 3;

        7. Consent Judgment § XV. (Safety and Supervision of Inmates Under the Age of 19), ¶ 1, 12 and 17;

        8. First Remedial Order § A. (Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force), ¶¶ 1 to 4, & 6; and

        9. First Remedial Order § C. (Timely, Appropriate, and Meaningful Staff Accountability), ¶¶ 1, 2, 4 & 5.

3. <u>*Monitor's Report*</u>: The Monitor shall file his compliance assessment of the *Nunez* Court Orders for the period July 1, 2023 to December 31, 2023, pursuant to the modified version of Action Plan, § G, ¶ 5(b), on March 21, 2024.

SO ORDERED this _____ day of _____, 2023

_____
LAURA TAYLOR SWAIN
Chief United States District Judge

# Appendix D

| Schedule of Nunez Filings & Court Conferences | |
|---|---|
| **Item** | **Date** |
| Monitor's Report on Current State of Affairs and Limited Compliance Ratings covering January to June 2023 | December 21, 2023 |
| Defendants to file opposition to motion for contempt including a statement indicating whether they agree or disagree with each proposed finding of fact submitted by the Counsel for the Plaintiff Class and the Southern District of New York, consistent with the with the individual rules of Chief Judge Swain, A.2.f. [*Plaintiff Class, the Southern District of New York and Defendants are in the process of conferring about whether additional clarity is needed regarding the contents of this brief.  To the extent that the Parties are unable to reach agreement, those issues will be raised during the December 14, 2023 status Conference.*] | January 16, 2024 |
| Counsel for the Plaintiff Class and the Southern District of New York to file reply motion for contempt | February 15, 2024 |
| [**Proposed**] Parties meet and confer regarding any pre-hearing procedures and deadlines, findings of fact in dispute, and any other matters related to the motion practice. | February 16 to March 15, 2024<br><br>*Plaintiffs'/SDNY Propose this period end on March 1, 2024.* |
| [**Proposed**] Joint status report from the Parties setting forth any agreed-upon proposed pre-hearing procedures and deadlines should a hearing be necessary, and any disputes that need to be resolved by the Court in advance of the hearing. | March 15, 2024<br><br>*Plaintiffs'/SDNY Propose this submission is made on March 1, 2024.* |
| [**Proposed**] Monitor's Report on current state of affairs and limited Compliance Ratings covering July to December 2023 | March 21, 2024 |
| [**Proposed**] Court Conference | Week of March 25 or April 1, 2024 |
| [**Proposed**] Evidentiary hearing pursuant to the individual rules of Chief Judge Swain, A.2.f (to the extent necessary).  To the extent the Court would like the hearing to focus on certain issues, the Court will advise the parties. | [Control Date set by the Court] |