OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

+1 646 895 6567 | afriedberg@tillidgroup.com

December 8, 2023

**VIA ECF**
The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Chief Judge Swain,

We write to advise the Court on a number of issues in advance of the status conference in this matter that is scheduled for December 14, 2023 at 2:00 p.m. The Monitoring Team submits this corrected version of the letter filed as docket entries 637 and 638.  This version of the letter includes the correction to the title of the new Commissioner, a copy of Appendix A, and a correction to the proposed schedule in Appendix D.  The Monitoring Team apologizes for the confusion.

We provide the Court the following:

- **Updates on Department Leadership, Allegations of Misconduct & Security Initiatives**: Outlined below is an update to the Court on the Department's leadership and the Mayor's appointment of a new Commissioner, allegations of misconduct by the former Commissioner and an update on several security initiatives. A recently filed Notice of Claim, involving allegations related to the *Nunez* Court Orders, is also attached as Appendix A.

- **Proposed Conference Agenda**: The proposed agenda for the December 14, 2023 status conference is attached as Appendix B.

- **Proposed Order**: A revised version of the proposed Order the Monitor first submitted to the Court in his November 8, 2023 Report is attached as Appendix C. The first paragraph of the proposed Order was revised since it was initially submitted on November 8, 2023. The revisions to the first paragraph were made in response to a proposal from Defendants. No other changes to the proposed Order have been made since it was first submitted. All Parties have advised the Monitor that they do not object to the entry of the Order.

- **Proposed Schedule**: The proposed schedule for the Parties' motion practice and forthcoming conferences before the Court is attached as Appendix D.

1

**Updates on Department Leadership, Allegations of Misconduct & Security Initiatives**

- *Appointment of Commissioner & Other Leadership*

The Mayor announced today, December 8, 2023, that Lynelle Maginley-Liddie will serve as the Commissioner of the Department of Correction, effective immediately. Prior to her appointment, the Mayor, via the Corporation Counsel, communicated with the Monitor regarding the selection of an Commissioner. The Monitor and the Monitoring Team have worked with Commissioner Maginley-Liddie for many years and have developed a good working relationship with her during this time. In her work at the Department, the Monitoring Team has found the Commissioner to be transparent and forthright. She also oversaw one of the most candid, insightful, and transparent assessments of Department practices during her tenure as the First Deputy Commissioner.[1] The Commissioner is well acquainted with the *Nunez* Court Orders, the requirements necessary to advance much needed reform, and the need to work collaboratively and constructively with the Monitoring Team.

The Monitor and Deputy Monitor already met with the Commissioner to ensure that good lines of communication are established from the outset and to discuss priority issues facing the agency. The meeting suggests that the Commissioner possesses a genuine understanding of the current state of affairs and the significant work that lies ahead to address and advance the reforms by the *Nunez* Court Orders and to reverse course on many issues identified by the Monitoring Team.

Also this week, a new Acting General Counsel and Acting Deputy General Counsel were appointed.[2] The Acting General Counsel and Acting Deputy General Counsel have been assigned on loan from the Law Department where they both worked in the Risk Management unit. The Acting Deputy General Counsel worked collaboratively and productively with the Monitoring Team in her prior role at the Law Department.

The appointment of the Commissioner along with the Acting General Counsel and Acting Deputy General Counsel are welcome and appear to reflect an attempt by the City to alter its approach to managing the *Nunez* Court Orders, by prioritizing transparency and by making a renewed commitment to consultation and collaboration.

---

[1] In the Monitor's October 28, 2022 Report, the Monitoring Team found, "The First Deputy Commissioner [now Commissioner] and her team evaluated [Health Management Division] practices to identify weaknesses and deficiencies. In the Monitoring Team's opinion, the assessment of HMD is one of the most candid, insightful, and transparent projects undertaken by the Department in the past seven years." *See* pg. 46.

[2] Prior to these appointments, the General Counsel position had been vacant for approximately three months and the position of Deputy General Counsel had been vacant for approximately one month (and had not been filled for much of the past two years).

- *Former Commissioner's Role and Responsibilities Related to Nunez in New Role & Allegations of Misconduct*

Former Commissioner Molina is being transferred to the position of the Assistant Deputy Mayor of Public Safety, with possible responsibility for overseeing the jails. Former Commissioner Molina has reported he intends to remain engaged in managing the Department.[3] He also reported he will be reviewing and evaluating the need for the current Emergency Executive Orders in place regarding the Department's operations.[4] The Monitoring Team requested information from the City about former Commissioner Molina's possible oversight of and involvement with the Department. To date, the City has not responded to the Monitor's request.

The Monitoring Team's concerns regarding former Commissioner Molina's interference, obfuscation and management failures, including the failure to consult and collaborate with the Monitor are well documented. A detailed summary of those findings is included in the Monitor's November 30, 2023 Report at pgs. 14 and 15 and Appendix B of that Report.

Since the filing of the Monitor's November 30, 2023 Report, a series of allegations related to the *Nunez* Court Orders have been made by the former Associate Commissioner of the Investigation Division ("ID") via a Notice of Claim he filed against the City of New York. The former Associate Commissioner of ID is a well-respected and seasoned leader who has been an integral part of the Department's reform effort and attempts to comply with the *Nunez* Court Orders. His leadership and experience, in conjunction with that of a few others, supported improvement in the Investigation Division prior to the regression seen in 2022.[5] In March 2023, following the removal of the Deputy Commissioner of ID who was appointed by former Commissioner Molina, the former Associate Commissioner's leadership was essential in revitalizing the unit and regaining the ground that had been lost under the Deputy Commissioner of ID.[6] Subsequently, on September 5, 2023, Commissioner Molina demoted the former

---

[3] Former Commissioner Molina reported "I'll definitely be carrying [items under the Action Plan] supporting the next commissioner and continuing on the trajectory that we started 22 months ago and continue building on that. I'm still going to have a voice in that area. Because corrections is part of the overall public safety strategy for this city. So I'll still be involved in that." See Lisa Evers, Street Soldiers with Lisa Evers: Hip-hop on Rikers Island exclusive, minute 6 and 41 seconds to minute 7, available at https://www.youtube.com/watch?v=ulNXimukloo.

[4] *See* Commissioner's testimony at the November 14, 2023 Board of Correction Meeting at minute 50 and 45 seconds to 1 hour and 2 minutes; video available at: https://www.nyc.gov/site/boc/meetings/november-14-2023.page.

[5] *See* Monitor's 12th Report (dkt. 431) at pgs. 79 to 80 noting that this individual and the then-Deputy Commissioner of ID were "smart, creative, dedicated and reform-minded leaders who have successfully guided the significant reform of the ID Division and have helped identify and support initiatives to elevate the level of practice needed in the facilities." Note, at the time the Monitor's 12th Report was filed, this individual served as the Assistant Commissioner of the Investigation Division.

[6] *See*, City's Letter to the Court on April 25, 2023 (dkt. 523) at pg. 5 in which the City reports "[i]n addition, in March 2023, the Deputy Commissioner for ID resigned, and a new leader was appointed. *The Associate Commissioner for ID, in whom we believe the Monitor has considerable confidence, remains in place.* The Monitoring Team has shared that it has already seen a clear improvement in cooperation in ID since the recent leadership changes." Emphasis supplied.

Associate Commissioner of ID.[7] At the time of that demotion, former Commissioner Molina advised the Monitor that the Monitor should refrain from making "glowing representations" about the former Associate Commissioner of ID in the Monitor's report or the Commissioner would "have to get into a public back and forth."[8] Former Commissioner Molina subsequently refused to provide information in response to three different Monitor's requests related to ID, including information about the former Associate Commissioner. The information was subsequently provided following protracted negotiations and, in one case, only after the Court compelled production.[9]

On December 4, 2023, the former Associate Commissioner of ID filed a Notice of Claim with the City of New York. The Notice of Claim includes a number of allegations that raise significant and serious concerns and are directly related to the Monitor's work under the *Nunez* Court Orders. A copy of the Notice of Claim is attached hereto. It must be noted that the Notice of Claim reflects allegations that have not yet been substantiated or refuted.[10]

- *Security and Operational Initiatives*

The jails continue to present a high risk of harm to those who are incarcerated and who work there. It is for this reason that "[i]mmediate, targeted initiatives to address the current driving forces of violence and to bring about even small pockets of relief to the ongoing harm are required."[11] This includes the need for the Department to develop effective initiatives, that have remained elusive to date, to address the foundational operational failures (e.g. securing doors, improved use of restraints/escorts, and lock-in and lock-out times), and initiatives to address housing strategies for certain individuals who for safety and security reasons need to be housed and managed while out-of-cell in smaller groups and/or for shorter periods of time.

The Monitoring Team remains concerned about the development and mismanagement by leadership of various initiatives. For example, the Senior Deputy Commissioner's Arson Reduction Housing Unit ("ARHU") was poorly conceptualized, involved poorly developed policies and procedures, and its operation was mismanaged. Rather than acknowledge these issues, the former Commissioner and the Senior Deputy Commissioner appeared to abdicate responsibility[12] and the City suggested that requirements to consult are unclear.[13] Subsequent

---

[7] At the time of the demotion, the Monitoring Team reported "grave concerns that the removal of the Associate Commissioner will compromise the revitalization effort and morale within the division." See Monitor's October 5, 2023 Report at pg. 13.

[8] The Commissioner also appeared to attempt to influence the Monitoring Team's reporting by requesting that the Monitor not file the May 26, 2023 Special Report. *See* Monitor's July 10, 2023 Report at pgs. 149 to 150.

[9] *See* Monitor's November 8, 2023 Report at pgs. 48 to 53.

[10] The Monitor is not permitted to conduct investigations pursuant to the terms of the *Nunez* Court Orders.

[11] *See* Monitor's November 8, 2023 Report at pg. 23.

[12] *See* Louis Molina's Declaration of November 24, 2023 (dkt. 614-1) at ¶ 6. *See, also,* Charles Daniels Declaration of November 28, 2023 (dkt. 614-2) at ¶¶ 7 to 14.

[13] *See* City's November 28, 2023 Letter to the Court at pgs. 2 to 3.

discussions the Monitor has had with the SDC have revealed an ongoing lack of awareness regarding the problems presented by the operationalization of a housing unit that was poorly developed and managed. Further, on November 30, 2023, during a meeting with the Monitor, the SDC appeared to blame the Monitor for the problems with ARHU, inexplicably suggesting that the concerns the Monitor raised about the large number of fires occurring in DOC housing areas was the reason that the ARHU was opened in the manner it was. To suggest that the Monitor's concerns about the significant number of fires being set in housing areas was an implicit or overt sanctioning of the irresponsible and haphazard development and management of a plan like the ARHU is simply an attempt at blame-shifting and a failure to accept responsibility. In fact, the Monitor affirmatively requested that the Department consult with the Monitor and the Monitoring Team on the development of such a housing unit in an effort to avoid the precipitously developed, poorly managed and potentially dangerous situation that occurred. The status of the ARHU and other violence reduction initiatives under development by the SDC are currently unknown.

One initiative currently underway does appear to hold some promise. The Department, via the Deputy Commissioner of Classification, Custody Management and Facility Operations ("DC of Classification") and the Department's consultant, Dr. James Austin,[14] have been consulting with the Monitoring Team on a proposed pilot project in the OBCC Annex ("OBCC Annex Pilot Project"). The OBCC Annex Pilot Project is intended to address the Monitor's recommendations that certain maximum custody individuals should only congregate in small groups for shorter periods of time.[15] The OBCC Annex Pilot Project appears to be a viable pilot project to address the Monitoring Team's recommendations and, ***if implemented with fidelity***, offers a pathway to provide immediate relief to ameliorate, in part, the unacceptable levels of harm in the jails right now. The Department has submitted the OBCC Annex Pilot Project to the State Commission of Correction for approval.

- ### *Monitoring Team's Ongoing Efforts to Encourage Consultation and Collaboration*

The Monitoring Team continues to have concerns regarding interference and obfuscation of its work, most recently detailed in the Monitor's November 30, 2023 Report. Therefore, the Monitor and Deputy Monitor have continued their efforts to improve collaboration and consultation with the Department. The Monitoring Team continues to meet with officials at all levels and encourages open and transparent communication. The Monitor has also advised those in leadership positions to err on the side of caution if they are unsure whether to consult with the Monitor on any initiative and to either seek guidance from the *Nunez* Manager or to reach out directly to the Monitor or a member of the Monitoring Team. Finally, the Monitoring Team continues to proactively request consultation (when we are in a position to know a matter may require consultation) in an effort to ensure that consultation occurs as required.

---

[14] Dr. Austin was retained pursuant to the Court's Second Remedial Order §1 (i)(f) (dkts. 398 and 415) as well as at the Monitor's recommendation. *See* Monitor's June 30, 2022 Report at pg. 26.

[15] *See* Monitor's November 8, 2023 Report at pgs. 23 to 24.

This is a pivotal time for the City and the Department. The change in Department leadership is an opportunity for the City and Department to take concrete steps to alter the current trajectory to reform. Clear and unequivocal messaging from City and Department leadership, both externally and internally, must emphasize that Defendants intend to be transparent and to comply with the *Nunez* Court Orders, and that a failure to consult with or provide the Monitor with requested information will not be tolerated or excused. More critically, transformative change in *actual practice* by all relevant City and Department leadership and staff must accompany these public proclamations. The City's and Department's *actions*, or lack thereof, will demonstrate whether Defendants are genuinely committed to reform.

We appreciate the Court's attention to this matter.

Sincerely,

<u>s/ Steve J. Martin</u>
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*

# Appendix A

```
 --------------------------------------------------------------------
                   AMENDED NOTICE OF CLAIM

      ---------------------------------------------------------------

          ---- In the Matter of the Claim of

                   Ruben Benitez,

                     Claimant,

                      -against

              THE CITY OF NEW YORK,

                    Respondents.

      ---------------------------------------------------------------


```

To:

CITY OF NEW YORK COMPTROLLER
One Centre Street
New York, New York 10007

CITY OF NEW YORK
Corporation Counsel
100 Church Street, 5th Floor
New York, New York 10007


**PLEASE TAKE NOTICE,** that Claimant Ruben Benitez ("Claimant" or "Mr. Benitez") herein

hereby makes claim and demand against respondent(s) named in the caption above as follows: .

1. **Name and post office address of the Claimant and Claimant's attorney:**


| **Claimant** | **Attorney** |
|---|---|
| Ruben Benitez | Stagg Wabnik Law Group LLP |
| ███████████████ | 401 Franklin Avenue, Suite 300 |
| ██████████████ | Garden City, New York 11530 |
|  | (516) 812-4550 |

2.    **Nature of Claim:** The New York City Department of Correction ("DOC" or "Department") and Commissioner Louis Molina ("Molina") discharged Mr. Benitez from his position as an Associate Commissioner, demoted him to the role of Investigator, removed him from the elite Investigation Division, and reduced his salary by $40,000, in retaliation for disclosing the unlawful and improper conduct of the Department of Correction to the New York City Department of Investigation, and to a Federally-appointed Monitor ("Federal Monitor") named Steve Martin, who has been monitoring and reporting on New York City jail conditions since approximately 2015 when the DOC negotiated and entered into a consent decree in the case of Mark Nunez v. New York City Department of Correction, et al.

At the time of the below-described violations by the DOC, Claimant was in his nineteenth year as a DOC employee. The DOC's actions violated New York Labor Law § 740. As a result of statutory violations, Claimant suffered and continues to suffer emotional distress, mental anguish and reputational damage. Claimant will also be entitled to economic and monetary damages and attorneys' fees.

3.    **The time when, the place where, and the manner in which the claim arose:** On January 3, 2022, Commissioner Molina's first day in office, hours after Molina removed Sarena Townsend from her position as Deputy Commissioner of DOC's Investigation Division ("ID"), Molina summoned Mr. Benitez to his office to inform him that he would be the Acting Deputy Commissioner of ID for thirty days until a permanent replacement was found.

During this meeting, Molina removed Claimant's authority to unilaterally suspend DOC staff for committing acts of misconduct and informed Claimant that any future suspensions of DOC staff would have to be approved by Molina himself, in violation of the standard operating procedure as Claimant had known them to be over his nineteen years in the Investigation Division at the Department of Correction. Claimant asked whether Molina's order also prohibited Claimant from unilaterally suspending staff who were arrested on felony charges, or for committing excessive use of force violations that the Federal Monitor brought to Claimant's attention. Molina affirmed that Claimant, and the Investigation Division as a whole, would no longer have that independent authority. Molina also told Claimant that he believed the Federal Monitor was exceeding his authority and that it was not the Monitor's place to tell the DOC how it should be run.

The following week, Molina again met with Claimant; this time, Molina asked Claimant why the DOC relied on the New York City Department of Investigation ("DOI") to "police" the Department. Claimant informed Molina that pursuant to Mayoral Executive Order 16, the DOI had oversight authority over the department, that the DOC is obligated to report to them, and that the DOI exercised authority over all matters involving potential criminality.

Molina stated that he did not understand why the DOC could not conduct its own criminal investigations or why the DOC was required to report to the DOI and delay its own investigations. Molina further asked Claimant whether Molina would be within his authority to pull DOC employees assigned to the DOI and return them to the Department. Claimant explained that DOC was allowed to take certain action and initiate investigations into staff criminality, even with DOI involvement, but that DOC needed to defer to DOI's investigation, repeating that DOI must be notified and in charge of those investigations under Mayoral Executive Order 16.

After the meeting, Claimant contacted the DOI Inspector General and informed her of his conversation with Molina and his concerns that Molina may ignore Mayoral Executive Order 16 by creating his own investigation team that operated independently of the DOI.

A week later, Molina met with the Claimant. During that meeting, Molina told Claimant he believed his operation was being "sabotaged" by members of the Investigation Division and that they were "leaking" information to external parties. Claimant replied that no one was trying to sabotage any operation and that the Investigation Division was merely trying to achieve compliance with the Nunez consent decree and adhere to its legal obligations. Molina stated, in response, that he was frustrated with the Federal Monitor and his team and that he was upset about the amount of information that was being provided to them. Molina replied that in his opinion, the Federal Monitor should be replaced with people who wanted to cooperate with the Department rather than run it.

Deeply concerned about Molina's comments and what appeared to be a number of illegal decisions and orders aimed to thwart oversight and accountability, the Claimant reported to the Federal Monitor his concerns about said meeting.

Approximately one week later, Claimant received a call from General Counsel Asim Rehman, who informed Claimant that he, Molina and the Federal Monitor had a meeting over the phone. Rehman stated that during the meeting, the Federal Monitor expressed his support of the working relationship that the Claimant had cultivated with the monitoring team and stated his continued desire to work with the Claimant to help ID continue its work. Mr. Rehman stated, "The monitor has a good impression of you, and he told the Commissioner [Molina]. You seem to be close with the team."

One week after that conversation, Molina summoned Mr. Benitez to his office along with First Deputy Commissioner Lynelle Maginley-Liddie and relieved Claimant of his duties as Acting Deputy Commissioner, citing "concerns" Molina had about Claimant's leadership of ID. No permanent replacement had been hired; instead, Molina replaced the Claimant with Yvonne Pritchett, an individual from a different bureau who ranked five levels beneath Claimant, possessed no supervisory experience, and did not meet the qualifications required to hold the position of Deputy Commissioner or Acting Deputy Commissioner of ID.

In mid-February 2022, Marshal Volk, then-Assistant Commissioner of Nunez Compliance for DOC, called the Claimant to discuss his concerns and frustration with Molina's direction in dealing with the Federal Monitor. Mr. Volk told Claimant that at a recent meeting, Molina expressed frustration with the Federal Monitor and, in that meeting, ordered DOC's Legal and Executive staff to find a way to replace or remove Steve Martin as the Federal Monitor.

On or around May of 2022, Molina hired his former supervisor at the NYPD, Manuel Hernandez ("Hernandez"), as Acting Deputy Commissioner of ID. Hernandez immediately began to openly criticize the Investigation Division's level of cooperation with the Federal Monitor. Hernandez informed Claimant that he was "providing too much information" to the Federal Monitor, that the monitoring team was sending too many requests to ID, and that Claimant needed to remember the Federal Monitor was "not on our side" and that people who have too close of a relationship with the monitoring team are not "looking out" for Molina.

In one instance, Hernandez informed Claimant that he was not to call the Federal Monitor directly, and should the monitoring team contact Claimant, he was to report those conversations to Hernandez. In another instance, Hernandez ordered Claimant not to reply to inquiries from the Deputy Federal Monitor, Anna Friedberg, anymore, in a quest to "cut back" on information shared with the Federal Monitor and his team. Claimant questioned the order, and Hernandez warned that Mr. Benitez needed to "remember who signs [Claimant's] paychecks." In January 2023, during a DOC internal investigation that also involved the New York City Department of Investigation ("DOI"), Hernandez stated in a meeting that he was tired of DOI's involvement in DOC investigations, that going forward there was to be no further communication with DOI, that DOI investigators would no longer be allowed access to DOC's Investigation Division suite, and that all business with DOI would have to be conducted in the public lobby. Claimant, understanding that these orders were illegal, confronted Hernandez with concerns about following said orders. Hernandez reminded Claimant again to remember "who signs [Claimant's] paychecks" and stated that if there were any issues where Hernandez wanted DOI's help, Hernandez would call his "friend" at DOI. Later, Hernandez revealed that his "friend" was DOI Deputy Commissioner Dominick Zarella.

Claimant reported Hernandez's illegal order to DOI's Deputy Inspector General, Richard Askin. Claimant also informed the Federal Monitor that Hernandez instructed Claimant to cut his communications with him and his team, and that Hernandez required him to report any conversations Claimant may have with the Federal Monitor to Hernandez.

Continued interference with the monitoring team and oversight agencies continued and in March 2023, the Federal Monitor finally sent a notice to the DOC detailing their ongoing concerns with this obstruction.

On or around March 29, 2023, Hernandez told Claimant that Commissioner Molina informed him that the monitoring team had shared concerns regarding Hernandez's management of the Investigation Division. Hernandez further stated that the monitoring team told Molina things that "[Molina] was not too happy with" and that Claimant was responsible. Specifically, Hernandez told Claimant, "You have garnered a lot of good will, so we can't get rid of you," and accused Claimant of being "dismissive" of the new administration.

Hernandez further reiterated his position that the Claimant would be held responsible for the negative feedback from the monitoring team and threatened Claimant, telling him that Claimant "had a lot invested in the Department" with "roots that run deep" and that if Claimant did not turn things around for Hernandez, "someone else [referring to Hernandez's replacement] would be delivering the message," which Claimant understood to mean that if Hernandez was forced out, Claimant would suffer the consequences.

On or around March 31, 2023, approximately two days after that conversation, Hernandez resigned; the monitoring team uncovered that under Hernandez, incidents of misconduct were not being investigated in an unbiased, thorough fashion, that cases with clear misconduct were closing without charges, and that too often, they were not being investigated at all.

On or around April 24, 2023, the monitoring team released another report detailing further deterioration of their working relationship with DOC, Molina's lack of transparency, and their concerns regarding the Department's quality of use of force investigations. In this report, they cited their optimism in working with Claimant to regain the lost momentum and move the stalled reform of the investigation division forward: "The Associate Commissioner of ID, a well respected and seasoned investigator and supervisor, remains in place along with a number of other experienced supervisors."

In response to the April 24, 2023, Federal Monitor report, the Department filed a letter to the Court, wherein Molina specifically pointed to Mr. Benitez's status as Associate Commissioner in order to assuage the Monitor's concerns about ID's collapse and convince the Federal Monitor that Mr. Benitez would right the ship: "The Associate Commissioner for ID, in whom we believe the Monitor has considerable confidence, remains in place."

On or around the first week of July 2023, Claimant was standing outside the Bulova building, where Claimant worked, when he saw Captain Lawrence Bond ("Bond") of DOI walking out of the building. Bond worked with Claimant for several years and, when he saw Claimant, he approached. Bond informed Claimant that Special Investigations Unit Director Lawrence McGugins ("McGugins") had just suspended him as there had been an incident at the Academy where the Deputy Commissioner of Training, Robert Gonzalez, accused Bond of not signing a logbook upon entering the building, a requirement that is waived for all DOI employees. Bond explained to the Claimant that he was subsequently suspended. During the conversation, Investigator Julien Sampson, who works for McGugins, watched Claimant and Bond from inside of a vehicle. Claimant asked Bond if he was going to fight the suspension, and advised him to get an attorney. Claimant further expressed his disbelief that the Department had been allowed to suspend a DOI Captain in direct contradiction to DOI's stated purpose of unobstructed oversight.

On or around September 1, 2023, the DOI summoned the Claimant to its headquarters. DOC Director McGugins and DOI Deputy Commissioner Dominick Zarrella, Hernandez's DOI "friend", interrogated Claimant on the Bond matter. Claimant described the above interaction with Bond on the day of his suspension and confirmed their conversation. .

On the first business day after that DOI interrogation, September 5, 2023, Molina summoned Claimant to his office, along with Deputy Commissioner Yvonne Pritchett ("Pritchett"), who was now Mr. Benitez's direct supervisor, and Assistant Commissioner Willie Perez. At that meeting, Molina instructed Mr. Benitez to report to Human Resources, where Claimant was immediately demoted five ranks to the lowest possible investigator rank and reassigned to the inferior Applicant Investigations Unit. Members of Human Resources informed Claimant that his demotion was due to the Department's "going in a different direction."

Later that afternoon, Claimant received a phone call from Pritchett during which she expressed surprise and disdain about Molina's decision to terminate Claimant from his position and demote him five ranks. According to Pritchett, Molina had informed her that the reason for Claimant's removal from his position and demotion was that Claimant had "interfered in an investigation and admitted it to DOI." That proffered reason was not only baseless and illegal, but it was a pretext for retaliation for Claimant's reporting of Molina's and the DOC's illegal acts.

Molina and Respondent reassigned and cut Claimant's pay because he reported Molina and Hernandez's illegal, corrupt conduct to DOI and to the Federal Monitor and because he continued to communicate with the Federal Monitor and with DOI after Molina and Hernandez had expressly and illegally ordered him not to. Those communications included reporting Hernandez's illegal order to not report misconduct to the Federal Monitor or to DOI, in violation of Mayoral Executive Order 16, all of which ultimately led to Hernandez's very public resignation and contributed to far-reaching criticism of Molina, which threatened Molina's reputation and ego. Any allegation that Claimant interfered in any DOI investigation is merely a pretext to cover Molina's retaliation for Claimant's whistleblower reports to the Federal Monitor and to DOI. In fact, Claimant's demotion served not only as retaliation but to gag Claimant to allow Molina to continue his illegal behavior under a cloak of secrecy.

The claim that the Department was merely "going in a different direction" contradicts the Federal Monitor's November 8, 2023 Report, where he notes that Molina refused to give the Federal Monitor his reason for Mr. Benitez's demotion, a response the Federal Monitor deemed "suspect." The Federal Monitor noted, about Molina's obfuscation: "The baseless refusal and subsequent protracted debate [about Claimant's demotion] appear to be an attempt to interfere with the Monitor's ability to conduct a thorough examination of the issues." Moreover, on or about November 17, 2023, the Plaintiffs in the Nunez lawsuit filed a motion with Judge Laura Swain asking her to hold DOC in contempt, and to appoint a federal receiver to take over the DOC; in it, Claimant is again praised, and Molina's decision to demote him questioned: "Indeed, a disturbing pattern appears to be emerging. In September 2023, the Commissioner removed and demoted the Associate Commissioner of ID [Claimant], a seasoned employee the Monitor praised for his neutral and independent assessments of use of force incidents. Indeed, this individual was 'instrumental' in what the Monitor has called the 'attempt at course correction' after Mr. Hernandez's resignation. The Commissioner refused to provide the Monitor a substantive reason for the demotion." In the Parties' Letter of Support of the aforementioned motion, they write, about Claimant: "The Monitoring Team had worked closely with this leader for years and found him 'to be forthright and credible and to possess a keen acumen for assessing use of force incidents in a neutral and independent manner,' and explained that this leader's work was credited for ID's successes prior to its deterioration under Manuel Hernandez. Moreover, after Manuel Hernandez

resigned, this leader was 'essential' to efforts to repair the damage done to ID under Hernandez's tenure. Nonetheless, the Commissioner refused to provide the Monitor with a substantive reason for this leader's demotion when the Monitor asked, causing the Monitor to raise 'grave concerns that the removal of the Associate Commissioner will compromise the revitalization effort and morale within' ID."

4. **The items of damage or injuries claimed are:** The retaliatory and tortious actions of Respondent caused and continue to cause Claimant to suffer damages, including but not limited to the following: monetary damages, economic damages, extreme emotional pain, trauma, distress, mental anguish, anxiety, depression, humiliation, embarrassment, fear, loss of enjoyment of life, damage to reputation, and attorneys' fees and costs. **Claimant will also seek punitive damages.**

**WHEREFORE**, Claimant makes claims against Respondent for the total amount of damages to which Claimant is entitled, together with interest and the costs and disbursements of this action.

Dated: Garden City, New York

December 4, 2023

Stagg Wabnik Law Group LLP

By:
   David R. Ehrlich, Esq.
*Attorneys for Claimant*
*Ruben Benitez*
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550

Ruben Benitez

STATE OF NEW YORK)
)
COUNTY OF Bronx )

On December 4, _____ 2023, before me personally came Ruben Benitez, to me known and known to me to be the individual described herein and who executed the foregoing Amended Notice of Claim and duly acknowledged to me that they executed same.

_____
Notary Public

LISA LEWIS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LE6184203
Qualified in Bronx County
My Commission Expires 03-31-2024

# Appendix B

## <u>December 14, 2023 Court Conference Agenda</u>

- Update on Current State of Affairs (*Monitor & Deputy Monitor*)

- Order to Show Cause

- Proposed Order regarding Department Reporting & Monitor Reporting (*Deputy Monitor*)

- Proposed Upcoming Schedule (*Parties*)

# Appendix C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                   :

MARK NUNEZ, et al.,                        :

  Plaintiffs,                          :

  - against -                        :

CITY OF NEW YORK, et al.,                :

  Defendants.                     :

                                                   :  **11 Civ. 5845 (LTS)(JCF)**
------------------------------------------------------------ X
                                                   :

UNITED STATES OF AMERICA,         :

             Plaintiff-Intervenor,    :

  - against -                        :

CITY OF NEW YORK and NEW YORK CITY  :
DEPARTMENT OF CORRECTION,        :

             Defendants.         :
------------------------------------------------------------ X

 

**[PROPOSED] ORDER**

1. _Department's Incident Reporting Practices_: The Department shall develop and implement a comprehensive and streamlined policy and procedures for all incidents and events that must be reported (New COD Policy). The policy and procedures shall be subject to the approval of the Monitor. Accordingly, by the dates set forth below, the Department, in consultation with the Monitor, shall:

   a. By December 15, 2023: Provide the Monitoring Team will the full list of Department policies that must be reviewed for potential consolidation into the new COD policy.

   b. By December 22, 2023: Review, revise, and implement updated definitions of Stabbing and Slashing to ensure that the definitions are clear and concise and will result in the collection and reporting of reliable and accurate data. The definitions for Stabbing and Slashing shall be subject to the approval of the Monitor.

   c. By February 2, 2024: Review, revise, and implement updated definitions for the various incident categories maintained by the Department, including all security indicators related to violence, including but not limited to use of force, use of force (allegation), assault/attack on staff, inmate-on-inmate fight/assault, inmate-on-inmate sexual assault, and staff sexual misconduct, to ensure that the definitions are clear and concise and will result in the collection and reporting of reliable and accurate data. The definitions of the various incident categories shall be subject to the approval of the Monitor.

   d. By May 31, 2024: The Department shall implement the New COD Policy.

2. _Monitor's Compliance Assessment - Modification to § G, ¶5(b) of the Action Plan_: The Action Plan, § G, ¶ 5(b) shall be modified to include the language in bold below:

   Given the Monitor's findings in the Monitor's March 16, 2022 Special Report, (pages 63 to 65), and subsequent reports on **October 27, 2022, February 3, 2023, April 3, 2023, April 24, 2023, May 26, 2023, June 8, 2023, July 10, 2023, August 7, 2023, October 5, 2023 and**

**November 8, 2023**, the Monitor's assignment of compliance ratings for each provision of the Consent Judgment (required by § XX, ¶ 18 of the Consent Judgment) and the First Remedial Order are suspended for the time period covering January 1, 2022 to **December 31, 2023**, except for those provisions incorporated into this Order and the provisions listed below (collectively "select group of provisions").

i. The Monitor shall assign compliance ratings, required by § XX, ¶ 18 of the Consent Judgment, for the following provisions from the Consent Judgment and the First Remedial Order:

1. Consent Judgment § IV. (Use of Force Policy), ¶ 1;

2. Consent Judgment § V. (Use of Force Reporting & Tracking), ¶¶ 2 & 22;

3. Consent Judgment § VII. (Use of Force Investigations), ¶¶ 1 & 9(a);

4. Consent Judgment § VIII. (Staff Discipline and Accountability), ¶¶ 1, 3(c) & 4;

5. Consent Judgment § X. (Risk Management) ¶ 1;

6. Consent Judgment § XII. (Screening and Assignment of Staff), ¶¶ 1 to 3;

7. Consent Judgment § XV. (Safety and Supervision of Inmates Under the Age of 19), ¶ 1, 12 and 17;

8. First Remedial Order § A. (Initiatives to Enhance Safe Custody Management, Improve Staff Supervision, and Reduce Unnecessary Use of Force), ¶¶ 1 to 4, & 6; and

9. First Remedial Order § C. (Timely, Appropriate, and Meaningful Staff Accountability), ¶¶ 1, 2, 4 & 5.

3. _Monitor's Report_: The Monitor shall file his compliance assessment of the _Nunez_ Court Orders for the period July 1, 2023 to December 31, 2023, pursuant to the modified version of Action Plan, § G, ¶ 5(b), on March 21, 2024.

SO ORDERED this _____ day of _____, 2023

_____
LAURA TAYLOR SWAIN
Chief United States District Judge

# Appendix D

| Schedule of Nunez Filings & Court Conferences | |
|---|---|
| **Item** | **Date** |
| Monitor's Report on Current State of Affairs and Limited Compliance Ratings covering January to June 2023 | December 21, 2023 |
| [*Plaintiff Class, the Southern District of New York and Defendants are in the process of conferring about the two different versions of the text below. To the extent that the Parties are unable to reach agreement, those issues will be raised during the December 14, 2023 status Conference.*]<br><br>**Plaintiffs'/SDNY Version**: Defendants to file opposition to motion for contempt including a statement indicating whether they agree or disagree with each proposed finding of fact submitted by the Counsel for the Plaintiff Class and the Southern District of New York.  Consistent with the individual rules of Chief Judge Swain, A.2.f, to the extent that Defendants disagree with a proposed finding of fact, Defendants shall submit evidentiary support for its position that the proposed finding of fact is not accurate. This will allow the Plaintiffs to better understand the basis for any factual disagreements, potentially demonstrate that a disagreement is not material, and hopefully further narrow the factual questions that must be resolved by the Court.<br><br>**Defendant's Version**: Defendants to file opposition to motion for contempt including a statement indicating whether they agree or disagree with each proposed finding of fact submitted by the Counsel for the Plaintiff Class and the Southern District of New York. ~~C.~~ consistent with the individual rules of Chief Judge Swain, A.2.f.~~, to the extent that Defendants disagree with a proposed finding of fact, Defendants shall submit evidentiary support for its position that the proposed finding of fact is not accurate. This will allow the Plaintiffs to better understand the basis for any factual disagreements, potentially demonstrate that a disagreement is not material, and hopefully further narrow the factual questions that must be resolved by the Court.~~ | January 16, 2024 |
| Counsel for the Plaintiff Class and the Southern District of New York to file reply motion for contempt | February 15, 2024 |
| [**Proposed**] Parties meet and confer regarding any pre-hearing procedures and deadlines, findings of fact in dispute, and any other matters related to the motion practice. | February 16 to March 15, 2024<br><br>*Plaintiffs'/SDNY Propose this period end on March 1, 2024.* |
| [**Proposed**] Joint status report from the Parties setting forth any agreed-upon proposed pre-hearing procedures and deadlines should a hearing be necessary, and any disputes that need to be resolved by the Court in advance of the hearing. | March 15, 2024<br><br>*Plaintiffs'/SDNY Propose this submission is made on March 1, 2024.* |
| [**Proposed**] Monitor's Report on current state of affairs and limited Compliance Ratings covering July to December 2023 | March 21, 2024 |

| Schedule of Nunez Filings & Court Conferences | |
|---|---|
| **Item** | **Date** |
| [**Proposed**] Court Conference | Week of March 25 or April 1, 2024 |
| [**Proposed**] Evidentiary hearing pursuant to the individual rules of Chief Judge Swain, A.2.f (to the extent necessary).  To the extent the Court would like the hearing to focus on certain issues, the Court will advise the parties. | [Control Date set by the Court] |