STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE OFFICE

December 1, 2023

**By Electronic Submission**
Hon. Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10006

*Re: Nunez, et al., v. City of New York, et al., 11-cv-5845 (LTS)(JCF)*

Dear Chief Judge Swain:

We write on behalf of the New York State Office of the Attorney General ("OAG") in connection with the Court's continuing jurisdiction over the above-referenced action to ensure compliance with the consent judgment regarding the operations at the New York City Department of Correction ("DOC").

Our Office entered an appearance on September 23, 2021, as amicus, after the Attorney General visited Rikers Island and personally observed the conditions there that have led to a devastating number of deaths in custody—six deaths in the last six months alone.[1] (*See* ECF No. 390.)  Since that time, we have monitored reports of deaths and violence from the DOC, the New York State Commission of Correction, and from the City's own oversight body, the Board of Correction ("BOC").  We also have monitored the progress of this litigation and have concluded criminal investigations of particular in-custody deaths, as required by New York Executive Law Section 70-b, enacted in 2021, which requires our Office of Special Investigation ("OSI") to investigate where there is a question of fact as to whether an individual corrections officer caused the death of a person in custody, and to prosecute that officer where warranted.

Because of the State's continued interests here, we respectfully request that the Court permit us to file an amicus submission in this action, and if granted, to treat this letter as that submission.[2]

---

[1] *See* Jan Ransom & Jonah E. Bromwich, *Tracking the Deaths in New York City's Jail System*, N.Y. Times, Oct. 19, 2023 (ECF No. 602-59).

[2] As stated in our previous amicus submission accepted by the Court (ECF No. 390), the conditions at Rikers implicate state interests for several reasons: New York Executive Law Section 70-b requires the OAG to investigate, and where warranted, criminally prosecute deaths caused by the acts or omissions of an individual corrections officer, including in local facilities; certain individuals in state custody are housed at Rikers; and the OAG has a general interest in ensuring that correctional facilities in New York operate

Based on our ongoing monitoring of the deaths and incidents of violence at Rikers, it has become clear that since the Attorney General's visit, the dangerous conditions that have plagued DOC jails for many years continue to this day.  Of particular concern is DOC's persistent failure to ensure adequate supervision of people in custody.

Examples of OSI findings, detailed below, show failures in establishing basic tenets of correctional practice, including failures to conduct rounds every 30 minutes, provide direct supervision, and deploy appropriate staff to posts, as well as false recordings by staff of direct supervision and people in custody left unobserved for many hours at a time.

**Esias Johnson** died September 7, 2021 at 24 years old due to a methadone overdose.  Corrections officers found Mr. Johnson unresponsive in his bed.  When medical staff arrived a half an hour later, he was in early-stage rigor mortis.[3]  OSI's investigation found that "the corrections officer assigned to conduct rounds every 30 minutes in Mr. Johnson's housing area from at 3:15 am to 9:15 am on September 7 only conducted four rounds (three of which were incomplete);" "failed to conduct seven rounds;" and "falsely noted in the logbook that 'active supervision' was conducted every 30 minutes as required" by New York City DOC rules.[4]  Although OSI did not conclude that the criminal standard for causation was met, failures in staffing and supervision were evident.

**Tarz Youngblood** died February 27, 2022.  According to the OSI report on his death, Mr. Youngblood entered a cell to which he was not assigned and was carried out by other people in custody three hours later, unresponsive.  During those three hours, according to video, at least seven people went in and out of the cell, and the posted floor officer conducted only one genuine tour.[5]  Through its investigation, OSI found that floor officer's "failures to keep people from congregating in a cell, to keep the window to the cell clear, and to conduct tours every 30 minutes violated NYC DOC rules."[6]

**Dashawn Carter** died by suicide on May 7, 2022.  Through its investigation, OSI found that corrections officers "failed to conduct many of their tours;" "failed to conduct required standing counts;" "failed to look into Mr. Carter's cell" when tours were conducted; made false entries in logbooks and false incident reports; and permitted "Mr. Carter to cover the window in the door of his cell."[7]

**Mary Yehudah** died on May 18, 2022 of severe diabetic ketoacidosis.  In its investigation, OSI learned from interviews with people housed near Ms. Yehudah that she was moaning loudly over night from May 16 to 17.[8]  OSI found that on May 17, from 2:20 am to 8:55 am—when Ms. Yehudah was found unresponsive on the floor of her cell—corrections officers did not conduct rounds or, to the extent they did, failed to look in her cell (with the exception of one officer who looked in at 7:32 am).[9]

---

safely and humanely within the boundaries of the law, *see, e.g.*, Correction Law § 500-j. Our Office has notified the parties of our intent to file this letter motion.  Plaintiffs and the U.S. Department of Justice consent to this filing.  The City of New York opposes this filing.

[3] OAG's Office of Special Investigation, *Second Annual Report Pursuant to Executive Law Section 70-b* at 25 (Oct. 1, 2022), *available at* https://ag.ny.gov/sites/default/files/2022_osi_annual_report.pdf.
[4] *Id.*
[5] OAG's Office of Special Investigation, *Third Annual Report* at 32 (Oct. 1, 2023) (ECF No. 602-47).
[6] *Id.*
[7] *Id.* at 34.
[8] *Id.*
[9] *Id.*

As these cases illustrate, the DOC is unable to maintain a safe and secure environment for people in its custody. Unstaffed posts, failure to conduct rounds, and failure to render prompt first aid were persistent problems identified in our investigations. These failures are unacceptable and are a result of the DOC's inability to provide the most basic requirement for running a jail—direct supervision.

Care, custody, and control are not being maintained, as described above, and it will take more than a sea change to get there. The monitor has been in place since 2015 and has issued countless reports. Despite years of oversight by a federal monitor and scrutiny by the press, oversight agencies, and elected officials, New York City jails remain dangerously unsafe.

The failure to establish safety for people in custody is many years long. But this Court does not need to find bad faith to order receivership. This case, which was filed in 2011, has transcended three mayors and six Commissioners. The Department of Justice issued its finding that Rikers Island systemically violated the constitutional rights of people in custody on August 4, 2014, before joining this lawsuit. Over a decade from the initial complaint, we are in the same place.

A receiver is needed to effectuate the safety and order required under State and BOC minimum standards. The OAG supports receivership as the way forward for the good of all the people who live and work in the NYC jails. We respectfully ask the Court to grant the motion of the Plaintiffs in this matter and order receivership, and any other additional actions necessary to resolve the crisis and create safety in NYC jails.

Respectfully Submitted,

/s/ Louisa Irving

Louisa Irving
Assistant Attorney General, Civil Rights Bureau
Louisa.Irving1@ag.ny.gov | (212) 416-8534

Lois Saldana
Assistant Attorney General, Civil Rights Bureau
Lois.Saldana@ag.ny.gov | (212) 416-8860

CC: All counsel of record (via ECF)