

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**OMAR J. SIDDIQI**
Senior Counsel
E-mail: osiddiqi@law.nyc.gov
Phone: (212) 356-2345
Fax: (212) 788-9776

December 19, 2023

**BY ECF**
Honorable Laura T. Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Mark Nunez, et al. v. City of New York et al.</u>, 11 Civ. 5845 (LTS)

Dear Chief Judge Swain,

      I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department and an attorney assigned to the above-referenced matter. Defendants write in response to the Court's Notice of Intent to Enter Order (hereinafter referred to as "Draft Order") dated December 15, 2023. Per the Court's Directive, the objections set forth in this letter have been discussed with the Monitoring Team, and we have reached agreement with the Monitoring Team regarding proposed language to replace the first requirement in the Court's Draft Order to purge the contempt in which the Court has held the Department.[1] City Defendants do not object to the second and third requirements. However, for completeness of the record, City Defendants now respectfully submit this letter to memorialize our concerns with the original language of the first requirement of the Draft Order.

      As an initial matter, defendants fully acknowledge that the opening of the Arson Reduction Housing Unit ("ARHU"), the communication failures within DOC, and the failure to proactively consult with the Monitor, should not have happened; defendants are committed to

---

[1] That agreed upon language is as follows: *First, the Department must ensure that the role and authority of the Nunez Manager, appointed pursuant to the Court's June 13, 2023 Order, § I, ¶ 7, corresponds to the function and responsibilities the position encompasses in facilitating compliance with the Nunez Court Orders. In addition, by February 15, 2024, the Department, in consultation with the Monitor, shall review and make a determination regarding whether the Nunez Manager has sufficient resources to perform the function of the position as set forth in the Court's June 13, 2023 order.*

ensuring that they do not happen again. There is no aspect of those failures, however, that would be remedied by creating a new Deputy Commissioner role at DOC and elevating Ms. Joyce *specifically* to that newly created role.

The Monitor's Reports since the Nunez Manager position was created have constantly praised her work. See, e.g., Docket Entry No. 581 at 16-18. There is essentially no language suggesting that the Nunez Manager was disempowered, or that her role would be made more effective if she was a Deputy Commissioner. She is highly regarded within DOC and her importance is known to the executive leadership within DOC. There is nothing in the record to suggest that she is not able to do her job effectively in the position she is in.

Any remedy to contempt should be fashioned to "most efficiently coerce defendants into action." Edgar Berebi, Inc. v. Ditbro Pearl Co., 1990 U.S. Dist. LEXIS 14721, *5 (S.D.N.Y. 1990). Directing elevation of the Nunez Manager to the role of a Deputy Commissioner is not necessary to achieve that result.

Under the New York State Civil Service Law, municipal authorities have the ability to designate individuals as the "appointing authority" for agencies such as the Department of Correction. Section 815(a) of the New York City Charter specifically empowers the DOC Commissioner to serve in this role and to determine appointments, promotions, demotions, staff assignments and the like. See e.g. Schwartzbaum v. Horn, 49 A.D.3d 324 (1st Dept. 2008), citing, Matter of Kitchings v Jenkins, 85 N.Y.2d 694, 698 (N.Y. 1995) (describing the authority of the Commissioner to "the flexibility to assign, upgrade and downgrade employees within…wide duty and salary boundaries" when permitted by statute or rule.)

The broad authority vested in the Commissioner over personnel management and organization have compelling, long-standing origins in public policy. "It is vital that the public officials responsible for the City's complex day-to-day operations continue to have the flexibility to utilize this important public resource in the manner they deem essential for carrying out the key functions entrusted to them." Green v. Lang, 18 N.Y.2d 437, 445-446 (1966); accord Matter of Kitchings, 85 N.Y.2d 698 ("public policy allow[s] latitude to administrative officers" to assign salaries and duties).

While the Commissioner's broad personnel management authority is not absolute, it also must not be brushed aside lightly. It is well stated in the law that a court may not impose requirements that "are an excessive intrusion into the duties of officials charged with citywide responsibilities, in the absence of either their liability or an indication that imposing requirements on the head of the relevant department will be inadequate." United States v. City of N.Y., 717 F.3d 72, 97 (2d Cir. 2013).

Under the circumstances, the original proposal would deprive the Commissioner of her ability to demonstrate that she has the capability to make the personnel decisions that are necessary to move the agency to full compliance with its obligations under *Nunez*. At the December 14, 2023 conference, the Court stated that "the authorization of contempt motion practice did not mean that the Court had given up on defendants or otherwise lowered its expectations of the Department and the City…The Court welcomes the news of the appointment of Lynelle Maginley-Liddie as the new Commissioner of the department with hope and in anticipation of different working relationships with different results." See Transcript at p. 7-9.

By giving the Department, in consultation with the Monitor, authority in this matter, the Court would be sending a message that the new Commissioner is fully capable of making necessary personnel decisions.

For the reasons set forth herein, defendants respectfully request that the Court revise the first requirement in accordance with the language proposed above.

As a final matter, with respect to the joint status report, the Monitoring Team respectfully requests the date for that report be changed to February 27, 2024. The Monitoring Team has conferred with Defendants who consent to this request.

Defendants thank the Court for its consideration.

           Respectfully submitted,

           /s/ Omar J. Siddiqi

           Omar J. Siddiqi
           Senior Counsel
           Special Federal Litigation Division

cc:   All counsel of record