OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

+1 646 895 6567 | afriedberg@tillidgroup.com

February 26, 2024

**VIA ECF**
The Honorable Chief Judge Laura T. Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS)*

Dear Chief Judge Swain,

We write to provide the Court with a status update on the three requirements outlined in the Court's December 20, 2023 Order (dkt. 665). On December 20, 2023, the Court found the Department of Correction (the "Department") in contempt of § D, ¶ 3 and § E, ¶ 4 of the Action Plan (dkt. 465) and § I, ¶ 5 of the June 13, 2023, Order (dkt. 550). The Court further ordered that in order for Defendants to purge their contempt, the Department was required, by February 27, 2024, to comply with three requirements related to: (1) the sufficiency of the role, authority, and resources dedicated to the *Nunez* Manager, (2) developing and implementing a high profile communications program to make clear the responsibility—shared by Department leadership and staff alike—to proactively collaborate with the Monitoring Team, and (3) developing a set of data and metrics for use of force, security, and violence indicators that will be routinely evaluated by Department leadership to identify trends regarding unnecessary and excessive uses of force and violence in order to identify their root causes and to develop effective strategies to reduce their occurrence. This report discusses the status of those three requirements.

The Monitoring Team shared this letter with Defendants in advance of this filing. Defendants concur with the Monitoring Team's description of the status of the three requirements outlined herein.

The Monitoring Team observed an immediate change in the Department's approach and dynamic in early December 2023 with the appointment of Commissioner Maginley-Liddie. The

Department's leadership team is now actively engaging with the Monitor, Deputy Monitor, and the Monitoring Team. These interactions with the Commissioner, her leadership team, and other Department staff reflect greater transparency and an interest in working collaboratively. The Monitoring Team is routinely consulted and proactively advised on a wide variety of issues. When matters of mutual concern arise, Department leadership seeks input from the Monitor, has been receptive to feedback, and appears open to adapting practices as necessary. While more work remains, these early signs of improved transparency and collaboration with the Monitoring Team are promising and help to ensure that the Monitoring Team is properly positioned to do its work pursuant to the *Nunez* Court Orders.

### First Requirement: Role & Authority of Nunez Manager and Sufficient Resources

The Court's first requirement in the December 20, 2023 Order that must be satisfied in order for the Department to purge contempt is:

> "*the Department must ensure that the role and authority of the Nunez Manager, appointed pursuant to Section I, paragraph 7 of the Court's June 13, 2023, Order, correspond to the function and responsibilities the position encompasses in facilitating compliance with the Nunez Court Orders. In addition, the Department, in consultation with the Monitor, shall review and make a determination regarding whether the Nunez Manager has sufficient resources to perform the function of the position as set forth in the Court's June 13, 2023, Order. The Monitor must also assess the role and authority of the Nunez Manager in relation to the requirements of the June 13, 2023, Order, as well as the sufficiency of the Nunez Manager's resources. To purge the Department's contempt, both the Department's and the Monitor's assessments must be positive.*" *See*, December 20, 2023 Order at pgs. 1 to 2.

The role and authority of the *Nunez* Manager has been amplified since Commissioner Maginley-Liddie was appointed. The Department reports that Commissioner Maginley-Liddie routinely advises her leadership team and staff about the importance of working with the *Nunez* Manager and collaborating with the Monitoring Team, reminds them to be transparent and forthright in response to any request for information, and encourages them to communicate proactively with the Monitoring Team when matters are, or appear to be, *Nunez* related. Further, as discussed in more detail below, the Commissioner initiated a high-profile communications campaign reinforcing these points to help ensure that Department staff are fully aware of the priority being placed on *Nunez* compliance, and by extension, the role that the *Nunez* Manager plays. The *Nunez* Manager also reports that she is routinely included in relevant Departmental meetings and that her advice is frequently sought by Department stakeholders to ensure that matters related to *Nunez* are identified, addressed, and brought to the Monitoring Team's

attention as necessary. Their proactive consultation with the *Nunez* Manager is an important indicator of the elevation of the *Nunez* Manager's role in the organization.

The Commissioner and Acting General Counsel (the *Nunez* Manager's direct supervisors) assessed the *Nunez* Manager's role, authority and resources. First, the Department advised the staff who work for the *Nunez* Manager that the work related to the *Nunez* Court Orders must be their priority. In addition, dedicated contacts in other divisions[1] were also identified and directed to support the work of the *Nunez* Manger when *Nunez* work overlaps with their specific subject areas. Importantly, the assessment also evaluated whether the *Nunez* Manager position was adequately resourced given the responsibilities of the position, particularly managing the Department's response and approach to compliance with the *Nunez* Court Orders and responding to and addressing requests for information from the Monitoring Team. An inventory of the Department's current resources dedicated to supporting compliance with the *Nunez* Court Orders included five attorneys in the Legal Division who work at least part-time on *Nunez* matters, along with the *Nunez* Compliance Unit (which includes an Assistant Commissioner, two civilian staff members and six uniform staff members), the two leaders of the Strategic Initiatives Division, and support from an administrative assistant. This resource assessment led the Commissioner and Acting General Counsel to determine that a Deputy *Nunez* Manager[2] was needed to enhance management and balance the workload, along with an additional full-time support staff member.[3]

Furthermore, in response to feedback from the Monitoring Team, the *Nunez* Manager has also dedicated a team member to serve as a point person each workday to address any time-sensitive requests from the Monitoring Team and to serve as her designee if she is unavailable. The *Nunez* Manager and Deputy Monitor also worked through the list of Monitoring Team requests for information that remain outstanding and developed a plan to ensure that they are

---

[1] This includes Security related matters, ID, Trials Division, Custody Management, data/statistics, training, administration, programs, HR, Budget, IT, Health Affairs, and the Policy and Procedures Unit.

[2] An individual has been selected to act as Deputy *Nunez* Manager, and the individual's information has been shared with the Monitoring Team. The individual is already acting in the capacity of Deputy *Nunez* Manager as the formal internal City approvals are obtained.

[3] The Department reports that the new administrative assistant is scheduled to begin work at the beginning of March 2024.

addressed. As part of this work, they also discussed how to better manage and prioritize requests going forward. The Department believes that these enhancements will be sufficient to address the requirements of the *Nunez* Court Orders.

In the Monitoring Team's view, the resources dedicated to the *Nunez* Manager, including the addition of two new positions, will permit the *Nunez* Manager to better address requests from the Monitoring Team in a more timely and detailed manner than she has been able to do in the past. To be certain, the information flow to the Monitoring Team is an extensive undertaking. It requires ongoing vigilance by the Department to ensure that information is provided in a timely manner and is the best available, most accurate information at the time it is provided. It appears that the Department's *Nunez* management structure, with the additional staff assignments, is now in a position to better manage the task.

Overall, there is a marked and positive shift in the Department's approach to working with the Monitoring Team. The role and the authority of the *Nunez* Manager has been elevated over the last few months given the Commissioner's clear direction to staff regarding the *Nunez* Manager's role and responsibility and the authority the Commissioner has granted the *Nunez* Manager to do her work.[4] Information is flowing more freely and consultation is occurring more frequently than in the previous two years. Further, since the appointment of Commissioner Maginley-Liddie, although it has only been two months, the Monitoring Team has not identified any situations in which the Department should have consulted the Monitoring Team but did not. In fact, the Department has clearly been erring on the side of caution when consulting with the Monitoring Team, and therefore is consulting on matters both directly related to the *Nunez* Court Orders and those that may be more ancillary.

### Second Requirement: High-Profile Communication Program

The Court's second requirement that must be satisfied in order for the Department to purge contempt is:

> "*the Department is required to develop and implement a high-profile communication program through which the Commissioner and Deputy Commissioners make clear the responsibility—shared by Department leadership and staff alike—to proactively*

---

[4] The Monitoring Team also recommended that the Commissioner consider additional enhancement to the role of the *Nunez* Manager as part of her executive team, including consideration of a title commensurate with her work and responsibilities.

*collaborate with the Monitoring Team. This message must be conveyed in at least one in-person meeting and one video. The message, and the strategy for wide distribution of the message at all levels of staff who interact with persons in custody or with the Monitoring Team, must be approved by the Monitoring Team before it is issued. This message must emphasize that, if there is ever any doubt regarding whether or not an issue requires collaboration with the Monitoring Team, staff are required to (i) raise the issue with the Monitoring Team and (ii) ask what is required for compliance.*" *See*, December 20, 2023 Order at pg. 2.

The Department developed and implemented a high-profile communication campaign, in consultation with the Monitor, in which the Commissioner advised staff at all levels to proactively collaborate with the Monitoring Team. The Department obtained the Monitor's approval of the Commissioner's message and the campaign prior to promulgation. The Department created a communications plan and a statement for Commissioner Maginley-Liddie to record and disseminate. That statement described the Court's finding of contempt and the Department's obligation to proactively collaborate with the Monitoring Team. A Teletype was issued with a transcription of the message. The Teletype and the video were emailed to all employees and all unions, posted on the DOC internet and intranet, broadcast on all facility televisions, and played at a Senior Leadership Meeting chaired by the Commissioner, a meeting of all Facility leadership chaired by the Senior Deputy Commissioner, and at roll calls for ten days at fourteen DOC facilities. The transcript of the Commissioner's message is attached as Appendix A of this letter. Further, a copy of the dissemination plan and the dates various actions occurred is attached as Appendix B of this letter.  This high-profile communications campaign appears to be having the intended impact given the noted improvement in the Department's willingness to work proactively and collaboratively with the Monitoring Team described in the preceding section.

### **Third Requirement: UOF, Security and Violence Indicators**:

The Court's third requirement that must be satisfied in order for the Department to purge contempt is:

"*the Department, in consultation with the Monitor, shall develop a set of data and metrics for use of force, security, and violence indicators that will be routinely evaluated by Department leadership to identify trends and patterns regarding unnecessary and excessive force and violence in order to identify the root cause of these issues and*

*develop strategies to address them.*[5] *Upon request by the Monitor, the Department shall provide data regarding use of force, security, and violence indicators and permit observation of meetings in which such information is evaluated by Department leadership.*" *See*, December 20, 2023 Order at pg. 2.

As directed, the Department critically evaluated the information and data utilized during routine meetings with facility leadership and has made a plan for strengthening its approach. The monthly TEAMs meetings were revitalized last summer as described in the Monitor's July 10, 2023 Report at pgs. 64 to 67. Upon the appointment of Commissioner Maginley-Liddie, the Department worked to further improve upon the effectiveness of these meetings and the information they assess. Following consultation with the Monitoring Team, the Department intends to rebrand these meetings as Action, Collaboration and Transformation ("ACT"). In so doing, the Department first identified the limitations and obstacles encountered during TEAMs meetings that inhibited their effectiveness, such as a failure to delve into contextual concerns underlying incidents, a failure to see the "bigger picture," a lack of candid conversation that too often devolved into defensiveness, and a presentation style that did not facilitate broad participation. The Monitoring Team found this assessment to be forthright and to offer several ideas for strengthening the approach.

The Department intends to transform these meetings via a set of questions that teach facility leadership *how* to analyze incident trends and characteristics such that tangible problem-solving can occur. Topics will be discussed through various lenses to better understand the dynamics that underlie them and the factors that create an opportunity for incidents to occur.

Key features of ACT meetings will include:

- Before the meeting, facility leaders and security staff will conduct qualitative assessments of incident reports, NCU audits and surveillance video to assess staff's compliance with protocols. A list of baseline questions will be used to guide their inquiry.

---

[5] This requirement should already be familiar to the Department because it was included as Section 1, Paragraph 1 of the Court's August 10, 2023, Order. (See docket entry no. 654.) However, the Monitoring Team's November 8, 2023, Status Report (see docket entry no. 616) indicated that the Department has not yet fully complied with this paragraph of the Order.

- Key incident data will be presented as raw numbers and as a rate per PIC in custody, along with contextual data (location, time of day, PIC involved, UOF details, SRG involvement, search recoveries, etc.). Facility leaders will also be asked to assess staffing issues that may impact incident rates (e.g., number, tenure, training needs, discipline).
- Each meeting will discuss the root causes of various problems being faced by the facilities and identify action items to address them.
- Protocols for ensuring appropriate follow-up and accountability will also be identified.

The Monitoring Team assesses these steps to be a constructive first step in addressing this requirement. The plan's focus on the root causes of certain incidents, and the guidance to facility leadership about *how* to examine root causes is likely to elevate the discussion toward practical solutions. Furthermore, the use of incident rates (in addition to raw numbers) has long been advised by the Monitoring Team and is particularly prudent given the variation in facility population size. The Department's assessment of the weaknesses of the previous TEAMS format and the development of a new framework to strengthen the identified areas is a reasonable product given the two-month interval since the Court's Order. The Monitoring Team looks forward to observing the new meeting format and the substantive discussions that occur and to assisting in the refinement of the solutions to intractable problems that are developed through the ACT meetings.

**Position of the City**

Defendants have requested the Monitoring Team advise the Court of the following: "Based upon the Department's actions and the Monitoring Team's above assessment, Defendants respectfully submit that the contempt found by the Court in the December 19, 2023 Order has been purged."

**Conclusion of the Monitoring Team**

The Department has made important strides in returning to a more collaborative and transparent relationship with the Monitoring Team, which characterized the relationship from the inception of the Consent Judgment through 2021. A functional collaboration is particularly critical given the significant work that remains to reform the agency.

The Monitoring Team continues to remain gravely concerned about the conditions in the jails. The jails remain dangerous and the level of harm and serious risks to individuals' safety, both those who are detained and those who work for the agency, are significant. We must therefore emphasize our long-standing recommendations that the infusion of standard correctional practice and adequate supervision must become the reflexive practice in the Department's day-to-day operation of the jails.

Thank you for your consideration of these matters.

Sincerely,

s/   Steve J. Martin

Steve J. Martin, *Monitor*

Anna E. Friedberg, *Deputy Monitor*

# Appendix A

**<u>Script</u>**

At our most recent court hearing, Judge Swain, Federal Monitor Steve Martin, and Deputy Monitor Anna Friedberg expressed optimism about the future for the Department of Correction with regards to the Nunez consent decree. I have pledged that they will receive full transparency and cooperation from our department as we all work towards our shared goal of improving the safety of our facilities – for our staff and for all those in our care.

However, pledges only matter when they are fulfilled. And that is where each one of you comes in. Every uniformed and civilian member of the Department of Correction must work together to ensure that pledge is met.

It is not only the right thing to do, it is required by the court. In December of last year, our department was found in contempt. This charge was ordered by the court because we opened a new housing facility without first notifying and appropriately conferring with the monitor. This is a serious problem which we are working to remedy. Because of that optimism I mentioned, and the commitment for transparency I made, we are being given the opportunity to purge this contempt charge and move forward in a productive manner.

One provision to purge this charge is this video you are watching right now. Communication, collaboration, and transparency are not only essential for dealings with the federal monitor – they are essential for our success as a department.

When you receive an inquiry from a member of the monitoring team or from a member of my executive or legal team on behalf of the monitor, ensure it is treated as a priority. Provide timely and accurate responses, and act in good faith to meet our shared goals.

If you are ever questioning if something you are working on is Nunez related, whether it's a housing unit, a program, a new strategy or project, security actions you have taken, or any other matter, please err on the side of caution and consider that it is Nunez related and confer with our legal team. Our legal team will work with you and the Monitoring Team to address your question and determine how best to proceed.

We are here to support all of you as we move our department forward together.

Thank you.

# Appendix B

## <u>NUNEZ COMMUNICATIONS PLAN CHECKLIST</u>

- Monitor approved of the Department's Communications Plan and Statement on: **January 11, 2024**.

- The Department produced a video of Commissioner Maginley-Liddie giving the Statement on: **January 18, 2024**.

- The Monitor approved of the Department's video on: **January 19, 2024**.

- A teletype containing a transcript of the Statement was issued on: **January 23, 2024**.

- The Video was emailed to:

  o All employees on: **January 23, 2024**.

  o All unions on: **January 23, 2024**.

- The Video was posted on the:

  o Intranet on: **January 24, 2024**.

  o Internet on: **January 23, 2024**.

  o Facility TVs on: **January 24, 2024**.

- The Video was played at:

  o The Senior Leadership Meeting held on: **January 26, 2024**.

- The Video was played at Roll Calls for 10 Days at: EMTC, GRVC, OBCC, RESH, RMSC, RNDC, NIC WEST, BHPW, Brooklyn Richmond Courts, Cranston Judicial Center, EHPW, Manhattan Court Division, QDC, Transportation:

  o All documentation sent to the Monitor by: **February 22, 2024**.