UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

MARK NUNEZ, et al.,

                                 Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

                                 Defendants.

**DECLARATION OF MICHAEL VIVIANO IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONTEMPT AND APPOINTMENT OF A RECEIVER**

11 Civ. 5845 (LTS)

------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                                 Plaintiff-Intervenor,

-against-

CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF CORRECTION,

                                 Defendants.

------------------------------------------------------------------ x

STATE OF NEW YORK    )
                                   :SS:
COUNTY OF NEW YORK  )

      **MICHAEL VIVIANO,** an attorney duly admitted to practice in the State of New York and in this Court, declares, pursuant to 28 U.S.C. §1746, under penalty of perjury, that the following is true and correct: I am Senior Counsel in the Office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, I am one of the attorneys for defendant the City of New York in the above referenced matter. As such, I am familiar with the facts stated

below. I submit this Declaration, in Opposition to Plaintiff's Motion for Contempt and Appointment of a Receiver.

1. Annexed hereto as Exhibit "A'" is the Declaration of Lynelle Maginley-Liddie, the Commissioner of the New York City Department of Correction, further attached to the Commissioner's Declaration is Exhibit A-1, a report titled[1]: https://www.nyc.gov/office-of-the-mayor/news/164-24/mayor-adams-progress-improve-care-services-people-custody-advances-plans; and Exhibit A-2, Action Plan and subsequent orders.

This exhibit provides color to DOC's improved relationship with the Monitor. It also illustrates that the Commissioner, has made efforts to focus on the importance of Nunez, by selecting an individual to act as Deputy Nunez Manager, and developing metric for use of force, security, and violence in order to identify trends and patterns which will be used to develop anti-violence strategies. Critically, this document contests that a Receiver is needed for reform, in fact, it amplifies that through current leadership, consistency, collaboration, and improvement will continue to occur.

2. Annexed hereto as Exhibit "B" is the Declaration of Timothy Kepler, Associate Commissioner in the Office of Management, Analysis, and Planning ("OMAP") at the New York City Department of Correction.

OMAP was established at DOC in 2022. It is designed to provide analysis to inform DOC's operations and to support strategic planning. The formation of OMAP demonstrates DOC's commitment to using unbiased quantitative data to advance decision-making and problem-solving.

Moreover, OMAP is able to track trends, and provide new data for analysis.

---

[1] PDF version of this exhibit is attached to the Declaration of Lynelle Maginley-Liddie; Exhibit B.

3. Annexed hereto as Exhibit "C" is the Declaration of Ronald Brereton, Deputy Commissioner of Security Operations with the New York City Department of Correction.

Since May of 2022, DC Brereton oversaw Special and Central Operations Divisions, the Operational Security Intelligence Unit, Correctional Industries Division, Office of Policy and Compliance, and the Fire Safety Unit. Deputy Commissioner Brereton provides information pertaining to the following: Use of Force Policy; Rapid Reviews; use of Emergency Response Teams and Emergency Services Unit; use of O.C. Spray; Escort Procedures; Searches; Key Control; Post Orders, including post abandonment, and secure doors; and Management of Safety within Vestibules. DC Brereton also operates on the front line, speaking with high level leadership, and staff, to assist in the continuously evolving jail dynamics.

4. Annexed hereto as Exhibit "D" is the Declaration of Jeremiah Johnson, Ph.D., the Acting Deputy Commissioner of Training and Development ("Training") for the New York City Department of Correction.

In partnership with the Monitor, ADC Johnson has overseen the development of DOC's curriculum for training new captains. ADC Johnson also has implemented Monitor approved curriculum for DOC's Use of Force policy and Defensive Tactic field training. Similarly, ADC Johnson has implemented numerous trainings for the emergency services unit, for probationary officers, and has conducted refresher courses with DOC, critically reducing the backlog of training requests by 44.5 %.

5. Annexed hereto as Exhibit "E" is the declaration of Yvonne Pritchett, Deputy Commissioner of Use of Force Investigations Division ("ID") with the New York City Department of Correction.

In this role, DC Pritchett oversees investigations of members of service engaged in Use of Force incidents. This unit has been established to take immediate and meaningful staff accountability for UOF incidents. Through ID leadership, the Intake Unit's Rapid Review team has increased to two teams.

Under the leadership of DC Pritchett, the UOF Investigations Division has made reasonably diligent efforts to comply with the provisions in the Consent Judgement.

6. Annexed hereto as Exhibit "F" is the declaration of Solange N. Grey, Deputy Commissioner of Trials within the New York City Department of Correction.

DC Grey's responsibilities include oversight of the Trials and Litigation Division ("Trials"), which prosecutes all internal disciplinary matters brought against members of DOC's uniformed force. When DC Grey's tenure began in 2022, DOC was faced with a substantial backlog of disciplinary cases. That has changed dramatically.

Trials processed and resolved 95 percent of the 750 cases with incident dates prior to 2021. The remaining five percent are being held in abeyance due to members of service being out on approved leave. Trials has resolved 98 percent of the 285 additional UOF cases that the Monitor identified with incident dates between January 2021 and June 2022.

7. Annexed hereto as Exhibit "G" is the Declaration of Gamien Batchelor, Captain within the New York City Department of Correction; attached to the Batchelor Declaration are the following Exhibits: Exhibit G-1 "GRVC Tour Wand data" referred to as Exhibit A therein; Exhibit G-2 "OBCC Tour Wand Data" referred to as Exhibit B therein.

Captain Batchelor has been a member of DOC since 2007, and has over 21 years of service, with ten as a Captain. Captain Batchelor oversees a team of officers, and is responsible for overseeing Officer and Captain Tour Wand compliance. Since Captain Batchelor's appointment

to this division, significant improvement in staff compliance with Tour Wand usage has occurred Department wide. As well, time between "swipes" has decreased.

8.  Annexed hereto as Exhibit "H" is the Declaration of James Austin, Ph.D., an Expert in the field of correction, classification restricted housing programs, pretrial risk assessments, and rehabilitation programs; attached to the Austin declaration is the following exhibit: Exhibit H-1, Austin C.V.

Dr. Austin is retained by DOC, at request of the Monitor, and has vast experience in Rhode Island, Alameda County (Oakland) California, U.S. Virgin Islands, and Santa Clara County; as either an expert for the federal court or a monitor of a consent decree.

Dr. Austin is responsible for tackling violence in DOC, through his expertise he has established and received monitor approval for multiple restrictive housing units, such as the Behavior Health Unit, and Annex. Moreover, Dr. Austin implemented change in the classification system, in which it now adheres to sound and data driven protocols.

Dr. Austin, a former Monitor himself, believes a Receiver will jeopardize the success DOC has created recently and strongly believes considerable progress will be achieved in the next few months.

9.  Annexed hereto as Exhibit "I'" is the Declaration of Ronald Edwards, Deputy Commissioner of Administration with the New York City Department of Correction.

Deputy Commissioner Ronald Edwards has been responsible for making DOC more effective in deploying staff, and tour scheduling. Under DC Edwards, new technology was implemented to allow DOC to better optimize staffing, control overtime, and ensure that proper coverage is maintained... Finally, DC Edwards is in part, leading the charge to civilianize positions within DOC, permitting uniformed members of service to be deployed more efficiently.

10. Annexed hereto as Exhibit "J" is the Declaration of Francis Torres, First Deputy Commissioner for the New York City Department of Correction.

As First Deputy Commissioner, Francis Torres has dedicated her time to the emergent adult population, meaning those under 21 years of age. She oversees the direct supervision model within the housing units of the emergent adults. Moreover, FCD Torres, in part, is responsible for overseeing the RNDC Violence Reduction Plan, which ultimately reduced violence in the emergent adult population. FDC Torres, declaration further sheds light on the future RNDC Action Plan, which has received Monitor approval and will continue to reduce violence within RNDC.

11. Annexed hereto as Exhibit "K" is the declaration of Patrick Benn, Deputy Commissioner of the Facility Maintenance and Repair Division ("FMRD") with the New York City Department of Correction.

DC Benn is responsible for facility maintenance, fleet administration, capital and construction projects, fire safety planning, and warehouse operations.

12. Annexed hereto as Exhibit "L" is the declaration of James Saunders, Deputy Commissioner of Health Affairs, Compliance, and quality for the Department of Correction; attached to the Saunders Declaration are the following exhibits: Exhibit L-1 Dr. Belavich Report; Exhibit L-2, Dr. Belavich C.V.

Deputy Commissioner Saunders oversees the coordination of health services for individuals in custody and enhancing the Department's health care processes. He collaborates closely with Correctional Health Services ("CHS"), a part of NYC Health and Hospitals Corporation. Principal among his responsibilities is working with others to develop systems to reduce and prevent deaths by suicide and self-harm incidents among DOC's incarcerated population.. Further, Saunders works alongside suicide prevention expert Dr. Belavich. To that

end, suicide has decreased in DOC. Under DC Saunders, in 2023 two individuals in DOC custody died by suicide, down from five in 2022. DOC utilized Dr. Belavich's expertise to generate a report, discussing, among other things, important steps to continue strengthening the suicide prevention system.

13. Annexed hereto as Exhibit "M" is the Los Angeles Times report, State Prison Health Czar is Fired, by Michael Rothfield, Jan. 24, 2008.

In State Prison Health Czar is Fired, U.S. District Judge Thelton Henderson revoked the power he had given Robert Sillen. Sillen was previously appointed and given broad powers to run prison healthcare and order additional spending in the California prisons overcrowded and understaffed medical wards. Sillen dramatically failed as a Receiver, increased spending, by 300 million, and requested over 800 million for future spending. The article exemplifies the risk and prior failures of appointing a Receiver.

14. Annexed hereto as Exhibit "N" is the New York Times report, Using Muscle to Improve Health Care for Prisoners, by Soloman Moore, Aug. 27, 2007.

In Using Muscle to Improve Health Care for Prisoners, Moore underscores the broad powers and lack of discretion Receiver Sillen maintained. Including but not limited to his direct threats to "back up the Brink's truck" to the state's treasury, if need be, to finance better medical services. Sillen ultimately had his power revoked by District Judge Henderson.

15. Annexed hereto as Exhibit "O" is the report published by the Legislative Analyst's Office: Overview and Update on the Prison Receivership; by Gabriel Petek, November 2008.

Petek discusses California's prison receiver producing exceptionally high costs and mismanagement of funds. Immediately after his appointment, the receiver dramatically increased salaries for medical staff.

16. Annexed hereto as Exhibit "P" is the report published by the State of California, Office of Inspector General: <u>California Prison Health Care Receivership: Review of Disbursements April 2006 through June 2007</u>, Matthew L. Cate, Inspector General, February 2008.

Inspector General Cate, in part, covers the increased salaries and other spending by the Receiver in California, resulting in $33.3 million in tax-payer funds in just the first 15 months of Receivership.

17. Annexed hereto as Exhibit "Q" is the article published by Yeshiva University Cardozo Public Law, Policy & Ethics Journal: <u>Receiverships in the Prison Litigation Context: Factors Necessary for an Effective Judicial Remedy of Last Resort</u>, Liat Weingart, 2010.

Weingart, in part, discusses the Receivership tied to the Alabama Prison System under Receiver and Governor James Fob, which is considered to have failed to resolve major issues in the prison system.

18. Annexed hereto as Exhibit "R" is the transcript of the Hearing before the subcommittee on the District of Columbia of the committee on government reform, House of Representatives, one hundred sixth Congress second session: <u>Beyond Community Standards and a Constitutional Level of Care? A Review of Services, Costs, and Staffing Levels at the Corrections Medical Receiver for the District of Columbia Jail</u>; June 30, 2000.

As part of the hearing, Receiverships, including the Washington D.C. Jail Receivership, and Fulton County Jail Receivership was discussed, and their proven exceptional cost, and the duration of Receiverships lasting longer than expected.

19. Annexed hereto as Exhibit "S" is the article produced by The Atlanta Journal-Constitution: <u>Fulton Jail No Longer Under Court Oversight</u>, Rhonda Cook, April 23, 2015.

Cook notes that the Fulton County Prison litigation cost tax-payers upward of $1 billion and further stating that the federal judge overseeing the Fulton County Receivership expressed frustration at the fact that the litigation had gone on for ten years when similar cases are usually closed after two years.

Dated:	New York, New York
	March 19, 2024

        HON. SYLVIA O. HINDS-RADIX
        Corporation Counsel of the City of New York
        *Attorney for Defendants*
        100 Church Street, Room 3-147
        New York, New York 10007
        (212) 356-2368

By:	/s/ *Michael Viviano*
        Michael Viviano
        *Senior Counsel*
        Special Federal Litigation Division

cc:	**VIA ECF**
	*All attorneys of record*