UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
MARK NUNEZ, et. al,

                                                                   Index No. 11 Civ. 5845 (LTS)(JCF)

                              Plaintiffs,          **DECLARATION OF DEPUTY COMMISIONER SOLANGE N. GREY**

                           -against-

CITY OF NEW YORK, ET AL.,

                                    Defendants.
----------------------------------------------------------------- x
UNITED STATES OF AMERICA,

                           Plaintiff-Intervenor,

                           -against-

CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF CORRECTIONS,

                                  Defendants.
----------------------------------------------------------------- x

       **SOLANGE N. GREY**, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

       1.      I am the Deputy Commissioner of Trials with the New York City Department of Correction ("DOC"). My responsibilities include oversight of the Trials and Litigation Division ("Trials"), which prosecutes all internal disciplinary matters brought against members of DOC's uniformed force.

       2.      Prior to my appointment, I served as a Family Court Magistrate for 18 years, as a child advocate and attorney in Family Court, and as a prosecutor in Los Angeles, California, and Kings County, New York.

3. I submit this Declaration to address Plaintiffs' contentions regarding Trial's compliance with the *Nunez* Court orders.

**I.    The Adjudication Process**

4. Trials is responsible for the discipline of uniformed members of service who violate any of DOC's Rules and Regulations or New York State and City laws, whether on or off duty. As such, it has a central role in the enforcement of DOC's use of force policy.

5. Upon receipt of a recommendation for disciplinary action from the Investigation Division ("ID"), Trials conducts an independent review of the matter. Our attorneys may ask ID to clarify its findings. If appropriate, Trials then prepares a petition with formal charges for filing with the New York City Office of Administrative Trials and Hearings ("OATH"), a municipal agency that is separate from DOC.

6. Members of service are typically represented by a union attorney at all stages of a proceeding.

7. After the member of service has been served with the petition and provided discovery, Trials will extend a settlement offer. Settlement may include a reprimand, loss of vacation or compensation days, demotion, probation, or termination in the most serious cases.

8. If a settlement is reached, the parties execute a negotiated plea agreement ("NPA"), which includes the agreed-upon penalty.

9. For DOC, the *Nunez* guidelines, developed with the Monitor, establish the parameters for discipline. For example, a false report in a use of force incident, without any credible mitigation, will typically warrant a 30-day penalty.

10. If the parties are unable to reach a settlement, the case is set for a pre-trial conference before an OATH judge. Following the pre-trial conference, there is another opportunity

for settlement. If a settlement is not reached, the case is set for trial. After hearing the evidence at trial, an independent OATH judge issues a Report and Recommendation.

11. The DOC Commissioner may adopt OATH's findings and penalty recommendation, in whole or in part, or reject the findings and recommendation entirely.

12. If the Commissioner rejects any part of the recommendation, an "Action of the Commissioner" is issued detailing the reasons for the decision.

13. The member of service has the right to appeal the final decision to the Civil Service Commission.

## II.   Trials Division *Nunez* Compliance

14. When I began my tenure in 2022, DOC was faced with a substantial backlog of disciplinary cases. That has changed dramatically.

### A. The backlog of cases

15. The *Nunez* First Remedial Order required DOC, in collaboration with the Monitor, to develop a timeline for the prosecution of cases, including timeframes for discovery and the development of criteria to prioritize and resolve cases.

16. The *Nunez* Third Remedial Order required DOC to increase the number of pre-trial conferences at OATH in Use of Force ("UOF") cases to at least 150 a month, and to increase the number of agency attorneys and supervisors to address the backlog of cases.

17. Following the First Remedial Order, the Monitor identified 750 backlog cases requiring Trials' immediate attention with incident dates of December 31, 2020, or earlier.

18. The Monitor subsequently identified an additional 285 backlog cases, mostly involving Use of Force, with incident dates between January 2021 and June 2022.

19. Trials maintains a spreadsheet of backlogged cases. In preparing this declaration I reviewed this spreadsheet. The spreadsheet shows that of the 750 cases with incident dates prior to 2021, 711 were resolved, with 39 remaining. I have confirmed that the 39 cases, which represent only 5 percent of the 750 pre-2021 cases, involve MOS who are currently out on approved leave or pending criminal prosecution.

20. Trials processed and resolved 95 percent of the 750 cases with incident dates prior to 2021. The remaining five percent are being held in abeyance due to members of service being out on approved leave.

21. Trials has resolved 98 percent of the 285 additional UOF cases that the Monitor identified with incident dates between January 2021 and June 2022.

B. **Medical cases**

22. The *Nunez* Action Plan required DOC to identify members of service on medically modified or restricted duty status, for immediate return to work or for the commencement of disciplinary proceedings. The Monitor identified 386 such cases requiring review.

23. Trials has investigated and resolved 96 percent of those 386 cases that the Monitor identified. The remaining four percent are being held in abeyance due to members of service being out on approved leave and one member being suspended due to pending felony charges.

24. In April 2023, the Monitor identified an additional 341 medical cases and set a deadline of August 31, 2023, for their resolution.

25. Trials has investigated and resolved 98 percent of the 341 medical cases. As of February 23, 2024, one percent of cases are being held in abeyance due to members of service being out on approved leave. The remaining one percent are at OATH.

### III. Total cases

26. Trials maintains a spreadsheet that includes all cases opened since January 1, 2021, and each case open or pending as of January 1, 2023, which I reviewed while preparing this Declaration. Overall, the number of outstanding disciplinary cases has been reduced from 2,430 in November 2022 to 1,372 in November 2023, a 43 percent reduction.

27. In 2023, Trials calendared an average of 201 pre-trial conferences each month, surpassing the Court's Order of 150 cases a month.

### IV. Staffing

28. During the past year and a half, Trials has extended offers to ten new attorneys; five directors and one managing director; three investigators; three principal administrative assistants; four legal coordinators; and one community coordinator.

29. Currently, Trials has one Deputy Commissioner, 24 agency attorneys, five directors, one managing director, five legal coordinators, one executive assistant to the Deputy Commissioner, one office manager, one city research scientist, three administrative managers, three principal administrative assistants, two investigators, one clerical associate, one front desk officer, and two externs - - a total of 49 full-time employees and two part-time law student externs. Several of the supervisors are attorneys. The Action Plan requires Trials to maintain 25 agency attorneys and four directors.

30. The attorneys and support staff in Trials are committed to resolving cases expeditiously and fairly. They have worked diligently to meet all established deadlines.

Dated: New York, New York
March 13, 2024

SOLANGE N. GREY, ESQ.