WORLD & NATION

# State prison health czar is fired

BY MICHAEL ROTHFELD

JAN. 24, 2008 12 AM PT

TIMES STAFF WRITER

**SACRAMENTO --** — A federal judge Wednesday abruptly fired the man he had appointed to fix the multimillion-dollar problems of medical care in the state's prisons, after determining the effort was moving too slowly and in too confrontational a manner.

U.S. District Judge Thelton Henderson revoked the power he had given Robert Sillen and handed it to J. Clark Kelso, a lawyer with experience turning around government institutions in crisis.

In an interview Wednesday, Kelso said Sillen had created a set of plans "that were so voluminous that it was very difficult for people to get their arms around them." He said he would craft a "strategic business plan" in an effort to return prison medical care to state control within four years.

"We are going to clearly identify what it is we are going to do," Kelso said. "We want to do only those things that are really necessary to bring healthcare services up to a constitutional level. We want to have deadlines, some milestones."

Sillen declined to comment Wednesday.

Henderson had appointed Sillen nearly two years ago, giving him broad powers to run prison healthcare and order additional spending in the state's overcrowded, understaffed medical wards. The order came as part of a case in which the judge had

ruled that medical conditions violated prisoners' constitutional rights and had excoriated state officials for failing to fix a medical system so broken that an average of one inmate was dying every six or seven days because of poor care.

Since taking the post, formally known as the receiver, Sillen has dramatically increased state spending on prison medical care, largely by bringing salaries up to market levels. Sillen added about $300 million a year and sought to add another $500 million in next year's budget. In addition, he requested more than $800 million for new construction over several years and was working on a $3-billion plan for 5,000 long-term medical beds, state officials said.

But he also frequently clashed with others in his orbit. He jousted with lawmakers and froze out lawyers for inmates. He suggested he should also control the hiring of prison guards, and he blasted the $7.7-billion prison reform package approved by the Legislature last year as a bad idea.

Henderson praised some aspects of Sillen's tenure, saying he had "successfully used his unique skills and bold, creative leadership style to investigate, confront and break down many of the barriers that existed at the inception of the receivership."

But his order removing Sillen also expressed frustration with the pace of progress and implicitly criticized Sillen's uncompromising attitude. The job now needs "a collaborative style of leadership," the judge wrote.

ADVERTISEMENT

Sillen, 65, is an outspoken figure who has spent decades in the field of public health. He had vowed to use all his authority to make changes, regardless of the obstacles. "The crisis in California's prisons was created over the past several decades as a result of political expediency, incompetence and the creation of a wasteful custody and healthcare operation devoid of accountability," he wrote early last year in a report to the judge.

But his plans to correct the system's problems were criticized for being long and unfocused. In removing him, Henderson noted that Sillen had failed to meet his initial deadline for a plan of action and then provided inadequate timelines for progress.

Sillen has offered varying estimates of how long it would take to complete the job, saying at one point last year that it might require a decade -- clearly longer than Henderson had in mind.

"The receivership . . . must work more closely at this stage with all stakeholders, including state officials, to ensure that the system developed and implemented by the receivership can be transferred back to the state in a reasonable time frame," the judge wrote.

Sillen also shut out lawyers for inmates, even asking the judge to stop them from inspecting his work. Henderson refused.

"We haven't spoken in many months," said Donald Specter, director of the nonprofit Prison Law Office, whose lawsuit had prompted Henderson to create the receivership. "We really didn't have much of an idea what he was doing."

Of Kelso's appointment, Specter said, "the judge is a wise man, and he made a wise decision."

Kelso, 48, a professor at McGeorge School of Law in Sacramento, is a veteran of state government who worked to unify the court system, took over the California Department of Insurance when Commissioner Chuck Quackenbush resigned amid corruption allegations in 2000, and oversaw the state's troubled information technology program.

In an apparent effort by Henderson to rein in the receivership as Sillen formulated it, Kelso will be paid $224,000 a year plus a 25% annual "performance bonus." Kelso said the base salary is $1,000 less, by design, than that of James Tilton, who runs the state prison system.

By contrast, Sillen had earned $500,000 a year, and until October, received another $150,000 a year in lieu of benefits.

In a statement, Andrew Lynn Hoch, Gov. Arnold Schwarzenegger's legal affairs secretary, said the administration "appreciates" Sillen's work and looked forward to dealing with Kelso. "We all share the same goal of developing and implementing a constitutionally adequate prison medical care system," the statement said.

Assemblyman Todd Spitzer (R-Orange), chairman of a committee on prisons, said Sillen had "alienated every single party that was necessary to solve the crisis."

"Despite needing the Legislature to deal with prison healthcare, he alienated both sides of the aisle with his arrogance and disdainful approach," he said.

That included the governor's appointees. One of Sillen's aides told prison medical staff that they did not have to cooperate with Tilton's instructions relative to prison construction plans.

Henderson faulted himself Wednesday for not keeping a closer watch on Sillen, saying he "had not furnished the type of hands-on leadership" that he should have. And the judge said he had "resolved to provide such leadership as the case moved forward."

michael.rothfeld@latimes.com

--

Times staff writer Jordan Rau contributed to this report.