

**MURIEL GOODE-TRUFANT**
*Acting Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**MARIAM KHAN**
*Assistant Corporation Counsel*
Phone: 212-356-2662
markhan@law.nyc.gov

## MEMO ENDORSED

June 19, 2024

**BY ECF**
Honorable Laura T. Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Nunez v. City of New York*, 11 Civ. 5845 (LTS)

Dear Chief Judge Swain:

I am an Assistant Corporation Counsel in the Office of the Muriel Goode-Trufant, Acting Corporation Counsel for the City of New York (the "City"), and one of the attorneys assigned to represent Defendants in the above referenced matter. Defendants write pursuant to the Court's June 14, 2024, order directing Defendants to file a letter articulating why documents that Plaintiffs filed under seal, specifically exhibits 154, 156, and 159-69 attached to the Declaration of Mary Lynne Werlwas (hereinafter the "subject documents"), (s*ee* ECF Dkt. 722), should remain under seal. (ECF Dkt. 732). As discussed below, each of the subject documents are covered by the protective orders entered in this action, which address the need to file certain documents under seal. Additionally, public disclosure of these documents is not warranted under *Lugosch v. Pyramid Co.*, 435 F.3d 110 (2d Cir. 2006). Accordingly, the court should continue the sealing of the subject documents.

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). The presumption in favor of public access under the First Amendment is based on the well-established principle that the "public and the press have a qualified First Amendment right to attend judicial proceedings and access certain judicial documents." *Lugosch*, 435 F.3d at 120. In determining whether the First Amendment right of access attaches, courts have employed two approaches. *Id.* Under the first approach, the "so called experience and logic approach," the court "consider[s] both whether the documents 'have historically been open to the press and general public' and whether 'public access play a significant positive role in the functioning of the

particular process in question." *Id.* Under the second approach, the court "considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.*

Under the common law presumption in favor of public access, the court employs a three-step inquiry. *See id.* at 119. First, the court considers whether the "documents at issue are indeed judicial documents." *Id.* A document is considered a judicial document if it is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Id.* Finally, after determining the weight of the presumption, "the court must balance competing considerations against it." *Id.* (internal marks and citations omitted). The court may consider such countervailing factors as "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.*

In this case, the court has entered several protective orders specifying certain records that should be designated as "Confidential Material" and, if filed with the court, must be filed under seal. In addition to the protective orders determining that the subject documents should be filed under seal, a consideration of the First Amendment and common law presumptions in favor of public access do not favor disclosure of the subject documents in this case. Hence, this court should continue the sealing of the subject documents.

I. **Subject Documents Should be Sealed Pursuant to the Protective Orders.**

On May 23, 2015, the court entered the Amended Protective Order Concerning Confidential Information to govern the use of documents containing certain confidential information in this action. (ECF Dkt. 89 ("Amended Protective Order")). Specifically, the Amended Protective Order provided for certain documents to be designated as "Confidential Material." *Id.* Amongst these documents were "security reports, security information, training materials, memoranda and other writings setting forth DOC policy and procedures, to the extent that these documents provide specific operational guidance to DOC staff that, if disclosed, would jeopardize the safety and security of DOC staff or prisoners." Amended Protective Order ¶ 2(h).

Under the Amended Protective Order, the receiving party is prohibited from disclosing confidential material, except under certain circumstances not applicable here. *Id.* ¶ 6. Additionally, the Amended Protective Order requires that any document incorporating confidential material or revealing the contents thereof, if filed with the court, must be filed under seal. *Id.* ¶ 8 ("If any paper which incorporates any confidential materials or reveals the contents thereof is filed in this court, those portions of the papers shall be delivered to the court … under seal."). On October 21, 2015, by entry of the Consent Judgment, the Amended Protective Order was made to "remain[] in full force and effect" for the post-judgment phase of this action. (ECF Dkt. 249 ("Consent Judgment")).

Following entry of the Consent Judgment, the parties entered into subsequent agreements regarding the confidential treatment of certain documents that were produced in this action. Specifically, in 2016, the parties entered into an agreement regarding the confidential treatment of certain records that are "developed and produced by the Monitoring Team and DOC pursuant to the Consent Judgment." (ECF Dkt. 290, Ex. 1). Amongst those documents was DOC compliance

reports prepared pursuant to section XIX of the Consent Judgment (hereinafter "DOC compliance reports"), which the parties agreed should be designated "Confidential." (*Id.*). The Monitor notified the court regarding these agreements in a letter to the court dated September 19, 2016. (ECF Dkt. 290). The following year, on September 19, 2017, the Monitor notified the court regarding the parties' agreement to continue to designate the narrative portion of DOC compliance reports as confidential. (ECF Dkt. 304).

In addition to the agreements, subsequent protective orders were also entered in this case to supplement the Amended Protective Order. On March 30, 2017, the court entered a supplemental protective order adding three categories of documents that shall be deemed "Confidential Materials" (ECF Dkt. 293 ("2017 Suppl. Protective Order")), including a catch-all category that specifically provided that Confidential Materials shall include "all other documents that all parties agree shall be treated as confidential materials, provided notice is given to the court." (*Id.*). On September 29, 2023, the court entered another protective order, (ECF Dkt. 574 "2023 Suppl. Protective Order"), under which the court ordered that the following documents shall be designated as "Confidential-Attorney's Eyes Only": "Nunez Compliance Unit ('NCU') Security Audit supporting documentation, OPC Audit Working Papers, and NCU COD Assessments." (*Id.*).

At issue here are fourteen documents that Plaintiffs have filed under seal. The first is DOC's First Compliance Report, dated March 30, 2016, that DOC prepared pursuant to provision XIX of the Consent Judgment (ECF Dkt. 722, Att. 1 ("Exhibit 154")). The second is a collection of assessments conducted by the Nunez Compliance Unit ("NCU") of serious incidents reported to the central operating desk ("COD") occurring at the Robert N. Davoren Center in the year 2023 (ECF Dkt. 722, Att. 2 ("Exhibit 156")) (hereinafter "2023 NCU COD Assessments"). The remaining exhibits filed under seal are documents relating to NCU security audits (ECF Dkt. 722, Atts. 4-14 ("Exhibit 158-169")).[1]

As required by the Amended Protective Order, Defendants affixed the "confidential" designation on each of the subject documents. As stated in their letter, Plaintiffs take no position regarding the sealing of these documents, and do not otherwise argue that the public right of access

---

[1] Plaintiffs also filed as Exhibit 152 Preliminary Review Spreadsheets with tailored redactions. (ECF 718, Att. 1 ("Exhibit 152")). The redactions, which include redactions of identifying names and camera angels, are consistent with previously court-approved redactions for Preliminary Review Spreadsheets (*see* ECF 613 (court order approving filing redacted version of Exhibit 35, which was the Preliminary Reviews Report for March 2023)) and are consistent with the existing protective order and the Consent Judgments. *See* Amended Protective Order ¶ 2 (e) and (i) (Confidential Materials include "all documents that concern the location of stationary video cameras in DOC facilities," and "all reports, summaries …. to the extent such documents name or otherwise identify individual DOC staff members); Consent Judgment XX (11) ("Plaintiffs' Counsel shall not disclose the names or other individual-identifying information of Staff Members obtained from the Department…"). Hence, Defendants ask that Exhibit 152 continue to be filed with the existing redactions on the docket.

attaches to these documents. (*See* Dkt. 721). Hence, the court should deem any such arguments as waived by Plaintiffs.

As detailed below, each of these documents fall under the protective orders entered in this action and hence should remain under seal. Furthermore, sealing of these records is warranted under *Lugosch*.

### A. DOC's First Compliance Report is Protected Pursuant to the Parties 2016 Agreement.

As discussed above, the parties entered into an agreement in 2016 to designate DOC compliance report as confidential. The parties subsequently reaffirmed and continued this agreement in 2017. Pursuant to these agreements, and pursuant to the 2017 Suppl. Protective Order which provides for the designation of documents as "Confidential Material" upon agreement of the parties, Exhibit 154, DOC's First Compliance Report, is Confidential Material. Accordingly, it should remain under seal.

### B. NCU's DOC Assessments and Security Audits are Protected under the 2023 Protective Order.

The remaining documents Plaintiffs filed under seal are NCU COD assessments and NCU Security audits. These documents clearly fall under the 2023 protective order and should remain under seal.

The 2023 protective order provides that "NCU Security Audit supporting documentation" and NCU COD assessments shall be designated Confidential-Attorneys eyes only. It also provides that these documents shall be treated as confidential materials under the Addended Protective Order. Exhibit 156, and 159-169 clearly fall under this protected category. Accordingly, pursuant to the 2023 Suppl. Protective Order and the Amended Protective Order, these documents should remain under seal.

### II. Continued Sealing of these records is warranted under *Lugosch*.

The protective orders in this action squarely address the issue of filing the subject documents under seal – each of the subject documents are Confidential Materials and may only be filed with the court under seal. However, in the case that the court finds that these documents are not Confidential Materials under the Amended Protective Order, or to the extent the court requires specific findings pursuant to *Lugosch*, the court should find that the continued sealing of the record is warranted under *Lugosch*.

In this case, "countervailing factors in the common law framework" and "higher values in the First Amendment framework," dictate against disclosure of these documents. Specifically, as noted by the Monitor, the parties entered into an agreement to designate DOC compliance reports as confidential to "ensure the Monitor can responsibly fulfill his obligations under the Consent Judgment." (ECF 290). Additionally, much of the content of DOC's compliance report is reported out by the Monitor in the Monitor's own report, after the Monitoring team has had an "opportunity to analyze data produced by the Department to provide appropriate context in order to avoid the misinterpretation or the dissemination of incomplete or confusing information." (ECF 290); *also*

*compare* Exhibit 154 (DOC's First Compliance Report) and ECF 269 (First Report of the Nunez Independent Monitor) (these reports contain overlapping discussions). Notably, the overlapping of information is also apparent from Plaintiffs' own filing – the sole reference Plaintiffs make to Exhibit 154 is in support of a claim for which Plaintiffs also directly cite and quote the Monitor's report. *See* ECF 716, Plaintiffs' Reply Memorandum of Law, at 16. The limited reference Plaintiffs make to Exhibit 154, the parties agreement to keep this document confidential and the underlying purpose of that agreement all strongly weigh against public disclosure of Exhibit 154.

Similarly, important consideration of the security of DOC staff and inmates warrant against the public disclosure of the NCU documents. "A party may overcome the presumption of access by demonstrating that sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467-68 (S.D.N.Y. 2017) (citing *United States v. Aref*, 533 F.3d 72 (2d Cir. 2008)). In this case, as recognized by the court's 2023 Suppl. Protective Order, there are serious safety and security concerns at play with regards to NCU COD assessments and NCU security audits. These concerns warrant against the disclosure of the NCU documents. Accordingly, this court should continue sealing all the subject documents.

This Office thanks the Court for its attention to this matter.

Sincerely,

/s/ Mariam Khan
Mariam Khan
Assistant Corporation Counsel

cc: all counsel of record (*via* ECF)

The foregoing request is granted.  Exhibits 154, 156, and 159-69 attached to the Declaration of Mary Lynne Werlwas (DE 722) shall remain under seal, with party level access only, for the reasons stated herein.  DE 721 resolved.
SO ORDERED.
6/20/2024
/s/ Laura Taylor Swain, Chief USDJ