Index No. 11 Civ. 5485 (LTS)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK NUNEZ, et al.,

                              Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

                              Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR RECONSIDERATION**

*MURIEL GOODE-TRUFANT*
*Acting Corporation Counsel of the City of New York*
    *Attorney for Defendants*
    *100 Church Street*
    *New York, N.Y.  10007*

    *Of Counsel:  Alan Scheiner*
    *Tel:  (212) 356-2344*
    *Matter #:  2012-025069*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    A.  Colson Has Not Met the Standard for a Motion for Reconsideration ...................... 2

    B.  The Order Correctly Interprets the Consent Judgment to Prohibit Testimony By the Deputy Monitor in Another Matter Without the Court's Consent .................................................................................................... 3

    C.  The Deputy Monitor is Protected From Compelled Testimony by The Doctrine of Judicial Immunity. ................................................................................ 7

    D.  The Court may disqualify the Deputy Monitor from testifying in order to protect the public interest and integrity of the judicial process. ......................... 8

CONCLUSION ..................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Anglo Am. Ins. Group v. CalFed, Inc.*,
   940 F. Supp. 554 (S.D.N. Y. 1996) ...........................................................................................2

*Colson v. Mingo*, et al.,
   No. 18-CV-2765-JGLC (S.D.N.Y.) ............................................................................................1

*Crumpton v. Bridgeport Educ. Ass'n*,
   993 F.2d 1023 (2d Cir. 1993).................................................................................................3, 4

*Henkel v. Lickman (In re Lickman)*,
   304 B.R. 897 (Bankr. M.D. Fla. 2004) .....................................................................................8

*In re N.Y.C. Policing During Summer 2020 Demonstrations,*
   2022 U.S. Dist. LEXIS 12785 (S.D.N.Y. Jan. 24, 2022) ..........................................................8

*Medisim Ltd. v. BestMed LLC*,
   2012 U.S. Dist. LEXIS 56800 (S.D.N.Y. Apr. 23, 2012)..........................................................2

*Rose v. Knipel*,
   No. 21-CV-786 (LDH) (LB), 2022 U.S. Dist. LEXIS 68626
   (E.D.N.Y. Apr. 12, 2022)...........................................................................................................8

*Schonberger v. Serchuk*,
   742 F. Supp. 108 (S.D.N.Y. 1990) ............................................................................................3

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995).........................................................................................................2

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012).......................................................................................2

*Von Bulow v. Von Bulow*,
   811 F.2d 136 (2d Cir. 1987).......................................................................................................7

**Statutes**

Local Civil Rule 6.3 .........................................................................................................................2

## PRELIMINARY STATEMENT

Ronald Colson, a plaintiff in the unrelated matter of *Colson v. Mingo*, et al., No. 18-CV-2765-JGLC (S.D.N.Y.) (the "*Colson* case"), seeks to compel the Deputy Monitor Anna Friedberg, to testify at trial in that case.[1] *See* October 15, 2024, Letter of Glenn Greenberg, ECF No. 786 & Ex. 1. In its Order of October 15, 2024, ECF No. 786 (the "Order"), the Court rejected Colson's request, stating that "all of the restrictions on the Monitor that are outlined in the Consent Judgment [ECF No. 249] (including, but not limited to, section XX, paragraph 28 thereof) also bind the Deputy Monitor and the Monitoring Team staff." Colson now moves the Court to reconsider and reverse its Order on the grounds that the Order is an unauthorized modification of a Consent Judgment. The motion should be denied for several reasons:

(a) Colson has not met the standard for a motion for reconsideration.

(b) The Order is not a modification of the Consent Judgment because it correctly interprets the Consent Judgment according to the intent of the parties and the Court.

(c) The Court should preclude enforcement of the subpoena to the Deputy Monitor pursuant to the Confidentiality Agreement entered into by the Monitor at the Court's direction, which expressly applies Consent Judgment XX-28 and other confidentiality restrictions to the Monitoring Team.

---

[1] Plaintiff's subpoena and motion comes while a summary judgment motion is pending in *Colson*, and several years after the close of discovery in that case. *See Colson v. Mingo*, et al., No. 18-CV-2765-JGLC, ECF Nos. 116 (letter from Colson's counsel confirming close of discovery), 211 (letter from Colson's counsel stating intention to rely on testimony of the Deputy Monitor), and 201-205 (defendants' motion for summary judgment).

 (d) The Court should preclude the Deputy Monitor's testimony pursuant to the doctrine of judicial immunity, because the Monitor and his staff are agents of the Court.

 (e) The Court should preclude the Deputy Monitor's testimony because it seeks to use the testimony of an expert retained by the Court and the parties to the case to testify in an unrelated matter, against a party to this case, where that testimony would interfere with the public interest and the integrity of the judicial process.

## ARGUMENT

**A. Colson Has Not Met the Standard for a Motion for Reconsideration**

Colson's motion should be denied because he has not met the standard for a motion for reconsideration. Pursuant to Local Civil Rule 6.3, the Court may reconsider a prior decision to "correct a clear error or prevent manifest injustice." *Medisim Ltd. v. BestMed LLC*, 2012 U.S. Dist. LEXIS 56800, at *2-3 (S.D.N.Y. Apr. 23, 2012). Reconsideration under Local Rule 6.3 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012)). Accordingly, the standard of review applicable to such a motion is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion and that might "materially have influenced its earlier decision." *Anglo Am. Ins. Group v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (internal quotation marks and citation omitted). A party seeking reconsideration may neither repeat "arguments already briefed,

considered and decided" nor "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted).

Colson's original motion did not rely upon the principal authority relied upon in his motion for reconsideration, *Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023 (2d Cir. 1993), or any authority for the same point. *See* ECF No. 786. Rather, plaintiff's initial application contended that Colson's mis-interpretation of the Consent Judgment was more valid than the Monitor's own interpretation. Colson has not shown that the Court 'overlooked' any of the provisions of the Consent Judgment that he cited in his initial application and on which he continues to rely on as the sole evidence for his argument. In any event, those provisions do not support Colson's interpretation of the Consent Judgment, which, as explained below, is contrary to the intent of the Court and the parties to the Consent Judgment.

**B.    The Order Correctly Interprets the Consent Judgment to Prohibit Testimony By the Deputy Monitor in Another Matter Without the Court's Consent.**

Colson presumes to tell the Court and the parties what they intended by the Consent Judgment, and seeks to impose an illogical reading of said document that is contrary to its essential purpose, frivolously elevating form over substance. Colson relies on *Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023 (2d Cir. 1993), in which the Bridgeport Board of Education (and other municipal agencies) entered into a consent decree to resolve a lawsuit seeking the desegregation of the Bridgeport school system, which was designed "to eliminate substantial racial imbalance and to provide equality of educational opportunity in the Bridgeport public schools." *Id.*, 993 F.2d at 1026. As part of that decree, the City was required to submit a plan for affirmative action in teacher hiring. *Id*.

At that point, the Bridgeport Education Association (the "BEA") (a teacher's union), was permitted to intervene to participate in the remedy phase of the case with regard to the

3

terms of teacher employment *Id*. The court entered a hiring order authorizing affirmative action over the objection of the BEA, and the matter was remanded to the District Court for clarification of the order. 993 F.2d 1023 at 1026. When the school system was required to layoff teachers, it preferentially laid off white teachers first, in order to meet the goals of its affirmative action plan, and BEA submitted a grievance objection to that action. *Id*., at 1027. The city defendants sought an order clarifying that the prior hiring order required the racial preferences in layoffs, which was granted, and the BEA appealed. *Id*. The Court of Appeals held that the clarification order actually modified the hiring order, and that the modification was impermissible under the Equal Protection Clause. *Id*. at 1031.

    Here, Colson, unlike the BEA in Compton, is not a party to the relevant order (i.e., the Consent Judgment).[2] So on its face *Crumpton* – which involves an objection to the purported modification of an order by a party to that order – does not apply to Colson's application. But even assuming *arguendo* that Colson may object to the Court's order interpreting its own Consent Judgment on the sole grounds that it is misinterpreting its own Order, it is Colson who seeks modification of the Order, not the Court or the City. The Consent Judgment states that "the purpose of this Agreement is to protect the constitutional rights of the inmates confined in jails operated by the Department." Consent Judgment, at 1. The office of the Monitor was established

---

[2] The Class Definition in the Consent Judgement is "all present and future inmates confined in jails operated by the Department, except for the Elmhurst and Bellevue Prison Wards." Consent Judgment, ¶ 2. Upon information and belief, Colson is not in custody with the Department of Correction, but is incarcerated with the State. Accordingly, he is not at present a member of the plaintiff class. But even if he was deemed to be a class member forever because he was, at one time, in City custody, the Consent Judgment is a settlement with the Class, as represented by the class representatives and the appointed class counsel, and the other parties to the case. Colson is none of those. Colson may argue that if he is a non-party then he is not bound by the Consent Judgment, but even so the Monitor and his staff are bound, and the Court has the power to prevent their testimony for the reasons set forth herein.

4

by the Consent Judgment to assist the defendants with compliance with the Consent Judgment and to assist the Court and the parties with monitoring that compliance. All of the Monitor's duties are directed towards the service of those ends, and the defendants agreed to give the Monitor access to confidential and privileged information in order to serve those interests and to implement the goals of the Consent Judgment.

The purpose and content of the Consent Judgment – and a Confidentiality Agreement entered into pursuant to the Consent Judgment – confirm that the Court's Order accurately reflects the intent of the parties and the Court. "The purpose of the Monitor and his staff's use, review, and analysis of any information, documents, or records provided by the Department, including confidential or privileged information, is for the Monitor and his staff to assess compliance with the Agreement and perform their responsibilities under the Consent Judgment." Exhibit A to the Declaration of Alan H. Scheiner, Monitor's Confidentiality Agreement, ¶ 2.

As set forth in the Consent Judgment, the Monitor is "subject to the supervision and Order of the Court," and is an "agent of the Court." Consent Judgment, ¶¶ XX-3, XX-30. The Consent Judgment expressly states that "the Monitor's staff shall be subject to the same access rights and confidentiality limitations as the Monitor." *Id.*, ¶¶ XX-7; *see also* December 21, 2018 Order, ECF No. 323 (same). (In a non-sequitur, Colson acknowledges this provision but contends inexplicably that it means the opposite of what it says.) In addition, the Consent Judgment directed the Monitor to enter into an appropriate confidentiality agreement, and the Monitor did so. Pursuant to that agreement, as well as the Consent Judgment, the Monitor and his staff are prohibited from "disclosing confidential or privileged information, documents or records to any third parties except if required by an order of the Court or Paragraph 15(a) of this Agreement."

5

*Id.*, ¶ 8. "Confidential or privileged" information includes virtually any information obtained by the Monitoring Team from the City in the course of their duties. *See Id.*, ¶¶ 4-c, 5. The Confidentiality Agreement, like the Consent Judgment, also prohibits the Monitor and his staff from making public statements regarding this matter, including statements about the conduct of the defendants, absent court approval. *See Id.*, ¶ 12; Consent Judgment ¶ 27. The trial testimony regarding information obtained by the Monitor in this case would necessarily involve violations of paragraphs the Confidentiality Agreement, ¶¶ 8, 12, as well the Consent Judgment, ¶¶ 27, 28.

While the Monitor is permitted to issue reports as required by the Consent Judgment ¶ 15-b, those reports do not, under the Confidentiality Agreement, waive any other restrictions in the agreement regarding disclosures by the Monitor. Indeed, as Colson acknowledges, even the Monitor's public reports – the purported subject of the sought-after testimony – are precluded from use as evidence against the City in any unrelated matter. *Id.*, ¶ XX ¶ 21 ("The Monitor Report shall not be admissible against Defendants in any proceeding other than a proceeding relating to the enforcement of this agreement.") That prohibition would be entirely defeated if the Monitoring staff could be compelled – as Colson would do – to testify about the contents of the inadmissible Monitor's reports. Colson's argument that the information in the Monitor's report is not 'confidential' (in the generic sense) is beside the point. The Confidentiality Agreement and the Consent Judgment do not permit a litigant to obtain through testimony what is prohibited by precluding use of the reports as evidence.

Moreover, the Court's Order reflects the only common sense interpretation of the Consent Judgment. Confidentiality restrictions serve no purpose if they do not apply to all the people who would have access to confidential information. That is reflected, for example, in the well settled law applying the attorney-client privilege automatically to all agents of an attorney.

6

*See, e.g., Von Bulow v. Von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) ("We have recognized that an attorney's effectiveness depends upon his ability to rely on the assistance of various aides, be they "secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts. . . . The privilege must include all the persons who act as the attorney's agents.") (quotations and citations omitted).

The parties and the Court determined that the prohibition on testimony by the Monitor without Court consent was necessary to facilitate the Monitoring Team's unfettered access to confidential and privileged information, and for the Monitoring Team to fulfill its duties to the Court without external burdens and interference.[3] Thus, including the Monitor's staff in the prohibition on testimony is essential to achieving the purposes of that provision. And Colson's constricted reading of the agreement to exclude the Monitor's staff is irrational and would defeat the essential purposes of that provision.

Accordingly, the Court correctly interpreted the Consent Judgment and the motion for reconsideration should be denied.

C.  **The Deputy Monitor is Protected From Compelled Testimony by The Doctrine of Judicial Immunity.**

The Monitor and Monitoring Team are agents of the Court (XX-30), functioning as experts working at the direction of the Court.  As such, they are protected by judicial immunities and privileges, which preclude compelling their testimony relating to their judicial functions.  *See, e.g., Rose v. Knipel,* No. 21-CV-786 (LDH) (LB), 2022 U.S. Dist. LEXIS 68626, at *6-7 (E.D.N.Y. Apr. 12, 2022) (discussing application of judicial immunity to Judge's staff); *Henkel v. Lickman (In re Lickman)*, 304 B.R. 897, 903 (Bankr. M.D. Fla. 2004) (applying testimonial

---

[3] No one would want to work as a member of the Monitoring Team if it meant that they could be compelled to testify at the whim of a plaintiff's attorney in the numerous cases pending at any given time against the City relating to conditions at Rikers Island.

7

immunity to Judge's staff). For this reason alone, the Court may quash Colson's subpoena in order to protect its agents from a violation of judicial immunity.

**D.     The Court may disqualify the Deputy Monitor from testifying in order to protect the public interest and integrity of the judicial process.**

In addition, a federal court may exercise its inherent power to disqualify an expert from testifying about information obtained while retained in another matter, where that testimony would result in the disclosure of confidential information or would otherwise be contrary to the public interest and the integrity of the judicial process.[4] *See, e.g., In re N.Y.C. Policing During Summer 2020 Demonstrations,* 2022 U.S. Dist. LEXIS 12785, at *11 (S.D.N.Y. Jan. 24, 2022) ("Disqualification is designed to protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit.") (disqualifying police practices consultant retained by City in internal review from testifying against the City). For the reasons stated above, that is undoubtedly the case here, where compelling the Deputy Monitor's testimony would interfere with the purpose of the Consent Judgment to protect the constitutional rights of people in custody. The subpoena would also allow a litigant in another matter to exploit the retention of the Monitor by the Court and the parties to serve the interests of a non-party in an unrelated case. For all the reasons noted above, such a result would impair the ability of matters to be settled with similar arrangements for a Monitor in the future, and thus would be contrary to the public interest.

---

[4] The Monitor has also served as an expert witness on certain issues for the benefit of the parties and the Court in motion practice in this case. *See* Status Report July 3, 2024, ECF No. 742 at 3-5. Additionally, defendants fund the Monitor's activities.

8

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for reconsideration should be denied.

Dated:    New York, New York
            October 30, 2024

>                    MURIEL GOODE-TRUFANT
>                    Acting Corporation Counsel of the
>                     City of New York
>                    Attorney for Defendants
>                    100 Church Street, Room 3-177
>                    New York, New York 10007
>                    (212) 356-2344
>
>
>            By:     *Alan H. Scheiner*  /s/
>                    ALAN H. SCHEINER
>                    Senior Counsel