**OFFICE OF THE MONITOR**
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

1+1 646 895 6567 | afriedberg@tillidgroup.com

January 22, 2025

**VIA ECF**
The Honorable Chief Judge Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

Re: *Nunez, et al. v. City of New York, et al.*, 11-cv-5845 (LTS)

Dear Chief Judge Swain,

    We write to advise the Court that the *Nunez* Parties have reached agreement on an extension of a proposed Stipulation and Order Regarding 16- and 17-Year-Old Adolescent Offenders at Horizon Juvenile Center for the Court's approval. A copy of the fourth voluntary agreement between the City and the Monitor to monitor 16- and 17-year-old Adolescent Offenders at Horizon Juvenile Center was filed with the Court on October 24, 2024 as part of the Monitor's Sixth Report (dkt. 790) as Appendix C. A copy of the fourth voluntary agreement is also attached to this letter for the Court's convenience.

                    Sincerely,

                    s/ Anna E. Friedberg
                    Steve J. Martin, *Monitor*
                    Anna E. Friedberg, *Deputy Monitor*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MARK NUNEZ, et al.,

        Plaintiffs,

- against -

CITY OF NEW YORK, et al.,

        Defendants.

**11 Civ. 5845 (LTS)(JCF)**

------------------------------------------------------------ X

UNITED STATES OF AMERICA,

        Plaintiff-Intervenor,

- against -

CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF CORRECTION,

        Defendants.
------------------------------------------------------------ X

## FOURTH STIPULATION AND ORDER
## REGARDING 16- AND 17-YEAR-OLD ADOLESCENT
## OFFENDERS AT HORIZON JUVENILE CENTER

This Fourth Stipulation and Order ("Stipulation") is entered by and among the Plaintiff Class, Plaintiff the United States of America (the "United States"), and Defendants the City of New York (the "City") and the New York City Department of Correction (the "Department" or "DOC") (the City and the Department are collectively referred to herein as the "Defendants").

WHEREAS, on October 21, 2015, this Court entered a Consent Judgment (Dkt. No. 249) in this matter requiring the Defendants to take specific actions to remedy a pattern and practice of violence against incarcerated individuals, and to develop and implement new practices, policies, and procedures designed to reduce violence in the jails and ensure the safety and well-being of incarcerated individuals;

WHEREAS, on April 10, 2017, the State of New York enacted legislation (known as the "Raise the Age Law") that raised the age of criminal responsibility to 18 years of age and created a new category of offenders called "Adolescent Offenders," which are defined as 16- or 17-year-olds who are charged with a felony-level offense, *see* Criminal Procedure Law 1.20(44);

1

WHEREAS, the Raise the Age Law was implemented in stages. The new category of offenders applied to any 16-year-old youth charged on or after October 1, 2018, and any 17-year-old youth charged on or after October 1, 2019. All 16- and 17-year-old youth charged before October 1, 2018, and any 17-year-old youth charged between October 1, 2018 and September 30, 2019, were to still be processed as adults (collectively, "Pre-Raise the Age Youth");

WHEREAS, pursuant to the Raise the Age Law, all 16- and 17-year-old incarcerated youth were required to be housed in a facility not located on Rikers Island as of October 1, 2018;

WHEREAS, starting in October 2018, all Pre-Raise the Age Youth were housed at the Horizon Juvenile Center ("Horizon"), a specialized secure juvenile detention facility located in the Bronx, New York, which was at the time jointly operated by DOC and the New York City Administration for Children's Services ("ACS");

WHEREAS, during the period during which Pre-Raise the Age Youth were housed at Horizon, the Monitor appointed under the Consent Judgment monitored and reported on the extent to which Defendants complied with applicable provisions of the Consent Judgment with respect to these Pre-Raise the Age Youth housed at Horizon;

WHEREAS, as of July 26, 2020, there were no longer any Pre-Raise the Age Youth housed at Horizon but the facility continued to house Adolescent Offenders;

WHEREAS, ACS has assumed day-to-day operations of Horizon, and DOC currently does not have any role in the day-to-day management of the facility;

WHEREAS, the City asserts that ACS' approach to managing Adolescent Offenders at Horizon is premised upon a therapeutic model, whose main focus is engagement of youth in positive pro-social, therapeutic, educational and/or vocational activities; de-escalation of volatile engagements; and trusted communications with youth to support a positive forward-facing behavioral approach;

WHEREAS, the United States, the Plaintiff Class, and the City have a dispute concerning the extent to which certain provisions of the Consent Judgment should apply to Adolescent Offenders housed at Horizon given that DOC is no longer involved in the day-to-day operations of the facility and the facility no longer houses Pre-Raise the Age Youth;

WHEREAS, on or about November 11, 2020, the City voluntarily entered into an Agreement with the Monitor ("First Horizon Agreement") concerning the operation of Horizon and the management and supervision of Adolescent Offenders housed at that facility, under which the Monitor would file with the Court three public reports describing the efforts ACS had undertaken to implement the requirements of the First Horizon Agreement and assessing the extent to which ACS had complied with these requirements, applying the standard for Compliance set forth in the First Horizon Agreement;

WHEREAS, on or about November 12, 2020, the Court entered the Stipulation and Order Regarding 16- and 17-Year-Old Adolescent Offenders at Horizon Juvenile Center (Dkt. No. 364), which attached the First Horizon Agreement and specified that, during the duration of the First Horizon Agreement, the Monitor would not assess compliance with the Consent Judgment with respect to Adolescent Offenders and the Plaintiff Class and the United States would not seek judicial action to enforce the Consent Judgment with respect to Adolescent Offenders;

2

WHEREAS, on or about October 25, 2022, the Monitor filed with the Court the third and final report under the First Horizon Agreement (Dkt. No. 471, "the Third Monitor Horizon Report"), which assessed ACS' compliance with the requirements under the First Horizon Agreement for the period of January 1, 2022 through June 30, 2022;

WHEREAS, in the Third Monitor Horizon Report, the Monitor found that while ACS had demonstrated good faith efforts to improve its practice, ACS had not achieved compliance with certain requirements of the First Horizon Agreement, although progress had been made;

WHEREAS, on or about September 29, 2022, the City voluntarily entered into an Agreement with the Monitor ("Second Horizon Agreement") concerning the operation of Horizon and the management and supervision of Adolescent Offenders housed at that facility, under which the Monitor would file with the Court two public reports describing the efforts ACS had undertaken to implement the requirements of the Second Horizon Agreement and assessing the extent to which ACS had complied with these requirements, applying the standard for Compliance set forth in the Second Horizon Agreement;

WHEREAS, on or about February 3, 2023, the Court entered the Second Stipulation and Order Regarding 16- and 17-Year-Old Adolescent Offenders at Horizon Juvenile Center (Dkt. No. 503), which attached the Second Horizon Agreement and specified that, during the duration of the Second Horizon Agreement, the Monitor would not assess compliance with the Consent Judgment with respect to Adolescent Offenders and the Plaintiff Class and the United States would not seek judicial action to enforce the Consent Judgment with respect to Adolescent Offenders;

WHEREAS, on or about October 25, 2023, the Monitor filed with the Court the second and final report under the Second Horizon Agreement (Dkt. No. 587, "the Fifth Monitor Horizon Report"), which assessed ACS' compliance with the six substantive requirements under the Second Horizon Agreement for the period of January 1, 2023 through June 30, 2023;

WHEREAS, in the Fifth Monitor Horizon Report, the Monitor found that while ACS had demonstrated good faith efforts to improve its practice, ACS had not achieved compliance with certain requirements of the Second Horizon Agreement, although progress had been made;

WHEREAS, on or about October 13, 2023, the City voluntarily entered into an Agreement with the Monitor ("Third Horizon Agreement") concerning the operation of Horizon and the management and supervision of Adolescent Offenders housed at that facility, under which the Monitor would file with the Court one public report describing the efforts ACS had undertaken to implement the requirements of the Third Horizon Agreement and assessing the extent to which ACS had complied with these requirements, applying the standard for Compliance set forth in the Third Horizon Agreement;

WHEREAS, on or about January 11, 2024, the Court entered the Third Stipulation and Order Regarding 16- and 17-Year-Old Adolescent Offenders at Horizon Juvenile Center (Dkt. No. 673), which attached the Third Horizon Agreement and specified that, during the duration of the Third Horizon Agreement, the Monitor would not assess compliance with the Consent Judgment with respect to Adolescent Offenders and the Plaintiff Class and the United States would not seek judicial action to enforce the Consent Judgment with respect to Adolescent Offenders;

WHEREAS, on or about October 24, 2024, the Monitor filed with the Court a report under the Third Horizon Agreement (Dkt. No. 790, "the Sixth Monitor Horizon Report"), which assessed ACS' compliance with the four substantive requirements under the Third Horizon Agreement for the period of July 1, 2023 through June 30, 2024;

WHEREAS, in the Sixth Monitor Horizon Report, the Monitor found that while ACS had demonstrated good faith efforts to improve its practice, ACS had not achieved compliance with three of the four substantive requirements of the Third Horizon Agreement, although progress had been made;

NOW, IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel, and this Court THEREFORE ORDERS, as follows:

1. The City has voluntarily agreed to extend its agreement with the Monitor until June 30, 2025, and has entered into the attached agreement ("Fourth Horizon Agreement"), which includes certain modifications to the Third Horizon Agreement. During the term of the Fourth Horizon Agreement, the Monitor will file with the Court one public report describing the actions ACS has undertaken to implement the requirements of the Fourth Horizon Agreement and assessing ACS' good faith and the extent to which ACS has complied with these requirements, applying the standard for Compliance set forth in the Fourth Horizon Agreement. In addition, pursuant to the Fourth Horizon Agreement, ACS shall continue to consult with the Monitor and his team of experts who will, as necessary, provide technical assistance with respect to the implementation of the Fourth Horizon Agreement's requirements and the adoption of best practices in the field of juvenile justice.

2. During the duration of the Fourth Horizon Agreement, which shall end when the Monitor files his report under the Fourth Horizon Agreement, the Monitor shall not assess compliance with the Consent Judgment with respect to Adolescent Offenders and the United States shall not seek judicial action to enforce the Consent Judgment with respect to Adolescent Offenders.

3. In the event that the Monitor finds that the City and ACS have made "diligent and good faith efforts" to implement the requirements of the Fourth Horizon Agreement after giving "due consideration to the totality of the circumstances" as detailed in Paragraph 5(c) of the Fourth Horizon Agreement, and are in Compliance with the requirements set forth in Paragraphs 2(a)-(c) of the Fourth Horizon Agreement during the reporting period referenced in the Fourth Horizon Agreement (i.e., July 1, 2024 through June 30, 2025) (the "Reporting Period"), the Plaintiff Class, the United States, and the City shall file with the Court a stipulation and proposed Order stating that the Consent Judgment shall not apply to Adolescent Offenders going forward. The stipulation and proposed Order shall be filed with the Court within 30 days of the issuance of the final report filed by the Monitor.

4. In the event that the Monitor finds that the City and ACS are not in Compliance with any of the requirements of the Fourth Horizon Agreement set forth in Paragraphs 2(a)-(c) during the Reporting Period, the parties and the Monitor shall meet and confer within 30 days of the issuance of the report to discuss whether the Fourth Horizon Agreement, or portions of the Fourth Horizon Agreement, should be extended or modified, or whether

4

other steps should be taken to address areas that are not in Compliance. The parties shall make a good faith effort to reach an agreement. Nothing said by any party or counsel for any party during any and all meetings held pursuant to this Paragraph may be used by any party in subsequent litigation in this or any other lawsuit. If the parties do not reach an agreement within 45 days of the issuance of the report, the parties may petition the Court for a conference and reserve their rights to seek any relief from the Court. Nothing in this Stipulation shall be construed as a waiver of any party's right to take any position with respect to the extent to which the Consent Judgment applies to Adolescent Offenders at the Court conference or thereafter.

5. Nothing in this Stipulation shall be construed to impact the applicability of the Consent Judgment to any Plaintiff Class member who is not an Adolescent Offender.

FOR THE UNITED STATES:

DANIELLE R. SASSOON
United States Attorney for the
Southern District of New York

By: _____
JEFFREY K. POWELL
RACHAEL L. DOUD
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY  10007
Telephone: (212) 637-2706/2599
Email: Jeffrey.Powell@usdoj.gov
           Rachael.Doud@usdoj.gov

FOR PLAINTIFF CLASS:

THE LEGAL AID SOCIETY
THE PRISONERS' RIGHTS PROJECT

By: _____
MARY LYNNE WERLWAS
SOPHIA GEBRESELASSIE
KATHERINE HAAS
KAYLA SIMPSON
49 Thomas Street, 10th Floor
New York, New York 10013
Telephone: (212) 577-3530
Email: mlwerlwas@legal-aid.org
           sgebreselassie@legal-aid.org
           khaas@legal-aid.org
           ksimpson@legal-aid.org

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____
JONATHAN S. ABADY
DEBBIE GREENBERGER
SANA MAYAT
600 Fifth Avenue, 10th Floor
New York, NY  10020
Telephone:  (212) 763-5000
Email: jabady@ecbawm.com
           dgreenberger@eecbawm.com
           smayat@ecbawm.com

6

FOR DEFENDANTS CITY OF NEW YORK AND DEPARTMENT OF CORRECTION:

MURIEL GOODE-TRUFANT
Corporation Counsel for the City of New York

By: /s/ Sheryl R. Neufeld
SHERYL R. NEUFELD
100 Church Street
New York, New York  10007
Telephone: (212) 356-2207
Email: sneufeld@law.nyc.gov

SO ORDERED this _____ day of _____, 2025


_____
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

**Fourth Agreement with Monitoring Team Panel
to Monitor 16- and 17-Year-Old Adolescent Offenders at Horizon Juvenile Center**

This Agreement ("Agreement") is voluntarily entered into by the Monitor appointed in the *Nunez* Consent Decree (11-cv-5845, docket entry 249) as defined in § XX, ¶ 1 & 6 (the "Monitoring Team Panel" or "Monitor"), the City of New York (the "City"), and the Administration of Children Services ("ACS"), for the period from July 1, 2024 to June 30, 2025. This Agreement concerns the management and supervision of Adolescent Offenders, as defined under Criminal Procedure Law § 1.20(44), who are or will be housed at the Horizon Juvenile Center ("AO Youth"), and the operation of that facility.

(1) ACS will make deliberate and good faith efforts to improve its practices regarding the enumerated provisions in ¶ 2 below.

(2) ACS agrees to the following:

   a. AO Youth shall be supervised at all times in a manner that protects them from an unreasonable risk of harm. Staff shall intervene in a timely manner to prevent youth-on-youth fights and assaults, and to de-escalate youth-on-youth confrontations, as soon as it is practicable and reasonably safe to do so.

   b. ACS shall conduct timely and thorough reviews of Physical Restraints to determine whether the intervention was appropriate and whether ACS staff complied with the ACS Physical Restraint Policies.

   c. ACS shall maintain systems, policies, and procedures for AO Youth that: (i) reward and incentivize positive conduct and (ii) sanction negative conduct. The application of these procedures shall be individualized, consistent with any treatment needs for AO Youth and shall not compromise the safety of other AO Youth or ACS staff.

(3) ACS agrees, in the spirit of collaboration and in recognition of the deep mutual commitment to improving program and practice goals, to continue to consult with the Monitoring Team Panel regarding the areas set forth above in Paragraphs 2(a)-(c). The Monitoring Team Panel may, as necessary, meet on a quarterly basis with the ACS Commissioner and relevant associated senior staff, to discuss the Monitoring Team Panel's observations and assessment of ACS program and practice at Horizon Juvenile Center, improvements made or not, and to relate any other information that the Monitoring Team Panel deems relevant and appropriate for enhancing ACS' practice at Horizon Juvenile Center.

(4) During the period of this Agreement, the Monitoring Team Panel may, as necessary, provide technical assistance to ACS regarding the terms of this Agreement.

(5) The Monitor will assess compliance with the requirements set forth above in Paragraphs 2(a)-(c). For purposes of this Agreement, the Monitor shall find ACS to be in "Compliance" with a provision if the Monitor finds that ACS has consistently complied with the relevant requirement and any violations of the relevant requirement are only minor or occasional and not systemic, material, or recurring. The Monitor will file one public

report ("Monitor's Report") on the docket 11-cv-5845 (LTS) (S.D.N.Y.) assessing ACS' compliance with these requirements during the reporting period.

- a. There shall be one reporting period during the term of this Agreement. The reporting period shall cover July 1, 2024 to June 30, 2025.

- b. The Monitor shall issue a report within 90 business days following the reporting period. Within 45 days from the end of the reporting period, detailed in subdivision (a) of this Section, ACS will share a Written Compliance Assessment, followed by a presentation/meeting with the Monitoring Team describing ACS efforts, successes and challenges in meeting the expectations detailed in Paragraphs 2(a-c) of this Agreement. The Monitor's Report shall be provided to the City and ACS in draft form for comment at least 30 business days prior to its issuance. The City and ACS shall provide the Monitor with their comments, if any, within 15 business days after receipt of the draft Monitor's Report. The Monitor shall consider the comments, and make any changes deemed appropriate, before issuing the final report. The Monitor's Report shall be written with due regard for the privacy interests of individual AO Youth and ACS staff members; federal, state and local laws regarding the privacy of such information; and the interest of ACS in protecting against the disclosure of non-public or privileged information. Consistent with such interests and laws, the Monitor shall redact individual-identifying information from the Monitor's Report and any documents submitted with that report, and shall give due consideration to ACS's requests to edit or redact any other information. The Monitor shall provide the final report and redline comparing the final report with the draft Monitor's Report to ACS 5 business days prior to issuing the final report. To the extent the Monitor declines to make the edits or redactions requested by ACS, ACS can append any comments to the Monitor's Report that is submitted by providing such appendix to the Monitor by noon the day the final report is to be issued.

- c. The Monitor's Report shall provide relevant and appropriate context for its findings and give due consideration to the totality of the circumstances. Further, as appropriate and relevant, the Monitor's Report shall describe: (1) ACS' diligent and good faith efforts to implement ¶ 2 (a)-(c) of this Agreement, (2) generally accepted practice for 16- and 17-year old youth as it relates to this Agreement, and (3) any challenges or obstacles related to implementing ¶ 2 (a)-(c) of this Agreement.

- d. ACS will be afforded the opportunity to append a response to the final Monitor's Report filed with the Court.

(6) In furtherance of this Agreement, the City shall bear all reasonable fees, costs, and expenses of the Monitor, including payments to the Monitor's staff as required under the *Nunez* Consent Judgment § XX, ¶ 5 and consistent with the Monitoring Team Panel's payment structure with the City that is in place for the *Nunez* Consent Judgment.

(7) ACS will provide the Monitoring Team Panel reasonable and timely access to relevant information and documents in order to perform the responsibilities of this Agreement. The January 7, 2021 confidentiality agreement between the Monitoring Team Panel and ACS, which delineates the acquisition and appropriate use by the Monitoring Team Panel of confidential information, prohibitions on secondary dissemination, record retention during the period of this Agreement, and destruction of records provided to the Monitoring Team Panel at the end of the period of this Agreement, remains in effect.

Date: September 23, 2024

**FOR THE CITY OF NEW YORK AND
THE ADMINISTRATION FOR CHILDREN'S SERVICES:**
MURIEL GOODE-TRUFANT
Acting Corporation Counsel for the City of New York

_____
Sheryl Neufeld


**FOR THE MONITOR:**

s/ Steve J. Martin_____
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*

4