

**THE COUNCIL
OF
THE CITY OF NEW YORK
OFFICE OF THE GENERAL COUNSEL**
250 BROADWAY, 15TH FLOOR
NEW YORK, N.Y. 10007

JASON ADOLFO OTAÑO
GENERAL COUNSEL

TEL: (212) 788-6886
jotano@council.nyc.gov

**BY ECF**
Hon. Laura T. Swain
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

February 10, 2025

Re: *Nunez v. City of New York*, 11 Civ. 05845

Dear Chief Judge Swain:

As the General Counsel of the New York City Council, I write to highlight the Council's powers that may be implicated by a receivership order as the Court considers the parties' receivership proposals. Although the parties' receivership proposals differ greatly, neither side proposes a receivership that would meaningfully abridge the Council's City Charter-mandated legislative, budgetary, or oversight authority. As such, we request that if the Court were to impose a receivership that it tailor its order to preserve and respect the Council's core powers, thus leaving no room for confusion or doubt.

*Legislative Powers*

The Council is the City's sole legislative body charged with issuing local laws for the preservation of the public health, comfort, peace and prosperity of the City and its inhabitants. N.Y.C. Charter § 28. Pursuant to the City Charter, the Council has adopted a number of local laws that seek to rectify many systemic problems within our jails. For example, the Council has enacted local laws that require programing and education be provided in jail (Local Law 170 of 2017), set standards for bail payment processing (Local Law 123 of 2017), and require that the Department of Correction ("DOC") offer adequate discharge planning to ease the transition back into the community for people in custody (Local Law 167 of 2017).

The Council has an interest in ensuring that any future receiver enforce our local laws. Plaintiffs' proposed receivership order appropriately recognizes that the receiver must follow all local laws unless the receiver "determines that those laws … impede the Receiver from carrying out their duties" and then the receiver must "petition the Court to waive" such legal requirements. Dkt. No. 811-11, Proposed Order at § IX.C; *see* 18 U.S.C. § 3626(a)(1)(B) (local law may be suspended only if such suspension is necessary to protect plaintiffs' constitutional rights).

A local law of special importance to any future receiver is Local Law 16 of 2021, which permanently closes the detention facilities on Rikers Island and moves the City into a borough-based jail system by 2027. The Council shares the Court's grave concerns regarding the danger posed to the people who live and work at Rikers Island; and we are alarmed, but not surprised, that rates of use of force, injuries to people in custody, slashings and stabbings, fights, self-harm, and assaults on staff have all risen since the Monitor began tracking these metrics in 2016. Although it is crucial to reduce violence while Rikers remains open, we must not lose sight of the transformational change to permanently improve safety in city jails and our city that will be possible with the shuttering of the Rikers jails.

**We request that if a receiver is appointed, the receiver's powers and goals should all align with—and further—the legally-mandated closure of Rikers.** In particular, we urge that the Court select a receiver who is capable of both addressing the urgent needs of people in custody *and* building more effective practices and systems that can be transferred to the new borough-based jails. The dual purpose of the receiver's work will also be required by the City Comptroller's directive that mandates that expenditures related to the construction and reconstruction of physical infrastructure within the capital budget are required to have a minimum useful life of at least five years. *See* Office of the Comptroller, Directive # 10: Changes to the Capital Projects Fund, June 2019, § 3.3. Since the closure date for Rikers Island is less than five years away, no capital projects currently meet this requirement unless they will be utilized after the jail complex closes.

*Oversight, Investigative, and Budgeting Duties*

The City Charter also gives the Council broad oversight, investigative, and budgeting responsibilities. N.Y.C. Charter §§ 29, 236, 247, 249, 253, 254. Among other things, the City Charter obligates the Council to:

- review on a regular and continuous basis the activities of the agencies of the city, including their service goals and performance and management efficiency;
- to vote to adopt the expense, revenue, and capital budgets of City agencies;
- to maintain a balanced budget; and
- when changing conditions require modification of a previously-adopted budget, to consider proposed modifications submitted by the executive branch to the Council.[1]

Plaintiffs' proposal properly preserves the Council's responsibilities in these areas. As to oversight and investigations, the plaintiffs appropriately propose that a receiver, if appointed, would be permitted to "testify in public hearings or other proceedings before the New York City

---

[1] The City Charter requires that when an update to the financial plan would necessitate a budget modification subject to Council approval, the mayor must submit a request to the Council within 30 days of issuing the updated plan. Budget modifications may be initiated under two circumstances: (1) the mayor must submit a modification to the Council when the mayor seeks to transfer appropriations between agencies, or between units of appropriation if the amount is the greater of 5 percent of the adopted appropriation or $50,000; and (2) the mayor must also submit a budget modification to the Council in the case of new or previously unappropriated revenue.

Council, the Board of Correction, or the New York State legislature." Docket No. 811-11, Proposed Order at § IX.E. That proposal soundly reflects that such hearings are an important mechanism for providing the public with current information regarding agency operations, ensuring that agencies comply with local laws, and gathering information about potential resource needs and policy reforms. If a receiver should assume certain management responsibilities of the City jails, the receiver, not the DOC Commissioner, would have access to critical information; and the Council would need to be able to request that a receiver or the receiver's staff testify at Council hearings in the areas where they have displaced the DOC in jail management.

As to the Council's budgeting responsibilities, the plaintiffs' proposal similarly preserves the Council's core, Charter-mandated role. The Council must adopt a budget each year, which includes negotiation, review, modification, and oversight of the City's revenues and expenditures. The City's budget is the result of careful planning and reflects considered policy choices by the executive and legislative branches of government. Because State Law requires that New York City adopt a balanced budget each fiscal year, N.Y. Unconsol. Laws §§ 5401 *et seq.* and N.Y. Gen. Mun. Law § 25, additional funds allocated to one agency—or entity, in the case of a court-mandated receiver—may require reductions elsewhere in order to provide the additional funds necessary for such spending increases.

Consistent with these requirements, Plaintiffs' proposal appropriately envisions that reasonable notice be provided to the Council regarding any proposed budget modifications related to expenditures by the receiver. Docket No. 811-11, Proposed Order at § IX.B. Such notice will ensure that that the Council is timely informed and may negotiate these important matters that the Council must vote to approve. Furthermore, plaintiffs' proposed framework will increase buy-in, reduce disputes, and avoid the sorts of delays that have arisen when other jurisdictions' correctional receivers have required government expenditures. *E.g.*, *Coleman v. Brown*, 952 F. Supp. 2d 901, 934 (E.D. Cal. 2013).

***

As previously stated, we share the Court's concerns over inhumane conditions in our City jails that have persisted for decades. It is our hope that the remedies imposed to cure the Department of Correction's contempt in the *Nunez* case will serve to build institutional capacity and act as a bridge towards finally closing Rikers Island. If the remedy to cure the unconstitutional conditions in the jails includes the appointment of a receiver, it is imperative that the receiver be independent of the mayor and mayoral administration. Any appointed receiver, if deemed necessary, certainly should not be from the DOC leadership that has failed to address the conditions that warrant the intervention.

Case 1:11-cv-05845-LTS   Document 825   Filed 02/10/25   Page 4 of 4

4

Thank you for your consideration of these requests.

Sincerely,

Jason Otaño