

49 Thomas Street, 10th Fl
New York, NY 10013
(212) 577-3300
www.legalaidnyc.org

Alan Levine
*President*

Twyla Carter
*Attorney-in-Chief*
*Chief Executive Officer*

Justine M. Luongo
*Chief Attorney*
Criminal Practice

Mary Lynne Werlwas
*Director*
Prisoners' Rights Project

May 5, 2025

**Via ECF**

Honorable Laura Taylor Swain
United States District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Nunez v. City of New York,* 11-CV-5845 (LTS)

Dear Judge Swain:

Counsel for the Plaintiff Class and the United States ("Government") write in response to Defendants' April 25, 2025 Status Report Letter (Dkt. 842) and the declaration submitted by Gary Raney (Dkt. 842-1) (hereinafter "Raney Decl.").

Based on a two-and-a-half-week visit to Rikers Island, a "preliminary review" of unspecified documents, and meetings with unspecified New York City Department of Correction ("DOC") employees (Raney Decl. at ¶¶ 4-5, 14), Mr. Raney opines that the Court should not appoint an outside Receiver, as the Plaintiff Class and the Government have urged. Instead, Mr. Raney contends the Court should adopt Defendants' Compliance Director proposal, under which the current DOC leadership structure would remain largely unchanged despite years of noncompliance with the Consent Decree and the Court's remedial orders. Although we do not dispute Mr. Raney's corrections expertise, the Court should give little weight to his conclusory opinion on the appropriate relief necessary to remedy Defendants' contempt and widespread noncompliance with this Court's orders in this case.

Mr. Raney undoubtedly has helpful insights to offer based on his experience in other jurisdictions. Indeed, we submitted a declaration from Mr. Raney in support of our motion for the appointment of a Receiver in which he stated that his appointment as an Independent Compliance Director in the Miami-Dade County case "accelerated the pace of reforms" resulting in "sustained compliance" after the County had "struggled for years to reach and maintain substantial compliance" for over a decade. Dkt. 718-22 at ¶¶ 2, 7, 8. However, given Mr. Raney's limited knowledge of and familiarity with DOC and the City's jail system, he simply is not well-positioned and lacks a sufficient basis to opine that an outside Receiver is unnecessary given the record in this case. Moreover, Mr. Raney's declaration fails to grapple with the institutional, bureaucratic, political, and structural barriers that have stymied prior reform efforts over the last several decades. Nor does he explain why he believes

**Justice in Every Borough.**

the current Commissioner will be able to overcome these barriers under the remedial framework Defendants propose.

DOC retained Mr. Raney in March as a consultant "to assess its operations to identify system deficiencies or opportunities for improving correctional practices and policies, in furtherance of improving the safety and security of persons in custody (PIC) and staff." Raney Decl. ¶ 3. He is the latest in a long line of consultants retained by DOC during the life of the Consent Decree. Consistent with Mr. Raney's consulting mandate, his declaration details some of DOC's continuing failures and discusses potential solutions, such as technological upgrades, better written and more accessible policies, and improved supervision of corrections officers. As set forth below, the Monitor has detailed these or similar concerns and recommendations throughout the case, and yet the City has failed to fix them. Mr. Raney's ultimate opinion—that the Court should leave the current management structure in place and not appoint an external Receiver—is unsupported by his analysis and ignores the inevitable conclusion of the parties' multiple rounds of briefing and the Court's November 27, 2024, opinion: that an outside Receiver is necessary to achieve compliance and halt the ongoing constitutional violations at Rikers Island.

Mr. Raney does not provide the basis for his opinion. He does not connect his identification of problems and solutions to his far broader conclusion about the appropriate remedy for this Court's contempt finding. He provides little analysis to support his overarching opinion about the remedy.

Mr. Raney's opinion seems to flow, *ipse dixit*, from his view—again, without basis in the facts he details in his declaration—that "[a]ny change in leadership would likely once again destabilize the organization and delay substantial compliance." Raney Decl. ¶ 18. Mr. Raney appears to be under the misimpression that an outside Receiver would replace the current Commissioner. That is not the case. He ignores that the Government and Plaintiff Proposal envisions the Receiver working "collaboratively" with the Commissioner, who "will continue to be involved in DOC operations" including in "overseeing productive initiatives that the Receiver agrees will enhance safety in the jails and reduce the use of excessive and unnecessary force." Dkt. 811-11 at 1, 7-8.

Nor does Mr. Raney address, let alone grapple with, the many failings of the City's proposal that we have detailed in our briefing, including that the City's proposal (a) does little more than preserve the status quo, Dkt. 811-11 at 2, (b) creates a false appearance that the Commissioner will be independent when in reality, she will continue to report to the Mayor, Dkt. 811-11 at 2; Dkt. 820 at 4, and (c) fails to articulate any specific concrete actions that the Commissioner will be able to take that she cannot take now, Dkt. 820 at 2. Indeed, Mr. Raney assures the Court that the Commissioner "is best placed to navigate the existing regulatory environment and seek relief from it where needed," Raney Decl. ¶ 10, perhaps without realizing that the current leadership structure has a clear track record of failing to remove well-documented barriers that exist *now*. *See, e.g.*, Dkt. 803 at 33, n. 32 (Court noting that "there is no indication that there has been any effort to address [labor

**Justice in Every Borough.**

agreement barriers to staff deployment requirements] with the relevant unions or seek a waiver of relevant legal requirements").

The bulk of Mr. Raney's declaration identifies some of the long-standing problems that led to this Court's contempt finding without offering new facts or insights on a concrete path forward. Notably, the declaration is silent on critical areas of dysfunction such as staff deployment deficiencies. Dkt. 706, Monitor's Apr. 18, 2024 Rep. at 17 (urging that "staffing is the essential element to reform) (emphasis in original).

The issues Mr. Raney identifies have almost all been previously identified by the Monitor, and yet Defendants have not fixed them. As just a few examples:

- Mr. Raney opines that aging facilities pose security and safety issues, an issue identified by the Monitor in 2022, prior to entry of the Action Plan. Raney Decl. ¶ 11; Dkt. 454, Letter from Monitor to the Court, at 1 (noting the "decrepit physical plant"); see also Dkt. 706, Monitor's Apr. 18, 2024 Rep. at 258 (expressing concern that "[t]oo often, the Department expends significant time and money to renovate housing units, only to have them deteriorate shortly thereafter" and recommending an adequate "protocol for regular physical plant inspections and ongoing maintenance.").

- Mr. Raney opines that officers should inspect their housing units regularly. Raney Decl. ¶ 12. The Monitor identified the need for officers to regularly tour their assigned housing areas and address any issues, a requirement that became a court-ordered provision of the Action Plan in 2022. Dkt. 465, Action Plan at § A(1)(d). The Court found Defendants in contempt of the requirement to conduct regular tours in November 2024. Dkt. 803 at 23, 25-26.

- Mr. Raney opines that DOC should move away from handwritten and non-centralized record-keeping and embrace updated technology—an issue identified by the Monitor for years. Raney Decl. ¶ 13 (Technology at i-iii); see Dkt. 360 at 174 (describing inefficiencies of manual spreadsheets to track investigation functions); Dkt. 368 at 300 (noting issues with a manual system to ensure classification levels matched housing); Dkt. 517 at 17 (describing the need for non-paper-based, centralized staff assignment systems). Mr. Raney refers to current "projects" to address "these technology issues relatively quickly," including the development of a comprehensive Incident Reporting System and a system for scanning the movement of people in custody within facilities, perhaps not realizing that both of those ideas have existed in some form during the pendency of this case. Raney Decl. ¶¶ 13 (Technology at iii); see Dkt. 295 at 68, n.30 (describing a "wristband pilot" in which people in custody were scanned upon entry and exit of each location); Dkt. 582 at 2 (October 2023 order requiring Defendants to "immediately develop and implement" an improved incident reporting system).

**Justice in Every Borough.**

Page 4

- Mr. Raney opines that "[i]mproving supervision is critical to [DOC's] success," and "[s]upervisory staff could benefit from additional training and mentoring to improve their abilities." Raney Decl. ¶ 13 (Supervision, at i-iii). The Monitor has been sounding the alarm about this serious problem for years, and has called for, among other things, additional training and mentoring. *See* Dkt. 368 at 9-10, 24; Dkt. 431 at 11-12; Dkt. 706 at 13-15, 68. The Court found Defendants in contempt of provisions requiring improvements in staff supervision. Dkt. 803 at 26-31.

- Mr. Raney opines that "a myriad of safety and security concerns in the NYCDOC, including unsecured doors, contraband, fights, PIC assaults on staff, use of force practices, and others…are among the most important matters to address." Raney Decl. at ¶ 13 (Safety and Security at i). Again, these are the same deficiencies that the Monitor has repeatedly identified for years, and which led to the Court's contempt findings. Mr. Raney also notes that as part of his consulting role he "will be developing a security plan that will be shared with the Commissioner and the Monitor." Raney Decl. ¶ 13 (Safety and Security at vi). Of course, DOC has been subject to multiple Court orders requiring it to develop and implement such a plan to redress the failures in security and basic correctional practices but has failed to comply.

Many of the actions recommended by Mr. Raney would likely be helpful—indeed, many of them mirror the Monitor's recommendations, *see supra*. What Mr. Raney's declaration does not do is address the reasons why Defendants have failed to implement these common-sense recommendations for years, including during this Commissioner's tenure: the deeply entrenched barriers to reform that have existed in this agency for the pendency of the case. Inconsistent leadership is but one of them. And as the record in this case repeatedly demonstrates, identifying problems and potential solutions for remedying the violence in the City jails is not enough, which is why Plaintiffs and the Government seek a Receiver. The Court should grant our motion seeking the appointment of an outside, independent Receiver to take the necessary steps to finally make the City jails safe and bring the Defendants into compliance with this Court's orders.

**Justice in Every Borough.**

|  |  |
|---|---|
| THE LEGAL AID SOCIETY<br>PRISONERS' RIGHTS PROJECT<br><br>By:   /s/<br>Mary Lynne Werlwas<br>Kayla Simpson<br>Katherine Haas<br>Sophia Gebreselassie<br>49 Thomas Street, 10th Floor<br>New York, New York 10013<br>(212) 577-3530 | Respectfully submitted,<br><br>JAY CLAYTON<br>United States Attorney for the<br>Southern District of New York<br><br>By:   /s/<br>JEFFREY K. POWELL<br>RACHAEL L. DOUD<br>Assistant United States Attorneys<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007<br>Tel.: (212) 637-2800<br><br>*Counsel for the United States* |
| EMERY CELLI BRINCKERHOFF<br>ABADY WARD & MAAZEL LLP<br><br>By:   /s/<br>Jonathan Abady<br>Debra L. Greenberger<br>Katherine Rosenfeld<br>Vasudha Talla<br>Sana F. Mayat<br>1 Rockefeller Plaza, 8th Floor<br>New York, New York 10020<br>(212) 763-5000<br><br>*Counsel for the Plaintiff Class* |  |

**Justice in Every Borough.**