MANDATE

Case: 24-3055, 06/20/2025, DktEntry: 71.1, Page 1 of 7
Case 1:11-cv-05845-LTS    Document 862    Filed 06/20/25    Page 1 of 7

24-3055-pr
*Nunez v. City of New York*

1:11-cv-05845-LTS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jun 20, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of April, two thousand twenty-five.

PRESENT:
        JOHN M. WALKER, JR.,
        RICHARD C. WESLEY,
        JOSEPH F. BIANCO,
            *Circuit Judges*.

_____

MARK NUNEZ, RODNEY BRYE,
JOSE DEGROS, SHAMEIK SMALLWOOD,
CLIFFORD SEWELL, TRAVIS WOODS,
SONNY ORTIZ, CHRISTOPHER GRAHAM,
AKA UGG, LESLIE PICKERING, KEITH BACOTE,
RALPH NUNEZ, OSCARS SANDERS,

            *Plaintiffs*,

RONALD COLSON,

            *Interested Party-Appellant*,

        v.                      24-3055-pr

CITY OF NEW YORK,

            *Defendant-Appellee*,

NEW YORK CITY DEPARTMENT OF
CORRECTIONS,

                *Defendant*.

| | |
|---|---|
| FOR INTERESTED PARTY-APPELLANT: | GLENN GREENBERG, Mound Cotton Wollan & Greengrass LLP, New York, New York. |
| FOR DEFENDANT-APPELLEE: | LAUREN L. O'BRIEN (Devin Slack, *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, New York. |

       Appeal from an order of the United States District Court for the Southern District of New York (Laura Taylor Swain, *Chief Judge*).

       **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED**.

       Interested Party-Appellant Ronald Colson appeals from the district court's order, entered on October 15, 2024 (the "Order"), interpreting the scope of a consent judgment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to dismiss for lack of appellate jurisdiction.

       In 2011, inmates in the custody of the New York City Department of Corrections ("DOC") brought a class action in the Southern District of New York against the City of New York (the "City") for, among other alleged violations, the pervasive use of excessive force in its correctional facilities. *See* Second Amended Complaint, *Nunez v. N.Y.C. Dep't of Corr.*, No. 11-cv-5845 (LTS) (S.D.N.Y. Sept. 4, 2012) ("*Nunez*"), ECF No. 34. In October 2015, Chief Judge Laura Taylor Swain approved and so-ordered the parties' Consent Judgment Agreement (the "Consent Judgment"). As relevant to this appeal, Section XX of the Consent Judgment established a

monitorship to assess DOC's compliance with the terms of the Consent Judgment and to issue periodic reports. Under that section, "[t]he Parties agree[d] that Steve J. Martin w[ould] serve as the Monitor," and, as the Monitor, he was given the ability to "hire or consult with such additional qualified staff as is reasonably necessary to fulfill his duties pursuant to [the Consent Judgment]." App'x at 187, ¶¶ 1, 5. Section XX also made clear that "[t]he Monitor's staff shall be subject to the same access rights and confidentiality limitations as the Monitor." *Id.* ¶ 7. Section XX then went on to specify that the "Monitor Report[s] shall not be admissible against [the City] in any proceeding other than a proceeding relating to the enforcement of [the Consent Judgment]," *id.* at 191, ¶ 21, and that "[t]he Monitor shall not testify . . . regarding any matter or subject that he may have learned of as a result of his performance . . . without the Court's authorization," *id.* at 192, ¶ 28.

In 2018, independent of the class action, Colson, an inmate in the custody of DOC, filed a complaint against the City and individual DOC officers for excessive force, the deprivation of basic human needs, and violations of due process. *See* Complaint, *Colson v. Mingo*, No. 18-cv-2765 (JGLC) (S.D.N.Y. Mar. 23, 2018) ("*Colson*"), ECF No. 2. To support his claims of municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), Colson sought to rely on the testimony of Anna E. Friedberg, the deputy monitor for the monitorship established by the *Nunez* Consent Judgment. *See* Oct. 15, 2024 Letter, *Colson*, ECF No. 211. However, the deputy monitor took the position that she was not permitted to testify without authorization from Chief Judge Swain in *Nunez*, citing paragraph 28 of Section XX of the Consent Judgment. *See* Oct. 15, 2024 Letter, Ex. 2, *Colson*, ECF No. 211-2. In response, Colson filed a letter in *Nunez*, as an interested party, explaining to Chief Judge Swain

3

why he believed that the Consent Judgment did not bar the deputy monitor from testifying in *Colson*. That same day, Chief Judge Swain issued the Order, in which she stated, "[t]o avoid any doubt regarding the interpretation of the Consent Judgment, the Court hereby clarifies that all of the restrictions on the Monitor that are outlined in the Consent Judgment (including, but not limited to, section XX, paragraph 28 thereof) also bind the Deputy Monitor and the Monitoring Team staff," and declined to authorize the deputy monitor to testify in *Colson*. Special App'x at 1. Chief Judge Swain directed the City to file a copy of the Order on the *Colson* docket, *id.*, which it did, Oct. 16, 2024 Letter, Ex. A, *Colson*, ECF No. 213-1.

Colson subsequently moved for reconsideration, which Chief Judge Swain denied, explaining:

> The Consent Judgment explicitly provides that "[t]he Monitor's staff shall be subject to the same access rights and confidentiality limitations as the Monitor." (Consent Judgment § XX, ¶ 7.) One of the "confidentiality limitations" provided for in the Consent Judgment is: "The Monitor shall not . . . testify regarding any matter or subject that he may have learned of as a result of his performance under this Agreement." (Id. § XX, ¶ 28.) Mr. Colson's interpretation of the Consent Judgment would, in effect, read out this provision of the Consent Judgment, which was "entered into by parties to a case after careful negotiation [] produced agreement on their precise terms." As courts have routinely acknowledged in other contexts, confidentiality restrictions would have little use if they do not apply to everyone who has access to confidential information. Mr. Colson's argument that the Court's order "expand[ed] the restrictions pertaining to the 'Monitor'" in the Consent Judgment (Colson Mem. at 2), in other words, merely contradicts the Court's interpretation of the Consent Judgment.

*Nunez v. City of New York*, No. 11-cv-5845 (LTS), 2024 WL 4766911, at *2 (S.D.N.Y. Nov. 13, 2024) (internal citations omitted). Colson then appealed from Chief Judge Swain's Order.[1]

---

[1] While this appeal was pending, in *Colson*, Judge Jessica G. L. Clarke granted summary judgment in favor of the City on Colson's *Monell* claims, but denied the City's motion with respect to other claims against the individual defendants. *See Colson v. Mingo*, No. 18-cv-2765 (JGLC), 2025 WL 218520, *18 (S.D.N.Y. Jan. 16, 2025). After a jury trial on Colson's remaining claims, a jury returned a verdict in favor of the individual defendants. *Colson*, ECF No. 301. As a result, the City argues that the sole issue in this appeal

4

I.     28 U.S.C. § 1291

Colson first argues that we have jurisdiction under 28 U.S.C. § 1291 to review the Order because it constitutes a final decision. We disagree.

Section 1291 provides us with jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. Because there is "no self-enforcing formula defining when a judgment is final," "finality is to be given a practical rather than a technical construction." *Amara v. Cigna Corp.*, 53 F.4th 241, 248 (2d Cir. 2022) (alteration adopted) (internal quotation marks and citations omitted). In making this practical determination, we are guided by the "the historic federal policy against piecemeal appeals." *In re Tronox Inc.*, 855 F.3d 84, 97 (2d Cir. 2017) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

The Order interpreting the Consent Judgment is not a final decision for purposes of establishing appellate jurisdiction under Section 1291. As we have previously explained in the final injunction context, "[i]f § 1291 required us to entertain appeals every time a district court interpreted or issued an order enforcing a final injunction without more, we would risk being besieged by successive appeals in injunctive proceedings." *Id.* (internal quotation marks and citation omitted). Moreover, "§ 1292(a)(1)—which provides for immediate appeal of certain injunction-related orders, but not interpretive or enforcement orders—would be rendered, at least partially, superfluous." *Id.* Those practical considerations apply with equal force to the district court's interpretation of a consent judgment, and Colson fails to point us to any precedent that

---

of whether the deputy monitor may testify in *Colson* is now moot. *See* Appellee's 28(j) Letter, Apr. 14, 2025. However, because, as discussed below, we conclude that we lack jurisdiction over this appeal, we need not consider the City's argument that this appeal is moot. *See Lugo v. City of Troy*, 114 F.4th 80, 86 n.1 (2d Cir. 2024) ("Mootness is jurisdictional" and we "'can address jurisdictional issues in any order we choose.'" (quoting *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023))).

counsels otherwise. In short, under these particular circumstances, we conclude that this interpretive order is not a final order under Section 1291.

## II. Collateral Order Doctrine

Next, Colson contends that the Order can be appealed under the collateral order doctrine. We are unpersuaded.

Our appellate jurisdiction under the collateral order doctrine is limited to rulings that "(1) are conclusive; (2) resolve important questions separate from the merits; and (3) are effectively unreviewable on appeal from the final judgment in the underlying action." *Belya v. Kapral*, 45 F.4th 621, 629 (2d Cir. 2022) (internal quotation marks and citation omitted). We have emphasized that only a "narrow and selective" class of orders fall under the collateral order doctrine. *Id.*

Here, the challenged Order is not part of that narrow and selective class because it is reviewable after the final judgment is entered in the *Colson* proceeding. A copy of the Order was docketed in *Colson* at the direction of Chief Judge Swain. Oct. 16, 2024 Letter, Ex. A, *Colson*, ECF No. 212-1. Relying on that Order, Judge Clarke declined to consider what the deputy monitor could have testified about, and granted summary judgment in favor of the City on Colson's *Monell* claim. *See Colson*, 2025 WL 218520, at *16, *18. Under these circumstances, a future panel of this Court may review Chief Judge Swain's Order "at the same time as the appeal from the judgment in the underlying action [*i.e.*, *Colson*]." *Barrick Grp., Inc. v. Mosse*, 849 F.2d 70, 73 (2d Cir. 1988). In other words, "on an appeal from a final judgment" in *Colson*, "we can review [the Order] and direct [Judge Clarke] to allow" for the testimony of the deputy monitor, if we determine that Chief Judge Swain's interpretation of the Consent Judgment, as relied on by Judge

6

Clarke, was mistaken, and that mistaken interpretation affected the disposition of Colson's *Monell* claim. *Id.* at 74.

### III.    28 U.S.C. § 1292(a)(1)

Finally, Colson argues that we have appellate jurisdiction under 28 U.S.C. § 1292(a)(1) because the Order modifies the Consent Judgment. Again, we are unpersuaded.

Section 1292(a)(1) grants us jurisdiction to review "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). However, "orders merely clarifying or interpreting injunctions do not create appellate jurisdiction." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024). After careful consideration, we conclude that Chief Judge Swain's Order merely interpreted the plain text of the Consent Judgment. We therefore lack jurisdiction under Section 1292(a)(1) to review that Order.

*            *            *

We have considered Colson's remaining arguments and conclude that they are without merit. Accordingly, we **DISMISS** the appeal for lack of appellate jurisdiction.

FOR THE COURT:<br>Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit