# EXHIBIT A

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | HON. JEFFREY H. PEARLMAN | PART | 44M |
|---|---|---|---|
| | Justice | | |

-----------------------------------------------------------------X

THE COUNCIL OF THE CITY OF NEW YORK, THE NEW YORK CITY PUBLIC ADVOCATE,

Petitioner,

- v -

MAYOR ERIC ADAMS,

Respondent.

-----------------------------------------------------------------X

| INDEX NO. | 161499/2024 |
|---|---|
| MOTION DATE | 12/09/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 9, 11, 21, 27, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53
were read on this motion to/for         ARTICLE 78 (BODY OR OFFICER)         .

In this Article 78 action, Petitioners, the Council of the City of New York and the New York City Public Advocate ("Petitioners") challenge Respondent, Mayor Eric Adams ("Respondent," "Mayor Adams," "the Mayor"), who used his emergency powers to suspend portions of Local Law 42 ("the Ban," "the Solitary Ban," "LL 42"), a ban on solitary confinement in city jails, in anticipation of its effective date. When a party makes an Article 78 motion, "judicial review is limited to whether the determination was irrational, arbitrary and capricious or contrary to law." *Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off.*, 33 NY3d 131, 135. Article 78 of the CPLR allows a challenge to state administrative law where "a determination was... as arbitrary and capricious or an abuse of discretion." CPLR 7803(3). "Administrative action is irrational or arbitrary and capricious if 'it is taken without sound basis in reason or regard to the facts." *Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off.*, 33 NY3d 131, 135, quoting *Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 (2010). "If a determination is

161499/2024   THE COUNCIL OF THE CITY OF NEW YORK ET AL vs. MAYOR ERIC ADAMS
Motion No. 001

Page 1 of 6

1 of 6

rational it must be sustained even if … another result would also have been rational." *Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off.*, 33 NY3d at 135. Further, the determination must be sustained "even if the court concludes that it would have reached a different result than the one reached by the agency." *Matter of Peckham v. Calogero*, 12 N.Y.3d 424, 431 (citing *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222). The Court finds that Mayor Adams's use of his emergency powers violated the law and Petitioners' motion is granted.

On December 20, 2023, the New York City Council passed Local Law 42, a ban on solitary confinement in city prisons. *Petition*, NYSCEF Doc. No. 1; *Petitioner's Exh. A.*, NYSCEF Doc. No. 2. Mayor Adams vetoed LL 42 on January 19, 2024 and the Council, in turn, overrode the Mayor's veto on January 30, 2024. *Answer in Special Proceeding*, NYSCEF Doc. No. 32. On July 27, 2024, the day before the ban's effective date, Mayor Adams declared a State of Emergency and issued a pair of emergency orders suspending significant portions of LL 42, effectively preventing the law from taking effect. *Pet. Exhs. A, B, C,* NYSCEF Doc. Nos. 3-4. To date, the mayor has reissued emergency orders with the same effect every five days. *Petition*, NYSCEF Doc. No. 1. On December 9, 2024, Petitioners commenced the instant action, challenging the mayor's ability to use emergency orders to prevent a law from taking effect, even after a veto of that law has been overruled.

Petitioners request that the Court: (1) find Mayor Adams's "Emergency Orders arbitrary, capricious and contrary to law, the issuance of which is beyond the Mayor's lawful authority;" (2) vacate "the Mayor's Emergency Orders declaring a local state of emergency as result of Local Law 42 (Order No. 624 and all subsequent renewals);" and (3) vacate "the Mayor's Emergency Orders suspending Local Law 42 (Order No. 625 and all subsequent renewals)." *Id.*

161499/2024 THE COUNCIL OF THE CITY OF NEW YORK ET AL vs. MAYOR ERIC ADAMS
Motion No. 001
Page 2 of 6

2 of 6

To evaluate an Article 78 petition, the Court must first determine whether the challenged actions are contrary to the law. Under New York Executive Law § 24, "in the event of a disaster, rioting, catastrophe, or similar public emergency…or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive thereof that the public safety is imperiled thereby, such chief executive may proclaim a local state of emergency." If a state of emergency is declared, an executive has the power to suspend "any…local laws, ordinances or regulations, or parts thereof subject to federal and state constitutional, statutory and regulatory limitations, which may prevent, hinder, or delay necessary action in coping with a disaster or recovery therefrom." N.Y. Exec. L. § 24(g). In Mayor Adams's estimation the implementation of LL 42 constitutes an emergency of "the risks to health and safety that implementation of that law at this time and under current circumstances presents" due to a lack of staffing and resources as well as a direct threat caused by the inability to constrain certain prisoners. *Pet. Exh. B*, NYSCEF Doc. No. 3. Mayor Adams also relies on *Nunez v. City of N.Y.*, No. 11 Civ. 5845 (S.D.N.Y.), an ongoing federal court case which prevents the City of New York from making certain changes to jail policy without permission from a Federal Monitor. *Id.* According to Respondent, because the Monitor expressed doubt that Local Law 42 could be implemented safely by its effective date, the state of emergency and subsequent emergency orders were a necessary step to comply with the federal court's orders, *Respondent's Memorandum of Law*, NYSCEF Doc. No. 47.

The purpose of Executive Law § 24 is to allow "prompt and immediate unilateral action [when] necessary to preserve and protect life and property, the accomplishment of which would be frustrated if left to a deliberative body." *Prospect v. Cohalan*, 109 A.D.2d 210, 217-18 (2d Dep't 1985), aff'd, 65 N.Y.2d 867 (1985). Planning for an emergency, meanwhile, is specifically

161499/2024   THE COUNCIL OF THE CITY OF NEW YORK ET AL vs. MAYOR ERIC ADAMS   Page 3 of 6
Motion No. 001

3 of 6

left to the local legislature. *Id.* While Respondent makes a rational case for the use of emergency powers to suspend LL 42, rationality is only relevant where an action is not contrary to law. *Matter of Madison County* 33 NY3d 131, 135. The law gives the mayor power to act when a legislative body cannot move quickly enough to address a crisis. There is a single tool available to a mayor, however, to prevent the implementation of a bill that the mayor opposes: the veto. When the City Council overturns a mayoral veto, it is not an emergency, it is a democratic process, clearly laid out in the New York City Charter. N.Y.C. Charter §§ 21, 28. By declaring a state of emergency and issuing emergency orders, he violated that process. The City Council passed a solitary confinement ban after several years of hearings and debate, including extensive input from the mayor and from the Department of Corrections, which lead to material changes to the LL 42's language. *Petitioners' Memorandum of Law*, NYSCEF Doc. No. 8. Petitioners deliberated and made a decision based on those deliberations, precisely the opposite of the circumstances that justify the use of emergency powers. While the Court respects the immense power that the stat gives the executive, that Respondent disagreed with the City Council on the passage of LL 42 cannot be considered an emergency of the sort imagined by the state legislature when drafting Executive Law § 24. *See Under 21 v. City of N.Y.*, 65 N.Y.2d 344, 358 (1985) ("[N]o matter how well-intentioned his actions may be, the Mayor may not unlawfully infringe upon the legislative powers reserved to the City Council").

Respondent is correct to note that a ban on solitary confinement should not take place without the permission of the federal monitor, Respondent is incorrect in asserting that mayoral emergency powers are the proper path to preventing LL 42 from taking effect. Instead, Mayor Adams should have gone to Judge Laura Taylor Swain, who presides over *Nunez*, to seek an

161499/2024   THE COUNCIL OF THE CITY OF NEW YORK ET AL vs. MAYOR ERIC ADAMS                Page 4 of 6
Motion No. 001

4 of 6

injunctive or other proper relief.[1] Article VI of the Constitution establishes the supremacy of federal law over state law and that extends to the rulings of federal courts in state matters. *See Kalb v Feuerstein*, 308 US 433, 439 (1940) ("The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land"). *See also Bermudez Chavez v Occidental Chem. Corp.*, 35 NY3d 492, 515 fn. 5(2020) ("State courts have no authority to undermine the scope of federal orders") (Rivera, J., Dissenting in part). Respondent was not compelled to utilize his emergency powers as he asserts because Judge Swain, along with the federal monitor, had control over whether the law could actually be implemented.[2]

To be clear, this decision should not be construed to say that there are no circumstances under which portions of Local Law 42 can be suspended. The Court's ruling is simply that under these circumstances, Mayor Adams acted beyond the scope of his emergency powers and that he cannot suspend the law because he disapproves of its impact.

The Court has considered Respondent's further arguments and finds them unavailing.

---

[1] To wit, Respondent initially indicated that he would pursue this action exactly; he now asserts that the Federal Monitor was not able to finish reviewing LL 42 before its effective date, which spurred the emergency orders at issue. *Respondent's Memorandum of Law*, NYSCEF Doc. No. 47.

[2] On May 13, 2025, Judge Swain issued an order requiring the City of New York to cede control of Rikers Island to a "remediation manager." While controlling, the decision does not preclude legislation impacting Rikers Island and explicitly provides that control will return to the city after certain conditions are meant, meaning that the issue in this case is still ripe for review. Additionally, that LL 42 could not go into effect without the federal monitor's approval fundamentally undermines the notion that the implementation of the ban could be considered an emergency.

161499/2024   THE COUNCIL OF THE CITY OF NEW YORK ET AL vs. MAYOR ERIC ADAMS    Page 5 of 6
Motion No. 001

5 of 6

It is hereby **ORDERED** that Respondent's Emergency Orders declaring a local state of emergency as result of Local Law 42 (Order No. 624 and all subsequent renewals) are vacated; and it is further

**ORDERED** that Respondent is barred from declaring a new state of emergency as a result of Local Law 42 taking effect; and it is further

**ORDERED** that Respondent's Emergency Orders suspending Local Law 42 (Order No. 625 and all subsequent renewals) are vacated; and it is further

**ORDERED** that Respondent is barred from issuing new Emergency Orders suspending Local Law 42 to prevent it from taking effect.

6/30/2025
DATE

HON. JEFFREY H. PEARLMAN
JEFFREY H. PEARLMAN, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | GRANTED IN PART | ☐ | OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | ☐ | REFERENCE |

161499/2024   THE COUNCIL OF THE CITY OF NEW YORK ET AL vs. MAYOR ERIC ADAMS    Page 6 of 6
Motion No. 001

6 of 6