**OFFICE OF THE MONITOR**
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

Steve J. Martin
Monitor

Anna E. Friedberg
Deputy Monitor

1+1 646 895 6567 | afriedberg@tillidgroup.com

July 2, 2025

**VIA ECF**
The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

Re: *Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS) (JCF)*

Dear Honorable Judge Swain,

The Monitoring Team files this letter in advance of the Court conference today in response to requests for information from the Parties. The Monitoring Team participated in a meet and confer with the Parties and council for the City Council yesterday. As part of that discussion, questions were raised regarding the Monitoring Team's work related to its evaluation of Local Law 42 ("LL42"). The Monitoring Team shares this information to respond to inquiries related to that work.

Since the summer of 2024, the Court has directed[1] the Monitoring Team to engage in focused analytical work, to meet and confer with the Defendants and the Parties about these issues, and to provide multiple status updates.

---

[1] *See* the Court's June 7, 2024 Order (dkt. 726), July 23, 2024 Order (dkt. 759), July 25, 2024 Order (dkt. 761), and October 25, 2024 Order (dkt. 791).

The analysis of the interplay between *Nunez* requirements and LL42 is complicated.[2] Neither set of requirements allows for simple comparisons to identify elements that are directly at odds with one another. The requirements of the *Nunez* Court Orders tend to be more global and conceptual and, in many cases, leave specific operational issues to be addressed via consultation with and approval of the Monitor. On the other hand, LL42 requirements regulate more discrete and specific elements of practice. Therefore, the analysis must look holistically at the requirements of the *Nunez* Court Order for the relevant functions (i.e., managing individuals after serious acts of violence, restraints/escorts, de-escalation, and emergency lock-ins) and then overlay the operational impact of the LL42 requirements to identify those that may be discordant. The Monitoring Team updated the Court on its work to assess the intersection of LL42 and the *Nunez* Court Orders on October 24, 2024 (dkt. 789) and November 22, 2024 (dkt. 802). The Monitor filed a comprehensive report on January 31, 2025 (dkt. 814) describing all work completed to date regarding the analysis of LL42.

The Monitoring Team's January 31, 2025 Report determined that certain provisions of LL42, as currently designed, would undermine and are antithetical to the very purpose of the *Nunez* Court Orders to provide a "constitutionally sufficient level of safety for those who live and work on Rikers Island"[3] and would impede the Department's compliance with the *Nunez* Court Orders. Further, to the extent that the Monitor is required to approve or direct certain DOC practices that include the problematic components of LL42, the Monitor will not approve or direct such practices absent modifications to those requirements for the reasons stated in the Monitor's January 31, 2025 Report. Appendix A provides a list of the provisions of LL42

---

[2] The Monitoring Team's framework for evaluating LL42 is described at pgs. 5 to 10 of the January 31, 2025 Report.

[3] *See* Court's November 27, 2024 Order (dkt. 803) at pg. 54.

analyzed by the Monitor's January 31, 2025 Report, citations to the Monitor's January 31, 2025 Report with the associated concerns relating to those provisions, and a list of the relevant *Nunez* Court Order provisions.

With respect to the current status of the Monitoring Team's work, the Monitoring Team has not engaged in additional work regarding an analysis of LL42 since the Court's February 5, 2025 Order (dkt. 815). The Court's February 5, 2025 Order advised the Monitoring Team to cease any further analytical work on LL42 until further directed by the Court in light of the pending Article 78 litigation related to LL42.

Given the resolution of the Article 78 litigation, the Monitoring Team renews its recommendation from the January 31, 2025 Report that the Monitoring Team must now issue specific recommendations regarding the provisions of LL42 identified in the January 31, 2025 report. Such recommendations must be consistent with the *Nunez* Court Orders, and, of course, be necessary, narrowly tailored, consistent with sound correctional practice, support the safe operation of the jails, and to the extent applicable, permit the Monitor to provide his approval as required by the *Nunez* Court Orders. The Monitor proposes including these recommendations in a report to be filed with the Court on October 15, 2025.

The Monitoring Team will be available to address any questions the Court may have during the conference today.

Sincerely,

s/ Steve J. Martin & s/ Anna E. Friedberg
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*

# Appendix A

| Local Law 42 Provisions | Relevant *Nunez* Provisions |
|---|---|
| **Management of Incarcerated Individuals Following Serious Incidents of Violence** ||
| <ul><li>Management of Incarcerated Individuals: *See* the "Conclusion" section on pg. 53</li><li>Definition of restricted housing: § 9-167 (a) – *See "Definition of Solitary Confinement"* bullet on pg. 35 and *"Universal Out of Cell Time"* bullet on pgs 36-37</li><li>§ 9-167 (b) – *See "Definition of Solitary Confinement"* bullet on pg. 35 and *"Universal Out of Cell Time"* bullet on pgs 36-37</li><li>§ 9-167 (f)<ul><li>§ 9-167 (f)(1)(i) – *See "Procedures for Placement in Restricted Housing"* bullet on pg. 37</li><li>§ 9-167 (f)(1)(ii) – *See "Procedures for Placement in Restricted Housing"* bullet on pg. 37</li><li>§ 9-167 (f)(1)(v) – *See "Procedures for Placement in Restricted Housing"* bullet on pg. 37</li><li>§ 9-167 (f)(1)(vi) – *See "Procedures for Placement in Restricted Housing"* bullet on pg. 37</li></ul></li><li>§ 9-167 (h)<ul><li>§ 9-167 (h)(1) – *See "Time Frames for Discharge from Restrictive Housing"* bullet on pgs. 37-38</li><li>§ 9-167 (h)(3) – *See "Time Frames for Discharge from Restrictive Housing"* bullet on pgs. 37-38</li><li>§ 9-167 (h)(4) – *See "Prohibitions on Certain Types of Enhanced Restraints"* bullet on pgs. 37-38</li><li>§ 9-167 (h)(5) – *See "Time Frames for Discharge from Restrictive Housing"* bullet on pgs. 37-38</li></ul></li><li>§ 9-167 (i)<ul><li>§ 9-167 (i)(1) – *See "Universal Out of Cell Time"* bullet on pg 36</li></ul></li></ul> | <ul><li>The *Nunez* Court Orders include a number of requirements related to the Management of Incarcerated Individuals Following Serious Incidents of Violence, including:<ul><li>Action Plan, § E, ¶ 4 *Management of Incarcerated Individuals Following Serious Incidents of Violence;*</li><li>Second Remedial Order ¶ 1(i)(e) *Immediate Security Protocols—Post-Incident Management;*</li><li>Action Plan, § D, ¶ 2(h) *Improved Security Protocols—Post-Incident Management Protocol.*</li></ul></li><li>**Approval of the Monitor:** The Monitor must approve the Management strategy of Incarcerated Individuals Following Serious Incidents of Violence. *See* Action Plan, § E, ¶ 4.</li><li>**Direction of the Monitor:** The Monitor may direct the Department to refine the initiative(s) related to Post-Incident Management Protocol (Action Plan, § D, ¶ 2(h)), among other security initiatives, to ensure compliance with the *Nunez* Court Orders. *See* Action Plan, § D, ¶ 3. Pursuant to Action Plan § D, ¶ 3, the Department must implement the requirements from the Monitor.</li></ul> |

| Local Law 42 Provisions | Relevant *Nunez* Provisions |
|---|---|
|     o § 9-167 (i)(2) - *See* "*Prohibitions on Certain Types of Enhanced Restraints*" bullet on pgs. 38-39 | |
| **Restraints and Escorts** ||
| <ul><li>Restraints and Escorts: *See* the "*Conclusion*" section on pg. 48</li><li>Definition of restraints: § 9-167 (a) – *See* the "*Procedural Requirements for the* Use of Routine Restraints" bullet on pgs. 45-47 and the "*Standard for Enhanced Restraints*" bullet on pg. 47</li><li>§ 9-167 (e)<ul><li>§ 9-167 (e)(1) – *See* the "*Procedural Requirements for the Use of Routine Restraints*" bullet on pgs. 45-47, the "*Standard for Enhanced Restraints*" bullet on pg. 47, and the "*Prohibition of Enhanced Restraints for Individuals Under the Age of 22*" bullet on pgs. 47-48</li><li>§ 9-167 (e)(2) – *See* the "*Procedural Requirements for the Use of Routine Restraints*" bullet on pgs. 45-47 and the "*Standard for Enhanced Restraints*" bullet on pg. 47</li></ul></li></ul> | <ul><li>The *Nunez* Court Orders include a number of requirements related to the use of restraints and escort procedures, including:<ul><li>Consent Judgment, § IV, ¶ 3(p) *Use of Force Policy—Restraints;*</li><li>Second Remedial Order ¶ 1(i)(a) *Security Plan (escorted movement with restraints when required);*</li><li>Action Plan, § D, ¶ 2(a) *Improved Security Initiatives—Security Plan;*</li><li>Action Plan, § D, ¶ 2(f) *Improved Security Initiatives—Escort Techniques;*</li><li>August 10, 2023 Order, § I, ¶ 3 *Revise Escort Procedures.*</li></ul></li><li>**Approval of the Monitor:** The Monitor must approve the Department's policies and procedures on restraints and escorts. *See* Consent Judgment, § IV, ¶ 3(p) and August 10, 2023 Order, § I, ¶ 3.</li><li>**Direction of the Monitor:** The Monitor may direct the Department to refine the initiative(s) regarding the use of restraints and escorted movement (Action Plan § D, ¶ 2(a) and (f))), among other security initiatives, to ensure compliance with the *Nunez* Court Orders. *See* Action Plan, § D, ¶ 3. Pursuant to Action Plan § D, ¶ 3, the Department must implement the requirements from the Monitor.</li></ul> |
| **De-Escalation** ||
| <ul><li>De-Escalation: *See* the "*Conclusion*" section on pg. 53</li><li>Definition of De-escalation confinement: § 9-167 (a) – *See* "*Standard for Using De-Escalation*" bullet on pg. 51</li><li>§ 9-167 (c)<ul><li>§ 9-167(c)(4) – *See* "*Access to Items During De-Escalation*" bullet on pgs. 52-53</li></ul></li></ul> | <ul><li>The *Nunez* Court Orders include a number of requirements related to the use of de-escalation, including:<ul><li>First Remedial Order, § A, ¶ 3 *Revised De-escalation Protocol;*</li><li>Action Plan, § D, ¶ 2 (b) *Improved Security Initiatives* (first sentence);</li></ul></li></ul> |

| Local Law 42 Provisions | Relevant *Nunez* Provisions |
|---|---|
| <ul><li>§ 9-167(c)(6) – *See* "*Arbitrary Time Limits*" bullet on pgs. 51-52 and "*Limitations on Readmission to De-Escalation Confinement*" bullet on pg. 52</li></ul> | <ul><li>Action Plan § E, ¶ (4) *Management of Incarcerated Individuals Following Serious Incidents of Violence*.<ul><li>**Approval of the Monitor:** The Monitor must approve the policies and procedures for de-escalation. *See* First Remedial Order, § A, ¶ 3 and Action Plan § E, (4).</li><li>**Direction of the Monitor:** The Monitor may direct the Department to refine the initiative(s) regarding the use of de-escalation (Action Plan § D, ¶ 2(b)), among other security initiatives, to ensure compliance with the *Nunez* Court Orders. *See* Action Plan, § D, ¶ 3. Pursuant to Action Plan § D, ¶ 3, the Department must implement the requirements from the Monitor.</li></ul></li></ul> |
| **Emergency Lock-Ins** ||
| <ul><li>Emergency Lock-ins: *See* the "*Conclusion*" section on pgs. 56-57</li><li>§ 9-167(j)<ul><li>§ 9-167(j)(1) – *See* the "*Impact of LL42's Requirements for DOC's Operations of Emergency Lock-Ins*" section on pgs. 55-56</li><li>§ 9-167 (j)(2) – *See* the "*Impact of LL42's Requirements for DOC's Operations of Emergency Lock-Ins*" section on pg. 56</li><li>§ 9-167 (j)(3) – *See* the "*Impact of LL42's Requirements for DOC's Operations of Emergency Lock-Ins*" section on pg. 56</li></ul></li></ul> | <ul><li>The *Nunez* Court Orders include requirements related to the use of emergency lock-ins, including:<ul><li>August 10, 2023 Order, § I, ¶ 4 *Lock-in and Lock-out Procedures*.<ul><li>**Approval of the Monitor:** The Monitor must approve the lock-in policies and procedures. *See* August 10, 2023 Order, § I, ¶ 4</li></ul></li></ul></li></ul> |