UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                            :
MARK NUNEZ, et al.,                                         :
                                                            :
                              Plaintiff,                    :          11-CV-5845-LTS
                                                            :
              -v-                                           :          ORDER
                                                            :
CITY OF NEW YORK, et al.,                                   :
                                                            :
                              Defendants.          X
                                                            :

-------------------------------------------------------------------

       As proposed by the Monitoring Team and consented to by the parties, the Court

has modified the definition of Conflicting Provisions in the Temporary Restraining Order issued

on July 2, 2025 (docket entry no. 875) to reflect the changes recommended in the Chart of

Conflicted Provisions contained in the Nunez Independent Monitor's July 16, 2025 Status Report

(docket entry no. 883 at ECF pages 13-15 and 25-36).  The Amended Temporary Restraining

Order is attached to this Order as Appendix 1 and will be filed separately on the docket, and a

redlined version of the amended order is attached as Appendix 2.

       Additionally, the Court has concluded that it is in the interests of justice and

judicial economy for the completion of briefing on the Temporary Restraining Order to await the

Nunez Independent Monitor's October 15, 2025 Report identifying the provisions that the

Monitor believes are implicated by the requirements of the current Nunez Consent Orders and

those the Monitor believes are not.  In advance of the filing of the Monitor's October 15, 2025

Report, the Nunez Parties and the City Council and Public Advocate limited Intervenors shall

each provide a written submission to the Monitor no later than September 15, 2025 that

addresses the following issues:

o   Recommended issues, if any, that the Monitor should address in the October 15, 2025 report.

o   Substantive feedback, if any, regarding the matters on which the Monitor has previously reported regarding LL42.[1]

o   Scope of the Monitor's authority.  To the extent that there are any questions or concerns regarding the scope of the Monitor's authority, the specific provisions of the <u>Nunez</u> Court Order that are the basis for any questions or concerns those provisions must be identified and the basis for the questions and concerns must be explained.  Further, the basis for any position that there are limitations on the Monitor's approval authority as it relates to these matters must be identified and explained.

o   Any additional relevant considerations the Monitor should consider in rendering decisions of approval regarding LL42 and the <u>Nunez</u> Court Orders.

The Monitor shall consider and address, as appropriate, the matters identified in these written submissions in filing the Monitor's Report.

Following the issuance of the Monitor's October 15, 2025 Report, the Monitor, the Nunez parties, and the City Council and Public Advocate limited Intervenor are therefore ordered to meet and confer within 21 days of the filing of the Monitor's October 15, 2025 Report to identify any issues raised by the Monitor's Report that require additional intervention by the Court.  If such issues exist, within five business days following the meet and confer, the

---

[1]    This includes, but is not limited to, the Monitor's October 24, 2024 Report (docket entry no. 789), the Monitor's November 22, 2024 Report (docket entry no. 802), and the Monitor's January 31, 2025 Report (docket entry no. 814).

Monitoring Team must file a joint report identifying the specific issues to be raised with the

Court and proposing an appropriate briefing schedule.

    SO ORDERED.


Dated: August 19, 2025                        ___/s/ Laura Taylor Swain_____
      New York New York                 LAURA TAYLOR SWAIN
                                      United States District Judge

# APPENDIX 1:
# AMENDED TEMPORARY RESTRAINING ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

MARK NUNEZ, et. al,

                                        Plaintiffs,

                                                        11 Civ. 5845 (LTS)(JCF)

                        -against-


CITY OF NEW YORK, et. al,

                                        Defendants.

-------------------------------------------------------------------------- x

UNITED STATES OF
AMERICA,

                                        Plaintiff-Intervenor,


                        -against-


CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF CORRECTION,

                                        Defendants.

-------------------------------------------------------------------------- x


AMENDED TEMPORARY RESTRAINING ORDER

WHEREAS, the City Council enacted Local Law 42 of 2024, as codified in the Administrative Code of the City of New York at section 9-I 67 ("Local Law 42");

WHEREAS, the City of New York and the NYC Department of Correction (the "Defendants") moved this Court for a Temporary Restraining Order, a Preliminary Injunction, and Declaratory Relief, to stay the effect of certain provisions of Local Law 42, specified below and defined as the "Conflicting Provisions," because their implementation is subject to approval of the Monitor pursuant to prior orders in this matter and the Monitor has not approved those provisions;

WHEREAS, the Monitor has expressed agreement that the Conflicting Provisions are within the Monitor's ambit of approval and the Monitor has not approved implementation of those provisions;

WHEREAS, the Monitor has requested additional time to determine whether it can approve those provisions of Local Law 42, with or without modifications;

WHEREAS, the Court entered a Temporary Restraining Order on July 2, 2025, when it took under advisement Defendants' Motion for preliminary injunctive and declaratory relief and briefing of that Motion remains to be concluded; and

WHEREAS, the Nunez Independent Monitor has recommended, and the parties to the Nunez Litigation and the City Council and Public Advocate limited Intervenors do not object, the definition of "Conflicting Provisions" in the Temporary Restraining Order should be modified in certain respects to reduce its scope as explained in the Nunez Independent Monitor Team's July 16, 2025 Status Report (see chart of "Conflicted Provisions," drawn from docket entry no. 883 at ECF pages 13-15 and 25-36 and appended hereto as Exhibit A);

2

THIS COURT FINDS AND ORDERS THAT THE TEMPORARY RESTRAINING ORDER IS HEREBY MODIFIED TO READ IN ITS ENTIRETY AS FOLLOWS:

1. There is a substantial likelihood that Defendants will prevail on the merits of the motion;

2. The Defendants, Class Members and non-parties are likely to suffer irreparable harm, caused by violations of this Court's orders and unsafe conditions and procedures that will be created by the implementation of LL42, if the Conflicting Provisions are permitted to go into effect;

3. The requirements for prospective relief under the Prison Litigation of Reform Act are met in that this Court finds that:

(i) Federal law requires this relief to be ordered;

(ii) the relief is necessary to correct the violation of a Federal right; and

(iii) no other relief will correct the violation of the Federal right.

4. As modified in accordance with Exhibit A, the "Conflicting Provisions" now comprise:

   a. Admin. Code § 9-167(a) – limited to the definitions of "cell", "De-escalation Confinement", "Out-of-cell", "Pre-hearing temporary restrictive house", "Restrictive Housing", "Solitary Confinement"

   b. Admin. Code § 9-167 (b)

   c. Admin. Code § 9-167 (c)(4)

   d. Admin. Code § 9-167 (c)(5)

   e. Admin. Code § 9-167 (c)(6)

   f. Admin. Code § 9-167 (e)(1)

   g. Admin. Code § 9-167 (e)(2)

   h. Admin. Code § 9-167 (f)(1)(i)

i.  Admin. Code § 9-167 (f)(1)(ii) - only to the extent that "cross examine witnesses" requires anything beyond what is required by SCOC 7006.8(d), SCOC 7006.8(e) and SCOC 7006.8(f)

j.  Admin. Code § 9-167 (f)(1)(v) - only with respect to the clause "and their legal counsel or advocate"

k.  Admin. Code § 9-167 (f)(1)(vi)

l.  Admin. Code § 9-167 (f)(2)

m.  Admin. Code § 9-167 (h)(1)

n.  Admin. Code § 9-167 (h)(2)

o.  Admin. Code § 9-167 (h)(3)

p.  Admin. Code § 9-167 (h)(4)

q.  Admin. Code § 9-167 (h)(5) – limited to the two sentences "The department shall provide persons in restrictive housing with access to core educational and other programming comparable to core programs in the general population. The department shall also provide persons in restrictive housing access to evidence-based therapeutic interventions and restorative justice programs aimed at addressing the conduct resulting in their placement in restrictive housing. Such programs shall be individualized and trauma-informed, include positive incentive behavior modification models, and follow best practices for violence interruption."

r.  Admin. Code § 9-167 (h)(6)

s.  Admin. Code § 9-167 (i)(1)

t.  Admin. Code § 9-167 (i)(2)

u.  Admin. Code § 9-167 (j)(1)

v.  Admin. Code § 9-167 (j)(2) –limited to the clause "every fifteen (15) minutes" and "Throughout an emergency lock-in, other than in a department-wide emergency lock-in or a facility emergency lock-in, each person locked in shall have access to

a tablet or other device that allows the person to make phone calls both outside of the facility and to medical staff in the facility."

5.  In order to enforce prior orders of this Court, the legal effect of the Conflicting Provisions is stayed until further order of this Court.

6. Until further Order of this Court, Defendants shall have no duty to comply with the Conflicting Provisions.

7. The parties served with Notice of this Order shall take no action to enforce the Conflicting Provisions.

8. Any Board of Correction rules or rules amendments promulgated in Title 40 of the Rules of the City of New York to enforce the Conflicting Provisions shall also be stayed and ineffective until further order of this Court.

9. This Order is admissible as evidence in any proceeding in which a party seeks to enforce the Conflicting Provisions in state or federal court.

10. No bond is required to be posted.


SO ORDERED:

___/s/ Laura Taylor Swain_____
LAURA TAYLOR SWAIN
CHIEF UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK

Dated:  ___August 19, 2025___

# EXHIBIT A:
# CHART OF
# CONFLICTED PROVISIONS

---

The complete Chart of Conflicted Provisions is available in the <u>Nunez</u> Independent Monitor's July 16, 2025 Status Report Regarding Local Law 42.  (Docket entry no. 883 at ECF pages 13-15 and 25-36.)

**Chart of Conflicted Provisions Pursuant to ¶ 1 of Page 3 of the Court's July 2, 2025 Order (Docket entry no. 875)**

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| § 9-167 (a) | Advocate. The term "advocate" means a person who is a law student, paralegal, or an incarcerated person. | Remove from definition of Conflicted Provisions | | N/A |
| § 9-167 (a) | Cell. The term "cell" means any room, area or space that is not a shared space conducive to meaningful, regular and congregate social interaction among many people in a group setting, where an individual is held for any purpose. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (a) | De-escalation confinement. The term "de-escalation confinement" means holding an incarcerated person in a cell immediately following an incident where the person has caused physical injury or poses a specific risk of imminent serious physical injury to staff, themselves or other incarcerated persons. | | De-Escalation | See "Standard for Using De-Escalation" bullet on pg. 51 & See the "Conclusion" of the De-Escalation Confinement section on pg. 53 |
| § 9-167 (a) | Emergency lock-in. The term "emergency lock-in" means a department-wide emergency lockin, a facility emergency lock-in, a housing area emergency lock-in, or a partial facility emergency lock-in as defined in section 9-155. | Remove from definition of Conflicted Provisions | | N/A |
| § 9-167 (a) | Out-of-cell. The term "out-of-cell" means being in a space outside of, and in an area away from a cell, in a group setting with other people all in the same shared space without physical barriers separating such people that is conducive to meaningful and regular social interaction and activity or being in any space during the time of carrying out medical treatment, individual one-on-one counseling, an attorney visit or court appearance. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Efforts to Eliminate Solitary Confinement through Restrictive Housing Alternatives" section on pgs. 17-22 & See "Definition of Solitary Confinement" bullet on pgs. 35-36 & "Universal Out of Cell Time" bullet on pgs 36-37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (a) | Pre-hearing temporary restrictive housing. The term "pre-hearing temporary restrictive | | Management of Incarcerated | See "Managerial Discretion" bullet on pg. 8 & See the "Conclusion" of the |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | housing" means any restrictive housing designated for incarcerated persons who continue to pose a specific risk of imminent serious physical injury to staff, themselves, or other incarcerated persons after a period of de-escalation confinement has exceeded time limits established by this section and prior to a hearing for recommended placement in restrictive housing has taken place. | | Individuals Following Serious Acts of Violence | Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (a) | Restraints. For the purposes of this section, the term "restraints" means any object, device or equipment that impedes movement of hands, legs, or any other part of the body. | Remove from definition of Conflicted Provisions | | N/A |
| § 9-167 (a) | Restrictive housing. The term "restrictive housing" means any housing area that separates incarcerated persons from the general jail population on the basis of security concerns or discipline, or a housing area that poses restrictions on programs, services, interactions with other incarcerated persons or other conditions of confinement. This definition excludes housing designated for incarcerated persons who are: (1) in need of medical or mental health support as determined by the entity providing or overseeing correctional medical and mental health, 3 including placement in a contagious disease unit, (2) transgender or gender non-conforming, (3) in need of voluntary protective custody, or (4) housed in a designated location for the purpose of school attendance. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Efforts to Eliminate Solitary Confinement through Restrictive Housing Alternatives" section on pgs. 17-22 & See "Definition of Solitary Confinement" bullet on pgs. 35-36 & "Universal Out of Cell Time" bullet on pgs 36-37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (a) | Solitary confinement. The term "solitary confinement" means any placement of an incarcerated person in a cell, other than at night for sleeping for a period not to exceed eight hours in any 24-hour period or during the day | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Background on Solitary Confinement" section on pgs. 15-17 & See "Definition of Solitary Confinement" bullet on pgs. 35-36 & "Universal Out of Cell Time" bullet on pgs 36-37 & |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | for a count not to exceed two hours in any 24-hour period. | | | See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pgs. 39-40 |
| § 9-167 (a) | Suicide prevention aide. For the purposes of this section, the term "suicide prevention aide" means a person in custody who has been trained to identify unusual and/or suicidal behavior. | Remove from definition of Conflicted Provisions | | N/A |
| § 9-167 (a) | Violent grade I offense. The term "violent grade I offense" shall have the same meaning as defined by the rules of the department of correction as of January 1, 2022. | Remove from definition of Conflicted Provisions | | N/A |
| § 9-167 (b) | Ban on solitary confinement. The department shall not place an incarcerated person in a cell, other than at night for sleeping for a period not to exceed eight hours in any 24-hour period or during the day for count not to exceed two hours in any 24-hour period, unless for the purpose of de-escalation confinement or during emergency lock-ins. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Managerial Discretion" bullet on pg. 8 & See "Efforts to Eliminate Solitary Confinement through Restrictive Housing Alternatives" section on pgs. 17-22 & See "Definition of Solitary Confinement" bullet on pgs. 35-36 & "Universal Out of Cell Time" bullet on pgs 36-37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (c)(4) | Throughout de-escalation confinement, a person shall have access to a tablet or device that allows such person to make phone calls outside of the facility and to medical staff in the facility. | | De-Escalation | See "Access to Items During De-Escalation" bullet on pgs. 52-53 & See the "Conclusion" of the De-Escalation Confinement section on pg. 53 |
| § 9-167 (c)(5) | A person shall be removed from de-escalation confinement immediately following when such person has sufficiently gained control and no longer poses a significant risk of imminent serious physical injury to themselves or others | | De-Escalation | See "Standard for Using De-escalation" on pg. 51 & See the "Conclusion" of the De-Escalation Confinement section on pg. 53 |
| § 9-167 (c)(6) | The maximum duration a person can be held in de-escalation confinement shall not exceed four hours immediately following the incident precipitating such person's placement in such | | De-Escalation | See "Managerial Discretion" bullet on pg. 8 & See "Arbitrary Time Limits" bullet on pgs. 51-52 & "Limitations on Readmission to De-Escalation Confinement" bullet on |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | confinement. Under no circumstances may the department place a person in de-escalation confinement for more than four hours total in any 24-hour period, or more than 12 hours in any seven-day period; | | | pg. 52 & See the "Conclusion" of the De-Escalation section on pg. 53 |
| § 9-167 (e)(1) | Use of restraints. 1. The department shall not place an incarcerated person in restraints unless an individualized determination is made that restraints are necessary to prevent an imminent risk of self-injury or injury to other persons. In such instances, only the least restrictive form of restraints may be used and may be used no longer than is necessary to abate such imminent harm. Restraints shall not be used on an incarcerated person under the age of 22 except in the following circumstances: (i) during transportation in and out of a facility, provided that during transportation no person shall be secured to an immovable object; and (ii) during escorted movement within a facility to and from out-of-cell activities where an individualized determination is made that restraints are necessary to prevent an immediate risk of self-injury or injury to other persons. The department is prohibited from engaging in attempts to unnecessarily prolong, delay or undermine an individual's escorted movements. | | Restraints and Escorts | See "Managerial Discretion" bullet on pg. 8 & See "Routine Restraints" section on pgs. 41-42 & See the "Procedural Requirements for the Use of Routine Restraints" bullet on pgs. 45-47 & the "Standard for Enhanced Restraints" bullet on pg. 47 & the "Prohibition of Enhanced Restraints for Individuals Under the Age of 22" bullet on pgs. 47-48 & See the "Conclusion" of the Restraints section on pg. 48 |
| § 9-167 (e)(2) | The department shall not place an incarcerated person in restraints beyond the use of restraints described in paragraph 1 of this subdivision, or on two consecutive days, until a hearing is held to determine if the continued use of restraints is necessary for the safety of others. Such hearing shall comply with the rules of the board of correction as described in paragraph 1 of subdivision f of this section. Any continued use | | Restraints and Escorts | See the "Enhanced Restraints" section on pg. 43 & See the "Procedural Requirements for the Use of Routine Restraints" bullet on pgs. 45-47 & the "Standard for Enhanced Restraints" bullet on pg. 47 & See the "Conclusion" of the Restraint section on pg. 48 |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | of restraints must be reviewed by the department on a daily basis and discontinued once there is no longer an imminent risk of self-injury or injury to other persons. Continued use of restraints may only be authorized for seven consecutive days. | | | |
| § 9-167 (f)(1)(i)[1] | An incarcerated person shall have the right to be represented by their legal counsel or advocate; | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Procedures for Placement in Restricted Housing" bullet on pg. 37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (f)(1)(ii) | An incarcerated person shall have the right to present evidence **and cross-examine witnesses**; | Limit definition of Conflicted Provision to the text in red to the extent it requires anything beyond what is required by SCOC 7006.8(d), SCOC 7006.8(e) and SCOC 7006.8(f) | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Procedures for Placement in Restricted Housing" bullet on pg. 37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (f)(1)(v) | The department shall provide the incarcerated person **and their legal counsel or advocate** written notice of the reason for proposed placement in restrictive housing and any supporting evidence for such placement, no later than 48 hours prior to the restrictive housing hearing; | Limit definition of Conflicted Provision to the text in red | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Procedures for Placement in Restricted Housing" bullet on pg. 37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |

[1] For context, in evaluating the sub-provisions of § 9-167 (f) addressed in this chart, the overarching § 9-167 (f) requires "Restrictive housing hearing. Except as provided in subdivision g of this section, the department shall not place an incarcerated person in restrictive housing until a hearing on such placement is held and the person is found to have committed a violent grade I offense. Any required hearing regarding placement of a person into restrictive housing shall comply with rules to be established by the board of correction." Further, § 9-167 (f)(1) requires "The board of correction shall establish rules for restrictive housing hearings that shall, at a minimum, include the following provisions:"

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| § 9-167 (f)(1)(vi) | The department shall provide the legal counsel or advocate adequate time to prepare for such hearings and shall grant reasonable requests for adjournments | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Procedures for Placement in Restricted Housing" bullet on pg. 37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (f)(2) | Failure to comply with any of the provisions described in paragraph 1 of this subdivision, or as established by board of correction rule, shall constitute a due process violation warranting dismissal of the matter that led to the hearing. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Procedures for Placement in Restricted Housing" bullet on pg. 37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (h)(1) | The department shall not place an incarcerated person in restrictive housing for longer than necessary and for no more than a total of 60 days in any 12 month period | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Managerial Discretion" bullet on pg. 8 & See "Time Frames for Discharge from Restrictive Housing" bullet on pgs. 37-38 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (h)(2) | Within 15 days of placement of an incarcerated person in restrictive housing, the department shall meaningfully review such placement to determine whether the incarcerated person continues to present a specific, significant and imminent threat to the safety and security of other persons if housed outside restrictive housing. If an individual is not discharged from restrictive housing after review, the department shall provide in writing to the incarcerated person: (i) the reasons for the determination that such person must remain in restrictive housing and (ii) any recommended program, treatment, service, or corrective action. The department shall provide the incarcerated person access to such available programs, treatment and services. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Time Frames for Discharge from Restrictive Housing" bullet on pgs. 37-38 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (h)(3) | The department shall discharge an incarcerated person from restrictive housing if such person | | Management of Incarcerated | See "Managerial Discretion" bullet on pg. 8 & See "Time Frames for Discharge from |

12

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
|  | has not engaged in behavior that presents a specific, significant, and imminent threat to the safety and security of themselves or other persons during the preceding 15 days. In all circumstances, the department shall discharge an incarcerated person from restrictive housing within 30 days after their initial placement in such housing. |  | Individuals Following Serious Acts of Violence | Restrictive Housing" bullet on pgs. 37-38 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (h)(4) | A person placed in restrictive housing must have interaction with other people and access to congregate programming and amenities comparable to those housed outside restrictive housing, including access to at least seven hours per day of out-of-cell congregate programming or activities with groups of people in a group setting all in the same shared space without physical barriers separating such people that is conducive to meaningful and regular social interaction. If a person voluntarily chooses not to participate in congregate programming, they shall be offered access to comparable individual programming. A decision to voluntarily decline to participate in congregate programming must be done in writing or by videotape. |  | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Efforts to Eliminate Solitary Confinement through Restrictive Housing Alternatives" section on pgs. 17-22 & See pg. 28 of the "Alternative Program Models to Reduce the Use of Solitary Confinement" section & See "Prohibitions on Certain Types of Enhanced Restraints" bullet on pgs. 38-39 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (h)(5) | The department shall utilize programming that addresses the unique needs of those in restrictive housing. **The department shall provide persons in restrictive housing with access to core educational and other programming comparable to core programs in the general population. The department shall also provide persons in restrictive housing access to evidence-based therapeutic interventions and restorative justice programs aimed at addressing the conduct** | Limit definition of Conflicted Provision to text in Red | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Time Frames for Discharge from Restrictive Housing" bullet on pgs. 37-38 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | **resulting in their placement in restrictive housing. Such programs shall be individualized and trauma-informed, include positive incentive behavior modification models, and follow best practices for violence interruption.** Staff that routinely interact with incarcerated persons must be trained in de-escalation techniques, conflict resolution, the use of force policy, and related topics to address the unique needs of those in restrictive housing units. | | | |
| § 9-167 (h)(6) | The department shall use positive incentives to encourage good behavior in restrictive housing units and may use disciplinary sanctions only as a last resort in response to behavior presenting a serious and evident danger to oneself or others after other measures have not alleviated such behavior. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Universal Out of Cell Time" bullet on pgs. 36-37 & "Procedures for Placement in Restricted Housing" bullet on pg. 37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pgs. 39-40 |
| § 9-167 (i)(1) | Out-of-cell time. 1. All incarcerated persons must have access to at least 14 out-of-cell hours every day except while in de-escalation confinement pursuant to subdivision c of this section and during emergency lock-ins pursuant to subdivision j of this section. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Managerial Discretion" bullet on pg. 8 & See "Universal Out of Cell Time" bullet on pgs. 36-37 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pg. 39-40 |
| § 9-167 (i)(2) | Incarcerated persons may congregate with others and move about their housing area freely during out-of-cell time and have access to education and programming pursuant to section 9-110 of the administrative code. | | Management of Incarcerated Individuals Following Serious Acts of Violence | See "Efforts to Eliminate Solitary Confinement through Restrictive Housing Alternatives" section on pgs. 17-22 & See "Prohibitions on Certain Types of Enhanced Restraints" bullet on pgs. 38-39 & See the "Conclusion" of the Eliminating Solitary Confinement and Developing Alternative Programs section on pgs. 39-40 |
| § 9-167 (j)(1) | Emergency lock-ins. 1. Emergency lock-ins may only be used when the Commissioner, a | | Emergency Lock-Ins | See "Managerial Discretion" bullet on pg. 8 & See the "Impact of LL42's |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | Deputy Commissioner, or another equivalent member of department senior leadership with responsibility for the operations of security for a facility determines that such lock-in is necessary to de-escalate an emergency that poses a threat of specific, significant and imminent harm to incarcerated persons or staff. Emergency lock-ins may only be used when there are no less restrictive means available to address an emergency circumstance and only as a last resort after exhausting less restrictive measures. Emergency lock-ins must be confined to as narrow an area as possible and limited number of people as possible. The department shall lift emergency lockins as quickly as possible. The Commissioner, a Deputy Commissioner, or another equivalent member of department senior leadership over the operations of security shall review such lock-ins at least every hour. Such lock-ins may not last more than four hours. | | | Requirements for DOC's Operations of Emergency Lock-Ins" section on pgs. 55-56 & See the "Conclusion" of the Emergency Lock-In section on pgs. 56-57 |
| § 9-167 (j)(2) | Throughout an emergency lock-in, the department shall conduct visual and aural observation of every person locked in **every fifteen (15) minutes**, shall refer any health concerns to medical or mental health staff, and shall bring any person displaying any indications of any need for medical documentation, observation, or treatment to the medical clinic. **Throughout an emergency lock-in, other than in a department-wide emergency lock-in or a facility emergency lock-in, each person locked in shall have access to a tablet or other device that allows the person to make phone calls both outside** | Limit definition of Conflicted Provision to text in red | Emergency Lock-Ins | See the "Impact of LL42's Requirements for DOC's Operations of Emergency Lock-Ins" section on pgs. 55-56 & See the "Conclusion" of the Emergency Lock-In section on pgs. 56-57 |

| LL42 Provision | Text of LL42 Provision | Proposed Modification to Definition of Conflicted Provisions as defined in July 2, 2025 Order | Category | Citation to Monitor's January 31, 2025 Report |
|---|---|---|---|---|
| | of the facility and to medical staff in the facility. | | | |
| § 9-167 (j)(3) | The department shall immediately provide notice to the public on its website of an emergency lock-in, including information on any restrictions on visits, phone calls, counsel visits or court appearances. | | Emergency Lock-Ins | See the "Impact of LL42's Requirements for DOC's Operations of Emergency Lock-Ins" section on pgs. 55-56 & See the "Conclusion" of the Emergency Lock-In section on pgs. 56-57 |

# APPENDIX 2:
# REDLINED AMENDED TEMPORARY RESTRAINING ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- x

MARK NUNEZ, et. al,

                                        Plaintiffs,

                                                          11 Civ. 5845 (LTS)(JCF)

                    -against-


CITY OF NEW YORK, et. al,

                                        Defendants.
-------------------------------------------------------------------------------- x

UNITED STATES OF
AMERICA,

                                        Plaintiff-Intervenor,


                    -against-


CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF CORRECTION,

                                        Defendants.
-------------------------------------------------------------------------------- x


                    [PROPOSED]AMENDED TEMPORARY RESTRAINING ORDER

WHEREAS, the City Council enacted Local Law 42 of 2024, as codified in the Administrative Code of the City of New York at section 9- I 67 ("Local Law 42")~~,~~;

WHEREAS, the City of New York and the NYC Department of Correction (the "Defendants") moved this Court for a Temporary Restraining Order, a Preliminary Injunction, and Declaratory Relief, to stay the effect of certain provisions of Local Law 42, specified below and defined as the "Conflicting Provisions," because their implementation is subject to approval of the Monitor pursuant to prior orders in this matter and the Monitor has not approved those provisions; ~~and~~

WHEREAS, the Monitor has expressed agreement that the Conflicting Provisions are within the Monitor's ambit of approval and the Monitor has not approved implementation of those provisions; ~~and~~

WHEREAS, the Monitor has requested additional time to determine whether it can approve those provisions of Local Law 42, with or without modifications;

WHEREAS, the Court entered a Temporary Restraining Order on July 2, 2025, when it took under advisement Defendants' Motion for preliminary injunctive and declaratory relief and briefing of that Motion remains to be concluded; and

WHEREAS, the Nunez Independent Monitor has recommended, and the parties to the Nunez Litigation and the City Council and Public Advocate limited Intervenors do not object, the definition of "Conflicting Provisions" in the Temporary Restraining Order should be modified in certain respects to reduce its scope as explained in the Nunez Independent Monitor Team's July 16, 2025 Status Report (see chart of "Conflicted Provisions," drawn from docket entry no. 883 at ECF pages 13-15 and 25-36 and appended hereto as Exhibit A);

THIS COURT FINDS AND ORDERS THAT THE TEMPORARY RESTRAINING ORDER IS HEREBY MODIFIED TO READ IN ITS ENTIRETY AS FOLLOWS:

1.    There is a substantial likelihood that Defendants will prevail on the merits of the motion;

2.    The Defendants, Class Members and non-parties are likely to suffer irreparable harm if the Conflicting Provisions are permitted to go into effect, caused by violations of this Court's orders and unsafe conditions and procedures that will be created by the implementation of LL42, if the Conflicting Provisions are permitted to go into effect;

3.    The requirements for prospective relief under the Prison Litigation of Reform Act are met in that this Court finds that:

(i) Federal law requires this relief to be ordered;

(ii) the relief is necessary to correct the violation of a Federal right; and

(iii) no other relief will correct the violation of the Federal right.

4.    The As modified in accordance with Exhibit A, the "Conflicting Provisions" are defined as now comprise:

    a.    Admin. Code § 9-167(a),(b),(c)(4)-(6); §) – limited to the definitions of "cell", "De-escalation Confinement", "Out-of-cell", "Pre-hearing temporary restrictive house", "Restrictive Housing", "Solitary Confinement"

    b.    Admin. Code § 9-167(f)(1)(i),(ii), § (b)

    c.    Admin. Code § 9-167(f)(1)(v)-(vi); § (c)(4)

    d.    Admin. Code § 9-167(f)(2), § (c)(5)

    e.    Admin. Code § 9-167(h)(1)-( (c)(6),-)

    f.    §Admin. Code § 9-167 (e)(1),(2); §)

    g.    Admin. Code § 9-167(i)(1),(2); (e)(2)

h.   Admin. Code § 9-167 (f)(1)(i)

i.   Admin. Code § 9-167 (f)(1)(ii) - only to the extent that "cross examine witnesses" requires anything beyond what is required by SCOC 7006.8(d), SCOC 7006.8(e) and ~~§9-167~~SCOC 7006.8(f)

j.   Admin. Code § 9-167 (f)(1)(v) - only with respect to the clause "and their legal counsel or advocate"

k.   Admin. Code § 9-167 (f)(1)(vi)

l.   Admin. Code § 9-167 (f)(2)

m.  Admin. Code § 9-167 (h)(1)

n.   Admin. Code § 9-167 (h)(2)

o.   Admin. Code § 9-167 (h)(3)

p.   Admin. Code § 9-167 (h)(4)

q.   Admin. Code § 9-167 (h)(5) – limited to the two sentences "The department shall provide persons in restrictive housing with access to core educational and other programming comparable to core programs in the general population. The department shall also provide persons in restrictive housing access to evidence-based therapeutic interventions and restorative justice programs aimed at addressing the conduct resulting in their placement in restrictive housing. Such programs shall be individualized and trauma-informed, include positive incentive behavior modification models, and follow best practices for violence interruption."

r.   Admin. Code § 9-167 (h)(6)

s.   Admin. Code § 9-167 (i)(1)

t.   Admin. Code § 9-167 (i)(2)

~~a.~~u. Admin. Code § 9-167 (j)(1~~)(2)(3).~~)

v.   Admin. Code § 9-167 (j)(2) –limited to the clause "every fifteen (15) minutes" and "Throughout an emergency lock-in, other than in a department-wide emergency

4

lock-in or a facility emergency lock-in, each person locked in shall have access to a tablet or other device that allows the person to make phone calls both outside of the facility and to medical staff in the facility."

2.5. In order to enforce prior orders of this Court, the legal effect of the Conflicting Provisions shall beis stayed until further order of this Court.

3.6. Until further Order of this Court, Defendants shall have no duty to comply with the Conflicting Provisions.

4.7. The parties served with Notice of this Order shall take no action to enforce the Conflicting Provisions.

5.8. Any Board of Correction rules or rules amendments promulgated in Title 40 of the Rules of the City of New York to enforce the Conflicting Provisions shall also be stayed and ineffective until further order of this Court.

6.9. This Order is admissible as evidence in any proceeding in which a party seeks to enforce the Conflicting Provisions in state or federal court.

7.10.      No bond is required to be posted.


SO ORDERED:

                         __/s/ Laura Taylor Swain_____
                         LAURA TAYLOR SWAIN
                         CHIEF UNITED STATES DISTRICT JUDGE
                         SOUTHERN DISTRICT OF NEW YORK

                         Dated: ___July 2August 19, 2025_____