UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARK NUNEZ, et al.,

        Plaintiffs,

     -v-                               No.  11-CV-5845-LTS-RWL

NEW YORK CITY DEPARTMENT OF
CORRECTION and THE CITY OF NEW
YORK,

        Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

        In an Opinion and Order dated May 13, 2025 (docket entry no. 846 ("RM

Opinion")); see also Nunez v. Dep't of Corr., 782 F. Supp. 3d 146 (S.D.N.Y. 2025), the Court

announced and explained its decision to appoint an independent Remediation Manager to

oversee certain aspects of the management of New York City's jails.  The RM Opinion came in

the wake of the Court's November 27, 2024 Contempt Order (docket entry no. 803 ("Contempt

Order")); see also Nunez v. Dep't of Corr., 758 F. Supp. 3d 190 (S.D.N.Y. 2024), which held

Defendants New York City Department of Correction ("DOC") and the City of New York

(collectively, "Defendants") in civil contempt of eighteen provisions (the "Contempt

Provisions") of four Court orders previously entered in this case (the "Nunez Court Orders").  In

the RM Opinion, the Court announced that it will appoint an independent Nunez Remediation

Manager to cure Defendants' contempt and to support remediation of ongoing violations of

constitutional rights of people in custody in New York City jails, and the Court further

established a process in preparation for that appointment.

Pending before the Court is Defendants' Motion for Reconsideration of the RM Opinion.  (Docket entry no. 865 ("Motion for Reconsideration" or "Motion").)  Defendants, invoking Rule 54(b) of the Federal Rules of Civil Procedure, principally request that the Court modify its RM Opinion to either appoint no Remediation Manager at all or to appoint DOC Commissioner Lynelle Maginley-Liddie (the "Commissioner") as a "Compliance Director" in lieu of an independent Remediation Manager or, in a further alternative approach, to reduce the Remediation Manager's contemplated powers.  (See docket entry no. 866 ("Def. Mem.").)  Plaintiffs, a class of present and future New York City jail inmates and detainees, and the Plaintiff-Intervenor, the United States, represented by the United States Attorney for the Southern District of New York (collectively, "Plaintiffs") jointly opposed the motion (docket entry no. 889 ("Pls. Opp.")), and Defendants filed a Reply (docket entry no. 894 ("Reply")).  The Court has considered the parties' written submissions carefully and, for the following reasons, denies Defendants' Motion in its entirety.

<u>BACKGROUND</u>

The Court assumes the parties' familiarity with the factual background and procedural history of this case and relies upon the findings of fact previously set forth in the RM Opinion and the Contempt Order.[1]

---

[1]     Defendants' Motion did not take issue with the recitation of facts in either the RM Opinion or the Contempt Order.  Abbreviations and capitalized terms not otherwise defined in this Order have the meanings set forth in the RM Opinion and the Contempt Order.

<u>DISCUSSION</u>

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." <u>MPD Accessories B.V. v. Urban Outfitters, Inc.</u>, No. 12-CV-6501-LTS-KNF, 2014 WL 3439316, at *1 (S.D.N.Y. July 15, 2014) (citation modified).  To prevail on a motion for reconsideration under Rule 54(b), a movant must therefore point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  <u>Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP</u>, 322 F.3d 147, 167 (2d Cir. 2003) (quoting <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)).  A motion for reconsideration does not serve as "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  <u>Cohen v. N.Y.C. Dep't of Educ.</u>, No. 19-CV-3863-LTS-SDA, 2021 WL 2158018, at *2 (S.D.N.Y. May 26, 2021) (quoting <u>Analytical Surv., Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012)). "Consequently, . . . a reconsideration motion [under Rule 54(b)] . . . will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." <u>Jansen v. N.Y.C. Dep't of Educ.</u>, No. 23-CV-6756-HG, 2023 WL 6541901, at *3 (E.D.N.Y. Oct. 6, 2023) (citation modified).

Here, Defendants move for reconsideration based on the availability of new evidence.  (Def. Mem. at 5.)  Before the Court can decide whether to modify its RM Opinion, it must first determine whether Defendants have indeed presented new evidence that could provide a basis under Rule 54(b) for the Court to revisit its prior ruling.

<u>Defendants' Proffer of New Evidence</u>

A movant seeking reconsideration based on new evidence must identify evidence that is "truly newly discovered or . . . could not have been found by due diligence." <u>Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.</u>, 609 F.3d 122, 131 (2d Cir. 2010) (citation omitted); <u>Cunningham v. Cornell Univ.</u>, No. 16-CV-6525-PKC, 2020 WL 1165778, at *1 (S.D.N.Y. Mar. 11, 2020). Accordingly, when a movant "had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver, the Rule 54(b) motion may be denied." <u>O'Toole v. City of New York</u>, No. 15-CV-6885-LTS-SLC, 2023 WL 4760579, at *2 (S.D.N.Y. July 26, 2023).

Defendants move for reconsideration of the RM Opinion based on a compliance report filed by the court-appointed Monitor and his team (collectively, the "Monitoring Team") on May 22, 2025. (Docket entry no. 850 (the "Monitor's 19th Report").) That Report is the 19th biannual compliance report in a series that the Monitoring Team has filed pursuant to the Consent Judgment (docket entry no. 249 ("Consent Judgment")) since 2016 to describe and evaluate the DOC's efforts to comply with the numerous Court orders issued in this case. The data and information underlying the Monitor's 19th Report were collected from July 1, 2024 to December 31, 2024 (the "19th Compliance Period"). In seeking reconsideration, Defendants cite this underlying data and information extensively and argue that the Report "adds substantial evidence to the record" for the second half of 2024 (Def. Mem. at 9) and "confirms the continued successes of the Commissioner in moving DOC toward compliance" with the Contempt Order (<u>id.</u> at 1). Because the Monitor's 19th Report was filed several days after the RM Opinion's issuance, Defendants characterize it as new evidence that would provide the Court with justification to revisit its RM Opinion.

With one exception, the portions of the Monitor's 19th Report that Defendants cite do not constitute new evidence that can justify reconsideration under Rule 54(b).  Though it is true that the Monitor's 19th Report postdated the issuance of the RM Opinion, most of the data and analysis contained in that Report were neither new to Defendants nor to the Court by the issuance date.  Among other things, Defendants' Memorandum cites data and analysis from the Monitor's 19th Report showing that the DOC made progress in the months preceding the Report with respect to restrictive housing (id. at 13-14), DOC leadership and staffing (id. at 14-16), discipline and accountability (id. at 16-17), safety and supervision of eighteen-year-olds (id. at 17-18), and use of force practices (id. at 18-22).  But Defendants themselves collected that data over the 19th Compliance Period and transmitted it to the Monitoring Team in February 2025, months before the Court issued the RM Opinion on May 13, 2025.  (See docket entry no. 817.) Defendants, therefore, no doubt "had the opportunity to present the evidence" to the Court prior to the RM Opinion's issuance.  See O'Toole, 2023 WL 4760579, at *2.

In fact, Defendants actually did present nearly all of the underlying evidence they now cite as "new" well before the RM Opinion was issued.  In the motion practice preceding the RM Opinion, Defendants submitted declarations from Nunez Manager Kimberly Joyce (docket entry no. 821-1 ("Joyce Decl.")) and correctional expert Gary Raney (docket entry no. 842-1 ("Raney Decl.")).  Both experts evaluated and opined on the conditions in DOC jails during and after the 19th Compliance Period, and the substance of their declarations overlapped substantially

with the portions of the Monitor's 19th Report that Defendants now marshal in support of reconsideration.[2]

The Court carefully considered the substance of these Declarations and all other evidentiary submissions before issuing the RM Opinion, and the Court even mentioned much of their substantive content directly in the RM Opinion.  (Compare, e.g., RM Opinion at 17, 27-28 (praising the DOC's working relationship with the Monitoring Team), with Def. Mem. at 14; see also RM Opinion at 28 (concluding that appointing a Remediation Manager was necessary despite progress identified in the Raney Declaration and other "recent submissions").)  Because the facts underlying those submissions are largely the same as those presented in the Monitor's 19th Report, the Report does not constitute "truly newly discovered" evidence that could provide a basis for revisiting the RM Opinion.  Cunningham, 2020 WL 1165778, at *1.  Presenting the same evidence in a different form does not make that evidence new, and Defendants are not entitled to "take a second bite at the apple" by repackaging evidence that the Court already considered, even if their submission postdated the Court's Opinion.  See Cohen, 2021 WL 2158018, at *2 (citation omitted).

---

[2]    For example, the Joyce Declaration presented evidence regarding, among other things: changes to the DOC's "executive leadership team" (compare Def. Mem. at 14-16, with Joyce Decl. ¶¶ 2, 18); reductions in use of force ("UOF") incidents and other safety and security indicators (compare Def. Mem. at 18-22, with Joyce Decl. ¶¶ 10, 19-21); changes to the Investigative Division's training, staffing, and leadership team (compare Def. Mem. at 16-17, with Joyce Decl. ¶¶ 13-15); improvements to the DOC's restrictive housing programming (compare Def. Mem. at 12-14, with Joyce Decl. ¶¶ 17, 19); and the DOC's continued collaboration with outside consultants Dr. James Austin and Gary Raney (compare Def. Mem. at 11, with Joyce Decl. ¶¶ 3-4).  Similarly, the Raney Declaration extensively discussed changes to the DOC leadership structure that were implemented by Commissioner Maginley-Liddie.  (Compare Def. Mem. at 14-16, with Raney Decl. ¶¶ 7-9, 14, 18.)

While the Court thus will not consider most of Defendants' newly presented evidence when evaluating their Motion, the Court finds that the updated compliance ratings in the Monitor's 19th Report are "truly newly discovered" and merit consideration.  Ins. Co. of N. Am., 609 F.3d at 131; (Def. Mem. at 9-11).  Defendants obviously could not have presented the Monitor's most recent compliance ratings until the Monitor issued them in the Monitor's 19th Report, and the Court has placed significant weight upon such ratings in the past.  (See generally, e.g., Contempt Order (holding Defendants in contempt based, in part, on Monitor's prior ratings of Non-Compliant).)  Because this evidence is both truly new and important, the Court will consider it in determining whether to modify its RM Opinion pursuant to Rule 54(b) of the Federal Rules of Procedure.

<u>Modification Under Rule 54(b)</u>

Defendants seek modification of several aspects of the RM Opinion.  First, Defendants argue that the appointment of an independent Remediation Manager with the powers the Court specified is unjustified under the PLRA and that no injunctive relief, or less intrusive relief, is necessary.  Defendants also argue that appointing Commissioner Maginley-Liddie as a Compliance Director in lieu of an independent Remediation Manager would provide adequate accountability and independence, and they further argue that the Court should adopt a clearer standard for purging contempt.  The new evidence that Defendants have presented does not, however, justify modification of any of these aspects of the RM Opinion.

<u>Appointment of a Remediation Manager</u>

After carefully considering the new ratings, the Court declines to modify its decision to appoint an independent Remediation Manager as an injunctive remedy for Defendants' contempt.  As a threshold matter, Defendants' Motion implicitly asks the Court to

modify the legal standard it used in making its determination to appoint the Remediation Manager.  Defendants assert, without evidentiary support or explanation, that the Court's order would "invalidate provisions of state or local law – including the City Charter," triggering the stringent legal standard under the PLRA that "no other relief will correct the violation of the Federal right."  (Def. Mem. at 7 (quoting 18 U.S.C. § 3626(a)(1)(B).)  In the RM Opinion, the Court instead applied generally recognized receiver appointment factors used in PLRA cases and the PLRA standard that courts typically apply when imposing receivers: that the imposed relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  (RM Opinion at 22-23 (applying the receivership factors enumerated in Plata v. Schwarzenegger, No. C01-1351-TEH, 2005 WL 2932253, at *23 (N.D. Cal. Oct. 3, 2005)); id. at 48 (applying 18 U.S.C. § 3626(a)(1)(A))); see also United States v. Hinds County, No. 16-CV-489-CWR-BWR, 2023 WL 1186925, at *4, *13, *15 (S.D. Miss. Jan. 30, 2023) (applying the same receivership factors and PLRA standard); Coleman v. Newsom, No. 90-CV-0520-KJM-SCR-P, 2025 WL 2475040, at *8-9, *12 (E.D. Cal. Aug. 27, 2025) (same).

Defendants have not persuaded the Court that it used the wrong legal standard. Defendants' Motion is based on new evidence (Def. Mem. at 5), but Defendants' new evidence has no bearing on the factual predicate for Defendants' preferred PLRA standard: the invalidation of state or local law.  18 U.S.C. § 3626(a)(1)(B).  Nor have Defendants argued or identified an intervening change in law or controlling law that the Court overlooked.  To the contrary, Defendants advocated for, and did not convince the Court to apply, the same PLRA standard when they briefed the RM Opinion in the first place.  (Docket entry no. 811-12, at 15; docket entry no. 821, at 7-8.)  Defendants have shown no basis for "securing a rehearing on the

merits, or otherwise taking a second bite at the apple" with respect to the applicable legal standard.  Cohen, 2021 WL 2158018, at *2 (citation omitted).  The Court will therefore revisit the RM Opinion using the same legal standard it initially applied, notwithstanding Defendants' failure to address the impact of the new evidence under that standard when arguing for modification.

As to the substance of Defendants' arguments, Defendants argue that the Court's imposed remedy—the appointment of an independent Remediation Manager with the power to take actions necessary to cure Defendants' contempt—is impermissible under the PLRA.  (Def. Mem. at 22).  Defendants argue that no Remediation Manager or injunctive relief is necessary but that, if the Court imposes injunctive relief, it should either adopt Defendants' proposed remedy of appointing Commissioner Maginley-Liddie as a Compliance Director or curtail the Remediation Manager's powers by denying the Remediation Manager authority over Contempt Provisions with which the DOC has achieved Partial Compliance.  (Id. at 23-25.)

As explained above, the Court must determine whether the Monitor's updated compliance ratings, which are the only truly new evidence Defendants present, warrant modification of the Court's determinations with respect to the need for, and powers of, the Remediation Manager.  Defendants emphasize that the Monitor's 19th Report rated Defendants in Partial Compliance with ten of the eighteen Contempt Provisions, whereas the prior Report rated them as in Partial Compliance with only two of the Contempt Provisions.  (E.g., Reply at 5-6.)  In Defendants' view, this "provides ample basis to conclude that the Remediation Manager is not needed, because the Commissioner can indeed achieve [S]ubstantial [C]ompliance" without a Remediation Manager.  (Def. Mem. at 10.)  The Court has repeatedly lauded Commissioner Maginley-Liddie's progress in the past and continues to regard her work with respect and

gratitude.  However, the updated compliance ratings do not alter the Court's conclusions with

respect to the receivership test factors and therefore do not justify modification of the RM

Opinion.  This is so for at least two reasons.

First, the fact that the DOC has moved into Partial Compliance with ten of the

eighteen Contempt Provisions does not negate the need for an independent Remediation

Manager at this juncture.  It is uncontested that the Monitor still rated Defendants in Non-

Compliance with eight Contempt Provisions.  But even for the ten cited Contempt Provisions, a

Partial Compliance rating does not indicate that Defendants have remedied underlying

constitutional violations.  Partial Compliance means that "the Department has achieved

compliance on some components of the relevant provision of the Agreement, but significant

work remains."  (Consent Judgment at 55 n.3 (emphasis added).)  The Monitor's 19th Report

clearly shows that "significant work remains" to bring DOC jails into compliance with the

Constitution, Defendants' Partial Compliance ratings notwithstanding.  While it is true, for

example, that many indicators of UOF and violence decreased slightly in the latter half of 2024

when compared to the first half, those rates are still significantly higher than the already

unconstitutional levels present in 2016 when Defendants entered into the Consent Judgment.

(See Monitor's 19th Report at 241-47.)  Defendants have not achieved Substantial Compliance

with any of the eighteen Contempt Provisions,[3] and their Partial Compliance with some

Provisions clearly has not changed the fact that a "grave and immediate threat or actuality of

---

[3]    Substantial Compliance means that "the Department has achieved a level of compliance
that does not deviate significantly from the terms of the relevant provision."  (Consent
Judgment at 55 n.3.)

harm to plaintiffs" still exists in DOC jails, which strongly favors appointing a Remediation Manager.  (See RM Opinion at 23 (quoting Plata, 2005 WL 2932253, at *23).)

Second, the new compliance ratings in the Monitor's 19th Report do not change the Court's conclusion that an independent Remediation Manager is necessary to achieve and sustain Substantial Compliance with the Contempt Provisions given the "unfortunate cycle of small progress followed by regression" that characterizes the past decade of this case's history. (Id. at 27.)  As the Court explained in the RM Opinion, Defendants have failed to achieve Substantial Compliance in "virtually every core area the Court and the Monitor have identified as related to the persistence of excessive and unnecessary force" despite multiple orders with "substantially similar requirements" and "over nine years of assistance from the Monitor and his team." (Id. at 24-25.)  The fact that Defendants have recently come into Partial Compliance with ten Contempt Provisions does not change the Court's conclusion that an independent Remediation Manager is required "[g]iven Defendants' long history of noncompliance and contemptuous conduct." (Id. at 33.)  This is particularly so because, as Plaintiffs correctly note, Defendants previously received Partial Compliance ratings with respect to at least six of the eighteen Contempt Provisions only to later backslide into Non-Compliance and eventual contempt.  (Pls. Opp. at 10.)  The Monitor's new compliance ratings therefore do not change the Court's conclusions that key receivership factors—including the futility of less extreme measures and the risk of "further delay, as well as needless death and [harm]" absent injunctive relief—favor appointing an independent Remediation Manager.  (RM Opinion at 24, 26 (quoting Plata, 2005 WL 2932253, at *29).)

In sum, after considering the new evidence Defendants presented, the Court declines to modify the injunctive relief it imposed.  The Monitor's new compliance ratings do

not change the Court's conclusions with respect to any of the receivership appointment factors, nor do they convince the Court that the appointment of an independent Remediation Manager is too intrusive under the PLRA. To the contrary, the Court remains convinced that the authority granted to a Remediation Manager "is narrowly drawn, extends no further than necessary to correct the violation of the [Contempt Provisions], and is the least intrusive means necessary to correct the violation of the [Contempt Provisions]," as required under the PLRA. (Id. at 46 (quoting 18 U.S.C. § 3626(a)(1)(A)).) Defendants' Motion is denied as to their first requested modification of the RM Opinion.

<u>Defendants' Other Requested Modifications</u>

While the bulk of Defendants' brief pertains to the appointment of a Remediation Manager, Defendants also appear to request modification of several other aspects of the RM Opinion. Specifically, Defendants take issue with the Court's conclusion that appointing Commissioner Maginley-Liddie as a Compliance Director would be "insufficient to establish the independence and informed outside perspective" necessary to remedy Defendants' contempt (id. at 32; see also Def. Mem. at 22-23), and Defendants further argue that the Court should adopt a "clear standard for purging any contempt" (Def. Mem. at 24).

Defendants have not provided any basis under Rule 54(b) that would counsel the Court to revisit its conclusions regarding these portions of the RM Opinion. Defendants do not argue that the Monitor's 19th Report even contemplates, much less provides new evidence pertaining to, Commissioner Maginley-Liddie's independence or the standard for purging contempt. Nor do Defendants argue that any other criteria warranting reconsideration were met. Rather, it appears that Defendants simply "disagree[] with the Court's [rulings] and wish[] to litigate the issue[s] anew." <u>Wood v. Mike Bloomberg 2020, Inc.</u>, No. 20-CV-2489-LTS-GWG,

2025 WL 1696535, at *2 (S.D.N.Y. June 17, 2025).  A motion for reconsideration, however, is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple," Cohen, 2021 WL 2158018, at *2 (citation omitted), and Defendants' Motion is therefore denied as to these requested modifications of the RM Opinion.

The Court notes, however, that it has already provided Defendants with an avenue for presenting arguments regarding the particulars of the scope of the Remediation Manager's power by inviting the parties to submit objections to the Proposed Order appended to the RM Opinion.  Defendants availed themselves of that opportunity (see docket entry no. 906-2), and the Court will consider and rule on those objections in due course.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration is denied in its entirety.  This Memorandum Order resolves docket entry no. 865.


SO ORDERED.
Dated: New York, New York
        October 16, 2025


/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge