UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARK NUNEZ, et al.,

        Plaintiffs,

    -v-                              No.  11-CV-5845-LTS-RWL

NEW YORK CITY DEPARTMENT OF
CORRECTION and THE CITY OF NEW
YORK,

        Defendants.

--------------------------------------------------------x

MEMORANDUM ORDER CONCERNING REVISION OF PROPOSED REMEDIATION MANAGER

APPOINTMENT ORDER

        In its Opinion and Order Regarding Appointment of a Nunez Remediation

Manager, Nunez v. N.Y.C. Dep't of Corr., 782 F. Supp. 3d 146 (S.D.N.Y. 2025) ("RM

Opinion"), the Court announced and explained its decision to appoint an independent Nunez

Remediation Manager to oversee the management of certain aspects of New York City's jails.

The RM Opinion followed the Court's issuance of its November 27, 2024 Contempt Order,

Nunez v. N.Y.C. Dep't of Corr., 758 F. Supp. 3d 190 (S.D.N.Y. 2024) ("Contempt Order"),

which held Defendants the New York City Department of Correction (the "DOC") and the City

of New York (collectively, "Defendants") in civil contempt of eighteen provisions (the

"Contempt Provisions") of four Court Orders previously entered in this case.[1]

----

[1]    Those four Court Orders were filed on the public docket at docket entry nos. 249
("Consent Judgment"), 350 ("First Remedial Order"), 398 ("Second Remedial Order"),
and 465 ("Action Plan") (collectively, the "Subject Orders").

In the RM Opinion, the Court announced that it will appoint an independent Nunez Remediation Manager to cure Defendants' longstanding contempt and to remedy ongoing violations of constitutional rights of people in custody in New York City jails. The Court also provided the preliminary text of an order that would appoint the Nunez Remediation Manager and define the scope of the Nunez Remediation Manager's role. See RM Opinion App. B. The Court invited the parties to proffer written objections to the language of the preliminary order. See id. at 175. The parties submitted their objections, and the Monitoring Team provided its feedback and suggested revisions, through a joint status report filed by the Monitoring Team on September 11, 2025. (See docket entry no. 906 ("Objections").)

The Court has thoroughly reviewed and considered all of the parties' Objections and the Monitoring Team's feedback. After careful consideration, those Objections are overruled and the Court declines to adopt revisions suggested by the Monitoring Team except to the extent that they are reflected in the form of Order Appointing a Nunez Remediation Manager (the "RM Appointment Order") that is attached to this Memorandum Order as Exhibit A.[2] Below the Court discusses some of the more noteworthy revisions to the RM Appointment Order and explains its reasons for overruling certain Objections to the Order.

The Remediation Action Plan (Section II)

The Court has replaced the contemplated single Remediation Action Plan ("RAP") document with a series of Remediation Action Plans, building successively on each other to enable the DOC to achieve Substantial Compliance with all Contempt Provisions within seven years, if not sooner. (See Exhibit A § II, ¶ A.) The Court implemented this change in

---

[2]    A redline copy comparing the form of RM Appointment Order in Exhibit A with the May 2025 version of the Order is attached to this Memorandum Order as Exhibit B.

response to the Monitoring Team's well-reasoned observation that, due to the complexity and dynamism of the DOC, a one-time RAP detailing work spanning multiple years into the future would be "speculative at best." (Objections App. A at 6.)[3]  The Court is persuaded that a series of RAPs would enable the Nunez Remediation Manager and the DOC to work more dynamically and effectively than a one-time RAP formulated by the Nunez Remediation Manager at the very beginning of their tenure.  These RAPs, which will each be designed to be implemented over two successive Reporting Periods,[4] will provide the Nunez Remediation Manager with the flexibility to respond to situations as they arise, and cumulative Benchmarks in each RAP will build toward the achievement of Substantial Compliance with the Contempt Provisions within seven years, ensuring continuity and an ambitious vision.

Assessment of Compliance and Transition Back to DOC Control (Section III)

The Court implemented three noteworthy changes with respect to the assessment of compliance and the transition back to DOC control.

First, the Court revised the events that trigger initiation of the formal transition planning process.  Specifically, the creation of Transition Plans is now tied only to Substantial Compliance with the Contempt Provisions, not to Substantial Compliance with the Benchmarks of the RAPs.  (See Exhibit A § III, ¶ A.)  The Court implemented this change in response to Plaintiffs' concerns about administrability.  (Objections App. A at 12.)  The Court is persuaded that it is infeasible to subdivide the process of returning authority to the DOC based on not-yet

---

[3]      All pincites contained in citations to the Objections refer to ECF-designated pages.

[4]      Capitalized terms not otherwise defined have the meanings ascribed to them in the RM Opinion and the annexed RM Appointment Order.

determined Benchmarks that may or may not lend themselves to formal compliance assessments.[5]

Second, the Court has shortened the period for which the DOC must maintain Substantial Compliance with a Contempt Provision before authority over areas solely relevant to that Contempt Provision can be returned to the DOC. (Exhibit A § III, ¶ F.) The Nunez Remediation Manager's authority over functions relevant to a Contempt Provision will now terminate 60 days after the Monitoring Team's filing of a Monitor's Report that reports the Contempt Provision in Substantial Compliance for the second successive Reporting Period, rather than terminating after the third successive Reporting Period. (Id.) Transition Plans thus must now be designed to be completed over this shorter time frame. (Id. § III, ¶ C.)

The Court adopted this change in response to Objections by Defendants and feedback from the Monitoring Team. Defendants' position is that, under the PLRA, the DOC must reassume authority over a Contempt Provision almost immediately upon achieving Substantial Compliance. (Objections App. B at 27.) Defendants' position is untenable given the DOC's well-documented failure to sustain progress, as the Court explained when ruling on Defendants' request for reconsideration of the RM Opinion. See Nunez v. N.Y.C. Dep't of Corr., No. 11-CV-5845-LTS-RWL, 2025 WL 2939046, at *5 (S.D.N.Y. Oct. 16, 2025) ("Reconsideration Opinion"). Given the "unfortunate cycle of small progress followed by regression" that has defined Defendants' decade-long failure to achieve Substantial Compliance, see RM Opinion at 163, prospective relief that includes a period of maintenance of Substantial

---

5       Consequently, while the Monitoring Team will report on the work completed on the RAPs and efforts to meet the Benchmarks, the Monitoring Team will not be required to provide a formal compliance rating for the Benchmarks in the RAPs. (See Exhibit A § VI, ¶ B.)

Compliance is "narrowly drawn, extends no further than necessary to correct the violation of the [Contempt Provisions], and is the least intrusive means necessary to correct" those violations, 18 U.S.C. § 3626(a)(1)(A).  That said, the Court adopted the Monitoring Team's recommendation that a shorter maintenance period of Substantial Compliance will be sufficient to ensure that the DOC can implement and sustain constitutionally adequate correctional practices.

Third, the Court expanded on and clarified the provision authorizing the Nunez Remediation Manager to voluntarily delegate authority to the Commissioner outside of the formal Transition Plan process.  (See Exhibit A § III, ¶ H.)  The Court added this language in response to Defendants' Objections and the Monitoring Team's feedback that transition planning should begin as soon as prudently possible.  (See Objections App. A at 12-13; id. App. B at 27.)

The Court was persuaded by Plaintiffs' arguments that it would be inefficient and inappropriate to tether the formal transition planning process to a finding of Partial Compliance, a milestone that is achieved at a point where "significant work remains" to achieve compliance.  (Id. App. A at 13.)  The Court therefore declines to adopt Defendants' proposal that Transition Plans must be developed and implemented upon a finding of Partial Compliance with the Contempt Provisions or the Benchmarks of the RAPs.  The Court is mindful, however, of the rationale underlying Defendants' Objections, which is that the Order should be designed to reflect the importance of returning authority back to Defendants as soon as feasible.  By encouraging the Nunez Remediation Manager to "voluntarily delegate responsibility to the extent the Nunez Remediation Manager deems such delegation consistent with efficiency, effectuation of change, and the fostering of a respectful, sustainable, and safety-oriented approach to management," the updated Order will create opportunities for the DOC to resume some authority following progress in discrete areas, even if the DOC has not yet achieved

Substantial Compliance with the broad areas implicated by the Contempt Provisions.  (See Exhibit A § III, ¶ H.)  The Court is persuaded that this mechanism will generate more sustainable reform and facilitate the eventual transition of all authority back to the DOC.

Immunity and Indemnity (Section VII)

Defendants seek to curtail the scope of the Nunez Remediation Manager's immunity dramatically and remove the indemnification provision from the RM Appointment Order altogether.  (See Objections App. A at 37; id. App. B at 14-15.)  After careful consideration, the Court declines to change the scope of the provisions for immunity and indemnity.

Immunity and indemnity are clearly necessary and appropriate in this case.  It bears repeating that the only reason Defendants now face the need to indemnify a Nunez Remediation Manager is that, despite multiple Court Orders and a decade of assistance from the Monitoring Team, the DOC still has not achieved Substantial Compliance in "virtually every core area the Court and the Monitor have identified as related to the persistence of excessive and unnecessary force."  Reconsideration Opinion at *5; RM Opinion at 162.  The consequences of a decade of mismanagement of the New York City jails and a glacial approach to reform are Defendants' failure to protect the constitutional rights of persons in custody and their ultimate fall into contempt of Court.  See generally Contempt Order.  Immunity and indemnity are essential to empower and protect qualified candidates for a Nunez Remediation Manager and Remediation Manager Team who can finally "achieve effective management of the jails that protects the constitutional rights of incarcerated people" and remedy Defendants' contempt.  RM Opinion at 169.  Immunity and indemnity are therefore necessary to remedy Defendants' constitutional violations and are appropriate under the PLRA.  (Contra Objections App. B at 9.)

Bolstering this conclusion is the fact that immunity and indemnity rights are commonplace in orders appointing receivers.  The Court's language, for instance, closely parallels that in the <u>Plata</u> receivership order.  Ord. Appointing Receiver at 6, <u>Plata v. Schwarzenegger</u>, No. 01-CV-1351-TEH (N.D. Cal. Feb. 14, 2006), Dkt. No. 473.  Defendants argue that <u>Plata</u> is inapplicable because it concerned a receiver granted authority over a prison medical system, not the entire prison system (Objections App. B at 14 n.2), but this is a distinction without a difference.  Both spheres of responsibility could potentially make even the most meticulous receiver the target of litigation, and potential liability for litigation costs and any potential award would make highly qualified individuals reluctant to perform important public service as receivers charged with remedying unconstitutional conditions in public institutions.  <u>Plata</u>, moreover, established the dominant test for imposing a receivership under the PLRA, which the Court applied in the RM Opinion.  <u>See</u> RM Opinion at 161.  That the <u>Plata</u> receiver enjoyed indemnity and immunity rights is therefore highly relevant to the Court's analysis of whether those rights comply with the PLRA.  It is also highly relevant that the <u>Hinds County</u> receivership order provided for immunity and indemnity after the court conducted a needs-narrowness inquiry on remand from the Fifth Circuit and that the <u>Coleman</u> and <u>Cook County</u> receivership orders both contain provisions nearly identical to this Court's.  <u>See</u> Order, <u>United States v. Hinds County</u>, No. 16-CV-489-CWR (S.D. Miss. June 27, 2025), Dkt. Nos. 282, 282-2, 282-3; Order & Order Appointing Receiver-Nominee at 4-5, <u>Coleman v. Newsom</u>, No. 90-CV-0520-KJM (E.D. Cal. Apr. 2, 2025), Dkt. No. 8589; Concluding Order at 2, <u>Doe v. Cook County</u>, No. 99-CV-3945-JAN (N.D. Ill. May 15, 2015), Dkt. No. 786 at 2; Order, <u>Cook County</u>, No. 99-CV-3945-JAN (N.D. Ill. June 22, 2010), Dkt. No. 587.

Under these circumstances, the Court has no difficulty concluding that the immunity and indemnity provisions in the RM Appointment Order are "narrowly drawn, extend[] no further than necessary to correct the violation of the [Contempt Provisions], and [are] the least intrusive means necessary to correct" those violations and, thus, comply with the PLRA. 18 U.S.C. § 3626(a)(1)(A).

Compensation and Expenses (Section VIII)

The Court is cognizant of Defendants' position, echoed by the Monitoring Team, that "a statement of expected reasonable costs and expenses" should be approved before the final appointment of the Nunez Remediation Manager.  (Objections, App. A at 38.)  The Court adopted most of the revisions that the Monitoring Team proposed to this Section.  This approach is also consistent with the Court's plans for next steps, as set forth in the Conclusion below.

CONCLUSION

Having ruled on the parties' Objections and the Monitoring Team's feedback, the Court is now actively engaged in the process of evaluating applicants and conducting any necessary interviews for the Nunez Remediation Manager position.  Once the Court has selected a Nunez Remediation Manager candidate, it will issue a separate sealed Order directing the candidate to promptly meet and confer with Defendants to develop a proposed budget, discuss proposed initial staffing of the Remediation Manager Team, and discuss other arrangements and logistics required for the Nunez Remediation Manager to efficiently commence performing their duties.  Defendants and the Nunez Remediation Manager will then confidentially submit to the Court a report reflecting the agreements they have reached through their discussions and any material points of disagreement, at which point the Court expects to enter an RM Appointment

Order substantially in the form of Exhibit A hereto, formally appointing the Nunez Remediation

Manager.  Thereafter, the budgeting process detailed in Section VIII of the RM Appointment

Order will commence.


SO ORDERED.

Dated: New York, New York
       December 18, 2025


/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

# EXHIBIT A: ORDER APPOINTING NUNEZ

# REMEDIATION MANAGER

**EXHIBIT A TO DECEMBER 18, 2025 MEMORANDUM ORDER CONCERNING REVISION OF**

**PROPOSED REMEDIATION MANAGER APPOINTMENT ORDER:**

### ORDER APPOINTING NUNEZ REMEDIATION MANAGER

WHEREAS, on October 22, 2015, this Court entered the Consent Judgment in this matter (docket entry no. 249) to correct violations of the constitutional rights of people in custody in jails operated by the New York City Department of Correction (the "DOC" or "the Department")[1];

WHEREAS, the Consent Judgment required Defendants the DOC and the City of New York (collectively, "Defendants") to take specific actions to remedy a pattern and practice of violence by staff against persons in custody, and to develop and implement new practices, policies, and procedures to reduce violence in the jails and ensure the safety and well-being of persons in custody;

WHEREAS, Section XXII, ¶ 1 of the Consent Judgment provides: "The Parties stipulate and agree, and the Court finds, that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a). The Parties further stipulate and agree, and the Court finds, that the prospective relief in this Agreement is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that the Agreement complies with the provisions of 18 U.S.C. § 3626(a)";

---

[1]     The Plaintiff Class is defined as "all present and future inmates confined in jails operated by the Department, except for the Elmhurst and Bellevue Prison Wards." (Docket entry no. 249 ¶ II.2.)

WHEREAS, on August 14, 2020, the Court entered a Remedial Consent Order Addressing Non-Compliance (the "First Remedial Order," docket entry no. 350) that included several remedial measures designed to address the repeated findings of the Nunez Independent Monitor (the "Monitor" or "Monitoring Team," which shall each refer to the Monitor and members of the Monitoring Team) that the Defendants were not in compliance with core provisions of the Consent Judgment, including Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision);

WHEREAS, in his Eleventh Report filed on May 11, 2021 (docket entry no. 368), the Monitor reported that the Defendants were not in compliance with numerous provisions of the First Remedial Order, including Section A, ¶ 2 (Facility Leadership Responsibilities), Section A, ¶ 3 (Revised De-escalation Protocol), Section A, ¶ 6 (Facility Emergency Response Teams), Section D, ¶ 1 (Consistent Staffing), Section D, ¶ 2 (ii) (Tracking of Incentives and Consequences), and Section D, ¶ 3 (Direct Supervision);

WHEREAS, the Court entered a Second Remedial Order on September 29, 2021 (docket entry no. 398), and a Third Remedial Order on November 22, 2021 (docket entry no. 424);

WHEREAS, after the three Remedial Orders failed to result in meaningful improvements, the Defendants developed an Action Plan, supported by the Monitor, that was designed to address Defendants' overall lack of progress toward compliance by focusing on four foundational areas without which reform could not proceed—security practices, supervision and

leadership, staffing practices, and accountability—and the Court entered and So Ordered the Action Plan on June 14, 2022 (docket entry no. 465);

WHEREAS, the Court issued five additional Court Orders in 2023[2] (collectively the "2023 Orders") that were intended to catalyze improvement in the Department's management of the Nunez Orders, its work with the Monitor, and its efforts to address fundamental security, reporting, and management practices;

WHEREAS, the Court found that the First Remedial Order, the Second Remedial Order, the Third Remedial Order, the Action Plan, and the 2023 Orders were each compliant with the provisions of 18 U.S.C. § 3626(a) and were necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class;

WHEREAS, the First Remedial Order, the Second Remedial Order, the Third Remedial Order, the Action Plan, and the 2023 Orders were each entered to address the Defendants' ongoing non-compliance with the Consent Judgment and to achieve the Consent Judgment's primary goal: to protect the constitutional rights of persons in custody and substantially reduce the level of violence in the jails;

WHEREAS, the Consent Judgment, the First Remedial Order, the Second Remedial Order, and the Action Plan are hereafter collectively referred to as "the Subject Orders," while the Subject Orders, the Third Remedial Order, the 2023 Orders, and all other substantive Orders that are currently operative in this case are hereafter collectively referred to as "the Nunez Orders";

---

[2]    These five orders are the June 13, 2023 Order (docket entry no. 550), the August 10, 2023 Order (docket entry no. 564), the October 10, 2023 Order (docket entry no. 582), the December 15, 2023 Order (docket entry no. 656), and the December 20, 2023 Order (docket entry no. 665).

WHEREAS, more than a year after the Action Plan was entered, the Monitor found in his July 10, 2023 Special Report (docket entry no. 557) that the Defendants had not made substantial and demonstrable progress in implementing the reforms, initiatives, plans, systems, and practices outlined in the Action Plan, and that there had not been a substantial reduction in the risk of harm facing persons in custody and DOC staff;

WHEREAS, on November 17, 2023, the Plaintiff Class and the United States filed a Motion for Contempt and Appointment of Receiver (docket entry no. 601);

WHEREAS, on November 27, 2024, this Court issued its factual findings and decision granting Plaintiffs' Motion for Contempt, finding that Defendants (i) are in contempt of eighteen core provisions of the Nunez Orders (the "Contempt Provisions") "that have gone unheeded for years and have highlighted failures inextricably linked to the Department's historic pattern of excessive use of force against persons in custody" (docket entry no. 803, at 52); (ii) "have not demonstrated diligent attempts to comply with the Contempt Provisions in a reasonable manner" (id. at 52); and (iii) have repeatedly and consistently failed to remediate the violations of the federal rights of persons in custody that necessitated entry of the Consent Judgment (id. at 52, 54-56);

WHEREAS, this Court found that the "use of force rate and other rates of violence, self-harm, and deaths in custody are demonstrably worse than when the Consent Judgment went into effect in 2015" and the "unsafe and dangerous conditions in the jails . . . have become normalized despite the fact that they are clearly abnormal and unacceptable" (docket entry no. 803, at 11);

WHEREAS, this Court found that "for nine years, Defendants made only half-hearted, inconsistent efforts to comply with Court orders" (docket entry no. 803, at 50);

WHEREAS, this Court found that "[t]he record in this case makes clear that those who live and work in the jails on Rikers Island are faced with grave and immediate threats of danger, as well as actual harm, on a daily basis as a direct result of Defendants' lack of diligence, and that the remedial efforts thus far undertaken by the Court, the Monitoring Team, and the parties have not been effective to alleviate this danger" (docket entry no. 803, at 55);

WHEREAS, this Court found that "Defendants' ongoing failure to comply" requires a remedy that addresses the "insufficiently resourced leadership; a lack of continuity in management; failures of supervision and cooperation between supervisors and line officers; a lack of skill or imagination to create and implement transformative plans; and an unwillingness or inability to cooperate with the Monitoring Team recommendations to accomplish the changes necessary" (docket entry no. 803, at 54);

WHEREAS, this Court found that "[t]he last nine years also leave no doubt that continued insistence on compliance with the Court's orders by persons answerable principally to political authorities would lead only to confrontation and delay; that the current management structure and staffing are insufficient to turn the tide within a reasonable period; that Defendants have consistently fallen short of the requisite compliance with Court orders for years, at times under circumstances that suggest bad faith; and that enormous resources—that the City devotes to a system that is at the same time overstaffed and underserved—are not being deployed effectively" (docket entry no. 803, at 55-56); and

WHEREAS, as required by 18 U.S.C. § 3626(a), the prospective relief delineated in this Order is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the Plaintiff Class and the United States, is the least intrusive means

necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. Appointment of <u>Nunez</u> Remediation Manager and <u>Nunez</u> Remediation Manager's Duties.

A. **[NAME]** is hereby appointed to serve in this case as <u>Nunez</u> Remediation Manager, with the responsibility and authority to take all necessary steps to promptly achieve Substantial Compliance (defined in Section XX, ¶ 18 of the Consent Judgment) with the Contempt Provisions.

B. The <u>Nunez</u> Remediation Manager's work shall be guided by "Remediation Action Plans," which shall be work plans developed sequentially by the Remediation Manager that include specific and concrete steps and milestones ("Benchmarks") designed cumulatively to achieve Substantial Compliance with the Contempt Provisions. The process for developing Remediation Action Plans is detailed in Section II.

C. The <u>Nunez</u> Remediation Manager shall provide leadership and executive management with respect to achieving Substantial Compliance with the Contempt Provisions with the goal of developing and implementing a sustainable system that protects the constitutional rights of persons in custody.

D. The <u>Nunez</u> Remediation Manager shall be answerable only to the Court.

E. The <u>Nunez</u> Remediation Manager shall maintain an office within Department headquarters or on Rikers Island, work on a full-time basis unless otherwise expressly permitted by the Court, and primarily work onsite.

F. The Nunez Remediation Manager shall not maintain any employment or contract work other than the Nunez Remediation Manager position unless such additional work is expressly approved by the Court.

## II. Development and Implementation of the Remediation Action Plans.

A. The Nunez Remediation Manager, in consultation with the Commissioner of the New York City Department of Correction (the "Commissioner") and the Monitoring Team, shall develop a series of Remediation Action Plans that are designed, cumulatively, to enable the Department to achieve Substantial Compliance with all of the Contempt Provisions within seven years, if not sooner. This provision does not govern the tenure of the Nunez Remediation Manager or the duration of the Nunez Remediation Manager's authority with respect to any specific Contempt Provision.  Such matters are governed exclusively by Sections III and IX.

B. The Benchmarks set forth in the first Remediation Action Plan are, unless otherwise ordered by the Court, to be achieved by the end of the second Reporting Period following the Court's approval of such Remediation Action Plan.[3] Thereafter, the Nunez Remediation Manager shall issue successive Remediation Action Plans, each setting Benchmarks to be achieved over the two consecutive Reporting Periods following the expiration of the prior Remediation Action Plan.

C. Each Remediation Action Plan shall:

---

[3]    The Reporting Periods in this case cover January 1 to June 30 and July 1 to December 31 of each year.

    i.  include specific and concrete steps (i.e., the relevant Benchmarks) that are necessary within the period covered by the operative Remediation Action Plan to enable Defendants to ultimately achieve Substantial Compliance with the Contempt Provisions.  The Benchmarks identified in each Remediation Action Plan shall be organized in a manner that identifies priorities, beginning with the safety-related areas and actions that are most urgently in need of attention;

    ii.  include transformative and sustainable initiatives, which shall include any positive initiatives then underway that must be sustained or enhanced during the relevant period; and

    iii.  to the extent that recommendations by the Monitoring Team to support advancing compliance with the Contempt Provisions for the relevant period are not already included in the Benchmarks, address such recommendations from the Monitoring Team.

D.   Timing of the Remediation Action Plans:

    i.  The <u>Nunez</u> Remediation Manager shall provide the first Remediation Action Plan to the parties in draft form for comment within 90 days of the date of the <u>Nunez</u> Remediation Manager's commencement of their official duties under this Order (the <u>Nunez</u> Remediation Manager's "Onboard Date").  Each party shall provide the <u>Nunez</u> Remediation Manager, the Monitoring Team, and the other parties with their comments on the draft of the first Remediation Action Plan, if any, within 30 days of receipt. The <u>Nunez </u>Remediation Manager, in consultation with the Commissioner

and the Monitoring Team, shall consider the comments from the parties and make any changes deemed necessary. The Nunez Remediation Manager shall file the final version of the proposed first Remediation Action Plan with the Court for approval within 21 days of receipt of the parties' comments. The first Remediation Action Plan shall expire on June 30, 2027.

ii. After the first Remediation Action Plan, each successive Remediation Action Plan shall cover the two consecutive Reporting Periods, from July 1 of the year of its Court approval through June 30 of the following year, unless otherwise ordered by the Court. The Nunez Remediation Manager shall submit each subsequent Remediation Action Plan to the parties in draft form for comment 50 days prior to the expiration of the prior Remediation Action Plan. Each party shall provide the Nunez Remediation Manager, the Monitoring Team, and the other parties with their comments on such Remediation Action Plan within 20 days of receipt of the Remediation Action Plan. The Nunez Remediation Manager, in consultation with the Commissioner and the Monitoring Team, shall consider the comments from the parties and make any changes deemed necessary. The Nunez Remediation Manager shall then file each such proposed Remediation Action Plan with the Court within 15 days of receipt of the parties' comments.

iii. Remediation Action Plans shall become effective upon approval by the Court, and their implementation must begin immediately upon their

approval by the Court.  This work shall be undertaken in collaboration

with the Commissioner to the greatest extent consistent with efficiency,

effectuation of change, and the fostering of a respectful, sustainable, and

safety-oriented approach to management.

    iv.  The Nunez Remediation Manager may seek to modify or amend

Remediation Action Plans upon application to the Court.  The Nunez

Remediation Manager shall consult with the Commissioner, the

Monitoring Team, and the parties in advance of any application to the

Court, and any such application shall be made on reasonable notice to the

parties and the Monitoring Team.  For good cause, the Court may on its

own motion and on notice to the Nunez Remediation Manager and the

parties, who shall have the right to be heard on the matter, change any

element of a Remediation Action Plan.

E.  Within 30 days following Court approval of the first Remediation Action Plan,

the Nunez Remediation Manager, the Monitoring Team, and the Commissioner

shall jointly develop an updated DOC organizational chart that delineates the

reporting lines of divisions, operational functions, and personnel that are subject

to the direct authority of the Nunez Remediation Manager and the Commissioner,

respectively, and those that are subject to the direct authority of both the Nunez

Remediation Manager and the Commissioner.  The Nunez Remediation Manager

shall determine lines of authority in areas that are subject to the Contempt

Provisions should there be disagreement between the Nunez Remediation

Manager and the Commissioner.

**III. Assessment of Compliance & Transition Back to DOC Control.**

 A. Upon a finding by the Monitoring Team that Defendants are in Substantial Compliance with one or more of the Contempt Provisions, the <u>Nunez</u> Remediation Manager shall begin working with the Commissioner on a Transition Plan that shifts responsibility and authority over all functions within the scope of the relevant Contempt Provision(s) back to the Department.

 B. Transition Plans shall explain (1) how to sustain the progress achieved, (2) the steps the <u>Nunez</u> Remediation Manager will take to prepare the Department to operate independently in the relevant area, (3) the actions the Department will take to maintain or improve upon the required performance level and sustain compliance, and (4) and any other information and provisions that the <u>Nunez</u> Remediation Manager and the Commissioner deem appropriate to support the maintenance of Substantial Compliance in the relevant area.

 C. Transition Plans shall be designed to facilitate the termination of the <u>Nunez</u> Remediation Manager's authority for the relevant function(s) within 60 days of the Monitoring Team's filing of the Monitor's Report that rates the Contempt Provision in Substantial Compliance for the second successive Reporting Period. The Monitoring Team shall be consulted in the preparation of all Transition Plans.

 D. The <u>Nunez</u> Remediation Manager shall submit the relevant Transition Plan to the Court within 30 days of the issuance of the first Monitor's Report finding that Defendants are in Substantial Compliance with the relevant Contempt Provision.

 E. Upon receipt of each Transition Plan, the Court shall determine whether Substantial Compliance with the relevant Contempt Provision(s) has been

achieved and, upon the Court's finding of Substantial Compliance, shall approve the Transition Plan with any modifications the Court deems necessary.  The Nunez Remediation Manager and the Commissioner shall thereafter implement the Transition Plan.

F.  Following such implementation, the Nunez Remediation Manager's authority over the relevant Contempt Provision(s) shall be terminated within 60 days after the Monitoring Team's filing of the Monitor's Report that rates the Contempt Provision(s) in Substantial Compliance for the second successive Reporting Period, unless the Court extends the termination date for good cause.

G.  If the Department does not sustain Substantial Compliance with a Contempt Provision after the Nunez Remediation Manager's authority over that Contempt Provision has terminated but before the Nunez Remediation Manager's tenure has terminated, the Court shall have the authority to restore authority over any or all functions related to the relevant Contempt Provision to the Nunez Remediation Manager.  The Court shall effect such a restoration only upon application of the parties or of the Nunez Remediation Manager.  The applicant must provide notice to the parties, the Nunez Remediation Manager, and the Monitoring Team before making any such application.

H.  The Nunez Remediation Manager shall have the authority and discretion to voluntarily delegate to the Commissioner responsibility for any or all of the functions under the Nunez Remediation Manager's authority at any given time, including, but not limited to, functions that are the subject of relevant Benchmarks of the operative Remediation Action Plan and functions related to Contempt

Provisions for which the Monitor has rated the Defendants to be in Partial Compliance. The <u>Nunez</u> Remediation Manager is encouraged to voluntarily delegate responsibility to the extent the <u>Nunez</u> Remediation Manager deems such delegation consistent with efficiency, effectuation of change, and the fostering of a respectful, sustainable, and safety-oriented approach to management. The <u>Nunez</u> Remediation Manager's voluntary delegation of responsibilities shall not affect the timeline or requirements for Transition Plans nor the termination of the <u>Nunez</u> Remediation Manager's authority over a Contempt Provision. The <u>Nunez</u> Remediation Manager shall have the ability to modify or retract any voluntarily delegated authority if the <u>Nunez</u> Remediation Manager deems such a modification or retraction necessary and shall modify or retract any voluntarily delegated authority as the Court deems necessary.

I. In addition to filing reports with the Court as required by Section V, ¶ B below, the <u>Nunez</u> Remediation Manager shall be available to the Court throughout the <u>Nunez</u> Remediation Manager's tenure and shall meet with the Court on an informal, as needed, basis.

J. If the Court determines at any time that the <u>Nunez</u> Remediation Manager's performance is unsatisfactory or that the <u>Nunez</u> Remediation Manager's tenure, responsibilities, or authority should be modified or terminated to any extent not contemplated by this Order, the Court shall first discuss the concern with the <u>Nunez</u> Remediation Manager and the Monitoring Team, and shall thereafter provide the parties notice of any action the Court intends to take with respect to the modification or termination of the <u>Nunez</u> Remediation Manager's tenure,

responsibilities or authority, and the reasons therefor.  Upon the Court's proposal, the Nunez Remediation Manager, the parties, and the Monitoring Team will be provided with the opportunity to be heard prior to any action.

IV. **Powers of the Nunez Remediation Manager.**  Beginning on the Nunez Remediation Manager's Onboard Date, the Nunez Remediation Manager shall have all powers necessary to achieve Substantial Compliance with the Contempt Provisions, including, but not limited to:

A. **General Powers**: The Nunez Remediation Manager shall have the authority to exercise all powers vested by law in the Commissioner to the extent necessary to achieve compliance with the Contempt Provisions, including, but not limited to, such powers with respect to administrative, personnel, financial, accounting, contracting, legal, and other operational functions of the DOC to the extent necessary to achieve compliance with the Contempt Provisions.

B. **Specific Powers**: Without in any way limiting the Nunez Remediation Manager's general powers detailed in Paragraph A above, the Nunez Remediation Manager shall have the authority to exercise the following specific powers to the extent that they (a) are necessary to achieve sustainable Substantial Compliance with the Contempt Provisions, and (b) are vested by law in the Commissioner:

i. The Nunez Remediation Manager shall have the authority to enact or change DOC policies, procedures, protocols, systems, and practices.

ii. The Nunez Remediation Manager shall have the authority to establish personnel policies and direct personnel actions.  The Nunez Remediation Manager shall have the power to create, modify, abolish, or transfer

employee and contractor positions, as well as to recruit, hire, train, terminate, promote, demote, transfer, and evaluate employees and contractors.  The <u>Nunez</u> Remediation Manager shall have the authority to assign and deploy DOC staff.

 iii. The <u>Nunez</u> Remediation Manager shall have the authority to determine the DOC's needs and positions with respect to contract provisions.

 iv. The <u>Nunez</u> Remediation Manager shall have the authority to procure and contract for supplies, equipment, tangible goods, and services.

 v. The <u>Nunez</u> Remediation Manager shall have the authority to review, investigate, and take disciplinary or other corrective or remedial actions with respect to any violation of DOC policies, procedures, and protocols.

 vi. In exercising the powers conferred by this Order, the <u>Nunez</u> Remediation Manager shall use reasonable best efforts to consult and work collaboratively with the Commissioner.

C. As provided in Section III, ¶ H, the <u>Nunez</u> Remediation Manager shall have the authority to delegate any of the foregoing powers to the Commissioner and to modify or retract such delegations as the <u>Nunez</u> Remediation Manager, in the <u>Nunez</u> Remediation Manager's discretion, deems necessary.

D. **Commissioner's Role**: The Commissioner shall retain all of the Commissioner's authority in areas not implicated by the Contempt Provisions.  The Commissioner and the <u>Nunez</u> Remediation Manager are urged and expected to work collaboratively in aid of the goals of compliance with the Subject Orders and the safe, sustainable management of the jails.  The <u>Nunez</u> Remediation Manager shall

have the authority to direct the Commissioner to take any steps that the <u>Nunez</u>
Remediation Manager deems necessary to comply with the requirements of the
Contempt Provisions.  It is expected that Defendants, the Commissioner, and
DOC leadership will work closely with the <u>Nunez</u> Remediation Manager to
facilitate the <u>Nunez</u> Remediation Manager's ability to perform their duties under
this Order.  Nothing in this Order shall authorize the <u>Nunez</u> Remediation Manager
to take any employment action with respect to the Commissioner.

E. **Additional Powers**: The <u>Nunez</u> Remediation Manager may, after consultation
with and reasonable notice to the Commissioner, the Monitoring Team, and the
parties, petition the Court for such additional powers as are necessary to achieve
Substantial Compliance with the Contempt Provisions.  The <u>Nunez</u> Remediation
Manager shall report the positions (which may include requests to be heard) of the
parties and the Monitoring Team in any application to the Court.

F. The <u>Nunez</u> Remediation Manager shall make reasonable efforts to exercise their
authority in a manner consistent with applicable state and local laws, regulations,
and contracts.  However, in the event the <u>Nunez</u> Remediation Manager
determines that those laws, regulations, or contracts impede the <u>Nunez</u>
Remediation Manager from carrying out their duties under this Order and
achieving Defendants' compliance with the Contempt Provisions, the <u>Nunez</u>
Remediation Manager may, after consultation with and on reasonable notice to
the Commissioner, the Monitoring Team, and the parties, petition the Court to
override any legal or contractual requirement that is causing the impediment or
seek other appropriate relief.  The <u>Nunez</u> Remediation Manager shall report the

positions (which may include requests to be heard) of the parties and the
Monitoring Team in any application to the Court.

G.   **Authority to Hire Staff and Consultants:** The <u>Nunez</u> Remediation Manager
shall have the authority to hire additional staff or consultants or obtain technical
assistance as is reasonably necessary to fulfill the <u>Nunez</u> Remediation Manager's
duties under this Order without duplication of effort.  The <u>Nunez</u> Remediation
Manager shall reasonably utilize Defendants' available assets and resources.  The
<u>Nunez</u> Remediation Manager shall take steps necessary to minimize redundancy
and the creation of additional bureaucracy, with the goal of creating systems that
support a sustainable transition back to the Defendants' control.

H.   **Access**: The <u>Nunez</u> Remediation Manager, including all of their staff and
consultants (collectively, the "Remediation Manager Team"), shall have unlimited
access to all records and files (paper or electronic) maintained by the DOC and
shall have unlimited access to all DOC facilities, persons in custody, and DOC
staff.  This access includes the authority to conduct confidential interviews with
DOC staff and persons in custody.  The Remediation Manager Team's ability to
interview DOC staff shall be subject to the employee's right to representation
under certain circumstances as set forth in Section 75 of the New York Civil
Service Law and MEO-16.  Access to records shall not include access to
communications between and among DOC personnel and the New York City Law
Department that are protected by the attorney-client privilege or as work-product.

**V.  Reporting by the <u>Nunez</u> Remediation Manager.**

    A.  The <u>Nunez</u> Remediation Manager shall regularly report to and meet with the Court to update the Court regarding the status of efforts to comply with Contempt Provisions and any specific obstacles or impediments encountered by the <u>Nunez</u> Remediation Manager.

    B.  The <u>Nunez</u> Remediation Manager shall file semi-annual reports on the Court's public docket ("RM Reports").  The RM Reports shall include a description of the actions taken during the Reporting Period to implement the operative Remediation Action Plan, including the relationship of such actions to achieving Substantial Compliance with the Contempt Provisions.

        i.  The RM Reports shall be filed in advance of the Monitor's Report addressing the status of the relevant Contempt Provision(s) for a particular Reporting Period.  The <u>Nunez</u> Remediation Manager shall, in consultation with the Monitoring Team, propose for the Court's approval a specific schedule for the submission of regular written reports to be filed on the public docket.

        ii.  The <u>Nunez</u> Remediation Manager may file additional reports with the Court, if necessary, upon reasonable notice to the parties and the Monitoring Team, and may make such informal reports to the Court as the <u>Nunez</u> Remediation Manager and the Court deem necessary and appropriate.

        iii.  The information contained in any report by the <u>Nunez</u> Remediation Manager is not an assessment of compliance pursuant to Section XX, ¶ 18

of the Consent Judgment and does not displace the authority of the

Monitor to assess compliance under this or any other Order of the Court.

C.  The RM Reports shall be written with due regard for the privacy interests of

individuals in custody and staff members; federal, state, and local laws regarding

the privacy of such information; and the interests of the Department in protecting

against the disclosure of non-public or privileged information.  Consistent with

such interests and laws, the Nunez Remediation Manager shall redact

individual-identifying information from the RM Reports and any documents

submitted with the RM Reports and shall give due consideration to the

Department's requests to redact any other information.  To the extent that the

Nunez Remediation Manager declines to make redactions requested by the

Department, the RM Reports and any documents submitted with the RM Reports

shall be submitted to the Court under seal for the Court to consider the

Department's proposed redactions before making the RM Reports public.

D.  The RM Reports and other communications of the Remediation Manager Team

submitted to the Court, whether in camera, ex parte, or on the public docket, shall

not be admissible as evidence in any proceeding other than a proceeding relating

to the enforcement of the Nunez Orders.

E.  The Remediation Manager Team shall cooperate fully with the Monitoring Team

and shall share information that the Monitoring Team needs to fulfill its role and

responsibilities.

F.  The Remediation Manager Team shall be subject to the obligations of Defendants

under the Nunez Orders with respect to consultations with the Monitoring Team.

The Remediation Manager Team may also seek information or technical assistance from the Monitoring Team in the same manner as Defendants are authorized to do so under the <u>Nunez</u> Orders (including, but not limited to, Consent Judgment Section XX, ¶¶ 24 and 25).

G.  The <u>Nunez</u> Remediation Manager shall obtain the Monitor's approval of the <u>Nunez</u> Remediation Manager's plans and activities only to the extent such approval is required by the <u>Nunez</u> Orders for plans and activities of the Defendants.  (<u>See</u> Consent Judgment § XX, ¶ 26.)  To the extent that the Monitor does not provide such approval, the <u>Nunez</u> Remediation Manager may raise the matter with the Court and must show good cause for approval despite the Monitor's decision to withhold approval.  The <u>Nunez</u> Remediation Manager shall provide reasonable notice to the Monitoring Team and the parties before making any such application to the Court, and the parties and the Monitor may seek an opportunity to be heard on any such application.

H.  The Remediation Manager Team may not disclose information provided to the Remediation Manager Team pursuant to the <u>Nunez</u> Orders, except as authorized by this Order, the Court on its own motion, or pursuant to application by, and on notice to, the parties.

## VI. Role of the Monitor.

A.  This order does not alter the role or responsibilities of the Monitor as described in the <u>Nunez</u> Orders, including, but not limited to, obligations to assess compliance, provide technical assistance, and regularly report to the Court.

B. Following the approval of the first Remediation Action Plan, the Monitor's Report for each semi-annual Reporting Period shall also: (a) describe the efforts that the Department and the Nunez Remediation Manager have taken to implement the requirements of the Remediation Action Plan that was operative during that Reporting Period; (b) describe the extent to which the Department and the Nunez Remediation Manager have met the Benchmarks of the then-operative Remediation Action Plan and complied with each of the Contempt Provisions; and (c) address the overall extent to which the work under the then-operative Remediation Action Plan is advancing compliance with the Contempt Provisions.

C. The Nunez Remediation Manager and the Monitor are independent positions that each report to the Court and are not answerable to each other, except to the extent that consultation with and approval of actions by the Monitor are otherwise required by this Order.

**VII.  Immunity and Indemnity.**

A. The Nunez Remediation Manager and all members of the Remediation Manager Team shall have the status of officers and agents of the Court, and as such shall be vested with the same immunities as vest with the Court.

B. The City of New York ("the City") shall indemnify the Nunez Remediation Manager and each Remediation Manager Team member in, and advance any costs and expenses incurred for, any litigation against such person(s) regarding activities conducted in the course of their official duties hereunder.

VIII.   **Compensation and Responsibility for Payment.**

A.  The City of New York shall bear all reasonable fees, costs, and expenses of the
    Nunez Remediation Manager, including payments to the Remediation Manager
    Team.  Such fees, costs, and expenses shall be sufficient to allow the Nunez
    Remediation Manager to fulfill their duties pursuant to this Order in a reasonable
    and efficient manner.  The Court shall bear no obligation to compensate or
    indemnify, nor advance or otherwise answer for expenses or liabilities incurred
    by, the Nunez Remediation Manager or any member of the Remediation Manager
    Team.

    i.   The Nunez Remediation Manager shall submit an invoice for their
         services, and the services of the Remediation Manager Team, to the City
         on a monthly basis.  Those invoices will include charges for fees, costs,
         and expenses.  Payment on such invoices shall be made within 60 days of
         receipt.

    ii.  If the City objects to any invoiced fees, costs, or expenses as
         unreasonable, unnecessary, or duplicative, the City shall submit its
         objection and the invoice to the Court for a determination of reasonable
         fees, costs, and expenses.

B.  The Nunez Remediation Manager shall submit to the City a proposed Schedule of
    Fees and Expenses within 30 days of their Onboard Date.  This Schedule shall
    include a preliminary description of the title and duties of each member of the
    Remediation Manager Team that the Nunez Remediation Manager believes will

be required to exercise the duties of the Nunez Remediation Manager and a statement of rates and proposed fees and expenses.

    i. The Nunez Remediation Manager and the City shall confer in good faith regarding the proposal for fees and, to the extent that they agree, shall make a joint proposal to the Court for approval of the Schedule of Fees and Expenses.

    ii. To the extent that the City and the Nunez Remediation Manager disagree regarding the Schedule of Fees and Expenses, they shall make separate submissions to the Court stating the basis for the disagreement.

    iii. The Court shall approve or modify the proposed Schedule of Fees and Expenses.

    iv. The Nunez Remediation Manager may modify rates and proposed fees and expenses from time to time as appropriate upon approval of the Court. The Nunez Remediation Manager shall confer with the City in advance of any applications to the Court regarding fees in an attempt to reach agreement. If agreement cannot be reached, the Nunez Remediation Manager and the City shall make separate submissions to the Court stating the basis for the disagreement.

## IX. Duration of the Nunez Remediation Manager's Tenure.

    A. The Nunez Remediation Manager's authority will continue, subject to reductions in the scope of that authority pursuant to Section III above, until the Nunez Remediation Manager's authority has been terminated pursuant to Section III for all of the Contempt Provisions. Nothing in this Order precludes an application

pursuant to the termination review procedure set forth in 18 U.S.C. Section 3626(b).

B. Nothing in this Order affects the terms of the Consent Judgment or any other Nunez Order, which remain in full force and effect.  In the event the Nunez Remediation Manager's tenure terminates, the Consent Judgment and all other Nunez Orders shall remain in full force and effect until the Court makes a finding that the Defendants have achieved Substantial Compliance with the provisions of the Consent Judgment and have maintained Substantial Compliance for a period of twenty-four (24) months, as set forth in Section XXI, ¶ 5 of the Consent Judgment.

## X. Cooperation.

A. The Defendants, all agents or persons within the employ of the Defendants (including contract employees), all persons in concert and in participation with them, and the Monitoring Team shall fully cooperate with the Nunez Remediation Manager in the discharge of the Nunez Remediation Manager's duties under this Order.  With respect to counsel to the parties, the cooperation obligation is without prejudice to any position that particular information is privileged or constitutes protected attorney work product, or that such cooperation would violate a legal or ethical duty.  Defendants shall promptly respond to all inquiries and requests from the Remediation Manager Team related to compliance with the Nunez Orders.  To the extent that a party asserts that information requested by the Remediation Manager Team is privileged or unrelated to the proper duties of the Nunez Remediation Manager, they may assert such objections to the Nunez

Remediation Manager.  If the parties are unable to resolve such objections after engaging in a meet and confer process, including written correspondence, the <u>Nunez</u> Remediation Manager may seek appropriate relief from the Court.

## XI. Other Terms.

A. If at any point the <u>Nunez</u> Remediation Manager determines that the Department needs additional funding that is not budgeted sufficiently for that fiscal year to fulfill a Remediation Action Plan, the <u>Nunez</u> Remediation Manager shall immediately consult the Commissioner and then shall notify the City Council's Finance Division and the Mayor's Office of Management and Budget of the specific purpose and the amount of funds needed.  If the issue is not timely resolved, the <u>Nunez</u> Remediation Manager or any party may request a hearing before the Court.

B. The Remediation Manager Team shall have the authority to communicate ex parte and confidentially with each party and each party's legal representatives, as well as with the Court and the Monitoring Team.  Plaintiffs' Counsel's access to information and other materials in the possession of the Remediation Manager Team, and Plaintiffs' Counsel's disclosure and confidentiality obligations in respect of the same, shall be governed by and subject to the scope of Consent Judgment Section XX, ¶¶ 10 and 11 and the Protective Orders entered in this case (docket entry nos. 89, 203, 574), in like manner as such access and confidentiality provisions govern access to information in possession of the Monitor. Information protected by other protective Orders and/or confidentiality agreements entered in this case (<u>e.g.</u>, docket entry nos. 290 and 304) shall not lose

its protection under those Orders and agreements by virtue of being disclosed to Plaintiffs' Counsel by the Remediation Manager Team.

C. Absent leave of the Court, the Remediation Manager Team may not testify in any litigation or proceeding other than this case, including public hearings or other proceedings before the New York City Council, the Board of Correction, or the New York State legislature, or private litigation, with regard to any act or omission of the DOC or any of the DOC's agents, representatives, or employees related to the Nunez Orders. Except as expressly authorized in advance by the Court or by this Order, the Remediation Manager Team may not give interviews or make public statements regarding their work under the Nunez Orders and this Order.

D. Unless such conflict is waived in writing by the parties, no member of the Remediation Manager Team may accept employment or provide consulting services that present a conflict of interest with their responsibilities under this Order, including being retained (on a paid or unpaid basis) by any current or anticipated litigant or claimant, or such litigant's or claimant's attorney, in connection with a claim or suit against the DOC or the DOC's agents, representatives, or employees.

E. The Nunez Remediation Manager is an agent of the Court and is not a federal, State, or local agency or an agent thereof.

F. If at any time the Nunez Remediation Manager position becomes vacant, the parties and the Monitor shall confer on potential replacements and the parties shall meet and confer and endeavor to jointly provide the court with no more than

four candidates to replace the Nunez Remediation Manager.  The parties shall submit their recommendations, with supporting materials, to the Court confidentially.  Once the Court has received the parties' recommendations, the Court shall review the proposed candidates, and any further candidates the Court may deem appropriate for consideration, and shall select the new Nunez Remediation Manager.

## XII.  Effective Date.

A.  This Order Appointing the Nunez Remediation Manager shall become effective following the appointed Nunez Remediation Manager's confirmation of their Acceptance of the powers, responsibilities and duties imposed by this Order, which the Nunez Remediation Manager shall effectuate by signing a copy of this Order below and returning the countersigned copy to the Court by email addressed to SwainNYSDCorresp@nysd.uscourts.gov within 7 days of the issuance of the final version of this Order.

B.  The Nunez Remediation Manager shall coordinate with the Court and Defendants to decide on an intended Onboard Date, which the Nunez Remediation Manager must confidentially convey to the Court within 21 days of the Nunez Remediation Manager's Acceptance.  The Nunez Remediation Manager's Onboard Date shall then be specified in writing in a Notice of Acceptance filed by the Court on the public docket for this case.


SO ORDERED this _____ day of _____, 2025

_____
LAURA TAYLOR SWAIN

CHIEF UNITED STATES DISTRICT JUDGE

ACCEPTED

_____

(Signature)

_____

(Typed or printed name)

Date: _____

SO ORDERED.

# EXHIBIT B: REDLINE OF THE ORDER

# APPOINTING NUNEZ REMEDIATION MANAGER

### ~~A~~PPENDIX ~~B:~~ ORDER APPOINTING NUNEZ REMEDIATION MANAGER

~~The Court intends to enter an order in substantially the following form upon the selection of the Nunez Remediation Manager. Any objections to the language of the order must be discussed with the Monitoring Team and filed in writing by 12:00 p.m. on June 27, 2025.~~

WHEREAS, on October 22, 2015, this Court entered the Consent Judgment in this matter (docket entry no. 249) ~~in this matter~~ to correct ~~the~~ violations of the constitutional rights of people ~~incarcerated~~in custody in jails operated by the New York City Department of Correction ~~("~~(the "DOC" or "the Department")[4];

WHEREAS, the Consent Judgment required ~~the~~ Defendants the DOC and the City of New York (collectively, "Defendants") to take specific actions to remedy a pattern and practice of violence by staff against ~~incarcerated individuals~~persons in custody, and to develop and implement new practices, policies, and procedures to reduce violence in the jails and ensure the safety and well-being of ~~incarcerated individuals~~persons in custody;

WHEREAS, Section XXII, ¶ 1 of the Consent Judgment provides: "The Parties stipulate and agree, and the Court finds, that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a). The Parties further stipulate and agree, and the Court finds, that the prospective relief in this Agreement is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that the Agreement complies with the provisions of 18 U.S.C. § 3626(a)";

---

[4]     The Plaintiff Class is defined as "all present and future inmates confined in jails operated by the Department, except for the Elmhurst and Bellevue Prison Wards." (Docket entry no. 249 ¶ II.2.)

WHEREAS, on August 14, 2020, the Court entered a Remedial Consent Order
Addressing Non-Compliance (the "First Remedial Order," docket entry no. 350) that included
several remedial measures designed to address the repeated findings of the <u>Nunez</u> Independent
Monitor (the "Monitor~~")~~" or "Monitoring Team," which shall each refer to the Monitor and
members of the Monitoring Team) that the Defendants were <u>not</u> in ~~non-~~compliance with core
provisions of the Consent Judgment, including ~~with~~ Section IV, ¶ 1 (Implementation of Use of
Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7
(Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations);
Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates
Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of
19, Direct Supervision);

WHEREAS, in his Eleventh Report filed on May 11, 2021 (docket entry no. 368), the
Monitor reported that the Defendants were not in compliance with numerous provisions of the
First Remedial Order, including Section A, ¶ 2 (Facility Leadership Responsibilities), Section A,
¶ 3 (Revised De-escalation Protocol), Section A, ¶ 6 (Facility Emergency Response Teams),
Section D, ¶ 1 (Consistent Staffing), Section D, ¶ 2 (ii) (Tracking of Incentives and
Consequences), and Section D, ¶ 3 (Direct Supervision);

WHEREAS, the Court entered a Second Remedial Order on September 29, 2021 (docket
entry no. 398), and a Third Remedial Order on November 22, 2021 (docket entry no. 424);

WHEREAS, after the three Remedial Orders failed to result in meaningful
improvements, the Defendants developed an Action Plan, supported by the Monitor, that was
designed to address Defendants' overall lack of progress toward compliance by focusing on four
foundational areas without which reform could not proceed—security practices, supervision and

leadership, staffing practices, and accountability—and the Court entered and So Ordered the Action Plan on June 14, 2022 (docket entry no. 465);

WHEREAS, the Court issued five additional Court Orders in 2023[5] (collectively the "2023 Orders") that were intended to catalyze improvement in the Department's management of the Nunez Orders, its work with the Monitor, and its efforts to address fundamental security, reporting, and management practices;

WHEREAS, the Court found that the First Remedial Order, the Second Remedial Order, the Third Remedial Order, ~~and~~ the Action Plan, and the 2023 Orders were each compliant with the provisions of 18 U.S.C. § 3626(a) and were necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class;

WHEREAS, the First Remedial Order, the Second Remedial Order, the Third Remedial Order, ~~and~~ the Action Plan, and the 2023 Orders were each entered to address the Defendants' ongoing non-compliance with the Consent Judgment and to achieve ~~its~~the Consent Judgment's primary goal: to protect the constitutional rights of ~~incarcerated people~~persons in custody and substantially reduce the level of violence in the jails;

WHEREAS, the Consent Judgment, the First Remedial Order, the Second Remedial Order, ~~the Third Remedial Order, and the Action Plan~~and the Action Plan are hereafter collectively referred to as "the Subject Orders," while the Subject Orders, the Third Remedial Order, the 2023 Orders, and all other substantive Orders that are currently operative in this case are hereafter collectively referred to as "the Nunez Orders";

---

[5] These five orders are the June 13, 2023 Order (docket entry no. 550), the August 10, 2023 Order (docket entry no. 564), the October 10, 2023 Order (docket entry no. 582), the December 15, 2023 Order (docket entry no. 656), and the December 20, 2023 Order (docket entry no. 665).

WHEREAS, more than a year after the Action Plan was entered, the Monitor found in his July 10, 2023 Special Report (docket entry no. 557) that the Defendants had not made substantial and demonstrable progress in implementing the reforms, initiatives, plans, systems, and practices outlined in the Action Plan, and that there had not been a substantial reduction in the risk of harm facing ~~incarcerated individuals~~persons in custody and DOC staff;

WHEREAS, on November 17, 2023, the Plaintiff Class and the United States filed a Motion for Contempt and Appointment of Receiver~~;~~ (docket entry no. 601);

WHEREAS, on November 27, 2024, this Court issued its factual findings and decision granting Plaintiffs' Motion for Contempt ~~and found~~, finding that Defendants (i) are in contempt of eighteen core provisions of the Nunez Orders (the "Contempt Provisions") "that have gone unheeded for years and have highlighted failures inextricably linked to the Department's historic pattern of excessive use of force against persons in custody" (docket entry no. 803, at 52); (ii) "~~"~~have not demonstrated diligent attempts to comply with the Contempt Provisions in a reasonable manner" (~~docket entry no. 803,~~id. at 52); and (iii) have repeatedly and consistently failed to remediate the violations of the federal rights of ~~incarcerated people~~persons in custody that necessitated entry of the Consent Judgment (~~docket entry no. 803,~~id. at 52, 54-56);

WHEREAS, this Court found that the "use of force rate and other rates of violence, self-harm, and deaths in custody are demonstrably worse than when the Consent Judgment went into effect in 2015" and the "unsafe and dangerous conditions in the jails~~...~~ . . . have become normalized despite the fact that they are clearly abnormal and unacceptable" (docket entry no. 803, at 11);

WHEREAS, this Court found that "for nine years, Defendants made only half-hearted, inconsistent efforts to comply with Court orders" (docket entry no. 803, at 50);

WHEREAS, this Court found that "[t]he record in this case makes clear that those who live and work in the jails on Rikers Island are faced with grave and immediate threats of danger, as well as actual harm, on a daily basis as a direct result of Defendants' lack of diligence, and that the remedial efforts thus far undertaken by the Court, the Monitoring Team, and the parties have not been effective to alleviate this danger" (docket entry no. 803, at 55);

WHEREAS, this Court found that "Defendants' ongoing failure to comply" requires a remedy that addresses the "insufficiently resourced leadership; a lack of continuity in management; failures of supervision and cooperation between supervisors and line officers; a lack of skill or imagination to create and implement transformative plans; and an unwillingness or inability to cooperate with the Monitoring Team recommendations to accomplish the changes necessary" (docket entry no. 803, at 54);

WHEREAS, this Court found that "[t]he last nine years also leave no doubt that continued insistence on compliance with the Court's orders by persons answerable principally to political authorities would lead only to confrontation and delay; that the current management structure and staffing are insufficient to turn the tide within a reasonable period; that Defendants have consistently fallen short of the requisite compliance with Court orders for years, at times under circumstances that suggest bad faith; and that enormous resources—that the City devotes to a system that is at the same time overstaffed and underserved—are not being deployed effectively" (docket entry no. 803, at 55-56); and

WHEREAS, as required by 18 U.S.C. § 3626(a), the prospective relief delineated in this Order is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the Plaintiff Class and the United States, is the least intrusive means

necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## XIII.   Appointment of <u>Nunez</u> Remediation Manager and <u>Nunez</u> Remediation Manager's Duties<u>.</u>

A.   **[NAME]** is ~~here by~~<u>hereby</u> appointed to serve in this case as <u>Nunez</u> Remediation Manager, with the responsibility and authority to take all necessary steps to promptly achieve Substantial Compliance (defined in Section XX, ¶ 18 of the Consent Judgment) with the Contempt Provisions.

B.   The <u>Nunez</u> Remediation Manager's work shall be guided by ~~benchmarks identified in the~~ "Remediation Action ~~Plan," a~~<u>Plans," which shall be</u> work ~~plan~~<u>plans developed sequentially by the Remediation Manager that include specific and concrete steps and milestones ("Benchmarks")</u> designed <u>cumulatively</u> to achieve Substantial Compliance with the Contempt Provisions ~~within three years of the date the Court files the Nunez Remediation Manager's Acceptance of this appointment on the public docket for this case ("Acceptance Effective Date"), subject to extension of the target period for any particular elements of the plan upon a showing of good cause therefor.~~<u>.</u>  The process ~~to determine the substance of the~~<u>for developing</u> Remediation Action ~~Plan~~<u>Plans</u> is detailed in Section II.~~A.~~

C.   The <u>Nunez</u> Remediation Manager shall provide leadership and executive management <u>with respect to achieving Substantial Compliance with the Contempt Provisions</u> with the goal of developing and implementing a sustainable system that protects the constitutional rights of ~~incarcerated people~~<u>persons in custody</u>.

D.  The Nunez Remediation Manager shall be answerable only to the Court.

E.  The Nunez Remediation Manager shall maintain an office within Department headquarters or on Rikers Island, work on a full-time basis unless otherwise expressly permitted by the Court, and primarily work onsite.

F.  The Nunez Remediation Manager shall not maintain any employment or contract work other than the Nunez Remediation Manager position unless such additional work is expressly approved by the Court.

**XIV.  Development and Implementation of the Remediation Action ~~Plan~~Plans.**

A.  The Nunez Remediation Manager, in consultation with the Commissioner of the New York City Department of Correction (the "Commissioner") and the Monitoring Team, shall develop a ~~Remediation Action Plan.  The~~series of Remediation Action Plans that are designed, cumulatively, to enable the Department to achieve Substantial Compliance with all of the Contempt Provisions within seven years, if not sooner.  This provision does not govern the tenure of the Nunez Remediation Manager or the duration of the Nunez Remediation Manager's authority with respect to any specific Contempt Provision.  Such matters are governed exclusively by Sections III and IX.

B.  The Benchmarks set forth in the first Remediation Action Plan ~~shall identify the specific~~are, unless otherwise ordered by the Court, to be achieved by the end of the second Reporting Period following the Court's approval of such Remediation Action Plan.[6]  Thereafter, the Nunez Remediation Manager shall issue successive

---

[6]     The Reporting Periods in this case cover January 1 to June 30 and July 1 to December 31 of each year.

Remediation Action Plans, each setting Benchmarks to be achieved over the two consecutive Reporting Periods following the expiration of the prior Remediation Action Plan.

C.  Each Remediation Action Plan shall:

   i.   include specific and concrete steps (i.e., the relevant Benchmarks) that are necessary within the period covered by the operative Remediation Action Plan to enable Defendants to ultimately achieve ~~substantial compliance~~Substantial Compliance with the Contempt Provisions ~~within no more than three years of the Nunez Remediation Manager's Acceptance Effective Date.~~.  The Benchmarks identified in each Remediation Action Plan shall be organized in a manner that identifies priorities, beginning with the safety-related areas and actions that are most urgently in need of attention;

   ii.   include transformative and sustainable initiatives, which shall include~~,~~ any positive initiatives ~~currently~~then underway that must be sustained or enhanced~~.  Further,~~ during the ~~Remediation Action Plan shall address~~ relevant period; and

~~A.~~iii.   to the extent that recommendations ~~from~~by the Monitoring Team to support advancing compliance with the Contempt Provisions.  ~~These actions shall be organized into priorities with specified benchmarks to be achieved within 12 month periods, beginning with the safety-related areas and actions that are most urgently in need of attention.~~ for the relevant

period are not already included in the Benchmarks, address such recommendations from the Monitoring Team.

D.   Timing of the Remediation Action Plans:

i.   The Nunez Remediation Manager shall provide the first Remediation Action Plan shall be provided to counsel for the Plaintiff Class and the United States the parties in draft form for comment within 90 days of the date ofofof the Acceptance Effective Nunez Remediation Manager's commencement of their official duties under this Order (the Nunez Remediation Manager's "Onboard Date.  Counsel for the Plaintiff Class and the United States").  Each party shall provide the Nunez Remediation Manager, Commissioner, and the Monitoring Team, and the other parties with their comments on the draft of the first Remediation Action Plan, if any, within 2130 days of receipt.  The Nunez Remediation Manager, in consultation with the Commissioner and the Monitoring Team, shall consider the comments from Counsel for the Plaintiff Class and the United States the parties and make any changes deemed necessary before filing. The Nunez Remediation Manager shall file the final version of the proposed Remediation Action Plan with the Court.  The finalfirst Remediation Action Plan shall be filed with the Court for approval within 21 days of receipt of the parties' comments from the Counsel for the Plaintiff Class and United States.

ii.i.   The Remediation Manager may thereafter seek to modify or amend the. The first Remediation Action Plan upon application to the Court.  The

Remediation Manager shall consult with the Commissioner and the Monitoring Team in advance of any application before making any such application to the Court and any such application shall be made on notice to the parties and the Monitoring Team shall expire on June 30, 2027.

ii. Implementation of the Remediation Action Plan After the first Remediation Action Plan, each successive Remediation Action Plan shall cover the two consecutive Reporting Periods, from July 1 of the year of its Court approval through June 30 of the following year, unless otherwise ordered by the Court. The Nunez Remediation Manager shall submit each subsequent Remediation Action Plan to the parties in draft form for comment 50 days prior to the expiration of the prior Remediation Action Plan. Each party shall provide the Nunez Remediation Manager, the Monitoring Team, and the other parties with their comments on such Remediation Action Plan within 20 days of receipt of the Remediation Action Plan. The Nunez Remediation Manager, in consultation with the Commissioner and the Monitoring Team, shall consider the comments from the parties and make any changes deemed necessary. The Nunez Remediation Manager shall then file each such proposed Remediation Action Plan with the Court within 15 days of receipt of the parties' comments.

B. iii. Remediation Action Plans shall become effective upon approval by the Court, and their implementation must begin immediately upon its their approval by the Court. This work shall be undertaken in collaboration

with the Commissioner to the greatest extent consistent with efficiency,

effectuation of change, and the fostering of a respectful,

~~sustainably~~sustainable, and safety-oriented approach to management.

    iv.   The Nunez Remediation Manager may seek to modify or amend

Remediation Action Plans upon application to the Court.  The Nunez

Remediation Manager shall consult with the Commissioner, the

Monitoring Team, and the parties in advance of any application to the

Court, and any such application shall be made on reasonable notice to the

parties and the Monitoring Team.  For good cause, the Court may on its

own motion and on notice to the Nunez Remediation Manager and the

parties, who shall have the right to be heard on the matter, change any

element of a Remediation Action Plan.

~~C.~~E.       Within 30 days following Court approval of the first Remediation Action

Plan, the Nunez Remediation Manager, the Monitoring Team, and the

Commissioner shall jointly develop an updated DOC organizational chart that

~~includes delineation of~~delineates the reporting lines of divisions, operational

functions, and personnel that are subject to the direct authority of the Nunez

Remediation Manager and the Commissioner, respectively, and those ~~where both~~

~~exercise~~ that are subject to the direct authority ~~over aspects~~ of the divisions,

~~operations, and personnel.  In the event of conflict regarding divisions of labor,~~

both the Nunez Remediation Manager ~~has ultimate~~ and the Commissioner.  The

Nunez Remediation Manager shall determine lines of authority in areas that are

subject to the Contempt Provisions should there be disagreement between the Nunez Remediation Manager and the Commissioner.

**XV.   Assessment of Compliance & Transition Back to DOC Control.**

A.  The Monitor shall file a report within 130 days following each Reporting Period[7] describing the efforts the Department and the Remediation Manager have taken to implement the requirements of the Remediation Action Plan and evaluating the extent to which the Department and Remediation Manager have complied with the benchmarks of the Remediation Action Plan and each of the Contempt Provisions.

B. Upon a finding by the Monitoring Team that one or more of the benchmarks of the Remediation Action Plan or the Contempt Provisions isDefendants are in Substantial Compliance, the Court shall determine whether Substantial Compliance with the relevant benchmark(s) and/or Contempt Provision(s) has been achieved.

A. Within 30 days of the Court's finding with one or more of the Contempt Provisions, the Nunez Remediation Manager shall be obligated to workbegin working with the Commissioner on a Transition Plan that outlinesshifts responsibility and authority over all functions within the scope of the relevant Contempt Provision(s) back to the Department.

C.B.     Transition Plans shall explain (1) how to sustain the progress achieved, (2) the steps the Nunez Remediation Manager will take to prepare the Department to

---

[7]     The Reporting Periods in this case cover January 1 to June 30 and July 1 to December 31 of each year.

operate independently in the relevant area, ~~and~~ (3) the actions the Department will take to maintain or improve upon the required performance level and sustain compliance, and (4) and any other information and provisions that the Nunez Remediation Manager and the Commissioner deem appropriate to support the maintenance of Substantial Compliance in the relevant area.

~~D.~~C.    ~~The~~Transition Plans shall be designed to facilitate the termination of the Nunez Remediation Manager's authority ~~over~~for the relevant ~~benchmark of the Remediation Action Plan or Contempt Provision shall be terminated upon~~function(s) within 60 days of the Monitoring Team's filing of the Monitor's Report that ~~reports the benchmark of the Remediation Action Plan or~~rates the Contempt Provision in Substantial Compliance for the ~~third~~second successive Reporting Period.  The Monitoring Team shall be consulted in the preparation of all Transition Plans.

D.  The Nunez Remediation Manager shall submit the relevant Transition Plan to the Court within 30 days of the issuance of the first Monitor's Report finding that Defendants are in Substantial Compliance with the relevant Contempt Provision.

E.  Upon receipt of each Transition Plan, the Court shall determine whether Substantial Compliance with the relevant Contempt Provision(s) has been achieved and, upon the Court's finding of Substantial Compliance, shall approve the Transition Plan with any modifications the Court deems necessary.  The Nunez Remediation Manager and the Commissioner shall thereafter implement the Transition Plan.

F.  Following such implementation, the Nunez Remediation Manager's authority over the relevant Contempt Provision(s) shall be terminated within 60 days after the Monitoring Team's filing of the Monitor's Report that rates the Contempt Provision(s) in Substantial Compliance for the second successive Reporting Period, unless the Court extends the termination date for good cause.

G.  If the Department does not sustain Substantial Compliance with a Contempt Provision after the Nunez Remediation Manager's authority over that Contempt Provision has terminated but before the Nunez Remediation Manager's tenure has terminated, the Court shall have the authority to restore authority over any or all functions related to the relevant Contempt Provision to the Nunez Remediation Manager.  The Court shall effect such a restoration only upon application of the parties or of the Nunez Remediation Manager.  The applicant must provide notice to the parties, the Nunez Remediation Manager, and the Monitoring Team before making any such application.

H.  The Nunez Remediation Manager shall have the authority and discretion to voluntarily delegate to the Commissioner responsibility for any or all of the functions under the Nunez Remediation Manager's authority at any given time, including, but not limited to, functions that are the subject of relevant Benchmarks of the operative Remediation Action Plan and functions related to Contempt Provisions for which the Monitor has rated the Defendants to be in Partial Compliance.  The Nunez Remediation Manager is encouraged to voluntarily delegate responsibility to the extent the Nunez Remediation Manager deems such delegation consistent with efficiency, effectuation of change, and the fostering of

a respectful, sustainable, and safety-oriented approach to management.  The Nunez Remediation Manager's voluntary delegation of responsibilities shall not affect the timeline or requirements for Transition Plans nor the termination of the Nunez Remediation Manager's authority over a Contempt Provision.  The Nunez Remediation Manager shall have the ability to modify or retract any voluntarily delegated authority if the Nunez Remediation Manager deems such a modification or retraction necessary and shall modify or retract any voluntarily delegated authority as the Court deems necessary.

I.   In addition to filing reports with the Court as required by Section V, ¶ B below, the Nunez Remediation Manager shall be available to the Court throughout the Nunez Remediation Manager's tenure and shall meet with the Court on an informal, as needed, basis.

J.   If the Court determines at any time that the Nunez Remediation Manager's performance is unsatisfactory or that the Nunez Remediation Manager's tenure, responsibilities, or authority should be modified or terminated to any extent not contemplated by this Order, the Court shall first discuss the concern with the Nunez Remediation Manager and the Monitoring Team, and shall thereafter provide the parties notice of any action the Court intends to take with respect to the modification or termination of the Nunez Remediation Manager's tenure, responsibilities or authority, and the reasons therefor.  Upon the Court's proposal, the Nunez Remediation Manager, the parties, and the Monitoring Team will be provided with the opportunity to be heard prior to any action.

**XVI.  Powers of the Nunez Remediation Manager. ~~The~~** Beginning on the Nunez Remediation Manager's Onboard Date, the Nunez Remediation Manager shall have all powers necessary to achieve Substantial Compliance with the Contempt Provisions, including, but not limited to:

   A.  **General Powers**: The Nunez Remediation Manager shall have the authority to exercise all powers vested by law in the Commissioner to the extent necessary to achieve compliance with the Contempt Provisions~~.  The Nunez Remediation Manager shall have such powers to control, oversee, supervise, and direct all~~, including, but not limited to, such powers with respect to administrative, personnel, financial, accounting, contracting, legal, and other operational functions of the DOC to the extent necessary to achieve compliance with the Contempt Provisions.

   B.  **Specific Powers**: Without in any way limiting the Nunez Remediation Manager's general powers detailed in Paragraph A above, the Nunez Remediation Manager shall have the authority to exercise the following specific powers to the extent that they (a) are necessary to achieve ~~compliance~~sustainable Substantial Compliance with the Contempt Provisions, and ~~to the extent~~(b) are vested by law in the Commissioner:

      i.  The Nunez Remediation Manager shall have the authority to enact or change DOC policies, procedures, protocols, systems, and practices ~~implicated by the Court's contempt findings~~.

      ii.  The Nunez Remediation Manager shall have the authority to establish personnel policies and direct personnel actions.  The Nunez Remediation

Manager shall have the power to create, modify, abolish, or transfer employee and contractor positions, as well as to recruit, hire, train, terminate, promote, demote, transfer, and evaluate employees and contractors.  The Nunez Remediation Manager shall have the authority to assign and deploy DOC staff.

iii.   The Nunez Remediation Manager shall have the authority to determine the DOC's needs and positions with respect to contract provisions ~~relevant to remediation of the Contempt Provisions.~~.

iv.   The Nunez Remediation Manager shall have the authority to procure and contract for supplies, equipment, tangible goods, and services.

v.   The Nunez Remediation Manager shall have the authority to review, investigate, and take disciplinary or other corrective or remedial actions with respect to any violation of DOC policies, procedures, and protocols ~~implicated by the Court's contempt findings.~~

~~vi.   The Nunez Remediation Manager shall have the authority to hire consultants, or obtain technical assistance, as the Nunez Remediation Manager deems necessary to perform their duties under this Order.~~

~~vii.~~vi.   In exercising the powers conferred by this Order, the Nunez Remediation Manager shall use reasonable best efforts to consult and work collaboratively with the Commissioner.

~~viii.~~C.       ~~The~~As provided in Section III, ¶ H, the Nunez Remediation Manager shall have the authority to delegate any of ~~these~~the foregoing powers to the Commissioner and to modify or retract ~~or constrict~~ such delegations as the Nunez

Remediation Manager, in the Nunez Remediation Manager's discretion, deems necessary.

C.D.        **Commissioner's Role**: The Commissioner shall retain all of the Commissioner's authority in areas not implicated by the Contempt Provisions. The Commissioner and the Nunez Remediation Manager are urged and expected to work collaboratively in aid of the goals of compliance with the Nunez Subject Orders and the safe, sustainable management of the jails.  The Nunez Remediation Manager shall have the authority to direct the Commissioner to take any steps that the Nunez Remediation Manager deems necessary to comply with the requirements of the Contempt Provisions.  It is expected that Defendants, and the Commissioner, and DOC leadership, will work closely with the Nunez Remediation Manager to facilitate the Nunez Remediation Manager's ability to perform their duties under this Order.  Nothing in this Order shall authorize the Nunez Remediation Manager to take any employment action with respect to the Commissioner.

E.  **Additional Powers**: The Nunez Remediation Manager may, after consultation with and reasonable notice to the Commissioner and, the Monitoring Team, and the parties, petition the Court on notice to the parties and the Monitoring Team for such additional powers as are necessary to achieve Substantial Compliance with the Contempt Provisions.  The Nunez Remediation Manager shall report the positions (which may include requests to be heard) of the parties and the Monitoring Team in any application to the Court.

D.F.    The Nunez Remediation Manager shall make reasonable efforts to exercise their authority in a manner consistent with applicable state and local laws, regulations, and contracts.  However, in the event the Nunez Remediation Manager determines that those laws, regulations, or contracts impede the Nunez Remediation Manager from carrying out their duties under this Order and achieving Defendants' compliance with the Contempt Provisions consistent with Section II, the Nunez Remediation Manager may, after consultation with and on reasonable notice to the Commissioner, the Monitoring Team, and the parties, petition the Court to override any legal or contractual requirement that is causing the impediment or seek other appropriate relief.  The Nunez Remediation Manager shall report the positions (which may include requests to be heard) of the parties and the Monitoring Team in any application to the Court.

G.  **Authority to Hire Staff and Consultants:** The Nunez Remediation Manager shall have the authority to hire additional staff or consultants or obtain technical assistance as is reasonably necessary to fulfill the Nunez Remediation Manager's duties under this Order without duplication of effort.  The Nunez Remediation Manager shall reasonably utilize Defendants' available assets and resources.  The Nunez Remediation Manager shall take steps necessary to minimize redundancy and the creation of additional bureaucracy, with the goal of creating systems that support a sustainable transition back to the Defendants' control.

E.H.    **Access**: The Nunez Remediation Manager, including all of their staff and consultants, (collectively, the "Remediation Manager Team"), shall have unlimited access to all records and files (paper or electronic) maintained by the

DOC and shall have unlimited access to all DOC facilities, ~~incarcerated people~~persons in custody, and DOC staff.  This access includes the authority to conduct confidential interviews with DOC staff and ~~incarcerated people.~~persons in custody.  The ~~Nunez~~Remediation ~~Manager's~~Manager Team's ability to interview DOC staff shall be subject to the employee's right to representation under certain circumstances as set forth in Section 75 of the New York Civil Service Law and MEO-16.  Access to records shall not include access to communications between and among DOC personnel and the New York City Law Department that are protected by the attorney-client privilege or as work-product.

**XVII.  Reporting by the <u>Nunez</u> Remediation Manager.**

A.  The <u>Nunez</u> Remediation Manager shall regularly report to and meet with the Court to update the Court regarding the status of efforts to comply with Contempt Provisions, and any specific obstacles or impediments encountered by the <u>Nunez</u> Remediation Manager.

B.  ~~Within 60 days of the date of the Acceptance Effective Date, the~~The Nunez Remediation Manager shall file semi-annual reports on the Court's public docket ("RM Reports").  The RM Reports shall include a description of the actions taken during the Reporting Period to implement the operative Remediation Action Plan, including the relationship of such actions to achieving Substantial Compliance with the Contempt Provisions.

~~B.~~i.   The RM Reports shall be filed in advance of the Monitor's Report addressing the status of the relevant Contempt Provision(s) for a particular Reporting Period.  The <u>Nunez</u> Remediation Manager shall, in consultation

with the Monitoring Team, propose for the Court's approval a specific

schedule for the submission of regular written reports to be filed on the

public docket.

ii.   The Nunez Remediation Manager ~~shall remain in contact~~may file

additional reports with the Court ~~throughout~~, if necessary, upon reasonable

notice to the parties and the Monitoring Team, and may make such

informal reports to the Court as the Nunez Remediation Manager and the

Court deem necessary and appropriate.

iii.   The information contained in any report by the Nunez Remediation

Manager is not an assessment of compliance pursuant to Section XX, ¶ 18

of the Consent Judgment and does not displace the authority of the

Monitor to assess compliance under this or any other Order of the Court.

C.  The RM Reports shall be written with due regard for the privacy interests of

individuals in custody and staff members; federal, state, and local laws regarding

the privacy of such information; and the interests of the Department in protecting

against the disclosure of non-public or privileged information.  Consistent with

such interests and laws, the Nunez Remediation Manager shall redact

individual-identifying information from the RM Reports and any documents

submitted with the RM Reports and shall give due consideration to the

Department's requests to redact any other information.  To the extent that the

Nunez Remediation Manager declines to make redactions requested by the

Department, the RM Reports and any documents submitted with the RM Reports

shall be submitted to the Court under seal for the Court to consider the Department's proposed redactions before making the RM Reports public.

D.  The RM Reports and other communications of the Remediation Manager Team submitted to the Court, whether in camera, ex parte, or on the public docket, shall not be admissible as evidence in any proceeding other than a proceeding relating to the enforcement of the Nunez Orders.

E.  The Remediation Manager Team shall cooperate fully with the Monitoring Team and shall share information that the Monitoring Team needs to fulfill its role and responsibilities.

F.  The Remediation Manager Team shall be subject to the obligations of Defendants under the Nunez Orders with respect to consultations with the Monitoring Team. The Remediation Manager Team may also seek information or technical assistance from the Monitoring Team in the same manner as Defendants are authorized to do so under the Nunez Orders (including, but not limited to, Consent Judgment Section XX, ¶¶ 24 and 25).

G.  The Nunez Remediation Manager shall obtain the Monitor's approval of the Nunez Remediation Manager's ~~tenure on an informal, as needed, basis~~plans and activities only to the extent such approval is required by the Nunez Orders for plans and activities of the Defendants.  (See Consent Judgment § XX, ¶ 26.)  To the extent that the Monitor does not provide such approval, the Nunez Remediation Manager may raise the matter with the Court and must show good cause for approval despite the Monitor's decision to withhold approval.  The Nunez Remediation Manager shall provide reasonable notice to the Monitoring

Team and the parties before making any such application to the Court, and the
parties and the Monitor may seek an opportunity to be heard on any such
application.

C.H.　　　The Remediation Manager Team may not disclose information provided
to the Remediation Manager Team pursuant to the Nunez Orders, except as
authorized by this Order, the Court on its own motion, or pursuant to application
by, and on notice to, the parties.

**XVIII. Role of the Monitor.**

A. ~~Consistent with Section IV(B), this~~This order does not alter the role or
responsibilities of the Monitor as described in the Nunez Orders, including, but
not limited to, obligations to assess compliance, provide technical assistance, and
regularly report to the Court ~~in accordance with his past practices~~.

B. ~~Beginning with~~ Following the ~~20th~~approval of the first Remediation Action Plan,
the Monitor's Report for each semi-annual Reporting Period ~~(January to June~~
~~2025), the Monitor's Reports shall include an assessment of compliance (pursuant~~
~~to § XX, ¶ 18 of the Consent Judgment) with~~shall also: (a) describe the ~~select~~
~~group of provisions (as defined by~~ efforts that the ~~Action Plan § G, ¶ 5(b)), the~~
~~Contempt Provisions,~~Department and the ~~benchmarks~~Nunez Remediation
Manager have taken to implement the requirements of the Remediation Action
Plan ~~(once approved by~~that was operative during that Reporting Period; (b)
describe the ~~Court).  The assignment of compliance ratings~~extent to ~~all other~~
~~provisions of~~which the Department and the Nunez ~~Orders is suspended through~~
~~December 31, 2025.~~

i.   ~~Within 90 days after the Court's approval of~~Remediation Manager have met the Benchmarks of the then-operative Remediation Action Plan~~, the Monitoring Team shall develop recommendations regarding streamlining and compliance assessment~~ and complied with each of the ~~Nunez Orders that are not subject to~~Contempt Provisions; and (c) address the overall extent to which the work under the then-operative Remediation Action Plan.  ~~The Monitoring Team shall provide these recommendations to the parties for consideration and comment before submitting the recommendations to the Court.~~

~~C.~~B.        The ~~Nunez~~ Remediation Manager shall ~~regularly consult with the Monitoring Team in the same manner as the Defendants are required to consult with the Monitoring Team under the Nunez Orders.  Such consultation shall also include consultation on progress that has been made in fulfilling the Remediation Action Plan and how to address potential obstacles to achieving compliance, as well as the strategies to achieve Substantial Compliance~~ is advancing compliance with the Contempt Provisions.  ~~The Nunez Remediation Manager shall obtain the Monitor's approval to the extent it is required by the Contempt Provisions in the Nunez Orders.~~

~~D.~~C.        The ~~Nunez~~ Remediation Manager and the Monitor are independent positions that each report to the Court and are not answerable to each other, except to the extent that consultation with and approval of actions by the Monitor are otherwise required by this Order.

XIX.   **Immunity and Indemnity.**

A.   The Nunez Remediation Manager and all members of the ~~Nunez~~ Remediation ~~Manager's staff~~Manager Team shall have the status of officers and agents of the Court, and as such shall be vested with the same immunities as vest with the Court.

B.   The ~~Defendants~~City of New York ("the City") shall indemnify the Nunez Remediation Manager and ~~their staff~~each Remediation Manager Team member in, and advance any costs and expenses incurred for, any litigation ~~brought~~ against ~~the Nunez Remediation Manager or their staff~~such person(s) regarding activities conducted in the course of ~~the Nunez Remediation Manager's~~their official duties hereunder.

XX.   **Compensation and Responsibility for Payment.**

A.   The City of New York shall bear all reasonable fees, costs, and expenses of the Nunez Remediation Manager, including payments to the ~~Nunez~~ Remediation ~~Manager's staff~~Manager Team.  Such fees, costs, and expenses shall be sufficient to allow the Nunez Remediation Manager to fulfill their duties pursuant to this Order in a reasonable and efficient manner.  The Court shall bear no obligation to compensate or indemnify, nor advance or otherwise answer for expenses or liabilities incurred by, the Nunez Remediation Manager ~~may hire or consult with such additional qualified staff as is reasonably necessary to fulfill their duties pursuant to this Order without duplication~~or any member of ~~effort.~~the Remediation Manager Team.

A.i.   The Nunez Remediation Manager shall submit an invoice for their services, and the services of ~~their consultants and staff~~the Remediation Manager Team, to the City on a monthly basis.  Those invoices will include charges for fees, costs, and expenses.  Payment on such invoices shall be made within 60 days of receipt.  ~~If the City objects to any fees, costs, or expenses as unreasonable, unnecessary, or duplicative, the City shall submit the invoice to the Court for a determination of reasonable fees, costs, and expenses.~~

ii.   ~~Within 30 days of the date of Acceptance Effective Date~~If the City objects to any invoiced fees, costs, or expenses as unreasonable, unnecessary, or duplicative, the City shall submit its objection and the invoice to the Court for a determination of reasonable fees, costs, and expenses.

B.   The Nunez Remediation Manager shall submit to the ~~Court and the City an initial~~City a proposed Schedule of Fees and Expenses within 30 days of their Onboard Date.  This Schedule shall include a preliminary description of the title and duties of each member of the Remediation Manager Team that the Nunez Remediation Manager believes will be required to exercise the duties of the Nunez Remediation Manager and a statement of rates and proposed fees and expenses~~, which the~~.

i.   The Nunez Remediation Manager and the City shall confer in good faith regarding the proposal for fees and, to the extent that they agree, shall make a joint proposal to the Court for approval of the Schedule of Fees and Expenses.

ii. To the extent that the City and the Nunez Remediation Manager disagree regarding the Schedule of Fees and Expenses, they shall make separate submissions to the Court stating the basis for the disagreement.

iii. The Court shall approve or modify the proposed Schedule of Fees and Expenses.

B.iv. The Nunez Remediation Manager may modify rates and proposed fees and expenses from time to time as appropriate. If the City raises any objection to the statement, the City and the upon approval of the Court. The Nunez Remediation Manager shall promptly meet and confer, and with the City in advance of any unresolved objections shall jointly be submitted to the Court for resolution.applications to the Court regarding fees in an attempt to reach agreement. If agreement cannot be reached, the Nunez Remediation Manager and the City shall make separate submissions to the Court stating the basis for the disagreement.

## XXI. Duration of the Nunez Remediation Manager's Tenure.

A. The Nunez Remediation Manager's authority will continue, subject to reductions in the scope of that authority pursuant to Section III above, until the Court determines that Substantial Compliance (defined in Section XX, ¶ 18 of the Consent Judgment) with Nunez Remediation Manager's authority has been terminated pursuant to Section III for all of the Contempt Provisions has been achieved and sustained for a period of 12 months consistent with Section III. . Nothing in this Order precludes an application pursuant to the termination review procedure set forth in 18 U.S.C. Section 3626(b).

B. Nothing in this Order affects the terms of the Consent Judgment or any other Nunez ~~Orders~~Order, which remain in full force and effect. In the event the Nunez Remediation Manager's tenure terminates, the Consent Judgment and all other Nunez Orders ~~will~~shall remain in full force and effect until the Court makes a finding that the Defendants have achieved Substantial Compliance with the provisions of the Consent Judgment and have maintained Substantial Compliance for a period of twenty-four (24) months, as set forth in Section XXI, ¶ 5 of the Consent Judgment.

## XXII.  Cooperation.

A. The Defendants, ~~and~~ all agents or persons within the employ of the Defendants (including contract employees), ~~and~~ all persons in concert and in participation with them, ~~the Monitor, and all counsel in this action,~~and the Monitoring Team shall fully cooperate with the Nunez Remediation Manager in the discharge of the Nunez Remediation Manager's duties under this Order~~, and~~.  With respect to counsel to the parties, the cooperation obligation is without prejudice to any position that particular information is privileged or constitutes protected attorney work product, or that such cooperation would violate a legal or ethical duty. Defendants shall promptly respond to all inquiries and requests from the Remediation Manager Team related to compliance with the Nunez Orders.  To the extent that a party asserts that information requested by the Remediation Manager Team is privileged or unrelated to the proper duties of the Nunez Remediation Manager, they may assert such objections to the Nunez Remediation Manager.  If the parties are unable to resolve such objections after engaging in a meet and

confer process, including written correspondence, the Nunez Remediation
Manager may seek appropriate relief from the Court.

## XXIII. Other Terms.

A. If at any point the Nunez Remediation Manager determines that ~~they need~~the
Department needs additional funding ~~to fulfill the Remediation Action Plan~~ that is
not budgeted sufficiently for that fiscal year to fulfill a Remediation Action Plan,
the Nunez Remediation Manager shall immediately consult the Commissioner
~~before notifying~~and then shall notify the City Council's Finance Division and the
Mayor's Office of Management and Budget of the specific purpose and the
amount of funds needed.  If the issue is not timely resolved, the Nunez
Remediation Manager or any party may request a hearing before the Court.

~~B.~~  The Remediation Manager Team~~The Nunez Remediation Manager shall make~~
~~reasonable efforts to exercise their authority in a manner consistent with~~
~~applicable state and local laws, regulations, and contracts.  However, in the event~~
~~the Nunez Remediation Manager determines that those laws, regulations, or~~
~~contracts impede the Nunez Remediation Manager from carrying out their duties~~
~~under this Order and achieving compliance with the Contempt Provisions, the~~
~~Nunez Remediation Manager may petition the Court to waive any legal or~~
~~contractual requirement that is causing the impediment or seek other appropriate~~
~~relief on notice to the parties and the Monitoring Team.~~

~~C.~~B.        The Nunez Remediation Manager ~~and their staff~~ shall have the authority
to communicate ex parte and confidentially with each party and each party's legal
representatives, as well as with the Court and the Monitoring Team.  Plaintiffs'

Counsel's access to information and other materials in the possession of the Remediation Manager Team, and Plaintiffs' Counsel's disclosure and confidentiality obligations in respect of the same, shall be governed by and subject to the scope of Consent Judgment Section XX, ¶¶ 10 and 11 and the Protective Orders entered in this case (docket entry nos. 89, 203, 574), in like manner as such access and confidentiality provisions govern access to information in possession of the Monitor.  Information protected by other protective Orders and/or confidentiality agreements entered in this case (e.g., docket entry nos. 290 and 304) shall not lose its protection under those Orders and agreements by virtue of being disclosed to Plaintiffs' Counsel by the Remediation Manager Team.

D.C.    Absent leave of the Court, the Nunez Remediation Manager and their staffTeam may not testify in any litigation or proceeding other than this case, including public hearings or other proceedings before the New York City Council, the Board of Correction, or the New York State legislature, or private litigation, with regard to any act or omission of the DOC or any of the DOC's agents, representatives, or employees related to the Nunez Orders.  The Nunez Except as expressly authorized in advance by the Court or by this Order, the Remediation Manager and their staffTeam may not give interviews or make public statements regarding their work under the Nunez Orders, other than reports filed on the docket, without the permission of the Court and this Order.

E.D.    Unless such conflict is waived in writing by the Parties,parties, no member of the Nunez Remediation Manager and their staffTeam may not accept employment or provide consulting services that present a conflict of interest with

their responsibilities under this Order, including being retained (on a paid or unpaid basis) by any current or ~~future~~anticipated litigant or claimant, or such litigant's or claimant's attorney, in connection with a claim or suit against the DOC or the DOC's agents, representatives, or employees.

~~F.~~E.       The Nunez Remediation Manager is an agent of the Court and is not a federal, State, or local agency or an agent thereof.

~~G.~~F.       If at any time the Nunez Remediation Manager position becomes vacant, the parties and the Monitor shall confer on potential replacements and the parties shall meet and confer and endeavor to jointly provide the court with no more than four candidates to replace the Nunez Remediation Manager.  The parties shall submit their recommendations, with supporting materials, to the Court confidentially.  Once the Court has received the parties' recommendations, the Court shall review the proposed candidates, and any further candidates the Court~~, in its discretion,~~ may deem appropriate for consideration, and shall select the new Nunez Remediation Manager.

## XXIV. Effective Date.

A. This Order Appointing the Nunez Remediation Manager shall become effective following the appointed Nunez Remediation Manager's confirmation of their Acceptance of the powers, responsibilities and duties imposed by this Order, which the Nunez Remediation Manager shall effectuate by signing a copy of this Order below and returning the countersigned copy to the Court by email addressed to SwainNYSDCorresp@nysd.uscourts.gov.  ~~The Order shall be~~

~~effective on the Acceptance Effective Date.~~ within 7 days of the issuance of the final version of this Order.

B.  The Nunez Remediation Manager shall coordinate with the Court and Defendants to decide on an intended Onboard Date, which the Nunez Remediation Manager must confidentially convey to the Court within 21 days of the Nunez Remediation Manager's Acceptance.  The Nunez Remediation Manager's Onboard Date shall then be specified in writing in a Notice of Acceptance filed by the Court on the public docket for this case.

SO ORDERED this _____ day of _____, 2025

_____
LAURA TAYLOR SWAIN
CHIEF UNITED STATES DISTRICT JUDGE

ACCEPTED

_____
(Signature)

_____
(Typed or printed name)

Date:  _____