UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                           :

MARK NUNEZ, et al.,                       :

                                      :        11-CV-5845-LTS

                  Plaintiff,        :

                                        :

              -v-                    :

CITY OF NEW YORK, et al.,          :

                                        :

                  Defendants.     :

                                        :
-------------------------------------------------------------------X

### NOTICE OF NUNEZ REMEDIATION MANAGER ACCEPTANCE

On February 17, 2026, the Court issued the Order Appointing Nicholas Deml as Nunez Remediation Manager (docket entry no. 960 (the "Order")), which specified that it would become effective upon Mr. Deml's countersignature of the Order. The Order further specified that the Court would issue a Notice of Acceptance on the public docket specifying Mr. Deml's Onboard Date. The Court hereby provides notice that Mr. Deml has countersigned the Order, thereby formally accepting the powers, responsibilities, and duties imposed therein, with an Onboard Date of **February 23, 2026**. A copy of the countersigned Order is attached to this Notice as Appendix 1.

The Court thanks Mr. Deml for his willingness to serve and thanks the Monitoring Team and the Parties for their cooperation in the selection and onboarding processes. The Court

looks forward to prompt and meaningful improvement of the safety conditions in the New York

City jails.


SO ORDERED.
Dated: New York, New York
        February 18, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

# APPENDIX 1: COUNTERSIGNED COPY OF ORDER APPOINTING NICHOLAS DEML AS NUNEZ REMEDIATION MANAGER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                       :

MARK NUNEZ, et al.,                      :

                               :

                    Plaintiff,        :         11-CV-5845-LTS

                               :

         -v-                    :         <u>ORDER</u>

                               :

City of New York, et al.,               :

                               :

                    Defendants.     X

-------------------------------------------------------------------

### <u>ORDER APPOINTING NICHOLAS DEML AS NUNEZ REMEDIATION MANAGER</u>

WHEREAS, on October 22, 2015, this Court entered the Consent Judgment in this matter (docket entry no. 249) to correct violations of the constitutional rights of people in custody in jails operated by the New York City Department of Correction (the "DOC" or "the Department")[1];

WHEREAS, the Consent Judgment required Defendants the DOC and the City of New York (collectively, "Defendants") to take specific actions to remedy a pattern and practice of violence by staff against persons in custody, and to develop and implement new practices, policies, and procedures to reduce violence in the jails and ensure the safety and well-being of persons in custody;

WHEREAS, Section XXII, ¶ 1 of the Consent Judgment provides: "The Parties stipulate and agree, and the Court finds, that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a).  The Parties further stipulate and agree, and the Court finds, that the

---

[1]    The Plaintiff Class is defined as "all present and future inmates confined in jails operated by the Department, except for the Elmhurst and Bellevue Prison Wards."  (Docket entry no. 249 ¶ II.2.)

prospective relief in this Agreement is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.  Accordingly, the Parties agree and represent that the Agreement complies with the provisions of 18 U.S.C. § 3626(a)";

WHEREAS, on August 14, 2020, the Court entered a Remedial Consent Order Addressing Non-Compliance (the "First Remedial Order," docket entry no. 350) that included several remedial measures designed to address the repeated findings of the Nunez Independent Monitor (the "Monitor" or "Monitoring Team," which shall each refer to the Monitor and members of the Monitoring Team) that the Defendants were not in compliance with core provisions of the Consent Judgment, including Section IV, ¶ 1 (Implementation of Use of Force Directive); Section VII, ¶ 1 (Thorough, Timely, Objective Investigations); Section VII, ¶ 7 (Timeliness of Preliminary Reviews); Section VII, ¶ 9 (a) (Timeliness of Full ID Investigations); Section VIII, ¶ 1 (Appropriate and Meaningful Staff Discipline); Section XV, ¶ 1 (Inmates Under the Age of 19, Protection from Harm); and Section XV, ¶ 12 (Inmates Under the Age of 19, Direct Supervision);

WHEREAS, in his Eleventh Report filed on May 11, 2021 (docket entry no. 368), the Monitor reported that the Defendants were not in compliance with numerous provisions of the First Remedial Order, including Section A, ¶ 2 (Facility Leadership Responsibilities), Section A, ¶ 3 (Revised De-escalation Protocol), Section A, ¶ 6 (Facility Emergency Response Teams), Section D, ¶ 1 (Consistent Staffing), Section D, ¶ 2 (ii) (Tracking of Incentives and Consequences), and Section  D, ¶ 3 (Direct Supervision);

WHEREAS, the Court entered a Second Remedial Order on September 29, 2021 (docket entry no. 398), and a Third Remedial Order on November 22, 2021 (docket entry no. 424);

WHEREAS, after the three Remedial Orders failed to result in meaningful improvements, the Defendants developed an Action Plan, supported by the Monitor, that was designed to address Defendants' overall lack of progress toward compliance by focusing on four foundational areas without which reform could not proceed—security practices, supervision and leadership, staffing practices, and accountability—and the Court entered and So Ordered the Action Plan on June 14, 2022 (docket entry no. 465);

WHEREAS, the Court issued five additional Court Orders in 2023[2] (collectively the "2023 Orders") that were intended to catalyze improvement in the Department's management of the Nunez Orders, its work with the Monitor, and its efforts to address fundamental security, reporting, and management practices;

WHEREAS, the Court found that the First Remedial Order, the Second Remedial Order, the Third Remedial Order, the Action Plan, and the 2023 Orders were each compliant with the provisions of 18 U.S.C. § 3626(a) and were necessary to correct the violations of federal rights as alleged by the United States and the Plaintiff Class;

WHEREAS, the First Remedial Order, the Second Remedial Order, the Third Remedial Order, the Action Plan, and the 2023 Orders were each entered to address the Defendants' ongoing non-compliance with the Consent Judgment and to achieve the Consent Judgment's

---

[2]     These five orders are the June 13, 2023 Order (docket entry no. 550), the August 10, 2023 Order (docket entry no. 564), the October 10, 2023 Order (docket entry no. 582), the December 15, 2023 Order (docket entry no. 656), and the December 20, 2023 Order (docket entry no. 665).

primary goal: to protect the constitutional rights of persons in custody and substantially reduce the level of violence in the jails;

WHEREAS, the Consent Judgment, the First Remedial Order, the Second Remedial Order, and the Action Plan are hereafter collectively referred to as "the Subject Orders," while the Subject Orders, the Third Remedial Order, the 2023 Orders, and all other substantive Orders that are currently operative in this case are hereafter collectively referred to as "the Nunez Orders";

WHEREAS, more than a year after the Action Plan was entered, the Monitor found in his July 10, 2023 Special Report (docket entry no. 557) that the Defendants had not made substantial and demonstrable progress in implementing the reforms, initiatives, plans, systems, and practices outlined in the Action Plan, and that there had not been a substantial reduction in the risk of harm facing persons in custody and DOC staff;

WHEREAS, on November 17, 2023, the Plaintiff Class and the United States filed a Motion for Contempt and Appointment of Receiver (docket entry no. 601);

WHEREAS, on November 27, 2024, this Court issued its factual findings and decision granting Plaintiffs' Motion for Contempt, finding that Defendants (i) are in contempt of eighteen core provisions of the Nunez Orders (the "Contempt Provisions") "that have gone unheeded for years and have highlighted failures inextricably linked to the Department's historic pattern of excessive use of force against persons in custody" (docket entry no. 803, at 52); (ii) "have not demonstrated diligent attempts to comply with the Contempt Provisions in a reasonable manner" (id. at 52); and (iii) have repeatedly and consistently failed to remediate the violations of the federal rights of persons in custody that necessitated entry of the Consent Judgment (id. at 52, 54-56);

WHEREAS, this Court found that the "use of force rate and other rates of violence, self-harm, and deaths in custody are demonstrably worse than when the Consent Judgment went into effect in 2015" and the "unsafe and dangerous conditions in the jails . . . have become normalized despite the fact that they are clearly abnormal and unacceptable" (docket entry no. 803, at 11);

WHEREAS, this Court found that "for nine years, Defendants made only half-hearted, inconsistent efforts to comply with Court orders" (docket entry no. 803, at 50);

WHEREAS, this Court found that "[t]he record in this case makes clear that those who live and work in the jails on Rikers Island are faced with grave and immediate threats of danger, as well as actual harm, on a daily basis as a direct result of Defendants' lack of diligence, and that the remedial efforts thus far undertaken by the Court, the Monitoring Team, and the parties have not been effective to alleviate this danger" (docket entry no. 803, at 55);

WHEREAS, this Court found that "Defendants' ongoing failure to comply" requires a remedy that addresses the "insufficiently resourced leadership; a lack of continuity in management; failures of supervision and cooperation between supervisors and line officers; a lack of skill or imagination to create and implement transformative plans; and an unwillingness or inability to cooperate with the Monitoring Team recommendations to accomplish the changes necessary" (docket entry no. 803, at 54);

WHEREAS, this Court found that "[t]he last nine years also leave no doubt that continued insistence on compliance with the Court's orders by persons answerable principally to political authorities would lead only to confrontation and delay; that the current management structure and staffing are insufficient to turn the tide within a reasonable period; that Defendants have consistently fallen short of the requisite compliance with Court orders for years, at times

under circumstances that suggest bad faith; and that enormous resources—that the City devotes to a system that is at the same time overstaffed and underserved—are not being deployed effectively" (docket entry no. 803, at 55-56);

WHEREAS, as required by 18 U.S.C. § 3626(a), the prospective relief delineated in this Order is narrowly drawn, extends no further than is necessary to correct the violations of federal rights as alleged by the Plaintiff Class and the United States, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system; and

WHEREAS, the Court announced, by Order dated January 27, 2026 (docket entry no. 953), its intention to appoint Nicholas Deml as Remediation Manager and, having reached agreement with Defendants regarding compensation parameters and other relevant arrangement and logistics, Mr. Deml has accepted the appointment with an intended Onboard Date of February 23, 2026.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

I.    **Appointment of Nunez Remediation Manager and Nunez Remediation Manager's Duties.**

A.    Nicholas Deml is hereby appointed to serve in this case as <u>Nunez</u> Remediation Manager, with the responsibility and authority to take all necessary steps to promptly achieve Substantial Compliance (defined in Section XX, ¶ 18 of the Consent Judgment) with the Contempt Provisions.

B.    The <u>Nunez</u> Remediation Manager's work shall be guided by "Remediation Action Plans," which shall be work plans developed sequentially by the Remediation Manager that include specific and concrete steps and milestones ("Benchmarks")

designed cumulatively to achieve Substantial Compliance with the Contempt
Provisions.  The process for developing Remediation Action Plans is detailed in
Section II.

C.   The Nunez Remediation Manager shall provide leadership and executive
management with respect to achieving Substantial Compliance with the Contempt
Provisions with the goal of developing and implementing a sustainable system
that protects the constitutional rights of persons in custody.

D.   The Nunez Remediation Manager shall be answerable only to the Court.

E.   The Nunez Remediation Manager shall maintain an office within Department
headquarters or on Rikers Island, work on a full-time basis unless otherwise
expressly permitted by the Court, and primarily work onsite.

F.   The Nunez Remediation Manager shall not maintain any employment or contract
work other than the Nunez Remediation Manager position unless such additional
work is expressly approved by the Court.

## II.   **Development and Implementation of the Remediation Action Plans.**

A.   The Nunez Remediation Manager, in consultation with the Commissioner of the
New York City Department of Correction (the "Commissioner") and the
Monitoring Team, shall develop a series of Remediation Action Plans that are
designed, cumulatively, to enable the Department to achieve Substantial
Compliance with all of the Contempt Provisions within seven years, if not sooner.
This provision does not govern the tenure of the Nunez Remediation Manager or
the duration of the Nunez Remediation Manager's authority with respect to any

specific Contempt Provision.  Such matters are governed exclusively by Sections III and IX.

B.  The Benchmarks set forth in the first Remediation Action Plan are, unless otherwise ordered by the Court, to be achieved by the end of the second Reporting Period following the Court's approval of such Remediation Action Plan.[3] Thereafter, the Nunez Remediation Manager shall issue successive Remediation Action Plans, each setting Benchmarks to be achieved over the two consecutive Reporting Periods following the expiration of the prior Remediation Action Plan.

C.  Each Remediation Action Plan shall:

    i.  include specific and concrete steps (i.e., the relevant Benchmarks) that are necessary within the period covered by the operative Remediation Action Plan to enable Defendants to ultimately achieve Substantial Compliance with the Contempt Provisions.  The Benchmarks identified in each Remediation Action Plan shall be organized in a manner that identifies priorities, beginning with the safety-related areas and actions that are most urgently in need of attention;

    ii.  include transformative and sustainable initiatives, which shall include any positive initiatives then underway that must be sustained or enhanced during the relevant period; and

    iii.  to the extent that recommendations by the Monitoring Team to support advancing compliance with the Contempt Provisions for the relevant

---

[3]  The Reporting Periods in this case cover January 1 to June 30 and July 1 to December 31 of each year.

period are not already included in the Benchmarks, address such recommendations from the Monitoring Team.

D.  Timing of the Remediation Action Plans:

   i.  The Nunez Remediation Manager shall provide the first Remediation Action Plan to the parties in draft form for comment within 90 days of the date of the Nunez Remediation Manager's commencement of their official duties under this Order (the Nunez Remediation Manager's "Onboard Date").  Each party shall provide the Nunez Remediation Manager, the Monitoring Team, and the other parties with their comments on the draft of the first Remediation Action Plan, if any, within 30 days of receipt. The Nunez Remediation Manager, in consultation with the Commissioner and the Monitoring Team, shall consider the comments from the parties and make any changes deemed necessary.  The Nunez Remediation Manager shall file the final version of the proposed first Remediation Action Plan with the Court for approval within 21 days of receipt of the parties' comments.  The first Remediation Action Plan shall expire on June 30, 2027.

   ii. After the first Remediation Action Plan, each successive Remediation Action Plan shall cover the two consecutive Reporting Periods, from July 1 of the year of its Court approval through June 30 of the following year, unless otherwise ordered by the Court.  The Nunez Remediation Manager shall submit each subsequent Remediation Action Plan to the parties in draft form for comment 50 days prior to the expiration of the

prior Remediation Action Plan.  Each party shall provide the <u>Nunez</u>

Remediation Manager, the Monitoring Team, and the other parties with

their comments on such Remediation Action Plan within 20 days of

receipt of the Remediation Action Plan.  The <u>Nunez</u> Remediation

Manager, in consultation with the Commissioner and the Monitoring

Team, shall consider the comments from the parties and make any changes

deemed necessary.  The <u>Nunez</u> Remediation Manager shall then file each

such proposed Remediation Action Plan with the Court within 15 days of

receipt of the parties' comments.

iii.   Remediation Action Plans shall become effective upon approval by the

Court, and their implementation must begin immediately upon their

approval by the Court.  This work shall be undertaken in collaboration

with the Commissioner to the greatest extent consistent with efficiency,

effectuation of change, and the fostering of a respectful, sustainable, and

safety-oriented approach to management.

iv.   The <u>Nunez</u> Remediation Manager may seek to modify or amend

Remediation Action Plans upon application to the Court.  The <u>Nunez</u>

Remediation Manager shall consult with the Commissioner, the

Monitoring Team, and the parties in advance of any application to the

Court, and any such application shall be made on reasonable notice to the

parties and the Monitoring Team.  For good cause, the Court may on its

own motion and on notice to the <u>Nunez</u> Remediation Manager and the

parties, who shall have the right to be heard on the matter, change any element of a Remediation Action Plan.

E.  Within 30 days following Court approval of the first Remediation Action Plan, the Nunez Remediation Manager, the Monitoring Team, and the Commissioner shall jointly develop an updated DOC organizational chart that delineates the reporting lines of divisions, operational functions, and personnel that are subject to the direct authority of the Nunez Remediation Manager and the Commissioner, respectively, and those that are subject to the direct authority of both the Nunez Remediation Manager and the Commissioner.  The Nunez Remediation Manager shall determine lines of authority in areas that are subject to the Contempt Provisions should there be disagreement between the Nunez Remediation Manager and the Commissioner.

III.  **Assessment of Compliance & Transition Back to DOC Control.**

A.  Upon a finding by the Monitoring Team that Defendants are in Substantial Compliance with one or more of the Contempt Provisions, the Nunez Remediation Manager shall begin working with the Commissioner on a Transition Plan that shifts responsibility and authority over all functions within the scope of the relevant Contempt Provision(s) back to the Department.

B.  Transition Plans shall explain (1) how to sustain the progress achieved, (2) the steps the Nunez Remediation Manager will take to prepare the Department to operate independently in the relevant area, (3) the actions the Department will take to maintain or improve upon the required performance level and sustain compliance, and (4) and any other information and provisions that the Nunez

Remediation Manager and the Commissioner deem appropriate to support the maintenance of Substantial Compliance in the relevant area.

C. Transition Plans shall be designed to facilitate the termination of the Nunez Remediation Manager's authority for the relevant function(s) within 60 days of the Monitoring Team's filing of the Monitor's Report that rates the Contempt Provision in Substantial Compliance for the second successive Reporting Period. The Monitoring Team shall be consulted in the preparation of all Transition Plans.

D. The Nunez Remediation Manager shall submit the relevant Transition Plan to the Court within 30 days of the issuance of the first Monitor's Report finding that Defendants are in Substantial Compliance with the relevant Contempt Provision.

E. Upon receipt of each Transition Plan, the Court shall determine whether Substantial Compliance with the relevant Contempt Provision(s) has been achieved and, upon the Court's finding of Substantial Compliance, shall approve the Transition Plan with any modifications the Court deems necessary. The Nunez Remediation Manager and the Commissioner shall thereafter implement the Transition Plan.

F. Following such implementation, the Nunez Remediation Manager's authority over the relevant Contempt Provision(s) shall be terminated within 60 days after the Monitoring Team's filing of the Monitor's Report that rates the Contempt Provision(s) in Substantial Compliance for the second successive Reporting Period, unless the Court extends the termination date for good cause.

G. If the Department does not sustain Substantial Compliance with a Contempt Provision after the Nunez Remediation Manager's authority over that Contempt

Provision has terminated but before the <u>Nunez</u> Remediation Manager's tenure has terminated, the Court shall have the authority to restore authority over any or all functions related to the relevant Contempt Provision to the <u>Nunez</u> Remediation Manager. The Court shall effect such a restoration only upon application of the parties or of the <u>Nunez</u> Remediation Manager. The applicant must provide notice to the parties, the <u>Nunez</u> Remediation Manager, and the Monitoring Team before making any such application.

H. The <u>Nunez</u> Remediation Manager shall have the authority and discretion to voluntarily delegate to the Commissioner responsibility for any or all of the functions under the <u>Nunez</u> Remediation Manager's authority at any given time, including, but not limited to, functions that are the subject of relevant Benchmarks of the operative Remediation Action Plan and functions related to Contempt Provisions for which the Monitor has rated the Defendants to be in Partial Compliance. The <u>Nunez</u> Remediation Manager is encouraged to voluntarily delegate responsibility to the extent the <u>Nunez</u> Remediation Manager deems such delegation consistent with efficiency, effectuation of change, and the fostering of a respectful, sustainable, and safety-oriented approach to management. The <u>Nunez</u> Remediation Manager's voluntary delegation of responsibilities shall not affect the timeline or requirements for Transition Plans nor the termination of the <u>Nunez</u> Remediation Manager's authority over a Contempt Provision. The <u>Nunez</u> Remediation Manager shall have the ability to modify or retract any voluntarily delegated authority if the <u>Nunez</u> Remediation Manager deems such a modification

or retraction necessary and shall modify or retract any voluntarily delegated authority as the Court deems necessary.

I.  In addition to filing reports with the Court as required by Section V, ¶ B below, the Nunez Remediation Manager shall be available to the Court throughout the Nunez Remediation Manager's tenure and shall meet with the Court on an informal, as needed, basis.

J.  If the Court determines at any time that the Nunez Remediation Manager's performance is unsatisfactory or that the Nunez Remediation Manager's tenure, responsibilities, or authority should be modified or terminated to any extent not contemplated by this Order, the Court shall first discuss the concern with the Nunez Remediation Manager and the Monitoring Team, and shall thereafter provide the parties notice of any action the Court intends to take with respect to the modification or termination of the Nunez Remediation Manager's tenure, responsibilities or authority, and the reasons therefor. Upon the Court's proposal, the Nunez Remediation Manager, the parties, and the Monitoring Team will be provided with the opportunity to be heard prior to any action.

IV.  **Powers of the Nunez Remediation Manager.**  Beginning on the Nunez Remediation Manager's Onboard Date, the Nunez Remediation Manager shall have all powers necessary to achieve Substantial Compliance with the Contempt Provisions, including, but not limited to:

A.  **General Powers**: The Nunez Remediation Manager shall have the authority to exercise all powers vested by law in the Commissioner to the extent necessary to achieve compliance with the Contempt Provisions, including, but not limited to,

such powers with respect to administrative, personnel, financial, accounting, contracting, legal, and other operational functions of the DOC to the extent necessary to achieve compliance with the Contempt Provisions.

B. **Specific Powers**: Without in any way limiting the <u>Nunez</u> Remediation Manager's general powers detailed in Paragraph A above, the <u>Nunez</u> Remediation Manager shall have the authority to exercise the following specific powers to the extent that they (a) are necessary to achieve sustainable Substantial Compliance with the Contempt Provisions, and (b) are vested by law in the Commissioner:

   i. The <u>Nunez</u> Remediation Manager shall have the authority to enact or change DOC policies, procedures, protocols, systems, and practices.

   ii. The <u>Nunez</u> Remediation Manager shall have the authority to establish personnel policies and direct personnel actions. The <u>Nunez</u> Remediation Manager shall have the power to create, modify, abolish, or transfer employee and contractor positions, as well as to recruit, hire, train, terminate, promote, demote, transfer, and evaluate employees and contractors. The <u>Nunez</u> Remediation Manager shall have the authority to assign and deploy DOC staff.

   iii. The <u>Nunez</u> Remediation Manager shall have the authority to determine the DOC's needs and positions with respect to contract provisions.

   iv. The <u>Nunez</u> Remediation Manager shall have the authority to procure and contract for supplies, equipment, tangible goods, and services.

v.   The Nunez Remediation Manager shall have the authority to review, investigate, and take disciplinary or other corrective or remedial actions with respect to any violation of DOC policies, procedures, and protocols.

vi.   In exercising the powers conferred by this Order, the Nunez Remediation Manager shall use reasonable best efforts to consult and work collaboratively with the Commissioner.

C.   As provided in Section III, ¶ H, the Nunez Remediation Manager shall have the authority to delegate any of the foregoing powers to the Commissioner and to modify or retract such delegations as the Nunez Remediation Manager, in the Nunez Remediation Manager's discretion, deems necessary.

D.   **Commissioner's Role**: The Commissioner shall retain all of the Commissioner's authority in areas not implicated by the Contempt Provisions.  The Commissioner and the Nunez Remediation Manager are urged and expected to work collaboratively in aid of the goals of compliance with the Subject Orders and the safe, sustainable management of the jails.  The Nunez Remediation Manager shall have the authority to direct the Commissioner to take any steps that the Nunez Remediation Manager deems necessary to comply with the requirements of the Contempt Provisions.  It is expected that Defendants, the Commissioner, and DOC leadership will work closely with the Nunez Remediation Manager to facilitate the Nunez Remediation Manager's ability to perform their duties under this Order.  Nothing in this Order shall authorize the Nunez Remediation Manager to take any employment action with respect to the Commissioner.

E.  **Additional Powers**: The <u>Nunez</u> Remediation Manager may, after consultation with and reasonable notice to the Commissioner, the Monitoring Team, and the parties, petition the Court for such additional powers as are necessary to achieve Substantial Compliance with the Contempt Provisions.  The <u>Nunez</u> Remediation Manager shall report the positions (which may include requests to be heard) of the parties and the Monitoring Team in any application to the Court.

F.  The <u>Nunez</u> Remediation Manager shall make reasonable efforts to exercise their authority in a manner consistent with applicable state and local laws, regulations, and contracts.  However, in the event the <u>Nunez</u> Remediation Manager determines that those laws, regulations, or contracts impede the <u>Nunez</u> Remediation Manager from carrying out their duties under this Order and achieving Defendants' compliance with the Contempt Provisions, the <u>Nunez</u> Remediation Manager may, after consultation with and on reasonable notice to the Commissioner, the Monitoring Team, and the parties, petition the Court to override any legal or contractual requirement that is causing the impediment or seek other appropriate relief.  The <u>Nunez</u> Remediation Manager shall report the positions (which may include requests to be heard) of the parties and the Monitoring Team in any application to the Court.

G.  **Authority to Hire Staff and Consultants:** The <u>Nunez</u> Remediation Manager shall have the authority to hire additional staff or consultants or obtain technical assistance as is reasonably necessary to fulfill the <u>Nunez</u> Remediation Manager's duties under this Order without duplication of effort.  The <u>Nunez</u> Remediation Manager shall reasonably utilize Defendants' available assets and resources.  The

_Nunez_ Remediation Manager shall take steps necessary to minimize redundancy and the creation of additional bureaucracy, with the goal of creating systems that support a sustainable transition back to the Defendants' control.

H. **Access**: The _Nunez_ Remediation Manager, including all of their staff and consultants (collectively, the "Remediation Manager Team"), shall have unlimited access to all records and files (paper or electronic) maintained by the DOC and shall have unlimited access to all DOC facilities, persons in custody, and DOC staff.  This access includes the authority to conduct confidential interviews with DOC staff and persons in custody.  The Remediation Manager Team's ability to interview DOC staff shall be subject to the employee's right to representation under certain circumstances as set forth in Section 75 of the New York Civil Service Law and MEO-16.  Access to records shall not include access to communications between and among DOC personnel and the New York City Law Department that are protected by the attorney-client privilege or as work-product.

## V.     Reporting by the Nunez Remediation Manager.

A. The _Nunez_ Remediation Manager shall regularly report to and meet with the Court to update the Court regarding the status of efforts to comply with Contempt Provisions and any specific obstacles or impediments encountered by the _Nunez_ Remediation Manager.

B. The _Nunez_ Remediation Manager shall file semi-annual reports on the Court's public docket ("RM Reports").  The RM Reports shall include a description of the actions taken during the Reporting Period to implement the operative

Remediation Action Plan, including the relationship of such actions to achieving Substantial Compliance with the Contempt Provisions.

    i. The RM Reports shall be filed in advance of the Monitor's Report addressing the status of the relevant Contempt Provision(s) for a particular Reporting Period. The <u>Nunez</u> Remediation Manager shall, in consultation with the Monitoring Team, propose for the Court's approval a specific schedule for the submission of regular written reports to be filed on the public docket.

    ii. The <u>Nunez</u> Remediation Manager may file additional reports with the Court, if necessary, upon reasonable notice to the parties and the Monitoring Team, and may make such informal reports to the Court as the <u>Nunez</u> Remediation Manager and the Court deem necessary and appropriate.

    iii. The information contained in any report by the <u>Nunez</u> Remediation Manager is not an assessment of compliance pursuant to Section XX, ¶ 18 of the Consent Judgment and does not displace the authority of the Monitor to assess compliance under this or any other Order of the Court.

C. The RM Reports shall be written with due regard for the privacy interests of individuals in custody and staff members; federal, state, and local laws regarding the privacy of such information; and the interests of the Department in protecting against the disclosure of non-public or privileged information. Consistent with such interests and laws, the <u>Nunez</u> Remediation Manager shall redact individual-identifying information from the RM Reports and any documents

submitted with the RM Reports and shall give due consideration to the Department's requests to redact any other information.  To the extent that the <u>Nunez</u> Remediation Manager declines to make redactions requested by the Department, the RM Reports and any documents submitted with the RM Reports shall be submitted to the Court under seal for the Court to consider the Department's proposed redactions before making the RM Reports public.

D. The RM Reports and other communications of the Remediation Manager Team submitted to the Court, whether <u>in camera</u>, <u>ex parte</u>, or on the public docket, shall not be admissible as evidence in any proceeding other than a proceeding relating to the enforcement of the <u>Nunez</u> Orders.

E. The Remediation Manager Team shall cooperate fully with the Monitoring Team and shall share information that the Monitoring Team needs to fulfill its role and responsibilities.

F. The Remediation Manager Team shall be subject to the obligations of Defendants under the <u>Nunez</u> Orders with respect to consultations with the Monitoring Team. The Remediation Manager Team may also seek information or technical assistance from the Monitoring Team in the same manner as Defendants are authorized to do so under the <u>Nunez</u> Orders (including, but not limited to, Consent Judgment Section XX, ¶¶ 24 and 25).

G. The <u>Nunez</u> Remediation Manager shall obtain the Monitor's approval of the <u>Nunez</u> Remediation Manager's plans and activities only to the extent such approval is required by the <u>Nunez</u> Orders for plans and activities of the Defendants.  (<u>See</u> Consent Judgment § XX, ¶ 26.)  To the extent that the Monitor

does not provide such approval, the <u>Nunez</u> Remediation Manager may raise the matter with the Court and must show good cause for approval despite the Monitor's decision to withhold approval. The <u>Nunez</u> Remediation Manager shall provide reasonable notice to the Monitoring Team and the parties before making any such application to the Court, and the parties and the Monitor may seek an opportunity to be heard on any such application.

H. The Remediation Manager Team may not disclose information provided to the Remediation Manager Team pursuant to the <u>Nunez</u> Orders, except as authorized by this Order, the Court on its own motion, or pursuant to application by, and on notice to, the parties.

**VI.** <u>**Role of the Monitor.**</u>

A. This order does not alter the role or responsibilities of the Monitor as described in the <u>Nunez</u> Orders, including, but not limited to, obligations to assess compliance, provide technical assistance, and regularly report to the Court.

B. Following the approval of the first Remediation Action Plan, the Monitor's Report for each semi-annual Reporting Period shall also: (a) describe the efforts that the Department and the <u>Nunez</u> Remediation Manager have taken to implement the requirements of the Remediation Action Plan that was operative during that Reporting Period; (b) describe the extent to which the Department and the <u>Nunez</u> Remediation Manager have met the Benchmarks of the then-operative Remediation Action Plan and complied with each of the Contempt Provisions; and (c) address the overall extent to which the work under the then-operative Remediation Action Plan is advancing compliance with the Contempt Provisions.

C. The Nunez Remediation Manager and the Monitor are independent positions that each report to the Court and are not answerable to each other, except to the extent that consultation with and approval of actions by the Monitor are otherwise required by this Order.

## VII. **Immunity and Indemnity.**

A. The Nunez Remediation Manager and all members of the Remediation Manager Team shall have the status of officers and agents of the Court, and as such shall be vested with the same immunities as vest with the Court.

B. The City of New York ("the City") shall indemnify the Nunez Remediation Manager and each Remediation Manager Team member in, and advance any costs and expenses incurred for, any litigation against such person(s) regarding activities conducted in the course of their official duties hereunder.

## VIII. **Compensation and Responsibility for Payment.**

A. The City of New York shall bear all reasonable fees, costs, and expenses of the Nunez Remediation Manager, including payments to the Remediation Manager Team. Such fees, costs, and expenses shall be sufficient to allow the Nunez Remediation Manager to fulfill their duties pursuant to this Order in a reasonable and efficient manner. The Court shall bear no obligation to compensate or indemnify, nor advance or otherwise answer for expenses or liabilities incurred by, the Nunez Remediation Manager or any member of the Remediation Manager Team.

　　i. The Nunez Remediation Manager shall submit an invoice for their services, and the services of the Remediation Manager Team, to the City

on a monthly basis.  Those invoices will include charges for fees, costs, and expenses.  Payment on such invoices shall be made within 60 days of receipt.

ii.  If the City objects to any invoiced fees, costs, or expenses as unreasonable, unnecessary, or duplicative, the City shall submit its objection and the invoice to the Court for a determination of reasonable fees, costs, and expenses.

B.  The Nunez Remediation Manager shall submit to the City a proposed Schedule of Fees and Expenses within 30 days of their Onboard Date.  This Schedule shall include a preliminary description of the title and duties of each member of the Remediation Manager Team that the Nunez Remediation Manager believes will be required to exercise the duties of the Nunez Remediation Manager and a statement of rates and proposed fees and expenses.

i.  The Nunez Remediation Manager and the City shall confer in good faith regarding the proposal for fees and, to the extent that they agree, shall make a joint proposal to the Court for approval of the Schedule of Fees and Expenses.

ii.  To the extent that the City and the Nunez Remediation Manager disagree regarding the Schedule of Fees and Expenses, they shall make separate submissions to the Court stating the basis for the disagreement.

iii.  The Court shall approve or modify the proposed Schedule of Fees and Expenses.

iv. The <u>Nunez</u> Remediation Manager may modify rates and proposed fees and expenses from time to time as appropriate upon approval of the Court. The <u>Nunez</u> Remediation Manager shall confer with the City in advance of any applications to the Court regarding fees in an attempt to reach agreement.  If agreement cannot be reached, the <u>Nunez</u> Remediation Manager and the City shall make separate submissions to the Court stating the basis for the disagreement.

## IX.    <u>Duration of the Nunez Remediation Manager's Tenure.</u>

A. The <u>Nunez</u> Remediation Manager's authority will continue, subject to reductions in the scope of that authority pursuant to Section III above, until the <u>Nunez</u> Remediation Manager's authority has been terminated pursuant to Section III for all of the Contempt Provisions.  Nothing in this Order precludes an application pursuant to the termination review procedure set forth in 18 U.S.C. Section 3626(b).

B. Nothing in this Order affects the terms of the Consent Judgment or any other <u>Nunez</u> Order, which remain in full force and effect.  In the event the <u>Nunez</u> Remediation Manager's tenure terminates, the Consent Judgment and all other <u>Nunez</u> Orders shall remain in full force and effect until the Court makes a finding that the Defendants have achieved Substantial Compliance with the provisions of the Consent Judgment and have maintained Substantial Compliance for a period of twenty-four (24) months, as set forth in Section XXI, ¶ 5 of the Consent Judgment.

X.    **Cooperation**.

A. The Defendants, all agents or persons within the employ of the Defendants (including contract employees), all persons in concert and in participation with them, and the Monitoring Team shall fully cooperate with the <u>Nunez</u> Remediation Manager in the discharge of the <u>Nunez</u> Remediation Manager's duties under this Order. With respect to counsel to the parties, the cooperation obligation is without prejudice to any position that particular information is privileged or constitutes protected attorney work product, or that such cooperation would violate a legal or ethical duty. Defendants shall promptly respond to all inquiries and requests from the Remediation Manager Team related to compliance with the <u>Nunez</u> Orders. To the extent that a party asserts that information requested by the Remediation Manager Team is privileged or unrelated to the proper duties of the <u>Nunez</u> Remediation Manager, they may assert such objections to the <u>Nunez</u> Remediation Manager. If the parties are unable to resolve such objections after engaging in a meet and confer process, including written correspondence, the <u>Nunez</u> Remediation Manager may seek appropriate relief from the Court.

XI.    **Other Terms.**

A. If at any point the <u>Nunez</u> Remediation Manager determines that the Department needs additional funding that is not budgeted sufficiently for that fiscal year to fulfill a Remediation Action Plan, the <u>Nunez</u> Remediation Manager shall immediately consult the Commissioner and then shall notify the City Council's Finance Division and the Mayor's Office of Management and Budget of the specific purpose and the amount of funds needed. If the issue is not timely

resolved, the <u>Nunez</u> Remediation Manager or any party may request a hearing before the Court.

B. The Remediation Manager Team shall have the authority to communicate ex parte and confidentially with each party and each party's legal representatives, as well as with the Court and the Monitoring Team.  Plaintiffs' Counsel's access to information and other materials in the possession of the Remediation Manager Team, and Plaintiffs' Counsel's disclosure and confidentiality obligations in respect of the same, shall be governed by and subject to the scope of Consent Judgment Section XX, ¶¶ 10 and 11 and the Protective Orders entered in this case (docket entry nos. 89, 203, 574), in like manner as such access and confidentiality provisions govern access to information in possession of the Monitor. Information protected by other protective Orders and/or confidentiality agreements entered in this case (<u>e.g.</u>, docket entry nos. 290 and 304) shall not lose its protection under those Orders and agreements by virtue of being disclosed to Plaintiffs' Counsel by the Remediation Manager Team.

C. Absent leave of the Court, the Remediation Manager Team may not testify in any litigation or proceeding other than this case, including public hearings or other proceedings before the New York City Council, the Board of Correction, or the New York State legislature, or private litigation, with regard to any act or omission of the DOC or any of the DOC's agents, representatives, or employees related to the <u>Nunez</u> Orders.  Except as expressly authorized in advance by the Court or by this Order, the Remediation Manager Team may not give interviews

or make public statements regarding their work under the <u>Nunez</u> Orders and this
Order.

D.  Unless such conflict is waived in writing by the parties, no member of the
Remediation Manager Team may accept employment or provide consulting
services that present a conflict of interest with their responsibilities under this
Order, including being retained (on a paid or unpaid basis) by any current or
anticipated litigant or claimant, or such litigant's or claimant's attorney, in
connection with a claim or suit against the DOC or the DOC's agents,
representatives, or employees.

E.  The <u>Nunez</u> Remediation Manager is an agent of the Court and is not a federal,
State, or local agency or an agent thereof.

F.  If at any time the <u>Nunez</u> Remediation Manager position becomes vacant, the
parties and the Monitor shall confer on potential replacements and the parties
shall meet and confer and endeavor to jointly provide the court with no more than
four candidates to replace the <u>Nunez</u> Remediation Manager.  The parties shall
submit their recommendations, with supporting materials, to the Court
confidentially.  Once the Court has received the parties' recommendations, the
Court shall review the proposed candidates, and any further candidates the Court
may deem appropriate for consideration, and shall select the new <u>Nunez</u>
Remediation Manager.

**XII.  <u>Effective Date.</u>**

A.  This Order Appointing the <u>Nunez</u> Remediation Manager shall become effective
following the appointed <u>Nunez</u> Remediation Manager's confirmation of their

Acceptance of the powers, responsibilities and duties imposed by this Order, which the <u>Nunez</u> Remediation Manager shall effectuate by signing a copy of this Order below and returning the countersigned copy to the Court by email addressed to SwainNYSDCorresp@nysd.uscourts.gov within 7 days of the issuance of the final version of this Order.

B.  The <u>Nunez</u> Remediation Manager shall coordinate with the Court and Defendants to decide on an intended Onboard Date, which the <u>Nunez</u> Remediation Manager must confidentially convey to the Court within 21 days of the <u>Nunez</u> Remediation Manager's Acceptance.  The <u>Nunez</u> Remediation Manager's Onboard Date shall then be specified in writing in a Notice of Acceptance filed by the Court on the public docket for this case.

SO ORDERED this 17th day of February, 2026

_____
LAURA TAYLOR SWAIN
CHIEF UNITED STATES DISTRICT JUDGE

ACCEPTED

_____
(Signature)

Nicholas J. Deml
_____
(Typed or printed name)

Date: February 18, 2026
_____