OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

1+1 646 895 6567 | afriedberg@tillidgroup.com

September 03, 2026

**VIA ECF**
The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10006

*Re: Nunez, et al. v. City of New York, et al., 11-cv-5845 (LTS)*

Dear Chief Judge Swain,

Pursuant to the Court's June13, 2023 Order, § I, ¶ 8, the Monitoring Team writes to promptly advise the Court of the Monitoring Team's grave concerns that New York Department of Corrections ("Department") leadership, at the highest levels, is actively engaging in efforts to evade transparency and impede cooperation and collaboration, and does not appear to be managing their responsibilities under the *Nunez* Court Orders in a reasonable and diligent manner.[1] These concerns also extend to the Department's engagement with the Remediation Manager Team ("RMT"). The Monitoring Team ("MT") believes this notification to the Court is necessary in light of instructions issued by the Commissioner on September 1, 2026 combined with the MT's observations over the past several months of dysfunctional, haphazard, and problematic management strategies.

Over the last few months, the MT has raised concerns with Department leadership about their mismanagement of the *Nunez* Court Orders and the practical impact of these management failures on the Department's failure to faithfully comply with the *Nunez* Court Orders. To that end, the MT advised the DOC that these poor management strategies are giving rise to repetition of the very conduct that resulted in the Court's findings of contempt in December 2023 and November 2024.

[1] This includes, but is not limited to, potential failures to comply with Consent Judgment § XX, ¶ 13; June 13, 2023 Order § I, Paragraphs I.1, 5, 6, 7(a), and February 18, 2026 Order § X, ¶ A.

The MT has made several attempts to assist DOC in altering the current trajectory by raising its concerns with the Commissioner, First Deputy Commissioner, members of the Law Department, and other DOC officials via formal written communications on July 17th and August 20th and via routine and frequent communication during meetings. Despite this feedback, no material change to practice has occurred. As a result, the MT issued a letter on September 1, 2026 to the Commissioner and Corporation Counsel (See attached) outlining our concerns and recommendations for prompt remediation.

Further, at almost the same time the MT issued its letter to the Commissioner and Corporation Counsel, the Commissioner's Chief of Staff issued direct "instructions from the Commissioner" to his leadership team that they must "implement right away." These instructions included that "[n]o idea, strategy or work is [to] be communicated to the RM, monitor, or the City Hall without him [the Commissioner] being briefed beforehand." The Commissioner further instructed that, unequivocally, "**all** meetings with the RM and Monitor teams must be documented"[2] and required minutes from "**all** interactions/communications" between DOC staff and the RMT or MT (*Emphasis supplied*) (See attached). The instructions advised that the latter rule was adopted at the "recommendation" of the First Deputy Commissioner. Neither the Commissioner, First Deputy Commissioner, nor any other DOC staff advised the MT or RMT that these instructions were being contemplated, let alone that these instructions were issued.[3] The MT only learned about the existence of these instructions through an anonymous source.[4]

---

[2] This direction is listed as "Item 4" in the September 1, 2026 communication. On September 2, 2026, the Commissioner's Chief of Staff advised the original recipient list of the Department's leadership to "[p]lease hold off on communicating item 4 to your teams until we have had a chance to discuss this at the Cabinet meeting next week." This was apparently sent following guidance from another Department leader that if "[the Deputy Monitor" finds out we are compiling and tracking [as contemplated in item 4] them [sic] it will be bad." The fact that item 4 is not yet implemented because the Chief of Staff reported it requires discussion is an insufficient remedy given the full the import of the complete set of September 1, 2026 instructions and the overarching issues raised in this letter.

[3] Such consultation is required by the Court's June 13, 2023 Order § I, ¶ 5. Notably, the First Deputy Commissioner met with the Deputy Monitor just hours before these instructions were issued. The First Deputy Commissioner did not brief the Deputy Monitor on the development of these instructions or her recommendations to the Commissioner.

[4] The MT subsequently requested the Law Department to produce these communications to the MT.

The Monitoring Team fully supports the need for the Department to track the work it is doing under the *Nunez* Court Orders and to ensure internal coordination on those efforts. In fact, the Monitoring Team has encouraged that such work be done. However, the Commissioner's September 1, 2026 instructions only serve to reinforce and heighten the MT's concerns about the Department's mismanagement of its work under the *Nunez* Court Orders. The September 1, 2026 instructions are unequivocal and impede the free flow of information and communication necessary to advance the reform effort and ensure effective oversight occurs. If implemented, the Commissioner's directive will discourage routine problem-solving, delay the exchange of information, and prevent City and Department personnel from engaging directly and candidly with the MT and RMT. The directive would also effectively eliminate DOC personnel's ability to have confidential discussions with the MT or RMT, which is expressly endorsed by the *Nunez* Court Orders. The ability of the MT or RMT to have confidential discussions with staff, outside the presence of other staff, is an important avenue for identifying concerns, surfacing problems, and obtaining candid information that might not otherwise reach those charged with overseeing the reform effort. In fact, the Commissioner's directive would have precluded the staff from confidentially reporting the Commissioner's 9/1/26 communication to the MT.

Given the history of this case, the extensive record before the Court, and the clarity of the Court's Orders concerning the role of the MT and RMT, and the Department's obligations, the recent directive is extraordinary. In the MT's more than ten years of experience monitoring this Department, regardless of their intention, the recent actions of Department leadership are among the most specific, direct, and consequential actions the MT has observed to undermine the Court's Orders and obstruct the flow of information required for the MT and RMT to meet their responsibilities. This is not an isolated failure to comply with the Court's Orders, nor is it the product of misunderstanding, inadequate implementation, or bureaucratic dysfunction. Rather, it is an affirmative directive from Department leadership that, if followed, would impede compliance with the Court's Orders and materially interfere with the MT's and RMT's ability to perform their Court-ordered responsibilities.

The Department's recent actions cannot be viewed in a vacuum, as they are yet another example of long-standing patterns to evade transparency and oversight. Instructions such as these violate multiple *Nunez* Court Orders admonishing the Department for similar efforts to disrupt the flow of information to the MT. Regardless of the Commissioner's intent, the recent directive

suggests that the Department's leadership remains mired in the *status quo*. This is particularly disappointing given that the Commissioner and First Deputy Commissioner have significant experience serving in oversight roles (both were members of the NYC Board of Corrections) and should understand the need for the very requirements of the *Nunez* Court Orders that they now appear to be impeding.

In light of the foregoing, the MT has conferred with the RM, and the RM determined, in consultation with the MT, he will take the following *immediate* steps:

1. The RM will immediately communicate with Department leadership to rescind the Commissioner's September 1, 2026 instructions.
2. The RM will direct the City and Department by September 25, 2026 to issue clear and unambiguous directions to Department leadership and staff regarding their obligations under the *Nunez* Court Orders to communicate openly and candidly with the MT and RMT. These directions must be approved by the Remediation Manager and the Monitor.
3. Upon finalization of the initial communication, the RM will direct the City and Department to periodically communicate clear and unambiguous directions to Department leadership and staff regarding their obligations under the *Nunez* Court Orders to collaborate and communicate openly and candidly with the MT and RMT. The timing for these periodic communications and directions must be approved by the Remediation Manager and the Monitor.
4. The RM will direct that the *Nunez* Manager and the Assistant Commissioner of the *Nunez* Compliance Unit no longer report to the First Deputy Commissioner and shall instead report to the General Counsel. The Department is currently recruiting for the position of an Associate Commissioner of *Nunez*. The RM will make the selection for this position, in consultation with the MT. The RM will also direct the appropriate reporting line for this position once the selection has been made.
5. The RM will direct that Agency Leadership not interfere with or inhibit the activities of the *Nunez* Manager, the Assistant Commissioner of the *Nunez* Compliance Unit, the General Counsel, or any other staff or leadership charged with managing the *Nunez* compliance effort.
6. In the event that the City or Department fail to act or adhere to the directions set forth herein, the RM or Monitor will immediately inform the Court.

The MT and RMT welcome any additional steps the Court may deem appropriate or necessary to address the issues outlined in this letter. We appreciate the Court's attention to this matter.

Sincerely,

s/ Steve J. Martin
Steve J. Martin, *Monitor*
Anna E. Friedberg, *Deputy Monitor*

# APPENDIX A

OFFICE OF THE MONITOR
*NUNEZ, ET AL. V. CITY OF NEW YORK, ET AL.*

**Steve J. Martin**
Monitor

**Anna E. Friedberg**
Deputy Monitor

1+1 646 895 6567 | afriedberg@tillidgroup.com

September 1, 2026

**Via Email**

Commissioner Stanley Richards
Department of Correction
75-20 Astoria Boulevard, Suite 350
East Elmhurst, NY 11370

Corporation Counsel Steven Banks
The City of New York Law Department
100 Church Street
New York, NY 10007

Dear Commissioner Richards and Corporation Counsel Banks,

We reach out in an effort to advance the work under the *Nunez* Court Orders by outlining our concerns regarding the Department's commitment to the proper management of the *Nunez* Court Orders. Our goal is for these issues to be addressed immediately and corrected so the City and Department are appropriately prioritizing and focusing on advancing the reform effort.

Our work over the last few months has suggested that some DOC leaders and staff do not understand certain core elements of the *Nunez* Court Orders, including the role of the RM, the Monitor's access to information, and the Department's obligations to consult and work cooperatively with the Monitoring Team ("MT") and Remediation Manager Team ("RMT"). As a result, it appears the basic tenets of the *Nunez* Court Orders requiring transparency, cooperation, and collaboration with the MT and the RMT are not being faithfully adhered to as they must in order to advance the reform effort. We have raised many of these concerns during various routine discussions with Department leadership and in our July 17th and August 19th communications to the Commissioner. Unfortunately, we have not observed any material change in practice despite our feedback and recommendations. These issues appear to be widespread with two notable exceptions. The Senior Deputy Commissioner for Investigations, Intelligence and Accountability and the Senior Deputy Commissioner for Administrative

Operations routinely demonstrate the type of transparency, cooperation and collaboration contemplated by the *Nunez* Court Orders. Our hope is that their approach can be recognized as a model for other leaders and staff to emulate.

We appreciate that this year has brought many new leaders and staff to the City and Department administration. However, this does not excuse or diminish Defendants' obligation to ensure that City and DOC leaders and staff understand their obligations and responsibilities under the *Nunez* Court Orders. In fact, given the contempt findings in *Nunez*, Defendants have a heightened obligation to ensure this information is disseminated and fully understood by all leaders and staff regardless of their employment tenure with the City or DOC. Outlined below are a number of recent examples that raise serious concerns about the impact of the Department's lack of understanding of the *Nunez* Court Orders:

- DOC leadership do not appear to be adequately coordinating with one another, and information is not consistently or routinely shared among the DOC leadership team and DOC staff resulting in confusion among staff about priorities and focus. Further, this lack of adequate coordination has resulted in the sharing of inconsistent information with the MT.
- Recent actions by high-ranking DOC leadership raise questions about their judgment and approach to management of the *Nunez* Court Orders resulting in significant distraction and inefficiencies to advancing the reform effort that also directly impact the work of the MT and RMT.
- The *Nunez* Manager,[1] the Assistant Commissioner of the *Nunez* Compliance Unit, and other staff with requisite *Nunez* expertise and operational knowledge are not routinely included or otherwise engaged by DOC leadership and staff to provide appropriate guidance and advice on *Nunez* matters resulting in problematic operational decisions and a variety of inefficiencies in the Department's practices and engagement with the MT and RMT.

[1] The June 13, 2023 Order § I, ¶ 7(a) requires that the "*Nunez* Manager shall have unfettered access to all Department records and information necessary to perform these responsibilities, and the City and Department shall provide the *Nunez* Manager with sufficient resources to allow them to perform these responsibilities."

- Many DOC leaders and staff do not appear to know, understand, or appreciate their obligations and responsibilities under the *Nunez* Court Orders. Further, certain DOC leaders appear to be hesitant about sharing certain information with the MT such that the staff who report to those DOC leaders have reported concerns to the MT about whether they can be fully transparent with the MT without explicit approval from DOC leadership.
- Plans for implementation appear hasty and rushed, without appropriate planning and coordination. As a result, in some cases, this has resulted in the failure to proactively engage or consult the MT or RMT.
- The few operational initiatives underway appear to be languishing with DOC leadership with leadership unable to articulate concrete steps to address very serious immediate risks of harm. The MT or RMT must make multiple inquiries in order for DOC to initiate further next steps.
- Certain DOC leaders appear to be deflecting their own obligations (and that of the Department) to address operational issues by questioning the role and value of the MT's and RMT's engagement in DOC's operations.
- Certain DOC leaders do not appear to appreciate or understand the reality of the significant failures of DOC's current operations and simply overlook the critical need to address basic correctional management. As a result, there is time and energy focused on initiatives and issues that distract from addressing basic safety concerns.
- Redacted [redacted]

The practical *impact* of the Department and City's current management strategy reflects issues that harken back to troubling conduct by DOC leadership that has been reported by the Monitoring Team in detail and underpinned the Court's findings of contempt on December 20, 2023 and November 26, 2024.

The purpose of the *Nunez* Court Orders is to improve the safety and well-being of incarcerated individuals and staff. These are important obligations, and it is imperative that the

City and Department take them seriously. The Court's requirements regarding access to information, cooperation and collaboration are key to advancing the reform effort. All staff must understand their obligations and responsibilities to work constructively with the MT and RMT.

We believe the City and DOC are capable of correcting these issues, altering the current trajectory, and ensuring that their work remains focused and appropriately prioritized toward advancing the *Nunez* reform effort. To that end, we recommend the City and the Department take the following steps:

- **Improved Management of *Nunez* Court Orders**: Immediately alter and improve engagement of the *Nunez* Manager, AC of the *Nunez* Compliance Unit, and General Counsel in DOC's leadership and operational work to ensure alignment with the *Nunez* Court Orders.[2]
- **Communication to DOC Leaders, Staff and relevant City Employees on *Nunez* Roles and Responsibilities**: Provide immediate guidance[3] to DOC staff and leadership and relevant City employees regarding their obligations and responsibilities under the *Nunez* Court Orders. To that end, we encourage the Law Department, the *Nunez* Manager, the AC of the *Nunez* Compliance Unit (and any other relevant members of DOC) to develop and provide appropriate and relevant communication and guidance to DOC leaders, staff and relevant City employees. We welcome consultation on development of these materials. The steps the Department took in late 2023 and early 2024 to purge contempt may serve as a useful model for development of these communications. Following the initial roll-out, communications about the *Nunez* Court Orders and relevant responsibilities should be routinely reiterated to all DOC leaders, staff and City employees engaged in the work of the *Nunez* Court Order.

---

[2] The Monitoring Team anticipates additional recommendations may be forthcoming following the Commissioner's briefing on next steps regarding the AC of *Nunez* position.

[3] We recommend this occurs no later than September 25, 2026.

DOC's current operations present a serious risk of harm to both incarcerated individuals and staff. The two most recent in-custody deaths are sobering examples of the impact that poor operations can have on the lives of individuals in custody. As we have done from the outset of this case, we strongly urge DOC to prioritize work that directly relates to improving basic correctional practices and advancing the *Nunez* reforms. The problematic managerial practices outlined in this letter only distract from the necessary work needed to reduce the risk of harm in the system.

The Monitoring Team remains available to serve as a resource to the City and Department to advance the goals of the *Nunez* Court Orders.

Sincerely,

s/ Steve J. Martin
Steve J. Martin, Monitor

s/ Anna E. Friedberg
Anna E. Friedberg, Deputy Monitor

cc: Nicholas Deml, Remediation Manager

# APPENDIX B

Outlook

**Re: Instructions from the Commissioner**

**From** [redacted] Chief of Staff
**Date** Wed 9/2/2026 9:11 AM
**To** [redacted] First Deputy Commissioner [redacted] Senior Deputy Commissioner for Administrative Operations [redacted] Chief of Department [redacted] General Counsel
**Cc** [redacted] Executive Assistants to the Leaders Above

Hi all,
Please hold off on communicating item 4 to your teams until we have had a chance to discuss this at the Cabinet meeting next week.

Thanks,

[redacted] Chief of Staff
Chief of Staff, Office of the Commissioner
New York City Department of Correction
[redacted] Chief of Staff

---

**From:** [redacted] Chief of Staff
**Sent:** Tuesday, September 1, 2026 5:20 PM
**To:** [redacted] First Deputy Commissioner [redacted] Senior Deputy Commissioner for Administrative Operations [redacted] Chief of Department [redacted] General Counsel
**Cc:** [redacted] Executive Assistants to the Leaders Above
**Subject:** Instructions from the Commissioner

Hi all,

There are a couple of items the Commissioner wants to implement right away:

1. The Commissioner wants to hold cabinet meetings twice a week, for an hour each, in person, starting next week. [redacted] Redacted

Redacted

2. No idea, strategy, or work is be communicated to the RM, the monitor, or the City Hall without him being brief beforehand. Redacted

3. Redacted

4. Per FDC's recommendation, the Commissioner wants all meetings with the RM and Monitor teams to be documented. Please instruct your teams to send minutes of all interactions/conversations with the monitor or RM to DC of Policy & Strategy so we can keep track of what was discussed. At our weekly cabinet meeting we can review asks/commitments and follow ups based on those discussions.

Please let me know if you have any questions or need more information.

Thanks!

Chief of Staff
Chief of Staff, Office of the Commissioner
New York City Department of Correction
Chief of Staff