UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK NUNEZ, et al.,

Plaintiffs,

-v-

CITY OF NEW YORK, et al.,

Defendants.

11-CV-5845-LTS

ORDER

The Court has received and reviewed the Monitoring Team's letter dated September 3, 2026 (docket entry no. 997 (the "Letter")). The Letter informs the Court of the Monitoring Team's "observations over the past several months of [the DOC's] dysfunctional, haphazard, and problematic management strategies." (Letter at 1.) The Letter further describes instructions issued by the DOC Commissioner's Chief of Staff (the "Instructions") that prohibited DOC's leadership team from communicating any "idea, strategy or work" with the Nunez Remediation Manager or the Monitoring Team unless the Commissioner was briefed beforehand. (Id. at 2.) The Instructions also required DOC leadership to tell DOC staff to document "all meetings with," and provide minutes of "all interactions/conversations with," the Remediation Manager Team ("RM Team") and the Monitoring Team. (Id.)[1] The DOC did not inform the Monitoring Team or the RM Team that the DOC was contemplating the Instructions

[1] A day after the Commissioner's Chief of Staff disseminated the Instructions, she instructed DOC leadership to hold off on communicating this item to DOC staff until leadership had an opportunity to discuss it at an upcoming cabinet meeting. (Letter at 2 n.2.)

nor even that it had disseminated them to DOC leadership. Rather, the Monitoring Team learned about the Instructions through an anonymous source. (Id.) The Letter also outlines immediate actions that the Remediation Manager has taken or plans to take in response to the Instructions.

The Court finds the information in the Monitoring Team's letter troubling for several reasons. First, the DOC's failure to notify the Monitor of the Instructions is a matter of great concern. The Court's June 13, 2023 Order requires the DOC to "proactively consult with the Monitor in advance of promulgating any new policies or procedures that relate to compliance with the Nunez Court Orders." (Docket entry no. 550 ("July 13 Ord.") § I, ¶ 5.) Because the Instructions (contrary to the Court's clear Orders) created a new practice that prohibited DOC staff from communicating with the Court's appointed agents and their teams without the Commissioner's prior approval, the Instructions clearly "relate to compliance with the Nunez Court Orders." (Id.) The DOC thus was required to inform the Monitoring Team of this change in practice "at least three weeks prior to planned implementation." (Id.)

The reason the Court has ordered the DOC to proactively communicate and coordinate with the Monitoring Team before promulgating new policies and practices related to Nunez is that the DOC has failed to manage its own operational priorities, as exemplified by a decade of "serial launching and subsequent abandonment of numerous plans" and continuous failure to achieve Substantial Compliance with the Nunez Court Orders. (Docket entry no. 846, at 27.) Given this history, the consultation requirements imposed by the Court are necessary to mitigate danger and dysfunction in the New York City jails, and they are not optional.

While the DOC's failure to properly notify the Monitoring Team about the Instructions is itself troubling, the substantive changes the Instructions would have effectuated surprise and concern the Court, too. Though the DOC's efforts to improve coordination,

communication, and transparency among senior DOC leadership regarding the RM and Monitoring Teams' priorities and directives may be salutary, such efforts may not exclude the RM and Monitoring Teams themselves, nor may they hinder those entities' ability to engage in candid, real-time communications with DOC leadership and staff. Rather, the Court's Orders unambiguously empower the Monitoring Team and the RM Team to engage in such communications.[2] If implemented, the Instructions would have interfered with the RM and Monitoring Teams' unfettered access to DOC staff and their ability to confidentially communicate with staff. As evidenced by the letter the Monitoring Team sent to the Commissioner and the Corporation Counsel on September 1, 2026 (Letter at ECF pages 6-11), these problematic aspects of the Instructions are emblematic of broader patterns of inadequate transparency, problematic operational decisions, and misaligned priorities that the Monitoring Team has observed over the past few months.

It bears repeating that the Court appointed an independent Monitor and a Remediation Manager to help eliminate unconstitutional levels of violence and danger and to address polycentric, pervasive dysfunction in the New York City jails. The RM and Monitoring Teams' free access to information and their ability to communicate confidentially with staff are more than just technical requirements of the Court's Orders; they are indispensable to the critical work of remediation. After "a decade of mismanagement of the New York City jails and a

2 The Court ordered, more than three years ago, that the Monitoring Team "shall have <u>unencumbered</u>, <u>direct</u> access to communicate with and seek information from <u>all</u> Department leadership and staff" and "shall be permitted to have confidential communications with Department leadership and staff outside the presence of other Department personnel." (July 13 Ord. § I, ¶ 6 (emphases added).) And with the creation of the RM position, the Court made it clear that the RM Team "shall have <u>unlimited</u> access to <u>all</u> DOC facilities, persons in custody, and DOC staff," which includes "the authority to conduct confidential interviews with DOC staff and persons in custody." (Docket entry no. 960 § IV, ¶ H (emphases added).)

glacial approach to reform" (docket entry no. 938, at 6), moreover, the DOC's collaboration and transparent communication with the RM and Monitoring Teams are also indispensable to remediation.

Though the requirement that the DOC cooperate with the Monitoring Team is now more than a decade old (docket entry no. 249 § XX, ¶ 13), the Court has unfortunately had to remind the DOC on numerous occasions that its collaboration and transparent communication with the Monitoring Team are, in fact, mandatory. (See, e.g., docket entry no. 660, at 56; docket entry no. 554, at 85; see generally July 13 Ord.) The DOC similarly must "fully cooperate with the Nunez Remediation Manager in the discharge of the Nunez Remediation Manager's duties." (Docket entry no. 960 § X, ¶ A.) Lest there be any doubt, the Court again reminds the DOC that obligations to collaborate with the Monitor and RM are just that: obligations, not suggestions. It is therefore the Court's expectation that any efforts the DOC undertakes to improve communication and coordination among its leadership and staff will not impede the DOC's compliance with its Court-ordered obligations; will not interfere with the RM's and the Monitor's Court-ordered authority and responsibilities; and will not degrade in any way the DOC's cooperation with the RM and the Monitor in the essential work of speedy reparation of the dangerous and dysfunctional conditions that pervade the jails.

The Monitoring Team's Letter details the next steps the Remediation Manager has taken or will take to address the Commissioner's Instructions specifically and to improve the DOC's communication and collaboration more broadly. (Letter at 4.) The Court respectfully directs the Monitoring Team to provide a further update regarding the implementation of those steps, as well as the broader issues outlined in the Letter, in its status report regarding Local Law 42 on **September 30, 2026**. The Court fully expects that the update contained in that

Report will reassure the Court as to the DOC's commitment to collaborating closely with the RM Team and the Monitoring Team in the rapid and effective improvement of the conditions and management of New York City's jails.

SO ORDERED.

Dated: New York, New York
September 10, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge